Scott D. Baker (SBN 84923)
Email: sbaker@reedsmith.com
William R. Overend (SBN 180209)
Email: woverend@reedsmith.com
Adrian Sue Shin (SBN 256960)
Email: sshin@reedsmith.com
James A. Daire (SBN 239637)
Email: jdaire@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Telephone:  (415) 543-8700
Facsimile:  (415) 391-8269

Steven S. Baik (SBN 184622)
Email: sbaik@reedsmith.com
Carina M. Tan (SBN 185015)
carinatan@reedsmith.com
REED SMITH LLP
1510 Page Mill Road, Suite 110
Palo Alto, CA 94304
Tel:  (650) 352-0500
Fax:  (650) 352-0699

Attorneys for Plaintiff
REALTEK SEMICONDUCTOR CORPORATION

KILPATRICK TOWNSEND & STOCKTON LLP
DAVID E. SIPIORA (State Bar No. 124951)
1400 Wewatta Street, Suite 600
Denver, CO 80202-5556
Telephone: (303) 571-4000
Facsimile:  (303) 571-4321
Email:   *dsipiora@kilpatricktownsend.com*

KILPATRICK TOWNSEND & STOCKTON LLP
ROBERT J. ARTUZ (State Bar No. 227789)
1080 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 326-2400
Facsimile:  (650) 326-2422
Email:   *rartuz@kilpatricktownsend.com*

Attorneys for Defendants LSI CORPORATION and AGERE SYSTEMS LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| REALTEK SEMICONDUCTOR CORPORATION,<br><br>        Plaintiff,<br><br>    vs.<br><br>LSI CORPORATION<br>and AGERE SYSTEMS LLC<br><br>        Defendants. | Case No. 5:12-cv-03451 RMW<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:  October 5, 2012<br>Time:  10:30 a.m.<br><br>Honorable Ronald M. Whyte |

Case No. 5:12-CV-03451 RMW

1    In accordance with Federal Rule of Civil Procedure 26(f), Civil Local Rule 16-9 and the Court's Standing Orders, Plaintiff Realtek Semiconductor Corporation and Defendants LSI Corporation and Agere Systems LLC ("LSI/Agere") respectfully submit the following Joint Case Management Statement in preparation for the October 5, 2012 Case Management Conference.

**1.   Jurisdiction and Service**

Plaintiff alleges that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction), because this is an action between citizens of different states and the values of the relief Realtek seeks exceed the jurisdictional minimum, exclusive of interests and costs.  At this time, the parties do not know of any issues as to jurisdiction, venue, or service, but to the extent possible LSI/Agere reserves the right to raise such issues as discovery progresses.

**2.   Facts**

Non-party the Institute of Electrical and Electronics Engineers ("IEEE") and its internal Standards Association ("IEEE-SA") are responsible for developing the 802.11 wireless networking standard and a number of amendments thereto.  The IEEE's Intellectual Property Rights policy ("IPR policy") states that IEEE standards may be drafted in terms that include the use of "Essential Patent Claims."  If so-called "Essential Patent Claims" are to be included in a standard, the disclosing patent holder is asked for a Letter of Assurance.  The Letter of Assurance must include either: (a) a commitment that the holder will not enforce any of its "essential patents;" or (b) a statement that a license to the "essential patents" will be made available to an unrestricted number of applicants on a worldwide basis without compensation or under reasonable rates, with reasonable, non-discriminatory terms and conditions ("RAND terms"). If the patent holder does not provide the Letter of Assurance or otherwise communicates that it is not prepared to offer RAND terms, the IEEE may take steps to avoid the patented technology before developing and adopting the standard.

Prior to the IEEE's adoption of 802.11 standards relevant to this case, Defendant Agere submitted Letters of Assurance to the IEEE stating that it would make available licenses to U.S. Patent No. 6,452,958 and the patent application that issued as Patent No. 6,707,867 (the "LSI/Agere patents") on RAND terms to the extent required to practice the relevant IEEE standards.  Agere was subsequently acquired by Defendant LSI and is currently a wholly-owned subsidiary of LSI.

