1

2

3

4                                                           **E-FILED on**  10/10/2012

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                                  SAN JOSE DIVISION

11

12   REALTEK SEMICONDUCTOR                    No. C-12-03451 RMW
     CORPORATION,
13
                         Plaintiff,
14                                            ORDER GRANTING IN PART AND
            v.                                DENYING IN PART MOTION TO DISMISS
15
     LSI CORPORATION
16   and AGERE SYSTEMS LLC,                   **[Re Docket No. 23]**

17                       Defendants.

18   _____

19         Defendants LSI Corporation ("LSI") and Agere Systems LLC ("Agere") move to dismiss all

20   causes of action in plaintiff's complaint.  Plaintiff opposes the motion.  On October 5, 2012, the

21   court held a hearing to consider defendants' motion.  Having considered the papers submitted by the

22   parties and the arguments of counsel, and for the reasons set forth below, the court grants in part and

23   denies in part the motion.

24                                   **I.  BACKGROUND**

25         This case arises out of defendants' alleged breach of an obligation to license certain patents

26   on reasonable and non-discriminatory ("RAND") terms to companies practicing technical standards

27   promulgated by the Institute of Electrical and Electronics Engineers ("IEEE").

28

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    In brief, standards facilitate the adoption and advancement of new technologies, enable

2    development of products that interoperate with one another, and reduce costs for both suppliers and

3    purchasers.  Compl. ¶¶ 18-19.  At the same time, technical standardization creates a "lock-in" effect

4    and the risk of "patent hold-up."  *Id.* ¶ 21.  To combat these risks, standard development

5    organizations have adopted rules, policies, and procedures requiring participants to disclose relevant

6    intellectual property rights and commit to offering licenses to so-called "essential" patents to any

7    implementer of the standard on RAND terms.  *Id.* ¶¶ 22-24.

8    At issue in this case is the standard for wireless internet connectivity known as "WLAN,"

9    "Wi-Fi," or "802.11."  *Id.* ¶ 25.  WLAN is based on the 802.11 wireless networking standard

10   developed by the IEEE beginning in the early 1990s.  *Id.* ¶ 28.  Since the initial 802.11 protocol was

11   released in 1997, a number of amendments have been issued, including 802.11e and 802.11g.  *Id.*

12   Defendant Agere owns rights in a number of patents and pending applications, including

13   U.S. Patent Nos. 6,452,958 ("the '958 patent") and 6,707,867 ("the '867 patent"), that defendants

14   assert are or may become "essential" to comply with one or more amendments to the 802.11

15   standard.  *Id.* ¶ 33.  Agere is a wholly-owned subsidiary of defendant LSI, who acquired Agere in

16   2007.  *Id.* ¶ 13.  Prior to the releases of the 802.11 protocols, Agere submitted Letters of Assurance

17   pursuant to IEEE bylaws stating it "is prepared to grant a license to an unrestricted number of

18   applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to

19   comply with the [Proposed] IEEE Standard."  *Id.* ¶ 34.  These letters identified the '958 and '867

20   patents as including "one or more claims that may be required to practice" the 802.11e and 802.11g

21   standards.  *Id.*  Plaintiff alleges that the IEEE has relied on these Letters of Assurance in releasing

22   the 802.11 standard and amendments to that standard, and that the IEEE otherwise would have

23   revised the standards to employ alternative technologies or stopped working on the protocols.  *Id.* ¶

24   35.

25   Plaintiff Realtek Semiconductor Corporation ("Realtek") is a designer and supplier of

26   integrated circuits, including for WLAN technology.  *Id.* ¶ 9.  In March 2012, a representative of

27   LSI contacted Realtek and asserted that Realtek products, as incorporated into certain third-party

28   devices, infringe the '958 and '867 patents.  *Id.* ¶ 42.  Less than a week later, defendants filed a

complaint with the U.S. International Trade Commission ("ITC") against Realtek and other respondents alleging, *inter alia*, that Realtek infringed the '958 and '867 patents. *Id.* Based on that complaint, the ITC instituted Investigation No. 337-TA-837 on April 11, 2012. *Id.*

