Scott D. Baker (SBN 84923)
Email: sbaker@reedsmith.com
William R. Overend (SBN 180209)
Email: woverend@reedsmith.com
Adrian Sue Shin (SBN 256960)
Email: sshin@reedsmith.com
James A. Daire (SBN 239637)
Email: jdaire@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Telephone:  (415) 543-8700
Facsimile:  (415) 391-8269

Steven S. Baik (SBN 184622)
Email: sbaik@reedsmith.com
Carina M. Tan (SBN 185015)
carinatan@reedsmith.com
REED SMITH LLP
1510 Page Mill Road, Suite 110
Palo Alto, CA 94304
Tel:  (650) 352-0500
Fax:  (650) 352-0699

Attorneys for Plaintiff
REALTEK SEMICONDUCTOR CORPORATION

KILPATRICK TOWNSEND & STOCKTON LLP
DAVID E. SIPIORA (State Bar No. 124951)
1400 Wewatta Street, Suite 600
Denver, CO 80202-5556
Telephone: (303) 571-4000
Facsimile:  (303) 571-4321
Email:   dsipiora@kilpatricktownsend.com

KILPATRICK TOWNSEND & STOCKTON LLP
ROBERT J. ARTUZ (State Bar No. 227789)
1080 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 326-2400
Facsimile:  (650) 326-2422
Email:   rartuz@kilpatricktownsend.com

Attorneys for Defendants LSI CORPORATION and AGERE SYSTEMS LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| REALTEK SEMICONDUCTOR CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>LSI CORPORATION and AGERE SYSTEMS LLC<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No. 5:12-cv-03451 RMW<br><br>**SUPPLEMENTAL JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:  December 7, 2012<br>Time:  10:30 a.m.<br><br>Honorable Ronald M. Whyte |

In accordance with Federal Rule of Civil Procedure 26(f), Civil Local Rule 16-9 and Docket No. 41, Plaintiff Realtek Semiconductor Corporation and Defendants LSI Corporation and Agere Systems LLC ("LSI/Agere") respectfully submit the following Supplemental Joint Case Management Statement in preparation for the December 7, 2012 Case Management Conference.

**1.     Jurisdiction and Service**

The parties know of no jurisdictional disputes at this time.

**2.     Facts**

Non-party the Institute of Electrical and Electronics Engineers ("IEEE") and its internal Standards Association ("IEEE-SA") are responsible for developing the 802.11 wireless networking standard and a number of amendments thereto.  The IEEE's Intellectual Property Rights policy ("IPR policy") states that IEEE standards may be drafted in terms that include the use of "Essential Patent Claims."  If so-called "Essential Patent Claims" are to be included in a standard, the disclosing patent holder is asked for a Letter of Assurance.  The Letter of Assurance must include either: (a) a commitment that the holder will not enforce any of its "essential patents;" or (b) a statement that a license to the "essential patents" will be made available to an unrestricted number of applicants on a worldwide basis without compensation or under reasonable rates, with reasonable, non-discriminatory terms and conditions ("RAND terms"). If the patent holder does not provide the Letter of Assurance or otherwise communicates that it is not prepared to offer RAND terms, the IEEE may take steps to avoid the patented technology before developing and adopting the standard.

Prior to the IEEE's adoption of 802.11 standards relevant to this case, Defendant Agere submitted Letters of Assurance to the IEEE stating that it would make available licenses to U.S. Patent No. 6,452,958 and the patent application that issued as Patent No. 6,707,867 (the "LSI/Agere patents") on RAND terms to the extent required to practice the relevant IEEE standards.  Agere was subsequently acquired by Defendant LSI and is currently a wholly-owned subsidiary of LSI.

In a March 7, 2012 cease and desist letter, LSI asserted that Realtek's wireless local network products infringe the LSI/Agere patents.  Realtek denies any infringement and does not concede that the LSI/Agere patents are essential to any relevant standard.  On March 12, 2012, LSI/Agere filed a complaint with the U.S. International Trade Commission ("ITC") against Realtek and others,

seeking to enjoin all Respondents from implementation of the technology of the alleged essential patents. The ITC instituted an investigation based on LSI/Agere's complaint (Inv. No. 337-TA-837).

