Scott D. Baker (SBN 84923)
Email: sbaker@reedsmith.com
William R. Overend (SBN 180209)
Email: woverend@reedsmith.com
Adrian Sue Shin (SBN 256960)
Email: sshin@reedsmith.com
James A. Daire (SBN 239637)
Email: jdaire@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Telephone:  (415) 543-8700
Facsimile:  (415) 391-8269

Steven S. Baik (SBN 184622)
Email: sbaik@reedsmith.com
Carina M. Tan (SBN 185015)
carinatan@reedsmith.com
REED SMITH LLP
1510 Page Mill Road, Suite 110
Palo Alto, CA 94304
Tel:  (650) 352-0500
Fax:  (650) 352-0699

Attorneys for Plaintiff
REALTEK SEMICONDUCTOR
CORPORATION

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| REALTEK SEMICONDUCTOR CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>LSI CORPORATION and AGERE SYSTEMS LLC,<br><br>Defendants. | Case No. 5:12-cv-03451 RMW<br><br>**PLAINTIFF REALTEK SEMICONDUCTOR CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: May 3, 2013<br>Time: 9:00 a.m.<br>Place: Courtroom 6, 4th Floor<br><br>Compl. Filed:  June 29, 2012<br>Trial Date:  November 4, 2013<br><br>Hon. Ronald M. Whyte |

## PUBLIC REDACTED VERSION

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     UNDISPUTED FACTUAL BACKGROUND.......................................................4

     A.   The Parties ................................................................................................4

     B.   Standards Setting Organizations ...............................................................4

     C.   The IEEE 802.11 Standards ......................................................................5

     D.   In 2002, Agere Writes Realtek About A Potential License Relating To
         802.11b........................................................................................................6

     E.   Defendants Committed To Make Licenses Available On RAND Terms
         And Conditions ..........................................................................................7

     F.   In 2012, Defendants Write A Cease And Desist Letter To Realtek, But
         Make No License Offer, Much Less A RAND Offer ...................................7

     G.   LSI Sues Realtek In The ITC To Exclude, Not To License .........................8

     H.   LSI Makes Realtek A Post-Suit, Non-RAND "Proposal" That It Knows
         Realtek Cannot Accept ..............................................................................9

     I.   If Defendants Obtain Any Exclusion Order Realtek Will Lose Customers,
         Revenue And Loyalties.............................................................................10

III.    LEGAL ARGUMENT.........................................................................................11

     A.   Defendants Entered Into Enforceable Contracts With The IEEE Of Which
         Realtek Is A Third Party Beneficiary.......................................................12

     B.   Defendants Did Not Satisfy RAND Obligations Before Seeking An
         Exclusion Order .......................................................................................13

     C.   Defendants' Post-Suit "Proposal" Is Inherently Unreasonable Because It
         Was Made After Defendants Sought An Exclusion Order Against Realtek ...16

     D.   Agere's 2002 Letter Cannot Satisfy Their 2003 And 2004 RAND
         Obligations ..............................................................................................18

          1.   LSI Revoked Any Offer Upon Demanding That Realtek Cease
               And Desist Alleged Infringing Activities ......................................18

          2.   The 2002 Letter Only Concerned One Outdated 802.11 Standard
               And One "Representative" Realtek Product....................................19

           3.   The 2002 Letter Pre-Dated Defendants' RAND Obligations At
               Issue In This Case .......................................................................20

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

E.      The Court Should Order That Defendants Cannot Proceed With An Exclusion Order Until After A RAND Offer Is Determined ..................................... 20

         1.      Realtek May Permanently Lose Customers If Defendants Obtain An Exclusion Order Before The RAND Issues Are Tried ............................ 21

         2.      Defendants Have An Adequate Remedy Without The Threat Of An Exclusion Order ........................................................................................... 23

IV.     CONCLUSION .......................................................................................................... 24

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## TABLE OF AUTHORITIES

*Cases*

*Apple, Inc. v. Motorola Mobility, Inc.*,
  2001 WL 7324582 ................................................................................................ 12, 13

*Apple, Inc. v. Motorola, Inc.*,
  869 F.Supp.2d 901 (N.D. Ill. 2012) ................................................................... passim

