# EXHIBIT A

# Part 1 of 2

UNITED STATES DISTRICT COURT

for the

Southern District of New York

| | |
|---|---|
| REALTEK SEMICONDUCTOR CORPORATION<br>*Plaintiff*<br>v.<br>LSI CORPORATION AND AGERE SYSTEMS<br>LLC<br>*Defendant* | )<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 12-CV-03451 RMW

(Underlying action pending in:  Northern District of California)

## RESPONSE AND OBJECTIONS OF IEEE TO SUBPOENA

As and for its response to the subpoena served on it by LSI Corporation and Agere Systems LLC ("LSI/Agere") in this matter, the Institute for Electrical and Electronics Engineers, Inc. ("IEEE")states and objects as follows.

## GENERAL OBJECTIONS

IEEE generally objects to the subpoena as follows.

1.      The subpoena is overly broad and unduly burdensome.  LSI/Agere has not taken reasonable steps to avoid imposing undue burden or expense on IEEE and has not offered to reimburse IEEE for any expense necessitated by compliance with the subpoena.  IEEE will not conduct a search until LSI/Agere has made such arrangements.

2.      Even if the subpoena were not otherwise unreasonably and unduly burdensome, the return date on the subpoena does not provide sufficient notice or time to permit IEEE to produce responsive documents.

3.      IEEE objects to the subpoena to the extent that it purports to impose duties beyond those required under applicable rules.

4.      The subpoena calls or may call for production of confidential or proprietary information, and the protective order may not be sufficient to protect IEEE's interests.  IEEE invites LSI/Agere to advise IEEE of the status and applicable provisions of any protective order in the underlying litigation.

5.      The subpoena calls for or may call for documents protected by the attorney-client privilege or work-product doctrine.  Those documents will not be provided.  IEEE also objects to the instruction's requirement to provide a privilege log without LSI/Agere's first having made arrangements to avoid unreasonable burden on IEEE and to compensate IEEE for its time and expenses in compiling such a log.

6.      IEEE objects to Definition No. 1 to the extent that it requires IEEE to identify

persons who may purportedly or putatively be acting on its behalf.

7.      IEEE objects to Definition No. 3 to the extent that it seeks to impose on IEEE a duty to investigate disclosures of patents to organizations other than IEEE.  IEEE further objects to this definition to the extent that it seeks to impose on IEEE a duty to determine essentiality.

8.      IEEE objects to Definition No. 6 to the extent that it encompasses documents other than those that IEEE considers to be Letters of Assurance (such as, for example, accepted Letters of Assurances posted on the IEEE Standards Board patent Committee website).

## RESPONSES TO SPECIFIC REQUESTS

Without waiving its general objections, IEEE responds as follows.

**REQUEST NO. 1:**  Documents pertaining to IEEE's interpretation of any Letters of Assurance regarding the licensing of Essential Patents, including, but not limited to:

a.  any intended beneficiaries of the commitments made in the Letters.

b.  how the terms of a license to Essential Patents are to be determined or negotiated,

c.  the state law applicable to interpretation and enforcement of Letters of Assurance,

d.  and what the terms and conditions of a RAND license should be.

**RESPONSE TO REQUEST NO. 1:**  IEEE objects to this request as vague and ambiguous.

IEEE further objects to the extent that the request purports to require IEEE to state legal

conclusions.  Without waiving these objections, IEEE invites IEEE-SA invites LSI/Agere to

review:

- The IEEE PatCom "Patent Materials" site available at http://standards.ieee.org/about/sasb/patcom/materials.html.

- The IEEE-SA Letters of Assurance Database at http://standards.ieee.org/about/sasb/patcom/patents.html.

- ThePatent Policy dialogue site available at http://grouper.ieee.org/groups/pp-dialog/.

- The Comments of IEEE, filed with the Federal Trade Commission in connection with its Patent Standards Workshop, Project No. P11-1204 (Aug. 5, 2011), available at http://www.ftc.gov/os/comments/patentstandardsworkshop/00046-80184.pdf.

- The Brief of Amici Curiae IEEE et al., filed in *Broadcom Corp. v. Qualcomm,* Inc., 501 F.3d 297 (3d Cir. 2007).

