# EXHIBIT J

# UNITED STATES INTERNATIONAL TRADE COMMISSION
## Washington, DC

| | |
|---|---|
| **In the Matter of**<br><br>CERTAIN AUDIOVISUAL<br>COMPONENTS AND PRODUCTS<br>CONTAINING THE SAME | Inv. No. 337-TA-____ |

## VERIFIED COMPLAINT OF LSI CORPORATION AND AGERE SYSTEMS INC. UNDER SECTION 337 OF THE TARIFF ACT OF 1930, AS AMENDED

### COMPLAINANTS

LSI Corporation
1621 Barber Lane
Milpitas, CA 95305
Telephone: (800) 372-2447

Agere Systems Inc.
1110 American Parkway NE
Allentown, Pennsylvania 18109
Telephone: (610) 712-1011

### COUNSEL FOR COMPLAINANT

David F. Nickel
FOSTER, MURPHY, ALTMAN & NICKEL, PC
1899 L Street, NW, Suite 1150
Washington, DC 20036
Telephone: (202) 822-4100

David E. Sipiora
Kristopher L. Reed
KILPATRICK TOWNSEND & STOCKTON LLP
1400 Wewatta St., Suite 600
Denver, CO 80202
Telephone: (303) 405-8525

### PROPOSED RESPONDENTS

Funai Electric Company, Ltd.
7-7-1 Nakagaito, Daito City
Osaka 574-0013
Japan
Telephone: 011-81-72-870-4303

Funai Corporation, Inc.
201 Route 17 North
Rutherford, NJ 07070
Telephone: (201) 288-2063

P&F USA, Inc.
3015 Windward Plaza
Windward Fairways II – Suite 100
Alpharetta, GA 30005
Telephone: (770) 619-7500

Funai Service Corporation
2200 Spiegel Drive
Groveport OH 43125
Telephone: (614) 654-6000

MediaTek Inc.
No. 1 Dusing Road 1
Hsinchu Science Park
Hsinchu City
Taiwan 30078
Telephone: 011-886-3567-0766
(Cont'd on next page)

Jonathan D. Link
KILPATRICK TOWNSEND & STOCKTON LLP
607 14th St. NW, Suite 900
Washington, D.C. 20005
Telephone:  (202) 481-9990

MediaTek USA Inc.
2860 Junction Avenue
San Jose, CA 95134
Telephone: (408) 526-1899

MediaTek Wireless, Inc. (USA)
120 Presidential Way
Woburn, MA 01801
Telephone: (708) 503-8000

Ralink Technology Corporation
5 Tai-Yuen 1st Street, 5F
Jhubei City, Hsinchu County
Taiwan 30265
Telephone: 011-866-3560-0868

Ralink Technology Corporation (USA)
20833 Stevens Creek Blvd., Suite 200
Cupertino, CA 95014
Telephone: (408)725-8070

Realtek Semiconductor Corporation
2 Innovation Road II
Hsinchu Science Park
Hsinchu 300
Taiwan
Telephone: 011-886-3578-0211

**TABLE OF CONTENTS**

DOCUMENT EXHIBIT LIST ................................................................................... iii

PHYSICAL EXHIBIT LIST ..................................................................................... x

APPENDICES .......................................................................................................... xi

I.      INTRODUCTION ............................................................................................ 1

II.     THE PARTIES ................................................................................................. 4

        A.     Complainants ........................................................................................ 4

        B.     Proposed Respondents .......................................................................... 8

III.    THE TECHNOLOGY AND PRODUCTS AT ISSUE ..................................... 13

        A.     The Technology .................................................................................. 13

        B.     The Accused Products ........................................................................ 14

IV.    THE PATENTS AT ISSUE ............................................................................ 17

        A.     The Chau '087 Patent (U.S. Patent No. 5,870,087) ........................... 17

                1.    Identification of the Patent and Ownership by
                      Complainants ........................................................................... 17

                2.    Non-Technical Description of the Chau '087 Patent ................ 18

                3.    Foreign Counterparts to the Chau '087 Patent ....................... 19

        B.     The van Nee '958 Patent (U.S. Patent No. 6,452,958) ....................... 19

                1.    Identification of the Patent and Ownership by
                      Complainants ........................................................................... 19

                2.    Non-Technical Description of the van Nee '958 Patent ........... 20

                3.    Foreign Counterparts to the van Nee '958 Patent ................... 20

        C.     The Diepstraten '867 Patent (U.S. Patent No. 6,707,867) .................. 21

                1.    Identification of the Patent and Ownership by
                      Complainants ........................................................................... 21

                2.    Non-Technical Description of the Diepstraten '867 Patent ............ 21

|   |   | 3. | Foreign Counterparts to the Diepstraten '867 Patent ..................... 22 |
|---|---|---|---|
|   | D. | | The Winger '663 Patent (U.S. Patent No. 6,982,663) ................................. 22 |
|   |   | 1. | Identification of the Patent and Ownership by Complainants .................................................................... 22 |
|   |   | 2. | Non-Technical Description of the Winger '663 Patent ................. 23 |
|   |   | 3. | Foreign Counterparts to the Winger '663 Patent ............................ 23 |
|   | E. | | Licensees under the Asserted Patents ........................................................ 24 |
| V. | | | SPECIFIC INSTANCES OF IMPORTATION AND SALE ................................... 24 |
| VI. | | | UNLAWFUL AND UNFAIR ACTS COMMITTED BY PROPOSED RESPONDENTS—PATENT INFRINGEMENT ................................................... 28 |
|   | A. | | The Chau '087 Patent ............................................................................... 29 |
|   | B. | | The van Nee '958 Patent............................................................................. 32 |
|   | C. | | The Diepstraten '867 Patent ...................................................................... 34 |
|   | D. | | The Winger '663 Patent............................................................................. 37 |
| VII. | | | THE DOMESTIC INDUSTRY ........................................................................ 40 |
|   | A. | | Complainants' Substantial Exploitation of the Asserted Patents in the United States .................................................................................... 41 |
|   |   | 1. | Past Research and Development.................................................... 41 |
|   |   | 2. | Current Engineering, Research, and Development........................... 43 |
|   |   | 3. | Licensing Activities ................................................................... 43 |
|   | B. | | Licensees' Practice of the Asserted Patents and Related Significant Investments in the United States................................................................ 45 |
| VIII. | | | HARMONIZED TARIFF SCHEDULE INFORMATION ..................................... 53 |
| IX. | | | RELATED LITIGATION ............................................................................... 53 |
| X. | | | RELIEF REQUESTED ................................................................................... 55 |

## DOCUMENT EXHIBIT LIST

| Exhibit No. | Description | Designation |
|---|---|---|
| 1C | Licensee List | Confidential |
| 2 | 2003-09-08 LSI News Release re H.264 encoder/decoder | Public |
| 3 | 2007-07-02 ThomasNet News re Motorola acquisition of Modulus Video | Public |
| 4 | 2004-04-14 News Article re Modulus Video licensing of LSI H.264 Technology Platform | Public |
| 5 | 2005-04-05 News Article re LSI H.264 Technology Platform utilization in Modulus Video products | Public |
| 6 | 2005-04-14 PR Newswire Article re Motorola's Agreement to Resell Modulus Video Products | Public |
| 7 | Bell Labs Awards | Public |
| 8 | 2003-01-24 Agere Letter to IEEE Standards Committee with Typo Correction | Public |
| 9 | 2011-02-28 LSI 10-K | Public |
| 10 | 2011 Funai Annual Report | Public |
| 11 | Funai U.S. Brand Names Web Print-Out | Public |
| 12 | Funai America Products Web Print-Out | Public |
| 13 | 2010 MediaTek Annual Report | Public |
| 14 | Ralink Home Page Web Print-Out | Public |
| 15 | MediaTek Worldwide Locations Web Print-out | Public |
| 16 | Realtek Technological Strengths Web Print-out | Public |
| 17 | Certified Copy of U.S. Pat. No. 5,870,087 | Public |
| 18 | Certified Copy of Assignment Records for U.S. Pat. No. 5,870,087 | Public |

| Exhibit No. | Description | Designation |
|---|---|---|
| 19 | Status of Foreign Patents and Applications in the Family of U.S. Pat. No. 5,870,087 | Public |
| 20 | Certified Copy of U.S. Pat. No. 6,452,958 | Public |
| 21 | Certified Copy of Assignment Records for U.S. Pat. No. 6,452,958 | Public |
| 22 | Status of Foreign Patents and Applications in the Family of U.S. Pat. No. 6,452,958 | Public |
| 23 | Certified Copy of U.S. Pat. No. 6,707,867 | Public |
| 24 | Certified Copy of Assignment Records for U.S. Pat. No. 6,707,867 | Public |
| 25 | Status of Foreign Patents and Applications in the Family of U.S. Pat. No. 6,707,867 | Public |
| 26 | Certified Copy of U.S. Pat. No. 6,982,663 | Public |
| 27 | Certified Copy of Assignment Records for U.S. Pat. No. 6,982,663 | Public |
| 28 | Status of Foreign Patents and Applications in the Family of U.S. Pat. No. 6,982,663 | Public |
| 29C | Copies of Applicable License Agreements | Confidential |
| 30 | Photo MBP5210/F7 | Public |
| 31 | MBP5210/F7 Walmart.com | Public |
| 32 | MQ4WM5502 FCC Report with Appendix A (Internal Photos) | Public |
| 33 | Philips PFL5706 User Manual | Public |
| 34 | 55PFL5706D/F7 Amazon.com | Public |
| 35 | Philips PFL5705 User Manual | Public |
| 36 | Photo 40PFL5705D/F7 | Public |

| Exhibit No. | Description | Designation |
|---|---|---|
| 37 | 40PFL5705D/F7 Amazon.com | Public |
| 38 | MQ4WU5205 FCC Report with Appendix A (Internal Photos) | Public |
| 39 | Photo HTS5506 | Public |
| 40 | Philips HTS5506 User Manual | Public |
| 41 | HTS5506 Walmart.com | Public |
| 42 | Philips HTS5506 Service Manual ("SVM") | Public |
| 43 | Philips BDP3406/F7 User Manual | Public |
| 44 | Photo BDP3406 | Public |
| 45 | BDP3406/F7 Amazon.com | Public |
| 46 | BDP3406/F7 Walmart.com | Public |
| 47 | BDP3406 FCC Report with Internal Photos | Public |
| 48 | Photo 42PFL6704D/F7 | Public |
| 49 | 42PFL6704D/F7 Amazon.com | Public |
| 50 | Philips 42PFL6704D/F7 SVM | Public |
| 51C | Claim Chart Showing Infringement of U.S. Pat. No. 5,870,087 | Confidential |
| 52C | Claim Chart Showing Infringement of U.S. Pat. No. 6,452,958 | Confidential |
| 53C | Claim Chart Showing Infringement of U.S. Pat. No. 6,707,867 | Confidential |
| 54C | Claim Chart Showing Infringement of U.S. Pat. No. 6,982,663 | Confidential |
| 55 | 1997 Bell Labs Technical Journal Article | Public |
| 56 | 1998-07-13 Harris Press Release re Adoption of 802.11b | Public |

| Exhibit No. | Description | Designation |
|---|---|---|
| | Standards | |
| 57 | Ralink USA Corporate Information | Public |
| 58C | Salute Declaration | Confidential |
| 59C | Licensees' Domestic Investments | Confidential |
| 60 | Notice Letter – MediaTek Inc. | Public |
| 61 | Notice Letter – MediaTek USA | Public |
| 62 | Funai Service Overview | Public |
| 63 | Realtek's Answer in MOSAID v. Dell et al. | Public |
| 64 | Patent Application Status Codes Used in Exhibits 19, 22, 25 and 28 | Public |
| 65C-82C | Confidential Exhibits to Confidential Exhibit 59C | Confidential |
| 83 | Sony Corporate Information Web Print-Out | Public |
| 84 | USPTO Search Result Sony U.S. | Public |
| 85 | Sony U.S. Store Listing | Public |
| 86 | 2006 Agere Annual Report | Public |
| 87 | 2008-08-28 Law360 Article re Sony Litigation | Public |
| 88 | SanDisk Litigation Complaint | Public |
| 89 | Philips 42PFL6704D/F7 User Manual | Public |
| 90 | Global and China Flat-Panel TV IC Industry Report, 2009-2010 | Public |
| 91 | Philips LC9.2L Service Manual (in Brazilian) | Public |
| 92 | Magnavox MBP5210/F7 Supplemental SVM | Public |
| 93 | Magnavox MBP5220F SVM | Public |

| Exhibit No. | Description | Designation |
|---|---|---|
| 94 | 2012 Panasonic Semiconductor Selection Guide | Public |
| 95 | 2011 Panasonic UniPhier Brochure | Public |
| 96 | 2009 IEEE Design Automation Conference Paper 04796536 (digital object identifier: 10.1109/ASPDAC.2009.4796536) | Public |
| 97 | 2009-08-07 ATSC DTV Standard: Part 4 – MPEG-2 Video System Characteristics | Public |
| 98 | What Is ATSC Web Print-Out | Public |
| 99 | ITU-T H.222.0 (2006) | Public |
| 100 | ARM926EJ-S Technical Reference Manual | Public |
| 101 | ITU-T H.262 (2000) | Public |
| 102 | IEEE 802.11 Standards 2007 Compilation (Selected) | Public |
| 103 | IEEE 802.11n Standard 2009 (Selected) | Public |
| 104 | IEEE 802.11p Standard 2010 | Public |
| 105 | Magnavox MBP5130 Service Manual | Public |
| 106 | MQ4WU5501 FCC Test Report with Appendix A (Internal Photos) | Public |
| 107 | WU5205 Product Brief | Public |
| 108 | WU5501 Product Brief | Public |
| 109 | WM5502 Product Brief | Public |
| 110 | Philips BDP3406D/F7 Leaflet | Public |
| 111 | Magnavox MBP5130 User Manual | Public |
| 112 | Magnavox MBP5210/F7 User Manual | Public |
| 113 | Realtek RTL8188SU Product Information | Public |
| 114 | Realtek RTL8188CUS Product Information | Public |

