KILPATRICK TOWNSEND & STOCKTON LLP
DAVID E. SIPIORA (State Bar No. 124951)
1400 Wewatta Street, Suite 600
Denver, CO 80202-5556
Telephone: (303) 571-4000
Facsimile: (303) 571-4321
Email: *dsipiora@kilpatricktownsend.com*

KILPATRICK TOWNSEND & STOCKTON LLP
ROBERT J. ARTUZ (State Bar No. 227789)
1080 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 326-2400
Facsimile: (650) 326-2422
Email: *rartuz@kilpatricktownsend.com*

KILPATRICK TOWNSEND & STOCKTON LLP
CHARLES A. PANNELL, III (*admitted pro hac vice*)
1100 Peachtree St., NE
Atlanta, GA 30309
Telephone: (404) 745-2494
Facsimile: (404) 541-4668
Email: *cpannell@kilpatricktownsend.com*

Attorneys for Defendants
LSI CORPORATION and
AGERE SYSTEMS LLC

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| REALTEK SEMICONDUCTOR CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>LSI CORPORATION, et al.,<br><br>Defendant. | Case No. C 12-03451 RMW<br><br>**DEFENDANTS LSI CORPORATION AND AGERE SYSTEMS LLC'S NOTICE OF MOTION AND MOTION TO STAY**<br><br>Date: May 3, 2013<br>Time: 9:00 AM<br>Place: Courtroom 6, 4th Floor<br><br>Judge: Hon. Ronald M. Whyte |

**PUBLIC VERSION**

DEFENDANTS LSI CORPORATION'S AND AGERE SYSTEMS LLC'S
NOTICE OF MOTION AND MOTION TO STAY
CASE NO. C 12-03451 RMW

TABLE OF CONTENTS

Page(s)

NOTICE OF MOTION AND MOTION ................................................................................................... iii

POINTS AND AUTHORITIES IN SUPPORT OF MOTION ..................................................................... 1

I. STATEMENT OF ISSUES ............................................................................................................. 1

II. STATEMENT OF RELEVANT FACTS ........................................................................................ 1

    A. The Parties ............................................................................................................................ 1

    B. LSI/Agere's Participation in WLAN Standard Setting ......................................................... 1

    C. Realtek's Infringement and Licensing Requests .................................................................. 2

    D. Realtek's Identical Claims in the ITC ................................................................................... 2

III. LEGAL STANDARDS .................................................................................................................... 4

IV. ARGUMENT .................................................................................................................................... 5

    A. The Pursuit of Identical Claims in the ITC and ████████████ ████████████ Warrants a Stay ......................................................................................... 5

    B. A Stay Would Cause No Harm to Realtek ........................................................................... 6

    C. Lack of A Stay Would Cause Significant Injury to LSI ....................................................... 8

V. CONCLUSION ............................................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apple, Inc. v. Motorola Mobility, Inc.*,
   Case No. 11-cv-178, Dkt. No. 487 (W.D. Wisc. Nov. 2, 2012) ...................................................... 6

*CMAX, Inc. v. Hall*,
   300 F.2d 265 (9th Cir.1962) .......................................................................................................... 4

*Epistar Corp. v. Philips Lumileds Lighting Co.*,
   No. 07–CV–5194, 2008 WL 913321 (N.D Cal. Apr. 2, 2008) ....................................................... 5

*Ethicon, Inc. v. Quigg*,
   849 F.2d 1422 (Fed.Cir.1988) ....................................................................................................... 4

*In re Certain Integrated Circuit Chips and Products Containing Same*,
   Inv. No. 337-TA-859 (September 19, 2012) ............................................................................. 8, 9

*Landis v. North Amer. Co.*,
   299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936) .......................................................................... 4

*Leyva v. Certified Grocers of Cal., Ltd.*,
   593 F.2d 857 (9th Cir.1979) .......................................................................................................... 5

*Lumen Const., Inc. v. Brant Const. Co.*,
   780 F.2d 691 (7th Cir. 1985) ..................................................................................................... 5, 8

*Realtek Semiconductor Corp. v. LSI Corp.*,
   Case No. 12-cv-3437 (N.D. Cal. June 29, 2012) .......................................................................... 8

