1

2 KILPATRICK TOWNSEND & STOCKTON LLP
DAVID E. SIPIORA (State Bar No. 124951)
3 1400 Wewatta Street, Suite 600
Denver, CO 80202-5556
4 Telephone: (303) 571-4000
Facsimile: (303) 571-4321
Email: *dsipiora@kilpatricktownsend.com*

5

6 KILPATRICK TOWNSEND & STOCKTON LLP
ROBERT J. ARTUZ (State Bar No. 227789)
7 1080 Marsh Road
Menlo Park, CA 94025
8 Telephone: (650) 326-2400
Facsimile: (650) 326-2422
Email: *rartuz@kilpatricktownsend.com*

9

10 KILPATRICK TOWNSEND & STOCKTON LLP
CHARLES A. PANNELL, III (*Appearing Pro Hac Vice*)
11 1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
12 Telephone: (404) 815-6500
Facsimile: (404) 815-6555
13 Email: *cpannell@kilpatricktownsend.com*

14 Attorneys for Defendants
LSI CORPORATION and AGERE SYSTEMS LLC

15

16 UNITED STATES DISTRICT COURT

17 FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

18

| | |
|---|---|
| 19 REALTEK SEMICONDUCTOR CORPORATION, | Case No. C 12-03451 RMW |
| 20 Plaintiff and Counterclaim Defendant, | **LSI CORPORATION AND AGERE SYSTEMS LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND REQUEST FOR A RULE 56(d) CONTINUANCE** |
| 21 | |
| 22 v. | Date: May 3, 2013 |
| 23 LSI CORPORATION and AGERE SYSTEMS LLC, | Time: 9:00 a.m. Place: Courtroom 6, 4th Floor |
| 24 | Compl. Filed: June 29, 2012 |
| 25 Defendants and Counterclaim Plaintiff. | Trial Date: November 4, 2013 |
| 26 | Hon. Ronald M. Whyte |

27 **PUBLIC – REDACTED VERSION**

28

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF DISPUTED FACTS .............................................................. 2

         A.    LSI's Statement of Facts .......................................................................... 2

              1.    The Parties .................................................................................... 2

              2.    LSI/Agere's Participation in WLAN Standard Setting and Commitments to the IEEE ............................................................ 3

              3.    Realtek's Infringement and Licensing Requests ........................... 3

         B.    Essential Fact and Expert Discovery Has Not Been Completed ............... 5

III.  ARGUMENT ...................................................................................................... 7

         A.    Legal Standards ......................................................................................... 7

         B.    The Court Should Deny the Motion and Grant LSI's Motion To Stay .......................................................................................................... 8

         C.    Realtek's Belated Motion for a Preliminary Injunction Should Be Denied ....................................................................................................... 9

              1.    Realtek Unreasonably Delayed in Seeking Injunctive Relief Against LSI ..................................................................... 9

              2.    Realtek's Has Not Proven Sufficient Harm to Warrant An Injunction At This Time ............................................................... 10

              3.    Realtek Offers No Authority for this Court to Enjoin LSI from Pursuing its Claims Before the ITC. ................................... 10

         D.    The Court Should Deny Realtek's Motion Or Delay Ruling Because Additional Fact And Expert Discovery Is Needed For LSI To Oppose Realtek's Motion ............................................................ 12

              1.    Essential Facts Have Been Withheld From LSI Because Realtek Has Refused to Produce Key Rule 30(b)(6) Witnesses For Deposition ............................................................ 12

              2.    Essential Expert Discovery Is Needed For LSI To Oppose Realtek's Motion ........................................................................ 14

              3.    LSI Has Diligently Sought The Essential Discovery That Is Needed To Oppose Realtek's Motion. ................................... 15

DEFENDANTS LSI CORPORATION'S AND AGERE SYSTEMS LLC'S
OPPOSITION TO REALTEK'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. C 12-03451 RMW

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

E.     The Motion For Partial Summary Judgment Should Be Denied on its Merits ............................................................................................ 15

IV.     CONCLUSION ........................................................................................................ 18

1

## **TABLE OF AUTHORITIES**

2

**CASES**

3

*Apple Inc. v. Motorola, Inc.,*
4    869 F. Supp. 2d 901 (N.D. Ill. 2009) .............................................................. 10, 11

5    *Apple, Inc. v. Motorola Mobility, Inc.,*
     Case No. 11-cv-178, Dkt. No. 487, at 5 (W.D. Wisc. Nov. 2, 2012) ..................................... 11
6

*Burlington Northern Santa Fe R. Co. v. Assiniboine and Sioux Tribes of Fort Peck,*
7    323 F.3d 767 (9th Cir. 2002)............................................................................................. 7

8    *California v. Campbell,*
9    138 F.3d 772 (9th Cir. 1998).............................................................................................. 7

10   *Celotex Corp. v. Catrett,*
     477 U.S. 317 (1986) ........................................................................................................... 7
11

*Certain Semiconductor Chips and Products Containing Same,*
12    Inv. No. 337-TA-753, Initial Determination, March 2, 2012, 2012 WL 927056 .................. 11

13   *Enreach Technology, Inc. v. Embedded Internet Solutions,*
14    403 F. Supp. 2d 968 (N.D. Cal 2005) ...................................................................................... 7

15   *Fogerty v. Poor Boy Prods.,*
     124 F.3d 211, 1997 WL 579175 (9th Cir. 1997) ...................................................................... 10
16

*Galen v. Cnty. Of L.A.,*
17    477 F.3d 652 (9th Cir. 2007).................................................................................................... 7

18   *Hanson v. Alpine Valley Ski Area, Inc.*
19    718 F.2d 1075 (Fed. Cir. 1983).................................................................................................. 18

20   *Lizotte v. Praxair Inc.,*
     No. 09-35332, 2010 U.S. App. LEXIS 5681 (9th Cir. 2010) .................................................. 8
21

*Metabolife Intern., Inc. v. Wornick,*
22    264 F.3d 832 (9th Cir. 2001)................................................................................................ 8, 12

23   *Microsoft Corp. v. Motorola, Inc.,*
24    2012 WL 5993202 (W.D. Wash. Nov. 30, 2012) ...................................................... 10, 11, 17

