Scott D. Baker (SBN 84923)
Email: sbaker@reedsmith.com
William R. Overend (SBN 180209)
Email: woverend@reedsmith.com
Adrian Sue Shin (SBN 256960)
Email: sshin@reedsmith.com
James A. Daire (SBN 239637)
Email: jdaire@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Telephone: (415) 543-8700
Facsimile: (415) 391-8269

Steven S. Baik (SBN 184622)
Email: sbaik@reedsmith.com
Carina M. Tan (SBN 185015)
carinatan@reedsmith.com
REED SMITH LLP
1510 Page Mill Road, Suite 110
Palo Alto, CA 94304
Tel: (650) 352-0500
Fax: (650) 352-0699

Attorneys for Plaintiff
REALTEK SEMICONDUCTOR
CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| REALTEK SEMICONDUCTOR CORPORATION,<br><br>   Plaintiff,<br><br>vs.<br><br>LSI CORPORATION and AGERE SYSTEMS LLC,<br><br>   Defendants. | Case No. 5:12-cv-03451 RMW<br><br>**PLAINTIFF REALTEK SEMICONDUCTOR CORPORATION'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: May 3, 2013<br>Time: 9:00 a.m.<br>Place: Courtroom 6, 4th Floor<br><br>Compl. Filed: June 29, 2012<br>Trial Date: November 4, 2013<br><br>Hon. Ronald M. Whyte |

**PUBLIC VERSION**

# TABLE OF CONTENTS

|   |   |   | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | LEGAL ARGUMENT | | 2 |
|   | A. | There Are No Issues Of Fact Relating To Partial Summary Judgment | 2 |
|   |   | 1. LSI's ITC Complaint Was Not "Reasonable" As A Matter Of Law | 3 |
|   |   | 2. Realtek Cannot Negotiate A RAND License That Is Only Offered Under Threat of Exclusion | 4 |
|   |   | 3. The Terms Of LSI's June 2012 Proposal Are Immaterial To This Motion | 5 |
|   | B. | Realtek Is Not Seeking Any Preliminary Relief, But It Has Satisfied The Requirements For Such Relief | 5 |
|   |   | 1. Realtek Timely Filed This Motion | 6 |
|   |   | 2. Realtek's Evidence Of Irreparable Harms Stands Unrefuted | 8 |
|   |   | 3. There Is Ample Authority For The Relief Realtek Seeks | 9 |
|   | C. | Defendants' Request For Rule 56(d) Relief Is Improper | 11 |
|   |   | 1. Defendants Mischaracterize Realtek's Motion To Support Their Claim That They Are Missing Essential Information | 12 |
|   |   | 2. Defendants Have Not Diligently Sought Discovery | 14 |
|   | D. | There Is No Legitimate Reason To Stay This Case | 15 |
| III. | CONCLUSION | | 15 |

<pre>
</pre>

# TABLE OF AUTHORITIES

Page(s)

*Cases*

*Apple, Inc. v. Motorola, Inc.*,
869 F.Supp.2d 901 (N.D. Ill. 2012) .................................................................................. 5, 11

*Beneficial Standard Life Insurance Co v. Madariaga*,
851 F.2d 271 (9th Cir. 1988) .................................................................................................. 14

*Cornwell v. Electra Central Credit Union*,
439 F.3d 1018 (9th Cir. 2006) ................................................................................................ 14

*Mandrigues v. World Sav., Inc.*,
2008 WL 5221074 (N.D. Cal. 2008) ........................................................................................ 7

*Microsoft Corp. v. Motorola, Inc.*,
2012 WL 5993202 (W.D. Wash. Nov. 30, 2012) ............................................................ 1, 5, 10

*Microsoft Corp. v. Motorola, Inc.*,
696 F.3d 872 (9th Cir. 2012) ............................................................................................. 1, 13

*Nicholas v. Wallenstein*,
266 F.3d 1083 (9th Cir. 2001) ................................................................................................ 12

*Winter v. Natural Resources Defense Council, Inc.*,
555 US 7 (2008) ................................................................................................................. 6, 8

