UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| REALTEK SEMICONDUCTOR CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>LSI CORPORATION and AGERE SYSTEMS LLC,<br><br>Defendants. | Case No. C-12-03451-RMW<br><br>**ORDER GRANTING PLAINTIFF REALTEK SEMICONDUCTOR CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANTS LSI CORPORATION AND AGERE SYSTEMS LLC'S MOTION TO STAY**<br><br>[Re Docket Nos. 67, 72] |

This dispute concerns whether a holder of patents essential to an industry standard ("standard-essential patents") may commence an action before the U.S. International Trade Commission ("ITC") pursuant to Section 337 of the Tariff Act of 1930 ("Section 337 action") seeking an exclusion order and injunctive relief against a party practicing that standard without violating its obligation to license the standard-essential patents on reasonable and non-discriminatory ("RAND") terms. Plaintiff Realtek Semiconductor Corporation ("Realtek"): (1) moves for summary judgment that defendants LSI Corporation ("LSI") and Agere Systems LLC ("Agere") (collectively, "defendants") breached their licensing obligation by failing to offer a license on RAND terms *before* seeking an exclusion order and injunctive relief in a Section 337 action; and (2) asks the court to issue an order barring defendants from enforcing, or seeking to

enforce, any exclusion order or injunction with respect to the alleged standard-essential patents pending a full "RAND trial" on the merits. Defendants cross-move to stay the case pending the resolution of the ITC action on the basis that Realtek is asserting the same arguments and facts before the ITC.

## I.   BACKGROUND

### A.   The Standard and the Parties

The standard at issue is the Institute of Electronics Engineers' ("IEEE") standard for wireless Internet connectivity known as "WLAN," "Wi-Fi" or "802.11" (the "802.11 standard").[1] Defendant Agere owns two patents, U.S. Patent Nos. 6,452,958 ("'958 patent") and 6,707,867 ("'867 patent") that it designated as essential to the 802.11 standard. Agere was incorporated in 2000 as a result of a reorganization of Lucent Technologies, Inc., in which Lucent spun off its optoelectric components and microelectronic business into Agere. Defendant LSI acquired Agere in 2001, and Agere is a now wholly owned subsidiary of LSI. Realtek is a Taiwanese integrated circuit designer and supplier, including integrated circuits for WLAN technology.

### B.   Defendants' Letters of Assurance and Licensing Proposals

Prior to the release of the 802.11 protocols at issue, in 2003 and 2004, Agere submitted Letters of Assurance, as required by the IEEE Standards Board Bylaws, stating that it "is prepared to grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to comply with the [Proposed] IEEE Standard." Daire Decl., Ex. D (Dkt. No. 67-6) (Letters of Assurance) (alteration in original). Agere's 2003 Letters of Assurance identified the '958 and '867 patents or applications leading up thereto as including "one or more claims that may be required to practice the draft standard for IEEE 802.11e [or 802.11g]." *Id.* The 2004 Letter of Assurance made a similar promise with respect to the IEEE 802.11n standard, but stated that the specific patents essential to that standard were "unknown." *Id.*

#### 1. 2002/2003 ccorrespondences regarding the IEEE 802.11b standard

On October 22, 2002, Agere first contacted Realtek suggesting that Realtek take a license to certain Agere patents, including the '958 patent, allegedly essential to the IEEE 802.11b standard.

---

[1] For a more detailed description of the history of the 802.11 standard, see the court's Order Granting in Part and Denying in Part Mot. to Dismiss at 2, Dkt. No. 41.

1   Daire Decl., Ex. F (Dkt. No. 67-8) (2002/2003 letters).[2]  Agere's letter stated that Agere was

2   "willing to offer Realtek a license to essential claims of Agere patents for implementing the 802.11b

3   standard at a royalty rate of 5.00% on all 802.11b products sold by Realtek."  *Id.*  Realtek replied to

4   the letter seeking more specific information regarding Agere's infringement contentions.  *Id.*

5   (January 24, 2003 letter).  Agere offered to set up a conference call with its patent counsel "to

6   highlight some of the particular claims of the previously referenced Agere patents that [it] believe[d]

7   [we]re relevant to the 802.11b standard."  *Id.* (February 5, 2003 letter).  Apparently having not heard

8   back, Agere again contacted Realtek a few weeks later to check on "the status of Realtek's analysis

9   and response to Agere's offer to license essential claims relating to the 802.11b standard."  *Id.*

10  (March 31, 2003 letter).  The correspondences between the parties apparently ceased after this last

11  communication, and Realtek never took a license.

