KILPATRICK TOWNSEND & STOCKTON LLP
DAVID E. SIPIORA (State Bar No. 124951)
1400 Wewatta Street, Suite 600
Denver, CO 80202-5556
Telephone:  (303) 571-4000
Facsimile:  (303) 571-4321
Email:    *dsipiora@kilpatricktownsend.com*

KILPATRICK TOWNSEND & STOCKTON LLP
ROBERT J. ARTUZ (State Bar No. 227789)
1080 Marsh Road
Menlo Park, CA 94025
Telephone:  (650) 326-2400
Facsimile:  (650) 326-2422
Email:    *rartuz@kilpatricktownsend.com*

KILPATRICK TOWNSEND & STOCKTON LLP
CHARLES A. PANNELL, III (*admitted pro hac vice*)
1100 Peachtree St., NE
Atlanta, GA 30309
Telephone:  (404) 745-2494
Facsimile:  (404) 541-4668
Email:    *cpannell@kilpatricktownsend.com*

Attorneys for Defendants
LSI CORPORATION and
AGERE SYSTEMS LLC

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| REALTEK SEMICONDUCTOR CORPORATION,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>LSI CORPORATION, et al.,<br><br>　　　　　Defendant. | Case No. C 12-03451 RMW<br><br>**DEFENDANTS LSI CORPORATION AND AGERE SYSTEMS LLC'S NOTICE OF MOTION AND MOTION FOR CERTIFICATION UNDER 28 U.S.C. § 1292(B)**<br><br>Date:　　　July 5, 2013<br>Time:　　　9:00 AM<br>Place:　　　Courtroom 6, 4th Floor<br><br>Judge:　　　Hon. Ronald M. Whyte |

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................i

TABLE OF AUTHORITIES .....................................................................................................ii

NOTICE OF MOTION AND MOTION .....................................................................................1

I.    INTRODUCTION ............................................................................................................2

II.    NATURE AND STAGE OF THE PROCEEDINGS .........................................................3

III.    SUMMARY OF THE ARGUMENT ...............................................................................4

IV.    STATEMENT OF FACTS ...............................................................................................5

    A.    The Parties...............................................................................................................5

    B.    LSI/'s Participation in WLAN Standard Setting and Commitments to the IEEE ...........................................................................................................5

    C.    Realtek's Infringement and Licensing Requests......................................................6

    D.    The May 20 Order....................................................................................................7

V.    ARGUMENT ...................................................................................................................8

    A.    Legal Standard .........................................................................................................8

    B.    The May 20 Order Involves a Controlling Question of Law .....................................9

    C.    The Issues Decided In the May 20 Order Are Subject To Substantial Grounds for a Difference of Opinion .......................................................................10

    D.    Interlocutory Review of the May 20 Order Will Materially Advance the Ultimate Termination of the Litigation................................................12

    E.    This Is an Exceptional Case That Warrants Immediate Review...............................13

VI.    CONCLUSION ...............................................................................................................13

DEFENDANTS LSI CORPORATION'S AND AGERE SYSTEMS LLC'S
NOTICE OF MOTION AND MOTION FOR CERTIFICATION UNDER 28 U.S.C. § 1292(B)
CASE NO. C 12-03451 RMW

i

1

# **TABLE OF AUTHORITIES**

2

3

CASES                                                                                                                              PAGE(S)

4

5

*Apple Inc. v. Motorola Mobility, Inc.*,
    No. 11-cv-178-bbc, 2012 WL 5416941 (W.D. Wisc. Oct. 29, 2012)................................. 3, 11

6

*Central Instit. for Experimental Animals v. Jackson Lab.*,
    No. C-08-05568 RMW, 2010 WL 1240760 (N.D. Cal. 2010) (Whyte, J.) ............................ 9

7

8

*In re Cement Antitrust Litig.*
    (MDL No. 296), 673 F.2d 1020 (9th Cir.1982) ............................................................ 2, 9, 10

9

10

*Kern–Tulare Water Dist. v. Bakersfield*,
    634 F.Supp. 656 (E.D. Cal. 1986), aff'd................................................................................. 10

11

*Microsoft Corp. v. Motorola, Inc.*,
    696 F.3d 872 (9th Cir. 2012)....................................................................................... 3, 8, 12

12

13

*Steering Committee v. United States*,
    6 F.3d 572 (1993)..................................................................................... 2, 9, 12, 13

14

15

*Universal Health Servs., Inc. v. Thompson*,
    363 F.3d 1013 (9th Cir. 2004)........................................................................................ 9

16

STATUTES

17

19 U.S.C. § 1337(d) .......................................................................................................... 11

