1              UNITED STATES DISTRICT COURT

2         FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                  SAN JOSE DIVISION

4

5

6    REALTEK SEMICONDUCTOR        )
     CORPORATION,                 ) NO. CV-12-03451 RMW
7                                 )
                       PLAINTIFF, )MOTION FOR PARTIAL SUMMARY JUDGEMENT
8                                 )MOTION TO STAY
          VERSUS                  )
9                                 ) MAY 10, 2013
     LSI CORPORATION, ET AL.,     )
10                                ) PAGES 1 - 29
                       DEFENDANTS.)
11    _____)

12

13

14               TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE RONALD M. WHYTE
                UNITED STATES DISTRICT JUDGE
15

16

17    A-P-P-E-A-R-A-N-C-E-S:

18    FOR THE PLAINTIFF:    REED SMITH LLP
                            BY:  STEVEN BAIK
19                          1510 PAGE MILL ROAD, SUITE 110
                            PALO ALTO, CA  94304
20
                            REED SMITH LLP
21                          BY:  WILLIAM OVEREND
                                 JAMES DAIRE
22                          101 SECOND STREET, SUITE 1800
                            SAN FRANCISCO, CA  94105-3659
23
      (***APPEARANCES CONTINUED ON NEXT PAGE.)
24
      COURT REPORTER:       GEORGINA GALVAN COLIN, CSR
25                          LICENSE NUMBER 10723

1

1    APPEARANCES CONTINUED:

2    FOR THE DEFENDANT:    KILPATRICK TOWNSEND & STOCKTON LLP
                          BY:  DAVID E. SIPIORA
3                         1400 WEWATTA STREET, SUITE 600
                          DENVER, CO  80202-5556
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    SAN JOSE, CALIFORNIA                    MAY 10, 2013

2               P-R-O-C-E-E-D-I-N-G-S

3               (WHEREUPON, COURT CONVENED AND THE FOLLOWING

4    PROCEEDINGS WERE HAD:)

5               THE CLERK:  THE NEXT MATTER, C-12-3451, REALTEK

6    VERSUS LSI.  ON FOR MOTION FOR PARTIAL SUMMARY JUDGMENT AND

7    MOTION TO STAY.

8               YOUR APPEARANCES, PLEASE.

9               MR. SIPIORA:  GOOD MORNING, YOUR HONOR.

10              DAVID SIPIORA, LAW FIRM OF KILPATRICK TOWNSEND ON

11   BEHALF OF DEFENDANT LSI CORPORATION.

12              MR. BAIK:  GOOD MORNING, YOUR HONOR.

13              STEVE BAIK WITH REED SMITH FOR PLAINTIFF REALTEK

14   SEMICONDUCTOR CORP.

15              WITH ME IS BILL OVEREND AND JAMES DAIRE.  AND ALSO,

16   MS. GINA HUNG, IN-HOUSE COUNSEL FOR REALTEK.

17              THE COURT:  OKAY.

18              MR. SIPIORI:  THANK YOU, YOUR HONOR.

19              SO THERE WERE TWO MOTIONS ON FILE.  THE TENTATIVES

20   WERE NEGATIVE WITH RESPECT TO LSI, WITH RESPECT TO BOTH.  AND I

21   WOULD LIKE TO BRIEFLY, IF I COULD, TOUCH UPON THE FIRST ONE,

22   AND THEN THE SECOND ONE.

23              THE FIRST ONE IS THE MOTION FOR PARTIAL SUMMARY

24   JUDGMENT.  SPECIFICALLY, WHETHER LSI BREACHED A RAND OBLIGATION

25   BY FILING ITS ITC COMPLAINT BEFORE OFFERING AT LEAST WHAT IS

1      BELIEVED A RAND LICENSE AS ARTICULATED IN YOUR TENTATIVE.

2              THERE HASN'T BEEN A CASE YET DECIDED THAT WE'RE

3      AWARE OF WHERE A COURT HAS DECIDED ON SUMMARY JUDGMENT THIS

4      ISSUE.  THE AUTHORITIES CITED WITH RESPECT TO THIS ISSUE BY THE

5      PLAINTIFF ALL HAVE BEEN IN DIFFERENT CONTEXT, NONE OF WHICH

6      STAND FOR THIS PROPOSITION.  AND WE WOULD SUBMIT TO YOU,

7      RESPECTFULLY, THAT THE PROPER CONTEXT FOR THIS DECISION OUGHT

8      TO BE ON A FULL RECORD.

9              NOW, WE HAVE MOVED, IN OUR SECOND MOTION, TO RELY

10     UPON THE RECORD OF THE ITC.  BECAUSE IN FACT EVERYTHING IN THIS

11     CASE, ALL THE ISSUES, HAVE NOW BEEN SUBMITTED TO THE -- ALL THE

12     FACTUAL ISSUES, ALL THE DEFENSES AND CLAIMS -- HAVE BEEN

13     SUBMITTED TO AN ADMINISTRATIVE LAW JUDGE IN THE ITC.  THE

14     HEARING TOOK PLACE APRIL 2ND THROUGH APRIL 10TH, OR 9TH.  THEY

15     ARE FULLY SUBMITTED NOW, FULLY BRIEFED.  WE HAVE 800 PAGES PER

16     PARTY POST TRIAL BRIEFING.

17             IT WILL NOW BE -- IT IS UNDER SUBMISSION.  ALTHOUGH

18     THE DECISION IS DUE IN JULY, JULY 18TH.  AND THAT DECISION WILL

19     BE WHETHER OR NOT, IT INCLUDES THIS SPECIFIC ISSUE OF WHETHER

20     OR NOT LSI IN ITS PREDECESSOR AND INTERESTS COMMITTED A BREACH

21     OF RAND OBLIGATIONS IN CONNECTION WITH THE ITC PROCEEDING

22     ITSELF.  WHICH IS EXACTLY THE ISSUE THAT IS THE SUBJECT OF THIS

23     MOTION.

24             IN THAT CONNECTION, WE WOULD SUBMIT, THAT'S, SINCE

25     IT'S FULLY BEEN DECIDED, OR FULLY BEEN SUBMITTED, THAT IS THE

1    PROPER PLACE TO HAVE THIS DECIDED.  THAT WAS FILED FIRST;

2    THAT'S BEFORE THE ALJ.  THAT'S OUR FIRST POINT; AND THAT'S WHY

3    WE'RE ASKING FOR A STAY.

4            AS YOU KNOW, THAT PROCESS, THAT PROCESS INVOLVES AN

5    INITIAL DETERMINATION, IN JULY, BY THE ADMINISTRATIVE LAW

6    JUDGE, UNLESS HE ISSUES ANOTHER ORDER AND EXTENDS IT.  BUT AT

7    LEAST UNDER THE STATUTORY REQUIREMENTS HE MUST ISSUE HIS

8    INITIAL DECISION BY JULY 18TH.  AND THEN THAT DECISION WILL BE

9    SUBJECT TO SCRUTINY, REVIEW, TYPICALLY BRIEFING, AND GO TO THE

10   FULL COMMISSION, WHICH MUST RENDER ITS DECISION BY NOVEMBER

11   19TH, ABSENT ANY EXTENSIONS.  THAT'S THE TARGET DATE.