In a March 7, 2012 cease and desist letter, LSI asserted that Realtek's wireless local network products infringe the LSI/Agere patents. Realtek denies any infringement and does not concede that the LSI/Agere patents are essential to any relevant standard. On March 12, 2012, LSI/Agere filed a complaint with the U.S. International Trade Commission ("ITC") against Realtek and others, seeking to enjoin all Respondents from implementation of the technology of the alleged essential patents. The ITC instituted an investigation based on LSI/Agere's complaint (Inv. No. 337-TA-837). The evidentiary hearing in this Investigation is currently scheduled to occur from January 8-16, 2013 and an Initial Determination is due on April 19, 2013.

Realtek responded to LSI's letter on May 24, 2012, requesting that LSI/Agere disclose the RAND terms for the LSI/Agere patents. On June 20, 2012, LSI/Agere provided what it contends was an initial RAND license proposal. Realtek contends that, if accepted, LSI/Agere's proposal would require Realtek to pay LSI/Agere royalties that exceed the selling price of Realtek's products. Realtek did not respond to the June 20, 2012 proposal and initiated this action on June 29, 2012 for (1) breach of contract, (2) promissory estoppel, (3) declaratory judgment, and (4) unfair competition under California Business & Professions Code § 17200.

**3.     Legal Issues**

The principal legal issues in dispute are: (1) whether LSI/Agere entered into a contract; (2) whether LSI/Agere breached any contract; (3) whether Realtek is a third party beneficiary of any contract; (4) whether LSI/Agere's conduct was unlawful, unfair or fraudulent and caused Realtek competitive harm; and (5) if liability is established against LSI/Agere, the appropriate declaratory and injunctive relief, and the proper measure of damages. Realtek's complaint is currently the subject of LSI/Agere's motion to dismiss. Accordingly, to the extent LSI/Agere are required to answer the complaint, LSI/Agere reserve the right to raise affirmative defenses and counterclaims that will include additional issues. At that time, such issues may also include, but are not limited to, failure to mitigate damages, substantial performance, non-performance of a condition precedent, forfeiture, repudiation, waiver, unclean hands, preemption, and patent infringement.

1     **4. Motions**

2 LSI/Agere has filed a motion to dismiss pursuant to Federal Rules of Civil Procedure
3 12(b)(6) and 12(b)(1), which Realtek opposes, and which is set for hearing on October 5, 2012.
4 Realtek and LSI/Agere anticipate filing dispositive motions, including motions for summary
5 judgment as to each of Realtek's claims and, potentially, motions for partial summary judgment.

6     **5. Amendment of Pleadings**

7 Realtek will amend its complaint if the Court grants LSI/Agere's motion to dismiss with
8 leave to amend. Otherwise Realtek does not currently anticipate amending its complaint. LSI/Agere
9 reserve the right to amend any future pleadings to the extent allowable under the Federal Rules of
10 Civil Procedure and the Local Rules of this Court.

11     **6. Evidence Preservation**

12 The parties have taken reasonable steps to ensure proper maintenance of discoverable
13 materials relevant to this case.

14     **7. Disclosures**

15 Pursuant to Federal Rule of Civil Procedure 26(f), the parties conferred telephonically on
16 August 24, 2012. The parties agreed to exchange initial disclosures pursuant to Federal Rule of
17 Civil Procedure 26(a)(1) on September 28, 2012. The parties reserve their respective rights to
18 supplement their disclosures as discovery proceeds.

19     **8. Discovery and Discovery Plan**

20 The parties agree to abide by the discovery limitations set forth in the Federal Rules of Civil
21 Procedure, subject to the modifications set forth below.

22 The parties intend to pursue discovery in the form of requests for production of documents
23 and things, interrogatories, depositions, and other forms of discovery authorized by the Federal
24 Rules. Generally speaking, and without waiving any appropriate objections, contemplated discovery
25 may include LSI/Agere's communications with and representations to the IEEE, the IEEE's
26 understanding of RAND terms and commitments, the understanding of RAND terms and licensing
27 procedure in the industry, LSI/Agere's licenses and offers to license to Realtek and others (and
28 documents/communications related thereto), Realtek patent licensing practices and communications,

1  the relevant IEEE IPR policies, facts associated with the calculation of a reasonable royalty to the
2  LSI/Agere patents, Realtek's profits, Realtek's customers, Realtek products and product image, the
3  market for LSI/Agere products and downstream products, the market for Realtek products and
4  downstream products, and competition in the market for the relevant industries.