On May 24, 2012, Realtek responded to LSI's letter and requested that LSI and/or Agere disclose the RAND license terms consistent with Agere's contractual obligations. *Id.* ¶ 43. On June 20, 2012, LSI provided license terms to Realtek for the identified "essential" patents.[1] *Id.* Realtek alleges that the effect of the proposal, if accepted, is that Realtek would have to pay a royalty exceeding the selling price of Realtek's products, which Realtek contends is "inherently unreasonable." *Id.* Thus, Realtek alleges, defendants have breached their RAND obligations. *Id.*

Realtek further alleges, on information and belief, that defendants have made licensing proposals to other component manufacturers that included a different royalty structure that did not have the effect of requiring a royalty that exceeds the selling price of the component. *Id.* ¶ 44. Thus, Realtek alleges, defendants have also breached their RAND obligations by failing to license their patents on non-discriminatory terms. *Id.*

Realtek filed the present action against Agere and LSI on June 29, 2012, asserting claims for (1) breach of contract, (2) promissory estoppel, (3) declaratory judgment that defendants must offer Realtek a RAND license or that the alleged "essential" patents are unenforceable as to Realtek, and (4) unfair competition under Cal. Bus. & Prof. Code § 17200.

## II. ANALYSIS

Defendants move to dismiss all four claims in plaintiff's complaint. Defendants argue that the claims for breach of contract and promissory estoppel are insufficiently pleaded and not ripe for adjudication, the declaratory judgment claim is duplicative of other claims and also not ripe, and the

---

[1] Defendants have submitted a copy of the proposal to the court. Decl. of Ryan D. Philips, Exh. A (submitted under seal). "[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Plaintiff's complaint refers to the proposal and its contents, i.e., the terms of the license offer, Compl. ¶ 43, and the proposal's authenticity has not been questioned. Thus, the court will consider the proposal in ruling on defendants' motion.

unfair competition claim lacks allegations of competitive harm or redressable injury. The court addresses each claim in turn.

### A. Breach of Contract

Defendants argue that plaintiff has failed to allege a breach of contract because there is no requirement that defendants' opening proposal be a complete offer of RAND terms. Defendants further argue that parties are required to negotiate in good faith prior to filing suit on RAND commitments, and that the court should not step in until negotiations have reached an impasse. Defendants contend that their initial offer was made in good faith and was clearly an invitation to further discussion and negotiation. Finally, defendants argue that plaintiff is simply asking for an advisory opinion because plaintiff does not allege that it would be willing to accept a RAND license.

Plaintiff responds that defendants' arguments are simply attempts to dispute the factual allegations, which is inappropriate at this stage. Plaintiff argues that it has alleged that defendants' contract required them to make a RAND offer and defendants' bad faith breaches include filing the ITC case before offering any licensing terms and offering inherently unreasonable, unfair, and discriminatory terms. Finally, plaintiff argues that the case is ripe because a concrete and specific dispute exists between the parties and there is no requirement that infringement first be proved or conceded.

### 1. Nature of the Alleged Breach

The parties have identified several relevant cases concerning a patentee's obligations to license standards-essential patents on RAND terms, including under the IEEE's rules and policies. The court finds *Microsoft Corp. v. Motorola, Inc.*, --- F. Supp. 2d ----, 2012 WL 2030098 (W.D. Wash. 2012), particularly instructive. That case, like this one, involved Letters of Assurance sent to the IEEE in connection with the 802.11 standard. *Id.* at *2. On October 21, 2010, Motorola sent a letter to Microsoft offering terms for licensing patents that might be essential to the 802.11 standard. *Id.* at *3. Microsoft filed its complaint on November 9, 2010 alleging that the offered terms were "blatantly unreasonable." *Id.* at *4, *10. It does not appear that Microsoft had attempted to negotiate with Motorola between receiving the October 21 letter and filing suit.

The *Microsoft* court rejected Motorola's argument that Microsoft had repudiated its rights to a RAND license by failing to apply for a license and negotiate its terms: "Although Motorola correctly asserts that the IEEE and ITU Policies contemplate that RAND licenses will be negotiated between the patent holder and the implementer of the standard, it does not follow that negotiating in good faith is a condition precedent to Motorola's promise to grant licenses on RAND terms." *Id.* at *7-9; *see also Apple, Inc. v. Motorola, Inc.*, --- F. Supp. 2d ----, 2012 WL 2376664 at *12 (N.D. Ill. 2012) (Posner, J.) ("Motorola agreed to license its standards-essential patents on FRAND terms as a *quid pro quo* for their being declared essential to the standard. . . . It does not claim to have conditioned agreement on prospective licensees' making counteroffers in license negotiations."). Defendants here have not framed their argument in terms of repudiation, but the *Microsoft* court's decision is relevant because it reflects the court's willingness to entertain the case despite the fact that Microsoft had not engaged in much if any negotiation with Motorola.  In addition, both *Microsoft* and *Apple v. Motorola* suggest that RAND licensing obligations exist independent of whether the parties attempt to negotiate a license.  It follows that, at least to some extent, a breach must be ascertainable without reference to private negotiations.