Realtek responded to LSI's letter on May 24, 2012, requesting that LSI/Agere disclose the RAND terms for the LSI/Agere patents. On June 20, 2012, LSI/Agere provided what it contends was an initial RAND license proposal. Realtek contends that, if accepted, LSI/Agere's proposal would require Realtek to pay LSI/Agere royalties that exceed the selling price of Realtek's products. Realtek did not respond to the June 20, 2012 proposal and initiated this action on June 29, 2012 for (1) breach of contract, (2) promissory estoppel, (3) declaratory judgment, and (4) unfair competition under California Business & Professions Code § 17200.

### 3. Legal Issues

The principal legal issues in dispute are: (1) whether LSI/Agere entered into a contract; (2) whether LSI/Agere breached any contract; (3) whether Realtek is a third party beneficiary of any contract; (4) whether Realtek repudiated or rejected the benefits of the contract; and (5) if liability is established against LSI/Agere, the appropriate declaratory and injunctive relief, and the proper measure of damages. Realtek and LSI/Agere anticipate filing dispositive motions, including motions for summary judgment as to each of Realtek's claims and, potentially, motions for partial summary judgment.

### 4. Motions

LSI/Agere filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). The Court issued an order on October 10, 2012 granting the motion to dismiss with respect to Realtek's claim for unfair competition and denying the motion with respect to the remaining claims. Realtek and LSI/Agere anticipate filing dispositive motions, including motions for summary judgment as to each of Realtek's claims and, potentially, motions for partial summary judgment.

### 5. Amendment of Pleadings

The parties propose a deadline of January 11, 2013 for the amendment of pleadings without leave of court.

**6.     Evidence Preservation**

The parties have taken reasonable steps to ensure proper maintenance of discoverable materials relevant to this case.

**7.     Disclosures**

The parties have exchanged initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1). The parties reserve their respective rights to supplement their disclosures as discovery proceeds.

**8.     Discovery and Discovery Plan**

The parties agree to abide by the discovery limitations set forth in the Federal Rules of Civil Procedure, subject to the modifications set forth below.

The parties intend to pursue discovery in the form of requests for production of documents and things, interrogatories, depositions, and other forms of discovery authorized by the Federal Rules. Generally speaking, and without waiving any appropriate objections, contemplated discovery may include LSI/Agere's communications with and representations to the IEEE, the IEEE's understanding of RAND terms and commitments, the understanding of RAND terms and licensing procedure in the industry, LSI/Agere's licenses and offers to license to Realtek and others (and documents/communications related thereto), Realtek patent licensing practices and communications, the relevant IEEE IPR policies, facts associated with the calculation of a reasonable royalty to the LSI/Agere patents, Realtek's profits, Realtek's customers, Realtek products and product image, the market for LSI/Agere products and downstream products, and the market for Realtek products and downstream products. An additional summary of the parties' discovery to date and good faith efforts to complete discovery as requested by the Court's October 10, 2012 order are provided in each parties' position statement in Appendix A.

The parties agree to produce final, rather than draft, marketing and/or financial materials and summary financial materials in lieu of all invoices, receipts, purchase orders, etc. A producing party shall be required to produce drafts of specific marketing and/or financial materials only upon a determination (by either the producing party or the Court) that the requesting party has made a showing of good cause to warrant their production.

The parties further agree that expert discovery should be limited pursuant to Rule 26 of the Federal Rules of Civil Procedure, and agree to exclude the following categories of documents and things from expert discovery: (1) drafts of expert reports and expert declarations; (2) written communications between a testifying expert witness and the attorneys of the party retaining the expert relating to the subject of the expert's retention in this case, including the preparation of expert reports, expert declarations and trial testimony. In addition to the limitations imposed by Rule 26, the parties further agree that to exclude the following categories of documents and things from expert discovery: (1) all notes, memoranda and other writings prepared by an expert witness in connection with the expert witness' engagement for this case, except to the extent that the expert consults them while testifying at a deposition or at trial; and (2) documents and/or things reviewed by a testifying expert witness but not relied upon by the witness to draft his or her expert report. Notwithstanding the above, the following shall <u>not</u> be excluded from discovery: (1) communications pertaining to the expert's compensation; (2) facts or data that the attorney provided and the expert relied upon in forming opinions offered in this litigation; and (3) assumptions that the attorney provided and that the expert relied on in forming opinions offered in this litigation.