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)...................................................................................................... 11

*CPI Builders v. Impco Technologies*,
  94 C.A.4th 1167 (2001) ............................................................................................... 18

*Ericsson Inc. v. Samsung Electronics, Co.*,
  2007 WL 1202728 (E.D. Tex. Apr. 20, 2007) ............................................................. 12

*ESS Technology, Inc. v. PC-Tel, Inc.*,
  1999 WL 33520483 (N.D. Cal. Nov. 4, 1999) ...................................................... 12, 13

*Galen v. Cnty. of L.A.*,
  477 F.3d 652 (9th Cir. 2007) ....................................................................................... 11

*In the Matter of Motorola Mobility LLC, a limited liability company, and Google Inc., a
  corporation*;
  FTC File No. 121 0120 ................................................................................................. 14

*McKell v. Washington Mut., Inc.*,
  142 Cal. App.4th 1457 (Cal. Ct. App. 2006) ............................................................... 12

*Microsoft Corp. v. Motorola, Inc.*,
  2012 WL 5993202 (W.D. Wash. Nov. 30, 2012)............................................ 14, 16, 21

*Microsoft Corp. v. Motorola, Inc.*,
  696 F.3d 872 (9th Cir. 2012) .................................................................................. 5, 14

*Microsoft Corp. v. Motorola, Inc.*,
  854 F.Supp.2d 993 (W.D. Wash. 2012)....................................................................... 12

*Research In Motion Ltd. v. Motorola, Inc.*,
  644 F. Supp.2d 788 (N.D. Tex. 2008) ......................................................................... 12

*Statutes*

Cal. Civ. Code § 1559........................................................................................................ 12

Cal. Civ. Code § 1587(1) ................................................................................................... 18

Cal. Civ. Code § 1646........................................................................................................ 12

*Rules*

Fed. R. Civ. P. 56(a) .......................................................................................................... 11

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on May 3, 2013 at 9:00 a.m. in Courtroom 6 of the Northern District of California, 280 South First Street, San Jose, California, 95113, Plaintiff Realtek Semiconductor Corporation ("Realtek") will and hereby does move the Court for partial summary judgment as follows:

Defendants LSI Corporation and Agere Systems LLC ("Defendants") breached their contract with the Institute of Electrical and Electronics Engineers ("IEEE") by filing a complaint to exclude Realtek from the U.S. market without first making a license proposal to Realtek.  Because Realtek is a willing licensee, Defendants must wait until a trial is completed to determine a reasonable and non-discriminatory royalty rate before seeking injunctive-type relief against Realtek.  The Court should, therefore, issue an order barring Defendants from enforcing, or seeking to enforce, an exclusion order or injunction for infringement of alleged standard essential patents pending a full RAND trial on the merits.

## POINTS AND AUTHORITIES

### I.     INTRODUCTION

As the Ninth Circuit recently explained, when a holder of patents essential to a standard agrees to license those patents under reasonable and non-discriminatory ("RAND") terms, it promises it will not seek to enjoin others from using the patented material, but will instead offer licenses consistent with its RAND commitment.  This promise is the consideration the standards setting organization exacts in exchange for incorporating the essential patents into a standard. Without such a guarantee, standards groups could not develop technologies at prices acceptable for mass consumption, such as the wireless technologies at issue in this case ("Wi-Fi").

Here, Defendants have violated this fundamental promise that enabled their allegedly essential patents to be incorporated into certain Wi-Fi standards.  Specifically, Defendants voluntarily agreed to license their patents that were allegedly essential to certain Wi-Fi standards on RAND terms.  But despite profiting immensely from the widespread proliferation of those Wi-Fi standards, Defendants then reneged on their promise.  Instead of making any RAND offer to Realtek, Defendants simply demanded that Realtek cease and desist from selling its Wi-Fi products,

1    and then initiated legal proceedings in the U.S. International Trade Commission ("ITC") to exclude

2    Realtek's products from the United States.  Defendants thereby breached their contractual obligation

3    to license the allegedly essential patents on RAND terms.