- The Comments of IEEE filed in *In the Matter of Negotiated Data Solutions LLC.* FTC File No. 051 0094,available at http://www.ftc.gov/os/comments/negotiateddatasol/534241-00002.pdf.

Upon request, IEEE-SA will also make available minutes for IEEE-SA Standards Board, IEEE-SA RevCom, and IEEE SA PatCom if LSI/Agere provides a period for which it seeks such documents.

**REQUEST NO. 2:** Documents reflecting IEEE's policies with regard to Essential Patents from 1997 to 2012.

**RESPONSE TO REQUEST NO. 2:** IEEE objects to the term "reflecting" as vague and ambiguous. Without waiving this objection, IEEE will produce copies of its patent policies for the requested period. In addition, IEEE invites LSI/Agere to review the IEEE PatCom "Patent Materials" site available at http://standards.ieee.org/about/sasb/patcom/materials.html.

**REQUEST NO. 3:** Documents pertaining to the interpretation of IEEE's policies regarding the licensing of Essential Patents.

**RESPONSE TO REQUEST NO. 3:** IEEE objects to this request to the extent that it requires IEEE to identify essential patents. IEEE further objects to this request as vague and ambiguous. IEEE invites LSI/Agere to clarify this request. IEEE reserves the right to interpose further objections once LSI/Agere have clarified the meaning of this request.

**REQUEST NO. 4:** Documents reflecting the terms and conditions of any licenses purportedly issued on RAND terms for essential patents.

**RESPONSE TO REQUEST NO. 4:** IEEE objects to this request as vague and ambiguous. IEEE objects to this request to the extent that it requires IEEE to identify essential patents. Without waiving these objections, IEEE states that it is not its practice to collect or retain copies of license agreements. IEEE also invites LSI/Agere to review the IEEE-SA Letters of Assurance Database at http://standards.ieee.org/about/sasb/patcom/patents.html.

**REQUEST NO. 5:** Documents pertaining to or demonstrating the value and benefits of Essential Patents for the 802.11 standard.

**RESPONSE TO REQUEST NO. 5:** IEEE objects to this request as vague and ambiguous and as imposing undue burden. IEEE further objects to this request to the extent that it purports to

require IEEE to identify essential patents.  Without waiving these objections, IEEE will provide

LSI/Agere access to the 802.11 grouper site upon LSI/Agere's agreement to IEEE terms for

such access.

**REQUEST NO. 6:**  Documents pertaining to or demonstrating the value and benefits of products implementing the 802.11 standard.

**RESPONSE TO REQUEST NO. 6:**  IEEE objects to this request as vague and ambiguous and

as imposing undue burden.  IEEE further objects to this request to the extent that it purports to

require IEEE to identify essential patents.  Without waiving these objections, IEEE will provide

LSI/Agere access to the 802.11 grouper site upon LSI/Agere's agreement to IEEE terms for

such access.

**REQUEST NO. 7:**  Documents pertaining to or demonstrating how adoption of a technical standard affects the value, licensing, or royalties demanded for Essential Patents.

**RESPONSE TO REQUEST NO. 7:**  IEEE objects to this request as vague and ambiguous and

as imposing undue burden.  IEEE further objects to this request to the extent that it purports to

require IEEE to identify essential patents.  Without waiving these objections, IEEE invites

LSI/Agere to review the materials identified in response to Request No. 1.

**REQUEST NO. 8:**  Documents pertaining to or demonstrating the economic and financial benefits of implementing technical standards such as the 802.11 standard, including but not limited to documents discussing:

    a.  the effect of standardization on a technical market.

    b.  product price,

    c.  manufacturing costs.

    d.  research and development costs, and

    e.  competition.

**RESPONSE TO REQUEST NO. 8:**  IEEE objects to this request as vague and ambiguous and

as imposing undue burden.  IEEE further objects to this request to the extent that it purports to

require IEEE to search its files for publicly available literature that is equally available to

LSI/Agere. Without waiving these objections, IEEE invites LSI/Agere to review the materials identified elsewhere in this Response.

**REQUEST NO. 9:** Documents pertaining to or reflecting communications with Realtek or Realtek employees regarding the 802.11 standard, patents, or licensing.