| Exhibit No. | Description | Designation |
|---|---|---|
| 115 | Ralink RT307x Series Product Brief | Public |
| 116 | Ralink RT3370 Product Brief | Public |
| 117 | Intersil Application Note 9850 | Public |
| 118 | Hawaii Government Electronic Device Recycling Program Manufacturer Registration | Public |
| 119 | Magnavox Home Page Web Print-Out | Public |
| 120 | 2008-02-21 HDTV Magazine Article | Public |
| 121 | Blu-ray.com FAQ | Public |
| 122 | H.264.1 Standard (04/2010) | Public |
| 123 | H.264 Standards (06/2011) | Public |
| 124 | Hsu Thesis | Public |
| 125 | cabac.c | Public |
| 126 | Philips 55PFL5706 SVM | Public |
| 127 | Philips BDP3406 SVM | Public |
| 128 | Philips 40PFL5705 User Manual | Public |
| 129 | 2010-09-18 inSight Article re Wi-Fi Market | Public |
| 130 | 2011-10-28 EETimes Article re HDTV SoC Market | Public |
| 131 | Notice Letter – MediaTek Wireless | Public |
| 132 | Notice Letter – Ralink Technology Corporation | Public |
| 133 | USPTO Complainants' Patent Application Search | Public |
| 134 | USPTO Complainants' 802.11 Patent Application Search | Public |
| 135 | Nov. 2008 IEEE Transactions on Consumer Electronics 2077-81 | Public |

| Exhibit No. | Description | Designation |
|---|---|---|
| 136 | Notice Letter – Ralink USA | Public |
| 137 | Notice Letter – Realtek | Public |
| 138 | Magnavox MBP5220F Owner Manual | Public |
| 139 | TigerDirect.com - Acer Aspire AS8951G9600 | Public |
| 140 | Amazon.com - Acer Aspire 5745-5425 | Public |
| 141 | Best Buy – Sony PlayStation 3 Console | Public |
| 142 | 52381651-E420VO Service Manual | Public |
| 143 | VIZIO-GV42L HDTV | Public |
| 144 | Certificate of Ownership and Merger | Public |
| 145 | Mitsumi 802.11 WLAN antenna | Public |
| 146 | Hoovers.com Mitsumi Overview | Public |
| 147 | Costco – Sony Blu-ray Player | Public |

## <u>PHYSICAL EXHIBIT LIST</u>

| Exhibit No. | Description | Designation |
|---|---|---|
| PX-1 | Magnavox MBP5210/F7 | Public |
| PX-2 | Philips 42PFL4706D/F7 | Public |

**APPENDICES**

| Appendix No. | Description | Designation |
| --- | --- | --- |
| A | Certified Copy of Prosecution History for U.S. Pat. No. 5,870,087 | Public |
| B | Cited References for U.S. Pat. No. 5,870,087 | Public |
| C | Certified Copy of Prosecution History for U.S. Pat. No. 6,452,958 | Public |
| D | Cited References for U.S. Pat. No. 6,452,958 | Public |
| E | Certified Copy of Prosecution History for U.S. Pat. No. 6,707,867 | Public |
| F | Cited References for U.S. Pat. No. 6,707,867 | Public |
| G | Certified Copy of Prosecution History for U.S. Pat. No. 6,982,663 | Public |
| H | Cited References for U.S. Pat. No. 6,982,663 | Public |

## I.   <u>INTRODUCTION</u>

1.      LSI Corporation ("LSI") and Agere Systems Inc. ("Agere") (LSI and Agere, collectively, the "Complainants") respectfully file this Complaint pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, based upon the unlawful and unauthorized importation into the United States, the sale for importation, or the sale within the United States after importation, of certain audiovisual components and products containing the same (collectively the "Accused Products"), including, without limitation, certain digital televisions, Blu-ray disc players, home theater systems, DVD players and/or recorders, and other substantially similar audiovisual devices and systems that infringe one or more claims of U.S. Patent Nos. 5,870,087 ("the Chau '087 patent"), 6,452,958 ("the van Nee '958 patent"), 6,707,867 ("the Diepstraten '867 patent") or 6,982,663 ("the Winger '663 patent") (collectively, "the Asserted Patents").

2.      Complainants are leading designers and developers of complex, high-performance storage and networking semiconductors and storage systems.  They hold over thirteen thousand patents worldwide and more than nine thousand in the United States.  This patent portfolio resulted from billions of dollars invested in research and development by dozens of companies that form part of the storied lineage of Complainants, including American Telephone and Telegraph Company/AT&T Corporation ("AT&T"), NCR Corporation ("NCR"), Bell Laboratories ("Bell Labs"), Lucent Technologies Inc. ("Lucent"), and LSI Logic Corporation ("LSI Logic").

3.      The Asserted Patents involve extraordinarily valuable technology in the field of wireless communications and multimedia data processing.  Complainants own by assignment the Asserted Patents, which are valid and enforceable United States patents.  These patents have been licensed to many leading technology

companies in the United States and throughout the world, as listed in Confidential Exhibit 1C.

4.     Complainants and their licensees have invested considerable resources into the development of a domestic industry that exploits the Asserted Patents.  This domestic industry includes PC & gaming products, optical consumer products (such as Blu-ray disc players/recorders and DVD players/recorders), mobility products (such as mobile phones, smart phones, and tablets), digital television products, personal digital media products (such as MP3 players or portable digital media players), content delivery products (such as wireless services), and semiconductor products (such as wafers, chips, and chipsets) that practice and/or are licensed under one or more of the Asserted Patents.

5.     Proposed Respondents are Funai Electric Company, Ltd. ("Funai Japan"), Funai Corporation, Inc. ("Funai USA"), P&F USA, Inc. ("P&F USA"), Funai Service Corporation ("Funai Service" ) (Funai Japan, Funai USA, P&F USA, and Funai Service, collectively, "Funai"); and Funai's component suppliers MediaTek Inc., MediaTek USA Inc., MediaTek Wireless, Inc. (USA) (collectively, "MediaTek"); Ralink Technology Corporation, Ralink Technology Corporation (USA) (collectively, "Ralink"); and Realtek Semiconductor Corporation ("Realtek").[1]

---

[1] Hereinafter, MediaTek, Ralink, and Realtek are collectively referred to as "Wi-Fi Component Suppliers;" MediaTek is referred to as "Media Component Suppliers;" Media Component Suppliers and Wi-Fi Component Suppliers are collectively referred to as "Component Suppliers;" and Funai and Component Suppliers are collectively referred to as "Proposed Respondents."

6.     Proposed Respondents directly and/or indirectly infringe one or more claims of the Asserted Patents identified below and as further detailed in ¶ 105. The asserted claims are:

| U.S. Patent No. | Asserted Claims |
|---|---|
| 5,870,087 | 1, 5, 7-9, 10-11, 16 |
| 6,452,958 | 1-7, 10-11, 22-26, 29-30, 32, 35-36 |
| 6,707,867 | 1, 4-7, 9-21, 23-24, 26-40, 44-45, 47, 49-74 |
| 6,982,663 | 1-11 |

7.     Proposed Respondents' activities with respect to the importation into the United States, the sale for importation into the United States, and/or the sale within the United States after importation of the Accused Products, as defined in paragraph 1 above and as described more fully in Section III.B below, are unlawful under 19 U.S.C. § 1337(a)(1)(B)(i), in that they constitute the infringement of one or more valid and enforceable claims of the Asserted Patents and that a domestic industry as required by U.S.C. §§ 1337(a)(2) and (3) exists in the United States relating to the technology protected by the Asserted Patents.

8.     Complainants seek relief from the Commission in the form of a limited exclusion order excluding audiovisual components and products containing the same that infringe one or more claims of the Asserted Patents and which are manufactured by or on behalf of, or imported by or on behalf of, any Proposed Respondents, or any of their affiliated companies, parents, subsidiaries, or other related business entities, or their successors or assigns, from entry for consumption into the United States, entry for consumption from a foreign trade-zone, or withdrawal from a warehouse for consumption, for the remaining terms of the Asserted Patents, except under license of Complainants or as provided by law.

9.      Complainants further seek as relief cease and desist orders that prohibit Proposed Respondents and any of their principals, stockholders, officers, directors, employees, agents, licensees, distributors, controlled (whether by stock ownership or otherwise) or majority-owned business entities, successors, and assigns, from either directly engaging in or for, with, or otherwise on behalf of Proposed Respondents, (A) importing or selling for importation into the United States audiovisual components and products containing the same that infringe one or more claims of the Asserted Patents; (B) marketing, distributing, offering for sale, selling, or otherwise transferring, in the United States imported audiovisual components and products containing the same that infringe one or more claims of the Asserted Patents; (C) advertising imported audiovisual components and products containing the same that infringe one or more claims of the Asserted Patents in the United States; (D) soliciting U.S. agents or distributors for imported audiovisual components and products containing the same that infringe one or more claims of the Asserted Patents; or (E) aiding or abetting other entities in the importation, sale for importation, sale after importation, transfer, or distribution of audiovisual components and products containing the same that infringe one or more claims of the Asserted Patents.

10.      Complainants further seek any other relief the Commission is authorized to grant and deems appropriate.

## II.    **THE PARTIES**

### A.    **Complainants**

11.      LSI is a Delaware corporation having its principal place of business at 1621 Barber Lane, Milpitas, California.  It was incorporated in California on November 6, 1980 and reincorporated in Delaware on June 11, 1987.

12.     LSI is a pioneer in multimedia data processing, the subject matter of the asserted Chau '087 and Winger '663 patents.  In 2003, for example, its predecessor-in-interest, LSI Logic Corporation, unveiled the first real-time H.264/MPEG-4 AVC Technology Platform to meet the ITU-T Standard.  *See* Ex. 2 [2003-09-08 LSI News Release] (available at http://www.design-reuse.com/news/?id=6207& print=yes (last visited Mar. 7, 2012)).  The subject matter of the Winger patent formed an integral part of the technology platform.  Other industry players—such as Modulus Video, Inc.[2]—licensed and incorporated this Technology Platform in their commercial products.  *See, e.g.*, Ex. 4 [2004-04-14 News Article] (available at http://www.design-reuse.com/news/? id=7608&print=yes (last visited Mar. 7, 2012)) (Modulus Video licenses H.264 technology from LSI Logic); Ex. 5 [2005-04-05 News Article] (available at http://www.design-reuse.com/news/? id=10057&print=yes (last visited Mar. 7, 2012)) (LSI's H.264 Technology integrated into Modulus Video's products); Ex. 6 [2005-04-14 PR Newswire Article] (available at http://www.prnewswire.com/news-releases/motorola-and-modulus-video-to-offer-standard--and-high-definition-mpeg-4-encoding-solutions-54303142.html (last visited Mar. 7, 2012)) (Motorola would resell Modulus Video's H.264/AVC encoders and decoders).

13.     Agere is a Delaware corporation having its principal place of business at 110 American Parkway NE, Allentown, Pennsylvania.  LSI acquired Agere on April 2, 2007 through the merger of Agere with a wholly-owned subsidiary of LSI with Agere as the surviving subsidiary entity.

---

[2] Modulus Video, Inc. was acquired by Motorola Inc. in 2007.  *See* Ex. 3 [2007-07-02 ThomasNet News] (available at http://news.thomasnet.com/ print_friendly.html?prid=523424 (last visited Mar. 7, 2012)) (Motorola acquired Modulus Video).

14.     Agere was incorporated in Delaware in 2000 as a result of reorganization by Lucent, in which Lucent spun off its optoelectronic components and microelectronic businesses into Agere.  The reorganization and resulting spin-off of Agere as a separate entity were completed in June 2002.  Lucent itself resulted from a reorganization of AT&T, in which AT&T transferred its world-famous Bell Labs and most of its equipment-manufacturing business to Lucent.

15.     Agere is the assignee of a significant portion of AT&T's and Lucent's patent portfolio in diverse technology areas such as (i) modems, digital signal processors, wireless communications, network processors, and communication protocols; (ii) integrated circuit and optoelectronic manufacturing processes; and (iii) optoelectronic products including lasers, optical modulators, optical receivers and optical amplifiers; and the rights to collect royalties under those patents.  This patent portfolio was created partly as a result of the research efforts at Bell Labs—one of the largest and most respected research organizations in the world.  Bell Labs has produced thirteen Nobel Laureates, sharing seven Nobel Prizes in Physics; as well as nine U.S. Medals of Science, twelve U.S. Medals of Technology, two Draper prizes awarded by the U.S. National Academy of Engineering (considered the world's highest engineering prizes), and numerous other awards.  *See* Ex. 7 [Bell Labs Awards] (available at http://www.alcatel-lucent.com/wps/portal/BellLabs/AwardsandRecognition#tabAnchor2 (last visited Mar. 7, 2012)).

16.     In 1990, Bell Labs and its affiliates developed one of the world's first wireless local area network ("WLAN") products, called WaveLAN, and released the commercial product "WaveLAN-I" in 1991.  The research in the area of wireless telecommunications at AT&T, NCR, Bell Labs, Lucent and Agere led to numerous inventions, including the subject matters of the Diepstraten '867 and van Nee '958

patents.  Many of the inventions are relevant to one or more of the standard wireless communication protocols, such as the IEEE 802.11 Standard on WLAN.  *See* Ex. 8 [2003-01-24 Agere Letter to IEEE Standards Committee with Typo Correction] at 4.

17.     Currently, Complainants design, develop, and market complex, high-performance storage and networking semiconductors and storage systems.  Ex. 9 [2011-02-28 LSI 10-K] at 1.  Complainants offer a broad portfolio of capabilities including custom and standard product integrated circuits used in hard disk drives, solid state drives, high-speed communications systems, computer servers, storage systems, and personal computers.  *Id.*  They provide solutions incorporated into the core of products that create, store, consume, and transport digital information.  Ex. 9 [2011-02-28 LSI 10-K] at 1.