*Time Warner Cable, Inc. v. USA Video Tech. Corp.*,
   520 F. Supp. 2d 579 (D. Del. 2007) .............................................................................................. 8

*Zenith Elecs., LLC v. Sony Corp.*,
   No. 11–CV–02439, 2011 WL 2982377 (N.D.Cal. July 22, 2011) ................................................ 5

**Rules**

James M. Fischer, The "Right" to Injunctive Relief for Patent Infringement, 24 SANTA CLARA
   COMPUTER & HIGH TECH. L.J. 1, 22-23 (2007) .......................................................................... 9

U.S. Department of Justice & U.S. Patent & Trademark Office, Policy Statement on Remedies
   for Standards-Essential Patents Subject to Voluntary F/RAND Commitments, (Jan. 8, 2013)
   *available at* www.justice.gov/atr/public/guidelines/290994.pdf. .............................................. 7, 9

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 3, 2013, at 9:00 a.m. or as soon thereafter as the matter may be heard before the Honorable Ronald M. Whyte of the above-entitled Court, located at 280 South 1st Street, San Jose, California, 95113, Defendants LSI Corporation ("LSI") and Agere Systems LLC ("Agere") will and hereby do move the Court for an order staying all causes of action in Plaintiff Realtek Semiconductor Corporation's ("Realtek") Complaint.

Defendants move to stay the current action in light of identical claims and defenses being made by Realtek in the International Trade Commission. This motion is based on this Notice of Motion and Motion to Stay, the accompanying points and authorities, the declaration and exhibits in support hereof, any reply papers which may be filed, and such other arguments and evidence as may be brought before the Court prior to or at the hearing of this motion.

## POINTS AND AUTHORITIES IN SUPPORT OF MOTION

I.     **STATEMENT OF ISSUES**

Whether the Court should stay this action because Realtek is simultaneously asserting before the U.S. International Trade Commission ("ITC") the same arguments based on the same facts and evidence it is asserting here ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

II.     **STATEMENT OF RELEVANT FACTS**

    A.     **The Parties**

LSI is a United States company based in San Jose, California. Over the past twenty years, LSI through its predecessor companies, such as Lucent Technologies, Inc. and Agere Systems Inc., has developed a substantial patent portfolio in the field of wireless computer networking. Indeed, LSI research and development led to key advancements in the wireless field and it participated in setting the 802.11 standards for wireless networking ("WLAN Standards"). (Complaint, Dkt. No. 1 ¶34 & Exh. A.)

Plaintiff Realtek is a Taiwanese company that supplies chips for wireless communication products that comply with the 802.11 wireless networking standards set forth by the IEEE. (*Id.* ¶¶ 8, 76.) Plaintiff sells them to other companies overseas, which in turn import the chips into the U.S. as part of other products. (*Id.* ¶8-9, 76; Deposition of Chiang-Ho Tsai pp. 79-80 (Declaration of Charles A. Pannell in support of Motion to Stay ("Pannell Decl.") Exhibit A.)

    B.     **LSI/Agere's Participation in WLAN Standard Setting**

This action relates to commitments made by Agere[1] to a Standards Setting Organization ("SSO") known as the Institute of Electrical and Electronics Engineers Standards Association ("IEEE-SA"). As part of the standard setting process, Agere stated with regard to U.S. Patent Nos. 6,452,958 and 6,707,867 that it was "prepared to grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to comply with the [Proposed] IEEE Standard." (Complaint, Dkt. No. 1, Ex. A (alteration in

---

[1] Agere was acquired by LSI after these commitments allegedly were made and is now a wholly-owned subsidiary of LSI.

1    original).) These commitments to licenses on reasonable terms and conditions are commonly
2    referred to as RAND commitments.