25   *Microsoft Corp. v. Motorola, Inc.,*
     864 F. Supp. 2d 1023 (W.D. Wash. 2012)..................................................................... 17, 18
26

*Nazomi Communs., Inc. v. Nokia Corp.,*
27    No. 5:10-cv-04686 RMW, 2012 U.S. Dist. LEXIS 39267 (N.D. Cal. March 14, 2012).......... 8

28

*Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*,
  762 F.2d 1374 (9th Cir.1985)................................................................. 10

*Ortho Pharm. Corp. v. Genetics Inst., Inc.*,
  52 F.3d 1026 ...................................................................................... 16

*Powell v. Home Depot U.S.A., Inc.*,
  663 F.3d 1221 (Fed. Cir. 2011)........................................................... 18

*Rite-Hite Corp. v. Kelley Co.*,
  56 F.3d 1538 (Fed. Cir. 1995) (en banc)............................................. 18

*Stickle v. Heublein, Inc.*,
  716 F.2d 1550 (Fed. Cir. 1983)........................................................... 18

*VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*,
  784 F.2d 1472 (9th Cir. 1986).................................................. 8, 12, 13

STATUTES

35 U.S.C. § 271(a) ................................................................................ 16

OTHER AUTHORITIES

Fed. R. Civ. P. 30(b)(6)............................................................ 5, 12, 14, 15

Fed. R. Civ. P. 56(a)................................................................................. 7

Fed. R. Civ. P. 56(d) ...................................................................... passim

U.S. Patent & Trademark Office, Policy Statement on Remedies for Standards-Essential
  Patents Subject to Voluntary F/RAND Commitments, p. 5 (Jan. 8, 2013) .............................. 3

www.justice.gov/atr/public/guidelines/290994.pdf ...................................... 3

I.      **INTRODUCTION**

Under the guise of "partial summary judgment," Plaintiff Realtek Semiconductor Corp. ("Realtek") has filed what effectively is a motion for preliminary injunction to bar Defendants LSI Corporation and Agere Systems LLC (collectively "Defendants" or "LSI") from completing an ongoing investigation before the United States International Trade Commission (the "ITC") in Inv. No. 337-TA-837 (the "ITC Investigation").[1]  Should LSI prevail in the ITC Investigation, the ITC may issue an exclusion order against certain Realtek products found to infringe U.S. Patent Nos. 6,452,958 ("'958 Patent") and 6,707,867 ("'867 Patent").  The ITC, however, would only issue an exclusion order against Realtek after receiving evidence and fully considering Realtek's claim that LSI allegedly has violated commitments made to the Institute of Electrical and Electronics Engineers ("IEEE") to license the '867 and '958 Patents on a "reasonable, non-discriminatory" basis ("RAND").  In other words, an exclusion order would be entered only after the ITC considered and rejected the same RAND issues Realtek had raised in this case.

The Court should deny Realtek's Motion for Partial Summary Judgment for at least three reasons.  First, Realtek's RAND defense in the present action, as described in this Motion, is co-extensive with the defense presented in the ITC Investigation, including Realtek's reliance on the same facts and witnesses.  In fact, the parties just tried those issues in the ITC from April 2-10, 2013.  To avoid the needless replication of effort and expense, LSI has moved the Court to stay this action pending the completion of the ITC Investigation.  Because the ITC will have heard evidence and made a determination on the RAND defense prior to  issuing an order of exclusion – from which Realtek can appeal to the Federal Circuit – Realtek would not be harmed by a stay of this action.

Second, the Court should deny Realtek's Motion because it actually represents a belated request for preliminary injunctive relief that should have been filed months ago, and was only done to interfere with the ITC Investigation.  Realtek cannot prove irreparable harm and has cited no

---

[1] The sole relief requested in Realtek's Motion is "an order barring Defendants from enforcing, or seeking to enforce, an exclusion order or injunction for infringement of alleged standard essential patents pending a full RAND trial on the merits."  Notice of Motion and Motion ("Motion") at 1.

authority that would justify depriving LSI of its opportunity to complete the ITC Investigation.

Third, even if the Court were to entertain the merits of the Motion (and it should not), any ruling should be postponed until discovery, including expert discovery, is complete.  As seen in the ITC Investigation, both Realtek and LSI rely upon expert opinions to determine the reasonableness of LSI's actions and whether it violated the IEEE RAND commitments.  Moreover, LSI has not completed discovery on numerous issues related to Realtek's Motion, including Realtek's silence on the LSI's offers to license in the past, and its present silence as to LSI's RAND proposal, sent on June 20, 2012.  LSI needs to complete that discovery in order to fully address the facts surrounding Realtek's alleged RAND claims and to support LSI's defenses.[2]

## II.    STATEMENT OF DISPUTED FACTS

### A.    LSI'S STATEMENT OF FACTS

#### 1.    The Parties

LSI is a United States company based in California.  [Dkt. No. 1 ¶ 10; Dkt. No. 44 ¶ 10.] Agere Systems LLC is a wholly owned subsidiary of LSI that resulted from a reorganization of Lucent Technologies, Inc. in 2000 and is based in Pennsylvania. [Dkt. No. 1 ¶¶ 10-13; Dkt. No. 44 ¶¶ 10-13.]  Over the years, LSI through its subsidiaries and predecessor companies, such as Lucent and Agere,[3] developed and maintained a patent portfolio in the field of wireless computer networking.  [Dkt. No. 1 ¶¶ 29-36; Dkt. No. 44 ¶¶ 29-36.]  LSI has also participated over the years in the development of IEEE's 802.11 standards for wireless networking ("WLAN Standards"). [Dkt. No. 1 ¶ 34 & Exh. A.]

Plaintiff Realtek is a Taiwanese company that supplies chips for wireless communication products that comply with the WLAN standards set forth by the IEEE.  [*Id.* ¶¶ 8, 76.]  Plaintiff sells them to other companies that incorporate the chips into products that are imported into the U.S.  [*Id.*

---

[2] As set forth below, if the Court were to entertain the merits of the Motion, it should be denied because triable issues of material fact remain in dispute.

[3] Unless otherwise noted, this brief will generally refer to Agere and LSI collectively as LSI for simplicity.