## I. INTRODUCTION

Defendants' Opposition confirms there are no issues of material fact precluding partial summary judgment in this case. Despite making passing reference to "fact issues," Defendants fail to identify any such issues in their Opposition. Rather, Defendants effectively concede that despite their obligation to license their patents on RAND terms, they only sent Realtek a cease and desist letter before launching an ITC proceeding to exclude Realtek from the United States market. Defendants sent Realtek a licensing proposal only *after* having secured an unfair negotiating advantage through the ITC proceeding. Defendants' "sue first, negotiate later" approach to Realtek is a breach of their RAND commitments as a matter of law. As was recently ordered on summary judgment by another district court in the highly analogous *Microsoft* litigation, this Court should level the playing field and stop Defendant from pursuing any injunctive-type relief until a RAND trial can occur. *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872 (9th Cir. 2012) (affirming injunction against patentee with RAND-encumbered patents); *Microsoft Corp. v. Motorola, Inc.*, 2012 WL 5993202, *8 (W.D. Wash. Nov. 30, 2012) (enjoining patentee from seeking injunctive relief based on standard essential patents under after completion of RAND trial).

Unable to identify genuine disputes of material fact, Defendants distort the law and Realtek's positions in a fruitless effort to delay relief. First, Defendants argue that Realtek's motion is actually for preliminary injunctive relief and that Realtek has not met its burden. But there is nothing preliminary about the relief Realtek seeks. Realtek seeks partial summary judgment based on Defendants' undisputed pre-ITC complaint conduct, following the same procedure used and remedy granted in the *Microsoft* litigation. Contrary to Defendants' assertions, Realtek timely filed this motion after conducting discovery and after Defendants finally produced their corporate deposition witnesses. And even if the Court applied the standard for a preliminary injunction, Realtek has more than carried its burden for such relief, as it has shown not only a likelihood of success on its breach of contract claim, but one based on undisputed facts, as well as an imminent threat of irreparable harm based on unrefuted evidence of lost sales, reputation and market share.

Second, Defendants request that the Court continue this motion under Rule 56(d) pending additional depositions of Realtek corporate witnesses. But Defendants cannot meet the standard for

such relief. Defendants' request fundamentally fails because the allegedly "essential" discovery is *not* needed to resolve Realtek's motion. Rather, Realtek's motion turns on undisputed evidence that Defendants failed to make any licensing offer to Realtek for the products at issue before initiating the ITC proceeding and thereby breached their RAND obligations. Defendants' allegedly essential discovery relates to other issues for trial – such as the determination of the RAND royalty rate itself – and is not needed to resolve Realtek's motion. Defendants fail to mention that Realtek made a corporate witness available to Defendants on the essential issues *before* it filed this motion. In addition, Defendants were not diligent in seeking depositions from Realtek. In fact, Defendants waited for over six months into discovery before even asking Realtek for a first round of depositions. In short, Defendants have already collected or had the opportunity to collect the evidence essential to oppose this motion. Defendants' attempt to turn a lack of disputed facts into a lack of evidence should be rejected, and the Court should grant partial summary judgment.

## II.  LEGAL ARGUMENT

### A.  There Are No Issues Of Fact Relating To Partial Summary Judgment

Defendants do not contest that they made binding contractual commitments to the IEEE to grant licenses on RAND terms for the relevant IEEE 802.11 standards: 802.11b, 802.11g, and 802.11n. Defendants also do not contest that Realtek is a third party beneficiary of those contracts. Defendants also do not contest any of the material facts leading up to their breach. As such, Defendants effectively concede that: (i) they sent a few letters in 2002/2003, to which Realtek responded, concerning a potential license to patents alleged essential to the 802.11b standard only, but then stopped communicating with Realtek; (ii) they never made any effort to license Realtek as to patents alleged essential to the 802.11g and 802.11n standards prior to initiating the ITC proceeding; (iii) they sent Realtek a cease and desist letter in March 2012; and (iv) five days after they sent the cease and desist letter to Realtek (the same day Realtek received it), they filed a complaint with the ITC seeking an exclusion order against Realtek and others, asserting that Realtek infringes patents essential to the 802.11b, 802.11g, and 802.11n standards.

These are the only facts the Court needs to determine that Defendants breached their RAND obligations as a matter of law by failing to make *any* license proposal to Realtek before seeking an

order to exclude Realtek's accused products from the United States. As set forth below, although Defendants identify three supposed "fact issues" precluding partial summary judgment, none does.