### 2. 2012 correspondences

13     It was not until March 7, 2012 that a representative of LSI again contacted Realtek and

14  asserted that Realtek products, as incorporated into certain third-party devices, infringe, *inter alia*,

15  the '958 and '867 patents.  Daire Decl., Ex. I (Dkt. No. 67-11) (March 7, 2012 letter).  LSI's March

16  7, 2012 letter did not offer a license, but rather asked Realtek to immediately cease and desist from

17  the allegedly infringing activities.  *Id.*  Less than a week later, defendants filed a complaint with the

18  ITC naming Realtek and others as respondents and alleging, *inter alia*, that Realtek infringed the

19  '958 and '867 patents.  *Id.*, Ex. J (Dkt. No. 67-12) ("ITC Complaint").  Based on the ITC Complaint,

20  the ITC instituted Investigation No. 337-TA-837 on April 11, 2012.  *Id.*, Ex. K (Dkt. No. 67-13)

21  (ITC Notice).  By way of the ITC Section 337 action, defendants seek: (1) a "limited exclusion

22  order" excluding the accused products from entry into the United States; and (2) "permanent cease-

23  and-desist orders" barring Realtek from, *inter alia*, importing the accused products into the United

24  States.  ITC Complaint at 55-56.

25     A little over a month after LSI instigated the ITC proceeding, Realtek sent a letter to LSI

26  requesting that it make the '958 and '867 patents available for a RAND license pursuant to

---

[2] IEEE 802.11b is an earlier, 1999 amendment to the IEEE 802.11 standard.  Compl. ¶ 28.  IEEE 802.11e and 802.11g were 2005 and 2007 amendments to the standard (later consolidated into "IEEE 802.11-2007").  *Id.*  IEEE 802.11n is the 2009 amendment to the standard.  *Id.*

1   defendants' designation of these patents as essential to the IEEE 802.11 standard and their promise
2   in the Letters of Assurance to the IEEE to license on RAND terms.  Daire Decl., Ex. M (Dkt. No.
3   67-15) (May 24, 2012 "RAND" request).  In response, LSI sent a "RAND" license proposal to
4   Realtek.  Pannell Decl., Ex. 5 (Dkt. No. 78-5) (LSI's June 20, 2012 email to Realtek attaching
5   "RAND proposal for Realtek");  Daire Decl., Ex. N. (Dkt. No. 67-16) ("RAND" proposal) (under
6   seal).  Plaintiff contends that defendants' June 20, 2012 "RAND" proposal, the content of which is
7   under seal, is inherently unreasonable because it reflects the total value of the end product rather
8   than the value of the component parts that Realtek supplies, and would require Realtek to pay a
9   royalty that exceeds the selling price of Realtek's products.  Compl. ¶¶ 43, 44.

### C. Procedural History

On June 29, 2012, Realtek filed the instant action asserting that defendants breached their RAND licensing obligations by initiating the ITC Section 337 action naming Realtek as a respondent before approaching Realtek with a RAND licensing offer.  Specifically, Realtek asserted causes of action for: (1) breach of contract, (2) promissory estoppel, (3) declaratory judgment that defendants' must offer Realtek a RAND license or that the alleged "essential" patents are unenforceable as to Realtek, and (4) unfair competition under California Business and Professions Code § 17200.  In its order on defendants' motion to dismiss, the court sustained the first three causes of action and dismissed Realtek's unfair competition claim.  Order Granting in Part and Denying in Part Mot. to Dismiss ("MTD Order"), Dkt. No. 41.