18

28 U.S.C. § 1292(a)(1)............................................................................................ 2, 4, 8, 12

19

28 U.S.C. § 1292(b) ................................................................................................... passim

20

28 U.S.C. § 1295 .............................................................................................................. 8

21

28 U.S.C. § 1332 .............................................................................................................. 8

22

35 U.S.C. § 283 ............................................................................................................... 11

23

OTHER AUTHORITIES

24

Civil L.R. 7-11 .................................................................................................................. 1

25

Fed. R. Civ. P. 56(d) ....................................................................................................... 7

26

27

28

1

## NOTICE OF MOTION AND MOTION

2    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3    PLEASE TAKE NOTICE that on July 5, 2013, at 9:00 a.m. or as soon thereafter as the

4    matter may be heard before the Honorable Ronald M. Whyte of the above-entitled Court, located at

5    280 South 1st Street, San Jose, California, 95113, Defendants LSI Corporation and Agere Systems

6    LLC will and hereby do move the Court for an order certifying for interlocutory appeal, pursuant to

7    28 U.S.C. § 1292(b), the Court's Order Granting Plaintiff Realtek Semiconductor Corporation's

8    Motion for Partial Summary Judgment and Denying Defendants LSI Corporation and Agere

9    Systems LLC's Motion to Stay.  [Dkt. No. 102.]

10   Defendants have contemporaneously filed a miscellaneous administrative motion, pursuant

11   to Civil Rule 7-11, seeking an early hearing date of June 14, 2013 and setting an expedited briefing

12   schedule for this motion.

13   Defendants move to certify for interlocutory appeal the Court's ruling (a) that Defendants'

14   commitment to a standards-setting body to make available licenses to certain patents on reasonable

15   and non-discriminatory ("RAND") terms created a *per se* requirement to offer such RAND terms

16   prior to commencing any investigation before the U.S. International Trade Commission and (b) that

17   Defendants violated that *per se* requirement on the facts of this case.  This motion is based on this

18   Notice of Motion and Motion for Certification Under 28 U.S.C. § 1292(b), the accompanying points

19   and authorities, any declarations and exhibits in support hereof, any reply papers which may be

20   filed, and such other arguments and evidence as may be brought before the Court prior to or at the

21   hearing of this motion.

22

23

24

25

26

27

28

DEFENDANTS LSI CORPORATION'S AND AGERE SYSTEMS LLC'S
NOTICE OF MOTION AND MOTION FOR CERTIFICATION UNDER 28 U.S.C. § 1292(B)          1
CASE NO. C 12-03451 RMW

1    **I.    INTRODUCTION**

2           In its May 20, 2013 Order ("May 20 Order") [Dkt. No. 102], this Court granted a motion

3    filed by Plaintiff Realtek Semiconductor Corporation ("Realtek") for partial summary judgment.

4    Defendants and Counterclaim-Plaintiffs LSI Corporation and Agere Systems LLC (collectively,

5    "LSI") respectfully move for certification for interlocutory review under 28 U.S.C. § 1292(b) of the

6    May 20 Order, specifically the portion of the order granting partial summary judgment in favor of

7    Realtek.  Concurrent with this motion and pursuant to 28 U.S.C. § 1292(a)(1), LSI has filed a notice

8    of appeal as of right to the portion of the May 20 Order granting a preliminary injunction which

9    enjoins LSI from seeking to enforce any exclusionary order entered by the U.S. International Trade

10   Commission ("ITC") against Realtek.

11          Section 1292(b) permits certification of interlocutory orders for immediate appellate review

12   where, as here, a district court's ruling involves a controlling question of law as to which there are

13   substantial grounds for difference of opinion and resolution of which would materially advance

14   termination of the litigation.  *See In re Cement Antitrust Litig.* (MDL No. 296), 673 F.2d 1020, 1026

15   (9th Cir.1982).  One purpose of the interlocutory appeals statute is to avoid the expense and delay of

16   litigating remedy and damages issues when doing so would be unnecessary if the liability issue

17   should be reversed.  *Steering Committee v. United States*, 6 F.3d 572, 575 n. 1 (1993).  This is

18   precisely the situation in this case as a result of the May 20 Order.  Moreover, certification is

19   particularly appropriate here because the Ninth Circuit, in the context of hearing LSI's appeal as of

20   right of the grant of a preliminary injunction, necessarily will review the merits underlying this

21   Court's grant of partial summary judgment.  By certifying for interlocutory appeal the portion of the

22   May 20 Order granting partial summary judgment, this Court will allow the Ninth Circuit the

23   opportunity to review all issues raised in the May 20 Order and efficiently adjudicate those issues.