12           EACH OF THOSE DECISIONS WILL BE BASED UPON THIS

13   EXACT SAME RECORD, AN OPPORTUNITY FOR THE PLAINTIFF HERE, THE

14   DEFENDANT IN THAT -- THE RESPONDENT IN THAT PROCEEDING, TO HAVE

15   ITS ISSUES AIRED AND DECIDED.  AT THE CONCLUSION OF THAT

16   PROCESS, IF THERE IS A DECISION IN FAVOR OF LSI, AND A LIMITED

17   EXCLUSION ORDER IS GRANTED, THAT DECISION ITSELF WILL BE

18   SUBJECT TO PRESIDENTIAL REVIEW FOR A PERIOD OF 60 DAYS.

19           SO WE STILL HAVE FROM NOVEMBER, DECEMBER, JANUARY,

20   TALKING MID TO LATE JANUARY, JANUARY 18TH - 19TH, 2014, BEFORE

21   THERE IS A FINAL ORDER THAT CAN BE ENFORCED RELATIVE TO THIS

22   ISSUE.

23           IN THIS CONTEXT, WE WOULD SUBMIT THAT'S THE PROCESS

24   THAT SHOULD BE ALLOWED TO GO FORWARD.  THERE IS NOTHING AT THIS

25   POINT IN TIME THAT CALLS FOR INTERVENTION BY THIS COURT.  THEY

1    HAVE NOT IDENTIFIED ANY HARM THAT WOULD BEFALL THEM BY VIRTUE

2    OF THAT PROCESS BEING PLAYED OUT.  AND, OF COURSE, AT THE BACK

3    END OF THAT PROCESS, TO THE EXTENT THEY WANT TO SAY IT'S

4    ARTICLE ONE, NOT ARTICLE THREE, THERE'S A COURT OF APPEALS FROM

5    FEDERAL CIRCUIT WHICH REVIEWS THAT.  AND THEY'RE AVAILABLE FOR

6    REVIEW ON THESE VERY ISSUES.

7              THE COURT:  WHAT ABOUT THE ARGUMENT THAT BY FILING

8    THE ITC ACTION YOU'RE CAUSING THEM TO INCUR A LOT OF EXPENSES

9    THAT THEY SHOULDN'T HAVE TO INCUR?

10             MR. SIPIORI:  WELL, THAT'S THE JUDICIAL PROCESS.

11   AND WE'VE EXERCISED A RIGHT.  WE'VE OFFERED THEM -- WE CAN TAKE

12   A STEP BACK AND GO TO THE MERITS OF THIS MOTION.  WE HAVE

13   TWICE, LSI HAS TWICE OFFERED REALTEK A RAND LICENSE; ONCE IN

14   THE FALL OF 2002 INTO 2003, AND AGAIN IN JUNE OF 2012.  AND --

15             THE COURT:  WHERE IS THE EVIDENCE OF ALL THAT?

16             MR. SIPIORI:  THE EVIDENCE OF THE LETTERS THAT WERE

17   SUBMITTED AS PART OF THE RECORD FOR 2002, OCTOBER 22ND, 2002,

18   THE FIRST INITIAL RAND REQUEST OR OFFER WAS MADE BY LSI.  AND

19   IN THE BRIEFING IN THIS MATTER, FOR PURPOSES OF THIS MOTION,

20   REALTEK DOES NOT DISPUTE THAT THAT WAS AN OFFER.

21             THERE WAS A SERIES OF CORRESPONDENCE, FOUR OR FIVE

22   LETTERS FROM LSI, TO REALTEK, IN THE CONTEXT OF OFFERING A

23   LICENSE WITH RESPECT TO THIS TECHNOLOGY, THESE PATENTS.  ONE

24   WAS, IT WAS A PATENT AND AN APPLICATION AT THE TIME.  BUT A

25   RAND OFFER IN OCTOBER 2002, WHICH CULMINATED WITH A FINAL

1    LETTER FROM LSI IN MARCH OF 2003 ASKING ARE YOU GOING TO GET

2    BACK TO US?  AND THE RECORD CLOSES AT THAT POINT.

3         AT A MINIMUM, THERE WAS AN OFFER AND THERE WAS NO

4    ENGAGEMENT, OTHER THAN A REQUEST BY REALTEK FOR MORE

5    INFORMATION.  WHICH WAS MET WITH, IN FEBRUARY 5TH OF 2003, WITH

6    AN OFFER OF LSI TO GET TOGETHER ON THE PHONE AND HAVE A

7    CONVERSATION ABOUT IT, AND TO UNPACK THE OFFER.

8         THE COURT:  THIS WAS 12 YEARS AGO?

9         MR. SIPIORI:  IT WAS IN 2003; 10 YEARS AGO.

10        IN THAT CONTEXT THERE WAS AN OFFER, THERE WAS AN

11   ATTEMPT TO ENGAGE.  AND IT'S UNDISPUTED THAT THERE WAS NEVER A

12   RESPONSE FROM REALTEK TO THE FEBRUARY 2002 -- 2003 LETTER, OR

13   THE MARCH 2003 LETTER.  SO THERE WAS AN OFFER WITH RESPECT TO

14   THESE, THIS TECHNOLOGY, THESE PATENTS, AND A RAND OFFER NEVER

15   RESPONDED TO.

16        AT A MINIMUM -- AND I'LL TAKE A STEP BACK AND SAY

17   THAT EXACT ISSUE HAS BEEN FULLY BRIEFED, VETTED, REVIEWED,

18   EXPERTS HAVE OPINED.  IT'S ALL IN FRONT OF THE ALJ WHETHER THAT

19   WAS A RAND OFFER THAT WOULD BASICALLY SATISFY THE REQUIREMENTS

20   OF RAND WITH RESPECT TO LSI.  THAT'S BEFORE THE ALJ NOW.

21        AT A MINIMUM, IN THIS CONTEXT, YOUR HONOR, WE WOULD

22   SUBMIT THAT'S ONLY FOR THE JURY TO DECIDE HERE, AS A FACTUAL

23   MATTER WHETHER OR NOT THAT SATISFIED ANY RAND OBLIGATION.

24        IN ADDITION, IN ADDITION -- THAT'S THE FIRST RAND

25   OFFER.  THERE'S A SECOND RAND OFFER, AND THAT TOOK PLACE IN

1    JUNE 2012.  NOW, IT WAS AFTER THE COMMENCEMENT OF THE SUIT, BUT

2    IT WAS STILL A RAND OFFER.  AND PLAINTIFF HAS NOT CITED, AND WE

3    ARE NOT AWARE OF ANY CASE THAT SAYS ONE HAS TO MAKE A RAND

4    OFFER BEFORE ONE CAN ENGAGE IN THE ITC, IN ITC PROCEEDING.

5              THE COURT:  ISN'T THERE SOME LOGICAL SENSE TO THAT

6    THOUGH?

7              MR. SIPIORI:  WELL, THE IDEA IS, YOUR HONOR, WHAT

8    THEY'RE AFTER IN THIS CASE, THE END RESULT THEY'RE AFTER, THEY

9    SAY, IS A RAND PROPOSAL OR A RAND LICENSE.  THEY WERE GIVEN THE

10   OPPORTUNITY TWICE.  AND FOR THE SAKE OF THIS ARGUMENT WE'LL PUT

11   ASIDE THE EARLIER ONE, WHICH I THINK IS A FACTUAL ISSUE AT THIS

12   POINT, 2002-2003, LET'S PUT THAT ASIDE IF WE MAY AND LOOK AT

13   THE SECOND RAND PROPOSAL, WHICH IS NOT DISPUTED WAS AFTER THE

14   COMMENCEMENT OF THE ITC PROCEEDING.  ITC WAS IN MARCH, THE

15   SECOND RAND PROPOSAL WAS IN JUNE 20TH, 2012.

16             THE NOTION HERE IS, I WANT A RAND PROPOSAL SO I CAN

17   NEGOTIATE A LICENSE.  THEY WERE GIVEN A RAND PROPOSAL, IN JUNE.