5        The parties agree to produce final, rather than draft, marketing and/or financial materials and
6  summary financial materials in lieu of all invoices, receipts, purchase orders, etc.  A producing party
7  shall be required to produce drafts of specific marketing and/or financial materials only upon a
8  determination (by either the producing party or the Court) that the requesting party has made a
9  showing of good cause to warrant their production.

10        The parties further agree that expert discovery should be limited pursuant to Rule 26 of the
11  Federal Rules of Civil Procedure, and agree to exclude the following categories of documents and
12  things from expert discovery:  (1) drafts of expert reports and expert declarations; (2) written
13  communications between a testifying expert witness and the attorneys of the party retaining the
14  expert relating to the subject of the expert's retention in this case, including the preparation of expert
15  reports, expert declarations and trial testimony.  In addition to the limitations imposed by Rule 26,
16  the parties further agree that to exclude the following categories of documents and things from
17  expert discovery:  (1) all notes, memoranda and other writings prepared by an expert witness in
18  connection with the expert witness' engagement for this case, except to the extent that the expert
19  consults them while testifying at a deposition or at trial; and (2) documents and/or things reviewed
20  by a testifying expert witness but not relied upon by the witness to draft his or her expert report.
21  Notwithstanding the above, the following shall <u>not</u> be excluded from discovery:  (1) communications
22  pertaining to the expert's compensation; (2) facts or data that the attorney provided and the expert
23  relied upon in forming opinions offered in this litigation; and (3) assumptions that the attorney
24  provided and that the expert relied on in forming opinions offered in this litigation.

25        Fact discovery in the ITC proceeding is ongoing and the target date for completion of the
26  investigation is August 19, 2013, which is 16 months after institution of the investigation.  In light of
27  the ITC proceeding between the parties, each producing party shall provide each receiving party
28  with a copy of all document productions made in the ITC proceeding and refer the receiving party to

1   said documents in response to any appropriate discovery request.  The document productions made
2   in this case will be covered under the protective order entered into in this case.  Unless prohibited
3   under the ITC's Protective Order, each producing party shall also provide each receiving party with
4   a copy of the producing party's interrogatory responses and any deposition transcripts from the ITC
5   investigation.  Subject to the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the
6   Local Rules of this Court, and any protective order in this case, the provided discovery from the ITC
7   case may be used in this case for all purposes.

        **a.    Modification of Discovery Rules**

9           The parties seek the following modifications of the discovery rules, and they reserve all
10  rights to seek further modifications as necessary.  They agree to meet and confer in good faith if
11  further modifications are sought and if a discovery dispute arises.

12          1.    Each side may serve up to fifty (50) requests for admission on the other side.
13  Notwithstanding the foregoing, there shall be no limitations on the number of requests for admission
14  any party may use solely for the purpose of authentication of evidence.

15          2.    Each side may serve up to forty (40) interrogatories on the other side.

16          3.    The total number of fact depositions, including Rule 30(b)(6) depositions, third party
17  depositions, and other individual depositions, shall be limited to 10.  The parties reserve all rights to
18  seek additional depositions, either by stipulation or leave of court, should circumstances warrant
19  more than 10 depositions.

20          4.    The parties will meet and confer on increasing the 7 hour time limit for particular
21  depositions on an as needed basis, including but not limited as to 30(b)(6) witnesses designated on
22  multiple subjects.

23          5.    LSI/Agere contends that Realtek should make its employees available for deposition
24  in the United States.  Realtek does not agree to LSI/Agere's blanket request to make any and all
25  employees available for deposition in the United States, but will meet and confer with LSI/Agere on
26  this issue as discovery continues and LSI/Agere seek specific depositions.