The *Microsoft* court found, on a motion for summary judgment, that Motorola was not contractually obligated to make an initial offer on RAND terms.  2012 WL 2030098 at *12.  Rather, the court found, Motorola's Letters of Assurance and the IEEE's Intellectual Property Rights Policy focused on the resulting license, not the opening offer, and "envision[] a negotiation between the parties towards a resulting RAND license." *Id.* at *11-12.  At the same time, the *Microsoft* court found that "any offer by Motorola (be it an initial offer or an offer during a back-and-forth negotiation) must comport with the implied duty of good faith and fair dealing inherent in every contract." *Id.* at *12 (citing *Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (Wash. 1991)).  It was possible, the court held, for an initial offer to be so blatantly unreasonable as to breach that duty of good faith; in light of the record, however, the court could not make that determination without first determining what a true RAND royalty rate would be and comparing Motorola's offers against it. *Id.*

**United States District Court**
For the Northern District of California

1    Here, although Realtek asserts the theory rejected by *Microsoft*—that defendants' initial offer

2  had to be on RAND terms—the court cannot conclude, under the liberal pleading standards of a

3  motion to dismiss, that Realtek's complaint fails to state a claim for breach of contract.  Although

4  certain allegations of defendants' obligations are probably more in the nature of legal conclusions

5  that need not be accepted as true, *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009), there is

6  sufficient factual matter to render Realtek's claim plausible.   Realtek's allegations, as a whole,

7  resemble those made by other plaintiffs claiming a breach of RAND obligations.  In *Microsoft*, for

8  example, Microsoft argued that Motorola's proposed royalty rate resulted in "blatantly unreasonable"

9  cash payments of $4 billion per year and applied to a "blatantly unreasonable" base, i.e., the sale

10 price of computers and game consoles rather than the value of the specific component or feature that

11 incorporates the patented invention.  *Id.* at *10.  In *Apple, Inc. v. Motorola Mobility, Inc.*, 2011 WL

12 7324582 (W.D. Wis. 2011), the court found sufficient allegations

> that Motorola has made royalty demands on Apple that exceeded those made on
> comparable parties for use of the declared-essential patents, discriminated against
> Apple by terminating Qualcomm's contract with Motorola solely as to Apple,
> demanded a rate that was based on the total revenue base of Apple's products rather
> than the revenue from the components that utilize the technologies of the declared-
> essential patents, sought to include cross-licenses to certain of Apple's non-essential
> patents as a condition of a licensing agreement and sued Apple when Apple refused
> to accede to Motorola's demands.

*Id.* at *11.  At the least, Realtek's allegations plausibly support a claim that defendants breached

their duty of good faith and fair dealing.[2]

   Defendants argue that a royalty exceeding the selling price of an infringing product is not

inherently unreasonable.  But reasonableness turns on the entirety of the terms and circumstances,

and the court sees no reason the royalty rate as compared to selling price cannot be one relevant

factor.  Defendants also argue that Realtek has failed to identify what terms in the proposal it is

complaining about and has not addressed whether the alternatives made in the initial proposal were

unreasonable as well.  To the extent defendants are suggesting that the proposal was not specific

enough to constitute a concrete offer, that is at best a question of fact the court cannot resolve at this

---

[2]  Although the *Microsoft* court was applying Wisconsin contract law, California law, to the extent it
applies, also imposes an implied duty of good faith in every contract.  *See Harm v. Frasher*, 181 Cal.
App. 2d 405, 417 (1960).  Because the parties have not addressed the choice of law issue, the court
does not rule on what laws should ultimately govern the contract claims in this case.