Fact discovery in the ITC proceeding is ongoing and the target date for completion of the investigation is now November 19, 2013. In light of the ITC proceeding between the parties, each producing party shall provide each receiving party with a copy of all document productions made in the ITC proceeding and refer the receiving party to said documents in response to any appropriate discovery request. The document productions made in this case will be covered under the protective order entered into in this case. Unless prohibited under the ITC's Protective Order, each producing party shall also provide each receiving party with a copy of the producing party's interrogatory responses and any deposition transcripts from the ITC investigation. Subject to the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Local Rules of this Court, and any protective order in this case, the provided discovery from the ITC case may be used in this case for all purposes.

a.     **Modification of Discovery Rules**

The parties seek the following modifications of the discovery rules, and they reserve all rights to seek further modifications as necessary. They agree to meet and confer in good faith if further modifications are sought and if a discovery dispute arises.

1. Each side may serve up to fifty (50) requests for admission on the other side. Notwithstanding the foregoing, there shall be no limitations on the number of requests for admission any party may use solely for the purpose of authentication of evidence.

2. Each side may serve up to forty (40) interrogatories on the other side.

3. The total number of fact depositions, including Rule 30(b)(6) depositions, third party depositions, and other individual depositions, shall be limited to 10. The parties reserve all rights to seek additional depositions, either by stipulation or leave of court, should circumstances warrant more than 10 depositions.

4. The parties will meet and confer on increasing the 7 hour time limit for particular depositions on an as needed basis, including but not limited as to 30(b)(6) witnesses designated on multiple subjects.

5. LSI/Agere contends that Realtek should make its employees available for deposition in the United States. Realtek does not agree to LSI/Agere's blanket request to make any and all employees available for deposition in the United States, but will meet and confer with LSI/Agere on this issue as discovery continues and LSI/Agere seek specific depositions.

b.     **Electronically-Stored Information**

The parties anticipate that they have or will produce relevant or potentially relevant electronically-stored information ("ESI") from the ITC proceeding as noted previously. To the extent that any producing party produces additional ESI, Microsoft Excel files or similar spreadsheet files shall be produced in native format. All other ESI, shall be produced in single-page, text searchable Tagged Image File Format (".tiff"). In addition, the parties also agree not to unreasonably refuse to produce other individual documents in native format upon the request of a producing party.

With respect to e-mail, and without limitation to other discovery requests for emails, the parties agree to conduct a reasonable search of its relevant e-mail servers and accounts for any e-mail related to (1) negotiations to license the LSI/Agere Patents on reasonable and non-discriminatory terms and (2) communications with IEEE regarding the LSI/Agere Patents.

### c.  Issues Re Claims of Privilege and Work Product

The parties agree that the Court should enter an order governing non-waiver of privilege due to inadvertent disclosure of privileged information and anticipate that such a provision will be included in the proposed Protective Order they submit to the Court.  The parties agree that no party shall be obligated to log privileged and/or work product documents created after March 12, 2012, when LSI/Agere filed its ITC complaint. The parties further agree to exchange initial privilege logs for documents withheld from production no later than January 4, 2012.

The parties agree that any party may supplement its privilege log to the extent that additional documents are withheld before the close of fact discovery.  In the event of a discovery dispute regarding entries on any supplemental privilege logs, the parties agree to meet and confer consistent with Magistrate Judge Lloyd's Standing Order Re: Civil Discovery Disputes.  If the parties remain at impasse and submit a Joint Report relating to the supplemental privilege log, no party will use the close of fact discovery as a basis for opposing production of documents identified for the first time on the supplemental privilege log.  This agreement applies only to documents identified for the first time on a supplemental privilege log, which may be identified at or near the close of fact discovery.

### d.  Stipulated Protective Order

The parties submitted a proposed Stipulated Protective Order, which the Court signed on November 2, 2012.