4         All material facts supporting this motion are undisputed.  It is undisputed that Defendants

5    entered into RAND commitments in 2003 and 2004 for the patents at issue in the ITC action (the

6    '958 and '867 patents) with regard to the 802.11e, 802.11g and 802.11n Wi-Fi standards.  It is

7    undisputed that on March 7, 2012, Defendants sent a letter demanding that Realtek cease and desist

8    from selling components that allegedly infringed the '958 and '867 patents.  Defendants admit the

9    March 7, 2012 letter offers no license at all, and thus it cannot possibly discharge Defendants'

10   obligation to license the patents on RAND terms.  It is also undisputed that almost immediately after

11   sending the letter, Defendants initiated an ITC proceeding seeking injunctive relief:  namely, an

12   exclusion order prohibiting the importation of Realtek's accused 802.11g and 802.11e/n products.



REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

## II. UNDISPUTED FACTUAL BACKGROUND

### A. The Parties

Plaintiff Realtek is a Taiwanese fabless integrated circuit design house that was established in 1987. (Fabless manufacturing is the design and sale of integrated circuits while contracting with a specialized manufacturer for the fabrication or "fab" of the chips.) [Tsai Decl. ¶ 3.] At present, Realtek employs over 2000 people, of which more than 1500 have research and development expertise. [*Id.*] One of Realtek's product lines is integrated circuits for wireless local area networks ("WLAN"). [*Id.* ¶ 4.]

Defendant Agere was incorporated in 2000 as a result of a reorganization of Lucent Technologies, Inc. ("Lucent"), in which Lucent spun off its optoelectronic components and microelectronic businesses into Agere. [Dkt. No. 1 ¶ 12; Dkt. No. 44 ¶ 12.] Agere obtained the '958 and '867 patents at issue in this case from Lucent. [*Id.*] Defendant LSI then acquired Agere in 2007, and Agere is now a wholly-owned subsidiary of LSI. [Dkt. No. 1 ¶ 13; Dkt. No. 44 ¶ 13.]

### B. Standards Setting Organizations

Standards-setting organizations ("SSOs") have come to play an increasingly important role in our economy. [Request for Judicial Notice ("RJN"), Exh. A (DOJ/USPTO Statement).] Interoperability standards have helped to move many important innovations into the marketplace, including the complex communications networks and sophisticated mobile computing devices that are hallmarks of the modern age. These standards, whether mechanical, electrical, computer-related, or communications-related, have incorporated important technical advances that are fundamental to the interoperability of many of the products on which consumers have come to rely. [*Id.*]

However, standard setting does not come without some risks. When a standard incorporates patented technology, and the standard becomes established, it may be prohibitively difficult and expensive to switch to a different technology. [*Id.*] As a result, the owner of that patented

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   technology may gain market power and potentially take advantage of it by engaging in patent "hold-

2   up," which entails asserting the patent to exclude a competitor from a market or obtain a higher price

3   for its use than would have been possible before the standard was set.  [*Id.*]  To reduce such

4   opportunistic conduct, some SSOs have relied on licensing commitments by patent holders,

5   including commitments to license the patents they own that are essential to the standard on RAND

6   terms.[1]  [*Id.*]

7       **C.      The IEEE 802.11 Standards**

8           This case involves Defendants' conduct regarding the licensing of two patents that

9   Defendants claim are "essential" to a widely practiced standard for wireless Internet connectivity

10  known as "WLAN," "Wi-Fi," and/or "802.11."  WLAN is based on the 802.11 wireless networking

11  standard which the IEEE beginning in the early 1990s.  The IEEE-SA is the standards-setting arm of

12  the IEEE.  The IEEE-SA relies on licensing commitments from the owners of patents that relate to

13  its technical standards, including WLAN.  The IEEE-SA has specific policies that apply where a

14  participant in the standards-setting efforts owns a patent or patent application deemed "essential" to

15  the standard.  [Daire Decl., Exh. A (IEEE Production) at 3-5.]