**RESPONSE TO REQUEST NO. 9:** IEEE objects to this request as vague and ambiguous and as imposing undue burden. IEEE further objects to the extent that this request requires IEEE to identify Realtek employees. Without waiving these objections, IEEE invites LSI/Agere to review the Letters of Assurance database and the 802.11 grouper site identified elsewhere in this Response.

**REQUEST NO. 10:** Documents referencing U.S. Patent Nos. 6,452,958 or 6,707,867 or their corresponding applications, U.S. Patent Application Nos. 09/064,188 or 10/092,295.

**RESPONSE TO REQUEST NO. 10:** IEEE objects to this request as imposing undue burden. IEEE further objects to this request to the extent that it seeks to require IEEE to determine whether a document "references" the specified patents. Without waiving these objections, IEEE invites LSI/Agere to review the Letters of Assurance Database and the 802.11 grouper site.

**REQUEST NO. 11:** Documents pertaining to or demonstrating an allegedly unreasonable or discriminatory licensing offer for Essential Patents.

**RESPONSE TO REQUEST NO. 11:** IEEE objects to this request as imposing undue burden. IEEE further objects to this request to the extent that it purports to require IEEE to identify essential patents. Without waiving these objections, IEEE will provide LSI/Agere access to the 802.11 grouper site upon LSI/Agere's agreement to IEEE terms for such access.

Dated: November 27, 2012                    DORSEY & WHITNEY LLP


                                            /s/ *Michael A. Lindsay*

                                     By: _____
                                            MICHAEL A. LINDSAY #0163466

                                     Suite 1500, 50 South Sixth Street
                                     Minneapolis, MN 55402-1498
                                     (612) 340-7819
                                     lindsay.michael@dorsey.com

                                     *Attorneys for IEEE*



February 26, 2008

Donald S. Clark
Secretary of the Commission
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580

     Re:   *In the Matter of Negotiated Data Solutions LLC*, FTC File No. 051 0094

Dear Secretary Clark:

     The IEEE Standards Association ("IEEE-SA") submits these comments on the Federal Trade Commission's proposed action in this matter. After providing background information on the IEEE-SA and its standards development process, these comments discuss the role of intellectual property rights and the importance of patent assurances in the IEEE-SA's standards development activities. Finally, these comments also address specifically the letter that the proposed Decision and Order would require Negotiated Data Solutions LLC (N-Data) to send to the IEEE-SA.

## 1. Background

     The IEEE-SA is an operating arm of The Institute of Electrical and Electronics Engineers, Incorporated ("IEEE"). The IEEE has been involved with standards development for over 120 years. The IEEE-SA as such was created in 1998 and is responsible for administration of the IEEE's standards development activities. (During the time frame at issue in this matter, the IEEE had a somewhat different governance structure.)

     The IEEE-SA's standards are developed in a unique environment that builds consensus in an open process based on input from all materially interested parties. With nearly 1,300 standards either completed or under development, the IEEE-SA is a central source of standardization in both traditional and emerging fields of electro-technology, particularly telecommunications, information technology, and power generation. The IEEE-SA conducts over 200 standards ballots every year, through which proposed standards are voted upon for technical accuracy, soundness, and acceptance. IEEE-SA thrives because of the technical diversity of its 20,000 plus participants, consisting of technology experts and interested parties from around the globe, and including individuals in corporations, organizations, universities, and government agencies.

     The IEEE-SA has essentially two types of standards-development processes. First, the IEEE-SA has traditionally operated an individual-based process. In this program, the entire process is open to any individual who wants to participate, and the process works on the principle of one-person / one-vote. (The 802.3u standard was developed under this program.) Second, for approximately the last four years the IEEE-SA has also operated a corporate-based program. Standards development groups in this program operate on the principle of one-corporation / one-vote and are open to

materially interested corporations and other entities, e.g., educational institutions and government agencies.

IEEE standards follow a well-defined path from concept to completion, guided by a set of five basic principles:  due process, openness, consensus, balance, and right of appeal.[1]  A standard begins with a project authorization request (PAR), which is usually sponsored by one of forty-four IEEE Technical Societies or Councils, each of which specializes in a specific technology, industry sector, or other related interest; where more than one Society is interested in the subject matter, the IEEE Standards Board can create a Standards Coordinating Committee.  The IEEE Standards Board, based on recommendation from the New Standards Committee, determines whether the contemplated standard falls within the technical scope of IEEE, appears to fulfill a technical and/or market need, and whether enough volunteers are likely to step forward to develop it.  With project ("PAR") approval, the study group or other proposer that requested the project authorization forms a working group.  Working groups are open to all materially interested parties and have well-publicized procedures regarding membership, voting, officers, and other areas.