18.     Complainants operate principally within the United States.  They own a 600,000 square foot office complex in Allentown, Pennsylvania for administration, engineering, and licensing.  *Id.* at 17.  Complainants additionally lease office space in two buildings in Milpitas, California, among others, for corporate headquarters, administration, engineering, and licensing; and own facilities in Colorado for sales and engineering operations and in Kansas for engineering, administration, and training.  *Id.*  As of the end of fiscal year 2010, Complainants held approximately $205 million long-lived assets in North America, primarily in the United States, out of a total of approximately $223 million worldwide.  *Id.* at 77.

19.     Complainants devote significant resources to continued innovation, expending $670 million, $608 million and $673 million in research and development on revenues of $2.57 billion, $2.22 billion, and $2.68 billion for fiscal years 2010, 2009 and 2008, respectively.  *Id.* at 21.  For fiscal years 2010, 2009, and 2008,

Complainants derived $691.3 million, $519.2 million, and $737.2 million in revenue from North America (primarily in the United States), respectively. *Id.* at 77.

20.     Complainants and their predecessors have collectively invested billions of dollars in research and development over several decades. This significant investment has resulted in a patent portfolio consisting of over thirteen thousand patents worldwide and nearly ten thousand United States patents. These patents have been and/or are licensed by a large number of leading technology companies in the United States and throughout the world. Confidential Exhibit 1C lists the names of example licensees for each of the Asserted Patents.

**B.     Proposed Respondents**

21.     On information and belief, Funai Japan is a corporation organized under the laws of Japan with its principal place of business at 7-7-1 Nakagaito, Daito City, Osaka 574-0013, Japan. On information and belief, Funai Japan is the parent company of Funai USA, Funai Service, and P&F USA, and other Funai entities; and is responsible, directly or indirectly, for at least Funai's infringing activities. Funai Japan owns and/or controls manufacturing and sales subsidiaries that manufacture, import, and/or distribute the Accused Products sold under brand names that Funai owns or licenses. *See, e.g.*, Ex. 10 [2011 Funai Annual Report] at 52 (listing the dates various manufacturing, service, and sales subsidiaries were established). Funai Japan also owns and/or controls manufacturing facilities at which the Accused Products may be made under contract. *See, e.g., id.* at 26 ("OEM accounted for 37.0% of the Group's production supply during the fiscal year under review.").

22.     On information and belief, Funai USA is a corporation organized under the laws of New Jersey with its principal place of business at 201 Route 17 North, Rutherford, New Jersey 07070. On information and belief, Funai USA is a

wholly owned sales subsidiary of Funai Japan, and is an importer and/or distributor of the Accused Products that are sold under brand names such as Funai, Sylvania, Emerson, Magnavox and Symphonic. *See, e.g., id.* at 14, 52; Ex. 11 [Funai U.S. Brand Names] (available at http://www.funai.us/brand/index.html (last visited Mar. 7, 2012)); Ex. 12 [Funai America Products] (http://www.funaiamerica.com/product/top.php (last visited Mar. 7, 2012)).

23.    On information and belief, P&F USA is a corporation organized under the laws of Georgia with its principal place of business at 3015 Windward Plaza, Windward Fairways II-Suite 100, Alpharetta, Georgia 30005.  On information and belief, P&F is a wholly owned sales subsidiary of Funai Japan, and is an importer and/or distributor of the Accused Products that are sold under the brand name Philips. *See, e.g.*, Ex. 10 [2011 Funai Annual Report] at 52.

24.    On information and belief, Funai Service is a corporation organized under the laws of Ohio with its principal place of business at 2200 Spiegel Drive, Groveport, Ohio 43125.  On information and belief, Funai Service is a wholly owned service subsidiary of Funai Japan, and provides customer support, repairs, and other services to Accused Products. *See, e.g.*, Ex. 10 [2011 Funai Annual Repot] at 52; Ex. 62 [Funai Service Overview] (available at https://sites.google.com/site/funaiservice2007/home (last visited Mar. 7, 2012)).

25.    On information and belief, MediaTek Inc. is a corporation organized under the laws of Taiwan headquartered at No. 1, Dusing Road 1, Hsinchu Science Park, Hsinchu City, Taiwan 30078.  On information and belief, MediaTek Inc. is the worldwide parent corporation for other MediaTek entities, and is responsible, directly and/or indirectly, for at least MediaTek's and Ralink's infringing activities and products. *See, e.g.*, Ex. 13 [2010 MediaTek Annual Report] at 64, Section 8.1.1.

("MediaTek Affiliated Companies Chart"); *id.* at 32, Section 4.6 (proposed effective merger date with Ralink is 10/1/2011); Ex. 14 [Ralink Home Page] (available at http://www.ralinktech.com.tw/en/01_about/overview.php (last visited Mar. 7, 2012) ("Ralink Technology Corporation, a **wholly owned subsidiary of MediaTek Inc.** ....") (emphasis in original).  On information and belief, MediaTek Inc., directly and/or indirectly, designs, manufactures, sells for importation, imports, and/or sells after importation Wi-Fi and/or multimedia processing components and/or software/firmware, such as integrated circuits and chipsets for wireless communications and multimedia processing and related software/firmware, which are included in the Accused Products. *See, e.g.*, Ex. 13 [2010 MediaTek Annual Report] at 7 ("MediaTek Inc. is a leading fabless semiconductor company for wireless communications and digital multimedia solutions.  The company is a market leader and pioneer in . . . SoC system solutions for wireless communications, high-definition TV, optical storage, and DVD and Blu-ray products.").

26.     On information and belief, MediaTek USA Inc. ("MediaTek USA") is a corporation organized under the laws of Delaware, headquartered at 2860 Junction Avenue, San Jose, California 95134.  On information and belief, MediaTek USA is a wholly owned subsidiary of MediaTek Inc. engaged in sales, research, and development. *See, e.g.*, Ex. 13 [2010 MediaTek Annual Report] at 64, Section 8.1.1. ("MediaTek Affiliated Companies Chart"); *id.* at 65, Section 8.1.2. (listing major business for MediaTek USA as "R&D"); *id.* at 68-69, Section 8.1.6 (listing net sales and operational income for MediaTek USA); Ex. 15 [MediaTek Worldwide Locations] at 3 (available at http://www.mediatek.com/en/About/worldwide.php (last visited Mar. 7, 2012)) ("MediaTek, USA does advanced analog and digital semiconductor development for consumer electronic devices, which include digital imaging, digital TVs, cellphone chipsets, and wireless communication.").  On

information and belief, MediaTek USA is the parent company of MediaTek

Wireless, Inc. (USA) ("MediaTek Wireless") and is in control of Ralink Technology

Corporation (USA) ("Ralink USA").  *See, e.g.*, Ex. 13 [2010 MediaTek Annual

Report] at 64, Section 8.1.1. ("MediaTek Affiliated Companies Chart"); Ex. 57

[Ralink USA Corporate Information] (Ralink USA uses the same official address as

MediaTek USA).  On information and belief, MediaTek USA is responsible, directly

and/or indirectly, for infringing activities by at least MediaTek USA, MediaTek

Wireless, and Ralink USA.  On information and belief, MediaTek USA, directly

and/or indirectly, designs, sells for importation, imports, and/or sells after

importation Wi-Fi and/or multimedia processing components and/or

software/firmware, such as integrated circuits and chipsets for wireless

communications and multimedia processing and related software/firmware, which

are included in the Accused Products.  Ex. 13 [2010 MediaTek Annual Report] at 34.

  27. On information and belief, MediaTek Wireless is a corporation

organized under the laws of Massachusetts, with offices at 120 Presidential Way,

Woburn, Massachusetts, 01801; 3 Allied Drive, Suite 155, Dedham, Massachusetts

02026; and 5914 West Courtyard Drive, Suite 400, Austin, Texas 78730.  On

information and belief, MediaTek Wireless is a wholly owned subsidiary of

MediaTek USA engaged in sales, research, and development.  *See, e.g.*, Ex. 13 [2010

MediaTek Annual Report] at 64, Section 8.1.1. ("MediaTek Affiliated Companies

Chart"); *id.* at 65, Section 8.1.2. (listing major business for MediaTek Wireless as

"R&D"); *id.* at 68-69, Section 8.1.6 (listing net sales and operational income for

MediaTek Wireless); Ex. 15 [MediaTek Worldwide Locations] at 3 (available at

http://www.mediatek.com/en/About/worldwide.php  (last visited Mar. 7, 2012))

("Offices located in both Woburn and Dedham provide a strong technology

foundation for MediaTek. … This technology mission contributes directly to the

vision and direction for MediaTek product and service innovations."). On information and belief, MediaTek Wireless designs, sells for importation, imports, and/or sells after importation Wi-Fi and/or multimedia processing components and/or software/firmware, such as integrated circuits and chipsets for wireless communications and multimedia processing and related software/firmware, which are included in the Accused Products. Ex. 13 [2010 MediaTek Annual Report] at 34.

28.    On information and belief, Ralink Technology Corporation is a corporation organized under the laws of Taiwan with its principal place of business at 5F, No. 5 Tai-Yuen 1st Street, Jhubei City, Hsinchu County, Taiwan 30265. On information and belief, Ralink Technology Corporation (USA) is a corporation organized under the laws of California with an office at 20833 Stevens Creek Blvd., Suite 200, Cupertino, California 95014. On information and belief, Ralink "is a wholly owned subsidiary of MediaTek Inc." Ex. 14 [Ralink Home Page] (available at http://www.ralinktech.com.tw/en /01_about/overview.php (last visited Mar. 7, 2012). Ralink designs, manufactures, sells for importation, imports, and/or sells after importation Wi-Fi components and software/firmware, such as integrated circuits and chipsets for wireless communications and related software/firmware, which are included in the Accused Products. *See id.*

29.    On information and belief, Realtek Semiconductor Corporation ("Realtek") is a corporation organized under the laws of Taiwan with its principal place of business at No. 2 Innovation Road II, Hsinchu Science Park, Hsinchu County, Taiwan 300. On information and belief, Realtek designs, manufactures, sells for importation, imports, and/or sells after importation, Wi-Fi components and software/firmware, such as integrated circuits and chipsets for wireless communications and related software/firmware, which are included in the Accused

Products.  *See* Ex. 16 [Realtek Technological Strengths] (available at http://www.realtek.com/about/contentView.aspx?Langid=1&PNid=3&PFid=3&Level=1 (last visited Mar. 7, 2012)) ("Our expertise in system development and IC design is matched by our manufacturing knowledge and technologies …").

### III.   THE TECHNOLOGY AND PRODUCTS AT ISSUE

#### A.   The Technology

30.   The Asserted Patents generally relate to wireless communications and multimedia data processing.[3]  The Asserted Patents concern technologies used in a variety of audiovisual and communications devices, including accused multimedia processing equipment and 802.11-compliant multimedia communications equipment imported into the United States, sold for importation into the United States, or sold within the United States after importation by or on behalf of the Proposed Respondents.

31.   The technologies at issue in the Diepstraten '867 and van Nee '958 patents relate to telecommunication architecture and implementation, including various aspects of devices and processes used to implement features of the 802.11 WLAN protocols (such as those in Clauses 11, 18, and related clauses).

32.   The technology at issue in the Winger '663 patent relates to efficient multimedia signal encoding and decoding methods, and systems configured to implement such methods.

---

[3] The text of this Complaint is not intended to interpret the meaning or limit the scope of the claims of the Asserted Patents.

33.     The technology at issue in the Chau '087 patent relates to a single-memory decoder system and method which utilizes such a system for transport, decode and system controller functions.

**B.     The Accused Products**

34.     The Accused Products are generally audiovisual components (such as Wi-Fi components, multimedia processing components, and/or pertinent software or firmware) and products containing the same, including, without limitation, digital televisions ("DTVs"), Blu-ray disc players, DVD players/recorders, DTV/DVD combinations, DTV/Blu-Ray combinations, multimedia streaming players, home theater systems and other similar audiovisual devices and systems imported, marketed and/or sold by Proposed Respondents in the United States.  For the purpose of this Complaint only, Complainants have grouped certain Accused Products into the categories described below on a patent-by-patent basis.  These categories of products are merely examples of subcategories of some of the Accused Products, are not limiting, and are intended to include the examples provided below as well as other past, current, and future variations thereof.  Because the information regarding Accused Products in this Complaint is based on Complainants' present knowledge and understanding, Complainants expect that additional Accused Products and/or categories of Accused Products may be identified with the benefit of discovery.

35.     The term "Accused Wi-Fi Products" refers to certain Accused Products that practice at least one claim of the Diepstraten '867 patent or the van Nee '958 patent.  The Accused Wi-Fi Products include DTVs, Blu-ray disc players, Net boxes/HD streaming players, home theater systems, other audiovisual devices and products of similar designs in relevant part that comply with the 802.11 standards under brand names such as Philips, Magnavox, Funai, Sylvania, Emerson,

Symphonic, Denon, and Avendra. Specific non-limiting examples of Accused Wi-Fi Products include Funai-brand HD streaming players with built-in Wi-Fi, model number TB600FX2; Funai-brand portable Blu-ray disc players, model number PB750FX1; Magnavox-brand Blu-ray disc players, model numbers MBP5120F/F7, MBP5130/F7, MBP5230F/F7, MBP5220F/F7, and MBP5210/F7; Magnavox-brand home theater systems, model number MRD723B/F7; Magnavox-brand HD streaming players, model number TB600MG2F; Philips-brand DTVs, model numbers PFL7705DV/F7, PFL5705DV/F7, PFL5706/F7, and PFL4706/F7;[4] Philips-brand Blu-ray disc players, model numbers BDP3306/F7, BDP5506/F7, BDP5406/F7, BDP7520/F7, and BDP3406/F7; Philips-brand home theater systems, model numbers HTS3306/F7, HTS3106/F7, and HTS5506/F7; and Sylvania-brand Blu-ray disc players, model number NB620SL1.