3            **C.**     **Realtek's Infringement and Licensing Requests**

4    Realtek has been aware of LSI's patent portfolio since at least 2002 when LSI's predecessor,
5    Agere, wrote to Realtek suggesting that it take a license to Agere's wireless portfolio. (Realtek
6    Response to LSI Interrogatory Nos. 8 & 18 (Pannell Decl. Exhibit B); 2002 and 2003
7    Correspondence between Agere and Realtek (Pannell Decl. Exhibit K)). After several letters in
8    2002 and 2003 confirming Realtek's receipt of the license proposal and inviting licensing
9    discussions, Realtek ignored the request. In the intervening years, Realtek claims that it relied upon
10   LSI's commitments to the IEEE that required it to license on RAND terms, (Complaint, Dkt. No. 1
11   ¶¶37-39,) but it never made any attempt to take a license. (Realtek Response to LSI Interrogatory
12   Nos. 8 & 18 (Pannell Decl. Exhibit B); Realtek's Response to the Amended ITC Complaint, ITC
13   Inv. No. 337-TA-837, p. 25 (ITC May 18, 2012) ("Realtek ITC Resp.") (Pannell Decl. Exhibit C).)
14   On March 7, 2012, LSI sent a letter asking Realtek to cease its infringement. (Complaint, Dkt. No.
15   1, ¶ 42.) On March 12, 2012, LSI filed a complaint with the ITC regarding infringement by Realtek
16   and its customer, Funai, and other suppliers of Funai. (*Id.*)

17   After the initiation of the ITC Investigation, Realtek requested that LSI provide another
18   RAND licensing proposal. (*Id.* ¶ 43.) On June 20, 2012, LSI provided Realtek with a summary of
19   its licensing program and several suggested terms in order to begin the discussion. (*Id.*) On June
20   29, 2012, without responding to LSI's initial proposal, Realtek filed this suit arguing that the ITC
21   Investigation and the June 20, 2012 proposal violated its RAND obligations. (*Id.* ¶¶ 43-45.)
22   Realtek has pending claims for breach of contract, promissory estoppel, and declaratory relief.

23           **D.**     **Realtek's Identical Claims in the ITC**

24   In the parallel ITC Investigation, Realtek is making the same "breach of RAND" arguments
25   as in this Court, asserting that LSI's claims should be barred because LSI's filing of the ITC
26   Complaint and its subsequent June 20, 2012 proposal failed to comply with its RAND
27   commitments. (Realtek ITC Resp. p. 26 (Pannell Decl. Exhibit C); Expert Report of Paul D.
28   Carmichael ("Carmichael Report"), pp. 21-28 (Pannell Decl. Exhibit D).) Recent filings and events

1   in the ITC confirm that Realtek is asserting a full RAND defense in the ITC with the same basic
2   claims and evidence it is presenting here. In the ITC, Realtek has submitted the expert report of
3   Paul D. Carmichael on the RAND licensing defense. (Carmichael Report (Pannell Decl. Exhibit
4   D); Realtek ITC Pre-hearing Statement pp. 56-57 (Pannell Decl. Exhibit E).) Furthermore, Funai, a
5   customer of Realtek, has submitted a second expert report from Dr. Gregory K. Leonard on RAND
6   issues.[2] In fact, Realtek has requested permission under the protective order in this case to use Dr.
7   Leonard as an expert in this case. In addition to the two experts that will be presented in the ITC for
8   respondents, Realtek has also identified two additional fact witnesses, Chiang-Ho Tsai and Jinn-
9   Shing Chen, who will allegedly support Realtek's RAND defense. (Realtek ITC Pre-hearing
10  Statement p. 55 (Pannell Decl. Exhibit E).) In response to a Rule 30(b)(6) notice of deposition in
11  this case, Mr. Tsai has been identified and deposed on similar questions. (Realtek Objections to LSI
12  30(b)(6) Notice Topic Nos. 12-13 (Pannell Decl. Exhibit F).)

[redacted]

(Realtek's Amended Response to LSI's Request for Admission No. 1 (Pannell Decl. Exhibit G).)
Thus, Realtek is not only asserting a full-blown affirmative defense using the same facts, the same
witnesses, the same experts, and making the same arguments as it is in the ITC, [redacted]

---

[2] Because Dr. Leonard is a Funai witness, his expert report was not produced in this case to date and is designated confidential under the ITC protective order.

DEFENDANTS LSI CORPORATION'S AND AGERE SYSTEMS LLC'S
NOTICE OF MOTION AND MOTION TO STAY                              3
CASE NO. C 12-03451 RMW



Currently, the ITC Investigation is set for an evidentiary hearing on the infringement, validity, and RAND issues from April 2-10, 2013 with an Initial Determination due by July 18, 2013 and a Final Determination due by November 19, 2013.