¶ 8-9, 76; Deposition of Chiang-Ho Tsai pp. 79-80 (Declaration of Charles A. Pannell in Support of LSI's Response to Realtek's Motion for Summary Judgment ("Pannell Decl.") Exh. 1.]

### 2. LSI/Agere's Participation in WLAN Standard Setting and Commitments to the IEEE

This action relates to commitments made by Agere to the IEEE during its standards setting process for the WLAN Standards. During the standards setting process, an organization such as the IEEE will "encourage participants to include the best available technology in standards" and request that the participant agree to make RAND licenses available to any patents it owns that claim technology implemented in that standard. *See* U.S. Department of Justice & U.S. Patent & Trademark Office, Policy Statement on Remedies for Standards-Essential Patents Subject to Voluntary F/RAND Commitments, p. 5 (Jan. 8, 2013) *available at* www.justice.gov/atr/public/guidelines/290994.pdf ("DOJ/PTO Policy Statement"). The patent owner is compensated for such a commitment by the "expanded source of revenues" generated by licensing it patents to implementers on those RAND terms. [*Id.*]

As part of the WLAN standard setting process, Agere stated with regard to both the '958 and '867 patents that it was "prepared to grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to comply with the [Proposed] IEEE Standard" and that it would "make available on a non-exclusive basis, under reasonable terms and conditions that are non-discriminatory, licenses to patents and patent applications." [Dkt. No. 1, Exh. A (alteration in original).] Neither LSI nor Agere made any commitment to the IEEE that it would relinquish its rights to request an injunction or ITC exclusion order. [*Id.*]

### 3. Realtek's Infringement and Licensing Requests

Realtek has been aware of LSI's patent portfolio since at least 2002 when LSI's predecessor, Agere, wrote to Realtek suggesting that it take a license to Agere's wireless portfolio and specifically identified the '958 patent as representative of that portfolio. [Realtek Response to LSI Interrogatory Nos. 8 & 18 (Pannell Decl., Exh. 2); Daire Decl., Exh. F (2002/2003 Letters).] ■

LSI CORPORATION AND AGERE SYSTEMS, LLC'S OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. C 12-03451 RMW

3

1  ████████████████████████████████████████████████

2  ██████████████████████████████████████████████████

3  ████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████

5  ████████████████████████████  [*Id.*]  Realtek never responded.  On

6  March 31, 2003, Agere sent another letter inquiring about Realtek's analysis [*Id.*], and again

7  received no response.

8       In the years following the 2003 correspondence, Realtek claims that it relied upon LSI's

9  commitments to the IEEE that required it to license on RAND terms, including its Letters of

10  Assurance that specifically identify the '958 and '867 patents.  [Dkt. No. 1 ¶¶ 37-39 & Exh. A.][4]

11  Despite knowing Agere and LSI's willingness to make such RAND licenses available, Realtek

12  ignored LSI's patent rights.  [Realtek Response to LSI Interrogatory Nos. 8 & 18 (Pannell Decl.,

13  Exh. 2); Realtek's Response to the Amended ITC Complaint, ITC Inv. No. 337-TA-837, p. 25 (ITC

14  May 18, 2012) ("Realtek ITC Resp.") (Pannell Decl., Exh. 4).]  On March 7, 2012, LSI sent a letter

15  asking Realtek to cease its infringement.  [Daire Decl., Exh. I (3/7/12 letter).]  On March 12, 2012,

16  LSI filed a complaint with the ITC regarding infringement by Realtek and its customer, Funai,

17  among others.  [Daire Decl., Exh. J (ITC Complaint).]

18       On May 24, 2012, Realtek's counsel wrote to LSI ██████████████████████

19  ██████████████████████████████████████████████████████████

20  ████████████████████████  [Daire Decl., Exh. M (5/24/12 letter).]  On June 20, 2012, LSI

21  provided Realtek with a summary of its licensing program and several suggested terms ██████

22  ████████████████████████████████████████████████

23  ████████████████████████  [*Id.*, Exh. N (6/20/12 proposal; 6/20/2012 Phillips Email to

24  Baik) (Pannell Decl., Exh.. 5).]  The proposal made clear that it "summarizes high-level terms" and

26  _____

27  [4] The further extent of Realtek's reliance is currently the subject of a pending 30(b)(6) deposition
   notice.  [LSI Corporation's Corporate Notice of Deposition to Plaintiff Realtek Semiconductor

28  Corporation (Pannell Decl. Exh. 3).]

1    was "for initial discussion purposes only." [Daire Decl., Exh. N at 2.]  The proposal ended with a

2    license structure for LSI's entire WLAN portfolio.

3         LSI's June 20, 2012 proposal was not intended to be a final or non-negotiable offer. 

4    ████████████████████████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████████████████████████

7    ████  [W. Waskiewicz Depo. (Pannell Decl., Exh. 6) at 87:2-11.]  As it has always maintained

8    and as the law approves, the proposal was meant for discussion purposes.  [*Id.*at 52:4-11 (noting the

9    proposal was "meant to start a discussion that might lead to an agreement").]

10        On June 29, 2012, without responding to LSI's initial proposal, Realtek filed this suit

11   arguing that the ITC Investigation and the June 20, 2012 proposal violated its RAND obligations

12   and was inherently unreasonable.  [Dkt. No. 1 ¶¶ 43-45.]  In this action, Realtek has pending claims

13   for breach of contract, promissory estoppel, and declaratory relief.