### 1. LSI's ITC Complaint Was Not "Reasonable" As A Matter Of Law

First, Defendants try to fabricate a fact issue out of the "reasonableness" of their decision to sue in the ITC before contacting Realtek about a license. But Defendants do not cite *any* evidence to discredit the material facts upon which Realtek relies. Instead, Defendants argue over the *meaning* of the evidence. Defendants' attorney arguments do not create issues of fact relevant to this motion.

Moreover, Defendants' assertion that they "clearly" made a license available to Realtek in 2002/2003 is a red herring. As stated in Realtek's moving papers, Realtek assumes that the 2002 letter contained an offer. Defendants never made any license proposal for Realtek products compatible with the 802.11g or 802.11n standards until June 2012 – *after* having sought an exclusion order in the ITC. In fact, the IEEE 802.11g and 802.11n standards (not to mention the '867 patent) did not even exist when Agere sent Realtek the 2002 letter. Thus, as a matter of fact and law, the 2002 letter cannot be an offer to license the 802.11g and 802.11n standards at issue in the ITC proceeding and cannot discharge Defendants' RAND obligations as to products practicing those standards. Even the proposal as to 802.11b was abandoned by Defendants after the parties stopped communicating in 2003, and then formally revoked by LSI when it asserted in March 2012 that Realtek products infringe the alleged essential patents and demanded that Realtek cease and desist its alleged infringing activities.[1]

Faced with the undisputed evidence of their own letters, Defendants argue that they "never claimed they were not making licenses available relative to patents pertaining to other 802.11

---

[1] The Court should summarily reject Defendants' disingenuous argument that Realtek could have responded to LSI's March 2012 cease and desist letter by taking a license because LSI "never suggested that Realtek must [stop] by discontinuing sales." [Dkt. No. 77 at 21:19-20.] Plainly, no offer to continue sales was made, and the cease and desist letter is the opposite of an offer to license. Realtek obviously could not respond to a license offer that did not exist. Defendants' attorney argument hardly creates a genuine dispute of material fact with Defendants' own admissions and the undisputed evidence of the letters themselves.

amendments being developed." [Dkt. No. 77 at 21:10-11.] But the fact that Defendants never said they were *not* offering licenses on other 802.11 standards does not somehow mean that they were, in fact, doing so. The letters are not disputed, and they say nothing about a license to products compatible with other 802.11 standards, including the 802.11g and 802.11n standards that they accuse in their ITC complaint (and that did not even exist then). Defendants have introduced *zero evidence* that their letters meant something other than what they said, and their attorneys' musings about what the letters might have encompassed do not create a genuine dispute of material fact.

Defendants' remaining arguments relate to whether Defendants' conduct and license proposal was reasonable *after* it initiated the ITC proceeding. But Defendants' post-ITC conduct is not material to this motion. The legal issue here is whether Defendants' RAND obligations require them to make a license proposal *before* seeking to enjoin Realtek's standard-compatible products.

### 2. Realtek Cannot Negotiate A RAND License That Is Only Offered Under Threat of Exclusion

Second, Defendants claim that LSI has attempted to provide and discuss licensing terms with Realtek, but that Realtek acted in bad faith by choosing to "ignore" Agere in 2002/2003 and by not identifying "concerns" with LSI's June 20, 2012 proposal. But again, Defendants' argument is premised on a mischaracterization of the undisputed evidence.

As to the 2002/2003 correspondence, Realtek did not ignore Defendants. ███████████████████████████████████████████████ And Realtek did not hear any other license proposal from Defendants, whether binding or non-binding, until after it was facing exclusion from the United States market.

As for the June 2012 proposal, Realtek agrees the proposal included licensing terms.[2] But Defendants' June 2012 proposal (and thus Realtek's response) is *immaterial* to this motion. The

---

[2] As set forth in the Complaint, Realtek contends those terms are inherently unreasonable and a further breach of contract. However, this is an issue for trial, not this motion.

only relevant issue for this motion is whether Defendants provided the license terms *before* filing the ITC action, which they did not. This motion is based on the undisputed evidence that Defendants breached their RAND obligations because they (a) first demanded that Realtek cease and desist alleged infringement of RAND-encumbered patents, then (b) immediately file an ITC complaint to exclude Realtek, and (c) only then offered Realtek licensing terms to "start" a negotiation. Because Defendants' improper use of the ITC proceeding to gain an unfair bargaining advantage constitutes a breach of their RAND obligations, this Court should preclude Defendants from enforcing their patents against Realtek until after a full trial on the RAND issues. *See Microsoft*, 696 F.3d 872; *Microsoft*, 20012 WL 5993202; *Apple, Inc. v. Motorola, Inc.*, 869 F.Supp.2d 901 (N.D. Ill. 2012).