Realtek now moves for partial summary judgment on the breach of contract claim and for an order enjoining defendants' from enforcing any exclusion order or injunctive relief with respect to the declared IEEE 802.11 standard-essential patents.  Defendants cross-move for an order staying this case pending the resolution of the ITC action.  For the purposes of these motions, the reasonableness of defendants' June 20, 2012 post-litigation license proposal is not at issue.  Rather the issue is limited to whether defendants' initiation of the ITC Section 337 action naming Realtek as a respondent *before* offering a RAND license to Realtek is a *per se* breach of defendants' obligation to license its declared IEEE 802.11 standard-essential patents on RAND terms.

## II.     PARTIES' ARGUMENTS

### A.  Realtek's Motion for Partial Summary Judgment for Breach of Contract

Realtek argues that partial summary judgment for breach of contract is appropriate because: (1) LSI entered into enforceable contracts with the IEEE to license its declared standard-essential patents on RAND terms; (2) Realtek is a third party beneficiary to the contract; (3) LSI breached the contract as a matter of law by failing to satisfy its RAND obligations *before* seeking an exclusion order and injunctive relief before the ITC; and (4) Realtek suffered damage as a result of the breach. According to Realtek, "[i]n the context of letters of assurance to standards setting bodies, numerous other courts have found viable breach of contract claims based on the promisor's obligation to offer RAND licenses." Pl.'s Mot. 12 (citing *Microsoft Corp. v. Motorola, Inc.*, 854 F. Supp. 2d 993, 1002 (W.D. Wash. 2012), *Apple Inc. v. Motorola Mobility, Inc.*, 2011 WL 7324582, at *8-10 (W.D. Wis. June 7, 2011), *Research in Motion Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788, 797 (N.D. Tex. 2008) and *ESS Tech, Inc. v. PC-Tel, Inc.*, 1999 WL 33520483, at *4 (N.D. Cal. Nov. 4, 1999)). Moreover, plaintiffs contend that, "for RAND-encumbered patents, injunctive relief such as an exclusion order may not be an appropriate remedy *at any time*." Pl.'s Mot. 14 (citing *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 885 (9th Cir. 2012), *Apple, Inc. v. Motorola, Inc.*, 869 F. Supp. 2d 901, 914 (N.D. Ill. 2012) and *Microsoft Corp. v. Motorola, Inc.*, 2012 WL 5993202, at *7-8 (W.D. Wash. Nov. 30, 2012)). Realtek argues that LSI's June 20, 2012 post-litigation "RAND" license proposal does not satisfy defendants' promise to the IEEE to license on RAND terms because "making a proposal while simultaneously seeking an exclusion order is inherently inconsistent with a patent holder's RAND obligations." Pl.'s Br. 16, Dkt. No. 67.

In light of its position, Realtek seeks an order enjoining defendants from enforcing any exclusion order or injunctive relief that the ITC may provide until *after* a RAND license offer has been determined by this court. Realtek asserts that an injunction is proper because: (1) it may permanently lose customers if defendants obtain an exclusion order before the RAND licensing issues are tried in this case; and (2) defendants have an adequate remedy without the threat of an exclusion order, namely a reasonable royalty.[3]

---

[3] Realtek asks the court to take judicial notice of three documents: (1) a January 8, 2013 Joint Policy Statement issued by the U.S. Department of Justice and the U.S. Patent & Trademark Office; (2) the

1 Defendants counter that Realtek's motion for partial summary judgment is premature because it still needs deposition testimony from Realtek's designated witnesses to properly respond to the motion. For example, defendants assert that they need information regarding, *inter alia*, Realtek's willingness to accept a RAND license and Realtek's existing licenses, specifically to any patents essential to the 802.11 standard. Defendants contend that, because it is premature, the court should deny or continue Realtek's motion for summary judgment under Federal Rule of Civil Procedure ("Rule") 56(d), and instead grant its motion to stay.

### B. Defendants' Motion to Stay

Defendants argue that because Realtek is asserting that defendants breached their RAND obligation as an affirmative defense in the ITC action, this court should exercise its discretion to stay this case pending the ITC's resolution of the issue. In support of their position, defendants argue that: (1) according to defendants' interpretation of Realtek's response to their request for admission ("RFA"), Realtek would not accept any RAND license determined by this court in any event until *after* the ITC investigation is complete and its noninfringement and invalidity contentions have been resolved in that forum; and (2) a stay of this action would cause no harm to Realtek because the only harm Realtek can point to is future harm *if* the ITC enters an exclusion order.