24          In the May 20 Order, the Court held that LSI *per se* violated its commitments to the Institute

25   of Electrical and Electronics Engineers ("IEEE") to offer licenses on its standard-essential patents

26   on reasonable and non-discriminatory ("RAND") terms allegedly by not offering Realtek a license

27   prior to initiating an action before the ITC.  The Court's finding of an implied contractual provision

28   created a *per se* duty, which allegedly was breached, yet no such requirement appears in any IEEE

1   rules or standards, and no court previously has held that such a duty exists.  In fact, this Court's

2   ruling is in direct conflict with a ruling in the Western District of Wisconsin finding that a patentee

3   does not give up the right to seek injunctive relief without an explicit and unmistakable commitment

4   to a standards setting body.  *See Apple Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178-bbc, 2012

5   WL 5416941, *15 (W.D. Wisc. Oct. 29, 2012) ("I conclude that any contract purportedly depriving

6   a patent owner of that right [to seek injunctive relief] should clearly do so…Therefore, I conclude

7   that Motorola did not breach its contracts simply by requesting an injunction and exclusionary order

8   in its patent infringement actions").  Given this uncertainty, the U.S. Court of Appeals for the Ninth

9   Circuit ("9th Circuit") recently stated that "[c]ourts and commentators are divided as to how, if at

10  all, RAND licensing disputes should be settled."  *Microsoft Corp. v. Motorola, Inc*., 696 F.3d 872,

11  877 (9th Cir. 2012).

12          Given the novelty of this question and the exceptional circumstances that exist here with an

13  already pending appeal to the 9th Circuit involving the same issue, LSI respectfully asks the Court to

14  certify its May 20 Order granting Realtek's partial summary judgment motion for interlocutory

15  review under § 1292(b).  In particular, LSI requests certification of the question of whether, on the

16  facts of this case, LSI *per se* violated its commitments to the IEEE when it filed the ITC complaint

17  against Realtek.  If granted, certification would allow LSI to seek to consolidate the appeal with

18  LSI's now pending appeal of the Court's grant of preliminary injunction.

19  **II.      NATURE AND STAGE OF THE PROCEEDINGS**

20          On March 7, 2012, LSI sent a cease and desist letter to Realtek asserting that Realtek's

21  products, as incorporated into third-party devices, infringe LSI's patents, including U.S. Patent Nos.

22  6,452,958 (the "'958 patent") and 6,707,867 (the "'867 patent").  [Dkt. No. 1.]  On March 12, 2012,

23  LSI filed its complaint in the ITC alleging that Realtek and others infringe, *inter alia*, the '958 and

24  '867 patents, and seeking a limited exclusion order barring Realtek from importing the infringing

25  products.  [*Id.*]  On May 24, 2012, Realtek sent a letter to LSI requesting a proposal from LSI to

26  license the '958 and '867 patents on RAND terms.  [*Id.*]  On June 20, 2012, LSI sent its proposal to

27  Realtek.  Nine days later, on June 29, 2012, Realtek filed this action alleging that LSI breached its

28  RAND licensing obligations by initiating the ITC action.  [*Id.*]  Specifically, Realtek asserted causes

1   of action for: (1) breach of contract, (2) promissory estoppel, (3) declaratory judgment that LSI

2   must offer a RAND license to Realtek, and (4) unfair competition.[1] [*Id.*]

3       On October 24, 2012, LSI answered denying Realtek's allegations and counterclaiming for

4   declaratory judgment that (1) LSI complied with any RAND commitments by way of at least the

5   June 20, 2012 proposal, and (2) Realtek repudiated and/or rejected the benefits of LSI's RAND

6   commitments by, among other things, failing to engage in good faith negotiations and discussions

7   with LSI. [Dkt. No. 44.] Realtek later moved for summary judgment on its breach of contract

8   claims and for an order enjoining LSI from enforcing any exclusion order or injunctive relief with

9   respect to IEEE 802.11 standard-essential patents. [Dkt. No. 67.] LSI cross-moved to stay the

10  proceedings pending resolution of the ITC action. [Dkt. No. 72.] Ruling on the motions, the Court

11  issued the May 20 Order, granting partial summary judgment in favor of Realtek, denying LSI's

12  cross-motion to stay the proceedings, and entering an order that enjoins LSI from enforcing any

13  exclusion order ultimately issued by the ITC against Realtek.

14      On May 24, 2013, LSI timely filed its Notice of Appeal of the Court's grant of preliminary

15  injunction, pursuant to 28 U.S.C. § 1292(a)(1). [Dkt. No. 108.]