18   UNQUESTIONABLY A RAND PROPOSAL, NOT DISPUTED IN THIS MOTION.

19   FULL BLOWN, MULTI-PAGE PRESENTATION, SPECIFICALLY SAYING WE'RE

20   MAKING AN OFFER TO YOU UNDER RAND, SPECIFICALLY INCLUDING THESE

21   PATENTS AND OTHER TECHNOLOGY NECESSARY TO PRACTICE UNDER IEEE

22   802.11.  AND THEY DID NOT RESPOND WITH NEGOTIATION.  AND THEY

23   STILL HAVEN'T NEGOTIATED.  WHAT THEY DID IS THEY FILED SUIT,

24   AND IN MULTIPLE SUITS.

25             EVEN THE POLICIES -- SO, FIRST OF ALL, THERE'S NO

1    CASE LAW THAT SAYS THAT'S A VIOLATION OF RAND.  THEY HAVE AN

2    OPPORTUNITY TO NEGOTIATE A RAND LICENSE; WE'RE STILL A

3    SIGNIFICANT DISTANCE AWAY FROM ANY EXCLUSION ORDER TO EVER

4    OCCUR.  THEY'VE HAD THIS ENTIRE TIME PERIOD, OVER A YEAR, TO

5    TALK TO US.  THE ONLY ENGAGEMENT HAS BEEN IN THE CONTEXT OF

6    MANDATORY SETTLEMENT DISCUSSION AT THE ITC.  THE POINT IS NO

7    CASE LAW SAYS THAT YOU CAN'T FILE IN THE ITC AND NEGOTIATE A

8    RAND AT THE SAME TIME.  AND THAT'S ESSENTIALLY WHAT'S GOING ON

9    HERE.

10              THEY HAVE AN OBLIGATION TO NEGOTIATE WITH US.  AND

11   IF YOU LOOK EVEN AT THE POLICY STATEMENTS, AND I KNOW THE COURT

12   IS AWARE OF THAT BECAUSE I SEE YOU'VE LOOKED AT THE FTC AND

13   GOOGLE IN YOUR TENTATIVE, THERE ARE TWO FORUM IN WHICH THESE

14   ARE BEING DISCUSSED.  AND I WOULD SAY, JUST PARENTHETICALLY,

15   YOUR HONOR, IN THIS CONTEXT, GOING SLOW IS A GOOD IDEA.

16              YOU'VE BEEN ON THE BENCH FOR A LONG TIME.  I ARGUED

17   MY FIRST SUMMARY JUDGEMENT IN FRONT OF YOU MANY, MANY YEARS

18   AGO.  YOU MIGHT NOT REMEMBER; IT WAS SUPERIOR COURT.

19              THE COURT:  DID YOU WIN?

20              MR. SIPIORI:  WE LOST AND WENT TO TRIAL.  WHAT WE

21   HAD WAS A PARTIAL, AS I RECALL.  MANY YEARS AGO.

22              I KNOW YOU'RE AWARE OF THE INCREMENTAL DEVELOPMENT

23   OF THE LAW, AND YOU'VE SEEN IT DEVELOPED IN YOUR AREA, PATENT

24   LAW IN PARTICULAR.  THIS IS ALL NEW STUFF.  THE LAW THAT

25   THEY'VE CITED IS ALL LATE 2012.

1          IN EACH OF THE CONTEXT THAT'S BEING CITED, THE

2     MICROSOFT CASE IN WASHINGTON, THEY'VE CITED THE DISTRICT COURT

3     IN THE NINTH CIRCUIT APPEAL OF AN ISSUE OFF OF THAT, AND JUDGE

4     POSNER IN ILLINOIS, THESE ARE ALL VERY RECENT CASES.  AND THE

5     LAW IS BEING FORMED IN THIS AREA RIGHT NOW.  WHAT I WOULD ASK

6     THE COURT TO CONSIDER IS ALLOWING THIS DECISION TO BE BASED ON

7     THE RECORD, AN INFORMED RECORD.

8          THE COURT IN WASHINGTON, JUST AS AN ILLUSTRATION,

9     THE MICROSOFT COURT, MOTOROLA THAT THEY CITE TWICE, THAT COURT

10    HAD A TRIAL, AND IT LOOKED AT THE ISSUE IS THERE A BREACH OF

11    RAND?  AND IT SAID, I CAN'T MAKE THAT DETERMINATION UNLESS I

12    KNOW WHAT A RAND LICENSE LOOKS LIKES.  MICROSOFT HAS SAID IN

13    THAT CASE, WE WILL ACCEPT A RAND LICENSE IF YOU GIVE ME ONE.

14    THEY ACKNOWLEDGED THEIR NEED FOR A RAND LICENSE.  BUT THEY

15    SAID, WE DON'T KNOW -- THEY HAVEN'T GIVEN US THIS.

16         THE JUDGE SAID BEFORE I CAN DETERMINE WHETHER

17    THERE'S A BREACH -- THE SAME ISSUE PRESENTED HERE -- THAT COURT

18    HAD A TRIAL IN NOVEMBER ON THE ISSUE OF WHAT A RAND LICENSE

19    LOOKS LIKE, AND MADE A DETERMINATION, THE DECISION JUST CAME

20    DOWN, AND IT SAID THIS IS WHAT I THINK A RAND LICENSE WOULD

21    LOOK LIKE.

22         AND NOW, AFTER THAT DECISION HAS BEEN MADE, THE

23    JUDGE IS GOING TO HAVE A SECOND TRIAL.  AND HE'S GOING TO SAY,

24    NOW THAT I HAVE A RAND LICENSE TO COMPARE AGAINST, I'M GOING TO

25    USE THAT COMPARISON; THAT LICENSE THAT I SAY IS A RAND RATE,

1    I'M GOING TO LOOK AT WHAT WAS OFFERED BY MOTOROLA AND MAKE A

2    DETERMINATION ON THAT RECORD WHETHER IT WAS A BREACH OF THE

3    RAND OBLIGATION.  THAT'S HOW CAUTIOUS THAT JUDGE IN WASHINGTON

4    IS.  AND THAT'S THE FOREFRONT OF THIS LAW.

5            JUDGE POSNER'S STATEMENTS IN THE ILLINOIS CASE WERE

6    BASICALLY DICTA HIS VIEW OF THINGS.  WHAT WE HAVE BEFORE US IS

7    BASICALLY AN INCOMPLETE RECORD.  IF YOU THINK ABOUT HOW THIS

8    DECISION SHOULD BE MADE, IEEE IS THE BASIS OF THE CONTRACT.  IF

9    YOU SAY WELL, WHAT WAS BREACHED?  IF YOU LOOK AT A NORMAL

10   CONTACT, YOU SAY THESE ARE THE TERMS OF A CONTRACT.  AND YOU

11   CAN GO LOOK AT THE CONTRACT, AND YOU AS A JUDGE CAN INTERPRET

12   IT.

13           IN THIS CONTEXT, IEEE DOESN'T HAVE ANY REQUIREMENTS

14   SPECIFICALLY, OTHER THAN THAT YOU MAKE A NON-DISCRIMINATORY

15   REASONABLE OFFER; REASONABLE.  THERE IS NO FURTHER GUIDANCE.

16   AND, IN FACT, THEY EXPRESSLY SAY IN THEIR GUIDELINES, WE'RE NOT

17   GOING TO TELL YOU WHAT THAT LOOKS LIKE.  AND SO WHAT WE HAVE IN

18   THE CONTEXT OF THE INDUSTRY IS THE DEVELOPMENT RIGHT NOW, AS

19   WE'RE SPEAKING, THE DEVELOPMENT OF WHAT THAT MEANS.

20           WE SEE SOME POLICY GUIDELINES COMING OUT FROM THE

21   DOJ, WHICH I KNOW YOU'RE AWARE OF, AND ALSO THE GOOGLE FTC

22   DECISION.  AND WHAT THE COURTS AND THE -- WHAT THE RESPECTIVE

23   BUYERS ARE DOING ARE TRYING TO FORMULATE THAT IDEA.

24           THE COURT:  WHY -- ASSUMING THE 2002 OFFER IS