### b.     Electronically-Stored Information

The parties anticipate that they have or will produce relevant or potentially relevant electronically-stored information ("ESI") from the ITC proceeding as noted previously. To the extent that any producing party produces additional ESI, Microsoft Excel files or similar spreadsheet files shall be produced in native format. All other ESI, shall be produced in single-page, text searchable Tagged Image File Format (".tiff"). In addition, the parties also agree not to unreasonably refuse to produce other individual documents in native format upon the request of a producing party.

With respect to e-mail, and without limitation to other discovery requests for emails, the parties agree to conduct a reasonable search of its relevant e-mail servers and accounts for any e-mail related to (1) negotiations to license the LSI/Agere Patents on reasonable and non-discriminatory terms and (2) communications with IEEE regarding the LSI/Agere Patents.

### c.     Issues Re Claims of Privilege and Work Product

The parties agree that the Court should enter an order governing non-waiver of privilege due to inadvertent disclosure of privileged information and anticipate that such a provision will be included in the proposed Protective Order they submit to the Court. The parties agree that no party shall be obligated to log privileged and/or work product documents created after March 12, 2012, when LSI/Agere filed its ITC complaint. The parties further agree to exchange initial privilege logs for documents withheld from production no later than November 20, 2012.

The parties agree that any party may supplement its privilege log to the extent that additional documents are withheld before the close of fact discovery. In the event of a discovery dispute regarding entries on any supplemental privilege logs, the parties agree to meet and confer consistent with Magistrate Judge Lloyd's Standing Order Re: Civil Discovery Disputes. If the parties remain at impasse and submit a Joint Report relating to the supplemental privilege log, no party will use the close of fact discovery as a basis for opposing production of documents identified for the first time on the supplemental privilege log. This agreement applies only to documents identified for the first time on a supplemental privilege log, which may be identified at or near the close of fact discovery.

### d.     Stipulated Protective Order

1      The parties agree that a stipulated protective order should be entered and further agree to use
2   the Northern District of California model Stipulated Protective Order For Litigation Involving
3   Patents, Highly Sensitive Confidential Information and/or Trade Secrets as a basis for their own
4   stipulated protective order.

5               **e.      E-Mail Service Agreement**

6      The parties have agreed to accept service of discovery requests, discovery responses, expert
7   reports and other documents that are not served through the ECF system (for example, sealed
8   pleadings) by e-mail.

9      Email service to LSI/Agere should be made to all counsel of record, the following
10  individuals, and any other individuals designated by the parties:
11  lsirandbok@kilpatricktownsend.com.   Email service to Realtek should be made to all counsel of
12  record, the following individuals, and any other individuals designated by the parties:  rszz-
13  RealtekRAND@ReedSmith.com

14     **9.      Class Actions**
15     This is not a class action.

16     **10.     Related Cases**
17      The parties are not aware of any related cases in the Northern District of California.  As set
18  forth above, there is an ongoing ITC investigation based on LSI/Agere's allegations that Realtek's
19  WLAN products infringe the alleged essential patents.   Realtek has also initiated an action in the
20  Northern District of California based on LSI/Agere's alleged infringement of Realtek patents (Case
21  No. 12-cv-03437 EJD).  That case involves the same parties but there is no overlap with the issues in
22  this case.

23     **11.     Relief**
24      Realtek seeks: (a) a judicial declaration that LSI/Agere is liable for breach of contract; (b) a
25  judicial declaration that LSI/Agere is liable for promissory estoppel; (c) a judicial declaration that
26  LSI/Agere has violated the California Unfair Competition Law and an order enjoining LSI/Agere's
27  further violations of that Law; (d) a judicial declaration that Decree that Realtek is entitled to license
28  any and all patents that fall within LSI/Agere's commitments to the IEEE in relation to WLAN

1 technology, including the alleged essential patents, on a non-discriminatory basis on reasonable
2 terms and conditions; (e) an order enjoining LSI/Agere from further demanding excessive royalties
3 from Realtek that are not consistent with their RAND obligations, and from enforcing, or seeking to
4 enforce, patent infringement claims in the ITC (or elsewhere) in breach of their RAND obligations
5 as alleged above; (f) a judicial declaration that if LSI/Agere refuse to offer Realtek a license on a
6 non-discriminatory basis on reasonable terms and conditions, that LSI/Agere's alleged essential
7 patents are unenforceable as to Realtek and its products; (g) judgment against LSI/Agere in the
8 amount of damages that Realtek has suffered as a result of LSI/Agere's breaches, broken promises,
9 and unfair competition; (h) judgment awarding Realtek its expenses, costs, and attorneys' fees; and
10 (i) such other and further relief as the Court deems just and proper.