United States District Court
For the Northern District of California

1    stage. Notably, defendants' initial proposal contains a specific set of terms including a royalty rate

2    and a formula for computing license payments. Phillips Decl., Exh. A at 7, 13. And, although the

3    proposal mentions other possible licensing structures, it explicitly states they are not preferred and

4    further indicates that certain rights will only be licensed under the preferred structure. *See id.* at 9.

5    At this stage, it is inappropriate for the court to undertake a more searching scrutiny of the proposal's

6    content or Realtek's allegations of unreasonableness.

7                        **2.      Ripeness**

8            The court now turns to defendants' argument that the case is not ripe. Defendants argue that,

9    unless Realtek alleges it would accept a license on RAND terms, the court is simply rendering an

10   advisory opinion on the reasonable royalty, from which Realtek can walk away if it so chooses.

11   However, while it is alleged that defendants were contractually bound to offer RAND licenses

12   through their conduct in the IEEE standard-setting process, nothing in the record suggests a parallel

13   contractual obligation by Realtek to accept a license, even on RAND terms. *Cf. Microsoft Corp. v.*

14   *Motorola, Inc.* ("*Microsoft II*"), --- F.3d ----, 2012 WL 4477215 at *10 (9th Cir. 2012) (finding that,

15   in exchange for promises to license its standards-essential patents to all comers, Motorola "received

16   the benefit of having its patents implicated in the standards"). As a matter of patent rights, whether

17   and how much Realtek must pay is not determined until issues of infringement, invalidity, and

18   reasonable royalty have all been resolved. Moreover, there is no rule that any one of those issues

19   must be decided before the others. *See generally Angelo v. Armstrong World Indus., Inc.*, 11 F.3d

20   957, 964 (10th Cir. 1993) (finding so-called "reverse bifurcation," i.e. trial of damages before

21   liability, to be authorized under Fed. R. Civ. P. 42(b)). Thus, it seems Realtek can simultaneously

22   pursue a determination of the RAND royalty rate while denying infringement or asserting invalidity,

23   even though those issues may ultimately obviate the need for a license. In addition, Realtek has

24   argued that the threat of an exclusion order by the ITC may allow a patentee to extract excessive

25   royalties. Dkt. No. 28 at 8:9-15 (quoting Dkt. No. 29-1 (Federal Trade Commission's Statement on

26   the Public Interest in ITC Inv. No. 337-TA-735)). The court finds it plausible that, once the patentee

27   interposes the threat of an injunction, the standard implementer is placed at a bargaining

28

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS—No. C-12-03451 RMW
LJP                                                      7

United States District Court
For the Northern District of California

1   disadvantage in private negotiations such that the determination of a true RAND rate almost

2   necessarily must be conducted by a court.

3       Defendants argue that, if Realtek can seek a court determination of RAND terms that it may

4   ultimately reject, defendants are similarly entitled to pursue their patent rights, including an

5   exclusion order from the ITC.  However, courts have questioned whether injunctive relief is

6   appropriate where a patent is encumbered by RAND licensing obligations.  *See Microsoft II*, 2012

7   WL 4477215 at *10 ("[H]owever the RAND rate is to be determined . . . , injunctive relief against

8   infringement is arguably a remedy inconsistent with the licensing commitment."); *Apple v.*

9   *Motorola*, 2012 WL 2376664 at *12 ("By committing to license its patents on FRAND terms,

10  Motorola . . . implicitly acknowledged that a royalty is adequate compensation for a license to use

11  that patent.").  The parties do not dispute that defendants could pursue an injunction to enforce a

12  court determination that Realtek must pay specified damages, but neither this case nor the ITC

13  proceeding has approached that stage.  The court is troubled by defendants' decision to choose, in

14  the first instance, a forum for enforcing their patent rights in which money damages are unavailable

15  and the only relief is injunctive in nature.  Since defendants have done so, there appears even less

16  reason for this court to wait before determining the reasonable royalty rate, which is all defendants

17  are initially entitled to.  Thus, the motion to dismiss Realtek's breach of contract claim is denied.

18      **B.**    **Promissory Estoppel**

19      Both sides contend that Realtek's promissory estoppel claim rises or falls on the same

20  arguments as the breach of contract claim.  Thus, for the reasons discussed above, the motion to

21  dismiss this claim is denied.