### e.  E-Mail Service Agreement

The parties have agreed to accept service of discovery requests, discovery responses, expert reports and other documents that are not served through the ECF system (for example, sealed pleadings) by e-mail.

Email service to LSI/Agere should be made to all counsel of record, the following individuals, and any other individuals designated by the parties:

1  lsirandbok@kilpatricktownsend.com.   Email service to Realtek should be made to all counsel of

2  record, the following individuals, and any other individuals designated by the parties:  rszz-

3  RealtekRAND@ReedSmith.com

**9.    Class Actions**

This is not a class action.

**10.    Related Cases**

The parties are not aware of any related cases in the Northern District of California.  As set forth above, there is an ongoing ITC investigation based on LSI/Agere's allegations that Realtek's WLAN products infringe the alleged essential patents.   Realtek has also initiated an action in the Northern District of California based on LSI's alleged infringement of Realtek patents (Case No. 12-cv-03437 EJD).  That case involves the same parties but there is no overlap with the issues in this case.  It is currently stayed because of second ITC investigation based on Realtek's allegations that LSI and Seagate Technology are infringing the Realtek patents (Inv. No. 337-TA-859).

**11.    Relief**

Realtek seeks: (a) a judicial declaration that LSI/Agere is liable for breach of contract; (b) a judicial declaration that LSI/Agere is liable for promissory estoppel; (c) a judicial declaration that Decree that Realtek is entitled to license any and all patents that fall within LSI/Agere's commitments to the IEEE in relation to WLAN technology, including the alleged essential patents, on a non-discriminatory basis on reasonable terms and conditions; (d) an order enjoining LSI/Agere from further demanding excessive royalties from Realtek that are not consistent with their RAND obligations, and from enforcing, or seeking to enforce, patent infringement claims in the ITC (or elsewhere) in breach of their RAND obligations as alleged above; (e) a judicial declaration that if LSI/Agere refuse to offer Realtek a license on a non-discriminatory basis on reasonable terms and conditions, that LSI/Agere's alleged essential patents are unenforceable as to Realtek and its products; (f) judgment against LSI/Agere in the amount of damages that Realtek has suffered as a result of LSI/Agere's breaches and broken promises; (g) judgment awarding Realtek its expenses, costs, and attorneys' fees; and (h) such other and further relief as the Court deems just and proper.

LSI/Agere seeks: (a) judgment in its favor on Realtek's Claims; (b) a judgment that

1  LSI/Agere have fully complied with any RAND obligation owed to Realtek; (c) a judgment that

2  Realtek has rejected or repudiated any right to a RAND license under the patents; (d) a judgment

3  that LSI/Agere have a right to seek an injunction and/or exclusion order for Realtek's infringement

4  of the patents; (e) judgment awarding LSI/Agere all costs of the suit; and (f) an award of its

5  expenses, costs, attorneys' fees, and such other and further relief as the Court deems just and proper.

6  **12.  Settlement and ADR**

7  The parties have agreed to defer mediation until after close of fact discovery.

8  **13.  Consent to Magistrate Judge for All Purposes**

9  The parties do not agree to consent to a magistrate for all purposes.

10  **14.  Other References**

11  The parties do not believe the case is appropriate for binding arbitration, a special master, or

12  the Judicial Panel on Multidistrict Litigation.

13  **15.  Narrowing of Issues**

14  There are several issues that may be narrowed, if not eliminated, before any trial in this case.

15  Such issues may include, but are not limited to, each party's conduct and statements before the

16  initiation of this action and the IEEE's adoption and release of the relevant 802.11 standards and

17  amendment thereto after receipt of Agere's Letters of Assurance. The parties further agree that

18  certain issues in the case may be amenable to early motions for summary judgment. The parties will

19  meet and confer regarding such stipulated facts and if possible prepare a Summary of Stipulated

20  Facts and submit the Summary to the Court before the deadline to submit dispositive motions, and

21  again before trial, if any.

22  **16.  Expedited Trial Procedure**

23  This case is not appropriate for a formal expedited trial procedure under General Order 64.

24  The parties propose schedules as set forth in Appendix A.

25  **17.  Scheduling**

26  The parties have set forth a statement of their positions along with their respective scheduling

27  proposals in Appendix A. All parties reserve rights to seek additional time by agreement or upon a

28  showing of good cause.

**18.    Trial**

Realtek has requested that this case be tried to a jury, in the event that it is not resolved at the dispositive motion stage. The parties currently anticipate that the total trial will not last longer than six (6) court days.

**19.    Disclosure of Non-Party Interested Entities or Persons**

Each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-16.

Realtek stated:  Pursuant to Civil L.R. 3-16, the undersigned certified that as of this date, other than the named parties, there is no such interest to report. [Dkt. No. 2.]

LSI/Agere stated:  Pursuant to Civil L.R. 3-16, the undersigned certified that Agere Systems LLC is a wholly-owned subsidiary of LSI Corporation and that BlackRock, Inc. owns approximately 17% of the stock in LSI Corporation. No other publically-held corporation owns 10% or more of the stock of LSI Corporation or Agere Systems LLC. [Dkt. No. 25]

**20.    Any other such matters that may facilitate the just, speedy and inexpensive disposition of this matter**

The parties are not aware of any such matters.

# APPENDIX A

| Event | Realtek's Proposed Deadlines | LSI/Agere's Proposed Deadlines |
|---|---|---|
| Fact Discovery Completion | 2/7/2013 | 5/24/2013 |
| Initial Expert Reports Due | 2/8/2013 | 6/28/2013 |
| Rebuttal Expert Reports Due | 3/1/2013 | 7/30/2013 |
| Expert Discovery Completion | 3/15/2013 | 9/13/2013 |
| Last Day to File Dispositive Motions | 2/15/2013 | 10/10/2013 |
| Last Day for Hearing on Dispositive Motions | 3/22/2013 | 12/20/2013 |
| Last Date to meet and confer as set forth in Standing Order Re: Pretrial Preparation (-15 days) | 5/2/2013 | 1/24/2014 |
| Last day to file or lodge materials required in Section B of Standing Order Re: Pretrial Preparation (-10 court days) | 5/9/2013 | 1/31/2014 |
| Last day to file or lodge materials required in Section C of Standing Order Re: Pretrial Preparation (-5 court days) | 5/16/2013 | 2/7/2014 |
| Final Pretrial Conference | 5/23/2013 | 2/13/2014 |
| Trial Begins | 6/17/2013 | 3/3/2014 |

**Realtek Position:**

This remains a simple breach of contract case.  Realtek has amended its proposed schedule and moved the trial date from March 2013 to June 2013 in a good faith effort to accommodate LSI/Agere's scheduling concerns.  LSI/Agere's proposed schedule, following on the heels of their rejected Motion to Dismiss, would further delay resolving the merits of this case.  The Court should adopt Realtek's schedule, particularly given that LSI/Agere actually sued Realtek first (in the ITC proceeding) and that the Court "is troubled by [LSI/Agere's] decision to choose, in the first instance, a forum for enforcing their patent rights in which money damages are unavailable and the only relief is injunctive in nature." [Dkt. No. 41 p. 8:13-15.]

As framed by LSI/Agere's own declaratory judgment claims (seeking a finding of no breach and/or that Realtek rejected or repudiated the contract), the legal and factual issues in this case are few and subject to summary judicial determination. There is no legitimate dispute that LSI/Agere made commitments in Letters of Assurance to the IEEE-SA to make available licenses to the alleged

essential patents. There is also no legitimate dispute that LSI/Agere sent Realtek a March 7, 2012 letter demanding that Realtek cease and desist alleged infringing activity, without any license offer whatsoever, or that LSI/Agere filed their complaint with the ITC on March 12, 2012, five days later. Finally, there is no legitimate dispute that the only offer that Realtek has ever received from LSI would, if accepted, require Realtek to pay LSI/Agere royalties that exceed the selling price of Realtek's products.  LSI/Agere contends that this offer satisfied its obligations and that Realtek's purported failure to negotiate with LSI/Agere in response to this conduct is effectively a repudiation or rejection of the benefits of a RAND license.  Realtek disputes that it failed to negotiate in good faith, especially given LSI/Agere's initial demand that Realtek "cease and desist" and second demand that Realtek accept a patently unreasonable license against the backdrop of a potential exclusion order in the ITC proceeding.   These are not issues which require months and months of fact discovery.

The case for an accelerated schedule has only gotten stronger since the Court's initial Case Management Conference.  As set forth below, LSI/Agere has delayed completing their responses to Realtek's discovery requests, which Realtek served at the first available opportunity and has actively pursued since.  Were the Court to enter an accelerated schedule, LSI/Agere would either complete its discovery responses or the parties would submit their remaining discovery issues to Magistrate Judge Lloyd for prompt resolution.

<u>Summary of Discovery Completed</u>:  Realtek sought written discovery of LSI/Agere on the same take as the parties Rule 26 Conference.  Since then, Realtek has completed two rounds of written discovery to LSI/Agere and is subpoenaing third party licensees of LSI/Agere in possession of relevant information.  Realtek's subpoenas to these third parties were delayed because LSI/Agere claimed it needed to notify or get consent from the various licensees before producing the licenses in this case.  That process remains ongoing.  LSI/Agere has represented to Realtek that it is still in the process of notifying some licensees, and so LSI/Agere's license production is not yet complete. Consequently, Realtek anticipates additional subpoenas to third party licensees and other percipient third parties as they are identified.

<u>Good Faith Efforts to Complete Discovery</u>:  Realtek requested initial depositions of

LSI/Agere witnesses (including Ryan Phillips, a percipient witness with knowledge of the licensing offer that LSI/Agere made to Realtek, and various 30(b)(6) topics) on August 24, 2012. Realtek is still waiting for LSI/Agere to confirm dates for these depositions. LSI/Agere has recently represented that they will make the witnesses available sometime during the first two weeks of January 2013. Realtek also anticipates deposing LSI/Agere licensees as they are identified.

Realtek has also requested documents relating to LSI/Agere's negotiations with potential licensees, especially in light of LSI/Agere's contention that their licensing offer to Realtek was a "high level proposal" meant to spur additional licensing negotiations. LSI/Agere has represented that this production will be complete in mid-December.

Realtek has also requested a limited deposition of LSI CEO Abhi Talwalker, owing to an email exchange he had with Realtek's Vice President of Marketing during which Mr. Talwalkar purported to reveal the reasons that LSI/Agere named Realtek as a proposed respondent in the ITC action without making any initial licensing offer, the reasons LSI/Agere maintained their complaint against Realtek throughout the ITC proceeding, LSI/Agere's position that it "called out Funai's suppliers (such as Realtek) to ensure that Funai suppliers produced sufficient documentation," and LSI/Agere's "intent to remove" Realtek from the ITC proceedings. LSI/Agere has refused to produce Mr. Talwalkar, and the parties anticipate submitting this issue to Magistrate Judge Lloyd.

Status of ITC Action: Since the initial Case Management Conference, the applicable deadlines in the ITC Action have been extended. Currently, fact discovery in the ITC action will close January 18, 2013. The evidentiary hearing is set for April 2, 2013, the initial determination date is July 18, 2013, and the target date for completion is November 19, 2013.

**LSI/Agere Position:**

LSI/Agere contends this case should proceed as proposed by LSI/Agere in Appendix A. Contrary to Realtek's assertions, the complaint in this case raises many factual and legal issues regarding RAND commitments that few courts have addressed and, until recent weeks, no court had ever tried. To date, LSI/Agere knows of only four cases where a breach of contract suit was filed based on a patentee's alleged failure to offer RAND licensing terms. Because there is no law to

support the theories advanced by Realtek, LSI/Agere has raised multiple defenses and is in the process of or planning to take discovery of Realtek, Realtek's customers, Realtek's licensing partners, the IEEE, other entities that license similar essential patents, and the market for Realtek products.

Though Realtek is correct that the parties may not dispute whether certain commitments were made to the IEEE or that LSI made a licensing proposal to Realtek in June; these are not the complex facts for which discovery is needed. Realtek raises factually and legally complex issues because the Court must interpret the limited language in those Letters of Assurance through industry understanding of those terms and determine whether LSI's licensing proposal was unreasonable. For example, disputes among the parties are expected to include at least: (1) what is a reasonable and non-discriminatory license; (2) what level of negotiations are required under RAND commitments; (3) whether a RAND license was made available; (4) whether LSI's proposal was inherently unreasonable; (5) the value of the patents; (6) the use and value of the products practicing the patent; (7) customer demand; and (8) third-party beneficiary status. This will require extensive discovery of not just the parties but the patent licensing industry as well.

For example, at least one court, the Western District of Washington in *Microsoft Corp. v. Motorola, Inc.*, No. C10-1823, 2012 WL 2030098, at *12 (W.D. Wash. June 6, 2012), has noted that a determination of whether a RAND offer was unreasonable requires the parties and Court to calculate a reasonable royalty for the patent—in other words a full-blown patent infringement damages analysis. In fact, Realtek seeks a declaration of what constitutes a RAND offer in this case. Therefore, just one subpart of the breach of contract issues in this case will likely require a patent damages analysis equivalent to the reasonable royalty calculation required by 35 U.S.C. § 284.

Indeed, the *Microsoft* Court recently wrapped up a six-day bench trial on November 20, 2012, in which the RAND analyses included traditional *Georgia-Pacific* factors, survey evidence, analysis of patent pool arrangements, marketplace demand for the products, and alternative technologies, among other things. While much of the *Microsoft* case filings and evidence are sealed, the parties appear to have collected significant evidence through discovery, including various license agreements and product information from both parties. At trial, the parties identified thousands of

potential trial exhibits and, over the course of the trial, entered over 400 exhibits and called 18 witnesses, including at least 7 experts.

In addition to the calculation of a reasonable royalty, Realtek has alleged that LSI/Agere's licensing practices were inherently unreasonable. Much like the *Microsoft* litigation, discovery will be needed to compare the licensing and negotiation practices of others in the industry.

The complexity and uncertainty inherent in these types of cases is only highlighted by the different outcomes among similar cases and the burdens placed on the courts to decide RAND issues. For example, the Western District of Wisconsin in *Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178, Doc. No. 487 (W.D. Wisc. Nov. 2, 2012) recently dismissed similar RAND claims on the eve of trial because the Plaintiff would not "commit to be bound by any FRAND rate determined by the court." *Id.* at 2. The court held that "determin[ing] the FRAND rate places an enormous and possibly unjust burden on the judiciary's resources" and "it would not be in the public interest for the court to spend such enormous resources to determine a FRAND rate that may ultimately lead only to additional litigation and would set a troubling precedent for future cases involving FRAND commitments." *Id.* at 5. To the extent such issues create an enormous burden for the Court, the effects on discovery and the parties are only multiplied.

Even the discovery Realtek proposes above will be time consuming. Realtek states that it will subpoena LSI/Agere's licensees for information and depose those licensees as they are identified. This represents over 40 different companies. Even if Realtek could take a deposition every day, it would still take almost two months to complete those depositions.

The discovery required for these issues is not subsumed in the ITC case. Most of these issues are not before the ITC (which can only provide injunctive relief) and will require additional discovery. Indeed, Realtek requested and LSI has provided additional email discovery that was not requested in the ITC. Furthermore, Realtek has not committed to bringing its witnesses to the United States for depositions. Thus, it is expected that extra discovery time will be needed to arrange for and take depositions of Realtek and possibly other third parties in Taiwan or other foreign jurisdictions.

Further, as noted below, LSI/Agere anticipates the need to seek a protective order against

1 Realtek's demands for a deposition of LSI's CEO and a motion to compel discovery of Realtek's
2 own licensing practices and information related to the *Georgia-Pacific* factors, which Realtek
3 refuses to produce. These discovery disputes will add further delay to the discovery process.
4        Finally, LSI/Agere's discovery schedule is not significantly different than schedules in other
5 RAND cases. The Complaint in this case was filed at the end of June 2012, and LSI/Agere propose
6 a trial date at the beginning of March 2014. This would represent 20 months between filing and
7 trial. Times to trial for other RAND cases are comparable:

> *Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178 (W.D. Wisc.) – approximately 20 months between filing of case and trial even though parties were also litigating in the ITC.
>
> *Microsoft Corp. v. Motorola, Inc., et al.*, No. 2:10-cv-1823 (W.D. Wash.) – approximately 24 months between filing and trial.
>
> *Research in Motion, Ltd. v. Motorola, Inc.*, No. 3:08-cv-284 (N.D. Tex) – approximately 28 months between filing and the earliest trail date proposed by a party. Case was dismissed 28 months after filing without being scheduled for trial.

16 Thus, LSI/Agere's proposed schedule comports with and is even shorter than similar cases.
17        Summary of Discovery Completed: LSI served an initial set of document requests and
18 interrogatories on Realtek in August. In response, Realtek has identified its ITC document
19 production as responsive to many requests. Realtek has also recently indicated that it will complete
20 its additional document production by mid-December. LSI/Agere has also served a third-party
21 subpoena on the IEEE and is in the process of serving subpoenas seeking discovery of licensing
22 practices from third parties that have identified standard essential patents to the IEEE. On
23 November 21, 2012 LSI/Agere served an additional set of interrogatories and several request for
24 admission upon Realtek.
25        Good Faith Efforts to Complete Discovery: LSI/Agere has been working diligently to review
26 and produce documents and obtain permissions for the production of license agreements in this case.
27 LSI/Agere began producing documents to Realtek on November 1, 2012. Although several license
28 agreements were produced in the ITC case, the agreements were confidential and could not be

disclosed in this case without notifying or obtaining permissions from the licensees. The production of those licenses continued in the month of November as permissions and conditions were received from the licensees. With the exception of one license, in which the licensee requested a confirmation from Realtek that it would not provide the license to in-house employees, all licenses have been produced.

The bulk of LSI/Agere's document production efforts has come from Realtek's demands for email. In addition to collecting additional discovery, LSI/Agere has been searching and reviewing its emails. This email production was not part of the document production in the ITC case and has taken substantial time and effort to complete. LSI/Agere expect the email production to be completed by mid-December or sooner.

LSI/Agere has also served and is planning to serve third party subpoenas in order to identify RAND licensing practices in the industry. LSI/Agere is working with IEEE to identify and collect relevant documents. LSI/Agere also expects to serve subpoenas on third parties who have licensed patent rights from or to Realtek; however, these efforts have been delayed due to Realtek's refusal to identify its licensing partners and standard essential patenting practices.

LSI/Agere is also seeking documents and information from Realtek regarding several factors for the calculation of a reasonable royalty, such as those identified in the foundational *Georgia-Pacific* case. Again, however, these efforts have been delayed by Realtek's refusal to produce such documents and are expected to delay additional discovery that may result therefrom.

LSI/Agere has also been working with Realtek to set times for Realtek to take depositions of LSI/Agere employees. The parties are verifying available dates but expect to hold a deposition of Ryan Phillips and 30(b)(6) witnesses the first half of January.

Realtek has noticed the deposition of LSI's CEO, Abhi Talwalkar, on the basis of an email exchange where LSI's CEO responded to several questions from a Realtek executive regarding this case in October of 2012. LSI's CEO has no direct involvement in this case or its subject matter, a fact which Realtek is well aware of. LSI believes the request is nothing more than harassment and has vigorously refused to submit its CEO to a deposition because he is an apex employee of the

company with no significant knowledge of the issues or facts related to this case and the information Realtek seeks can be obtained through other, less intrusive forms of discovery.

Status of ITC Action:  LSI/Agere does not disagree with Realtek summary of the ITC action status.

DATED:  November 30, 2012.

Respectfully Submitted,

REED SMITH LLP

By  /s/ *James A. Daire*\*
   James A. Daire
   Attorney for Plaintiff
   REALTEK SEMICONDUCTOR CORPORATION

KILPATRICK TOWNSEND & STOCKTON LLP

By  /s/ *Robert J. Artuz*
   David E. Sipiora
   Robert J. Artuz
   Attorneys for Defendants
   LSI CORPORATION and
   AGERE SYSTEMS LLC.

*\* Filer's Attestation: Pursuant to Civil Local Rule 5-1(i) regarding signatures, James A. Daire hereby attests that concurrence in the filing of this document has been obtained.*