16          At all relevant times during the drafting of the 802.11 (WLAN) protocols, the IEEE-SA

17  maintained a policy that required Letters of Assurance from patent holders which owned "essential"

18  patents or patent applications.  [*See* Dkt. No. 44 at 12-13.]  Specifically, the IEEE-SA Standards

19  Board Bylaws require that a Letter of Assurance shall be either:

20          a)      A general disclaimer to the effect that the submitter without conditions will
            not enforce any present or future Essential Patent Claims against any person or entity
21          making, using, selling, offering to sell, importing, distributing, or implementing a
            compliant implementation of the standard; or
22
            b)      A statement that a license for a compliant implementation of the standard will
23          be made available to an unrestricted number of applicants on a worldwide basis
            without compensation or **under reasonable rates, with reasonable terms and**
24          **conditions that are demonstrably free of any unfair discrimination**.

25  ────────────────────

26  [1] The ongoing threat of patent hold up and SSOs' efforts to mitigate the threat by requiring those
    with relevant patents to agree to license those patents to all comers are further described in several
27  cases.  *See, e.g., Microsoft Corp. v. Motorola, Inc.,* 696 F.3d 872, 876-877 (9th Cir. 2012); *Apple,
    Inc. v. Motorola, Inc.,* 869 F.Supp.2d 901, 913 (N.D. Ill. 2012).

28

[Daire Decl., Exh. B (IEEE Bylaws) (emph. added).] According to the IEEE's policies, Letters of Assurance, once provided, are irrevocable and shall be in force at least until the standard's withdrawal. [*Id*., Exhs. A-B; [redacted]

[redacted]

---

[redacted]



**E.      Defendants Committed To Make Licenses Available On RAND Terms And Conditions**

After writing to Realtek in October 2002, Agere submitted Letters of Assurance to the IEEE, guaranteeing that any "essential" patents would be licensed under RAND terms and conditions. [Daire Decl., Exh. D (letters).]  Among others, Agere submitted Letters of Assurance in January 2003 and September 2004.  [*Id.*]  Those Letters of Assurance identified the '958 and '867 patents (the latter by its application number, U.S. Application No. 10/092,295) as including "one or more claims that may be required to practice" the IEEE 802.11e and 802.11g standards, and stated that Agere was "prepared to grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to comply with the [Proposed] IEEE Standard."  [*Id.*]  Agere also submitted a substantially similar letter relating to the IEEE 802.11n standard in September 2004, but without specifically identifying patents.  [*Id.*]

**F.      In 2012, Defendants Write A Cease And Desist Letter To Realtek, But Make No License Offer, Much Less A RAND Offer**

Defendants did not communicate with Realtek again for nine years, until LSI's Vice President of Intellectual Property Business, Warren K. Waskiewicz, sent a letter to Realtek dated March 7, 2012, which Realtek did not receive until March 12.  [*See* Daire Decl., Exh. I (3/7/12 letter).]  In that letter, Defendants asserted that certain Realtek component products, as incorporated into consumer products sold by Funai, infringe the '958 and '867 patents.  [*See id.*]  Defendants thus demanded that Realtek immediately cease and desist the alleged infringement.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware



**G.    LSI Sues Realtek In The ITC To Exclude, Not To License**

On March 12, 2012, less than a week later (and the same day Realtek received the cease and desist letter in Taiwan), Defendants filed a complaint with the ITC against Funai, Realtek and other respondents.  [Daire Decl., Exh. J (ITC Complaint).]  The ITC instituted an investigation based on that complaint on April 11, 2012.  [*Id.*, Exh. I (ITC Notice).]  The complaint, among other things, alleged that Realtek had infringed the '958 and '867 patents, the same patents Defendants identified as necessary or essential to practice the 802.11 standards.  [*Id.*, Exh. J (ITC Complaint), at 39-40.]



---

3  In addition to leverage in licensing negotiations, the other reason that Defendants sued Realtek became clear to Realtek at the industry's September 2012 World Semiconductor Council ("WSC") meetings in Berlin, Germany.  There, LSI's CEO, Abhi Talwalkar, told Realtek's Vice President of Marketing that the real "focus" of LSI is co-Respondent Funai, the end consumer product seller.  Mr. Talwalkar stated that LSI "only called out Funai's suppliers (such as Realtek) to ensure that Funai suppliers produced sufficient documentation."  [Daire Decl., Exh. L (Talwalkar email).]

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware



## III.    LEGAL ARGUMENT

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden of showing there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323.  If the moving party meets its burden, then the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial" in order to withstand summary judgment. *Galen*, 477 F.3d at 658.

– 11 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1     Here, as discussed more fully below, the undisputed facts show that Defendants have

2 breached their contractual obligations to offer a license on RAND terms to Realtek.  Accordingly,

3 Realtek is entitled to summary judgment on its breach of contract claim against Defendants.

4        **A.     Defendants Entered Into Enforceable Contracts With The IEEE Of Which**

5               **Realtek Is A Third Party Beneficiary**

6     Under California law, a plaintiff must prove the following for breach of contract:  (1) the

7 existence of a contract; (2) the plaintiff's performance or excuse for nonperformance; (3) the

8 defendant's breach; and (4) the resulting damages to the plaintiff.  *McKell v. Washington Mut., Inc.*,

9 142 Cal. App.4th 1457, 1489 (Cal. Ct. App. 2006).  A third party beneficiary may enforce a contract

10 made for his or her benefit.  Cal. Civ. Code § 1559.[4]

11     In the context of letters of assurance to standards setting bodies, numerous other courts have

12 found viable breach of contract claims based on the promisor's obligation to offer RAND licenses.

13 *See, e.g.*, *Microsoft Corp. v. Motorola, Inc.*, 854 F.Supp.2d 993, 1002 (W.D. Wash. 2012) (through

14 Motorola's letters to both the IEEE and ITU, Motorola had entered into binding contractual

15 commitments to license its essential patents on RAND terms); *Apple, Inc. v. Motorola Mobility, Inc.*,

16 2011 WL 7324582, at ** 8-10 (W.D. Wis. June 7, 2011) (denying motion to dismiss where plaintiff

17 stated breach of contract claim based on defendant's failure to offer RAND terms it had promised

18 IEEE and other SSOs; *Research In Motion Ltd. v. Motorola, Inc.*, 644 F. Supp.2d 788, 797 (N.D.

19 Tex. 2008) (denying motion to dismiss where plaintiff stated breach of contract claim based on

20 defendant's failure to offer RAND terms it had promised IEEE and another SSO); *ESS Technology,*

21 *Inc. v. PC-Tel, Inc.*, 1999 WL 33520483, at *4 (N.D. Cal. Nov. 4, 1999) (holding that third-party

22 beneficiary of contract between SSO and patent holder had properly stated claim for specific

23 performance of agreement requiring license on RAND terms); *see also Ericsson Inc. v. Samsung*

24

25 [4]  The IEEE Letters of Assurance are silent as to which state law applies.  In the absence of a choice
of law provision, "[a] contract is to be interpreted according to the law and usage of the place where

26 it is being performed; or, if it does not indicate a place of performance, according to the law and
usage of the place where it is made."   Cal. Civ. Code § 1646.  Here, California is the place of

27 performance because LSI – the corporate parent in charge of licensing the patents – has its principal
place of business in Milpitas, California.  [Dkt. No. 44 at 11.]  Accordingly, California law applies.

28

*Electronics, Co.*, 2007 WL 1202728, at *1 (E.D. Tex. Apr. 20, 2007) (licensing obligations were contractual and bound all members of SSOs).  Moreover, courts have repeatedly held that third party implementers of a standard, such as Realtek, are third party beneficiaries of such contracts.  *See, e.g.*, *Apple*, 2011 WL 7324582, at * 10 (recognizing that implementers are third-party beneficiaries of contract between patent holder and SSO); *ESS*, 1999 WL 33520483, at *4.



### B.     Defendants Did Not Satisfy RAND Obligations **<u>Before</u>** Seeking An Exclusion Order

RAND obligations to the IEEE require that patent owners at least make some licensing proposal and attempt to negotiate an arm's length patent license with a prospective licensee ***before*** they pursue an action in the ITC to exclude the very same prospective licensee from importing into

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

the United States.  Indeed, many courts have stated that, for RAND-encumbered patents, injunctive relief such as an exclusion order may not be an appropriate remedy ***at any time***.  *See, e.g., Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 883 (9th Cir. 2012) (for patents alleged essential to ITU standards, "injunctive relief against infringement is arguably a remedy inconsistent with the licensing commitment."); *Apple, Inc. v. Motorola, Inc.,* 869 F.Supp.2d 901, 913-914 (N.D. Ill. 2012) (J. Posner) ("By committing to license its patents on FRAND terms, Motorola committed to license the '898 to anyone willing to pay a FRAND royalty and thus implicitly acknowledged that a royalty is adequate compensation for a license to use that patent.");  *Microsoft Corp. v. Motorola, Inc.*, 2012 WL 5993202, at ** 7-8 (W.D. Wash. Nov. 30, 2012) (ordering Motorola not to enforce any form of injunctive relief against Microsoft because of Motorola's RAND licensing commitments).



Defendants' improper conduct is remarkably similar to Motorola Mobility, Inc. and Google's conduct, at issue in a recently completed Federal Trade Commission ("FTC") Investigation.  *See In the Matter of Motorola Mobility LLC, a limited liability company, and Google Inc., a corporation*;

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

– 14 –

FTC File No. 121 0120.  Chairman Jon Leibowitz summarized Motorola Mobility, Inc. and Google's conduct, and the consequences of their conduct, as follows:

> Years ago, Motorola promised to license its patents essential to these interoperability standards – called "Standard-Essential Patents" – on fair and reasonable terms – called "FRAND" – to any interested manufacturer. Other companies took Motorola at its word. Over many years, relying on this promise, they invested billions of dollars in developing and bringing products using these patents to consumers. Rather than offering the license it had promised, Motorola then changed the rules of the game. The company sought injunctions and exclusion orders against products using its standard-essential patents. After Google purchased Motorola, it continued these same abusive practices.
>
> Google's unfair conduct threatened to block consumers [*sic*] access to critical electronic devices – including laptop and tablet computers, smartphones, and gaming systems –or to increase the cost of these products by requiring manufacturers to pay higher licensing fees which then would have been passed on to consumers. * * *
>
> Google's settlement with the Commission requires Google to abandon its claims for injunctive relief on any of its standard essential patents with a FRAND commitment, and to offer a license on FRAND terms to any company that wants to license these patents in the future.
>
> [RJN Exh. B (FTC File No. 121 0120, Opening Remarks of Federal Trade Commission Chairman Jon Leibowitz  As Prepared for Delivery (January 3, 2013)).]

LSI stands in Google's shoes in this case.  Like Google, LSI improperly seeks an exclusion order against Realtek and did not even offer the pretense of an initial offer before it sued Realtek.



REED SMITH LLP
A limited liability partnership formed in the State of Delaware



Defendants ignore that making a proposal while simultaneously seeking an exclusion order is inherently inconsistent with a patent holder's RAND obligations.  For this very reason, other courts have refused to grant injunctive relief to patent holders with unsatisfied RAND obligations.  *See Apple,* 869 F.Supp.2d at 913-914, 923 (denying injunctive relief to Motorola where, among other things, it had committed to license its patents on RAND terms); *Microsoft*, 2012 WL 5993202, at ** 7-8 (ordering Motorola not to enforce injunctive relief against Microsoft because of Motorola's RAND licensing commitments).  [*See also* RJN, Exh. A at 6 (a court could conclude that the holder of a RAND-encumbered, standards-essential patent "had attempted to use an exclusion order to pressure an implementer of a standard to accept more onerous licensing terms than the patent holder would be entitled to receive consistent with the F/RAND commitment").].

Indeed, in the *Apple* case, Judge Posner explained that a recent FTC policy statement implied that injunctive relief is ***unavailable*** for infringement of a patent governed by RAND.  *Apple,* 869 F.Supp.2d at 914 (quotation to FTC policy statement omitted).  Notably, that policy statement was made in the specific context of an ***ITC exclusion order*** (as here), although its logic would embrace

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

any claim by a patent holder to enjoin the sale of an infringing product.  *Id.*  Specifically, the FTC

policy statement explained that a royalty negotiation that occurs under threat of an exclusion order

"could allow a patentee to obtain unreasonable licensing terms despite its RAND commitment, not

because its invention is valuable, but because the licensee is locked in to practicing the standard."

*Id.*  Indeed, this threat is particularly heightened for Wi-Fi component suppliers such as Realtek:

> **The resulting imbalance between the value of patented technology and the rewards for innovation may be especially acute where the exclusion order is based on a patent covering a small component of a complex multicomponent product**.  In these ways, the threat of an exclusion order may allow the holder of a RAND-encumbered [standards essential patent] to realize royalty rates that reflect patent hold-up, rather than the value of the patent relative to alternatives.

*Id.*  Moreover, Judge Posner also rejected Motorola's argument that Apple had somehow lost the

RAND "safe harbor" by rejecting Motorola's initial license offer.  As Judge Posner explained, even

if Apple had rejected a proffered royalty rate, it might run the risk of being ordered by a court to pay

an equal or even higher royalty rate, "but that is not the same thing as Motorola being excused from

no longer having to comply with its FRAND obligations."  *Id.*



REED SMITH LLP
A limited liability partnership formed in the State of Delaware



[redacted]

Under California law, an offer is revoked by notice of revocation communicated by the offeror to the offeree before the latter's acceptance has been communicated to the offeror. Cal. Civ. Code § 1587(1); *CPI Builders v. Impco Technologies*, 94 C.A.4th 1167, 1172 (2001). [redacted]

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT



[redacted]

**E. The Court Should Order That Defendants Cannot Proceed With An Exclusion Order Until After A RAND Offer Is Determined**

As discussed earlier, where a patent holder has not satisfied its RAND obligations, it is improper to seek injunctive relief against a prospective licensee. Such conduct enables a patentee to

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   obtain **unreasonable** licensing terms despite its RAND commitments. *See Apple,* 869 F.Supp.2d at

2   914 (quotation to FTC policy statement omitted).  Moreover, injunctive relief is inherently improper

3   because the patentee faces no irreparable harm and instead has an adequate remedy at law:  namely,

4   a license agreement under RAND terms. *See Microsoft* 2012 WL 5993202, at * 6-8.  Thus, it is

5   appropriate for a court to order the owner of a RAND-encumbered patent not to pursue an exclusion

6   order until after RAND issues are fully tried. *See Microsoft* 2012 WL 5993202, at ** 6-8; *Apple,*

7   869 F.Supp.2d at 914 (denying injunctive relief to Motorola where, among other things, it had

8   committed to license its patents on RAND terms).

9        In *Microsoft,* the Court granted Microsoft's motion for partial summary judgment, dismissing

10   without prejudice any injunction sought by Motorola for infringement of Motorola standard essential

11   patents subject to RAND commitments. *Id.* at ** 1, 7-8.  Having found that Microsoft was entitled to

12   a license to the Motorola patents on RAND terms, the court explained that Motorola could not

13   establish irreparable harm, because Microsoft would pay royalties under a later-determined RAND

14   license agreement. *Id.,* at * 6.  Similarly, the court found that Microsoft's payment of royalties under

15   a later-determined RAND license would be an adequate remedy at law. *Id.,* at ** 6-7.  Accordingly,

16   the court granted Microsoft's motion and dismissed without prejudice Motorola's request for

17   injunctive relief. *Id.,* at * 8.  In addition, the Court's order prohibited Motorola from pursuing any

18   injunctive relief against Microsoft with respect to the entirety of Motorola's 802.11 standard

19   essential patent portfolio until after a RAND trial. *Id.*



[redacted]

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



## IV.    CONCLUSION

There is no dispute that Defendants have breached their RAND obligations by failing to offer a license on RAND terms before seeking an exclusion order against Realtek.  Accordingly, partial summary judgment on Realtek's breach of contract claim is proper.  In addition, given the substantial threatened harm to Realtek and the lack of any irreparable harm to Defendants, the Court should issue an order barring Defendants from enforcing, or seeking to enforce, an exclusion order or injunction as to all alleged 802.11 standard essential patents pending a full RAND trial on the merits.

DATED:  March 26, 2013.                    Respectfully Submitted,


REED SMITH LLP


By      /s/ James A. Daire
         James A. Daire
         Attorney for Plaintiff
         REALTEK SEMICONDUCTOR CORPORATION

REED SMITH LLP

A limited liability partnership formed in the State of Delaware