Formal consensus balloting begins when the sponsor decides that the draft of the developing standard is complete and stable.  The sponsor forms a balloting group containing persons interested in the standard.  While anyone can contribute comments, the only votes that count toward approval are those of the eligible members of the balloting group.  IEEE-SA's rules require that a balloting group be balanced, to prevent any one group or company from dominating the process.  Balloters usually fall into one of several classes (e.g., manufacturers, other implementers, customers, government, or general interest).  No interest category can comprise over one-half of the balloting group.

A standard will not pass unless at least 75 percent of all ballots from a balloting group are returned and at least 75 percent of the returned ballots bear a "yes" vote.  Reaching consensus also includes receiving and resolving comments.  Negative ballots must include comments, but the ballot resolution group responds to all comments, whether submitted from within or outside of the balloting group.[2]

The IEEE Standards Board approves or disapproves standards based on the recommendation of its Standards Review Committee.  This committee makes sure that working groups follow all procedures and guiding principles in drafting and in balloting a standard.

---

[1]  Material in this section is largely drawn from *Backgrounder: Standards Development at the IEEE Standards Association* (available at http://standards.ieee.org/announcements/bkgnd_stdsprocess.html).

[2]  Once the ballot review group has examined and dealt with all comments, the working group must recirculate the ballot if there is a need for that (for example, because of new technical changes introduced into the document or because of unresolved negative comments).

## 2. The IEEE-SA and Intellectual Property Rights

The IEEE-SA seeks to produce standards that any willing implementer can use and that will become widely adopted.  With the increasing prevalence and scope of patents and the potential for their inclusion in standards, the IEEE-SA modified its patent policy several years ago to explicitly permit the inclusion of patented technology in certain circumstances.  The IEEE-SA seeks to become aware of potentially essential patents through inquiry to all working group participants as early in the process as feasible.[3]

At the beginning of every working group meeting, the chair displays a slide set that states the IEEE-SA's patent policy,[4] and he or she invites every participant to disclose patents claims (or identify the holders of patent claims) that the working group member believes may be essential for implementing the proposed standard.[5]  The IEEE-SA expects that working group members will act in good faith and will disclose any known patent claims that might prove essential (or identify any persons who might hold potentially essential patents).

When a working group participant discloses a potentially essential patent claim or identifies a possible holder of such a claim, the working group chair will ask the holder to state its licensing intentions in writing.  The IEEE-SA policy currently permits the known use of essential patent claims (and patent applications), but only if the IEEE-SA receives the patent-holder's or applicant's assurance that either (a) the patent-holder or applicant will not enforce any of its present or future essential patent claim(s) against any person complying with the standard; or (b) the patent-holder or applicant will make available a license for such implementation without compensation or under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination (RAND — i.e., reasonable and non-discriminatory).[6]  This assurance is irrevocable once submitted and accepted.  While the IEEE-SA cannot compel a patent-holder to provide an assurance, the absence of an assurance is a factor that the IEEE-SA will consider when deciding whether to approve the draft standard.[7]

---

[3]   *See* IEEE-SA Standards Board Operations Manual § 6.3 ("The patent holder or applicant should provide this assurance as soon as reasonably feasible in the standards development process. This assurance shall be provided no later than the time of IEEE-SA Standards Board review of the standard for approval.") (available at http://standards.ieee.org/guides/opman/sect6.html - 6.3).

[4]   The current IEEE Patent Slide Set is available at http://standards.ieee.org/board/pat/pat-slideset.ppt.

[5]   Indeed, the instructions to the working group chair state that "[e]arly disclosure of patents which may be essential for the use of standards under development is encouraged."

[6]   IEEE Standards Board Bylaws § 6, *available at* http://www.ieee.org/web/aboutus/whatis/bylaws/index.html.

[7]   If the patent is known and is clearly essential (for example, if the standard expressly should require compliance with a specifically identified patent), then the absence of the

-3-