36.     The term "Accused AVC Products" refers to certain Accused Products that practice at least one claim of the Winger '663 patent. The Accused AVC Products include DTVs, Blu-ray disc players, home theater systems, other audiovisual devices and products of similar designs in relevant part that are capable of processing H.264/AVC-compliant multimedia data streams under brand names such as Philips, Magnavox, Funai, Sylvania, Emerson, Symphonic, and Denon. Specific non-limiting examples of Accused AVC Products include, without limitation, Philips-brand DTVs, model numbers PFL7705DV/F7, PFL7704D/F7, PLF6704D/F7, PFL5705DV/F7, PFL5706/F7, and PFL4706/F7; Philips-brand Blu-ray disc players, model numbers BDP3306/F7, BDP5506/F7, BDP5406/F7,

---

[4] For these and other TV models, the first two digits of the model numbers are omitted. The first two digits generally correspond to the approximate diagonal length of the display in inches. For the four models listed here, the sizes are 40, 46 and 55. For other models, the sizes may include 19, 22, 26, 32, 37, 42 and 47 inches, among others.

BDP7520/F7, BDP3406/F7, BDP5320/F7, BDP5110/F7, BDP5012/F7, BDP5012/F7B, and BDP5012/F7E; Philips-brand home theater systems, model numbers HTS3306/F7, HTS3306/F7 C, HTS3106/F7, HTS3106/F7 C, HTS5506/F7, and HTS5580W/F7; Funai-brand portable Blu-ray disc players, model number PB750FX1; Magnavox-brand Blu-ray disc players, model numbers MBP5120F/F7, MBP5130/F7, MBP5230F/F7, MBP5220F/F7, MBP5210/F7, MBP1100/F7, NB500MG1F/F7, and MBP110V/F7; Magnavox-brand home theater systems, model numbers MRD723B/F7 and MRD410B/F7; and Sylvania-brand Blu-ray disc players, model numbers NB620SL1, NB530SLX, and NB531SLX, and Funai-brand digital cameras, model number SV310FX1

37.     The term "Accused Single Memory Products" refers to certain Accused Products that practice at least one claim of the Chau '087 patent.  The Accused Single Memory Products include DTVs, Blu-ray disc players, home theater systems, DVD players, DTV/DVD player combinations, DTV/Blu-Ray disc player combinations, DVD/Blu-ray disc players, other audiovisual devices and products of similar designs in relevant part that have a unified memory under brand names such as Philips, Magnavox, Funai, Sylvania, Emerson, Symphonic, and Denon.  Examples of the Accused Single Memory Products include, without limitation, Philips-brand DTVs, model numbers PFL7705DV/F7, PFL7704D/F7, PLF6704D/F7, PFL5705DV/F7, PFL5706/F7, PFL4706/F7, PLF4505D/F7, PFL3706/F7, PFL3506/F7, and PFL3505D/F7; Philips-brand Blu-ray disc players, model numbers BDP3306/F7, BDP5506/F7, BDP5406/F7, BDP7520/F7, BDP3406/F7, BDP5320/F7, BDP5110/F7, and BDP5012/F7; Funai-brand portable Blu-ray disc players, model number PB750FX1; Magnavox-brand DTVs, model numbers MF401B, MF301B, ME360B, ME601B, MF440B, MF430B, and MF330B; Magnavox-brand DTV/DVD player combinations, model numbers MD311B,

MD301B, and MD350B; Magnavox-brand Blu-ray disc players, model numbers

MBP5120F/F7, MBP5130/F7, MBP5230F/F7, MBP5220F/F7, MBP5210/F7,

MBP1100/F7, NB500MG1F/F7, and MBP110V/F7; Magnavox home theater

systems, model numbers MRD723B/F7 and MRD410B/F7; Magnavox-brand DVD

players/recorders, model numbers MDR515H, MDR513H,  DV225MG9,

CDV220MW9, MDV3110, MDV3000, and MDV2100; Magnavox-brand

DVD/VCR Recorder ZC320MW8B and ZV457MG9; Magnavox-brand HD

streaming players, model number TB600MG2F; Sylvania-brand DTVs, model

numbers LC401SS2(or 1), LC320SS2(or 1), LC320SL1, LC260SS2(or 1),

LC220SS2(or 1), LC190SS2(or 1), and LC190SL1; Sylvania-brand DTV/DVD

player combinations, model numbers LD320SS2(or 1) and LD190SS2(or 1);

Sylvania-brand Blu-ray disc players, model numbers NB620SL1, NB530SLX, and

NB531SLX, Emerson-brand DTVs, model numbers LC401EM2, LC401EM2F,

CLC401EM2F, LC370EM2, LC320EM2, LC320EM2F, CLC320EM2F,

LC260EM2, LC220EM2, and LC190EM2; and Emerson-brand TV/DVD player

combinations, model numbers LD190EM2 and LD190EM1.

## IV.   THE PATENTS AT ISSUE

### A.   The Chau '087 Patent (U.S. Patent No. 5,870,087)

#### 1.   Identification of the Patent and Ownership by Complainants

38.     LSI owns by assignment the entire right, title, and interest in the Chau

'087 patent entitled "MPEG Decoder System and Method Having a Unified Memory

for Transport Decode and System Controller Functions," which issued on February

9, 1999.  The Chau '087 patent issued to inventor Kwok Kit Chau from United States

Patent Application No. 748,269, filed on November 13, 1996.  It expires on

November 13, 2016.  Pursuant to Commission Rule 210.12(a)(9)(i), a certified copy

of the Chau '087 patent is attached as Exhibit 17.  Pursuant to Commission Rule
210.12(a)(9)(ii), certified copies of the recorded assignments of the Chau '087 patent
are attached as Exhibit 18.  In addition, a copy of the Certificate of Ownership and
Merger filed for recordation in the USPTO is attached as Exhibit 144.  Complainants
will supplement to provide a certified copy of this recordation as soon as it is
available.

39.      Pursuant to Commission Rule 210.12(c), a certified copy and three
additional copies of the prosecution history of the Chau '087 patent, as well as four
copies of each patent and applicable pages of each technical reference mentioned in
the prosecution history, are attached as Appendices A and B, respectively.

**2.       Non-Technical Description of the Chau '087 Patent**

40.      The Chau '087 patent has twenty claims:  three independent claims
and seventeen dependent claims.

41.      The Chau '087 patent generally relates to digital video compression
and decompression, and more particularly to a decoding system that includes, among
other components, transport logic, a system controller, a decoder, and a single
unified memory.  The transport logic is configured to separate the received data
streams into a plurality of multimedia streams.  The system controller is configured
to control the system operations and execute programs and applets. The decoder is
configured to decode the  multimedia data streams.  Unlike conventional systems
which generally included a separate memory for the transport logic and system
controller in the decoding system taught by the Chau '087 patent, a single unified
memory stores the data and code associated with the operations of the transport
logic, system controller, and decoder.

### 3.    Foreign Counterparts to the Chau '087 Patent

42.    Pursuant to Commission Rule 210.12(a)(9)(v), on information and belief, Exhibit 19 identifies the foreign patents or patent applications related to the Chau '087 patent that have been filed, granted, abandoned, withdrawn, or rejected.[5]

## B.    The van Nee '958 Patent (U.S. Patent No. 6,452,958)

### 1.    Identification of the Patent and Ownership by Complainants

43.    Agere owns by assignment the entire right, title, and interest in the van Nee '958 patent entitled "Digital Modulation System Using Extended Code Set," which issued on September 17, 2002.  The van Nee '958 patent issued to inventor Richard D. J. van Nee from United States Patent Application No. 09/064,188, filed on April 22, 1998.  The van Nee '958 patent is a continuation-in-part of U.S. Patent No. 6,404,732, which is a continuation-in-part of U.S. Patent No. 5,862,182, filed on July 30, 1996.  The van Nee '958 patent expires on July 30, 2016.  Pursuant to Commission Rule 210.12(a)(9)(i), a certified copy of the '958 patent is attached as Exhibit 20.  Pursuant to Commission Rule 210.12(a)(9)(ii), certified copies of the recorded assignments of the '958 patent are attached as Exhibit 21.

44.    Pursuant to Commission Rule 210.12(c), a certified copy and three additional copies of the prosecution history of the van Nee '958 patent, as well as four copies of each patent and applicable pages of each technical reference mentioned in the prosecution history, are attached as Appendices C and D, respectively.

---

[5] The lists of related foreign patents and applications for the Asserted Patents include patents and applications in the same family that are not necessarily counterparts to the Asserted Patents.  For a list of codes referenced in Exhibits 19, 22, 25 and 28, please refer to Exhibit 64.

2.      **Non-Technical Description of the van Nee '958 Patent**

45.     The van Nee '958 patent has 49 claims: 18 independent claims and 31 dependent claims.

46.     The van Nee '958 patent generally relates to wireless communication, and more particularly to digital modulation and demodulation methods and/or systems that provide increased data rates while minimizing performance degradation due to such factors as multipath signal transmission and noise interference.  In wireless communications, a transmitted signal is often scattered and reflected by the many objects that lie between the transmitter and receiver.  This results in multiple "copies" of the transmitted signals ("multipath signals") to arrive at the receiver with various amounts of delay, phase shift, and attenuation, which in turn, may lead to inter-symbol interference and loss of large blocks of information. In accordance with the van Nee '958 patent, the modulation of signals is performed using a code set whose number of codes (M) is greater than the length (N) of each of code.  The code set may be derived from a complementary code.

3.      **Foreign Counterparts to the van Nee '958 Patent**

47.     Pursuant to Commission Rule 210.12(a)(9)(v), on information and belief, Exhibit 22 identifies the foreign patents or patent applications related to the van Nee '958 patent that have been filed, granted, abandoned, withdrawn, or rejected.

C.     **The Diepstraten '867 Patent (U.S. Patent No. 6,707,867)**

     1.     **Identification of the Patent and Ownership by Complainants**

48.     Agere owns by assignment the entire right, title, and interest in the '867 patent entitled "Wireless Local Area Network Apparatus," which issued on March 16, 2004.  The Diepstraten '867 patent issued to inventors Wilhelmus J. M. Diepstraten, Hendrik van Bokhorst, and Hans van Driest from United States Patent Application No. 10/092,295, filed on March 7, 2002.  It claims priority to Application No. 08/155,661, filed on November 22, 1993.  The Diepstraten '867 patent expires on February 23, 2014.  Pursuant to Commission Rule 210.12(a)(9)(i), a certified copy of the Diepstraten '867 patent is attached as Exhibit 23.  Pursuant to Commission Rule 210.12(a)(9)(ii), certified copies of the recorded assignments of the Diepstraten '867 patent are attached as Exhibit 24.

49.     Pursuant to Commission Rule 210.12(c), a certified copy and three additional copies of the prosecution history of the Diepstraten '867 patent, as well as four copies each patent and applicable pages of each technical reference mentioned in the prosecution history, are attached as Appendices E and F, respectively.

     2.     **Non-Technical Description of the Diepstraten '867 Patent**

50.     The Diepstraten '867 patent has seventy-four claims:  thirteen independent claims and sixty-one dependent claims.

51.     The Diepstraten '867 patent generally relates to methods that synchronize a transmitter and a receiver in a wireless network (such as a wireless local area network), and systems that are capable of implementing such synchronization methods.  A wireless network comprises one or more receivers, and often requires precise timing relationships between a transmitter and a receiver.  The

Diepstraten '867 patent teaches, among other things, mechanisms for accurately synchronizing receivers and transmitters using periodic signals from the transmitter to the receiver.  These periodic signals contain a transmitter timestamp, which the receiver uses to adjust its timer and synchronize with the transmitter. These synchronization mechanisms are useful for many reasons.  For example, to conserve energy, a receiver can periodically switch between a lower power consumption state when not receiving signals and a high power consumption state when receiving signals.  To minimize power consumption, it is desirable that the transmitting and receiving stations are synchronized so that the amount of time the receiving stations are in the high-power consumption state is minimized.

### 3.      Foreign Counterparts to the Diepstraten '867 Patent

52.      Pursuant to Commission Rule 210.12(a)(9)(v), on information and belief, Exhibit 25 identifies the foreign patents or patent applications related to the Diepstraten '867 patent that have been granted, filed, abandoned, withdrawn, or rejected.

## D.      The Winger '663 Patent (U.S. Patent No. 6,982,663)

### 1.      Identification of the Patent and Ownership by Complainants

53.      LSI owns by assignment the entire right, title, and interest in the '663 patent entitled "Methods and System for Symbol Binarization," which issued on January 3, 2006.  The '663 patent issued to inventor Lowell Winger from United States Patent Application No. 10/770,213, filed on February 2, 2004.  The Winger '663 patent is a continuation of U.S. Patent No. 6,744,387, filed on July 10, 2002.  It expires on July 17, 2022.  Pursuant to Commission Rule 210.12(a)(9)(i), a certified copy of the Winger '663 patent is attached as Exhibit 26.  Pursuant to Commission

Rule 210.12(a)(9)(ii), certified copies of the recorded assignments of the Winger '663 patent are attached as Exhibit 27.  In addition, a copy of the Certificate of Ownership and Merger filed for recordation in the USPTO is attached as Exhibit 144.  Complainants will supplement to provide a certified copy of this recordation as soon as it is available.

54.     Pursuant to Commission Rule 210.12(c), a certified copy and three additional copies of the prosecution history of the Winger '663 patent, as well as four copies of each patent and applicable pages of each technical reference mentioned in the prosecution history, are attached as Appendices G and H, respectively.

### 2.     Non-Technical Description of the Winger '663 Patent

55.     The Winger '663 patent has twenty-one claims:  four independent claims and seventeen dependent claims.

56.     The Winger '663 patent generally relates to a system and method for encoding and decoding digital signals.  With the proliferation of digital media, it remains a challenge to compress digital multimedia signals so they can be transmitted efficiently.  The Winger '663 patent describes, among other things, novel binary arithmetic encoding methods used during compression of digital multimedia signals, and methods used to decode multimedia signals during decompression.  The Winger '663 patent also describes systems configured to implement the encoding and decoding methods described in the patent.

### 3.     Foreign Counterparts to the Winger '663 Patent

57.     On information and belief and as indicated in Exhibit 28, the Winger '663 patent has no related foreign patents or patent applications.

E.      **Licensees under the Asserted Patents**

58.      Pursuant to Commission Rule 210.12(a)(9)(iii), a list identifying each licensee specifically licensed under each of the Asserted Patents is attached as Confidential Exhibit 1C.  The scope and duration of each license, and the rights associated with the license, are dependent on the specific terms of each agreement.

59.      Pursuant to Commission Rule 210.12(a)(9)(iv), three copies of each license agreement for each Asserted Patent that Complainants rely upon to support their contention that a domestic industry as defined in Section 337(a)(3) exists as a result of the domestic activities of one or more licensees are attached as Confidential Exhibit 29C.  Each of these licenses is prohibited from disclosure without the prior written consent of the licensee.  Such consent has been sought in writing, and Complainants will supplement its filing with the submission of each such license upon receipt of the consent of the licensee.

V.      **SPECIFIC INSTANCES OF IMPORTATION AND SALE**

60.      On information and belief, Proposed Respondents manufacture the Accused Products and pertinent components thereof overseas.  *See* Ex. 10 [2011 Funai Annual Report] at 14 (production subsidiaries are located in Japan, China, Thailand, Mexico, and Poland; Funai only has sales subsidiaries located in the United States); *id.* at 26 (85.2% of Funai products are produced in China).

61.      On information and belief, Proposed Respondents, directly or through agents acting on behalf of Funai or its customers, manufacture, import into the United States, sell or offer for sale for importation into the United States, and/or sell within the United States after importation the Accused Products.  The specific instances of importation of the Accused Products set forth below are examples of the unlawful importation and/or sale after importation of infringing articles.

62.     As one example, Magnavox-brand Blu-ray disc players having a
model number MBP5210/F7 are an example of the Accused Wi-Fi Products,
Accused AVC Products, and Accused Single Memory Products.  They are made in
China.  *See* Ex. 30 [Photo MBP5210/F7] at 1 (showing "MADE IN CHINA").  They
are imported into the United States.  For example, an LSI representative purchased a
unit of Magnavox MBP5210/F7 in the United States as depicted in Exhibit 30.  *See*
Ex. 30 [Photo MBP5210/F7] at 1-2.  Furthermore, these Blu-ray disc players are
available at mass retailers such as Wal-Mart.  *See* Ex. 31 [MBP5210/F7
Walmart.com] (listing store availability for MBP5210/F7 near Los Angeles,
California).  A physical example of a Magnavox Blu-ray disc player MBP5210/F7
together with the receipt is submitted as Physical Exhibit PX-1.

63.     MBP5210/F7 contains a wireless module with an FCC ID
MQ4WM5502.  *See* Ex. 30 [Photo MBP5210/F7] at 3.  On information and belief,
the wireless module MQ4WM5502 incorporates a Wi-Fi chip RLT8188CUS made
by Realtek in Taiwan.  *See*, *e.g.*, Ex. 30 [Photo MBP5210/F7] at 3 (showing
"Taiwan" on the chip); Ex. 32 [MQ4WM5502 FCC Report] at A2 (same).

64.     As a second example, Philips-brand DTVs having a model number
55PFL5706/F7 are an example of the Accused Wi-Fi Products, Accused AVC
Products and Accused Single Memory Products.  They are made in China.  *See* Ex.
33 [Philips PFL5706 User Manual] at 53 (noting "PAIS DE ORIGEN: CHINA").
Philips DTVs 55PFL5706/F7 are imported into the United States.  For example,
these DTVs are available on Amazon.com, among others.  *See* Ex. 34
[55PFL5706D/F7 Amazon.com] (available at http://www.amazon.com/Philips-
55PFL5706-F7-55-inch-Wireless/dp/B004SP08T6/ref=sr_1_1?ie=UTF8&qid=
1325479858&sr=8-1 (last visited Mar. 7, 2012)).

65.     As a third example, Philips-brand DTVs having a model number 40PFL5705DV/F7 are an example of the Accused Wi-Fi Products and Accused Single Memory Products.  They are assembled in Mexico.  *See* Ex. 35 [Philips PFL5705 User Manual] at 44 (indicating "ENSAMBLADO EN: MEXICO"); Ex. 36 [Photo 40PFL5705D/F7] at 3 (indicating the device is "ASSEMBLED IN … MEXICO").  Philips DTVs having a model number 40PFL5705D/F7 are imported into the United States.  For example, a representative of Complainants purchased a unit of Philips 40PFL5705D/F7 in the United States as depicted in Exhibit 36.  Furthermore, these DTVs are available on Amazon.com, among others.  *See* Ex. 37 [40PFL5705D/F7 Amazon.com] (available at http://www.amazon.com/Philips-40PFL5705DV-F7-40-Inch-MediaConnect/dp/ B004ELA08I/ref=sr_1_3?ie=UTF8&qid=1325474101&sr=8-3 (last visited 1/1/2012)).

66.     40PFL5705D/F7 is supplied with a wireless adapter PH2010A having an FCC ID MQ4WU5205.  *See* Ex. 36 [Photo 40PFL5705] at 4-5.  On information and belief, the wireless module MQ4WU5205 contains a chip RT3070L made by Ralink.  *See* Ex. 36 [Photo 40PFL5705] at 5; Ex. 38 [MQ4WU5205 FCC Report] at A2.

67.     As a fourth example, Philips-brand home theater systems having a model number HTS5506/F7 are an example of at least the Accused Wi-Fi Products and Accused AVC Products.  They are made in China.  *See* Ex. 39 [Photo HTS5506/F7] at 1-2 (showing the device was "MADE IN CHINA"); Ex. 40 [Philips HTS5506/F7 User Manual] at 68 (showing the country of origin for HTS5506/F7 is "CHINA").  They are imported into the United States.  For example, an LSI representative purchased a unit of Philips HTS5506/F7 in the United States as

depicted in Exhibit 39.   Furthermore, these home theater systems are available at mass retailers such as Wal-Mart.  *See* Ex. 41 [HTS5506 Walmart.com] (available at http://www.walmart.com/ip/Philips-HTS5506-F7-1000W-3D-Blu-ray-Home-Theater-System/16817863 (last visited Mar. 7, 2012)).

68.     HTS5506/F7 contains a wireless module with an FCC ID MQ4WM5502.  *See* Ex. 39 [Photo HTS5506] at 4; Ex. 42 [Philips HTS5506 SVM] at 1-18-1 ("WIRELESS LAN MODULE WM5502").   On information and belief, the wireless module MQ4WM5502 contains a chip RTL8188CUS made by Realtek in Taiwan.  *See* Ex. 39 [Photo HTS5506/F7] at 4 (showing "Taiwan" on the chip); Ex. 32 [MQ4WM5502 FCC Report] at A2 (same).

69.     As a fifth example, Philips-brand Blu-Ray disc players having a model number BDP3406/F7 are an example of the Accused Wi-Fi Products, Accused AVC Products, and Accused Single Memory Products.  They are made in China.  *See* Ex. 43 [Philips BDP3406/F7 User Manual] at 2 ("Pais de Origen/Origin: CHINA"); Ex. 44 [Photo BDP3406] at 1 ("MADE IN CHINA").  They were imported in the United States.  For example, a representative of Complainants purchased a unit of Philips BDP3406/F7 in the United States as depicted in Exhibit 44.  Furthermore, these Blu-ray players were available at mass retailers such as Wal-Mart, and are still available at online stores.  *See* Ex. 45 [BDP3406/F7 Amazon.com] (http://www.amazon.com/Philips-BDP3406-F7-Blu-Ray-Player/dp/B004ZP756S (last visited Mar. 7, 2012); Ex. 46 [BDP3406/F7 Walmart.com] (http://www.walmart.com/ip/Philips-BDP3406-1080p-Wi-Fi-Blu-ray-Disc-Player-Blu-ray-Player/16874089  (last visited Mar. 7, 2012)).

70.     BDP3406/F7 contains a MediaTek MT8551 multimedia processor and a wireless module.   *See* Ex. 44 [Photo BDP3406] at 4; Ex. 47 [BDP3406 FCC

Report with Internal Photos] at 7-4, 7-9.  On information and belief, the wireless module contains a package RT3370L made by Ralink.  *See* Ex. 44 [Photo BDP3406] at 4.

71.     As a sixth example, Philips-brand HDTVs having a model number 42PFL6704D/F7 are an example of the Accused AVC Products and the Accused Single Memory Products.  They were assembled in Mexico.  *See, e.g.*, Ex. 48 [Photo 42PFL6704D/F7] at 1.  They were imported in the United States.  For example, a unit of Philips 42PFL6704D/F7 was purchased in the United States.  *See* Ex. 48 [Photo 42PFl6704D/F7] at 2 (shipping label).  Furthermore, they are available at on-line stores in the United States.  *See* Ex. 49 [42PFL6704D/F7 Amazon.com] (used units available at Amazon warehouse and Tech for Less in Colorado).  A physical example of a Philips 42PFL6704D/F7 together with the receipt is submitted as Physical Exhibit PX-2.

72.     42PFL6704D/F7 contains a MediaTek MT5392 multimedia processor.  *See* Ex. 50 [Philips 42PFL6704D/F7 SVM] at 14-17, 10-14.

## VI.    UNLAWFUL AND UNFAIR ACTS COMMITTED BY PROPOSED RESPONDENTS—PATENT INFRINGEMENT[6]

73.     On information and belief, Funai manufactures abroad, sells for importation into the United States, imports into the United States, and/or sells within the United States after importation, Accused Products that infringe one or more claims of the Asserted Patents.

74.     Funai directly infringes and will infringe the Asserted Patents by making, using, selling, offering for sale, and importing articles covered by claims of

---

[6] For clarity, in this section, Funai refers collectively to Funai Japan, Funai USA, P&F USA and Funai Service.

the Asserted Patents.  Moreover, Funai is aware of the Asserted Patents, at least because it was provided with a copy of this Complaint via registered mail as of the date of its filing.  In addition, Funai is aware of certain Asserted Patents because these patents were specifically mentioned during license negotiations that preceded the filing of this complaint.  Funai indirectly infringes the Asserted Patents by contributing to and/or inducing the infringement of these patents.

75.    Component Suppliers infringe the Asserted Patents, as well.  For example, Component Suppliers contribute to and/or induce the infringement of these patents by Funai, among others.  Moreover, Component Suppliers are aware of the Asserted Patents, at least because they were provided with a copy of this Complaint via overnight mail as of the date of its filing and because they were provided with notice letters identifying the pertinent Asserted Patents.  The notice letters requested that Component Suppliers confirm in writing that they would cease their infringement of the pertinent Asserted Patents.  Thus far, Component Suppliers have not agreed to the request set forth in the notice letter.  In addition, on information and belief, some Component Suppliers are aware of certain Asserted Patents because, *inter alia*, (1) they were served with subpoenas related to these patents in other litigations; (2) they are aware of Agere's Letters of Assurance to the IEEE Standards Committee that listed the Asserted Wi-Fi Patents; and/or (3) they are aware of prior litigations that involved the Asserted Patents.

A.    **The Chau '087 Patent**

76.    On information and belief, the Accused Single Memory Products infringe at least claims 1, 5, 7-9, 10-11, and 16 of the Chau '087 patent.  Additionally, on information and belief, users of the Accused Single Memory Products, including Funai Japan, its sales and service subsidiaries, its authorized

dealers and repair service providers, and consumers infringe at least claims 10-11 of the Chau '087 patent.

77.     On information and belief, Funai is aware of the Complainants' patent portfolio based on Complaints' prior disclosure of such portfolio; therefore, to the extent Funai is not on actual specific notice of the patent, it is willfully blind to its existence.

78.     On information and belief, MediaTek is aware of the Chau '087 patent at least because (1) it was served with a subpoena related to the patent in an action styled *LSI Corporation v. Vizio, Inc.*, Case No. 8:10-cv-01602-AG-AJW (C.D. Cal.); and (2) it was provided with notice letters identifying the Chau '087 patent and requesting that MediaTek confirm with Complainants in writing that it would cease its infringing activities.  True and correct copies of the three notice letters sent to MediaTek are attached as Exhibits 60, 61, and 131.  Thus far, MediaTek has not responded to these notice letters confirming that it will cease its infringing activities.

79.     Further, on information and belief, Funai induces other users of the Accused Single Memory Products to infringe at least claims 10-11 of the Chau '087 patent with the specific intent to encourage their infringement by, *inter alia*, marketing the Accused Single Memory Products, and by creating and/or distributing drivers, data sheets, application notes, and/or similar materials with instructions on using or rendering operable the Accused Single Memory Products.

80.     On information and belief, MediaTek induces Funai and other users of the Accused Single Memory Products to infringe at least claims 1, 5, 7-9, 10-11, and 16 of the Chau '087 patent with the specific intent to encourage their infringement by, *inter alia*, marketing the component multimedia processors and/or

related software or firmware incorporated in the Accused Single Memory Products,
and by creating and/or distributing data sheets, application notes, and/or similar
materials with instructions on using these component processors and/or
software/firmware.

81.     Further, on information and belief, Funai contributes to the
infringement of at least claims 10-11 of the Chau '087 patent because, *inter alia*,
Funai knows that the Accused Single Memory Products embody a material part of
the claimed inventions of the Chau '087 patent, that they are specially made or
specially adapted for use in an infringement of these claims, and that they are not
staple articles of commerce suitable for substantial non-infringing use.  For example,
on information and belief, the Accused Single Memory Products use a unified
memory for decoding, demultiplexing, and system control functions, among others.

82.     On information and belief, MediaTek contributes to the infringement
of at least claims 1, 5, 7-9, 10-11, and 16  of the Chau '087 patent by Funai and
others, because, *inter alia*, MediaTek knows that the Accused Single Memory
Products incorporating its component media processors and related
software/firmware embody a material part of the claimed inventions of the Chau
'087 patent, that the component media processors and software/firmware are
specially made or specially adapted for use in an infringement of these claims, and
that they are not staple articles of commerce suitable for substantial non-infringing
use.  For example, on information and belief, MediaTek's media processors and
related software/firmware feature a single memory shared among decoder, system
controller and transport logic components for decoding, system controlling and
demultiplexing functions, which causes the Accused Single Memory Products
incorporating such components to operate as claimed in the patent.

83.   A sample claim chart comparing each asserted independent claim of the Chau '087 patent to the Accused Single Memory Products is attached as Confidential Exhibit 51C.

**B.   The van Nee '958 Patent**

84.   On information and belief, the Accused Wi-Fi Products infringe at least claims 1-7, 10-11, 22-26, 29-30, 32, and 35-36 of the van Nee '958 patent. Additionally, on information and belief, users making routine use of the Accused Wi-Fi Products, including Funai Japan, its sales and service subsidiaries, its authorized dealers and repair service providers, and consumers, infringe at least claims 1-7, and 10-11 of the van Nee '958 patent.

85.   Funai has been aware of the van Nee '958 patent at least since November 2008 when Complainants informed Funai that Sony Corporation and Agere settled their disputes over the van Nee '958 and Diepstraten '867 patents related to the Wi-Fi technology.  Further in December 2010 and January 2011, Complainants provided Funai with a list of Wi-Fi patents that included the van Nee '958 patent.

86.   Wi-Fi Component Suppliers are aware of the van Nee '958 patent at least because they were provided with notice letters identifying the van Nee '958 patent and requesting that they confirm in writing that that they would cease their infringing activities. True and correct copies of the notice letters sent to Wi-Fi Component Suppliers are attached as Exhibits 60, 61, 131, 132, 136, and 137.  Thus far, Wi-Fi Component Suppliers have not responded to the notice letters confirming that they will cease their infringing activities.  Further, on information and belief, Wi-Fi Component Suppliers are aware of the van Nee '958 patent because they are IEEE members and because they have access to and are aware of the content of

Agere's Letter of Assurance dated January 24, 2003 (Exhibit 8), which specifically identified the van Nee '958 patent and is available at IEEE website (http://standards.ieee.org/about/sasb/patcom/pat802_11.html). *See, e.g.*, Ex. 63 [Realtek Answer to MOSAID] at 23, ¶ 179 (referencing Agere's 2003-01-24 letter [Exhibit 8]); *id.* at 32 (noting the pleading was deemed served on all parties who consented to electronic service, which would include counsel to co-defendant Ralink).

87.     Further, on information and belief, Funai induces other users of the Accused Wi-Fi Products to infringe at least claims 1-7, and 10-11 of the van Nee '958 patent with the specific intent to encourage their infringement by, *inter alia*, marketing the Accused Wi-Fi Products, and by creating and/or distributing drivers, data sheets, application notes, and/or similar materials with instructions on using or rendering operable the Accused Wi-Fi Products.

88.     On information and belief, Wi-Fi Component Suppliers induce Funai and other users of the Accused Wi-Fi Products to infringe at least claims 1-7, 10-11, 22-26, 29-30, 32, and 35-36 of the van Nee '958 patent with the specific intent to encourage their infringement by, *inter alia*, marketing Wi-Fi components (such as Wi-Fi chips, chipsets, adapters, cards and/or modules) and/or related software/firmware incorporated in the Accused Wi-Fi Products, and by creating and/or distributing data sheets, application notes, and/or similar materials with instructions on using these Wi-Fi components and/or software/firmware.

89.     Further, on information and belief, Funai contributes to the infringement of at least claims 1-7, and 10-11 of the van Nee '958 patent because, *inter alia*, Funai knows that the Accused Wi-Fi Products embody a material part of the claimed inventions of the van Nee '958 patent, that they are specially made or

specially adapted for use in an infringement of these claims, and that they are not staple articles of commerce suitable for substantial non-infringing use. On information and belief, Wi-Fi Component Suppliers contribute to the infringement of at least claims 1-7, 10-11, 22-26, 29-30, 32, and 35-36 of the van Nee '958 patent by Funai and others, because, *inter alia*, Wi-Fi Component Suppliers know that the Accused Wi-Fi Products incorporating their Wi-Fi components (such as Wi-Fi chips, chipsets, adapters, cards and/or modules) and/or related software/firmware embody a material part of the claimed inventions of the van Nee '958 patent, that the Wi-Fi components and/or related software/firmware are specially made or specially adapted for use in an infringement of these claims, and that they are not staple articles of commerce suitable for substantial non-infringing use. For example, the Accused Wi-Fi Products incorporating Wi-Fi Component Suppliers' 802.11b/g-compliant Wi-Fi chips all incorporate claimed features of the van Nee '958 patent central to the practice of the 802.11 b/g standards. *See* Ex. 8 [2003-01-24 Agere Letter to IEEE with Typo Correction] at 4 (listing the van Nee '958 patent as one of the patents required to practice the 802.11g standard).

90.    A sample claim chart comparing each asserted independent claim of the van Nee '958 patent to the Accused Wi-Fi Products is attached as Confidential Exhibit 52C.

**C.    The Diepstraten '867 Patent**

91.    On information and belief, the Accused Wi-Fi Products infringe at least claims 1, 4-7, 9-21, 23-24, 26-40, 44-45, 47, and 49-74 of the Diepstraten '867 patent. Additionally, on information and belief, users making routine use of the Accused Wi-Fi Products, including Funai Japan, its sales and service subsidiaries, its

authorized dealers and repair service providers, and consumers, infringe at least claims 1, 4-7, 9-19, 44-45, and 62-74 of the Diepstraten '867 patent.

92.     Funai has been aware of the Diepstraten '867 patent at least since November 2008 when Complainants informed Funai that Sony Corporation and Agere settled their disputes over the van Nee '958 and Diepstraten '867 patents related to the Wi-Fi technology.

93.     Wi-Fi Component Suppliers are aware of the Diepstraten '867 patent at least because they were provided with notice letters identifying the Diepstraten '867 patent and requesting that they confirm in writing that that they would cease their infringing activities. True and correct copies of the notice letters sent to Wi-Fi Component Suppliers are attached as Exhibits 60, 61, 131, 132, 136, and 137. Thus far, Wi-Fi Component Suppliers have not responded to the notice letters confirming that they will cease their infringing activites.  Further, on information and belief, Wi-Fi Component Suppliers are aware of the Diepstraten '867 patent because they are IEEE members and because they have access to and are aware of contents of Agere's Letter of Assurance dated January 24, 2003 (Exhibit 8), which specifically identified the Diepstraten '867 (Appl. No. 10/092,295) and is available at IEEE's website (http://standards.ieee.org/about/ sasb/patcom/pat802_11.html).  *See, e.g.*, Ex. 63 [Realtek Answer to MOSAID] at 23, ¶ 179 (referencing Agere's 2003-01-24 letter [Exhibit 8]); *id.* at 32 (noting the pleading was deemed served on all parties consented to electronic services, which would include counsel to co-defendant Ralink).  On additional information and belief, Wi-Fi Component Suppliers are aware of the Diepstraten '867 patent because they were aware of the case *Agere Systems, Inc. v. Sony Corp., et al.*, Case No. 2:06-CV-00079-CE (E.D. Tex.), which involved the Diepstraten '867 patent.

94.     Further, on information and belief, Funai induces other users of the Accused Wi-Fi Products to infringe at least claims 1, 4-7, 9-19, 44-45, and 62-74 of the Diepstraten '867 patent with the specific intent to encourage their infringement by, *inter alia*, marketing the Accused Wi-Fi Products, and by creating and/or distributing drivers, data sheets, application notes, and/or similar materials with instructions on using or rendering operable the Accused Wi-Fi Products.

95.     On information and belief, Wi-Fi Component Suppliers induce Funai and other users of the Accused Wi-Fi Products to infringe at least claims 1, 4-7, 9-21, 23-24, 26-40, 44-45, 47, and 49-74 of the Diepstraten '867 patent with the specific intent to encourage their infringement by, *inter alia*, marketing Wi-Fi components (such as Wi-Fi chips, chipsets, adapters, cards and/or modules) and/or related software/firmware incorporated in the Accused Wi-Fi Products, and by creating and/or distributing data sheets, application notes, and/or similar materials with instructions on using these Wi-Fi components and/or related software/firmware.

96.     Further, on information and belief, Funai contributes to the infringement of at least claims 1, 4-7, 9-19, 44-45, and 62-74 of the Diepstraten '867 patent because, *inter alia*, Funai knows that the Accused Wi-Fi Products embody a material part of the claimed inventions of the Diepstraten '867 patent, they are specially made or specially adapted for use in an infringement of these claims, and that they are not staple articles of commerce suitable for substantial non-infringing use.  On information and belief, Wi-Fi Component Suppliers contribute to the infringement of at least claims 1, 4-7, 9-21, 23-24, 26-40, 44-45, 47, and 49-74 of the Diepstraten '867 patent by Funai and others, because, *inter alia*, Wi-Fi Component Suppliers know that the Accused Wi-Fi Products incorporating their Wi-Fi components (such as Wi-Fi chips, chipsets, adapters, cards and/or modules) and/or

related software/firmware embody a material part of the claimed inventions of the Diepstraten '867 patent, that the Wi-Fi components and/or related software/firmware are specially made or specially adapted for use in an infringement of these claims, and that they are not staple articles of commerce suitable for substantial non-infringing use.  For example, the Accused Wi-Fi Products incorporating Wi-Fi Component Suppliers' 802.11-compliant Wi-Fi chips all incorporate claimed features of the Diepstraten '867 central to the practice of the 802.11 standards.  *See* Ex. 8 [2003-01-24 Agere Letter to IEEE with Typo Correction] at 4 (listing the Diepstraten patent application as one of the patents required to practice the 802.11g standard).

97.     A sample claim chart comparing each asserted independent claim of the Diepstraten '867 patent to the Accused Wi-Fi Products is attached as Confidential Exhibit 53C.

**D.     The Winger '663 Patent**

98.     On information and belief, the Accused AVC Products infringe at least claim 11 of the Winger '663 patent.  Additionally, on information and belief, users making routine use of the Accused AVC Products, including Funai Japan, its sales and service subsidiaries, its authorized dealers and repair service providers, and consumers, infringe at least claims 1-10 of the Winger '663 patent.

99.     Funai has been aware of the Winger '663 patent at least since March 2008, when Complainants asserted the patent in licensing negotiations with Proposed Respondents.

100.     Further, MediaTek is aware of the Winger '663 patent because it was provided with notice letters identifying the Winger '663 patent and requesting that

MediaTek confirm with Complainants in writing that it would cease its infringing activities.  True and correct copies of the three notice letters sent to MediaTek are attached as Exhibits 60, 61, and 131.  Thus far, MediaTek has not responded to these notice letters confirming that it will cease its infringing activities.

101.    Further, on information and belief, Funai induces other users of the Accused AVC Products to infringe at least claims 1-10 of the Winger '663 patent with the specific intent to encourage their infringement by, *inter alia*, marketing the Accused AVC Products, and by creating and/or distributing drivers, data sheets, application notes, and/or similar materials with instructions on using or rendering operable the Accused AVC Products.

102.    On information and belief, MediaTek induces Funai and other users of the Accused AVC Products to infringe at least claims 1-11 of the Winger '663 patent with the specific intent to encourage their infringement by, *inter alia*, marketing the component media processors incorporated in the Accused AVC Products and/or related software/firmware, and by creating and/or distributing data sheets, application notes, and/or similar materials with instructions on using these component processors and/or related software/firmware.

103.    Further, on information and belief, Funai contributes to the infringement of at least claims 1-10 of the Winger '663 patent because, *inter alia*, Funai knows that the Accused AVC Products are for use in practicing the patented processes, that they constitute a material part of the claimed inventions of the Winger '663 patent, that they are specially made or specially adapted for use in an infringement of these claims, and that they are not staple articles of commerce suitable for substantial non-infringing use.  On information and belief, MediaTek contributes to the infringement of at least claims 1-11 of the Winger '663 patent by

Funai and others because, *inter alia*, MediaTek knows that the component media processors and/or related software/firmware used in the Accused AVC Products constitute a material part of the claimed inventions of the Winger '663 patent, that the component media processors and/or related software/firmware are specially made or specially adapted for use in an infringement of these claims, and that they are not staple articles of commerce suitable for substantial non-infringing use. For example, on information and belief, the design of MediaTek's media processors and related software/firmware cause the Accused AVC Products incorporating such components to feature the decoder system claimed by the Winger '663 patent or to operate in the way prescribed by the patent.

104. A sample claim chart comparing each asserted independent claim of the Winger '663 patent to the Accused AVC Products is attached as Confidential Exhibit 54C.

105. In summary, Proposed Respondents unlawfully sell for importation, import, and/or sell after importation into the United States Accused Products, and products containing the same, that directly or indirectly infringe at least the patent claims listed below:

| U.S. Patent No./ Accused Products | Asserted Claims | Independent Claims | Accused Parties | Infringement Type |
|---|---|---|---|---|
| 5,870,087 (Chau)<br><br>Accused Single Memory Products | 1, 5, 7-9, 10-11, 16 | 1, 10, 16 | Funai | Direct |
|  | 10-11 | 10 | Funai | Indirect |
|  | 1, 5, 7-9, 10-11, 16 | 1, 10, 16 | MediaTek | Indirect |
| 6,452,958 (van Nee)<br><br>Accused Wi-Fi | 1-7, 10-11, 22-26, 29-30, 32, 35-36 | 1, 10, 22, 29, 32, 35 | Funai | Direct |
|  | 1-7, 10-11 | 1, 10 | Funai | Indirect |

| U.S. Patent No./ Accused Products | Asserted Claims | Independent Claims | Accused Parties | Infringement Type |
|---|---|---|---|---|
| Products | 1-7, 10-11, 22-26, 29-30, 32, 35-36 | 1, 10, 22, 29, 32, 35 | MediaTek (Ralink's parent) Ralink, Realtek | Indirect |
| 6,708,867 (Diepstraten) Accused Wi-Fi Products | 1, 4-7, 9-21, 23-24, 26-40, 44-45, 47, 49-74 | 1, 9, 13, 16, 20, 26, 34, 44, 47, 49, 62 | Funai | Direct |
|  | 1, 4-7, 9-19, 44-45 and 62-74 | 1, 9, 16, 44, 62 | Funai | Indirect |
|  | 1, 4-7, 9-21, 23-24, 26-40, 44-45, 47, 49-74 | 1, 9, 13, 16, 20, 26, 34, 44, 47, 49, 62 | MediaTek (Ralink's parent), Ralink, Realtek | Indirect |
| 6,982,663 (Winger) Accused AVC Products | 1-11 | 1, 11 | Funai | Direct |
|  | 1-10 | 1 | Funai | Indirect |
|  | 1-11 | 1, 11 | MediaTek | Indirect |

106.    Further discovery may reveal that other devices manufactured, sold for importation into the United States, imported into the United States, and/or sold after importation within the United States by Proposed Respondents infringe the claims of the Asserted Patents.  Further discovery may also reveal that additional claims of the Asserted Patents are infringed by Proposed Respondents' products.

## VII.    THE DOMESTIC INDUSTRY

107.    A domestic industry exists in the United States as required by 19 U.S.C. § 1337 (a)(3)(A), (B) and (C) because Complainants and/or, on information and belief, their licensees, have made (1) significant investment within the United States in plant and equipment, (2) significant employment within the United States of labor or capital, and/or (3) substantial investment within the United States in the exploitation of the Asserted Patents, including engineering, research and development, and licensing.  Specific non-limiting examples of such investments are provided below.

A.   **Complainants' Substantial Exploitation of the Asserted Patents in the United States**

108.   Complainants have made significant investments in plant, equipment, labor and capital in the United States with respect to the Asserted Patents in the form of research and development, and further exploitation of the Asserted Patents through licensing, research and development, and engineering.

1.   **Past Research and Development**

109.   Complainants and their predecessors have a long and storied history of innovation.  These companies include AT&T, Bell Labs, Lucent, Agere, LSI Logic, and VideoLocus.  Since the 1970s, Complainants and their predecessor companies have been actively licensing intellectual property developed by their respective research and development organizations.  The most notable of these research organizations is the world-renowned Bell Labs.  Bell Labs is credited with inventions such as the charge coupled device (2009 Nobel Prize), discovery and explanation of the fractional quantum Hall effect (1998 Nobel Prize), methods for optical trapping (1997 Nobel Prize), discovery of background radiation remaining from the "Big Bang" (1978 Nobel Prize), developing an improved understanding of local electronic states in solids (1977 Nobel Prize), demonstrating the wave nature of matter (part of the foundation for today's solid state electronics) (1937 Nobel Prize), and, of course, the transistor (1956 Nobel Prize).  *See* Ex. 7 [Bell Labs Awards] (available at http://www.alcatel-lucent.com/wps/portal/BellLabs/AwardsandRecognition #tabAnchor2  (last visited Mar. 7, 2012).

110.   Bell Labs, AT&T, Lucent, and Agere are also credited for numerous other inventions.  For example, AT&T and Bell Labs spent considerable resources in

developing wireless communication systems and methods, including in the area of wireless local area networks. As an example, as early as 1991, AT&T/NCR released WaveLAN-I as an Industry Standard Architecture product for wireless area networks. *See* Ex. 55 [1997 Bell Labs Technical Journal Article]. Employees of AT&T, Lucent, and Agere actively participated in standardizing the protocols governing WLAN communications by submitting proposed standards and drafting sections of the 802.11 standards. In 1998, for example, the IEEE 802.11 Standards Committee adopted the joint proposal by Lucent and Harris Semiconductor for a new high-rate data transmission protocol. *See* Ex. 56 [1998-07-13 Harris Press Release] available at http://www.harris.com/view_pressrelease.asp?act=lookup&pr_id=3 (last visited Mar. 7, 2012). Certain inventions by AT&T, Lucent, and Agere, such as those taught in the van Nee '958 and Diepstraten '867 patents, are central to practicing the IEEE 802.11 Standard that governs WLAN communications. *See* Ex. 8 [2003-01-24 Agere Letter to IEEE Standards Committee with Typo Correction] at 4.

111. Complainants and their predecessors are also recognized leaders in multimedia data processing. They were deeply involved in multimedia coding research. For example, in 2003, LSI unveiled the industry's first real-time H.264/MPEG-4 Advanced Video Coding Technology Platform compliant with the ITU-T Standard. *See* Ex. 2 [2003-09-08 LSI News Release] (available at http://www.design-reuse.com/news/6207/lsi-logic-real-time-h-264-mpeg-4-avc-technology-platform-meet-itu-t-standard.html (last visited Mar. 7, 2012). This platform, consisting of a real-time encoder, real-time decoder, and stream analysis tools, employed certain innovations claimed in the Winger '663 patent.

2.      **Current Engineering, Research, and Development**

112.    Complainants continue to invest heavily in research and development. For example, they expended $669.8 million, $608.3 million, and $672.5 million in plant, equipment, labor, and capital dedicated to research and development on revenues of $2.57 billion, $2.22 billion, and $2.68 billion for fiscal years 2010, 2009, and 2008, respectively. *See* Ex. 9 [2011-02-28 LSI 10-K] at 21.

3.      **Licensing Activities**

113.    As detailed in the attached Confidential Declaration of Michael Paul Salute ("Salute Declaration"), Confidential Exhibit 58C, Complainants have made substantial investments in the United States in the exploitation of the Asserted Patents through licensing, including investment in plant, equipment, labor, and capital dedicated to product market research, procurement of products suspected of infringement, patent-specific reverse engineering and related technical analysis, and correspondence and license negotiations with potential licensees. Such license agreements help licensee companies manage risk and maintain an innovative edge. Complainants have expended nearly 1,600 employee days and millions of dollars in their efforts to license the Asserted Patents. *See id.* at ¶¶ 6, 32-72. These substantial investments (1) relate to the exploitation of the Asserted Patents, (2) relate to licensing efforts, and (3) occur domestically in the United States.

114.    As explained in the Salute Declaration, through billions of dollars of investments in research and development over several decades, Complainants have accumulated a valuable patent portfolio. To protect their patent portfolios and to enable wider adoption and further development of the technologies contained in these patents, including the Asserted Patents, Complainants and their predecessor

companies have implemented and maintained a substantial licensing department.
*See* Confidential Ex. 58C [Salute Declaration] at ¶¶ 22-23.   This licensing business
unit implements and utilizes all critical licensing functions in-house in the United
States.  *Id.*  Complainants' domestic licensing investments include, *inter alia*, the
acquisition of patents; research into the relevant product markets; investigation of
potential licensees; reverse engineering of potentially infringing products;
preparation of technical claim charts; active efforts to negotiate licenses, including
correspondence with potential licensees, preparation for and travel to meetings with
potential licensees, and drafting of license agreements; preparation for and support of
litigation for the purpose of maintaining or obtaining license agreements; and
administrative support for the licensing activities, including accounting and
collection of royalties and licensing fees.  *Id.*

115.    Complainants employ a substantial number of full-time employees
dedicated to licensing their patent portfolio, including the Asserted Patents.  *See id.*
at ¶ 23.  These dedicated employees include engineers, licensing executives, market
and product researchers, transactional attorneys, patent attorneys, patent acquisition
experts, and support staff for administrating the license agreements.  *Id.*  All of these
personnel contribute to licensing efforts with respect to Complainants' entire patent
portfolio, including the Asserted Patents.  *Id.*  To support their licensing efforts,
Complainants also maintain a sophisticated laboratory dedicated to technical analysis
and reverse engineering of third party devices.  *Id.*

116.    Complainants have repeatedly asserted the Asserted Patents in license
negotiations.  For example, Complainants have corresponded and/or met with
potential licensees regarding the Asserted Patents hundreds of times since April
2007. *See id.* at ¶¶ 33-44, 48-65.  The Asserted Patents are often among a limited

number of patents specifically discussed and licensed. *See id.* Complainants also have made substantial investments in the United States in the exploitation of the Asserted Patents through offensive litigation involving the Asserted Patents for the purpose of licensing. *See id.* at ¶¶ 66-72. These litigations are usually preceded by license negotiations and often result in license agreements that include the Asserted Patents as part of the licensed portfolios. *See id.* at ¶¶ 67-69, 71.

117.    Complainants have earned substantial revenue licensing their patents to some of the world's most innovative and successful technology companies, including those listed on Confidential Exhibit 1C. On information and belief, these companies use Complainants' patented technology in making PCs, tablets, mobile phones, smartphones, wireless cards, consumer electronic products (including audiovisual devices similar to those at issue), and a host of other products.

118.    Complainants have received and expect to continue to receive substantial licensing revenues from patent licensing deals, including those for the Asserted Patents. *See* Confidential Ex. 58C [Salute Declaration] at ¶ 73.

**B.    Licensees' Practice of the Asserted Patents and Related Significant Investments in the United States**

119.    Complainants' licensees have made, and continue to make, significant domestic investments in the manufacture, engineering, design, research, development, sales, and marketing of products and services protected by the Asserted Patents. Some examples of domestic investment by Complainants' licensees is set forth in Confidential Exhibit 59C and all confidential exhibits cited therein.

120.    As an example, Confidential Licensee 17 is a licensee to one or more of the Asserted Patents. Pursuant to 19 U.S.C. § 1337(a)(3)(A), (B) and (C), on

information and belief, a domestic industry exists in the United States with respect to the Diepstraten '867 and van Nee '958 patents based upon at least a significant investment in equipment and a significant employment of labor and capital by Confidential Licensee 17 to promote and market wireless technology, and a substantial investment in the exploitation of the Diepstraten '867 and van Nee '958 patents by the same licensee through the engineering, research and development of wireless modules and related technology.   For example, Confidential Licensee 17's wireless modules have been incorporated in tens of millions of personal computers made and distributed by major personal computer manufacturers, such as those by HP.  *See* Confidential Exhibit 59C and all confidential exhibits cited therein.

121.    On information and belief, Confidential Licensee 17 has made significant domestic investment in the exploitation of the technology claimed in the Diepstraten '867 and van Nee '958 patents, and in developing other products, software and technologies that are compatible with the Wi-Fi technology claimed by the Diepstraten '867 and van Nee '958 patents.  These significant domestic investments in plant, equipment, labor and capital, and substantial domestic investments in engineering, research, and development by Confidential Licensee 17 are set forth more fully in Confidential Exhibit 59C and the confidential exhibits cited therein.

122.    Pursuant to 19 U.S.C. § 1337(a)(3)(A), (B) and (C) another example of the existence of a domestic industry in the United States with respect to the Winger '663 patent is based upon at least a significant investment in equipment and a significant employment of labor and capital by Confidential Licensee 17 to manufacture and market Product I, and a substantial investment in the exploitation of

the Winger '663 patent by the same licensee through the engineering, research, and development of Product I and related technology.

123.    On information and belief, Confidential Licensee 17 manufactures Product I in the United States.  On information and belief, Confidential Licensee 17 also maintains a group in the United States that performs research and development and engineering on Product I.  Further information regarding Product I and Confidential Licensee 17's significant domestic investments with respect to Product I in plant, equipment, labor, and capital, and substantial domestic investments in engineering, research, and development can be found in Confidential Exhibit 59C and the confidential exhibits cited therein.

124.    As another example, Acer Inc. ("Acer") is a licensee of each of the Asserted Patents.  Pursuant to 19 U.S.C. § 1337(a)(3)(A), (B) and (C), on information and belief, a domestic industry exists in the United States with respect to at least the Winger '663, Diepstraten '867, and van Nee '958 patents based upon at least a significant investment in equipment and a significant employment of labor and capital by Acer, and United States subsidiaries such as Gateway, Inc., to promote and market laptops incorporating wireless technology and other technologies covered by the these patents.

125.    On information and belief, Acer has made significant domestic investment in the exploitation of the technology claimed in the Diepstraten '867 and van Nee '958 patents, and in developing other products, software, and technologies that are compatible with the Wi-Fi technology claimed by the Diepstraten '867 and van Nee '958 patents.   Moreover, Acer has made significant domestic investments in the exploitation of the technology claimed in the Winger '663 patent which is incorporated into their personal computer product lines sold in the United States.

For example, Acer-brand laptops incorporating the technologies covered by at least the Winger '663, Diepstraten '867, and van Nee '958 patents are sold in the United States. *See, e.g.*, Ex. 139 [TigerDirect.com - Acer Aspire AS8951G9600] (available at http://www.tigerdirect.com/applications/SearchTools/item-details.asp?EdpNo= 1864463&CatId=4938) (last visited Mar. 8, 2012); Ex. 140 [Amazon.com - Acer Aspire 5745-5425] (available at http://www.amazon.com/ASPIRE-5745-5425-BLU-RAY-NOTEBOOK-AS5745-5425/dp/B003TYP4P0 /ref=sr_1_1?ie=UTF8&qid=1331277775&sr=8-1) (last visited Mar. 8, 2012).

126.    As another example, Sony Corp. ("Sony") is a licensee of the Asserted Patents.  Pursuant to 19 U.S.C. § 1337(a)(3)(A), (B) and (C), on information and belief, a domestic industry exists in the United States with respect to at least the Winger '663, Diepstraten '867, and van Nee '958 patents based upon at least a significant investment in equipment and a significant employment of labor and capital by Sony, and United States subsidiaries such as Sony Computer Entertainment America, to promote and market laptops and gaming consoles (like Sony's PlayStation 3 and PSP Vita gaming consoles) incorporating wireless technology and Blu-ray players incorporating the technology covered by the Winger '663 patent.

127.    On information and belief, Sony has made significant domestic investment in the exploitation of the technology claimed in the Diepstraten '867 and van Nee '958 patents, and in developing other products, software, and technologies that are compatible with the Wi-Fi technology claimed by the Diepstraten '867 and van Nee '958 patents.  Sony heavily markets such products in the United States, where they are readily available for purchase.  For example, Sony's PlayStation 3 console, which is 802.11-compliant, is sold in the United States at major retail

outlets such as Best Buy. *See, e.g.*, Ex. 141 [Best Buy – Sony PlayStation 3 Console] (available at http://www.bestbuy.com/site/Sony+-+PlayStation+3+%28160GB%29/3061302. p?id=1218379530906&skuId=3061302) (last visited Mar. 7, 2012). Sony also sells in the United States Blu-ray players that practice the invention covered by the Winger '663 patent. *See, e.g.*, Ex. 147 [Costco – Sony Blu-ray Player] (available at http://www.costco.com/Browse/Product.aspx? Prodid=11628982&search=sony+blu-ray&Mo=2&cm_re=1_en-_-Top_Left_Nav-_-Top_search&lang=en-US&Nr=P_CatalogName:BC&Sp=S&N=5000043 &whse=BC&Dx=mode+matchallpartial&Ntk=Text_Search&Dr=P_CatalogName:B C&Ne=4000000&D=sony+blu-ray&Ntt=sony+blu-ray&No=0&Ntx= mode+matchallpartial&Nty=1&topnav=&s=1 (last visited Mar. 10, 2012)).

128.   As another example, Mitsumi Electric Company, Ltd. ("Mitsumi") is a licensee of the van Nee '958 and Diepstraten '867 patents. Pursuant to 19 U.S.C. § 1337(a)(3)(A), (B) and (C), on information and belief, a domestic industry exists in the United States with respect to the van Nee '958 and Diepstraten '867 patents based upon at least a significant investment in equipment and a significant employment of labor and capital by Mitsumi Electric to market 802.11-compliant wireless technology. *See, e.g.*, Ex. 145 [Mitsumi 802.11-complaint WLAN antenna].

129.   On information and belief, Mitsumi has made significant domestic investment in the exploitation of the technology claimed in the Diepstraten '867 and van Nee '958 patents, and in developing other products, software, and technologies that are compatible with the Wi-Fi technology claimed by the Diepstraten '867 and van Nee '958 patents. Mitsumi heavily markets such products in the United States, where they are sold to, among other customers, to American computer products manufacturers such as Apple, Dell, and Microsoft. See Ex. 146 [Hoovers.com

Mitsumi Overview] (available at http://www.hoovers.com/
company/Mitsumi_Electric_Co_Ltd/hhfcci-1.html) (last visited Mar. 10, 2012).

130.    As another example, Confidential Licensee 25 is a licensee of the
Winger '663, van Nee '958, and Diepstraten '867 patents.  Pursuant to 19 U.S.C.
§ 1337(a)(3)(A), (B) and (C), on information and belief, a domestic industry exists in
the United States with respect to the Winger '663, van Nee '958, and Diepstraten
'867 patents based upon at least a significant investment in equipment and a
significant employment of labor and capital by Confidential Licensee 25 to promote
and market smartphones incorporating the technologies of these patents.

131.    On information and belief, Confidential Licensee 25 has made
significant domestic investment in the exploitation of the technology claimed in the
Winger '663, van Nee '958, and Diepstraten '867 patents, and in developing other
products, software, and technologies that are compatible with the Wi-Fi technology
claimed by the Winger '663, van Nee '958, and Diepstraten '867 patents.
Confidential Licensee 25 heavily markets such products in the United States, where
they are readily available for purchase.  For example, Confidential Licensee 25's
smartphones are sold in the United States at major retail outlets and online.

132.    As another example, Confidential Licensee 26 is a licensee, among
other patents, of the van Nee '958 and Diepstraten '867 patents.  Pursuant to 19
U.S.C. § 1337(a)(3)(A), (B) and (C), on information and belief, a domestic industry
exists in the United States with respect to the van Nee '958 and Diepstraten '867
patents based upon at least a significant investment in equipment and a significant
employment of labor and capital by Confidential Licensee 26 to promote and market
wireless LAN adapters incorporating 802.11-compliant wireless technology.

133.   On information and belief, Confidential Licensee 26 has made significant domestic investment in the exploitation of the technology claimed in the Diepstraten '867 and van Nee '958 patents, and in developing other products, software, and technologies that are compatible with the Wi-Fi technology claimed by the Diepstraten '867 and van Nee '958 patents.  Confidential Licensee 26 heavily markets such products in the United States, where they are readily available for purchase.  For example, Confidential Licensee 26's wireless LAN adapter, which is 802.11-compliant, is sold in the United States at major retail outlets and online.

134.   As another example, Confidential Licensee 28 is a licensee, among other patents, of the van Nee '958 and Diepstraten '867 patents.  Pursuant to 19 U.S.C. § 1337(a)(3)(A), (B) and (C), on information and belief, a domestic industry exists in the United States with respect to the van Nee '958 and Diepstraten '867 patents based upon at least a significant investment in equipment and a significant employment of labor and capital by Confidential Licensee 28 to promote and market notebook computers incorporating 802.11-compliant wireless technology.

135.   On information and belief, Confidential Licensee 28 has made significant domestic investment in the exploitation of the technology claimed in the Diepstraten '867 and van Nee '958 patents, and in developing other products, software, and technologies that are compatible with the Wi-Fi technology claimed by the Diepstraten '867 and van Nee '958 patents.  Confidential Licensee 28 heavily markets such products in the United States, where they are readily available for purchase.  For example, Confidential Licensee 28's notebook computer, which is 802.11-compliant, is sold in the United States at major retail outlets and online.

136.   As another example, Confidential Licensee 11 is a licensee of the van Nee '958 and Diepstraten '867 patents.  Pursuant to 19 U.S.C. § 1337(a)(3)(A), (B)

and (C), on information and belief, a domestic industry exists in the United States with respect to the van Nee '958 and Diepstraten '867 patents based upon at least a significant investment in equipment and a significant employment of labor and capital by Confidential Licensee 11 to promote and market notebook computers incorporating 802.11-compliant wireless technology.

137.    On information and belief, Confidential Licensee 11 has made significant domestic investment in the exploitation of the technology claimed in the Diepstraten '867 and van Nee '958 patents, and in developing other products, software, and technologies that are compatible with the Wi-Fi technology claimed by the Diepstraten '867 and van Nee '958 patents. Confidential Licensee 11 heavily markets such products in the United States, where they are readily available for purchase. For example, Confidential Licensee 11's notebook computer, which is 802.11-compliant, is sold in the United States at major retail outlets and online.

138.    As another example, Confidential Licensee 36 is a licensee, among other patents, of the van Nee '958 and Diepstraten '867 patents. Pursuant to 19 U.S.C. § 1337(a)(3)(A), (B) and (C), on information and belief, a domestic industry exists in the United States with respect to the van Nee '958 and Diepstraten '867 patents based upon at least a significant investment in equipment and a significant employment of labor and capital by Confidential Licensee 36 to promote and market notebook computers incorporating 802.11-compliant wireless technology.

139.    On information and belief, Confidential Licensee 36 has made significant domestic investment in the exploitation of the technology claimed in the Diepstraten '867 and van Nee '958 patents, and in developing other products, software, and technologies that are compatible with the Wi-Fi technology claimed by the Diepstraten '867 and van Nee '958 patents. Confidential Licensee 36 heavily

markets such products in the United States, where they are readily available for purchase. For example, Confidential Licensee 36's notebook computer, which is 802.11-compliant, is sold in the United States at major retail outlets and online.

140. On information and belief, other licensees who practice the Asserted Patents have also made significant investments in the United States, some examples of which are provided in Confidential Exhibit 59C and the confidential exhibits cited therein.

141. Complainants expect that discovery will lead to additional evidence of their licensees' domestic investments related to the Asserted Patents.

## VIII. HARMONIZED TARIFF SCHEDULE INFORMATION

142. The articles subject to this complaint are classified under at least the following headings and subheadings of the Harmonized Tariff Schedule ("HTS") of the United States: 8521, 8522, 8525, 8527, 8528, 8529 and 8542. These HTS numbers are illustrative only and are not intended to restrict the scope of this investigation.

## IX. RELATED LITIGATION

143. The Asserted Patents are the subject of a Civil Action in the United States District Court for the Central District of California, filed on March 12, 2012, by Complainants, naming Funai as Defendants.[7]

144. On October 17, 2002, Agere brought action against Intersil Corp. ("Intersil") and alleged infringement of, *inter alia*, the van Nee '958 patent in the United States District Court for the District of Delaware. *Agere Systems, Inc. v.*

---

[7] For clarity, Funai refers collectively to Funai Japan, Funai USA, P&F USA and Funai Service.

*Intersil Corp., et al.*, Case No. 1:02-CV-01544-JJF (D. Del.).  The action resulted in a favorable outcome for Agere.

145.    On March 1, 2006, Agere brought action against Sony Corporation ("Sony") and alleged infringement of, *inter alia*, the Diepstraten '867 and van Nee '958 patents in the United States District Court for the Eastern District of Texas. *Agere Systems, Inc. v. Sony Corp., et al.*, Case No. 2:06-CV-00079-CE (E.D. Tex.). The action resulted in a settlement and license of the Diepstraten '867 and van Nee '958 patents, among others, by Agere to Sony.

146.    On June 19, 2009, SanDisk Corporation ("SanDisk") brought action against LSI for a declaration of non-infringement/invalidity of, *inter alia*, the Winger '663 patent in the United States District Court for the Northern District of California. *SanDisk Corp. v. LSI Corp.*, Case No. 3:09-CV-02737-WHA (N.D. Cal.).  The action resulted in a favorable settlement to LSI.

147.    On October 20, 2010, LSI brought action against Vizio, Inc. alleging infringement of, *inter alia*, the Chau '087 patent in the United States District Court for the Central District of California.  *LSI Corporation v. Vizio, Inc.*, Case No. 8:10-cv-01602-AG-AJW (C.D. Cal.).  The action is pending.

148.    On June 6, 2011, Barnes & Noble Inc. ("Barnes & Noble") brought action against LSI for a declaration of non-infringement/invalidity of, *inter alia*, the Diepstraten '867 patent and the van Nee '958 patent in the United States District Court for the Northern District of California.  *Barnes & Noble Inc. v. LSI Corp.*, Case No. 3:11-CV-02709-EMC (N.D. Cal.).  The action is pending.

149.    On July 27, 2011, Complainants brought action against Barnes & Noble alleging infringement of, *inter alia*, the van Nee '958 and Diepstraten '867

patents in the Eastern District of Pennsylvania. *Agere Systems Inc., et al. v. Barnes & Noble Inc., et al.*, Case No. 5:11-CV-04751-LS (E.D. Pa.). The action is pending.

150. On information and belief, the Asserted Patents have not been the subject of any other court or agency litigation, domestic or foreign.

## X.   **RELIEF REQUESTED**

WHEREFORE, by reason of the foregoing, Complainants respectfully request that the United States International Trade Commission:

(a)    institute an immediate investigation pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, into the violations by Proposed Respondents of Section 337 arising from the importation into the United States, and/or sale for importation, and/or sale within the United States after importation, of Proposed Respondents' products that infringe one or more claims of U.S. Patent Nos. 5,870,087; 6,452,958; 6,707,867; and 6,982,663;

(b)    schedule and conduct a hearing, pursuant to 19 U.S.C. § 1337(c), for purposes of receiving evidence and hearing argument concerning whether there has been a violation of Section 337 of the Tariff Act of 1930, as amended; and, following the hearing, determine that there has been a violation of Section 337 of the Tariff Act of 1930, as amended;

(c)    issue a limited exclusion order, pursuant to 19 U.S.C. § 1337(d)(1), excluding from entry for consumption into the United States, entry for consumption from a foreign trade-zone, or withdrawal from a warehouse for consumption, audiovisual components and products containing the same that infringe one or more claims of U.S. Patent Nos. 5,870,087; 6,452,958; 6,707,867; and 6,982,663 and which are manufactured by or on behalf of, or imported by or

on behalf of Proposed Respondents, or any of their affiliated companies, parents, subsidiaries, or other related business entities, or their successors or assigns, for the remaining terms of the Asserted Patents, except under license of Complainants or as provided by law;

(d)    issue permanent cease-and-desist orders, pursuant to 19 U.S.C. § 1337(f), directing Proposed Respondents and any of their principals, stockholders, officers, directors, employees, agents, licensees, distributors, controlled (whether by stock ownership or otherwise) or majority-owned business entities, successors, and assigns, from either directly engaging in or for, with, or otherwise on behalf of Proposed Respondents, (A) importing or selling for importation into the United States audiovisual components and products containing the same that infringe one or more claims of U.S. Patent Nos. 5,870,087; 6,452,958; 6,707,867; and 6,982,663; (B) marketing, distributing, offering for sale, selling, or otherwise transferring, in the United States imported audiovisual components and products containing the same that infringe one or more claims of U.S. Patent Nos. 5,870,087; 6,452,958; 6,707,867; and 6,982,663; (C) advertising imported audiovisual components and products containing the same in the United States that infringe one or more claims of U.S. Patent Nos. 5,870,087; 6,452,958; 6,707,867; and 6,982,663; (D) soliciting U.S. agents or distributors for audiovisual components and products containing the same that infringe one or more claims of U.S. Patent Nos. 5,870,087; 6,452,958; 6,707,867; and 6,982,663; or (E) aiding or abetting other entities in the importation, sale for importation, sale after importation, transfer, or distribution of audiovisual components and products containing the same that infringe one or more claims of U.S. Patent Nos. 5,870,087; 6,452,958; 6,707,867; and 6,982,663; and

(e)     grant all such other and further relief as the Commission has authority to

grant and deems appropriate under the law, based upon the facts complained

of herein and as determined by the Investigation.

Dated: March 12, 2012                    Respectfully submitted,

_____
Jonathan D. Link
KILPATRICK TOWNSEND & STOCKTON LLP
607 14th St. NW, Suite 900
Washington, D.C. 20005
Telephone:  (202) 481-9990

David E. Sipiora
Kristopher L. Reed
KILPATRICK TOWNSEND & STOCKTON LLP
1400 Wewatta St., Suite 600
Denver, CO 80202
Telephone:  (303) 405-8525

David F. Nickel
FOSTER, MURPHY, ALTMAN & NICKEL, PC
1899 L Street, N.W., Suite 1150
Washington, DC 20036
Telephone:  (202) 822-4100

*Counsel for Complainants*
*LSI Corporation and Agere Systems Inc.*