### III. LEGAL STANDARDS

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) ("Courts have inherent power to manage their dockets and stay proceedings.") In determining whether to grant a discretionary stay, the Ninth Circuit requires that Courts consider (1) the judicial economy in simplifying issues, proof, and questions of law; (2) the possible damage to the non-moving party that may result from granting a stay; and (3) the hardship or inequity which a party may suffer without the stay. *See CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

## IV. ARGUMENT

### A. The Pursuit of Identical Claims in the ITC ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Warrants a Stay

Judicial resources and the efficient adjudication of the duplicative RAND issue will be preserved by staying the present case. Courts often grant stays where separate proceedings present the same or related issues that bear upon the case at hand. This applies regardless of "whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979). "When a case proceeds on parallel tracks . . ., the threat to efficient adjudication is self-evident. But judicial economy is not the only value that is placed in jeopardy. The legitimacy of the court system in the eyes of the public and fairness to the individual litigants also are endangered by duplicative suits that are the product of gamesmanship or that result in conflicting adjudications." *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 694 (7th Cir. 1985). And, this reasoning is particularly true of parallel proceedings before the ITC. Although there are no patent infringement issues in this case that mandate a stay pending a parallel ITC Investigation, Congress intended that district courts should consider using their discretionary power to stay litigation that is related to an action before the ITC. *See Zenith Elecs. LLC v. Sony Corp.*, No. C11-02439, 2011 WL 2982377, at *3–4 (N.D. Cal. July 22, 2011).

Courts have stayed similar breach of contract claims pending an ITC investigation. In *Epistar Corp. v. Philips Lumileds Lighting Co.*, No. C07–5194, 2008 WL 913321, at *3 (N.D Cal. Apr. 2, 2008), the patent owner, Lumileds, filed several patent infringement suits, including an ITC complaint. Epistar filed a breach of contract action arguing that Lumileds breached a covenant not to sue by filing suit in the ITC and district court. *Id.* at *2. The court, however, stayed the breach of contract litigation pending the ITC investigation. Indeed, the court issued the stay, even though the contract defense had not been pursued in the ITC. The court reasoned that the breach of contract action required a technical analysis of whether the products could be classified as OMA

1   Products under the contract and it was therefore necessary to wait for the conclusion of the ITC

2   Investigation. *Id.* at 3; *Epistar Corp. v. Philips Lumileds Lighting Co.*, C 07-5194 CW, 2008 WL

3   3930030, at **4-5 (N.D. Cal. Aug. 26, 2008).

4         Here, Realtek has gone even further. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Further still, Realtek is aggressively

7   pursuing the exact same issues in the ITC as a defense. Realtek has even identified the same expert

8   witness and the same fact witnesses that it has put forth in this case. (*See supra* p. 2-3.) Realtek's

9   ITC defense is also based on the same set of facts and arguments—i.e., the filing of the injunction

10  and the June 20, 2012 proposal by LSI. (*Id.*)

11        Realtek's duplicative litigation in the ITC ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, begs the question of why the

13  parties need to litigate in this Court at the same time. Realtek's assertion of the same arguments,

14  facts, and witnesses in the ITC only proves that a stay here would best preserve judicial and party

15  resources. *Cf. Apple, Inc. v. Motorola Mobility, Inc.*, Case No. 11-cv-178, 2012 WL 5416931, at *3

16  (W.D. Wisc. Nov. 2, 2012)(holding that public interest factors weighed in favor of dismissing

17  RAND suit that the plaintiff had no obligation to accept because determination of RAND rate

18  "places an enormous and possibly unjustifiable burden on the judiciary's resources").

19        **B.    A Stay Would Cause No Harm to Realtek**

20        Because Realtek is asserting the same issue in the ITC and asserting the same relief (*i.e*., to

21  prevent its products from being excluded from the United States), there is no harm from staying the

22  current case. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23  ▮▮ (Tsai Depo. Tr. at 150:10-151:25 (Pannell Decl. Exhibit A).) The only allegation of harm

24  Realtek can point to is a future harm if an exclusion order is entered. But this harm is merely

25  speculative and depends entirely upon the outcome of the ITC Investigation, where it is raising the

26  same RAND issue.

27        There is no outcome in the ITC Investigation that warrants the continued waste of party and

28  judicial resources on duplicative issues. There are only three foreseeable outcomes in the ITC that

have any bearing on this case. First, Realtek could prevail and the ITC finds there was no infringement. In that case, there is no threat of injunction. Second, the ITC could find that Realtek infringes but that LSI violated RAND. In that case, both the ITC and this Court will have a record and be able to fashion an appropriate remedy for the violation. Third, LSI could prevail and the ITC find that Realtek infringed and that there was no RAND violation. In such a case, Realtek will have had a full and fair opportunity to present its RAND issues to the ITC, and the ITC will confirm LSI's actions complied with RAND.

In any scenario, Realtek will have the right to seek relief from the Federal Circuit or argue public interest factors. As both the Department of Justice and the Patent and Trademark Office have suggested,

> The USITC may conclude, after applying its public interest factors, that exclusion orders are inappropriate in the circumstances described in more detail above. Alternatively, it may be appropriate for the USITC, as it has done for other reasons in the past, to delay the effective date of an exclusion order for a limited period of time to provide parties the opportunity to conclude a F/RAND license.

U.S. Department of Justice & U.S. Patent & Trademark Office, Policy Statement on Remedies for Standards-Essential Patents Subject to Voluntary F/RAND Commitments, p. 10 (Jan. 8, 2013) *available at* www.justice.gov/atr/public/guidelines/290994.pdf ("DOJ/PTO Policy Statement"). Regardless, a stay will allow this Court to review any RAND arguments with a full record from the ITC and Federal Circuit.

Because Realtek alleges no current or ongoing harm ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, there is no harm that will befall Realtek by staying this case until the ITC Investigation is complete. Realtek has been given a full and fair opportunity to argue the same RAND issues before the ITC and make the same arguments as to why the ITC should not enter an exclusion order. If Realtek disagrees with the decision, it will be afforded a full review before an Article III court—the Federal Circuit. Accordingly, there is no relevant harm to Realtek by staying this case.

DEFENDANTS LSI CORPORATION'S AND AGERE SYSTEMS LLC'S
NOTICE OF MOTION AND MOTION TO STAY
CASE NO. C 12-03451 RMW

7

**C.     Lack of A Stay Would Cause Significant Injury to LSI**

By allowing this case to continue, LSI is facing serious inequities. Ultimately, if this case proceeds LSI will have to expend resources to defend against the same arguments twice and presumably face two conflicting mandates from both the Federal Circuit (where the ITC decision will be appealed) and the Ninth Circuit (where this litigation will be appealed). *See Lumen Constr.*, 780 F.2d at 694 ("The legitimacy of the court system in the eyes of the public and fairness to the individual litigants … are endangered by duplicative suits that are the product of gamesmanship or that result in conflicting adjudications."); *cf. Time Warner Cable, Inc. v. USA Video Tech. Corp.*, 520 F. Supp. 2d 579, 585 (D. Del. 2007)(noting the first-filed rule that suggests a stay of duplicative litigation in other jurisdictions "reduces multiple conflicting decisions which may require separate appeals, and ensures that litigants receive a single determination of their controversy"). Realtek can point to no reason why the ITC and Federal Circuit are not in an adequate position to evaluate the equities of an exclusion order based on the parties licensing conduct.

Instead, Realtek's duplicative suits are nothing more than gamesmanship to further delay LSI's enforcement of its patent rights and drain LSI's resources. Realtek has refused to willingly license the patents for over 10 years. Now that Realtek must face the consequences of its infringement at the ITC, it has filed nothing but a series of vexatious litigations in hopes of whipsawing LSI's pursuit of legitimate infringement claims. Even during the course of the pending ITC Investigation and this case, each time the parties have attempted to negotiate with Realtek, Realtek simply files another lawsuit in hopes of distracting LSI and delaying the inevitable further. When LSI made its initial RAND proposal on June 20, 2012, Realtek filed this litigation and a parallel patent infringement case of its own. *See Realtek Semiconductor Corp. v. LSI Corp.*, Case No. 12-cv-3437 (N.D. Cal. June 29, 2012). When LSI discussed settlement in the Fall, Realtek filed a new suit in the ITC. *In re Certain Integrated Circuit Chips and Prods. Containing Same*, Inv. No. 337-TA-859 (September 19, 2012) (Pannell Decl. Exh. H). Finally, when LSI sat down with LSI in March before the ITC hearing, Realtek filed a patent infringement suit in China. (Chinese Complaint (Pannell Decl. Exhibit I).) Realtek's strategy has no good faith basis. In fact, Realtek has already been forced to dismiss one of its patent claims in its ITC suit. *In re Certain Integrated*

1  *Circuit Chips and Prods. Containing Same*, Inv. No. 337-TA-859, Order No. 12 (Jan. 30, 2013)
2  (Pannell Decl. Exh. J).

3    Even in this case, Realtek attempts to maximize burden on LSI. For example, Realtek has
4  filed a Motion for Summary Judgment that is replete with fact issues and was filed before Realtek
5  has provided witnesses for deposition and before the parties' expert discovery. (Dkt. No. 67.) LSI
6  submits that the sole purpose of such a baseless motion was because the ITC trial began on April 2,
7  2013 and its summary judgment motion would force LSI to respond to duplicative arguments
8  during the trial. Further still, Realtek employees have gone so far as to contact LSI's CEO regarding
9  settlement and ask for a deposition of that CEO when he responds to their inquiries suggesting that
10 they contact LSI attorneys. (*See* Dkt. No. 63 at 7-8 (Joint Report on Discovery Dispute).)

11   Realtek complains that it will be subject to a "hold up" by the threat of injunction, but its
12 actions in refusing to even negotiate in "good faith" and open duplicative litigations upon LSI
13 imposes a reverse hold up whereby Realtek infringes with impunity and refuses to negotiate. *See*
14 DOJ/PTO Policy Statement at 7 & n.15 (noting that exclusion order could be appropriate where
15 putative licensee refuses to negotiate and recognizing that risk of that refusal increases if the "worst-
16 case outcome after litigation is to pay the same amount it would have paid earlier for a license").
17 Without an injunction or exclusion order, Realtek can repeatedly dispute infringement to drive up
18 litigation costs and delay an infringement determination, in order to drive down the royalty rate.
19 However, the threat of an injunction will act to counteract such bad faith tactics by the infringer.
20 *See* James M. Fischer, *The "Right" to Injunctive Relief for Patent Infringement*, 24 SANTA CLARA
21 COMPUTER & HIGH TECH. L.J. 1, 22-23 (2007).

22   Realtek is making the same arguments as the ITC, ███████████████
23 ███████████████████████████████████████. In short, Realtek wants
24 to continue to burden LSI by making the same arguments in two different forums. Such attempts to
25 distract and hold up LSI by forcing it to defend against the same arguments on two different fronts
26 is pure gamesmanship that should be curtailed by entering a stay.

27   In the months ahead, Realtek will invest significant resources in expert witnesses, trial
28 preparation, attorneys, and employee time in order to prove the same thing twice and defend itself

DEFENDANTS LSI CORPORATION'S AND AGERE SYSTEMS LLC'S
NOTICE OF MOTION AND MOTION TO STAY   9
CASE NO. C 12-03451 RMW

1 before this Court, the ITC, and respective appellate courts. Such needless duplication of arguments
2 should be stayed to determine whether this Court's intervention is even necessary.

3 **V.     CONCLUSION**

4      Given the full consideration of the ITC and the fact that Realtek's sole harm and requests of
5 this Court relates to whether the ITC enters an exclusion order, LSI believes it is a waste of party
6 and judicial resources to continue this matter in parallel and in potential conflict with the ITC. For
7 the foregoing reasons, LSI and Agere respectfully request that the Court enter a stay until such time
8 as the ITC Investigation and appeal is concluded.

Dated: April 4, 2013          Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By: /s/ *Charles A. Pannell, III*
    David E. Sipiora
    Robert J. Artuz
    Charles A. Pannell, III

Attorneys for Defendants
LSI CORPORATION and
AGERE SYSTEMS INC.

65323318v.4