14   **B.    ESSENTIAL FACT AND EXPERT DISCOVERY HAS NOT BEEN
             COMPLETED**

15

16        Realtek's Motion is unfounded and premature.  Fact discovery is in full swing and will not

17   be completed until May 1, 2013.  [Dkt. No. 54 at 1.]  LSI is still waiting to take the depositions of

18   key Realtek witnesses regarding many of the factual allegations raised in Realtek's Motion.  On

19   February 26, 2013, LSI served on Realtek a Rule 30(b)(6) deposition notice including a list of 28

20   deposition topics.  [Pannell Decl., Exh. 3).]  Since that date, LSI has diligently pursued the

21   scheduling of those Rule 30(b)(6) depositions.  [Pannell Decl., ¶¶ 10-20.]  In early March 2013,

22   Realtek agreed to produce one witness to testify on 5 of the 28 topics on March 18, 2013 and a

23   second witness to testify on 1 of the 28 topics during the week of April 15, 2013.  The first of those

24   depositions is now complete.  LSI continued to press Realtek to produce one or more additional

25   witnesses to testify on the remaining 22 Topics.  [*Id.* at ¶ 13-19.]  On March 28 and April 5, 2013,

26   after LSI threatened to file a motion to compel, Realtek finally offered two witnesses to testify on

27   the remaining 22 deposition topics.  [*Id.* at ¶ 16-20.]  The earliest dates that Realtek could produce

28   those witnesses were April 16 and May 1, 2013.  [*Id.* at ¶ 20.]  Some of the topics on which

Realtek's witnesses are scheduled to testify on those dates include:

- Realtek's intellectual property licensing and negotiation practices.  (TOPIC 1)

- Realtek's agreements to license intellectual property rights that are subject to any commitment to license those rights on reasonable and non-discriminatory ("RAND") terms. (TOPIC 2)

- Realtek's communications and/or documents discussing RAND licenses or procedures for entering into or calculating RAND licenses.  (TOPIC 3)

- Actions taken by Realtek in response to its awareness of the Patents or LSI's claim that it owns patents essential to practice the Wi-Fi Standard.  (TOPIC 5)

- How and when Realtek learned of LSI's commitment to the IEEE to license the Patents on RAND terms.  (TOPIC 9)

- Actions taken by Realtek to evaluate the need for and secure a license to the Patents. (TOPIC 10)

- Realtek's alleged reliance on LSI's letters of assurance to the IEEE.  (TOPIC 11)

- Realtek's development and sale of those products Realtek contends implements or will implement the Wi-Fi Standard and its reliance on LSI or Agere's alleged commitments to the IEEE in the development and sale of those products.  (TOPIC 15)

- The royalty rates or other consideration paid by Realtek for the licensing of, or use of, any patents essential to the Wi-Fi Standard, including the identification of any agreement, contract, or licensing establishing said royalty and the material provisions of those licenses. (TOPIC 16)

- The nature and scope of any license, agreement, or commitment made by Realtek regarding the licensing of any patent essential to the Wi-Fi Standard, including but not limited to whether the license was exclusive, nonexclusive, and the duration and terms of such licenses.  (TOPIC 17)

- Realtek's willingness to accept a RAND rate determined by the court as the result of this litigation.  (TOPIC 20)

- The procedure for discussing, negotiating, or otherwise determining the terms and conditions of a license that is subject to RAND commitments, including how Realtek determines what constitutes an unreasonable or discriminatory offer.  (TOPIC 22)

- Realtek's actions taken, responses to and communications in regards to LSI's June 20, 2012 proposal to license patents to Realtek.  (TOPIC 23)

- The royalties paid by Realtek to license intellectual property rights that related to Realtek's products that comply with the Wi-Fi Standard.  (TOPIC 28)

[*Id.* at ¶ 21.]  Discovery on all of these topics are needed before LSI can fully respond to the allegations and arguments made in Realtek's Motion.  [*Id.* at ¶ 22.]

Expert discovery has not even started.  Initial expert reports are not due until May 24, 2013, and expert depositions are unlikely to be completed prior to the close of expert discovery on July 19, 2013.  [Dkt. No. 54 at 1.]  Before LSI's experts can complete their analyses and render their opinions regarding the RAND issues raised in Realtek's Motion, Realtek's witnesses must be deposed.  [Pannell Decl. at ¶ 26.]

## III.   ARGUMENT

### A.   LEGAL STANDARDS

Summary judgment is appropriate only when the evidence, viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. Of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden of showing there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at 323.  Only if the initial burden has been met must the non-moving party "make a showing sufficient to establish a genuine dispute of material fact regarding the essential elements of his case that he must prove at trial."  *Galen*, 477 F.3d at 658.

Additionally, Federal Rule of Civil Procedure 56(d) "provides a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence."  *Burlington Northern Santa Fe R. Co. v. Assiniboine and Sioux Tribes of Fort Peck,* 323 F.3d 767, 773 (9th Cir. 2002).  "The district court should deny or continue a motion for summary judgment if the opposing party makes a good faith showing by affidavit that the continuance is necessary to obtain facts essential to oppose the motion."  *Enreach Technology, Inc. v. Embedded Internet Solutions*, 403 F. Supp. 2d 968, 979 (N.D. Cal 2005) (citing *California v. Campbell,* 138 F.3d 772, 779 (9th Cir. 1998)).  In the Ninth Circuit, a party seeking further discovery under Rule 56(d) must

LSI CORPORATION AND AGERE SYSTEMS, LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT CASE NO. C 12-03451 RMW

7

1   also show that "it diligently pursued such discovery prior to filing its motion." *Nazomi Communs.,*

2   *Inc. v. Nokia Corp.,* No. 5:10-cv-04686 RMW, 2012 U.S. Dist. LEXIS 39267, *10 (N.D. Cal.

3   March 14, 2012); *see Lizotte v. Praxair Inc.,* No. 09-35332, 2010 U.S. App. LEXIS 5681 (9th Cir.

4   2010) (citing omitted).

5          Courts generally grant a Rule 56(d) application "where the party opposing summary

6   judgment makes (a) a timely application which (b) specifically identifies (c) relevant information,

7   (d) where there is some basis for believing that the information sought actually exists." *VISA Int'l*

8   *Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986).  Further, Rule 56(d)

9   requires the court allow discovery where the nonmoving party has not had the opportunity to

10  discover information that is essential to its opposition. *Metabolife Intern., Inc. v. Wornick*, 264 F.3d

11  832, 846 (9th Cir. 2001) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n. 5 (1986)).  In

12  granting a Rule 56(d) request, the Court can deny the motion for summary judgment, defer

13  considering it, allow time for more discovery, and/or "issue any other appropriate order."  Fed. R.

14  Civ. P. 56(d).  Notably, courts have held that summary judgment is "***especially inappropriate***

15  ***where the material sought is also*** *the subject of outstanding discovery requests***."** *VISA*, 784 F.2d

16  at 1475 (emphasis added).

17      **B.      THE COURT SHOULD DENY THE MOTION AND GRANT LSI'S MOTION
                  TO STAY**
18

19         LSI recently filed a motion to stay these proceedings pending the outcome of the ITC

20  Investigation.  As set forth in the motion to stay, Realtek is asserting a RAND defense to patent

21  infringement in the ITC Investigation that is identical to the causes of action asserted here.  Realtek

22  is aggressively pursuing that defense and is presenting the same facts, the same arguments, the same

23  witnesses, and the same experts before the ITC that are the subject of this action. (*See* LSI Motion

24  to Stay, Dkt. No. 72 at pp. 2-3.).  More importantly, the record on the RAND defense and LSI's

25  response has been fully developed in the ITC Investigation and was presented to the Administrative

26  Law Judge ("ALJ") overseeing the matter on April 2-10, 2013.  Therefore, the Court should deny

27  Realtek's Motion and grant LSI's motion to stay.

28         A stay is particular appropriate in light of the fact that ████████████████████

1   ██████████████████████████████████████████████████████████

2   Specifically, in a recent discovery response, Realtek stated:

3   ████████████████████████████████████████████
4   ████████████████████████████████████████████
5   ███████████████████████████████████████
6

7   [Realtek's Amended Response to LSI's Request for Admission No. 1 (Pannell Decl., Exh. 7).]

8   ███████████████████████████████████████████████████

9   ████████████████████████████████████████████████████

10  Given Realtek's position, the Court should grant the stay motion and reject this misnamed

11  "summary judgment" Motion.

12      **C.      REALTEK'S BELATED MOTION FOR A PRELIMINARY INJUNCTION
                  SHOULD BE DENIED**

13

14          Although entitled a "Motion for Partial Summary Judgment," Realtek's Motion is nothing

15  other than a motion for preliminary injunction.  Realtek's notice of motion asks this Court to "issue

16  an order barring Defendants from enforcing, or seeking to enforce, an exclusion order . . . pending a

17  full RAND trial on the merits."  [Motion at 1.]  Such a preliminary injunction motion is fatally

18  defective because Realtek has no basis for a claim of irreparable harm.  Further, Realtek waived its

19  opportunity to seek a preliminary injunction when it unreasonably delayed in filing this Motion

20  until the eve of the ITC hearing.

21          **1.      Realtek Unreasonably Delayed in Seeking Injunctive Relief Against LSI**

22          Realtek alleges that it █████████████████████████████████████████████

23  ██████████████████████████████████  [Motion at 21.]  However, this result

24  has been readily apparent to Realtek since it filed this action in June of 2012.  [Dkt. No. 1.][5]

25  Realtek could have filed a motion seeking to enjoin LSI immediately upon the filing of this action.

26  Realtek chose not to do so and, instead, filed its Motion on the eve of the ITC hearing so that LSI

27  _____

28  [5] The ITC Investigation commenced on April 11, 2012.

1    would be forced to respond during trial.  Such delay is not only gamesmanship, it fatally contradicts

2    Realtek's claim that it will be irreparably harmed should the ITC Investigation move forward.  *See*

3    *Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir.1985) (finding that

4    delay in requesting a preliminary injunction "implies a lack of urgency and irreparable harm");

5    *Fogerty v. Poor Boy Prods.*, 124 F.3d 211, 1997 WL 579175, *3 (9th Cir. 1997) (Unpublished

6    Table Decision).  Accordingly, the Court should deny Realtek's belated request for injunctive relief

7    against LSI, particularly in light of the outstanding discovery and unresolved factual questions.

8                    **2.      Realtek's Has Not Proven Sufficient Harm to Warrant An Injunction At
                               This Time.**

9

10   ███████████████████████████████████████████████████████████████████  [Tsai

11   Depo. Tr. at 150:10-151:25 (Pannell Decl., Exh. 1).]  Realtek suggests it will be harmed if an

12   exclusion order is entered, but, this claim is speculative and depends entirely upon the outcome of

13   the ITC Investigation, where it has been afforded a full and fair opportunity to present the same

14   RAND arguments that it is pursuing in this case.  To the extent Realtek does not like the ALJ's

15   decision, it will have the right to seek relief from the ITC and later the Federal Circuit.

16   Accordingly, there is no relevant harm to Realtek that will not be fully considered by the ITC and

17   Federal Circuit.

18                   **3.      Realtek Offers No Authority for this Court to Enjoin LSI from Pursuing
                               its Claims Before the ITC.**

19

20          If the Motion were granted, Realtek's sole request for relief is an order enjoining LSI.  Such

21   an injunction would, in all essence, stop the ITC, an agency of the U.S. government that has

22   independent jurisdiction to investigate LSI's claims of infringement and improper importation by

23   Realtek, from completing its investigation and issuing, if appropriate, an exclusion order.  Realtek

24   has not provided any authority authorizing a collateral attack on an unfinished ITC Investigation.

25   Neither case cited by Realtek offers such authority.  At best, both *Apple Inc. v. Motorola, Inc.*, 869

26   F. Supp. 2d 901, 913-14 (N.D. Ill. 2009) and *Microsoft Corp. v. Motorola, Inc.*, 2012 WL 5993202

27   (W.D. Wash. Nov. 30, 2012), stand for the proposition that the district court itself will not enter

28

1     injunctive relief if the facts and circumstances of the case do not warrant it.[6]

2           For example, in *Microsoft*, which is cited throughout Realtek's brief, the Court dismissed

3     the injunctive relief requested after holding a multi-week trial to determine a RAND rate and after

4     Microsoft "committed to accept a license on RAND terms." 2012 WL 5993202, at **5, 6. In other

5     words, "the issue was not if, but when and under what terms, a license agreement would be

6     established." *Id.* at *6. Further still, the Court only dismissed injunctive relief "without prejudice"

7     because "[t]he court's determination that injunctive relief is no longer available . . . is based on the

8     specific circumstances and rulings that have developed in this litigation. If, in the future, those

9     circumstances change in a manner to warrant injunctive relief, Motorola may at that time seek such

10    relief." *Id.* at *7; *see also Apple*, 869 F.2d at 914 (holding injunction not justified "*unless* Apple

11    refuses to pay a royalty that meets the FRAND requirement" (emphasis added)).

12          As at least one other court has noted in dismissing a RAND case, any relinquishment of a

13    federal patent right (e.g., the right to seek an injunction) by contract must be made clear and

14    unambiguous. *Apple, Inc. v. Motorola Mobility, Inc.*, Case No. 11-cv-178, Dkt. No. 487, at 5 (W.D.

15    Wisc. Nov. 2, 2012). Here, the extent of LSI's IEEE commitment was to "make available" a

16    RAND license to those seeking to implement the WLAN standard. At no time has LSI ever

17    relinquished its rights to an injunction or exclusion order based on its RAND commitments, and the

18    facts here do not warrant such a ban.

19          In fact, in this case ███████████████████████████████████

20    █████████████████████████████████████████████████ [Realtek's

21    Amended Response to LSI's Request for Admission No. 1 (Pannell Decl., Exh. 7).] ████████

22    █████████████████████████████████████████████████████████

23    █████████████████████████████████████████████████████████

24    █████████████████████████████████████████████████████████

---

26    [6] Realtek suggest that LSI took a contrary position in another case where it was one of many
27    defendants in a patent infringement case. [Motion at 16.] However, Realtek fails to mention that
      LSI did not prevail on that issue, and further fails to argue for any estoppel because that doctrine is
      not applicable. *See Certain Semiconductor Chips and Products Containing Same*, Inv. No. 337-
28    TA-753, Initial Determination, March 2, 2012, 2012 WL 927056, at * 180, 187-188.

████████████████████████████████████████████████████████

████████████ as the DOJ and PTO have recognized, may be a reason such exclusion orders or threats of injunction are necessary.  *See* DOJ/PTO Policy Statement at pp. 7 & n.15, 10.

> **D.**   **THE COURT SHOULD DENY REALTEK'S MOTION OR DELAY RULING BECAUSE ADDITIONAL FACT AND EXPERT DISCOVERY IS NEEDED FOR LSI TO OPPOSE REALTEK'S MOTION**

Under Rule 56(d), the Court must allow essential discovery to be completed before ruling on Realtek's Motion for summary judgment.  *See Metabolife*, 264 F.3d at 832.  Summary judgment is "especially inappropriate where the material sought is also the subject of outstanding discovery requests."  *VISA*, 784 F.2d at 1475.  As discussed below, there still exist essential facts and expert opinions that must be discovered before LSI can fully oppose Realtek's Motion.  While LSI believes the Court has enough information to find that there exist sufficient disputes of fact to preclude summary judgment, the Court should provide LSI the opportunity to complete the discovery it needs to fully oppose to Realtek's Motion.  Particularly, LSI requests a Rule 56(d) continuance that will allow LSI to file a more complete opposition within 21 days after the close of expert discovery.

> **1.**   **Essential Facts Have Been Withheld From LSI Because Realtek Has Refused to Produce Key Rule 30(b)(6) Witnesses For Deposition**

It is ironic that Realtek alleges that facts are undisputed when it has withheld for weeks essential fact witnesses from being deposed on material facts surrounding Realtek's Motion.  What Realtek is asking the Court to do is tantamount to asking a jury to decide the facts of a case based on a trial where one party is denied the opportunity conduct cross-examination.  Just as no reasonable court would allow such a trial to proceed, this Court should not consider Realtek's Motion until all essential fact discovery is complete and LSI has had an opportunity to use such discovery in opposing Realtek's Motion.  Some of the essential factual issues that LSI needs to explore in deposition and the outstanding Rule 30(b)(6) topics that cover those issues include:

- Whether Realtek considered LSI's 2002/2003 licensing correspondence a RAND offer and, if so, why Realtek refused to accept it (Topics 1, 3 and 5);

LSI CORPORATION AND AGERE SYSTEMS, LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. C 12-03451 RMW

12

- Why Realtek failed to make any counteroffer(s) to LSI's initial 2002 offer in an attempt to negotiate a RAND license agreement (Topics 1, 10 and 22);

- Why Realtek never sought a RAND license from LSI after LSI submitted additional letters of assurance in 2003 and 2004 (Topics 1, 3, 5, 9-11 and 22);

- Whether and how Realtek relied on LSI's initial RAND offer or letters of assurance in deciding to manufacture different types of 802.11-compliant products (Topics 5, 11 and 15);

- Whether Realtek considered LSI's June 2012 licensing proposal a starting point for a RAND license negotiation and, if so, why Realtek refused to negotiate with LSI (Topics 1, 22 and 23);

- What Realtek considers to be an appropriate RAND license for use of LSI's patented technology (Topics 2, 3, 16, 17 and 28);

- If LSI made what a court determined is a RAND licensing offer to Realtek, would Realtek even accept it (Topics 2, 3, 20 and 28); and

- What does Realtek mean when it states it is a "willing licensee" (Topics 2, 3 and 20).

Once Realtek provides answers and other facts that are relevant to the above issues, LSI will be in a better position to present additional evidence to address Realtek's Motion. For example, LSI expects it will be able to present additional evidence showing: (1) LSI satisfied its RAND obligations to Realtek, (2) given Realtek's conduct, it has been Realtek that has acted unreasonably in failing to adequately respond to or negotiate with LSI, (3) LSI was justified in filing suit against Realtek in the ITC, (4) LSI attempted to negotiate with Realtek in good faith, (5) LSI's June 2012 licensing proposal was a reasonable starting point for a negotiation, and (6) absent a judgment of infringement against it, Realtek is not (and has never been) willing to enter into a RAND license agreement with LSI.

Undoubtedly, the essential information that LSI seeks must exist. *See VISA*, 784 F.2d at 1475. ("The courts which have denied a Rule [56(d)] application for lack of sufficient showing to support further discovery appear to have done so where it was clear that the evidence sought was almost certainly nonexistent or was the object of pure speculation.") If such facts did not exist, surely Realtek would have never offered witnesses to testify on the above-identified topics. Rule 56(d) requires that LSI have the opportunity to take the necessary discovery its needs to develop its positions on these material issues before the Court considers ruling in Realtek's favor.

LSI CORPORATION AND AGERE SYSTEMS, LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT CASE NO. C 12-03451 RMW

13

2. **Essential Expert Discovery Is Needed For LSI To Oppose Realtek's Motion**

In determining whether many of Realtek's allegations have merit, experts will need to opine on at least the following issues:

- The customs and practice in the relevant industry regarding RAND offers, negotiations and agreements, and whether Realtek and/or LSI acted appropriately in view of those customs and practice;

- Whether LSI's 2002-2003 communications to Realtek satisfied LSI's alleged RAND obligations;

- Whether LSI's June 20, 2012 licensing proposal to Realtek satisfied LSI's RAND obligations;

- Whether LSI's June 20, 2012 licensing proposal was a reasonable starting point for a negotiation for RAND license agreement;

- What is a RAND royalty rate for LSI's patented technology; and

- Is it reasonable to require Realtek to pay what LSI asserts is a RAND royalty for use of LSI's patented technology.

Given that fact discovery is still incomplete and that LSI is still awaiting answers to many deposition questions that fall within the scope of its Rule 30(b)(6) topics, it is premature at this time to develop the expert opinions that are needed to fully oppose Realtek's Motion.  For example, LSI is still waiting for complete discovery on: (1) Realtek's intellectual property licensing and negotiation practices, (2) Realtek's agreements to license intellectual property that is subject to RAND restrictions, (3) Realtek's reliance on LSI's alleged commitments to the IEEE in the development and sale of accused products, (4) the royalties Realtek pays under other licenses, including RAND licenses, and (5) Realtek's willingness to accept a RAND license.

Here, opening expert reports are not due until May 24, 2013.  Given that additional fact and expert discovery must be completed before LSI can fully respond to Realtek's Motion, the Court should either deny Realtek's Motion or postpone full briefing on the Motion until after the completion of expert discovery.

LSI CORPORATION AND AGERE SYSTEMS, LLC'S OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. C 12-03451 RMW

14

1

**3.      LSI Has Diligently Sought The Essential Discovery That Is Needed To Oppose Realtek's Motion.**

2

3        At all times, LSI has been diligent in seeking the discovery it needs to oppose Realtek's

4    Motion.  [Pannell Decl., ¶¶ 10-20.]  Realtek has been slowly producing the documents needed for

5    deposition in recent months, including as recently as March 17, 2013.  [*Id.* at ¶ 9.]  On February 26,

6    2013, LSI timely noticed the essential Rule 30(b)(6) depositions for March 21, 2013.  [*Id.*, Exh. 3.]

7    As of the date of this brief, however, Realtek has only produced a single witness to testify on only 5

8    of LSI's 28 deposition topics.  [*Id.*, Exh. 3.]  LSI repeatedly pressed Realtek for earlier deposition

9    dates and, when Realtek failed to produce witnesses in a timely manner, went so far as to initiate a

10   meet and confer for a motion to compel.  [*Id.*, ¶¶ 10-20.]  The earliest dates that Realtek could

11   produce witnesses to testify on the remainder of LSI's deposition topics were April 16 and May 1.

12   [*Id.*, ¶ 20.]

13        LSI has also been diligent in obtaining essential expert discovery.  LSI has retained at least

14   two experts to opine on issues relating to RAND commitments and the appropriate RAND royalty

15   rate for use of LSI's patented technology.  [*Id.*, ¶ 25.]  Before LSI experts can complete their

16   opinions on the relevant RAND and royalty issues, however, LSI needs to complete the depositions

17   of Realtek's corporate witnesses.  [*Id.*, ¶¶ 21-26.]

18        For the foregoing reasons, if the court is not inclined to deny Realtek's Motion for partial

19   summary judgment at this juncture, LSI requests a Rule 56(d) continuance that will allow LSI to file

20   a more complete opposition within 21 days after the close of expert discovery.

21   **E.      THE MOTION FOR PARTIAL SUMMARY JUDGMENT SHOULD BE DENIED ON ITS MERITS**

22

23        Even if this Court reaches the merits of Realtek's Motion, it should still be denied based on

24   the material facts in favor of LSI.  Though LSI believes the facts clearly establish its position of no

25   breach, at least the following fact issues preclude summary adjudication in Realtek's favor:

26        1.      The reasonableness of LSI's commencement of suit in the ITC against

27                Realtek;

28

LSI CORPORATION AND AGERE SYSTEMS, LLC'S OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. C 12-03451 RMW

15

2.    The reciprocal nature of the RAND obligation, in particular, the duty of a prospective licensee to negotiate in good faith; and

3.    The reasonableness of LSI's June 20, 2012 offer of a license to the patents in suit.

First, LSI's actions to file suit in the ITC were not unreasonable.  LSI clearly made a license available to Realtek in 2002 and 2003 and did so with specific regard to the patents in suit.  [Daire Decl., Exh. F (2002/2003 Letters).]  Realtek's claim that the 2002/2003 correspondence did not count because they did not reference later amendments to the WLAN Standards or ██████████ ███████████████████ at LSI's convenience are at most disputed inferences that are unhelpful to Realtek.  LSI never claimed it was not making licenses available relative to patents pertaining to other 802.11 amendments being developed.  In fact, LSI's 2002 letter stated that it "supports the proliferation of wireless technology that has been adopted by the IEEE in 802.11 standards" not just the 802.11b amendment.  [*See id.*]  And Realtek readily admits it knew of and relied on the availability of LSI's licenses for the other 802.11 amendments such as 802.11g.  [Dkt. No. 1 ¶¶37-39 & Exh. A.]  Moreover, LSI did offer ████████████████ with Realtek and comply with its request, Realtek simply ignored LSI and ████████████████████████████ [Daire Decl., Exh. F (2002/2003 Letters).]

Even further, Realtek's own actions in response to LSI's March 2012 letter and ITC Investigation demonstrate the reasonableness of LSI's actions.  Though LSI asked Realtek to stop infringing, it never suggested that it must do so by discontinuing sales.  [Daire Decl., Exh. I (3/7/12 Letter).]  Realtek could have ended its infringement by taking a license, *see* 35 U.S.C. § 271(a) (requiring infringement occur "without authority"); *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1031 (Fed. Cir. 1995 ("In its simplest form, a license means only leave to do a thing which the licensor would otherwise have a claim to prevent."), which is exactly what it suggested in its May 24, 2012 letter to LSI and what LSI responded to in its June 20, 2012 proposal.  [Daire Decl., Exh. N (6/20/2012 Proposal).]  Even now, ████████████████████████ ████████████████████████████████████████████████████████████

LSI CORPORATION AND AGERE SYSTEMS, LLC'S OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. C 12-03451 RMW

16

1   ██████████████████████████████████ [Realtek's Amended Response to LSI's Request

2   for Admission No. 1 (Pannell Decl., Exh. 7).]

3     Realtek attempts to suggest a nefarious purpose to the filing of the ITC Investigation,

4   arguing that LSI used the ITC Investigation for ████████████████. [Motion at 8, 17.]

5   But, again this allegation is a fact question that Realtek is attempting to cobble together from

6   quotations taken out of context from witnesses and documents.  LSI always has considered the ITC

7   Investigation proper.  LSI's Vice President of Licensing, Warren Waskewicz, clearly stated that the

8   Investigation against Realtek was brought because LSI believes Realtek imports infringing

9   products.  [W. Waskiewicz Depo. (Pannell Decl., Exh. 6) at 237:24-239:23).]

10     Second, it cannot be disputed that LSI has attempted to provide and discuss licensing terms

11   with Realtek.  However, it is Realtek—not LSI—that has acted in bad faith with regard to its claim

12   for third-party beneficiary status under the IEEE commitments.  As the *Microsoft* court noted, "the

13   IEEE . . . agreements anticipate that the parties will negotiate towards a RAND license."  *Microsoft*

14   *Corp. v. Motorola, Inc.,* 864 F. Supp. 2d 1023, 1038 (W.D. Wash. 2012).  Here, Realtek has refused

15   to even enter a discussion about what it needs or what concerns it has with LSI's proposals to date.

16   In 2002/2003, it simply chose to ignore LSI.  In 2012, it complains about certain provisions in LSI's

17   June 20th proposal, but does not even identify its concerns to LSI despite LSI's willingness to work

18   with Realtek.  [W. Waskiewicz Depo. (Pannell Decl., Exh. 6) at 87:2-11 ████████████

19   █████████████████████████████████████████████████████

20   █████████████████████████████████████████████████████

21   █████████████████████████ (emphasis added); Daire Decl., Exh. N (6/20/2012

22   Proposal) p. 2.]  Realtek's refusal to negotiate or discuss RAND licensing at every turn does not

23   warrant summary judgment here.

24     Third, Realtek does not even attempt to argue that the June 20, 2012 proposal itself was

25   unreasonable as a matter of law because it cannot.  Though Realtek proposes its concern about the

26   proposal and suggests it would not be able to accept its terms, Realtek never expressed those

27   concerns to LSI.  Even further, the proposal clearly states it was for discussion purposes, [Daire

28   Decl., Exh. N (6/20/2012 Proposal) p. 2,] and the facts elicited in deposition make clear that LSI

LSI CORPORATION AND AGERE SYSTEMS, LLC'S OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. C 12-03451 RMW

17

was willing to work with Realtek to address its concerns. [W. Waskiewicz Depo. (Pannell Decl., Exh. 6) at 87:2-11.] *See, e.g., Microsoft*, 854 F. Supp. 2d at 1001 ("Still, the court is mindful that at the time of an initial offer, it is difficult for the offeror to know what would in fact constitute RAND terms for the offeree."). As LSI has pointed out, the ███ ██ ████████████████████████████████████████████████████████████ [W. Waskiewicz Depo. (Pannell Decl., Exh. 6) at 131:12-15.] Moreover, Realtek's claims that the proposal was inherently unreasonable are simply not supported in the law. For example, the Federal Circuit has clearly and consistently held that a reasonable royalty can exceed the selling price of an accused product. In *Hanson v. Alpine Valley Ski Area, Inc.*, the Federal Circuit held a patent royalty to an infringer's snow-blowing machines was reasonable even though the royalty exceeded the purchase price of another company's machines that were actually licensed by the patentee. 718 F.2d 1075, 1081-82 (Fed. Cir. 1983); *accord Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1563 (Fed. Cir. 1983) ("[W]e expressly reject Heublein's premise that the royalty fee must be less than the price of an HUB-2000"); *see also Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1555 (Fed. Cir. 1995) (en banc) (*citing Stickle*, 716 F.2d at 1563, as holding "royalty need not be less than price of infringing unit"); *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1238-39 (Fed. Cir. 2011) (explaining a reasonable royalty is not capped by infringer's profits or the sales price of the patented product).

Finally, LSI submits that the facts and inferences Realtek attempts to draw on all its issues are more appropriately the subject of expert testimony regarding RAND licensing practices and commitments. Realtek, however, has not provided any expert testimony or declaration in this regard, nor would it be appropriate as the parties have not even started expert discovery.

Even with the record available to date, Realtek has not met its burden to establish there are no triable issues of fact. Accordingly, Realtek's Motion for Partial Summary Judgment should be denied.

## IV.  CONCLUSION

Given the full consideration of the ITC Investigation and the fact that Realtek's sole harm and requests of this Court relates to whether the LSI may pursue an exclusion order in the ITC, and in consideration of the incomplete state of discovery and deficiencies inherent in the Motion, LSI

LSI CORPORATION AND AGERE SYSTEMS, LLC'S OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. C 12-03451 RMW

18

1  and Agere respectfully request that the Court deny Realtek's Motion for Partial Summary

2  Judgment, and grant LSI's motion to stay pending the outcome of the ITC Investigation.

3

4  Dated:  April 9, 2013                    Respectfully submitted,

5                                           KILPATRICK TOWNSEND & STOCKTON LLP

6                                           By: /s/ *Charles a. Pannell, III*
                                                 David E. Sipiora
7                                                Robert J. Artuz
                                                 Charles A. Pannell, III
8

9                                           Attorneys for Defendants
                                            LSI CORPORATION and
10                                          AGERE SYSTEMS LLC

11

12

13  65348835V.1

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28