### 3. The Terms Of LSI's June 2012 Proposal Are Immaterial To This Motion

Third, Defendants attempt to argue the reasonableness of the terms in their June 2012 proposal. ██████████████████████████████████████████ But again, Defendants miss the point. The reasonableness of the June 2012 proposal is *not* at issue in this motion, but instead is an issue for trial.

This motion simply requests a determination that Defendants' use of the threat of an exclusion order as a means to achieve leverage before starting a license negotiation is in breach of their RAND obligations. ██████████████████████████████████████████ This is a breach of Defendants' RAND contract with the IEEE. The reasonableness of Defendants' subsequent offer, while relevant to whether a *subsequent* RAND breach also occurred, is not an issue to be resolved by this motion.

### B. Realtek Is Not Seeking Any Preliminary Relief, But It Has Satisfied The Requirements For Such Relief

Unable to dispute the material facts, Defendants instead try to re-cast Realtek's motion as one for preliminary injunctive relief. There is nothing preliminary, however, about the relief Realtek seeks. Realtek seeks the Court's partial judgment on its breach of contract claim against Defendants,

based on a full evidentiary record and without disputed material facts.

Moreover, even if the Court were to consider this a motion for preliminary injunctive relief instead for partial summary judgment, Realtek has more than satisfied the requirements.[3] Realtek has established that it is likely to succeed on the merits of its breach of contract case – Defendants concede their contractual obligations and the facts relating to their breach based on filing the ITC complaint are undisputed. Realtek has also presented detailed and *unrebutted* evidence of the likelihood of irreparable harm. And finally, the public interest favors Realtek because Defendants' ITC proceeding is a transparent attempt to extract "hold-up" value for its alleged standard essential patents instead of negotiating a license with Realtek on equal footing. [Dkt. No 68, Exh. A.]

### 1. Realtek Timely Filed This Motion

When properly considered as a motion for partial summary judgment, there is no question that Realtek's motion was timely filed. Realtek filed its motion well before the deadline for dispositive motions set by the Court, after it engaged in the discovery it needed to establish no triable issues of fact. Defendants did not make a witness on the following topics (among others) until over five months into fact discovery, on January 31, 2013: (i) the impact that a RAND obligation may have on obtaining an injunction; (ii) the facts and circumstances surrounding Defendants' knowledge and awareness of Realtek; (iii) statements, positions, assertions, and/or representations Defendants made regarding any limitations on remedies resulting from declaring a patent as essential to a standards setting organization; and (iv) Defendants' reasons for naming Realtek as a proposed Respondent in the ITC Proceeding. Realtek needed to take Defendants' deposition to confirm no

---

[3] The requirements for a preliminary injunction are: (i) a likelihood of success on the merits, (ii) a likelihood of irreparable harm in the absence of preliminary relief; (iii) that the balance of equities favors the moving party; and (iv) that an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.* (2008) 555 US 7, 20.

1  material fact issues, including with respect to Defendants' pre-ITC conduct and the impact of a
2  RAND obligation on possible injunctive relief. Realtek also gave Defendants a fair opportunity to
3  take any discovery they would need to oppose, including by making a witness available *before filing*
4  *the motion* on all essential issues and by producing relevant documents.

5        To the extent there was any delay in Realtek's motion for partial summary judgment,
6  Defendants are solely to blame for the delays that resulted from their obstructionist conduct. For
7  example, Realtek noticed the 30(b)(6) deposition topics necessary to confirm Defendants'
8  contractual obligations to the IEEE on August 24, 2012, the same day discovery began. [Supp.
9  Daire Decl. ¶¶2-3 , Exh. A.] Defendants, however, did not produce the witness until over five month
10 had passed. [*Id.* ¶¶2-3.] Realtek then filed this motion less than two months after Defendants made
11 their 30(b)(6) witnesses available.

12       Defendants also complain that the timing of the motion amounts to gamesmanship because
13 Realtek filed the motion shortly before the evidentiary hearing in the ITC proceeding began. But
14 Defendants ignore the fact that it was their own improper filing of the ITC proceeding (in violation
15 of their RAND obligations) that necessitated this action in the first place. Defendants – not Realtek
16 – voluntarily chose to initiate an ITC proceeding instead of trying to negotiate a license with Realtek
17 at arm's length, and then delayed noticed depositions for over five months. Defendants' complaint
18 about the consequences of its own conduct rings hollow.

19       Even if considered as a motion for preliminary injunctive relief – which it is not – Realtek's
20 motion was unquestionably timely. Again, Realtek filed the motion after it had been allowed to take
21 the necessary discovery (after delays by Defendants) and had provided a fair opportunity to
22 Defendants to take any discovery they would need for the motion. *See, e.g., Mandrigues v. World*
23 *Sav., Inc.* 2008 WL 5221074, *4 (N.D. Cal. 2008) (granting preliminary injunction after fourteen
24 month delay; "'reasonable delay caused by a plaintiff's good faith efforts to investigate' the case will
25 not preclude the required showing") (internal citations omitted). Moreover, Defendants cannot claim
26 any prejudice whatsoever as a result of Realtek's alleged delays in filing. Defendants' ITC
27 proceeding against the other Respondents would have continued without interruption, regardless of
28 when Realtek filed this motion.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

### 2. Realtek's Evidence Of Irreparable Harms Stands Unrefuted

Having unilaterally re-cast Realtek's motion as one for preliminary injunctive relief, Defendants then ignore the actual standard for such relief, effectively arguing that Realtek was required to prove actual irreparable harm instead of a mere *likelihood* of such harm. *See Winter*, 555 US at 20. Moreover, without submitting any contradictory evidence or creating *any* dispute whatsoever, Defendants attempt to dismiss the detailed evidence of irreparable harm submitted by Realtek in support of its motion.

Moreover, although only a likelihood of irreparable harm would be necessary for a preliminary injunction, Defendants' assertion that Realtek has identified no actual harm is simply wrong.

Defendants nevertheless argue that Realtek's irreparable harm is overstated because Realtek is afforded a "full and fair opportunity" to present RAND arguments in the ITC proceeding. Even if the ITC were to estop Defendants from seeking an exclusion order against Realtek, however, Realtek would still face the threat that Defendants would pursue an injunction in another forum without engaging in arm's length negotiation. Only this Court can grant Realtek the relief it seeks by way of

1  this motion – an order preventing Defendants from enforcing the allegedly essential patents against
2  Realtek in any forum – not only in the ITC proceeding.
3       Tellingly, Defendants submit *nothing* to the Court to rebut Realtek's evidence or to shift the
4  balance of hardships in favor of Defendants. Defendants have thus provided no evidence of harm to
5  Defendants (let alone irreparable harm) if their ability to enjoin Realtek is delayed pending a full-
6  blown RAND trial, whether in the form of a party declaration or otherwise.

12      There is no question that the threat of irreparable harm to Realtek is substantial and
13  far exceeds any perceived harm to Defendants.

### 3.   There Is Ample Authority For The Relief Realtek Seeks

Finally, Defendants are simply wrong that there is no authority for the relief Realtek seeks. Although Defendants attempt to avoid the reach of that authority by misstating the law and the facts, such authority compels the requested relief. As an initial matter, and contrary to Defendants' assertion, Realtek is not seeking an order prohibiting the ITC from doing anything. Defendants, over whom this Court obviously has jurisdiction, are the only subjects of Realtek's motion. If the Court were to grant Realtek's motion, Defendants would be prohibited from seeking or enforcing injunctive relief against Realtek regardless of forum, but only until a RAND trial is complete in this case. This is exactly the relief requested and granted in the *Microsoft* litigation. Moreover, this Court has already acknowledged that such relief is within its discretion. [Supp. Daire Decl., Exh. C at 6:13-25 and 37:12-15.]

Defendants attempt to limit the cited authorities to the proposition that district courts will not themselves enjoin alleged infringers of RAND-encumbered patents, but such a reading of the case law is incorrect and should be rejected. In *Microsoft*, Motorola obtained an injunction from a German court – no district court – based on Microsoft's alleged infringement of Motorola standard-

essential patents. *Microsoft*, 696 F.3d at 879. The German court enjoined Microsoft from "offering, marketing, using or importing or possessing" the accused products in Germany. *Id.* Meanwhile, the parties were also litigating Microsoft's RAND breach of contact case against Motorola, based on Motorola's alleged unreasonable royalty demands in view of its RAND obligations, in the District Court for the Western District of Washington. After the German court issued its ruling, the district court issued an anti-suit injunction (later affirmed) preventing Motorola from enforcing the injunctive relief it had obtained from the German court until the district court could determine whether Motorola could pursue an injunction given its RAND commitments. *Id.* at 880-881.

Then, after the district court had fully considered the appropriateness of Motorola's asserted injunctive relief remedy for RAND-encumbered patents, it granted Microsoft's motion for <u>partial summary judgment</u>, dissolved the anti-suit injunction, and replaced it with an order prohibiting Motorola from pursuing *any* injunctive relief against Microsoft with respect to Motorola's standard essential patents until after a RAND trial. *Microsoft Corp.*, 2012 WL 5993202, *8 ("this court's order not only dismisses injunctive relief for the Motorola Asserted Patents, but also for Motorola's entire [] standard essential patent portfolio… The anti-suit injunction is deemed no longer necessary in light of ***this order which enjoins Motorola from seeking injunctive relief against Microsoft with respect to Motorola's [] 802.11 standard essential patent portfolios.***") (emphasis added). In effect, the district court granted partial summary judgment to stop Motorola temporarily from pursuing any injunctive relief against Microsoft, regardless of forum, at least until the RAND trial could occur.[4]

This is precisely the relief that Realtek seeks from this Court. Defendants try to distinguish the *Microsoft* litigation because the district court there enjoined Motorola "without prejudice" to changed circumstances which might warrant injunctive relief. However, this is no different than what Realtek seeks from this Court. Defendants concede that the exclusion order they seek in the ITC is akin to an injunction. [Dkt. No. 37 ("Most of these issues are not before the ITC (which can only provide injunctive relief.")] Realtek seeks to stop Defendant from pursuing their exclusion

---

[4] As Defendants concede, they agreed with this result when they were the Respondent in an ITC proceeding. [Dkt. No. 77 at 16, fn. 6.] Defendants' only "explanation" of their hypocritical positions is that they did not prevail as a Respondent and are not formally estopped from talking out of both sides of their mouths. [*Id.*]

order/injunctive relief against Realtek until a RAND trial can occur – not from pursuing injunctive relief forever.

In addition, Defendants' assertion that Realtek is a willing licensee only if "dragged kicking and screaming" grossly distorts Realtek's actual position. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Realtek's responses reflect what this Court expressly stated in its ruling on Defendants' motion to dismiss: that Realtek can simultaneously pursue a determination of the RAND rate while denying infringement and asserting invalidity. [*See* Dkt. No. 41, at 7-8.] In stating that Realtek is a willing licensee, Realtek did not want to suggest that it was admitting Defendants' patents were valid or infringed, since it contests both issues vigorously, including in the ITC proceeding. Defendants' attempt to contort that response into some sort of declaration by Realtek that it would not abide by this Court's rulings is improper and should be rejected.

Defendants' assertion that Realtek's reservation of rights as a willing licensee is somehow akin to a refusal to license is also contrary to the U.S. Federal Trade Commission's ("FTC") approach to RAND/FRAND issues. For example, in the Decision and Order *In the Matter of Motorola Mobility LLC and Google Inc.*, FTC File No. 121 0120, the FTC determined that "challenging the validity, value, Infringement or Essentiality of an alleged infringing FRAND Patent does not constitute a statement that a Potential Licensee will not license such FRAND patent…" [Dkt. No. 68, Exh. C at 7.] Here, the mere fact that the PTO issued the '958 and '867 patents does not establish their validity, let alone their essentiality to the 802.11 standards or infringement. Realtek is a willing licensee, but it is still entitled to contest these issues.[5]

### C. Defendants' Request For Rule 56(d) Relief Is Improper

---

[5] Defendants also try to invent controversy by falsely suggesting that Realtek is requesting that the Court "ban" Defendant from ever seeking an injunction or an exclusion order. *See Apple, Inc. v. Motorola Mobility, Inc.*, Case No. 11-cv-178, D.N. 487 at 5 (W.D. Wisc. Nov. 2, 2012). There is no such "ban" here, as Realtek is not arguing that Defendants must relinquish all rights to an injunction or exclusion order. Rather, Realtek's point is that RAND commitments require Defendants to make a real effort to negotiate a RAND license *before* seeking an injunction or exclusion order, without the threat of such an order hanging over the head of the licensee.

The only "evidence" that Defendants actually submit with their Opposition is a Rule 56(d) Declaration in which they falsely claim that they need additional discovery from Realtek to oppose this motion and that they have diligently sought Realtek's deposition. To postpone summary judgment, Defendants must show: (i) facts indicating a likelihood that controverting evidence exists as to a material fact; (ii) specific reasons why such evidence was not discovered or obtained earlier in the proceedings; (iii) the steps or procedures by which the opposing party proposes to obtain such evidence within a reasonable time; and (iv) an explanation of how those facts will suffice to defeat the pending summary judgment motion. *See, e.g., Nicholas v. Wallenstein*, 266 F.3d 1083, 1088–89 (9th Cir. 2001) (district court did not abuse its discretion in denying motion for continuance where plaintiffs did not make clear what information was sought and how it would preclude summary judgment). Here, as discussed below, the Court should reject Defendants' request because they have neither identified information essential to their opposition nor diligently pursued discovery.

### 1. Defendants Mischaracterize Realtek's Motion To Support Their Claim That They Are Missing Essential Information

Defendants list virtually every fact issue in the case in an attempt to defeat Realtek's motion. But Defendants' list misses the mark, because Realtek's motion does not address every issue in the case. Realtek's motion is dispositive only as to Realtek's claim for breach of contract on the specific ground that Defendants filed the ITC proceeding without first satisfying their RAND obligations. Importantly, Realtek made a corporate witness available to Defendants on all of the essential issues to this motion *before* filing the motion, including on topics relating to: (i) Realtek's current and past membership status in the IEEE and Realtek's status as an intended and direct beneficiary of commitments made to the IEEE; (ii) Realtek's understanding of Defendants' alleged commitments to IEEE, including Realtek's understanding of Defendants' commitments to the IEEE to license the Patents on a RAND basis; and (iii) the harm to Realtek caused by Defendants' actions, including loss of sales, loss of market share, diminishment of brand loyalty, and damage to reputation. [Supp. Daire Decl. ¶ 5.]

By contrast, the list of "missing" discovery identified by Defendants is not essential to the resolution of Realtek's breach of contract claim relating to the pre-ITC conduct. Specifically, a

close examination of Defendants' eight alleged "essential facts" shows that they are not essential to resolution of the issues in this motion at all:

| Alleged "Essential Fact" Issue | Relationship to Motion for *Partial* Summary Judgment |
|---|---|
| Whether Realtek considered LSI's 2002/2003 licensing correspondence a RAND offer and, if so, why Realtek refused to accept it. | Realtek concedes for the purpose of the motion that the initial letter contained an offer. Whether it was RAND is not essential because the offer extended to only one accused 802.11 standard and was abandoned and revoked as a matter of law and by Defendants' own admission.[6] |
| Why Realtek failed to make any counteroffer(s) to LSI's initial 2002 offer in an attempt to negotiate a RAND license agreement. | Not essential. The offer did not extended to two accused 802.11 standards and was revoked as a matter of law and by Defendants' own admission. |
| Why Realtek never sought a RAND license from LSI after LSI submitted additional letters of assurance in 2003 and 2004. | Not essential. As the Court noted in its motion to dismiss ruling, even if Defendants are contractually bound to offer RAND licenses, "nothing in the record suggests a parallel contractual obligation by Realtek to accept a license, even on RAND terms."[7] |
| Whether and how Realtek relied on LSI's initial RAND offer or letters of assurance in deciding to manufacture different types of 802.11-compliant products. | Not essential. Realtek's reliance is relevant to its promissory estoppel claim, not its breach of contract claim. |
| Whether Realtek considered LSI's June 2012 licensing proposal a starting point for a RAND license negotiation and, if so, why Realtek refused to negotiate with LSI. | Not essential. Realtek's motion is based on the breach flowing from Defendants' pre-ITC proceeding conduct, not the later breaches based on Defendants' unreasonable license terms. |
| What Realtek considers to be an appropriate RAND license for use of LSI's patented technology. | Not essential. This is an issue for trial, not for partial summary judgment. |
| If LSI made what a court determined is a RAND licensing offer to Realtek, would Realtek even accept it. | Relevant, but Defendants have already discovered this fact through written discovery. |
| What does Realtek mean when it states it is a "willing licensee." | Relevant, but Defendants have already discovered this fact through written discovery. |

---

[6] ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
[7] Dkt. No. 41, at 7, *citing Microsoft Corp. v. Motorola, Inc.*, 696 F.3d at 883.
[8] *See* 67-18 at 4.

None of these asserted "essential facts" will suffice to defeat the pending partial summary judgment motion because they cannot alter the evidence of Defendants' pre-ITC proceeding conduct in any meaningful way. As such, the Court should reject Defendants' Rule 56(d) request.

Defendants' argument that they cannot oppose Realtek's motion without expert discovery suffers from the same defects. Although Defendants made another list of expert issues that might be helpful in this case, they relate to later determinations such as the actual RAND rate, not issues that are helpful to this motion. Realtek is not asking the Court to adjudicate each of Defendants' separate breaches of contract or to determine a RAND royalty rate or structure this juncture. Rather, the question for the Court is a pure legal one, based on Defendants' undisputed pre-ITC proceeding conduct and the contractual commitments in their letters of assurance to the IEEE. Expert testimony is not helpful, let alone essential, at this stage.

### 2. Defendants Have Not Diligently Sought Discovery

Even if some of the discovery were considered "essential" – which it is not – Defendants' Rule 56(d) request should be rejected because they have not diligently sought the identified depositions from Realtek despite many opportunities. *See Cornwell v. Electra Central Credit Union* (9th Cir. 2006) 439 F.3d 1018, 1027 (the court should deny 56(d) request if the party already had ample opportunity to conduct discovery); *Beneficial Standard Life Insurance Co v. Madariaga*, 851 F.2d 271, 277 (9th Cir. 1988) (six month discovery period allowed by district court was "more than sufficient" to allow plaintiffs to conduct discovery).

Defendants present the Court with a misleading summary of discovery, in which they "repeatedly pressed" Defendants for corporate depositions. In reality, Defendants waited over six months to ask for any depositions, before requesting depositions for the first time as Realtek was engaged in preparing its defenses to Defendants' ITC complaint. Specifically, discovery in this case has been ongoing since August 24, 2012, but Defendants waited until February 26, 2013 even to ask Realtek for depositions. [Supp. Daire Decl. ¶4, Exh. B.] Defendants halfheartedly suggest that Realtek caused this delay by producing documents on a rolling basis (just as Defendants themselves have done), but Defendants cannot point to a single instance where Defendants complained that

Realtek's document production slowed down depositions, because there is none. In fact, due to the time required to locate appropriate witnesses and make travel arrangements from Taiwan, Realtek repeatedly pressed Defendants to identify specific deposition topics and witnesses, beginning with the parties' September 28, 2012 Joint Case Management Statement and continuing into 2013. [*See* Dkt. No. 37 at 6:23-26; Supp. Daire Decl. ¶4, Exh. B ("we told you that to schedule depositions in the United States (or anywhere else for that matter) we needed names and deposition topics").] Defendants, however, deferred all deposition requests until less than five weeks before the April 2, 2013 evidentiary hearing in the ITC proceeding, when Realtek was otherwise engaged in preparing witnesses to testify in the ITC proceeding. Defendants had every opportunity to ask for depositions for more than six months before they finally bothered to ask, and they offer no excuse for this delay.

### D. There Is No Legitimate Reason To Stay This Case

Finally, the Court should decline Defendants tardy request to stay this case, which Defendants filed one month before the close of discovery. As stated in detail in Realtek's opposition to Defendants' separately filed motion to stay, Defendants ignore that the Court rejected their arguments earlier in the case, that the ITC proceeding is in no way duplicative of the relief Realtek seeks here, and that the balance of hardships strongly favors Realtek.

### III. CONCLUSION

Without legitimate basis to dispute the underlying facts or the merits of Realtek's motion, Defendants oppose using baseless procedural arguments based on fundamental misstatements of Realtek's positions. Defendants' "sue first, negotiate later" approach to Realtek should have real consequences, and Realtek requests that the Court grant its motion for partial summary judgment.

DATED: April 16, 2013.                Respectfully Submitted,

REED SMITH LLP

By        /s/ *James A. Daire*
          James A. Daire
          Attorney for Plaintiff
          REALTEK SEMICONDUCTOR CORPORATION