Realtek counters that a stay is inappropriate because the ITC proceeding involves entirely different claims and remedies. Realtek contends that the ITC proceeding is primarily dedicated to resolving infringement and invalidity issues, not the RAND licensing issue, whereas here, all three remaining claims relate specifically to defendants' alleged breach of their RAND obligations. Realtek also points to the fact that no damages are sought or available in the ITC proceeding (the sole relief to Realtek would be a finding of no violation of Section 337 and no exclusion order), and that Realtek does not actually seek a determination of the RAND rate itself in the ITC proceeding,

---

January 3, 2013 Opening Remarks of the U.S. Federal Trade Commission ("FTC") Chairman Jon Leibowits as Prepared for Delivery in *In the Matter of Motorola Mobility LLC and Google Inc.*, FTC File No. 121-0120; and (3) the January 3, 2012 Decision and Order of the FTC in *In the Matter of Motorola Mobility LLC and Google Inc.* The court considers these documents as part of the record but need not judicially notice these documents. *See, e.g.*, Jones v. Tozzi, 2006 WL 355175, *1 n.1 (E.D. Cal. Feb. 15 2006) ("It is not necessary for the court to take judicial notice of published judicial decisions or of documents that are part of the record of this case. Plaintiff may simply cite to these sources in his legal papers.").

which it does seek here. According to Realtek, although there is some overlap, the RAND-related documentary evidence in this case is substantially different and more extensive than that before the ITC, and the witnesses are not all the same. Finally, Realtek asserts that: (1) contrary to defendants' interpretation of its RFA response, it *is* a willing RAND licensee, as long as it can preserve its right to appeal and to maintain its invalidity and noninfringement defenses before the ITC; (2) it may simultaneously pursue a determination of the RAND rate in this court while denying infringement before the ITC, *see* MTD Order at 7; and (3) there is no reason for this court to wait before determining the RAND royalty rate.

### III. ANALYSIS

#### A. Breach of Contract

There is no dispute in this case that defendants entered into a binding contract with the IEEE to license their declared standard-essential patents, including the '958 and '867 patents, on RAND terms, and that Realtek is a third party beneficiary to that contract. The only question is whether defendants, by instigating an ITC Section 337 action naming Realtek as a respondent *prior to* offering a RAND license to Realtek, violated their contractual obligations to the IEEE and to Realtek to license their standard-essential patents under RAND terms. The court concludes that they did. This holding is consistent with the Ninth Circuit's recent decision in *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872 (9th Cir. 2012).

#### 1. *Microsoft v. Motorola*

In *Microsoft v. Motorola*, Motorola (the declared standard-essential patent holder) sent Microsoft an offer to license certain of its declared standard-essential patents. *Id.* at 877. Microsoft, believing that the offer was unreasonable, instigated a breach of contract action in the U.S. District Court for the Western District of Washington alleging that Microsoft's unreasonable offer was a *per se* breach of its RAND obligations. *Id.* at 878. Meanwhile, Motorola sought an injunction in Germany to bar Microsoft from selling the allegedly infringing products in Germany. *Id.* at 879. Microsoft then moved the district court for a temporary restraining order ("TRO") and preliminary injunction to enjoin Motorola from enforcing any injunctive relief it might receive from the German court until the district court ruled on the RAND issues. *Id.* at 880.

1   First, the district court held that Motorola entered into binding contractual commitments to the IEEE and International Telecommunications Union ("ITU") and to Microsoft (as a third-party beneficiary to the contract) to license its declared essential patents on RAND terms and must do so, but denied summary judgment on the issue of whether Motorola's allegedly unreasonable offer letters were a *per se* breach of its RAND obligations. *Id.* at 878-79. Second, the district court issued an anti-suit injunction barring Motorola from "'enforcing any injunctive relief it may receive in the German Action.'" *Id.* at 880 (citing the district court order of May 14, 2012, Case No. 10-1823, Dkt. No. 318 (W.D. Wash.)). The district court held that the anti-suit injunction would "'remain in effect until [the district court] is able to determine whether injunctive relief is an appropriate remedy for Motorola to seek with respect to Microsoft's alleged infringement of Motorola's standard-essential patents.'" *Id.*

Motorola appealed the anti-suit injunction to the Ninth Circuit, and the circuit court affirmed under an abuse of discretion standard. *Id.* at 885. In so affirming, the district court first upheld "[t]he district court's conclusions that Motorola's RAND declarations to the ITU created a contract enforceable by Microsoft as a third-party beneficiary . . . , and that this contract governs in some way what actions Motorola may take to enforce its ITU standard-essential patents (including the patents at issue in the German suit)" were not legally erroneous. *Id.* at 884. The circuit court explained that "Motorola, in its declaration to the ITU, promised to 'grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to use the patented material necessary' to practice the ITU standards" and "*implicit in such a sweeping promise is, at least arguably, a guarantee that the patent-holder will not take steps to keep would be users from using the patented material, such as seeking an injunction, but will instead proffer licenses consistent with the commitment made.*" *Id.* (emphasis added). The Ninth Circuit then affirmed the anti-suit injunction, holding: "[T]he district court did not abuse its discretion in determining that Microsoft's contract-based claims, including its claim that the RAND commitment precludes injunctive relief, would, if decided in favor of Microsoft, determine the propriety of the enforcement by Motorola of the injunctive relief obtained in Germany." *Id.* at 885. The circuit court further stated that "even if Motorola did not breach its contract, . . . *injunctive*

ORDER GRANTING PARTIAL MSJ AND
DENYING MOTION TO STAY                - 8 -
Case No. C-12-03451-RMW; ALG

*relief against infringement is arguably a remedy inconsistent with the licensing commitment.*" *Id.* (emphasis added).

In November 2012, the district court finally determined that any form of injunctive relief was improper because, in light of its commitment to license on F/RAND terms, "Motorola has not shown it has suffered an irreparable injury or that remedies available at law are inadequate." *Microsoft, Corp. v. Motorola, Inc.*, 2012 WL 5993202, at *7-8 (W.D. Wash. Nov. 30, 2012). This decision "enjoin[ed] Motorola from seeking injunctive relief against Microsoft with respect to Motorola's [relevant] standard essential patent portfolios," which included the German patents and obviated the need for the anti-suit injunction. *Id.* at 8.

### 2. Application

Similar to the situation in *Motorola*, here, defendants' are contractually obligated under their Letters of Assurance to the IEEE to license the '958 and '867 patents on RAND terms and Realtek is a third-party beneficiary to that contract (this is not disputed). Also, like in *Motorola*, the act of seeking injunctive relief (here, at the ITC *before* proposing a RAND license to Realtek) is inherently inconsistent and a breach of defendants' promise to license the patents on RAND terms. *See Microsoft*, 696 F.3d at 884-85; *Microsoft*, 2012 WL 5993202, at *7-8; *Apple, Inc. v. Motorola, Inc.*, 869 F. Supp. 2d 901, 913-14 (N.D. Ill. 2012) (Posner, J.) ("To begin with Motorola's injunction claim, I don't see how, given FRAND, I would be justified in enjoining Apple from infringing the [designated standard-essential patent] unless Apple refuses to pay a royalty that meets the FRAND requirement.").[4] Defendants' conduct in this case (bringing the ITC action *before* offering a license) is even more glaringly inconsistent with its RAND obligations than Motorola's request for an injunction at the district court *after* offering a license to Microsoft in the *Motorola* case. In promising to license on RAND terms, defendants here admit that monetary damages, namely a

---

[4] LSI actually took a position in ITC Investigation No. 337-TA-753 (initiated by Rambus, Inc.) that is consistent with *Realtek's* position here. In that action, Rambus made promises to European antitrust officials that it would accept royalties for the use of the patents at issue, but later sought an exclusion order naming LSI as a respondent. There, LSI argued that "injunctive relief is antithetical to [Rambus'] promises." Decl., Ex. Q at 132, Dkt. No. 67-19 (Respondents' Brief in ITC Inv. No. 337-TA-753). In view of LSI's binding promises to the IEEE to license the '958 and '867 patents on RAND terms, it is hypocritical for defendants to take the opposite position here—i.e., that injunctive relief is consistent with its patent right to exclude—now that it is on the other side of the coin as the declared standard-essential patent holder.

ORDER GRANTING PARTIAL MSJ AND
DENYING MOTION TO STAY
Case No. C-12-03451-RMW; ALG - 9 -

RAND royalty, would be adequate compensation for any injury it has suffered as a result of Realtek's allegedly infringing conduct. *See Microsoft*, 2012 WL 5993202, at *7-8. Moreover, Realtek is harmed as a result of the breach because the pending threat of an exclusion order gives defendants inherent bargaining power in any RAND licensing negotiation that may now take place. *See* U.S. Dept. of Justice and U.S. Patent & Trademark Office, Joint Policy Statement on Remedies for Standards-Essential Patents Subject to Voluntary F/RAND Commitments at 6 (Jan. 8 2013), Dkt. No. 68-1 ("Joint Policy Statement") ("A decision maker could conclude that the holder of a F/RAND-encumbered, standards-essential patent had attempted to use an exclusion order to pressure an implementer of a standard to accept more onerous licensing terms than the patent holder would be entitled to receive consistent with the F/RAND commitment—in essence concluding that the patent holder had sought to reclaim some of its enhanced market power . . . ."); *see also* Opening Remarks of Federal Trade Commission ("FTC") Chairman Jon Leibowits as Prepared for Delivery in *In the Matter of Motorola Mobility LLC, a limited liability company, and Google, Inc., a corporation* at 3, FTC File No. 121-0120 (Jan. 3, 2013) ("FTC's Opening Remarks"), Dkt. No. 68-2 ("[C]ommitments to make patents available on reasonable terms matter, and . . . companies cannot make those commitments when it suits them—that is, to have their patents included in a standard and then behave opportunistically later, once the standard is in place and those relying on it are vulnerable to extortion.").

While an injunction may be warranted where an accused infringer of a standard-essential patent outright *refuses* to accept a RAND license, *see Apple*, 869 F. Supp. 2d at 913-14; Joint Policy Statement at 7 ("For example, if a putative licensee refuses to pay what has been determined to be a F/RAND royalty, or refuses to engage in a negotiation to determine F/RAND terms, an exclusion order could be appropriate."), contrary to defendants' assertion here, there is no indication that Realtek is *not* willing to accept a RAND license. In fact, Realtek admits that it would accept a RAND license, as long as it may preserve its rights to appeal and to maintain its defenses at the ITC, the venue in which *defendants* elected to pursue their infringement claims. This court already determined that "Realtek can simultaneously pursue a determination of the RAND royalty rate while denying infringement or asserting invalidity, even though those issues may ultimately obviate the

need for a license" and that there is no reason the RAND royalty rate cannot be determined first. MTD Order at 7.

Defendants make no meaningful argument that they offered a RAND license to Realtek prior to naming Realtek in the ITC action. The 2002 and 2003 correspondences regarding the IEEE 802.11b standard do not amount to a RAND offer for a variety of reasons, including that: (1) the 802.11b standard is neither the standard at issue in the ITC litigation nor is it the subject of the RAND commitments in Agere's Letters of Assurance to the IEEE in the record before the court; (2) the parties ceased communications before any specific offer was ever actually made; and (3) Realtek continued to sell its Wi-Fi/802.11 component parts for almost nine years thereafter without hearing from defendants, implying that defendants were no longer seeking to license their declared standard-essential patents to Realtek. Moreover, LSI's March 7, 2012 letter did not offer a license, but rather asked Realtek to immediately cease and desist from the allegedly infringing activities. Instead of offering a license, or even waiting for a response, defendants filed the ITC action naming Realtek as a respondent less than a week later.

Accordingly, the court holds that defendants breached their contractual obligations to IEEE and to Realtek as a third-party beneficiary of that contract by seeking injunctive relief against Realtek before offering Realtek a license. The court's breach of contract holding is limited to the situation here, where defendants did not even attempt to offer a license, on "RAND" terms or otherwise, until after seeking injunctive relief. This conduct is a clear attempt to gain leverage in future licensing negotiations and is improper. The court denies defendants' motion for a Rule 56(d) stay or continuance because the additional discovery defendants seek is only pertinent to this court's *later* determination of an appropriate RAND rate, and does not affect the court's decision on the limited issue here of whether the initiation of the ITC action *before offering any license* was a breach of defendants' RAND obligations.

### 3. Realtek's request for a preliminary injunction

Realtek requests an order enjoining defendants' from enforcing any exclusion order or injunctive relief that they might receive until after the RAND issues have been determined in this

case.[5] Defendants argue that a preliminary injunction is improper because Realtek is not currently suffering irreparable harm, and can only point to speculative, future harm in the event that the ITC were to issue an exclusion order.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit has "also articulated an alternate formulation of the *Winter* test, under which 'serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest.'" *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (quoting *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1135 (9th Cir. 2011). The court applies the *Winter* test here because Realtek has already established a likelihood of success on the merits.

*a. Likelihood of success on the merits.*

The court has already determined that defendant's act of seeking an exclusion order or injunctive relief by the ITC is inconsistent with defendants' RAND obligations at this time. *See* Part III.A.2 *supra*. Unless and until Realtek were to refuse a license under the court's-determined RAND terms (which Realtek indicates it will *not* do), then any exclusion order or injunctive relief is inconsistent with defendants' RAND obligations.

*b. Likelihood of irreparable harm*

Realtek has shown that the threat of an exclusion order has harmed its reputation and poses an imminent threat of customer and revenue loss. The record shows that at least two of Realtek's major customers have contacted Realtek to express concerns about the pending ITC action. *See*

---

[5] Realtek characterizes this request as a motion for summary judgment—and not a request for a preliminary injunction— but because the relief that Realtek seeks is, in fact, a preliminary injunction, the court characterizes and analyzes Realtek's request as a request for a preliminary injunction. Contrary to defendants' assertion, the court considers Realtek's motion to be timely under the circumstances because Realtek brought the motion soon after one of its major customers contacted it with concerns about the ITC litigation and at the time that Realtek apparently faced the threat of irreparable harm.

ORDER GRANTING PARTIAL MSJ AND
DENYING MOTION TO STAY
Case No. C-12-03451-RMW; ALG - 12 -

1   Daire Decl. Ex. U, Dkt. No. 67-23 (Chiang Ho Tsai Deposition discussing communications with

2   customer); Tsai Decl., Ex. A (Dkt. No. 67-25) (letter from customer to Realtek expressing concern).

3   The risk that Realtek loses its customers to competitors who are not faced with the threat of an

4   exclusion order is more than speculative. Moreover, defendants do not dispute in their opposition

5   papers to Realtek's motion for partial summary judgment that Realtek *would* suffer irreparable harm

6   in the event that Realtek's products practicing the 802.11 standard were subject to an exclusion

7   order. *See* Defs.' Opp'n 10, Dkt. No. 77. Thus, Realtek has demonstrated a likelihood of irreparable

8   harm.

### c. Balancing of equities

10  The court concludes that the balancing of equities also weighs in favor of a preliminary

11  injunction. If Realtek's products practicing the 802.11 standard were to be excluded from the

12  United States, Realtek would either (1) lose its customers who sell, use, or import Realtek's

13  component parts into the United States, or (2) be forced to negotiate a license in the disadvantaged

14  position of having an exclusion order hanging over its head. *See Microsoft v. Motorola*, Case No.

15  10-1823, Dkt. No. 318 (W.D. Wisconsin), May 14, 2012 Order Granting an Anti-Suit Injunction at

16  24 (applying the same analysis under this factor). Defendants are not similarly prejudiced by a

17  preliminary injunction. After this court has determined defendants' RAND obligations and

18  defendants have complied with those obligations, defendants may then pursue any injunctive relief

19  that may become appropriate at that time. *See id.*

### d. Public interest

21  Finally, the preliminary injunction serves the public interest by "mak[ing] clear that

22  commitments to make patents available on reasonable terms matter." FTC's Opening Remarks at 3.

23  Similar to the anti-suit injunction in the *Microsoft v. Motorola* case, the preliminary injunction here

24  "ensur[es] standard essential patents are accessible to all comers under RAND terms" and "permit[s]

25  [Realtek's] customers, who rely on [Realtek's Wi-Fi component parts], to conduct business

26  uninterrupted." *Microsoft v. Motorola*, Case No. 10-1823, Dkt. No. 318 (W.D. Wisconsin), May

27  14, 2012 Order Granting an Anti-Suit Injunction at 24. The fact that *Microsoft v. Motorola* dealt

28  with an anti-suit injunction is immaterial because the promise to license on RAND terms implies a

ORDER GRANTING PARTIAL MSJ AND
DENYING MOTION TO STAY
Case No. C-12-03451-RMW; ALG                - 13 -

1  promise not to seek injunctive relief either domestically (as is the case here) or abroad (the case in

2  *Motorola*) until the standard essential patent holder first satisfies its RAND obligations.

3                                *e. Conclusion on preliminary injunction*

4          Based on the foregoing, the court GRANTS Realtek's motion for a preliminary injunction

5  enjoining defendants' from enforcing any exclusion order or injunctive relief by the ITC that they

6  might obtain against Realtek with respect to the '958 and '867 declared standard essential patents.[6]

7  The preliminary injunction shall remain in effect until this court determines defendant's RAND

8  obligations and defendants have complied therewith.

9          **B. Stay**

10         Defendants' primary argument in support of its motion to stay is that Realtek will not accept

11 a RAND license in any event until after the ITC litigation concludes. As previously discussed,

12 however, Realtek admits that it *is* a willing RAND licensee, as long as it can preserve its right to

13 appeal and to maintain its invalidity and noninfringement defenses before the ITC, and this court

14 has already held that Realtek may simultaneously pursue a determination of the RAND rate in this

15 court while denying infringement before the ITC. MTD Order at 7. The court also agrees with

16 Realtek that its breach of contract affirmative defense before the ITC is substantially different in

17 nature than its affirmative breach of contract claim before this court. While the ITC may consider

18 defendants' RAND obligations or violation thereof, it may do so only in the context of deciding

19 whether Realtek violated Section 337 and whether an exclusion order is thus proper. Realtek has

20 not asked the ITC to determine a RAND royalty rate, nor is the ITC independently compelled to do

21 so. Unlike the ITC, this court may also order any *monetary relief* that may be warranted in light of

22 its determination of the RAND issues. Defendants' conduct in bringing the Section 337 action,

23 which carries with it the threat of an exclusion order and thus increases defendants' bargaining

24 power in a licensing negotiation, necessitates a speedy resolution of the RAND issues by this court.

25 The court finds no just reason to delay this determination and denies defendants' motion to stay.

---

[6] This preliminary injunction will only go into effect in the event that the ITC grants an exclusion order or injunctive relief in favor of defendants. The ITC may, of course, still analyze Realtek's claims and defenses independently, and may find no Section 337 violation in any event. In that instance, this preliminary injunction will become moot.

ORDER GRANTING PARTIAL MSJ AND
DENYING MOTION TO STAY
Case No. C-12-03451-RMW; ALG     - 14 -

## IV. ORDER

For the foregoing reasons, the court: (1) GRANTS Realtek's partial motion for summary judgment that defendants breached their RAND licensing obligations to Realtek by failing to offer a license to the declared standard essential '958 and '867 patents before filing a Section 337 action at the ITC seeking an exclusion order and injunctive relief; (2) GRANTS Realtek's request for a preliminary injunction barring defendants from enforcing any exclusion order or injunctive relief by the ITC, which shall remain in effect until this court has determined defendants' RAND obligations and defendants have complied therewith; and (3) DENIES defendants' motion for a stay.

Dated: May 20, 2013



RONALD M. WHYTE
United States District Judge

ORDER GRANTING PARTIAL MSJ AND
DENYING MOTION TO STAY
Case No. C-12-03451-RMW; ALG

- 15 -