16  **III.    SUMMARY OF THE ARGUMENT**

17      The Court's May 20 Order involves a controlling question of law in which there exists

18  substantial grounds for difference of opinion, and an interlocutory appeal will materially advance

19  the ultimate termination of the litigation. Additionally, granting immediate interlocutory review

20  will achieve the goal of avoiding the expense and delay of litigating the damages issue when doing

21  so would be unnecessary if the liability issue should be reversed. As a result, the issues decided in

22  the Court's May 20 Order present exceptional circumstances that justify a departure from the

23  general policy of postponing review until after the entry of final judgment.

24

25

26

27

28  _____
    [1] The fourth and final claim of unfair competition later was dismissed by this Court. [Dkt. No. 41.]

1    **IV.    STATEMENT OF FACTS**

2         **A.    The Parties**

3         LSI is a United States company based in San Jose, California.  [Dkt. No. 1 ¶ 10; Dkt. No. 44

4    ¶ 10.]  Agere Systems LLC is a wholly-owned subsidiary of LSI that resulted from a reorganization

5    of Lucent Technologies, Inc. in 2000 and is based in Allentown, Pennsylvania. [Dkt. No. 1 ¶¶ 10-

6    13; Dkt. No. 44 ¶¶ 10-13.]  Over the years, LSI through its subsidiaries and predecessor companies,

7    such as Lucent Technologies, Inc. and Agere, has developed and maintained a patent portfolio in

8    the field of wireless computer networking.  [Dkt. No. 1 ¶¶ 29-36; Dkt. No. 44 ¶¶ 29-36.]  LSI has

9    also participated over the years in the development of IEEE's 802.11 standards for wireless

10   networking ("WLAN Standards").  [Dkt. No. 1 ¶ 34 & Exh. A.]

11        Plaintiff Realtek is a Taiwanese company that supplies chips for wireless communication

12   products that comply with the WLAN standards set forth by the IEEE.  [*Id.* ¶¶ 8, 76.]  Plaintiff sells

13   its products to other companies that incorporate the chips into products that are imported into the

14   U.S.  [*Id.* ¶ 8-9, 76; Dkt. No. 78, (Declaration of Charles A. Pannell in Support of LSI's Response to

15   Realtek's Motion for Summary Judgment ("Pannell Decl.") Exh. 1 Deposition of Chiang-Ho Tsai

16   pp. 79-80.]

17        **B.    LSI/'s Participation in WLAN Standard Setting and Commitments to the IEEE**

18        This action relates to commitments made by Agere to the IEEE during its standards setting

19   process for the WLAN Standards.  As part of the WLAN standard setting process, Agere stated with

20   regard to both the '958 and '867 patents that it was "prepared to grant a license to an unrestricted

21   number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and

22   conditions to comply with the [Proposed] IEEE Standard" and that it would "make available on a

23   non-exclusive basis, under reasonable terms and conditions that are non-discriminatory, licenses to

24   patents and patent applications."  [Dkt. No. 1, Exh. A (alteration in original).]  Neither LSI nor

25   Agere made any commitment to the IEEE that it would relinquish its rights to request an injunction

26   or ITC exclusion order.  [*Id.*]

27

28

**C.     Realtek's Infringement and Licensing Requests**

Realtek has been aware of LSI's patent portfolio since at least 2002 when LSI's predecessor, Agere, wrote to Realtek offering a license to Agere's wireless portfolio and specifically identified the '958 patent as representative of that portfolio. [Realtek Response to LSI Interrogatory Nos. 8 & 18 (Pannell Decl., Exh. 2); Dkt. No. 67, Declaration of James Daire in Support of Realtek Motion for Partial Summary Judgment ("Daire Decl."), Exh. F (2002/2003 Letters).] On January 24, 2003, Realtek responded by letter stating that it would study the matter and "contact [Agere] upon completion of [Realtek's] studies." [Daire Decl., Exh. F (2002/2003 Letters).] Realtek also suggested that "if it was convenient for [Agere], please provide us with a detailed analysis between our products and those essential claims of Agere patents." [*Id.*] On February 5, 2003, Agere responded by letter and offered to arrange a conference call with LSI patent counsel to discuss relevant claims and assist in Realtek's analysis. [*Id.*] Realtek never responded. On March 31, 2003, Agere sent another letter inquiring about Realtek's analysis [*Id.*], and again received no response. As noted in Realtek's Motion for Partial Summary Judgment, Realtek admits that "2002 Letter contained an offer." [Dkt. No. 67, at 6 n. 2.]

In the years following the 2003 correspondence, Realtek claims that it relied upon LSI's commitments to the IEEE that required it to license its standards essential patents on RAND terms, including its Letters of Assurance that specifically identify the '958 and '867 patents. [Dkt. No. 1 ¶¶ 37-39 & Exh. A.] Despite knowing Agere and LSI's willingness to make such RAND licenses available, Realtek ignored LSI's patent rights. [Realtek Response to LSI Interrogatory Nos. 8 & 18 (Pannell Decl., Exh. 2); Realtek's Response to the Amended ITC Complaint, ITC Inv. No. 337-TA-837, p. 25 (ITC May 18, 2012) ("Realtek ITC Resp.") (Pannell Decl., Exh. 4).] On March 7, 2012, LSI sent a letter asking Realtek to cease its infringement. [Daire Decl., Exh. I (3/7/12 letter).] On March 12, 2012, LSI filed a complaint with the ITC regarding infringement by Realtek and its customer, Funai, among others. [Daire Decl., Exh. J (ITC Complaint).]

On May 24, 2012, Realtek's counsel wrote to LSI "[i]n response to LSI's letter of March 7, 2012," and requested that LSI provide its RAND terms for the "patents Agere identified as essential to the IEEE 802.11g" standard. [Daire Decl., Exh. M (5/24/12 letter).] On June 20, 2012, LSI

1    provided Realtek with a summary of its licensing program which ended with a license structure for

2    LSI's entire WLAN portfolio. On June 29, 2012, without responding to LSI's initial proposal,

3    Realtek filed this suit arguing that the ITC Investigation and the June 20, 2012 proposal violated its

4    RAND obligations and were inherently unreasonable. [Dkt. No. 1 ¶¶ 43-45.]

5         **D.    The May 20 Order**

6         In the May 20 Order, the Court held that "[LSI] breached their contractual obligations to

7    IEEE and to Realtek as a third-party beneficiary of that contract by seeking injunctive relief against

8    Realtek before offering Realtek a license." [Dkt. No. 102, at 11.] The Court's "breach of contract

9    holding is limited to the situation here, where defendants did not even attempt to offer a license, on

10   'RAND' terms or otherwise, until after seeking injunctive relief." [*Id.*] The Court also denied

11   LSI's cross-motion to stay and denied their request to delay ruling on the motion for partial

12   summary judgment, pursuant to Fed. R. Civ. P. 56(d), until additional discovery, including expert

13   discovery, was complete. [*Id.* at 11, 14.] Finally, the Court granted "Realtek's request for a

14   preliminary injunction barring [LSI] from enforcing any exclusion order or injunctive relief by the

15   ITC, which shall remain in effect until this court has determined [LSI's] RAND obligations and

16   [LSI] have complied therewith." [*Id.* at 15.]

17        In challenging the reasonableness of Realtek's conduct, LSI had pointed to Realtek's failure

18   to negotiate and its prior unwillingness to commit to accepting any RAND determination made by

19   this Court. Only through pointed discovery requests was LSI able to force Realtek to admit that it

20   only would accept this Court's ruling on what constitute RAND terms AFTER the complete and

21   final adjudication of all of Realtek's theories and defenses, including through appeal.[2] Despite this

22   record, the Court asserted that "there is no indication that Realtek is *not* willing to accept a RAND

23   license," and further asserting that "Realtek admits that it would accept a RAND license, as long as

24   it may preserve its right to appeal and maintain its defenses at the ITC…." [*Id.*] The Court then

25

26   _____

     [2] In a recent discovery response, Realtek stated: "Realtek admits that it is a willing licensee of the '958 and '867 patents
27   assuming such a license is declared to comply with the terms and conditions of Defendants' binding commitments to
     offer a RAND license, subject to all rights of appeal and to Realtek's defenses, assertions and positions in U.S.
28   International Trade Commission Investigation No. 337-TA-837." [Realtek's Amended Response to LSI's Request for
     Admission No. 1 (Pannell Decl., Exh. 7).]

     DEFENDANTS LSI CORPORATION'S AND AGERE SYSTEMS LLC'S
     NOTICE OF MOTION AND MOTION FOR CERTIFICATION UNDER 28 U.S.C. § 1292(B)          7
     CASE NO. C 12-03451 RMW

1  held that the 2002 and 2003 correspondence between Realtek and LSI could not amount to a RAND

2  offer as:

3      "(1) the 802.11b standard is neither the standard at issue in the ITC litigation nor
4      is it the subject of the RAND commitments in Agere's Letters of Assurance to the
       IEEE in the record before the court; (2) the parties ceased communications before
5      any specific offer was ever actually made; and (3) Realtek continued to sell its
       Wi-Fi/802.11 component parts for almost nine years thereafter without hearing
6      from defendants, implying that defendants were no longer seeking to license their
       declared standard essential patents to Realtek."
7

8  [*Id.* at 11.]  Finally, the Court noted that for the purposes of the Motion for Partial Summary

9  Judgment, the reasonableness of LSI's June 20, 2012 post-litigation license proposal is not at issue.

10 [Dkt. No. 102, at 11.]

11     With respect to the Court's grant of preliminary injunctive relief in favor of Realtek, LSI has

12 filed notice of its appeal as of right, pursuant to 28 U.S.C. § 1292(a)(1), and intends to pursue this

13 appeal with the Ninth Circuit.  [Dkt. No. 108.]

14 **V.    ARGUMENT**

15     LSI requests that the Court grant LSI's motion for certification pursuant to 28 U.S.C.

16 § 1292(b) because substantial grounds for a difference of opinion exist as to a controlling issue of

17 law – namely, that LSI breached an implied contractual provision with IEEE by pursuing injunctive

18 relief allegedly before making a RAND proposal to Realtek.  As LSI concurrently has appealed as

19 of right the Court's grant of preliminary injunctive relief, certifying an interlocutory appeal as to the

20 Court's grant of partial summary judgment would allow the Ninth Circuit[3] to review in its entirety

21 the Court's May 20 Order and would materially advance the termination of this litigation.

22     **A.    Legal Standard**

23     Title 28 U.S.C. § 1292(b), in relevant part, states:

24     When a district judge, in making in a civil action an order not otherwise
       appealable under this section, shall be of the opinion that such order involves a
25

26 [3] The Ninth Circuit, not the Federal Circuit, has jurisdiction over the issues decided in the May 20 Order.  Causes of action based on breach of contract do not arise under the patent laws.  *See Microsoft Corp. v. Motorola, Inc.*, 696 F.3d
27 872, 881 (9th Cir. 2012) ("The Federal Circuit has jurisdiction over an interlocutory appeal only if it would have jurisdiction over a final appeal in the case under 28 U.S.C. § 1295. Microsoft's complaint sounds in contract and invokes the district court's diversity jurisdiction under 28 U.S.C. § 1332. We therefore have jurisdiction over this
28 interlocutory appeal under 28 U.S.C. § 1292(a)(1)").

1
2
3
4

controlling question of law as to which there is substantial ground for difference
of opinion and that an immediate appeal from the order may materially advance
the ultimate termination of the litigation, he shall so state in writing in such order.
The Court of Appeals which would have jurisdiction of an appeal of such action
may thereupon, in its discretion, permit an appeal to be taken from such order, if
application is made to it within ten days after the entry of the order…

5

Thus, an interlocutory appeal is permitted when: (1) the order involves a controlling

6 question of law; (2) there is a substantial ground for difference of opinion regarding its correctness;

7 and (3) an immediate appeal may materially advance the ultimate termination of the litigation. *See*

8 *In re Cement Antitrust Litig.*, 673 F.2d at 1026. The exercise of discretion to allow appeal of

9 interlocutory orders should be informed by the practical application of the policies informing

10 interlocutory appeals, including the avoidance of the expense and delay of litigating the damages

11 issue when doing so would be unnecessary if the liability issue should be reversed. *See Steering*

12 *Committee*, 6 F.3d at 575 n. 1 (1993). Moreover, the party seeking leave to appeal an interlocutory

13 order must establish that "exceptional situations" justify a departure from the basic policy of

14 postponing review until after the entry of final judgment. *Central Instit. for Experimental Animals*

15 *v. Jackson Lab.,* No. C-08-05568 RMW, 2010 WL 1240760, * 6 (N.D. Cal. 2010) (Whyte, J.).

16

As explained below, the May 20 Order and the present circumstances warrant this Court's

17 certification of the relevant portion of the order for interlocutory review.

18

**B.       The May 20 Order Involves a Controlling Question of Law**

19

Appeal of an award of summary judgment is entitled to *de novo* review, and is reversible if

20 found to be erroneous. *See Universal Health Servs., Inc. v. Thompson*, 363 F.3d 1013, 1019 (9th

21 Cir. 2004). And a question of law is controlling if its resolution by the court of appeals would

22 materially affect the final disposition of the case in the district court. *In Re Cement Litigation*, 673

23 F.2d at 1026. A controlling question of law certainly exists in this matter.

24

In the May 20 Order, the Court held as a matter of law that LSI, as the holder of patents

25 subject to letters of assurance to a standards setting body, was subject to an unwritten, implied

26 contractual provision that prevents LSI from seeking injunctive relief with respect to those patents

27 prior to making a RAND proposal to a third-party potential licensee. In reaching its decision, the

28 Court held that the Letters of Assurance between LSI and the IEEE created a contract in which LSI

1   surrendered its right to seek injunctive relief against any party before making an offer of a RAND

2   license.  [Dkt. No. 102, at 9.]  Specifically, the Court stated, "the act of seeking relief (here, at the

3   ITC before proposing a RAND license to Realtek) is inherently inconsistent and a breach of [LSI's]

4   promise to license the patents on RAND terms."  [*Id.*]  Yet, there is no explicit relinquishment by

5   LSI of its right to seek injunctive relief in the Letters of Assurance to the IEEE, nor is there such

6   surrendering of patent rights set forth in any published guidelines from the IEEE.  Nonetheless, the

7   entire basis for the Court's grant of partial summary judgment on Realtek's breach of contract claim

8   appears to arise from the Court finding an absolute duty to offer a RAND license before seeking to

9   commence an investigation in the ITC.  This is a controlling question of law.

10          Moreover, and as discussed below, this controlling question of law forecloses LSI's

11   defenses and counterclaims in this matter – including, but not limited the impact of the October

12   2002 offer, whether the June 20, 2012 proposal substantially discharged LSI's RAND obligations,

13   and whether Realtek's lack of negotiation with LSI in both 2002/2003 and presently proves that

14   Realtek has repudiated or rejected the benefits of LSI's commitments.  All of these issues are

15   resolved or mooted by the Court's summary adjudication ruling.  Hence, there is no doubt that the

16   Court's legal finding of a breach by LSI of an unstated, implied contractual provision presents a

17   controlling question of law in this matter and, in combination with the substantial grounds for a

18   difference of opinion outlined below, warrants interlocutory review.

19          **C.      The Issues Decided In the May 20 Order Are Subject To Substantial Grounds**

20                 **for a Difference of Opinion**

21          To be entitled to interlocutory review of an issue, there must be substantial grounds for

22   difference of opinion on that issue.  "A party's strong disagreement with the court's ruling is not

23   sufficient for there to be a 'substantial ground for difference;' the proponent of an appeal must make

24   some greater showing."  *Kern–Tulare Water Dist. v. Bakersfield*, 634 F.Supp. 656, 667 (E.D. Cal.

25   1986), aff'd in part and rev'd in part on other grounds, 828 F.2d 514 (9th Cir.1987).

26          The Court's finding of an implied surrendering of the right to seek injunctive relief before

27   fully discharging a RAND obligation is subject to substantial grounds for a difference of opinion.

28   As the Court has found that LSI's assurances to the IEEE formed a contract, the language of the

contract should control, and at least one court, looking at the same language, found that there was no breach of contract when the party making a RAND commitment to IEEE sough injunctive relief. Specifically, late last year, the Western District of Wisconsin, in a RAND case similar to the present dispute, found that any relinquishment of a federal patent right (*e.g*., the right to seek an injunction) by contract must be made clear and unambiguous. *See Apple, Inc.*, 2012 WL 5416941, *14-15. The court found that "[t]here is no language in either the ETSI or IEEE contracts suggesting that Motorola and the standards-setting organizations intended or agreed to prohibit Motorola from seeking injunctive relief. In fact, both policies are silent on the question of injunctive relief." *Id*. Judge Barbara Crabb, looking at the same IEEE assurances as those made by LSI in the present action, concluded that such assurances are unclear and that, "in light of the fact that patent owners generally have the right to seek injunctive relief both in district courts, 35 U.S.C. § 283, and in the International Trade Commission, 19 U.S.C. § 1337(d)," "any contract purportedly depriving a patent owner of that right should clearly do so." *Id.* As a result, the court found that "Motorola did not breach its contracts simply by requesting an injunction and an exclusionary order in its infringement actions." *Id.*

As in the foregoing W.D. Wisconsin *Apple* case, the language of LSI's Letters of Assurance to the IEEE do not include any explicit provision that LSI relinquishes its right to sue for injunctive relief, and certainly contain no language that LSI breaches a contract by filing such a suit before making a RAND proposal. In the letters, Agere stated with regard to both the '958 and '867 patents that it was "prepared to grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to comply with the [Proposed] IEEE Standard" and that it would "make available on a non-exclusive basis, under reasonable terms and conditions that are non-discriminatory, licenses to patents and patent applications." [Dkt. No. 1, Exh. A (alteration in original).] Neither LSI nor Agere made any commitment to the IEEE that it would relinquish its rights to request an injunction or ITC exclusion order. [*Id.*] As the Court acknowledged in the May 20 Order, finding such a provision requires reading an implied contractual agreement into the commitments made by LSI and the IEEE. If the Court's May 20

DEFENDANTS LSI CORPORATION'S AND AGERE SYSTEMS LLC'S
NOTICE OF MOTION AND MOTION FOR CERTIFICATION UNDER 28 U.S.C. § 1292(B)
CASE NO. C 12-03451 RMW

11

1    Order is erroneous as to this point, then LSI could not have committed a *per se* breach when it filed

2    the ITC action against Realtek.

3          Whether a Letter of Assurance to the IEEE includes an implied restriction on the right to sue

4    for injunctive relief – that is, an absolute bar on exercising such a right prior to making a RAND

5    license offer – has been decided only once by a court in America.  On the facts before her, Judge

6    Crabb found that a RAND obligation did not imply an absolute bar on seeking injunctive relief

7    against acts of infringement.  Given this ruling, the novelty of this issue, and the absence of binding

8    appellate precedent, it is more than fair to say that substantial grounds exist for a difference of

9    opinion as to a controlling question of law.  As such interlocutory review here is warranted.

10         **D.      Interlocutory Review of the May 20 Order Will Materially Advance the**

11                  **Ultimate Termination of the Litigation**

12         Appellate review will materially advance this litigation.  In light of the Court's finding of

13   *per se* breach of contract, the remaining issues primarily concern potential damages related to the

14   Court's finding that LSI breached its commitments to the IEEE, as well as a remedy trial as to a

15   RAND royalty rate.  Thus, in the absence of immediate interlocutory review, a trial will proceed in

16   which a jury will not decide the issue of liability even as the Ninth Circuit considers the issue of

17   liability in the context of reviewing this Court's injunction decision.  Interlocutory review by the

18   Ninth Circuit on the issue of whether LSI relinquished its right to seek injunctive relief would

19   eliminate the risk of having a damages trial that is subsequently mooted on appeal from the final

20   judgment.  The Ninth Circuit specifically recognizes that § 1292(b) was drafted in order to avoid a

21   situation where a litigant would be harmed by being forced to undergo a trial concerning damages

22   where there may be no liability.  *See Steering Committee*, 6 F.3d at 575 n. 1.

23         Moreover, LSI already has filed its notice to appeal as of right pursuant to 28 U.S.C. §

24   1292(a)(1) with respect to the Court's imposition of preliminary injunction, which enjoins LSI from

25   executing any exclusionary order issued by the ITC against Realtek.  [Dkt. No. 108.]  As seen in the

26   *Microsoft v. Motorola* litigation, the Ninth Circuit will consider the Court's grant of partial

27   summary judgment in favor of Realtek under a legally erroneous standard as part of its review of

28   the "likelihood of success" factor.  *See Microsoft*, 696 F.3d at 884.  In light of the substantial

1   difference of opinion on the controlling issue of law in this matter, articulated above, certifying the

2   May 20 Order would allow the Ninth Circuit – presuming, of course, it consolidates the appeals – to

3   consider the injunction and the underlying authority for the injunction in full prior to a trial on

4   remedy and damages.  Doing so will materially advance the ultimate termination of this

5   investigation, while conserving judicial resources, and thus warrants interlocutory review.

6          **E.      This Is an Exceptional Case That Warrants Immediate Review**

7          Exceptional circumstances exist that justify immediate interlocutory review of the May 20

8   Order.  As stated above, interlocutory review in this case will conserve judicial and party resources

9   by resolving a fundamental question of liability prior to conducting a trial on remedy and damages.

10  In such circumstances, courts find that case is "exceptional" justifying interlocutory review.  *See*

11  *Steering Committee*, 6 F.3d at 575 n. 1.  Moreover, if the May 20 Order is erroneous as to the

12  Court's finding of a *per se* breach, substantial evidence must be taken by the Court, including expert

13  discovery, as to whether the June 20, 2012 proposal from LSI constitutes a RAND offer.  A trial on

14  the remedy and damages issues will preclude such evidence from being taken, and thus such

15  evidence would have to be received by the Court if the Ninth Circuit were to reverse and remand

16  after final judgment.  Therefore, immediate review of the Court's finding of *per se* breach is

17  warranted.

18  **VI.    CONCLUSION**

19         For the foregoing reasons, LSI respectfully requests that the Court certify the May 20 Order

20  for interlocutory review as to the question of whether LSI's commitments to the IEEE created an

21  unstated, inherent contractual provision precluding LSI from seeking injunctive relief.

22  Dated:  May 31, 2013                    Respectfully submitted,

23                                          KILPATRICK TOWNSEND & STOCKTON LLP

24                                          By: */s/ David E. Sipiora*
                                            _____
25                                              David E. Sipiora
                                                Robert J. Artuz
26                                              Charles A. Pannell, III

27                                          Attorneys for Defendants
                                            LSI CORPORATION and AGERE SYSTEMS LLC
28

65449537v.2