25   NOT CONSIDERED TO BE AN ATTEMPT AT A RAND OFFER, THE OFFER THAT

11

1    YOU HAVE SAID WAS MADE WAS AFTER YOU HAD FILED WITH THE ITC;

2    WHY WOULDN'T THAT BE A BREACH, IF YOU'VE GOT A DUTY TO MAKE A

3    RAND OFFER, AND THAT'S CONSIDERED TO BE INCONSISTENT WITH

4    BRINGING YOUR CLAIM FOR INFRINGEMENT?

5                MR. SIPIORI:  WELL, THE ISSUE IS THE DUTY, YOUR

6    HONOR.  THERE'S NO WHERE THAT IT SAYS THAT THERE'S AN

7    INCONSISTENCY WITH FILING ITC PROCEEDING, AND OFFERING A RAND

8    LICENSE.  IT DOESN'T SAY THAT IN THE IEEE.

9                WHAT ONE WOULD HAVE TO LOOK AT IS THE INDUSTRY

10   PRACTICE IN THIS CONTEXT.  YOU'D HAVE TO LOOK TO SEE WHETHER OR

11   NOT IS IT ACCEPTABLE PRACTICE TO COMMENCE AN ITC, AND OFFER A

12   RAND AT THE SAME TIME OR SUBSEQUENTLY.  IN THIS CASE WE DON'T

13   EVEN HAVE EXPERT TESTIMONY.  THE ITC -- AND THIS GOES BACK TO

14   WHAT I WAS SAYING EARLIER -- IN THE ITC, BOTH PARTIES HAVE PUT

15   IN SUBSTANTIAL EXPERT TESTIMONY ON THIS ISSUE.

16               WHY IS THAT RELEVANT?  BECAUSE IN THE CONTEXT WHERE

17   THE IEEE DOESN'T SAY WHEN YOU HAVE TO OFFER THE RAND, ONLY THAT

18   YOU MUST, DOESN'T SPECIFICALLY SAY, OH, YOU CAN'T FILE AN ITC

19   PROCEEDING BEFORE YOU MAKE A RAND OFFER, IN THAT CONTEXT IT'S

20   RELEVANT TO LOOK AT WHAT THE INDUSTRY SAYS IS ACCEPTABLE

21   PRACTICE.  WHAT'S THE NORM; WHAT'S ACCEPTABLE.  AND WHETHER OR

22   NOT THERE'S A REASONABLE OPPORTUNITY TO SECURE A RAND LICENSE.

23               AT THE END OF THE DAY, WHAT'S RELEVANT IS WHETHER

24   OR NOT REALTEK HAS HAD A NON-DISCRIMINATORY OFFER, AND AN

25   OPPORTUNITY.  THE LANGUAGE OF THE IEEE IS TO MAKE AVAILABLE A

1      RAND LICENSE, "TO MAKE AVAILABLE."

2                  THE COURT:  SO, UNDER YOUR ARGUMENT IF THE -- UNDER

3      THE LAW AS IT STANDS TODAY, THAT IF THERE'S A RAND OBLIGATION

4      YOU COULD FILE IN THE ITC, FILE IN THE DISTRICT COURT FOR

5      INFRINGEMENT, AND THE DAY BEFORE TRIAL STARTS OFFER A RAND

6      LICENSE, AND YOU WOULD BE --

7                  MR. SIPIORI:  NO.  I THINK YOU HAVE TO DECIDE ON

8      THE FACTS OF THE CASE.  IT IS ABUNDANTLY CLEAR THAT A RAND

9      OFFER WAS MADE ON JUNE 20TH, 2012.  WE'RE STANDING HERE NOW ON

10     MAY 10TH, 2013.  AND THEY STILL HAVEN'T COME BACK WITH A

11     COUNTER PROPOSAL.  THEY'VE HAD NEARLY A YEAR TO ENGAGE WITH US.

12                 THIS IS NOT WHERE YOU -- WHAT YOU'RE DESCRIBING

13     WOULD BE BASICALLY GAMING THE PROCESS.  THAT IS NOT WHAT

14     HAPPENED.  THEY ASKED FOR A RAND PROPOSAL.  WE, WE HAD

15     DISCHARGED OUR RAND OBLIGATION, ACCORDING TO OUR RIGHTS, 2003,

16     2002-2003.  YOU MAY DISAGREE WITH THAT, BUT THAT'S OUR POINT OF

17     VIEW.  IF WE DIDN'T, THEY CAME TO US AND SAID IN MAY OF 2012,

18     GIVE US A RAND PROPOSAL.  WE DID THAT, JUNE.

19                 THEY'VE HAD AMPLE OPPORTUNITY.  THERE HAS BEEN NO

20     INABILITY ON THEIR PART TO OBTAIN A LICENSE.  THERE HAS BEEN

21     PLENTY OF TIME TO NEGOTIATE THAT.

22                 IN THE CONTEXT IN WHICH YOU'RE DESCRIBING, THERE

23     ISN'T AN OPPORTUNITY.  RAND IS REASONABLENESS, YOUR HONOR.

24     REASONABLE OPPORTUNITY TO GET ACCESS TO A LICENSE.  AND THEY'VE

25     HAD THAT OPPORTUNITY, AN AMPLE OPPORTUNITY.

1      AND THE SPECIFIC TIME -- AND THAT'S WHY I SUGGEST

2  STRONGLY THAT IN THIS CONTEXT THIS IS A FACT ISSUE FOR A JURY

3  TO DECIDE WHAT'S REASONABLE UNDER THE CIRCUMSTANCES.  IF I FILE

4  AN ITC SUIT TODAY, AND MAKE A RAND OFFER TOMORROW, AND I DON'T

5  HAVE AN ALJ HEARING IN THE ITC FOR ANOTHER YEAR, IS THAT

6  UNREASONABLE, TO HAVE A CHOICE OF FORUM?  I MEAN, THE IDEA IS

7  THERE'S AMPLE OPPORTUNITY TO GET ACCESS TO A LICENSE.  WHAT HAS

8  TO BE DETERMINED IS WHETHER THAT OFFER WAS NON-DISCRIMINATORY

9  AND REASONABLE.  THAT'S ALL THE IEEE SAYS.  THAT'S THE TERM OF

10  THE CONTRACT WE HAVE TO DETERMINE.

11      AND, IN ABSTRACT, ONE CAN CERTAINLY COME UP WITH

12  EXAMPLES, AS YOU HAVE, WHERE IT WOULD BE UNREASONABLE TO FILE A

13  LAWSUIT AND THEN LATER MAKE A RAND PROPOSAL.  BUT IN THIS

14  CONTEXT, THERE'S A CLOSE NEXUS IN TIME.  THEY'RE WITHIN MONTHS

15  OF EACH OTHER.  AND THERE'S BEEN AMPLE OPPORTUNITY THROUGHOUT

16  THIS PERIOD TO NEGOTIATE A LICENSE.

17      ONE OF THE IMPORTANT THINGS TO THINK ABOUT, WE

18  SUBMIT HERE, AND YOU RAISED THIS ISSUE A COUPLE HEARINGS BACK,

19  TO BE ABLE TO GET A RAND LICENSE YOU HAVE TO BE A WILLING

20  LICENSEE.  YOU HAVE TO BE WILLING TO ACCEPT A RAND LICENSE.  IT

21  IS ABSOLUTELY CLEAR, AND THEY HAVE SAID IN THEIR PAPERS, IN

22  THEIR INTERROGATORY RESPONSES, THAT REALTEK IS NOT PREPARED TO

23  ACCEPT A RAND LICENSE UNTIL THE ITC PROCESS HAS BEEN COMPLETED.

24      FOR EXAMPLE, IN DISCOVERY WE'VE LEARNED THEY WON'T

25  TAKE A LICENSE UNLESS THEY'RE SUED.  THAT'S THEIR HISTORY.

1    THAT'S WHERE THEY COME FROM.  THE JURY SHOULD HEAR THIS.  THE

2    JURY SHOULD SEE WHO IS REASONABLE OR NOT.

3              WHEN WE MADE A RAND OFFER TO THEM, THEY SUED US

4    FOUR TIMES.

5              THE COURT:  ONE OF THE ARGUMENTS THAT'S MADE, SEEMS

6    TO ME, THAT YOU'VE GOT TO MAKE A RAND OFFER BEFORE YOU FILE IN

7    THE ITC, IS THAT THE ITC PROCEEDINGS PUTS UNNECESSARY PRESSURE,

8    AN UNFAIR PRESSURE ON A COMPANY BY THE HOLDING OVER THEIR HEADS

9    THE ITC PROCEEDINGS, AND NEGOTIATING A RAND LICENSE IN THAT

10   CONTEXT.

11             MR. SIPIORI:  THAT'S AN ABSTRACT STATEMENT THAT CAN

12   BE TRUE IN CERTAIN FACTS.  BUT BECAUSE WE'RE IN A CASE, A REAL

13   CASE, AND NOT READING POLICY, WHICH IS WHAT THEY WANT TO TALK

14   ABOUT, THEY NEED TO ARTICULATE SPECIFICALLY WHAT THAT IS.

15             FOR EXAMPLE, WHAT IF IN THAT ITC CONTEXT THE

16   INJUNCTION THAT'S THREATENED IMPACTS ONE PERCENT OF THEIR

17   PRODUCTS?  THAT'S VERY DIFFERENT THAN IF IT IMPACTED 99 PERCENT

18   OF THEIR PRODUCTS.  THEY HAVEN'T DEMONSTRATED ANYTHING IN THIS

19   COURT AS TO THE RELATIVE IMPACT OF THIS INJUNCTION TO BE ABLE

20   TO EVEN MAKE THEIR ARGUMENT WITH CREDIBILITY.  THEY'RE CITING

21   POLICY STATEMENTS, BUT THEY HAVEN'T GIVEN YOU ANYTHING RELATIVE

22   TO INDUSTRY STANDARDS, NORMS OF THE INDUSTRY, WHAT EXPERTS

23   WOULD SAY, OR SPECIFICALLY WHAT THE IMPACT WOULD BE ACROSS

24   THEIR PRODUCT LINE.

25             IF IT ONLY IMPACTS ONE PERCENT OF THEIR PRODUCTS,

1    HOW SIGNIFICANT IS THAT?  WE DON'T HAVE THAT INFORMATION.

2              THE COURT:  LET ME HEAR FROM THE OPPOSITION.

3              MR. BAIK:  GOOD MORNING, YOUR HONOR.  LET ME

4    ADDRESS THE POINTS BROUGHT BY MR. SIPIORI.

5              LSI HAS ACTUALLY ACCUSED ALL OF REALTEK'S WI-FI

6    CHIPS IN THE ITC CASE.  SO IT WOULD AFFECT THE ENTIRETY OF

7    REALTEK'S WI-FI BUSINESS.

8              I THINK MR. SIPIORI RAISED A GOOD POINT.  LET'S

9    LOOK AT THE INDUSTRY PRACTICE WITH REGARD TO THIS ISSUE.  AND

10   TANTAMOUNT TO THAT IS LSI'S PRACTICE.  I WILL QUOTE THEIR

11   WORDS, "INJUNCTIVE RELIEF IS ANTITHETICAL TO RAND ENCUMBERED

12   STANDARD-ESSENTIAL PATENTS."  NOW, WHEN THEY WERE SUED IN THE

13   ITC BY RAMBUS, THIS IS WHAT THEY SAID, THIS WAS THEIR DEFENSE.

14             NOW, THEY COME BEFORE YOU, YOUR HONOR, AND SAY OH,

15   IT'S OKAY, WE CAN SEEK INJUNCTIVE RELIEF ANY TIME.  THEY'RE

16   USING THE RAND POLICIES AND THE RAND OBLIGATIONS AS BOTH A

17   SWORD AND A SHIELD WHEN IT BEFITS THEIR NEEDS.

18             THE COURT:  WHAT ABOUT THE ARGUMENT THAT THEY

19   OFFERED A RAND LICENSE IN JUNE OF 2012, AND YOU DIDN'T RESPOND?

20             MR. BAIK:  YOUR HONOR, WE DID RESPOND.  WE ASKED

21   FOR FURTHER INFORMATION ABOUT HOW THEIR CLAIMS READ ON OUR

22   PRODUCTS.  WE NEVER RECEIVED THAT INFORMATION.  COMMUNICATIONS

23   DID BREAK DOWN IN 2003.  THERE WAS A LAPSE OF --

24             THE COURT:  I'M NOT TALKING ABOUT 2003.  I'M

25   TALKING ABOUT 2012.

1        MR. BAIK:  YES.  OH, 2012 PROPOSAL, YOUR HONOR?

2        THE COURT:  UH-HUH.

3        MR. BAIK:  WELL, WE'RE NOT, THIS MOTION IS NOT

4    ADDRESSING WHETHER THE 2012 PROPOSAL IS A RAND OFFER OR NOT.

5        IN FACT, THEY SAY, IN THEIR DISCOVERY RESPONSES,

6    THAT THESE ARE JUST OPENING TERMS TO OPEN UP DISCUSSIONS THAT

7    MAY EVENTUALLY LEAD TO A RAND LICENSE.  THAT'S ALL THEY EVER

8    SAID.  THEY NEVER SAID IT'S A RAND LICENSE OFFER.  OKAY.

9        BESIDE THAT, THE BREACH THAT WE BRIEFED, AND THE,

10   YOUR HONOR HAS TENTATIVELY RULED, IS THAT THEY BREACHED IT BY

11   SUING US IN THE ITC.  AND THAT'S EXACTLY WHAT THEY DID.  AND

12   THE SUIT CAME BEFORE THE 2012 PROPOSAL.  SO THE BREACH OCCURRED

13   BEFORE THEIR JUNE 2012 PROPOSAL.  WHETHER OR NOT IT'S A RAND

14   LICENSE OFFER, WHICH IT ISN'T, BUT THAT'S NOT AT ISSUE IN OUR

15   MOTION TODAY.

16       THE COURT:  WHAT IF THEY SENT YOU A LETTER AND SAID

17   THIS IS A RAND PROPOSAL, AND SPECIFIED THE TERMS, AND AT THE

18   SAME TIME FILED AN ACTION WITH THE ITC; WOULD THAT BE OKAY?

19       MR. BAIK:  NO, YOUR HONOR.  I, THE OBLIGATION, AS I

20   SAID, AGAIN, INJUNCTIVE RELIEF IS ANTITHETICAL.

21       IF THERE WAS A MEETING OF THE MINDS, AND BOTH SIDES

22   AGREED, YES, THESE ARE RAND TERMS, AND THERE WAS A CONSUMMATION

23   OF AGREEMENT, THEN OF COURSE THERE WOULD BE NO ISSUE FOR THAT.

24   BUT IF THERE WAS A DIFFERENCE OF OPINION AS TO WHETHER IT'S A

25   RAND LICENSE OFFER OR NOT, THAT WOULD HAVE TO BE DETERMINED

17

1    JUST AS THE WESTERN DISTRICT OF WASHINGTON HAS SAID, JUST AS

2    THE FEDERAL TRADES COMMISSION HAS SAID, JUST AS THE DEPARTMENT

3    OF JUSTICE HAS SAID.

4              THE COURT:  SO YOU'RE SAYING THAT IF THEY HAD MADE

5    AN OFFER TO YOU THAT WAS IN FACT A RAND OFFER, BY EVERYBODY IN

6    THE INDUSTRY, THAT'S A RAND OFFER, THAT'S VERY FAIR, THEY --

7    BUT YOU HAD SAID IT'S NOT, YOU DON'T THINK IT'S A RAND OFFER,

8    ARE YOU SAYING THAT THAT ISSUE HAS TO BE RESOLVED BEFORE THEY

9    CAN FILE?

10             MR. BAIK:  YES, YOUR HONOR.  AND THAT'S EXACTLY

11   WHAT THE EASTERN DISTRICT OF WASHINGTON SAID, WHICH HAS BEEN

12   AFFIRMED BY THE NINTH CIRCUIT.  THAT'S WHAT THE FEDERAL TRADE

13   COMMISSION HAS SAID IN RELATION TO OTHER ITC ACTION, AND THE

14   SAME WITH THE DOJ.

15             THAT, IN PARTICULAR, IF YOU LOOK AT THE CONSENT

16   AGREEMENT ENTERED BY THE FTC IN GOOGLE, THAT IS THE EXACT

17   PROCEDURE, THAT YOU GO IN AND YOU NEGOTIATE IF THERE'S A

18   DIFFERENCE OF OPINION ABOUT WHETHER IT'S RAND OR NOT.  YOU HAVE

19   TO RESOLVE THAT FIRST, BEFORE THEY CAN GO AFTER ANY KIND OF

20   INJUNCTIVE RELIEF.

21             THE COURT:  SO I NEED YOU TO FILE A DECLARATORY

22   RELIEF ACTION?

23             MR. BAIK:  WHAT'S THAT?

24             THE COURT:  FILE A DECLARATORY RELIEF ACTION, IF

25   YOU CAN'T AGREE.

1      MR. BAIK:  YES, YOUR HONOR.

2      THE COURT:  DO THEY HAVE ANY OTHER APPROACH?

3      MR. BAIK:  I BELIEVE THAT'S THE ONLY APPROACH, YOUR

4  HONOR.  BECAUSE THAT'S WHAT THE WESTERN DISTRICT OF WASHINGTON

5  SAYS, THAT THE DISTRICT COURT IS LIKELY THE ONLY FORUM, THE

6  ONLY VENUE THAT CAN RESOLVE THAT ISSUE BEFORE THEY CAN SEEK ANY

7  TYPE OF INJUNCTIVE RELIEF.

8      AND I WANT TO TOUCH UPON A COUPLE OF THINGS IN

9  TERMS OF WHAT YOU WANTED TO ADDRESS IN YOUR TENTATIVE.

10 WITH REGARD TO THE BALANCE OF HARDSHIPS HERE, IF YOUR HONOR

11 DECIDED NOT TO ISSUE AN INJUNCTION, REALTEK WOULD SUFFER

12 IRREPARABLE HARM.  THEY'RE SUFFERING IRREPARABLE HARM RIGHT

13 NOW.  IN OUR PAPER, WE HAVE PROVIDED EVIDENCE THAT'S UNREFUTED

14 THAT CUSTOMERS ARE ALREADY COMING TO REALTEK AND SAYING LOOK,

15 THERE IS THIS CLOUD THAT YOUR PRODUCT WILL BE ENJOINED FROM

16 BEING IMPORTED TO THE UNITED STATES; BECAUSE OF THAT WE HAVE

17 SERIOUS CONCERNS AND WE WILL NOT BUY FROM YOU IF THIS IS NOT

18 CLEARED UP.

19     FUNAI OBVIOUSLY HAS COME TALK TO US ABOUT THAT.

20 ANOTHER COMPANY, CAMEO HAS COME TO TALK TO US ABOUT THAT.  AND

21 THERE ARE OTHER COMPANIES THAT CONTINUE TO COME TO US TODAY.

22     AND, LET ME TALK A LITTLE BIT ABOUT THE WI-FI CHIP

23 MARKET, YOUR HONOR.  WI-FI CHIPS ARE SELECTED IN A DESIGN

24 PROCESS THAT TAKES MONTHS, OR EVEN A YEAR OR MORE.  SO EVEN

25 THOUGH YOU MAY BUY A NEW CELL PHONE TODAY, WITH A WI-FI CHIP IN

19

1    IT, IT WAS DESIGNED MONTHS AGO, ALL RIGHT.

2            SO, RIGHT NOW CUSTOMERS ARE DESIGNING PRODUCTS FOR

3    THE CHRISTMAS MARKET.  RIGHT NOW CUSTOMERS ARE MAKING DECISIONS

4    WHICH CHIPS TO BUY.  AND RIGHT NOW THEY SEE A CLOUD HANGING

5    OVER REALTEK.

6            AND WI-FI CHIPS ARE PRETTY MUCH FUNGIBLE.  THERE

7    AREN'T THAT MANY DISTRIBUTION FACTORS BETWEEN ALL THE DIFFERENT

8    COMPETITORS.  AND WE HAVE BIG COMPETITORS; BROADCOM, INTEL,

9    QUALCOMM.  AND USUALLY PRICE IS THE MAIN DISTINGUISHING FACTOR.

10           BUT, IF THE CUSTOMER SEES, WHY WOULD I BUY FROM

11   REALTEK IF THERE'S A POTENTIAL, DOWN IN CHRISTMAS TIME, THAT I

12   WILL NOT BE ABLE TO IMPORT MY PRODUCTS INTO THE UNITED STATES;

13   I'M NOT GOING TO PICK REALTEK RIGHT NOW.  I'M GOING TO PICK

14   INTEL, BROADCOM, QUALCOMM, WHOEVER ELSE.

15           THE COURT:  I UNDERSTAND THAT ARGUMENT.

16           MR. BAIK:  OKAY.  SO I JUST WANT TO POINT OUT THAT

17   WE ARE SUFFERING IRREPARABLE HARM.  IF YOU CHOOSE NOT TO ISSUE

18   THE INJUNCTION, WHICH IS NECESSARY AND PROPER IN THIS CASE, AND

19   THE ADMINISTRATIVE LAW JUDGE IN THE ITC DOES GO FORWARD WITH

20   THE EXCLUSION ORDER, WHETHER IT'S THE FINAL DECISION OR NOT,

21   THE MARKET PLACE WILL SEE THAT.  THEY WILL MAKE THE DECISION

22   RIGHT THEN AND THERE.

23           OH, THERE'S AN EXCLUSION ORDER.  THEY ARE LIKELY TO

24   GET ENJOINED.  WHO CARES ABOUT WHAT'S GOING TO HAPPEN IN

25   APPEAL.  RIGHT NOW THEY'RE GOING TO BE ENJOINED.  WE'RE NOT

1    GOING TO BUY REALTEK CHIPS.

2            NOW, IF THE COURT DOES ISSUE AN INJUNCTION, AS

3    WE'VE REQUESTED AGAINST LSI, AND NOT JUST SEEKING INJUNCTION IN

4    THE ITC BUT IN ANY FORUMS, INCLUDING DISTRICT COURT, WHICH IS

5    THE ONLY RELIEF THAT THIS COURT CAN GIVE -- WHICH IS THE RELIEF

6    THAT ONLY THIS COURT CAN GIVE.  NOW, IF YOU ISSUE THE

7    INJUNCTION, AND THE ALJ AGREES WITH YOU, THERE'S NO HARM, NO

8    FOUL.  NO ONE IS INJURED, AND IRREPARABLE HARM IS AVOIDED.

9            NOW, IF YOU -- AND IF YOU ISSUE THE INJUNCTION, AND

10   THE ALJ GOES AGAINST YOU, THEN STILL NO HARM TO LSI.  ALL THEY

11   WANT ARE DAMAGES AND LICENSE.  THAT'S COMPLETELY COMPENSABLE

12   LATER ON WITH MONEY.  BUT YOU WILL HAVE AVOIDED REALTEK

13   SUFFERING IRREPARABLE HARM IF THE ITC ALONE, WITHOUT YOUR ORDER

14   FOR AN INJUNCTION, IF THE ITC ALONE WERE TO DECIDE IF EXCLUSION

15   ORDER IS PROPER.  AS SOON AS THAT HAPPENED, NOT -- WE'RE

16   ALREADY SUFFERING IRREPARABLE HARM, BUT AS SOON AS THAT

17   HAPPENED, WE WILL SUFFER A HUMONGOUS AMOUNT OF IRREPARABLE

18   HARM, YOUR HONOR.

19           SO THAT'S WHY THIS COURT HAS TO ACT TODAY.  WAITING

20   ONLY CONTINUES THE SUFFERING OF REALTEK.

21           THE COURT:  OKAY.  THANK YOU.

22           WHAT ABOUT YOUR POSITION IN THE RAMBUS CASE?

23           MR. SIPIORI:  THE RAMBUS CASE WAS A JOINT -- AND I

24   WAS ON THAT BRIEF, YOUR HONOR -- IT WAS A JOINT BRIEF, MANY

25   POSITIONS OF MANY PARTIES.  WE DISSENTED ON SOME, BUT BECAUSE

1    IT WAS A JOINT SUBMISSION WE HAD TO GO ALONG WITH WHATEVER WAS

2    THERE.

3              IN THE CONTEXT OF THOSE FACTS WITH RAMBUS, GIVEN

4    THAT NEGOTIATION HISTORY, THAT WAS A POSITION THAT OUR CLIENT

5    COULD GO ALONG WITH.  AS DESCRIBED IN THE PAPERS, NOT

6    NECESSARILY AS HE'S ARTICULATED BUT AS DESCRIBED IN THOSE

7    PAPERS, THE CONTEXT WAS -- THE GENERAL NOTION IS YOU HAVE TO

8    HAVE THIS IDEA OF HAVING NEGOTIATION AND A FAIR RAND OFFER.

9              THE POINT IN THIS CASE IS THERE HAS BEEN ONE.

10   THERE HAVE BEEN TWO OF THOSE.  AND IN THIS PARTICULAR CONTEXT,

11   ON THESE FACTS, THERE IS NOTHING WRONG WITH THE IDEA OF HAVING

12   MADE AN OFFER AND THEN NEGOTIATING.  AND THERE'S NOT A SINGLE

13   CASE -- BY THE WAY, THAT ARGUMENT WAS REJECTED.  THAT GROUP,

14   THAT JOINT DEFENSE GROUP OFFER, OUR POSITION WAS REJECTED IN

15   THE ITC.  THEY WENT AHEAD AND -- WE WERE ON THE WRONG SIDE OF

16   THAT ISSUE IN THEORY.

17             IN THIS PARTICULAR CONTEXT, ON THE INJUNCTION

18   ISSUE, THERE ARE MULTIPLE STOPS ALONG THE WAY BEFORE WE GET TO

19   THE POINT OF AN EXCLUSION ORDER, AS YOU KNOW.  THERE'S THE

20   INITIAL DETERMINATION -- YOU KNOW, THAT.  OKAY.  NUMBER ONE.

21             NUMBER TWO, THERE'S PLENTY OF TIME TO ADDRESS THAT

22   ISSUE, NUMBER ONE.  EVERY SINGLE CASE WHERE YOU'RE IN THE ITC,

23   ARGUABLY, THEY WOULD BE SAYING THE SAME THING.  THEY HAVE A

24   SINGLE CUSTOMER THEY'VE IDENTIFIED, THIS CAMEO, CAMCO, WHO SAYS

25   THEY'RE CONCERNED.  THE ANSWER IS -- WELL, FIRST OF ALL, THAT'S

1    NOT A VERY GOOD SHOWING.  IT'S ONE PARTY THEY'RE SAYING.  AND

2    THEY'RE CLAIMING THIS HUMONGOUS HARM, AS HE SAYS.

3              EVERY SINGLE ITC CASE HAS THE SAME ISSUE.  SO, IN

4    THEORY, EVERY ITC CASE HAS IRREPARABLE HARM, ACCORDING TO WHAT

5    HE'S SAYING.  YOU CAN'T, THE COURT CAN'T ISSUE AN INJUNCTION

6    EVERY TIME SOMEONE GETS IN A LAWSUIT AND FACES AN INJUNCTION,

7    NUMBER ONE.

8              NUMBER TWO, ON THE BACK END OF THIS PROCESS, YOU

9    HAVE SET YOURSELF; YOU ARE THE BACKSTOP.  YOU SET THE TRIAL

10   DATE IN THIS CASE; SPECIFICALLY, NOVEMBER 4, TWO WEEKS BEFORE

11   THE TARGET DATE OF THIS ITC INVESTIGATION.  THEY WILL HAVE A

12   RAND RATE AT THE CONCLUSION OF THAT PROCESS.  WHICH THEY CAN

13   ACCEPT AND HAVE AN OPTION, AND IT WILL HAVE BEEN BLESSED BY

14   THIS COURT AND A JURY, THAT WILL BE AVAILABLE TO THEM.  AND

15   THEY WILL HAVE PLENTY OF TIME TO ACCEPT THAT AND ADOPT IT IF

16   THEY WISH TO.

17             THE PROBLEM THAT THEY HAVE, YOUR HONOR, IS WHAT

18   THEY SAID TO US, AND THEY TOLD THE COURT, IS THAT THEY'RE ONLY

19   A WILLING LICENSEE IF THEY ARE DECLARED TO HAVE COMPLIED, IF

20   THERE'S BEEN A DECLARATION OF COMPLIANCE WITH THE RAND TERMS,

21   AND SUBJECT TO ALL RIGHTS OF APPEAL, AND TO REALTEK'S DEFENSES,

22   ASSERTIONS, AND POSITIONS IN THE U.S. INTERNATIONAL TRADE

23   COMMISSION.  THEIR DISCOVERY RESPONSES IN THIS CASE HAVE SAID

24   THEY ARE NOT GOING TO ACCEPT WHAT YOUR HONOR HANDS DOWN OR A

25   JURY HANDS DOWN UNTIL THE ITC PROCESS HAS BEEN COMPLETELY

1      RESOLVED.  SO THEY CAN'T HAVE IT BOTH WAYS.

2              IF THEY WANT TO STOP THE ITC, THEN THEY NEED TO

3      ACCEPT WHAT YOU'RE GOING TO GIVE THEM AT THE END OF THE RAND

4      PROCESS.  YOU RAISED THIS ISSUE EARLY ON.  A SIGNIFICANT

5      DIFFERENCE BETWEEN THIS CASE AND THE MICROSOFT CASES, MICROSOFT

6      FROM THE BEGINNING SAID WE'LL ACCEPT A RAND LICENSE.  AND EARLY

7      ON YOU ASKED THEM, AND THEY COULDN'T ANSWER THE QUESTION

8      WHETHER THEY WOULD ACCEPT A RAND LICENSE.

9              THE COURT:  WELL, DOES THAT MEAN THAT IF YOU'VE GOT

10     A RAND OBLIGATION THAT THE LICENSEE EITHER HAS TO ACCEPT -- IF

11     IT ACCEPTS A RAND LICENSE, IT CANNOT CHALLENGE INFRINGEMENT AND

12     INVALIDITY?

13             MR. SIPIORI:  WELL, IF IT ACCEPTS A RAND LICENSE,

14     THERE'S NO CASE FOR CONTROVERSY.  THAT'S, THAT'S THE OUTCOME.

15             IN THIS CASE, WHAT THEY'RE BASICALLY SAYING IS --

16             THE COURT:  SO DON'T YOU --

17             MR. SIPIORI:  YEAH, YEAH, THAT'S THE BOTTOM LINE.

18             THE COURT:  SO, BASICALLY, IF A LICENSOR HAS A RAND

19     OBLIGATION, HOW DO YOU CHALLENGE INFRINGEMENT AND INVALIDITY IF

20     YOU WANT TO DO SO?

21             YOU JUST DON'T ACCEPT THE RAND LICENSE, AND --

22             MR. SIPIORI:  WELL, WHAT HAS HAPPENED IN OVER 30

23     LICENSES, OVER 30 LICENSES ON THESE SAME PATENTS, WITH PEOPLE

24     WHO'VE GOTTEN THE SAME OFFER -- WHICH IS ALL PART OF THIS

25     RECORD THAT'S NOT BEFORE YOU, BECAUSE WE DON'T HAVE A FULL

1    RECORD -- LSI HAS OFFERED THE, BASICALLY THE EXACT SAME

2    PROPOSAL TERMS TO 30 OTHER COMPANIES OVER THE COURSE, MORE THAN

3    THAT, SEVERAL DOZEN, MULTIPLE DOZEN.  AND IN NO INSTANCE HAVE

4    WE HAD THIS CIRCUMSTANCE.  WE'VE HAD RAND NEGOTIATIONS AND A

5    LICENSE.

6              WE, IN OUR CASE -- AND IT'S CONFIDENTIAL, AND I

7    WON'T GO INTO THE DETAILS BECAUSE OF THE PUBLIC HERE -- BUT, WE

8    HAVE IN THIS RECORD APPROXIMATELY 30 RAND LICENSES THAT HAVE

9    BEEN SIGNED BY PARTIES ON THESE SAME PATENTS.  THEY DIDN'T FILE

10   A LAWSUIT; THEY DIDN'T RUN TO COURT AND ASK FOR A RAND.  WE

11   NEGOTIATED.

12             THE DIFFERENCE HERE IS, AND UNLIKE MICROSOFT, THEY

13   HAVE BEEN UNWILLING TO ACCEPT A RAND PROPOSAL.  AND IN THAT

14   CIRCUMSTANCE, YOUR HONOR, GIVEN THAT YOU ARE HERE AT THE END OF

15   THIS PROCESS TO GIVE THEM A RAND RATE, THERE IS NO BASIS FOR AN

16   INJUNCTION.  THERE IS NO IRREPARABLE HARM TODAY, AND THERE

17   WON'T BE THROUGH THIS MULTIPLE STAGE PROCESS OF INITIAL

18   DETERMINATION, TARGET DATE, PRESIDENTIAL REVIEW; YOU'LL BE IN

19   THAT PROCESS.

20             AND IF THERE IS A NEED FOR A LICENSE, BECAUSE THE

21   COURT OR THE ALJ FINDS THAT THERE IS AN INFRACTION, HAVING

22   DECIDED THE SAME ISSUES YOU'RE LOOKING AT AND FOUND IN OUR

23   FAVOR, THEN THEY'LL HAVE AN OPPORTUNITY HERE TO GET A LICENSE

24   IN THIS COURT, IF THE JURY FINDS THAT THERE'S BEEN A VIOLATION

25   OF RAND.  THANK YOU, YOUR HONOR.

1             THE COURT:  OKAY.  I JUST WANT YOU TO ADDRESS ONE

2     THING, AND THAT IS THE ISSUE OF WHETHER OR NOT YOU CAN

3     CHALLENGE INFRINGEMENT AND VALIDITY AND NOT ACCEPT A RAND

4     LICENSE UNTIL THOSE DETERMINATIONS ARE MADE?

5             MR. BAIK:  I BELIEVE YOUR HONOR HAS ALREADY

6     ADDRESSED THAT ISSUE WITH REGARD TO LSI'S MOTION TO DISMISS.

7     AND THIS COURT HAS SAID THERE IS NOTHING CONTRARY TO A

8     POTENTIAL LICENSEE SEEKING ITS DEFENSES OF NON-INFRINGEMENT AND

9     INVALIDITY WHILE AT THE SAME TIME TRYING TO DETERMINE WHAT THE

10    RAND RATE IS.  BUT WE DON'T BELIEVE THAT IS INCONSISTENT.

11           AND THAT IS, SIMILAR TO EVEN IF I WERE TO HAVE

12    TAKEN A LICENSE TODAY, I COULD STILL DISPUTE NON-INFRINGEMENT

13    AND INVALIDITY.  SO I'M NOT ASKING FOR ANY MORE RIGHTS THAN

14    WHAT A CURRENT LICENSEE WOULD ALREADY HAVE.

15            THE COURT:  SAY WHAT YOU JUST SAID AGAIN.

16            MR. BAIK:  EVEN IF I WERE TO TAKE A LICENSE TODAY,

17    I COULD STILL DISPUTE TOMORROW WHETHER THERE IS

18    NON-INFRINGEMENT OR INVALIDITY.  RECENT FEDERAL CIRCUIT LAW HAS

19    MADE THAT VERY CLEAR.  EVEN A LICENSEE CAN STILL DISPUTE

20    NON-INFRINGEMENT AND INVALIDITY.

21           SO WE'RE NOT ASKING FOR ANYTHING MORE THAN WHAT A

22    CURRENT LICENSEE WOULD HAVE IN TERMS OF RIGHTS.  SO WE DON'T

23    SEE THAT IT IS INCONSISTENT TO COME BEFORE YOU AND ASK YOU TO

24    DETERMINE A RAND RATE.  WHILE AT THE SAME TIME DISPUTING

25    WHETHER WE INFRINGE OR WHETHER THE PATENT IS INVALID.  IN FACT

1    IT WOULD ACTUALLY MAKE GOOD SENSE TO FIGURE THAT OUT BECAUSE

2    THAT WOULD DETERMINE ALSO SOME OF THE ISSUES IN SETTING THE

3    RAND RATE.

4              NOW, COUNSEL FOR LSI HAS SAID THAT THE ITC WILL SET

5    A RAND RATE; THAT IS INCORRECT, YOUR HONOR.  THE ITC HAS NO

6    POWER TO SET A RAND RATE OR TO DETERMINE THAT FACT.  ONLY THIS

7    COURT CAN.

8              THE COURT:  OKAY.  MATTER SUBMITTED?

9              MR. BAIK:  THE OTHER -- A COUPLE MORE POINTS IS

10   THAT LSI IS TRYING TO WALK AWAY FROM ITS STATEMENTS THAT IT

11   MADE TO THE ITC THAT INJUNCTIVE RELIEF IS ANTITHETICAL.

12             THE COURT:  OKAY.  I HEARD THAT ALREADY.

13             MR. BAIK:  OKAY.  OKAY, YOUR HONOR.

14             WITH REGARD TO THE WILLING LICENSEE ISSUE, I THINK

15   WE'VE ADDRESSED THAT ALREADY.  WE'RE WILLING TO TAKE A LICENSE

16   ONCE THE RAND ISSUES ARE DETERMINED AND PENDING OUR DEFENSES IN

17   OTHER CASES, AS WE DISCUSSED, IS NOT INCONSISTENT, YOUR HONOR.

18             THE COURT:  OKAY.  THANK YOU.

19             MR. SIPIORI:  THANK YOU, YOUR HONOR.

20             MR. BAIK:  THANK YOU, YOUR HONOR.

21             YOUR HONOR, ONE ADDITIONAL QUESTION.

22             YOUR HONOR, GIVEN THE TIMING OF THE POTENTIAL

23   INITIAL DETERMINATION, IS THERE ANY IDEA WHEN THE JUDGE WOULD

24   BE ABLE TO PROVIDE A RULING ON THE MATTER?

25             THE COURT:  WELL, I HOPE VERY QUICKLY.

27

1              MR. BAIK:  OKAY.  THANK YOU, YOUR HONOR.

2         (WHEREUPON, PROCEEDINGS WERE CONCLUDED.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          CERTIFICATE OF REPORTER

2

3

4

5              I, GEORGINA GALVAN COLIN, PRO TEMPORE COURT

6    REPORTER FOR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN

7    DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE,

8    CALIFORNIA, DO HEREBY CERTIFY:

9              THAT THE FOREGOING TRANSCRIPT IS A FULL, TRUE AND

10   CORRECT TRANSCRIPT OF THE PROCEEDING HAD IN REALTEK

11   SEMICONDUCTOR CORP. VS LSI CORP., ET AL., CASE NUMBER

12   CV-12-03451 RMW, DATED MAY 10, 2013, THAT I REPORTED THE SAME

13   IN STENOTYPE TO THE BEST OF MY ABILITY, AND THEREAFTER HAD THE

14   SAME TRANSCRIBED BY COMPUTER-AIDED TRANSCRIPTION AS HEREIN

15   APPEARS.

16

17

18   DATED:  JUNE 4, 2013

19

20

21                              _____
                                GEORGINA GALVAN COLIN, CSR
22                              LICENSE NUMBER 10723

23

24

25