11 At this time, LSI/ Agere seeks judgment in its favor and an award of its expenses, costs,
12 attorneys' fees, and such other and further relief as the Court deems just and proper.

### 12. Settlement and ADR

The parties complied with ADR Local Rule 3-5 by meeting and conferring on August 24, 2012 about ADR and ADR process selection.  With regard to ADR process, the parties have agreed that private, non-binding mediation is the appropriate process.  However, the parties also have agreed that it would not be productive to engage in mediation at this time given the ongoing ITC proceeding.  The parties have therefore agreed to defer mediation until after close of fact discovery.

### 13. Consent to Magistrate Judge for All Purposes

The parties do not agree to consent to a magistrate for all purposes.

### 14. Other References

The parties do not believe the case is appropriate for binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

### 15. Narrowing of Issues

There are several issues that may be narrowed, if not eliminated, before any trial in this case. Such issues may include, but are not limited to, each party's conduct and statements before the initiation of this action and the IEEE's adoption and release of the relevant 802.11 standards and amendment thereto after receipt of Agere's Letters of Assurance.  The parties further agree that

1  certain issues in the case may be amenable to early motions for summary judgment.  The parties will
2  meet and confer regarding such stipulated facts and if possible prepare a Summary of Stipulated
3  Facts and submit the Summary to the Court before the deadline to submit dispositive motions, and
4  again before trial, if any.

5  **16.    Expedited Trial Procedure**

6  This case is not appropriate for a formal expedited trial procedure under General Order 64.
7  The parties propose schedules as set forth in Appendix A.

8  **17.    Scheduling**

9  The parties have set forth a statement of their positions along with their respective scheduling
10 proposals in Appendix A.  All parties reserve rights to seek additional time by agreement or upon a
11 showing of good cause.

12 **18.    Trial**

13 Realtek has requested that this case be tried to a jury, in the event that it is not resolved at the
14 dispositive motion stage.  The parties currently anticipate that the total trial will not last longer than
15 six business (6) days.

16 **19.    Disclosure of Non-Party Interested Entities or Persons**

17 Each party has filed the "Certification of Interested Entities of Persons" required by Civil
18 Local Rule 3-16.

19 Realtek stated:  Pursuant to Civil L.R. 3-16, the undersigned certified that as of this date,
20 other than the named parties, there is no such interest to report. [Dkt. No. 2.]

21 LSI/Agere stated:  Pursuant to Civil L.R. 3-16, the undersigned certified that Agere Systems
22 LLC is a wholly-owned subsidiary of LSI Corporation and that BlackRock, Inc. owns approximately
23 17% of the stock in LSI Corporation.  No other publically-held corporation owns 10% or more of the
24 stock of LSI Corporation or Agere Systems LLC. [Dkt. No. 25]

25 **20.    Any other such matters that may facilitate the just, speedy and inexpensive**
26 **disposition of this matter**

27 The parties are not aware of any such matters.

28

# APPENDIX A

| Event | Realtek's Proposed Deadlines | LSI/Agere's Proposed Deadlines |
|---|---|---|
| Initial Disclosures | 9/28/2012 | 9/28/2012 |
| Initial Case Management Conference (CMC) | 10/5/2012 | 10/5/2012 |
| Fact Discovery Completion | 12/7/2012 | 5/24/2013 |
| Initial Expert Reports Due | 11/28/2012 | 6/28/2013 |
| Rebuttal Expert Reports Due | 12/19/2012 | 7/30/2013 |
| Expert Discovery Completion | 12/28/2012 | 9/13/2013 |
| Last Day to File Dispositive Motions | 12/7/2012 | 10/10/2013 |
| Last Day for Hearing on Dispositive Motions | 1/11/2013 | 12/20/2013 |
| Last Date to meet and confer as set forth in Standing Order Re: Pretrial Preparation (-15 days) | 1/25/2013 | 1/24/2014 |
| Last day to file or lodge materials required in Section B of Standing Order Re: Pretrial Preparation (-10 court days) | 1/28/2013 | 1/31/2014 |
| Last day to file or lodge materials required in Section C of Standing Order Re: Pretrial Preparation (-5 court days) | 2/4/2013 | 2/7/2014 |
| Final Pretrial Conference | 2/11/2013 | 2/13/2014 |
| Trial Begins | 2/25/2013 | 3/3/2014 |

**Realtek Position:**

This is a simple breach of contract case, not a patent infringement case. Realtek denies that its products infringe any valid claim of the LSI/Agere patents, but that fight is already joined in the ITC investigation. As set forth in Realtek's Complaint in this case, LSI/Agere's initiation of the ITC action was itself a breach of their RAND obligations because, among other things, it came with the attendant threat that Realtek may be excluded from the United States market. No RAND deal is possible as long as Realtek faces the threat of an exclusion order in the ITC proceeding. The threat of the exclusion order allows LSI/Agere to realize royalty rates that reflect patent hold-up, rather than the true value of the patents. [Dkt. No. 29-1 pp. 5-6.] *See Apple Inc. v. Motorola Inc.,* --- F.Supp.2d ----, 2012 WL 2376664, *12 (N.D. Ill. June 22, 2012) ("By committing to license its patents on FRAND [fair, reasonable and non-discriminatory] terms, Motorola committed to license the [patent] to anyone willing to pay a FRAND royalty and thus implicitly acknowledged that a

1  royalty is adequate compensation for a license to use that patent"). Realtek therefore seeks a judicial
2  determination of LSI and Agere's liability for its breaches and related relief before the August 19,
3  2013 target date in the ITC investigation.

4      This matter is also particularly suited to an accelerated schedule because discovery has
5  effectively already commenced (and is almost over) in the ITC investigation. The ITC investigation
6  involves the same LSI/Agere patents and Realtek products that are at issue in this case. LSI/Agere
7  has already made a substantial production of licenses and licensing-related correspondence in the
8  ITC investigation, including approximately sixty licenses. Fact discovery will close in the ITC
9  investigation on October 26, 2012, three weeks after the Case Management Conference in this case.
10 The document discovery here will be limited to filling in gaps in these productions.

11     In addition, the legal and factual issues in this case are few and subject to summary judicial
12 determination. There is no legitimate dispute that LSI/Agere made commitments in Letters of
13 Assurance to the IEEE-SA to make available licenses to the alleged essential patents. The industry-
14 wide reliance on Letters of Assurance is well known and not controversial. There is also no
15 legitimate dispute that LSI/Agere sent Realtek a March 7, 2012 letter demanding that Realtek cease
16 and desist alleged infringing activity, without any license offer whatsoever, or that LSI/Agere filed
17 their complaint with the ITC on March 12, 2012, five days later. Finally, there is no legitimate
18 dispute that the only offer that Realtek has ever received from LSI would, if accepted, require
19 Realtek to pay LSI/Agere royalties that exceed the selling price of Realtek's products. Realtek
20 believes that these facts make the case ripe for *at least* partial summary judgment and significantly
21 reduce, if not eliminate, triable issues. *See Microsoft Corp. v. Motorola, Inc.*, 2012 WL 2030098, at
22 *3 (W.D. Wash. June 6, 2012) (partial summary judgment granted that Motorola's Letters of
23 Assurance to the IEEE created a contract and that prospective user of the 802.11 standard was third-
24 party beneficiary).

25     The other RAND-related cases that LSI/Agere relies on for "comparison" are far more
26 factually and legally complex than this case. *Microsoft Corp. v. Motorola, Inc., et al.*, No. 2:10-cv-
27 1823 (W.D. Wash.) involved patent infringement claims in addition to RAND-related issues,
28 requiring a schedule for full-blown *Markman* proceedings. *Apple, Inc. v. Motorola Mobility, Inc.*,

1  No. 11-cv-178 (W.D. Wisc.) involved thirteen different counterclaims by Apple.  *Research in
2  Motion, Ltd. v. Motorola, Inc.*, No. 3:08-cv-284 (N.D. Tex) was even more complex, involving
3  claims for patent infringement, breach of contract, and violations of the antitrust laws.   In contrast to
4  each of those cases, this matter involves only Realtek's breach of contract and related claims.   Thus,
5  contrary to LSI's assertions below, those cases required far longer time to trial than is warranted in
6  this case.

**LSI/Agere Position:**

LSI/Agere contends this case should proceed as proposed by LSI/Agere in Appendix A. Subject to the Court's ruling on LSI/Agere's pending motion to dismiss, the complaint in this case raises many factual and legal issues.  Realtek's complaint raises novel legal theories regarding RAND commitments that few courts have addressed and no court, to LSI/Agere's knowledge, has ever tried.  To date, LSI/Agere knows of only four cases where a breach of contract suit was filed based on a patentees alleged failure to offer licensing terms pursuant to a RAND commitment. Because there is no law to support the theories advanced by Realtek, LSI/Agere expects to raise multiple defenses and require discovery of not only Realtek, but also Realtek's customers, Realtek's licensing partners, the IEEE, and the competitive market for Realtek products.

Moreover, the issues Realtek raises are factually and legally complex.  At least one court, the Western District of Washington in *Microsoft Corp. v. Motorola, Inc.*, No. C10-1823, 2012 WL 2030098, at *12 (W.D. Wash. June 6, 2012), has noted that a determination of whether a RAND offer was unreasonable requires the parties and court to calculate a reasonable royalty for the patent, in other words a full-blown patent infringement damages analysis.  In fact, Realtek seeks a declaration of what constitutes a RAND offer in this case.  Therefore, just one subpart of the breach of contract issues in this case will likely require a patent damages analysis equivalent to the reasonable royalty calculation required by 35 U.S.C. § 284.  Further still, Realtek's unfair competition claims allege harm to the competitive marketplace, which will require an entirely different analysis and more discovery.

The discovery required for these issues is not subsumed in the ITC case.  Most of these issues

1 are not before the ITC (which can only provide injunctive relief) and will require additional
2 discovery. Indeed, Realtek is requesting additional email discovery that was not requested in the
3 ITC. Furthermore, the parties expect to take depositions related to the issues here and despite
4 LSI/Agere's request, Realtek has not committed to bringing its witnesses to the United States for
5 depositions. Thus, it is expected that extra discovery time will be needed to arrange for and take
6 depositions of Realtek in Taiwan or other foreign jurisdictions.

Finally, LSI/Agere's discovery schedule is not significantly different than schedules in other RAND cases. The Complaint in this case was filed at the end of June 2012, and LSI/Agere propose a trial date at the beginning of March 2014. This would represent 20 months between filing and trial. Times to trial for other RAND cases are comparable:

> *Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178 (W.D. Wisc.) – approximately 20 months between filing of case and trial even though parties were also litigating in the ITC.
>
> *Microsoft Corp. v. Motorola, Inc., et al.*, No. 2:10-cv-1823 (W.D. Wash.) – approximately 24 months between filing and trial.
>
> *Research in Motion, Ltd. v. Motorola, Inc.*, No. 3:08-cv-284 (N.D. Tex) – approximately 28 months between filing and the earliest trail date proposed by a party. Case was dismissed 28 months after filing without being scheduled for trial.

Thus, LSI/Agere's proposed schedule comports with and is even shorter than similar cases.

DATED: September 28, 2012.

                Respectfully Submitted,

REED SMITH LLP

By   /s/ *James A. Daire\**
     James A. Daire
     Attorney for Plaintiff
     REALTEK SEMICONDUCTOR CORPORATION

KILPATRICK TOWNSEND & STOCKTON LLP

By   /s/ *Robert J. Artuz*
     David E. Sipiora
     Robert J. Artuz
     Attorneys for Defendants
     LSI CORPORATION and
     AGERE SYSTEMS LLC.

*\* Filer's Attestation: Pursuant to Civil Local Rule 5-1(i) regarding signatures, James A. Daire hereby attests that concurrence in the filing of this document has been obtained.*