22      **C.**    **Declaratory Judgment**

23      Defendants argue that Realtek's claim for declaratory judgment is duplicative of Realtek's

24  earlier claims because it seeks the same relief and adds no new dimension or theory of liability.  In

25  light of its analysis above of Realtek's contract claim, the court finds the declaratory judgment claim

26  sufficiently distinct at this stage.  For example, Realtek seeks a declaratory judgment setting forth

27  the terms and conditions for a license on RAND terms.  Compl. ¶ 69.  Although the *Microsoft* court

28  found it necessary to determine those terms to adjudicate Microsoft's contract claim, the court also

United States District Court
For the Northern District of California

1   stated it "can envision a situation where an offer is so exorbitant and unjustified that it breaches the

2   patentee's duty to offer in good faith without needing to weigh it against a true RAND agreement."

3   2012 WL 2030098 at *12-13.  The court cannot know at this stage how Realtek's claims will unfold.

4   In addition, as discussed above, the determination of a reasonable royalty is part of a live

5   controversy between the parties over defendants' claims of patent infringement, which is

6   independent of whether defendants breached the alleged contract.  Thus, the motion to dismiss the

7   declaratory judgment claim is denied.

8         **D.**        **Unfair Competition Under § 17200**

9         Defendants argue that Realtek has failed to allege competitive harm supportive of a § 17200

10   claim.  *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 197 (1999)

11   (holding an "unfair" act or practice under § 17200 "means conduct that threatens an incipient

12   violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects

13   are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms

14   competition").  Defendants rely on *ESS Technology, Inc. v. PC-Tel, Inc.*, 1999 WL 33520483 at *3

15   (N.D. Cal. 1999), in which this court found the plaintiff "failed to sufficiently allege injury to

16   competition beyond the impact on plaintiff."  While the plaintiff had alleged that the defendant's

17   practices unfairly discriminated against latecomers to the market, foreclosed market entry, and

18   diminished consumer choice, the court found there was no injury to competition because "[t]here is

19   no allegation that consumers have been forced to pay higher prices or that the quality of the choices

20   available to them has been adversely affected." *Id.*

21         Realtek argues that it has alleged specific injury to the entire WLAN product market, not just

22   Realtek.  However, even in making that argument, Realtek focuses on the alleged impact on Realtek

23   itself.  *See* Dkt. No. 28 at 12:12-28.  Similarly, at the hearing, counsel argued that Realtek had been

24   harmed by being sued in the ITC, with the attendant defense costs and threat of an exclusion order,

25   and in not receiving the benefit of the bargain of a RAND offer.  As to impact on competitors and

26   consumers, Realtek only argues that, if defendants license at royalty rates that exceed the selling

27   price of the licensed product, they "will force competitors *such as Realtek* to increase prices in the

28   downstream market in order to sell the product." *Id.* (emphasis added).  However, Realtek alleges

1   that it has been treated differently than similarly-situated prospective licensees.  Compl. ¶ 44.  Thus,

2   taken as a whole, Realtek's factual allegations do not plausibly suggest that other competitors or

3   consumers will be adversely affected.  *But see Apple v. Motorola Mobility*, 2011 WL 7324582 at *3,

4   *14 (upholding antitrust claim on similar allegations).  At most, Realtek's allegations support the

5   suggestion that competitors are harmed in their ability to invest in and bring to market innovative

6   products because, through the alleged conduct towards Realtek, other manufacturers lack

7   "confidence that holders of claimed essential patents will not seek to enjoin their products or

8   demand exorbitant, non-RAND licensing terms."  Compl. ¶ 75.  However, the impact such

9   diminished confidence would have on competition is too speculative to meet the plausibility

10  standard.  Thus, because Realtek fails to allege harm to competition, the § 17200 claim is dismissed.

### III.  ORDER

12          For the foregoing reasons, the court grants in part and denies in part defendants' motion to

13  dismiss.  Realtek's claim for unfair competition under § 17200 is dismissed.  The remainder of the

14  motion to dismiss is denied.

15          The court further sets this case for a status conference on December 7, 2012 at 10:30 a.m. to

16  determine what discovery remains to be done and for further scheduling.  The parties are to file a

17  joint case management statement by November 30, 2012 including a summary of the discovery

18  completed, what good faith efforts have been made to do the discovery that has not been completed,

19  and the status of the ITC investigation.

22  DATED:          October 10, 2012

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge