1          IN THE UNITED STATES DISTRICT COURT

2        FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                  SAN JOSE DIVISION

4

5

     REALTEK SEMICONDUCTOR          )   CV-12-3451-RMW
6    CORPORATION,                   )
                                    )   SAN JOSE, CALIFORNIA
7              PLAINTIFF,           )
                                    )   SEPTEMBER 6, 2013
8         VS.                       )
                                    )   PAGES 1-49
9    LSI CORPORATION, ET AL,        )
                                    )
10             DEFENDANT.           )

11

12            TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE RONALD M. WHYTE
13          UNITED STATES DISTRICT JUDGE

14

15   A P P E A R A N C E S:

16   FOR THE PLAINTIFF:     REED SMITH LLP
                            BY:  JAMES DAIRE
17                          101 SECOND STREET, STE 1800
                            SAN FRANCISCO, CA 94105
18

19   FOR THE DEFENDANT:     KILPATRICK TOWNSEND
                            BY:  DAVID SIPIORA
20                             KEVIN BELL
                            1400 WEWATTA ST., STE 600
21                          DENVER, CO 80202

22   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
     PRODUCED WITH COMPUTER.
23

24            APPEARANCES CONTINUED ON THE NEXT PAGE

25   OFFICIAL COURT REPORTER:    SUMMER FISHER, CSR, CRR
                                 CERTIFICATE NUMBER 13185

```
 1     FOR THE PLAINTIFF:        REED SMITH LLP
                                 BY:  STEVEN BAIK
 2                               1510 PAGE MILL ROAD, STE 110
                                 PALO ALTO, CA 94304
 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    SAN JOSE, CALIFORNIA                    SEPTEMBER 6, 2013
 2                    P R O C E E D I N G S
 3       (WHEREUPON, COURT CONVENED AND THE FOLLOWING PROCEEDINGS
 4    WERE HELD:)
 5               THE CLERK:  FIRST MATTER C-12-3451.  REALTEK VERSUS
 6    LSI.
 7          ON FOR MOTION FOR PARTIAL SUMMARY JUDGEMENT AND MOTION TO
 8    CONTINUE TRIAL DATE AND THE OTHER DEADLINES, AND CMC.
 9          STATE YOUR APPEARANCES, PLEASE.
10               MR. BAIK:  STEVE BAIK AND JAMES DAIRE WITH REED SMITH
11    FOR PLAINTIFF REALTEK.
12               MR. SIPIORA:  DAVID SIPIORA AND KEVIN BELL FROM THE
13    LAW FIRM OF KILPATRICK TOWNSEND ON BEHALF OF DEFENSE, LSI
14    CORPORATION AND AGERE SYSTEMS, LLC.
15          GOOD MORNING, YOUR HONOR.
16               THE COURT:  GOOD MORNING.
17           BASICALLY MY VIEW AT THIS POINT IS SINCE THERE HAS BEEN A
18    PARTIAL SUMMARY JUDGEMENT FINDING THAT THERE WAS A CONTRACT, IT
19    SEEMS TO ME THE PROMISSORY ESTOPPEL CLAIM IS NOT VIABLE.
20          I DON'T UNDERSTAND REALTEK'S ARGUMENT THAT, AT LEAST AS I
21    UNDERSTAND IT, THAT I SHOULD IN SOME WAY HEAR THE PROMISSORY
22    ESTOPPEL CLAIM SHOULD THE NINTH CIRCUIT DISAGREE WITH THE
23    SUMMARY JUDGEMENT AS TO BREACH OF CONTRACT.
24          AND I DON'T SEE HOW I WOULD DO THAT.  IT DOESN'T MAKE
25    SENSE TO ME.
```

1       WITH RESPECT TO THE MOTION TO CONTINUE THE TRIAL DATE AND

2   OTHER DEADLINES, IT SEEMS TO ME WE AGREED ON A SCHEDULE AND THE

3   SCHEDULE CONTEMPLATED VARIOUS EVENTS, AND THE FACT THAT THE

4   CASE HAS PROCEEDED IN A PARTICULAR WAY IT DOESN'T JUSTIFY

5   CHANGING THE SCHEDULE.

6       SO WITH THOSE COMMENTS I'M HAPPY TO HEAR BRIEF COMMENT

7   FROM THE PARTIES.

8           MR. DAIRE:  THANK YOU, YOUR HONOR.

9       JAMES DAIRE FOR REALTEK.  I WILL BE ADDRESSING THE

10  PROMISSORY ESTOPPEL PIECE OF YOUR HONOR'S TENTATIVE AND STEVE

11  BAIK WILL BE ADDRESSING THE CONTINUANCE PIECE.

12      JUST TO SHED LIGHT I THINK ON REALTEK'S POSITION, FOUR

13  QUICK POINTS.

14      WE UNDERSTAND THE COURT'S CONCERN WITH THE VIABILITY OF

15  THE PROMISSORY ESTOPPEL CLAIM, AND IN FACT AGREED TO

16  VOLUNTARILY DISMISS IT.

17      AND THAT WAS AS LONG AS LSI CONFIRMED TO US THERE WAS NO

18  DISPUTE ABOUT THE EXISTENCE OF AN ENFORCEABLE CONTRACT THAT

19  REALTEK COULD ENFORCE AS A THIRD PARTY BENEFICIARY.

20      THE FIRST QUICK POINT IS SINCE LSI'S REPLY BRIEF WE NOW

21  HAVE THE BENEFIT OF THEIR OPENING BRIEF IN THE NINTH CIRCUIT.

22  AND THEY HAVE TAKEN THE POSITION THAT THERE IS NO THIRD PARTY

23  BENEFICIARY CONTRACT.

24      THEY SAID REALTEK CANNOT SHOW IT WAS A THIRD PARTY

25  BENEFICIARY TO ANY CONTRACT SIGNED BY LSI.  AND THEY SAID THE

1    AGAIN THAT THE INJUNCTION IS AGAINST THE PUBLIC INTEREST

2    BECAUSE IT WEAKENS INTELLECTUAL PROPERTY POSITIONS BASED ON

3    NONEXISTENCE CONTRACTURAL COMMITMENTS.

4         SO THE PROBLEM WITH REALTEK HAS IS IN LIGHT OF THE

5    CONTRADICTORY POSITIONS THAT LSI IS TAKING HERE AND IN THE

6    NINTH CIRCUIT, WE HAVE ALSO ALTERNATIVE THEORIES OF LIABILITY

7    THAT WE WOULD LIKE TO PRESENT BOTH TO YOUR HONOR AND IF

8    NECESSARY TO THE NINTH CIRCUIT SO THAT CAN BE REVIEWED IN ONE

9    PACKAGE.

10        WITH RESPECT TO YOUR HONOR'S CONCERNS ABOUT WHETHER IT'S

11   APPROPRIATE FOR THE COURT TO HEAR THAT CLAIM, IT'S AN EQUITABLE

12   CLAIM.  YOUR HONOR IS GOING TO BE RULING ON THE RAND LICENSE

13   ISSUE PRESUMABLY AT THE SAME TIME.

14        SO IN TERMS OF JUDICIAL RESOURCES AND EFFICIENCY, IT'S

15   REALTEK'S POSITION THAT THERE REALLY IS NO EFFICIENCY LOST WITH

16   BOTH THOSE ISSUES TRIED TO YOUR HONOR AND THE COURT FOR

17   CONSIDERATION AT THE SAME TIME.

18        LASTLY, YOUR HONOR, IF THE COURT --

19        THE COURT:  IF I HAVE DETERMINED THAT THERE'S A

20   CONTRACT, HOW DO I RESOLVE A PROMISSORY ESTOPPEL ISSUE WHICH

21   WOULD BE OUT?

22        MR. BAIK:  IT WOULD EFFECTIVELY BE A FINDING IN THE

23   ALTERNATIVE YOUR HONOR, SO THAT IT SEEMS TO BE LSI'S INTENT TO

24   SORT OF REVISIT THIS ISSUE EVEN THOUGH THEY ARE NOW SAYING

25   THERE IS NO DISPUTE ABOUT IT IN THE NINTH CIRCUIT, THAT THE

1    NINTH CIRCUIT WOULD HAVE THE BENEFIT OF SAYING, OKAY, IF WE

2    DISAGREE WITH JUDGE WHYTE ON THE ISSUE OF CONTRACT, WE STILL

3    HAVE THE ALTERNATIVE FINDING THAT THE PROMISES THAT LSI MADE TO

4    THE IEEE WERE REASONABLY RELIED ON BY LSI AS AN IMPLEMENTER OF

5    THE IEEE STANDARDS AND IN THAT WAY THE NINTH CIRCUIT HAS THE

6    BENEFIT OF THOSE ALTERNATIVE FINDINGS IN ITS REVIEW.

7           THE COURT:  IF YOU REMOVE AN ISSUE BY WAY OF A

8    SUMMARY JUDGEMENT MOTION, YOU DON'T GO AHEAD AND TRY THAT ISSUE

9    IN THE CASE THAT THE NINTH CIRCUIT DISAGREES, DO YOU?

10          MR. BAIK:  I ABSOLUTELY AGREE WITH YOUR HONOR, AS

11   LONG AS EVERYBODY IS UNDER THE SAME IMPRESSION ABOUT WHAT'S

12   DISPUTED AND WHAT'S NOT DISPUTED.

13       WE AGREE WITH THE COURT, THE COURT MADE A FINDING THERE

14   IS NO DISPUTE ABOUT THE EXISTENCE OF A CONTRACT THAT REALTEK

15   CAN ENFORCE OF A THIRD PARTY BENEFICIARY.  AND THAT'S THE

16   PREMISE OF LSI'S MOTION.  BUT WE ALSO KNOW IN THE NINTH CIRCUIT

17   THEY ARE TAKING THE EXACT OPPOSITE POSITION AND THAT'S WHAT I

18   THINK IS FRANKLY VERY UNUSUAL ABOUT THIS CASE.

19          THE COURT:  LET'S ASSUME THEY HAD TAKEN THE SAME

20   POSITION BEFORE ME THAT YOU SAY THEY ARE TAKING IN THE

21   NINTH CIRCUIT.

22       WHY WOULD I -- I MEAN, IF YOU REMOVE AN ISSUE FROM A CASE

23   BY A PARTIAL SUMMARY JUDGEMENT, YOU DON'T -- THAT'S REMOVED

24   FROM THE TRIAL, IS IT NOT?

25          YOU DON'T TRY IT ON THE ASSUMPTION -- YOU DON'T TRY AN

1    ISSUE ON THE ASSUMPTION THAT THE NINTH CIRCUIT MIGHT REVERSE A

2    DECISION THE TRIAL COURT MADE.

3           MR. DAIRE:  I THINK THAT'S ALL TRUE.

4     AND THE REASON THIS CASE IS A LITTLE BIT DIFFERENT IS LSI

5    IS PRESENTING IT'S MOTION ON THE PARTIAL SUMMARY JUDGEMENT ON

6    THE VERY BASIS THAT THE COURT FOUND THAT THERE WAS A CONTRACT

7    THAT REALTEK CAN ENFORCE WHICH IS THEY MADE COMMITMENTS TO THE

8    IEEE, AND THAT REALTEK IS A THIRD PARTY BENEFICIARY AS AN

9    IMPLEMENTER OF THE IEEE STANDARDS.

10     IF LSI IS TAKING THAT POSITION IN THIS COURT THEN IT

11    NEEDS TO TAKE THAT POSITION IN THE NINTH CIRCUIT.  OR IF IT'S

12    GOING TO INSIST ON TAKING CONTRADICTORY POSITIONS, WE FEEL LIKE

13    WE ARE IN BETWEEN A ROCK AND A HARD PLACE BECAUSE THERE'S NO

14    QUESTION IN OUR MIND THAT THE COURT'S FINDINGS ON THE BREACH OF

15    CONTRACT WERE ABSOLUTELY CORRECT.

16     BUT IF THE NINTH CIRCUIT WERE TO REVERSE, REALTEK IS IN A

17    POSITION WHERE IT'S TEED UP THAT ISSUE FOR TRIAL, IT'S GOT

18    WITNESSES LINED UP TO ADDRESS THOSE ISSUES, IT'S DONE DISCOVERY

19    ON THOSE ISSUES, BUT IT'S GOING TO BE YEARS BEFORE THE MATTER

20    CAN GET TO TRIAL.

21     AGAIN, IF LSI WAS WILLING TO STIPULATE TO THE EXISTENCE

22    OF A VALID ENFORCEABLE CONTRACT BY REALTEK, WE ARE NOT ASKING

23    LSI TO STIPULATE THAT THERE WAS A BREACH, WE ARE NOT ASKING LSI

24    TO STIPULATE TO DAMAGES OR THAT THERE WERE DAMAGES, BUT JUST

25    THE VERY BASIS OF THEIR MOTION IN THIS COURT, WE WOULD HAVE NO

1   PROBLEM WITH DISMISSING THE PROMISSORY ESTOPPEL CLAIM.  AND IN

2   FACT VOLUNTEERED TO DO THAT.

3       SO I THINK YOUR HONOR'S ANALYSIS IS EXACTLY CORRECT WITH

4   THE EXCEPTION OF WHAT'S UNUSUAL IN THIS CASE WHICH IS THAT LSI

5   IS BASICALLY SEEKING TO HAVE THE BENEFIT OF THE COURT'S RULING

6   WHILE STILL TAKING THE OPPOSITE DECISION IN THE NINTH CIRCUIT

7       THE COURT:  HOW IS IT TAKING THE OPPOSITE?

8       MR. BAIK:  BASICALLY THIS MOTION THIS MORNING IS IT'S

9   THE COURT'S FINDING THAT THERE'S AN ENFORCEABLE CONTRACT BY

10  REALTEK THAT REALTEK CAN ENFORCE AS A THIRD PARTY BENEFICIARY.

11  THAT'S THE SOLE BASIS OF THEIR MOTION.

12      THE COURT:  IF THE PROMISSORY ESTOPPEL CLAIM WERE

13  DISMISSED BY ME BECAUSE I FELT IT WASN'T VIABLE, WENT UP TO THE

14  NINTH CIRCUIT, THE NINTH CIRCUIT SAID THERE WAS NO CONTRACT,

15  YOU COULD THEN RAISE THE PROMISSORY ESTOPPEL CLAIM, COULD YOU?

16      MR. DAIRE:  YES.

17      AND THAT'S WHY WE FEEL THIS IS THE ROCK AND THE HARD PLACE.

18  I TRIED TO EXPLAIN EARLIER, YOUR HONOR, IS WE COULD AND IN THE

19  NORMAL COURSE OF THE CASE WE WOULD, BUT IF LSI IS SEEKING THE

20  BENEFIT OF YOUR HONOR'S RULING IN THIS COURT, THEN WE SHOULDN'T

21  BE PREJUDICED BY LOSS OF WITNESSES, LOSS OF DOCUMENTS, FADED

22  MEMORIES, ALL THOSE ISSUES SHOULD BE PRESENTED TO THE

23  NINTH CIRCUIT IN OUR VIEW IN ONE NEAT BOW IN ONE PACKAGE.

24      I UNDERSTAND IF YOUR HONOR'S INCLINATION IS TO DISMISS.

25  AND THE FINAL POINT I WOULD MAKE IS IF THAT IS YOUR HONOR'S

1    INCLINATION, WHAT WE WOULD ASK IS JUST THE CAUSE OF ACTION BE

2    DISMISSED WITHOUT PREJUDICE SO THAT IT'S CLEAR AS THE CASE

3    MOVES FORWARD THAT THERE WAS NO FINDING THAT THE PROMISSORY

4    ESTOPPEL CLAIM WASN'T VALID EXCEPT FOR THE FACT THAT A BREACH

5    OF CONTRACT EXISTS.

6            THE COURT:  WHAT IF LSI HAD TAKEN THE POSITION BEFORE

7    ME THAT THERE WAS NO CONTRACT AND LOST?

8            MR. BAIK:  IT WOULD BE PERFECTLY APPROPRIATE THEN TO

9    DISMISS THE PROMISSORY ESTOPPEL CLAIM WITHOUT PREJUDICE IN THE

10   EVENT THAT THE NINTH CIRCUIT REVERSES ON THE BREACH OF

11   CONTRACT.

12       THE KEY DISTINCTION HERE IN OUR VIEW IS LSI IS SEEKING

13   THE BENEFIT OF THE COURT'S RULING SAYING, WE EMBRACE THE

14   COURT'S RULING THAT THERE IS AN ENFORCEABLE CONTRACT, BUT THEN

15   TAKING THE EXACT 180 CONTRADICTORY VIEW IN THE NINTH CIRCUIT.

16           THE COURT:  OKAY.

17           MR. SIPIORA:  GOOD MORNING, YOUR HONOR.

18       YOUR RULING -- TENTATIVE RULING WAS CORRECT, WE WOULD

19   SUBMIT, AND YOUR THOUGHT PROCESS IS ACTUALLY RIGHT SPOT ON,

20   YOUR HONOR.

21       THEY HAVE ALTERNATIVE THEORIES.  THE CASE LAW IS CLEAR

22   THEY HAVEN'T ARGUED AGAINST THE CASE LAW THAT YOU COULD ONLY

23   HAVE ONE OR THE OTHER THEORY.

24       AND BY VIRTUE OF HAVING MOVED FOR SUMMARY JUDGEMENT IT'S

25   EXCEEDED ON THE GROUNDS THERE'S A CONTRACT.  THE ULTIMATE

1   THEORY OF PROMISSORY ESTOPPEL IS NOT AVAILABLE.  IT'S THAT

2   SIMPLE.  DISMISSAL SHOULD BE WITH PREJUDICE.

3        IF IT GOES UP ON APPEAL, IF THE DECISION IS REVERSED THEN

4   IT ALL COMES BACK DOWN.

5            THE COURT:  THEN I HAVE TO TRY THE PROMISSORY

6   ESTOPPEL.

7            MR. SIPIORA:  IN THEORY.

8        THE PROBLEM IS, AND WE RAISED IN OUR MOTION AND HAD A

9   RULE 54 REQUEST, WE NEVER COMPLETED DISCOVERY ON THAT PART OF

10  THE CASE.  DISCOVERY WAS NOT COMPLETE AT THE TIME OF THE

11  SUMMARY JUDGEMENT RULING AND WE HADN'T EVEN DONE EXPERT REPORTS

12  AT THAT POINT.

13       SO THERE ISN'T FULL DISCOVERY ON THE EVIDENTIARY ISSUES

14  RELATING TO THEIR PROMISSORY PART, THE RELIANCE PART.  HE SAYS

15  DISCOVERY IS COMPLETE BECAUSE HE HAS HIS WITNESSES, BUT WE

16  DIDN'T TAKE DEPOSITIONS ON THAT ISSUE, WE DIDN'T COMPLETE

17  DISCOVERY.  AND THE EXPERTS DID NOT OPINE THAT, SO THE RECORD

18  IS NOT COMPLETE.

19       THAT BEING SAID, WHAT YOU SAID IS CORRECT, IF IT GOES UP

20  ON APPEAL.  IT'S LIKE ANY OTHER CASE WHEN YOU GRANT SUMMARY

21  JUDGEMENT, EVERY PART IS TRUE.  OTHERWISE YOU WOULD BE TRYING

22  EVERY CASE AND GIVING AN ADVISORY OPINION ON THE THEORY WE GET

23  REVERSED.  THAT'S WHAT THEY ARE SAYING.

24       OUR POSITION HAS BEEN THE SAME THROUGHOUT.  WE THINK IT'S

25  NOT ACCURATE NOT VIABLE.  YOU DISAGREED WITH US AND FOUND A

1    CONTRACT.

2         THE ALTERNATIVE THEORY WE SAY IS ALSO NOT VIABLE BUT NOW

3    THE LAW IS CLEAR ONCE YOU FIND THE CONTRACT, IT'S ABSOLUTELY

4    CLEAR THAT YOU CAN'T SUSTAIN, THEY CAN'T SUSTAIN A PROMISSORY

5    ESTOPPEL THEORY.

6         AND HAVING DECIDED, UNLESS THE COURT IS GOING TO REVERSE

7    ITS PRIOR DECISION, THEY DON'T HAVE A CASE UNDER THE LAW TO

8    PRESENT TO THE JURY ON THIS.  THEY CAN'T HAVE BOTH THEORIES.

9         AND IT'S APPROPRIATE TO DISMISS IT AS YOU HAVE AND WHEN

10   THE CASE IS ALL OVER IT WILL GO UP ON APPEAL OR NOT DEPENDING

11   ON WHAT HAPPENS.

12        SO THE APPROPRIATE OUTCOME HERE IS AS YOU SAID PARTIAL

13   SUMMARY JUDGEMENT DISMISSED BASED ON THE LAW IN THE FACTS WITH

14   PREJUDICE AS IT WERE.  THEN AT THE END OF THE CASE WHEN THE

15   PACKAGE IS DONE AS HE SAYS IT WILL GO UP ON APPEAL AND THE

16   COURT OF APPEALS WILL DECIDE.

17             THE COURT:  OKAY.

18             MR. SIPIORA:  ONE OTHER POINT IF I COULD ON THE

19   ISSUE.  WE WILL ADDRESS IT IN A MOMENT.

20        HE CHARACTERIZES THE RAND ISSUE AS AN EQUITABLE ISSUE.  I

21   DON'T KNOW IF YOU PICKED IT UP IN HIS COMMENT THERE, AND IT'S

22   ONE OF THE ISSUES, I DON'T KNOW IF YOU WANT TO TALK SEPARATELY,

23   BUT THE CASE MANAGEMENT CONFERENCE STATEMENT IS THEY ARE

24   ENTITLED TO A BENCH TRIAL AND WE DON'T GET A JURY TRIAL ON THE

25   ISSUE WITH RESPECT TO RAND DETERMINATION.

1    THAT'S PART OF WHAT HIS ANALYSIS WAS JUST A MOMENT AGO.

2    AND ONE THING WE WOULD ASK THE COURT TO RESOLVE TODAY IS THE

3    ISSUE OF OUR RIGHT TO A JURY TRIAL.  BECAUSE YOU MADE A

4    DETERMINATION AS TO A BREACH OF CONTRACT AND NOW WHAT'S LEFT IS

5    THE DETERMINATION OF THE RAND RATE AND THEN ARGUABLY IF THERE

6    ARE DAMAGES THE AMOUNT OF DAMAGES WITH RESPECT TO THE BREACH OF

7    CONTRACT.

8    THEY HAVE CITED IN THEIR CASE MANAGEMENT CONFERENCE JUDGE

9    ROBART'S DECISION IN MICROSOFT WHERE HE HAD A BENCH TRIAL ON

10   THE DETERMINATION OF THE RAND RATE, ARE YOU FAMILIAR WITH THAT.

11   THE PARTIES STIPULATED TO A BENCH TRIAL.

12   IN THIS CASE THERE'S NO STIPULATION.  WE BOTH HAVE JURY

13   DEMANDS, AND AS THE NEXT MONTH WE WILL BE PREPARING OUR

14   PRETRIAL DOCUMENTS INCLUDING VOIR DIRE AND ALL THE OTHER THINGS

15   IT'S VERY IMPORTANT WE GET A RESOLUTION OF THIS ISSUE THAT THIS

16   IS IN FACT AS WE HAVE REQUESTED A JURY TRIAL ON ALL THE ISSUES

17   THAT ARE PRESENTED AND NOT AS HE'S CHARACTERIZING IT SOME KIND

18   OF A BENCH TRIAL.

19   MAYBE OF ALL THINGS IT'S NOT CLEAR WHAT THEY ARE SAYING,

20   BUT WE WOULD ASK YOU TO GIVE US GUIDANCE ON THAT TODAY IF YOU

21   WOULD, PLEASE.

22   THE COURT:  OKAY.  THAT WAS ON MY LIST.

23   MR. SIPIORA:  THANK YOU.

24   MR. BAIK:  TWO, YOUR HONOR, JUST QUICK POINTS ON THE

25   ISSUE OF THE PROMISSORY ESTOPPEL PIECE.

1           FIRST OF ALL, UNTIL THIS MATTER WAS PRESENTED TO THE

2      COURT FOR HEARING TODAY, PROMISSORY ESTOPPEL EXISTED IN THIS

3      CASE, DISCOVERY WAS TAKEN ON PROMISSORY ESTOPPEL BY BOTH

4      PARTIES.  REALTEK PUT UP A WITNESS, SHAWN COFFEY, LSI INQUIRED

5      OF THAT WITNESS, WE SUBMITTED A PIECE OF HIS DECLARATION WITH

6      OUR OPPOSITION TO THE MOTION.

7           SO THAT'S WITH RESPECT TO THE DISCOVERY PIECE.  AND WITH

8      RESPECT TO THE RAND PIECE, I WILL LEAVE THAT TO MR. BAIK IN

9      CONNECTION WITH HIS PIECE OF THE ARGUMENT THIS MORNING.

10          THANK YOU, YOUR HONOR.  SUBMITTED

11           MR. BAIK:  GOOD MORNING, YOUR HONOR.

12          WITH REGARD TO THE CONTINUANCE, YOU ARE RIGHT THE PARTY

13     DID AND THE COURT DID AGREE UPON A SCHEDULE EARLY IN THE CASE.

14          BUT A LOT OF THINGS HAVE CHANGED SINCE THE BEGINNING OF

15     THE CASE.  PROBABLY THE BIGGEST THING IS THE ITC INITIAL

16     DETERMINATION HAS ALREADY COME OUT AND THE INITIAL

17     DETERMINATION FOUND THERE WAS NO INFRINGEMENT.  SO THERE ARE

18     REALLY NO BASIS FOR THEM TO SEEK DAMAGES AT THIS POINT.

19          SO IT COULD BE THAT WE WILL GO FORWARD WITH SETTING A

20     RAND RATE THAT WE MAY NOT NEED.  SO THAT'S ONE REASON WHY WE

21     BELIEVE THERE WILL BE LEAVE TO CONTINUANCE TO PUSH OUT THE DATE

22     AND SEE SOME RESOLUTION ABOUT THE INFRINGEMENT SIDE OF THE

23     CASE.

24          THE OTHER THING IS KIND OF WHAT MR. SIPIORA TALKED ABOUT.

25     THERE'S AN APPEAL ON THE BREACH OF CONTRACT, IT'S GOING TO GO

1    UP TO THE NINTH CIRCUIT, IT'S IN BRIEFING RIGHT NOW AND IF IT

2    COMES BACK, WE ARE GOING TO HAVE TO HAVE ANOTHER TRIAL.

3         AND MR. SIPIORA WANTS A JURY TRIAL.  SO WE COULD HAVE A

4    JURY TRIAL IN NOVEMBER IF THE NINTH CIRCUIT AFFIRMS THEIR

5    APPEAL THEN WE WOULD HAVE TO HAVE A SECOND TRIAL ANOTHER JURY

6    TRIAL.

7         WE DON'T BELIEVE A JURY TRIAL IS NECESSARY AT THIS POINT,

8    BUT IF THEY HAD IT THAT WAY WE WOULD HAVE TWO DIFFERENT JURY

9    TRIALS AND ANOTHER REASON WHY WE NEED TO WAIT.

10        A THIRD REASON WHY WE NEED TO WAIT IS BECAUSE OUR DAMAGES

11   ARE ACCRUING RIGHT NOW.  THEY SAID IN THEIR BRIEFING THEY ARE

12   GOING TO FIGHT THE ITC MATTER TOOTH AND NAIL, THEY ARE GOING,

13   THEY'VE ALREADY PETITIONED A REVIEW WITH FULL COMMISSION.  IF

14   THEY LOSE THERE THEY ANTICIPATE APPEALING TO THE FEDERAL

15   CIRCUIT.

16        WE ARE ACCRUING DAMAGES AND HAVING TO DEPEND OURSELVES

17   AGAINST THEIR IMPROPER SEEKING OF AN INJUNCTION AGAINST US IN

18   THE ITC.

19        WE WON'T BE ABLE TO HAVE THAT BEFORE THE COURT AND THE

20   JURY IN NOVEMBER IF WE GO FORWARD IN NOVEMBER BECAUSE WE WILL

21   STILL BE ACCRUING DAMAGES.

22        AND AGAIN, THEY'RE DISPUTING WHETHER THE DAMAGES AND

23   ATTORNEYS FEES WE ARE ACCRUING RIGHT NOW ARE REASONABLE.

24        SO I ASSUME THEY ARE GOING TO WANT A JURY TRIAL ON THAT

25   ISSUE AS WELL.

1          SO WE ARE GOING TO HAVE TO HAVE A JURY TRIAL IN NOVEMBER

2     AND I ASSUME WE WOULD BE ABLE TO COME BACK TO THE COURT ONCE

3     THE ITC COMPLETED IN TOTALITY, AND WE WOULD HAVE TO COME BACK

4     FOR FURTHER DAMAGES ON THAT AND I WOULD ASSUME THEY WOULD WANT

5     ANOTHER JURY TRIAL ON THAT ISSUE AS WELL, YOUR HONOR.

6          THE COURT:  WELL, NO MATTER WHAT SCHEDULE IS ADOPTED,

7     THERE'S A POTENTIAL FOR ATTORNEY'S FEES POST JUDGMENT, RIGHT?

8          MR. BAIK:  YES.

9          BUT THE QUESTION IS, THEY'RE DISPUTING THE REASONABLENESS

10    OF THOSE FEES UNLESS THEY ARE WILLING TO STIPULATE NOW THAT

11    WOULD BE A COURT ISSUE AND YOU CAN DETERMINE WHETHER THEY ARE

12    REASONABLE NOW.  I ASSUME THEY ARE ANTICIPATING THEY ARE GOING

13    TO WANT A JURY TRIAL ON THE REASONABLENESS OF THOSE THINGS.

14         SO YOU ARE GOING TO HAVE TO HAVE A JURY TRIAL IN NOVEMBER

15    ABOUT THE REASONABLENESS OF THE FEES THEN YOU WILL HAVE TO HAVE

16    A JURY TRIAL LATER ON ABOUT THE REASONABLENESS OF THE FEES SO

17    AGAIN YOU ARE GOING TO HAVE TO HAVE TWO JURY TRIALS.

18         THEIR STATEMENTS ABOUT PREJUDICE IS REALLY UNFOUNDING.

19         THE COURT:  LET ME JUST STOP YOU THERE FOR A MINUTE.

20         TAKE YOUR STANDARD BREACH OF CONTRACT WHERE THERE'S AN

21    ATTORNEY FEES PROVISION.  CASE GOES TO TRIAL AND ONE SIDE WINS,

22    IS ENTITLED TO ATTORNEYS FEES.

23         THERE'S A HEARING ON ATTORNEYS FEES AND THOSE ARE

24    DETERMINED.  THEN THERE'S AN APPEAL, AND LET'S ASSUME THE TRIAL

25    COURT'S DECISION IS AFFIRMED THEN THERE'S MORE ATTORNEYS FEES,

1      RIGHT?

2              MR. BAIK:  YES, YOUR HONOR.

3              THE COURT:  SO THERE COULD BE ANOTHER HEARING ON

4      ATTORNEY'S FEES.

5              MR. BAIK:  YES, THERE COULD BE A HEARING BUT I THINK

6      WHAT THE OTHER SIDE IS GOING TO BE ASKING FOR IS A FULL BLOWN

7      TRIAL BECAUSE THEY ARE DISPUTING THE REASONABLENESS AND WHETHER

8      WE MITIGATED THE DAMAGE OR NOT.

9          SO I ASSUME THEY ARE GOING TO SAY THAT'S A JURY ISSUE AND

10     THEY ARE GOING TO PRESENT IT TO A JURY.  WE ARE OKAY PRESENTING

11     IT IN FRONT OF THE COURT AND HAVING A HEARING ON THE ATTORNEY'S

12     FEES BUT THE BRIEFING LEADS US TO BELIEVE THEY ARE GOING TO

13     WANT A JURY TRIAL ON THAT ISSUE, YOUR HONOR.

14         THE NEXT ISSUE IS THAT THEY STATED IN THEIR PAPERS THAT

15     THEY ARE SOMEHOW PREJUDICED AND THEY ARE NOT GOING TO GET THEIR

16     DAY IN COURT, THAT IF WE PUSH THE TRIAL OFF TO MARCH, ONE OF

17     THEIR APPELLANT PATENTS AND GOING TO EXPIRE.

18         WE DIDN'T HAVE THE OPPORTUNITY FOR A REPLY BRIEF

19     YOUR HONOR BUT I WILL HAND YOU NOVEMBER 30TH, 2012,

20     SUPPLEMENTAL JOINT CASE MANAGEMENT STATEMENT.

21         AND IF YOU LOOK AT APPENDIX A WHERE WE HAVE COMPETING

22     SCHEDULES AT THAT POINT IN TIME YOUR HONOR, DO YOU HAVE IT,

23     YOUR HONOR?

24             MR. BAIK:  APPENDIX A, RIGHT AFTER PAGE 9.

25             THE COURT:  OKAY.

1    MR. BAIK:  OKAY.  SO THESE WERE THE COMPETING

2    SCHEDULES AT THE TIME.  AND LSI COMPLAINS NOW THAT WE HAVE A

3    TRIAL IN MARCH, THEIR PATENTS WILL EXPIRE, THEY NEED THEIR DAY

4    IN COURT NOW.  AS YOU CAN SEE BACK IN NOVEMBER 2012, THE TRIAL

5    DATES THEY ASKED FOR WAS IN MARCH.

6    SO THERE'S NO PREJUDICE.  I MEAN, IT'S JUST FEIGN

7    PREJUDICE.  THERE'S ABSOLUTELY NO PREJUDICE TO THEM YOUR HONOR.

8    ON A FINAL NOTE, THE PARTIES HAD ALSO AGREED TO ENTER

9    INTO MEDIATION AFTER FACT DISCOVERY, YOUR HONOR.  UPON THEIR

10   FILING OF THE APPEAL, WE AGREED TO ENTER INTO MEDIATION WITH

11   THE NINTH CIRCUIT MEDIATION PROGRAM.  LSI DECLINED TO DO SO.

12   WE HAD OFFERED TO LSI, WE'RE WILLING TO PURSUE OTHER

13   METHODS OF MEDIATION AND WE HAVE NOT HEARD BACK FROM THEM.  WE

14   HAVE JUST NOW INITIALLY STARTED OPENING DIALOG ABOUT POTENTIAL

15   SETTLEMENT BUT I THINK IT WOULD BE ADVANTAGEOUS AT THIS POINT

16   FOR US TO PURSUE MEDIATION, THAT WOULD ACTUALLY TAKE SOME TIME,

17   YOUR HONOR.

18   THE PARTIES HAD AGREED IN THEIR JOINT CASE MANAGEMENT

19   STATEMENT TO MEDIATION AFTER FACT DISCOVERY, BUT UP UNTIL THIS

20   POINT LSI HAS DEEMED NOT TO GO FORWARD WITH IT EVEN THOUGH WE

21   HAVE STATED WE ARE WILLING TO DO SO YOUR HONOR.

22   AND I THINK IT WOULD BE ADVANTAGEOUS FOR THE PARTIES TO

23   AT LEAST SIT DOWN IN ACCORDANCE WITH YOUR STANDING ORDERS TO

24   EXHAUST SETTLEMENT DISCUSSIONS BEFORE THE PRETRIAL HEARING.

25   SO IN A NUT SHELL, YES WE AGREED TO A SCHEDULE WAY BACK

```
1    WHEN, BUT MANY THINGS HAVE CHANGED MANY BALLS ARE UP IN THE

2    AIR, ANY ONE OF WHICH CAN KIND OF CHANGE THE OUTCOME OF WHAT

3    THE TRIAL SHOULD BE, WHETHER WE EVEN NEED TO HAVE A TRIAL.

4         SO THOSE ARE THE REASONS WHY WE BELIEVE AT LEAST A

5    CONTINUANCE AT THIS POINT OR EACH JUST TO KIND OF STAY THE

6    TRIAL FOR NOW TO SEE HOW THINGS TURN OUT IN TERMS OF ITC, THE

7    APPEAL AND POTENTIALLY A POSSIBILITY OF SETTLEMENT.

8         AND WITH REGARD TO JURY TRIAL THAT'S KIND OF AN ISSUE

9    THAT AGAIN APPLIES INTO ALL OF THIS.  WE ARE OKAY WITH NOT

10   HAVING A JURY TRIAL YOUR HONOR.  THERE ARE SOME ISSUES THAT

11   THEY SAY REQUIRE A JURY TRIAL.

12        THE RAND RATE.  WE DON'T BELIEVE THAT TO BE THE FACT.  WE

13   BELIEVE YOUR HONOR CAN SET THE RAND RATE RANGE AT THE VERY

14   LEAST.  BUT IF THEY WANT TO HAVE A JURY TRIAL, IT PUTS US IN A

15   HARD SPOT THAT WE ARE GOING TO HAVE A JURY TRIAL NOW IN

16   NOVEMBER THINGS MAY CHANGE THEN WE HAVE ANOTHER JURY TRIAL

17   FURTHER DOWN THE LINE.

18        THE COURT:  DO YOU DISAGREE WITH WHAT THEY SAY

19   THEY'RE ENTITLED TO A JURY ON?

20        MR. BAIK:  WE HAVEN'T DISCUSSED THE SPECIFIC ISSUES

21   THAT THEY BELIEVE THEY HAVE ENTITLEMENT TO A JURY TRIAL.  SO I

22   CAN'T ADDRESS THAT RIGHT NOW.

23        I THINK WE HAVE SOME TIME TO TALK ABOUT WHAT EXACTLY

24   THOSE ISSUES ARE, THEY BELIEVE THEY ARE ENTITLED TO A JURY.  I

25   CAN GIVE YOU A FULLER ANSWER.  BUT AT THIS POINT I DON'T REALLY
```

1    KNOW EXACTLY WHAT THEY WANT A JURY ON.

2              THE COURT:  IT'S YOUR POSITION THAT YOU'RE ENTITLED

3    TO ALL THE ATTORNEY'S FEES YOU HAVE INCURRED IN RESPONDING TO

4    THE ITC ACTION, CORRECT.

5              MR. BAIK:  YES, YOUR HONOR.

6              THE COURT:  WHAT IF LSI OFFERED A RAND LICENSE SOME

7    TIME AFTER THE ITC PROCEEDINGS WERE INITIATED, WOULD THAT, AND

8    YOU REFUSED IT, WOULD THAT CUT OFF YOUR DAMAGES?

9              MR. BAIK:  I DON'T THINK SO YOUR HONOR BECAUSE THEY

10   HAVEN'T ESTABLISHED THAT WE NEEDED -- AS WE SAID WAY EARLY ON

11   IN THE CASE, WHETHER WE SAID RAND RATE OR NOT, WE'RE STILL OPEN

12   TO BE ABLE TO PURSUE OUR DEFENSES AND INFRINGEMENT AND

13   INVALIDITY.  AND WHAT THE ITC HAS SHOWN IS WE DON'T IN FACT

14   INFRINGE.  SO AT THIS POINT IN TIME WE DON'T REALLY NEED A

15   LICENSE.

16        AND THAT'S REALLY THE MAIN POINT, DO WE NEED A RAND TRIAL

17   IF AT THIS POINT IN TIME THERE'S, THE ONLY FINDING IS THAT WE

18   DON'T INFRINGE AND WE MAY NOT NEED THIS LICENSE.

19        SO I THINK THAT KIND OF, THAT'S THE HORSE IN FRONT OF THE

20   CART.  DO WE INFRINGE?  RIGHT NOW WE DON'T.  SO WE MAY NOT NEED

21   A LICENSE.

22        SO IF SOMEBODY'S PROMISED A RAND LICENSE, THEY CAN'T SUE

23   FOR AN INJUNCTION EITHER IN DISTRICT COURT OR AT THE ITC UNTIL

24   SUCH TIME AS A RAND --

25              MR. BAIK:  UNTIL WHEN?

```
 1              THE COURT:  UNTIL SUCH TIME -- LET ME START OVER.

 2          IF SOMEBODY'S PROMISED A RAND LICENSE, YOU COULD NOT --

 3      SOMEBODY PROMISED TO OFFER A RAND LICENSE.  THEY MAKE AN OFFER

 4      THAT THEY FEEL IS A RAND RATE, DOES THE PARTY WHO, THE HOLDER

 5      OF THE TECHNOLOGY OR THE PATENT SAYS INFRINGES HAVE TO SUE FOR

 6      AN INJUNCTION.

 7              WHEN CAN A PARTY SUE FOR AN INJUNCTION WHEN IT IS OFFERED

 8      WHAT IT CONSIDERS IS A RAND LICENSE.

 9              MR. BAIK:  I THINK I UNDERSTAND YOUR PREVIOUS

10      QUESTION NOW YOUR HONOR ABOUT --

11              THE COURT:  I'M GLAD YOU DO BECAUSE I DIDN'T.

12              MR. BAIK:  THE PRIOR QUESTION WAS IF THEY HAD OFFERED

13      US A RAND RATE AND IT WAS ESTABLISHED THAT IT WAS A RAND RATE

14      LICENSE SOME TIME IN THE MIDDLE OF ITC INVESTIGATION WOULD IT

15      CUT OFF DAMAGES, THAT WOULD BE A YES, THAT'S A MAYBE.  AND I

16      WOULD SAY IF THEY DID GIVE US A RAND RATE AND EVERYONE AGREED

17      THERE WAS A RAND RATE OFFERED TO US SOMEWHERE IN THE MIDDLE OF

18      THE ITC INVESTIGATION, AND IN THE INVESTIGATION IT WAS

19      DETERMINED WE DO INFRINGE AND THE PATENT WAS NOT INVALID, THEN

20      I MAY IN THAT SCENARIO AGREE THAT IT MIGHT HAVE CUT OFF THE

21      DAMAGES BECAUSE AT THAT POINT IN TIME THEY OFFERED US A RAND

22      RATE AND EVENTUALLY IT WAS DETERMINED THAT WE DID NEED THE

23      LICENSE.

24              BUT THAT'S NOT THE CASE, YOUR HONOR.

25              ONE, THEY NEVER OFFERED US THE RAND RATE, THEY WENT AHEAD
```

1   AND SUED US, RIGHT.

2          AND TWO, THERE'S A FINDING THAT THERE IS NO INFRINGEMENT,

3   RIGHT.  SO THERE'S A VERY DIFFERENT SCENARIO TODAY THAN THE

4   HYPOTHETICAL THAT YOU'VE PUT FORTH, YOUR HONOR.

5          THE COURT:  IT'S A DIFFERENT ISSUE AS TO WHETHER

6   SOMEONE INFRINGES AND NEEDS A LICENSE AND WHAT IS A RAND RATE.

7   THE RAND RATE IS DETERMINED BASED UPON AN ASSUMPTION THAT

8   THERE'S INFRINGEMENT.

9          MR. BAIK:  I WOULD SAY THERE'S AN ASSUMPTION THAT

10  THERE'S A REQUIREMENT FOR THE LICENSE BUT THAT ASSUMPTION IN

11  THIS CASE IS WRONG BECAUSE THERE IS NO REQUIREMENT FOR A

12  LICENSE BECAUSE THE ONLY BODY THAT'S HEARD THE EVIDENCE UNDER

13  NINTH CIRCUIT SAYS THERE IS NO INFRINGEMENT.

14     SO THE ASSUMPTION YOU WOULD SAY MAYBE THE ASSUMPTION FOR

15  SETTING THE RAND RATE THAT THERE WAS INFRINGEMENT BUT IN THIS

16  CASE THE ITC HAS PROVEN THAT ASSUMPTION IS WRONG.

17     SO FOR THIS CASE THERE IS NO INFRINGEMENT, IT'S POSSIBLE

18  THAT WE DON'T EVEN NEED A LICENSE.  THEREFORE WHY PROCEED WITH

19  THE TRIAL NOW WHEN IT COULD BE AN ISSUE THAT WE DON'T NEED TO

20  RESOLVE AT THIS POINT IN TIME.

21          THE COURT:  WHETHER OR NOT REALTEK INFRINGES DOESN'T

22  AFFECT WHAT A RAND LICENSE WOULD BE, DOES IT.

23          MR. BAIK:  IT COULD YOUR HONOR, BECAUSE ONE OF THE

24  THINGS THEY WOULD PROBABLY LIKELY PURSUE IS THE COMMERCIAL

25  SUCCESS OF THE INVENTION.

1    AND THEY WILL POINT TO OUR SALES AND THEY WILL SAY YOU

2    INFRINGE, YOU SOLD A BILLION UNITS, VERY SUCCESSFUL, VERY

3    IMPORTANT INVENTION.

4    AND WE ARE GOING TO SAY, NO, WE DON'T INFRINGE THEREFORE

5    YOU CAN'T USE OUR OWN SALES AS A MEASURE OF COMMERCIAL SUCCESS

6    TO SHOW HOW IMPORTANT OUR INVENTION IS SO IT DOES PLAY INTO IT

7    YOUR HONOR.

8    THE COURT:  WELL, IT DOES FROM A DIFFERENT

9    STANDPOINT, WHETHER OR NOT EVIDENCE WAS RELEVANCE TO

10   DETERMINING A RAND LICENSE AND WHETHER OR NOT A PARTICULAR

11   PRODUCT IT'S SELLING INFRINGES WOULD BE CONSIDERED IN

12   DETERMINING A REASONABLE ROYALTY IF IT DID INFRINGE BUT

13   WOULDN'T BE CONSIDERED IF IT DID NOT, RIGHT?

14   MR. BAIK:  RIGHT.

15   BUT THEIR POSITION IS IT DOESN'T INFRINGE, AND I ASSUME

16   THEY ARE GOING TO PRESENT THAT EVIDENCE, YOUR HONOR.

17   THE COURT:  BUT WHAT I'M SAYING IS FROM A THEORETICAL

18   STANDPOINT THE RAND LICENSE DOESN'T DEPEND ON WHETHER A

19   PARTICULAR PARTY INFRINGES, DOES IT?

20   MR. BAIK:  OTHER THAN KIND OF WHAT I JUST SAID, I

21   GUESS I KIND OF DISAGREE WITH IT BECAUSE IT DOES.

22   THE COURT:  IT MIGHT EXCLUDE SOME EVIDENCE THAT WOULD

23   AFFECT IT.

24   MR. BAIK:  HYPOTHETICALLY WHAT IS A RAND RATE, RIGHT

25   FOR THE PARTICULAR LICENSE EXCLUDEING WHATEVER THE POTENTIAL

```
1    INFRINGER IS INFRINGING OR NOT, THEN I HAVE TO GO BACK AND LOOK
2    AT THE RECORD BUT POTENTIALLY MAYBE IT DOESN'T, THERE ISN'T AS
3    MUCH INTERTWINEMENT.  BUT THE WAY THE CASE HAS BEEN POSTURED
4    TODAY, THEY HAVE BEEN INTERTWINED.
5              THE COURT:  OKAY.  ALL RIGHT.
6         THANK YOU.
7              MR. BAIK:  WITH REGARD TO THE JURY AND JUDGE ISSUES,
8    I THINK WE SHOULD DISCUSS THAT A LITTLE BIT MORE AFTER THIS
9    ISSUE OF THE CONTINUANCE, YOUR HONOR.
10             THE COURT:  OKAY.
11             MR. SIPIORA:  THANK YOU, YOUR HONOR.
12        ONCE AGAIN YOUR TENTATIVE ON THIS ISSUE IS CORRECT.  WE
13   BELIEVE, WE SUBMIT IT SHOULD BE DENIED THE REQUEST FOR
14   EXTENSION.
15        A COUPLE OF POINTS RELATIVE TO WHAT MR. BAIK HAS SAID.
16   NOWHERE IN ANYTHING THAT HE SAID DOES HE REFER OR ACKNOWLEDGE
17   THE FACT THAT YOU HAVE ENTERED A PRELIMINARY INJUNCTION IN THIS
18   CASE AGAINST LSI AND AGERE SYSTEMS FORBIDDING US FROM ENFORCING
19   ANY RIGHTS THAT WOULD FLOW OUT OF THE DETERMINATION IN THE ITC.
20   THAT'S A FUNDAMENTAL FACT THAT IMPACTS THE DETERMINATION HERE.
21        WHAT THEY ARE BASICALLY TRYING TO DO IS NOW THAT THEY
22   HAVE GOT A SITUATION WHERE ONE OF OUR PATENTS IS GOING TO
23   EXPIRE AT A CERTAIN POINT IN TIME NEXT YEAR, THEY ARE TRYING TO
24   PUSH THAT TRIAL DATE IN THIS CASE BACK BEYOND THE POINT WHERE
25   WE COULD EVER ENFORCE THAT PATENT IN THE ITC.
```

1    YOUR SCHEDULE ORIGINALLY HAD US IN TRIAL NOVEMBER 4TH,

2    WHICH IS THE CURRENT SCHEDULE, AND THE FINAL DETERMINATION OF

3    THE ITC WAS NOVEMBER 18TH.  AND YOU PICKED THOSE DATES ON

4    PURPOSE.  IF YOU RECALL BECAUSE YOU WANTED TO MAKE SURE THAT

5    THEY HAD AN OPPORTUNITY TO HAVE A RAND LICENSE RATE PROPOSAL,

6    RATE DETERMINED BEFORE ANY EXCLUSIONARY ORDER COULD BE ENTERED

7    BY THE ITC.

8    THAT'S STILL TRUE.  THERE'S AN INITIAL DETERMINATION,

9    IT'S CALLED INITIAL DETERMINATION FOR A REASON.  THERE'S AN

10   INITIAL DETERMINATION OF NO INFRINGEMENT AS TO THE TWO PATENTS.

11   BUT IMPORTANTLY, THE COURT OR THE ALJ, SPECIFICALLY MADE

12   ALTERNATIVE FINDINGS SAYING IF I HAD CONSTRUED THIS CLAIM TERM

13   DIFFERENTLY, ACCORDING TO HOW THE EVIDENCE WAS PRESENTED BY

14   LSI, THERE WOULD BE INFRINGEMENT.

15   AND HE MADE SPECIFIC FINDINGS.  THIS ISN'T HYPOTHETICAL

16   HE MADE SPECIFIC FINDINGS SAYING WITH RESPECT TO EACH PATENT IF

17   MY CLAIM CONSTRUCTION, AND IN SOME CASES IT'S ONE TERM AND

18   OTHER CASES THERE'S A FEW MORE TERMS.  IF THEY'RE REVERSED AND

19   LSI'S POSITION IS ADVANCED OR ACCEPTED BY THE COMMISSION, THEN

20   THERE WILL BE INFRINGEMENT OF BOTH PATENTS.

21   THAT'S THE RECORD THAT'S GOING UP TO THE ITC AND THEY

22   WILL MAKE A DECISION IN THE NEXT MONTH OR SO WHETHER THEY ARE

23   GOING TO HAVE BRIEFING ON IT AND HOW THEY WILL HANDLE IT.

24   THE ISSUE OF HOW THAT GETS RESOLVED IS NOT -- IS NO

25   LONGER GOING TO BE NOVEMBER 18TH.  THAT'S THE ORIGINAL DATE YOU

1    HAD NOVEMBER 4TH AND NOVEMBER 18TH.  NOW IT'S DECEMBER NINTH

2    THREE WEEKS LATER.  BUT YOU ARE SEEING THE RELATIVE TIME IS NO

3    DIFFERENT.  BUT THE ORIGINAL TIME YOU SET THIS TRIAL DATE WAS

4    TO PREVENT THEM FROM BEING IN A SITUATION WHERE THEY FACED AN

5    EXCLUSION ORDER WITHOUT THE RAND LICENSE.

6         NOVEMBER 4TH THE TRIAL OPPORTUNITY FOR THE RAND DECISION

7    HERE BY THE JURY.  NOVEMBER 18TH FINAL DETERMINATION IN THE

8    ITC.  NOTHING HAS CHANGED IN THAT RESPECT.  THEY STILL FACE A

9    POTENTIAL EXCLUSION ORDER.  THAT FINAL DETERMINATION WILL TAKE

10   PLACE DECEMBER 9TH, YOUR TRIAL DATE IS NOVEMBER 4TH.

11        WHAT THEY ARE TRYING TO DO NOW BASICALLY IS OVER REACH

12   BECAUSE YOU HAVE ENTERED A PRELIMINARY INJUNCTION THAT WOULD

13   PROHIBIT US FROM ENFORCING AS OF THE DETERMINATION BY THE ITC,

14   OUR RIGHTS UNDER THAT EXCLUSION ORDER AND PUSH THAT DATE OUT TO

15   MARCH FOR TRIAL, ONE OF OUR PATENTS EXPIRES IN FEBRUARY.

16        SO THE PREJUDICE IS RIGHT THERE, YOUR HONOR.  THE ISSUE

17   IS ARE WE GOING TO BE ABLE TO ENJOY THE BENEFIT OF OUR RIGHT TO

18   ENFORCE THE PATENTS IN THE ITC AFTER THEY HAD THEIR RAND

19   DETERMINATION MADE BY THIS COURT OR NOT.

20        AND WHAT THEY ARE THEY TRYING TO DO IS HAVE THEIR CAKE

21   AND EAT IT TO.  YOU MADE THE DETERMINATION THAT'S A BREACH.

22   THEY HAVE THE OTHER ISSUE DECIDED THEY HAVE THE INJUNCTION IN

23   PLACE AND WE CAN'T ENFORCE OUR RIGHTS.

24        SO WE WOULD SUBMIT, YOUR HONOR, ON THE TIMING AND TRIAL,

25   THE SCHEDULE HE SHOWED YOU, TO BE CLEAR IT'S SOMEWHAT

1     DISINGENUOUS HE'S SHOWING YOU A SCHEDULE THAT WE AGREED TO

2     TRIAL IN MARCH WHEN WE DIDN'T HAVE A PRELIMINARY INJUNCTION

3     AGAINST US WHERE WE COULDN'T ENFORCE OUR RIGHTS THAT'S THE

4     FUNDAMENTAL DIFFERENCE.

5          SO WITH RESPECT TO THAT WE WOULD SUBMIT YOUR DECISION IS

6     RIGHT.

7          HE DIDN'T MENTION WE DID HAVE A TRIAL IN THE ITC.  AND

8     ALL THE EVIDENCE THAT YOU HEARD ON THIS ISSUE OF RAND WAS HEARD

9     BY THE ALJ.  AND HE FOUND THEM ON EVERY ISSUE.  HE RULED

10    COMPLETELY AGAINST THEM ON THE RAND DEFENSE.

11         SO THE POINT IS THE ALJ'S DECISION COULD BE SUBJECT TO

12    REVIEW AND SCRUTINY, YES, AND WHEN THAT HAPPENS WE GET AN

13    EXCLUSION ORDER AT THE END OF THE PROCESS WE ARE GOING TO BE IN

14    THE SAME SITUATION YOU WERE WORRIED ABOUT IN THE BEGINNING.

15    THEY NEED A RAND DECISION BY THIS COURT

16         SO I WOULD RESPECTFULLY SUBMIT YOU SHOULD KEEP THE

17    SCHEDULE WE HAVE AND THE RIGHTS WE HAVE PROTECTED AND WE WILL

18    NOT LOSE THE BENEFIT OF THE SECOND PATENT ESSENTIALLY AS WELL,

19    BECAUSE IT DOES EXPIRE IN FEBRUARY AND THEY ARE ASKING FOR A

20    MARCH TRIAL DATE.  WE SHOULD HAVE THE TRIAL IN NOVEMBER AND RUN

21    THE PROCESS AS YOU SET IT UP.

22         THE COURT:  WELL, BASED ON THE ITC'S TIMING, YOU

23    WOULDN'T HAVE AN INJUNCTION IF YOU WERE RIGHT WHEN THE PATENT

24    EXPIRED.

25         MR. SIPIORA:  WE WOULD.  IT WOULDN'T BE A LONG PERIOD

1    OF TIME BUT THERE WOULD BE AN OPPORTUNITY FOR THE INJUNCTION.

2    THERE'S TWO PATENTS.  ONE EXPIRES IN FEBRUARY.  WITH THE

3    POSTPONEMENT OF COURSE BECAUSE THE SCHEDULE, THE AMOUNT OF THE

4    TIME OF THAT INJUNCTION IS VERY SHORT, IT'S LESS THAN A MONTH

5    BUT IT'S STILL THERE WITH RESPECT TO THE SECOND PATENT, BUT IT

6    STILL EXISTS.

7            THE COURT:  WHY IS THAT SO IMPORTANT?

8            MR. SIPIORA:  ENFORCING OUR RIGHTS.  THE ABILITY TO

9    ENFORCE OUR RIGHTS TO STOP THEM FROM IMPORTING, INFRINGING OUR

10   PRODUCT.  WE ARE THIS CLOSE TO A FINDING OF INFRINGEMENT.

11           THE COURT:  FOR A MONTH?

12           MR. SIPIORA:  WELL, YEAH.  BUT THE IDEA IS THESE

13   PRODUCTS ARE INFRINGING.

14       FOR A MONTHS WE WROTE THEM A LETTER AND IT'S PART OF THE

15   RECORD IN THIS CASE.  WE WROTE THEM A LETTER IN NOVEMBER 2002

16   THAT THEY WERE INFRINGING.

17       THEY HAVE BEEN RUNNING THEIR OPERATION SINCE 2002 KNOWING

18   THAT WE ASSERTED THEY WERE INFRINGING AND WE AT THE TIME HAD

19   TOLD THEM THEY NEEDED A LICENSE.  IT'S NOW OVER A DECADE LATER

20           THE COURT:  YEAH, BUT YOU DIDN'T CHOOSE TO DO

21   ANYTHING ABOUT IT FOR TEN YEARS.

22           MR. SIPIORA:  WELL, LSI WENT THROUGH A MERGER.  WENT

23   THROUGH A LOT OF DIFFERENT THINGS.  THERE'S A LOT OF EVIDENCE

24   RELATED NOT PRODUCED HERE BECAUSE IT WAS DECIDED IN SUMMARY

25   JUDGEMENT.

1       BUT AGAIN, THEY DIDN'T DO ANYTHING, YOUR HONOR.  LSI HAS

2   CERTAIN RESOURCES TO SPEND IN TERMS OF ITS LICENSING.  IT'S A

3   $2 MILLION COMPANY AND ABOUT $100 MILLION RELATES TO THE

4   LICENSING ACTIVITIES.  THEY DON'T HAVE RESOURCES TO CHASE

5   EVERYONE.

6       REALTEK AT THE TIME WASN'T AS SIGNIFICANT A FACTOR.  THEY

7   HAD MADE THEIR POSITION KNOWN.  REALTEK DECIDED NOT TO ENGAGE.

8   THEY MADE A DECISION APPARENTLY NOT TO CHASE THEM AT THE TIME

9   AND IT CAME TO PASS NINE YEARS LATER THEY DID.

10      THE COURT:  I DON'T WANT TO MISLEAD YOU BECAUSE I

11  GENERALLY AGREE WITH YOUR ARGUMENT, BUT I HAVE TROUBLE SEEING

12  THE IMPORTANCE OF ONE MONTH.

13      MR. SIPIORA:  IN AN INJUNCTION CONTEXT THEY CAN'T

14  IMPORT THEIR PRODUCT IN THE UNITED STATES, THEY GET STOPPED AT

15  THE BORDER, ALL THEIR PRODUCTS.

16      THE COURT:  THEN THEY CAN START UP AGAIN, RIGHT.

17      MR. SIPIORA:  WITH RESPECT TO THE ONE PATENT THEORY,

18  BUT ONE MONTH NOT BEING ABLE TO LEVERAGE TO YOUR CUSTOMERS,

19  IT'S SIGNIFICANT.

20      THE COURT:  ALL RIGHT.

21      MR. SIPIORA:  SO.  THANK YOU.

22      DO YOU WANT TO HEAR ON THE JURY ISSUE?

23      THE COURT:  MY REACTION ON THE JURY ISSUE IS THIS,

24  I'M HAPPY TO HEAR BRIEFLY FROM YOU, BUT IT'S NOT AN ISSUE THAT

25  WAS BRIEFED IT'S AN ISSUE THAT CAME TO MY MIND WHEN I WAS

1    PREPARING FOR THIS CONFERENCE.

2        I REALLY THINK IT PROBABLY MAKES SENSE FOR YOU TO MEET AND

3    CONFER AND DISCUSS IT THEN SUBMIT PERHAPS A JOINT BRIEF

4    EXPLAINING TO ME WHERE YOUR DIFFERENCES ARE AND WHETHER THERE'S

5    A RIGHT TO A JURY AND IF SO, WHAT ARE YOU REQUESTING.

6            MR. SIPIORA:  ALL RIGHT.

7            THE COURT:  I DON'T KNOW IF THAT MAKES SENSE TO THE

8    TWO OF YOU BUT THAT WOULD BE MY INITIAL TAKE.

9            MR. SIPIORA:  WELL, IF -- THE FACT SITUATIONS WE BOTH

10   REQUESTED A JURY TRIAL AND IT'S IN BOTH OF OUR PLEADINGS.  AND

11   UNTIL THIS CASE MANAGEMENT STATEMENT, THAT WAS WHAT WE WERE

12   GOING TO TRY.

13       THE ISSUES IF I JUST WANT TO ARTICULATE BECAUSE YOU ASKED

14   WHAT ISSUES, THE ISSUES ARE THEY ARE BASICALLY ONE, THERE ARE

15   TWO COUNTS LEFT, THERE'S THE BREACH OF CONTRACT, AND THEN

16   THERE'S THE DECLARATORY JUDGMENT OF A RAND.

17       SO THE SECOND FIRST, THE DECLARATORY JUDGMENT OF RAND IS

18   THEY ARE ASKING THE COURT FOR A DETERMINATION OF WHEN A RAND

19   RATE WAS.

20       IT'S ESSENTIALLY DAMAGES, IN THE THEORY OF A RECOVERY

21   RATE JUST LIKE YOU WOULD IN THE JURY TRIAL, THERE'S

22   INFRINGEMENT, THE JURY DECIDES DAMAGES, THEY ARE SAYING WHAT'S

23   A RAND RATE.

24       THERE'S NO CASE LAW TO SUPPORT THEIR POSITION AND THEY

25   HAVEN'T CITED ANY CASE LAW TO SUPPORT THEIR POSITION THAT IT

```
1    WOULD BE A BENCH ISSUE.  THE ONLY CASE THEY CITE AGAIN IS THE

2    MICROSOFT CASE, AND IF YOU READ THE OPINION IT'S CLEARLY

3    STIPULATION.  SO IT'S LIKE A DAMAGES IN THE PATENT CASE, THE

4    JURY DECIDES WHAT THE AMOUNT OF THE RAND WOULD BE.

5         THERE'S A SECOND PIECE AS WELL THERE BECAUSE THE PARTIES

6    HAVE AGREED AS TO THE AMOUNT OF PAST ACTIVITY THAT WOULD BE

7    ENCOMPASSED WITHIN THAT PROCESS.

8         SO IN ADDITION TO DETERMINING THE RAND RATE THE JURY IN

9    THIS CASE WOULD ALSO DECIDE HOW MUCH THE PAST ROYALTY WOULD BE

10   DUE AS OF THE TRIAL DATE IF THEY WERE TO TAKE A LICENSE FROM

11   US.

12        SO THEY WILL HAVE THAT IN THEIR POCKET, AS IT WERE, OR WE

13   WILL DEPENDING ON HOW YOU LOOK AT IT, IF THE TIME COMES WHEN

14   THEY WANT TO TAKE A LICENSE.  A RATE GOING FORWARD, AN AMOUNT,

15   RATE TIMES THE BASE WE AGREE ON GOING BACKWARD FOR PAST

16   ROYALTIES FROM THE TIME PERIOD IN QUESTION TO THE PRESENT.

17        SO THAT'S ALL A JURY ISSUE.  THE SECOND PIECE IS, AGAIN,

18   STRAIGHTFORWARD BREACH OF CONTRACT THEORY.  WHAT'S THEIR

19   DAMAGES.

20        AND JUST TO BE CLEAR, HE'S BEEN TALKING ABOUT IN TERMS OF

21   ATTORNEYS FEES, THIS ISN'T ATTORNEYS FEES STATUTE TYPE

22   SITUATION AS YOU ARE FAMILIAR WITH WHERE THE COURT WOULD MAKE A

23   DETERMINATION.

24        THIS IS -- THEIR DAMAGES CLAIM IS THEY INCURRED ATTORNEYS

25   FEES.  SO THE JURY HAS TO LOOK AT THEIR DAMAGES CLAIM AND THEIR
```

1    EXPERT HAS SAID I THINK DAMAGES, THE MEASURE OF DAMAGES SHOULD

2    BE THE AMOUNT OF ATTORNEYS FEES, AND SO THIS IS A JURY ISSUE ON

3    DAMAGES IN A BREACH OF THE CONTRACT CASE.

4         AND THEN WE HAVE ON TOP OF THAT A CHALLENGE TO THE AMOUNT

5    OF DAMAGES BASED ON THE THEORY OF MITIGATION.  THEY DID

6    MITIGATION DAMAGES.  AND YOU RAISED GOOD POINTS RELATIVE TO

7    THAT ISSUE, WHERE DOES IT CUT OFF?  WHERE IS THE OBLIGATION TO

8    A RAND OBLIGATION, IF WE MADE A RAND PROPOSAL WHICH WE SAY WE

9    HAVE, SUBSEQUENT -- PUT ASIDE FOR EARLIER DETERMINATION, THERE

10   WAS A PROPOSAL MADE IN JUNE AFTER THIS CASE WAS FILED IN

11   JUNE 2012.  AND OUR POSITION IS THAT WAS A RAND PROPOSAL AND

12   THEY REFUSED TO NEGOTIATE.

13        SO AGAIN, THE JURY WILL DECIDE THE ISSUE OF MITIGATION

14   RELATIVE TO THEIR CLAIM ATTORNEYS FEES AS DAMAGES.  THOSE ARE

15   THE ISSUES AND WE WOULD SUBMIT THOSE ARE ALL JURY ISSUES AS IN

16   FORMAL CASE WHICH THE JURY SHOULD HEAR IT.

17        I DON'T KNOW IF YOU PICKED UP IN THEIR STATEMENT THEY ARE

18   ALSO ASKING YOU TO HOLD TRIAL ON THEIR ALTERNATIVE THEORY OF

19   BREACH OF CONTRACT.  AND IF YOU READ THE CASE MANAGEMENT

20   CONFERENCE, YOU KNOW THEY HAVE TWO THEORIES OF BREACH OF

21   CONTRACT.

22        THEIR PRIMARY THEORY IN THE COMPLAINT WAS THAT THE

23   PROPOSAL WE MADE IN JUNE OF 2012 WAS INHERENTLY UNREASONABLE

24   AND THEREFORE A VIOLATION OF RAND.

25        SO THE JUNE 20TH, 2012, PROPOSAL WAS A VIOLATION OF RAND.

1   THEIR SECOND THEORY WAS THAT BY VIRTUE OF HAVING COMMENCED AN

2   ITC PROCEEDING BEFORE WE MADE WHAT THEY SAID WAS A RAND

3   PROPOSAL WAS ALSO A BREACH OF RAND.

4        NOW YOU -- IN THEIR SUMMARY JUDGEMENT MOTION RECALL THEY

5   ONLY MOVED ON THE SECOND GROUND OF THEIR COMPLAINT AND YOU

6   GRANTED THAT MOTION AND YOU SAID OKAY, YOU HAVE TWO THEORIES OF

7   BREACH OF CONTRACT, THE THEORY OF BREACH OF CONTRACT BASED ON

8   THE FACT THAT THERE WAS AN ITC PROCEEDING COMMENCED BEFORE RAND

9   PROPOSAL WAS GIVEN IS A BREACH OF RAND.

10       SO ON LIABILITY, YOU HAVE DECIDED THERE WAS A BREACH OF

11  CONTRACT.  AND IT'S CLEAR AND WE ALL KNOW THAT.  WHAT THEY WANT

12  TO DO JUST THE WAY THEY ARE TALKING ABOUT THIS ALTERNATIVE

13  APPROACH, AND HEDGING THEIR BET, THEY SAY NOW THAT THEY WANT TO

14  PRESENT EVIDENCE AT TRIAL ON THEIR ALTERNATIVE THEORY OF BREACH

15  OF CONTRACT.

16       BECAUSE AGAIN, THEY WANT A COMPLETE RECORD FROM THE

17  NINTH CIRCUIT.  AND AGAIN, AS WE GO ABOUT THE NEXT MONTH

18  PREPARING OUR PRETRIAL DOCUMENTS, APPARENTLY THEY ARE NOW

19  INTENDING TO PUT IN, AND ATTEMPT TO INTRODUCE EVIDENCE ON THEIR

20  ALTERNATIVE THEORY, THAT IS THE BREACH OF CONTRACT BASED ON THE

21  REASONABLENESS OF THE CONTRACT ITSELF.

22       AND WE WOULD SUBMIT AND WE BENEFIT FROM YOU LETTING US

23  KNOW THAT THE LIABILITY ISSUE IS OVER.  THE TRIAL IN THIS CASE

24  IS NOT ABOUT LIABILITY.  THAT'S DECIDED.  BREACH OF CONTRACT,

25  TWO THEORIES -- I THINK THERE WERE THREE THEORIES.  PROMISSORY

1  ESTOPPEL, AND THEN THEY HAD TWO THEORIES UNDER THEIR BREACH OF

2  CONTRACT.

3       YOU DECIDED BREACH OF CONTRACT, LIABILITY IS DECIDE.  NOW

4  WE ARE TRYING DAMAGES AND WE ARE NOT HAVING TO GO THROUGH

5  WITNESSES AND EVIDENCE REPORTING TO THEIR ALTERNATIVE THEORY OF

6  BREACH OF CONTRACT.

7       AND IT'S IN THEIR CASE MANAGEMENT STATEMENT THAT THEY ARE

8  ASKING, THEY ARE SAYING THEY ARE INTENDING TO PRESENT THAT

9  EVIDENCE AND MAKE THAT ISSUE AT TRIAL.  AND WE WOULD ASK YOU

10  AGAIN IF YOU WOULD BE WILLING TO GIVE US SOME GUIDANCE ON THAT.

11       THE COURT:  WOULDN'T THAT BE A MITIGATION ISSUE?

12       MR. SIPIORA:  WELL, THE EVIDENCE WOULD RELATE TO

13  MITIGATION TO A CERTAIN DEGREE BUT THE THEORY OF LIABILITY FOR

14  A JURY VERDICT FORM SAYING HERE IS ANOTHER FORM OF LIABILITY

15  THAT'S AN ADVISORY OPINION.  YOU HAVE ALREADY DECIDED THE ISSUE

16  OF LIABILITY.

17       SO I WANT TO BE CLEAR.  WE ARE NOT TALKING ABOUT EVIDENCE

18  PER SE, THE EVIDENCE WILL SORT OUT HOWEVER IT SORTS OUT IN

19  MITIGATION.

20       BUT THE LIABILITY, IN OTHER WORDS COMING TO THE COURT AND

21  SAYING THE COURT HAS FOUND LIABILITY IN THE CONTRACT WITH

22  RESPECT TO A BREACH HAVING TO DO WITH HAVING A COMMENCED AN ITC

23  PROCEEDING WITHOUT HAVING MADE A RAND OFFER.  YOU MADE THAT

24  FINDING.

25       IN ADDITION, WE WANT TO PRESENT TO THE JURY EVIDENCE TO

1   SHOW AN ADDITIONAL THEORY OF BREACH OF CONTRACT BASED ON THE

2   UNREASONABLENESS OF THE CONTRACT ITSELF.  THAT'S IMPROPER YOU

3   ALREADY MADE A DECISION ON LIABILITY.  YOU ARE IN OTHER WORDS

4   GOING BACK ON LIABILITY AGAIN AND TRYING TO TRY ANOTHER ARE

5   ISSUE.

6        THESE ARE DIFFERENT THEORIES OF LIABILITY.  YOU'VE

7   DECIDED ONE.  BREACH OF CONTRACT HAS BEEN ESTABLISHED.  IT'S

8   JUST LIKE ANY OTHER CONTRACT CASE.  LET'S SAY YOU HAVE FOUR

9   THEORIES OF BREACH OF CONTRACT IN THE CASE AND THE COURT MAKES

10  A DETERMINATION ON SUMMARY JUDGEMENT THAT THERE'S BEEN A BREACH

11  OF CONTRACT BASED ON ONE THEORY.

12       THE PARTIES DON'T GO AND TRY THE OTHER THREE ALTERNATIVE

13  THEORIES AT TRIAL.  NOW, IT SEEMS PRETTY EVIDENT.  IT'S A WASTE

14  OF JUDICIAL RESOURCES.  THEY ARE ADVISORY OPINIONS.  IT'S ALL

15  DICTA.  YOU'VE ALREADY DECIDED LIABILITY IT WOULD BE THE NATURE

16  OF THE AN ADVISORY OPINION.  BUT THEY ARE APPARENTLY INTENDING

17  OR AT LEAST SUGGESTING NOW IN THEIR CASE MANAGEMENT STATEMENT

18  THAT THEY WOULD LIKE TO PRESENT EVIDENCE ON THEIR ALTERNATIVE

19  THEORY OF BREACH OF CONTRACT.

20       AND AGAIN, WE WILL SPEND A LOT OF TIME AND RESOURCES

21  FIGHTING ABOUT IT IN THE PRETRIAL PROCESS BUT IF YOU COULD CUT

22  THROUGH IT NOW AND PROPERLY ADVISE THAT LIABILITY HAS BEEN

23  ESTABLISHED, YOU MADE A BREACH OF CONTRACT DETERMINATION, ANY

24  OTHER DETERMINATIONS WITH RESPECT TO BREACH OF CONTRACT

25  THEORIES WOULD BE DICTA AND ADVISORY, AND THIS IS AN ARTICLE

1    THREE COURT YOU ARE NOT MAKING ADVISORY RULINGS.  SO LIABILITY

2    IS DETERMINED WE ARE TRYING DAMAGES AS WE'VE CHARACTERIZED IT.

3            THE COURT:  UNDER THAT SCENARIO THOUGH, WOULD NOT THE

4    QUESTION OF WHAT YOU OFFERED IN JUNE GO TO MITIGATION.

5            MR. SIPIORA:  THE ISSUE OF WHAT WE OFFERED IN JUNE

6    CERTAINLY GOES TO MITIGATION, IN TERMS OF NEGOTIATION,

7    ABSOLUTELY.

8        SO ON THE MITIGATION ISSUE, AND WE WOULD CHARACTERIZE IT

9    SIMPLY AS THE DUTY TO NEGOTIATE.  WE KNOW AND YOU HAVE I'M SURE

10   YOU'RE FAMILIAR WITH THE DECISION THAT THERE'S A LITTLE BIT OF

11   LAW THAT'S OUT THERE INCLUDING THE DOJ GUIDELINES MAKE CLEAR

12   THAT THERE'S AN OBLIGATION UNDER RAND BY THOSE WHO HAVE, THE

13   PUNDITS I GUESS I WOULD SAY, THERE'S NOT MUCH LAW AS YOU KNOW.

14       THERE'S AN OBLIGATION TO NEGOTIATE.  AND WHAT HAPPENED

15   WAS WE DIDN'T PROPOSE WHEN THEY SUED US ONCE, TWICE, THREE

16   TIMES, FOUR TIMES.  HERE, TWO CASES, ITC, AND IN CHINA, BUT

17   THEY NEVER NEGOTIATED.

18       SO OUR POSITION WOULD BE, YES, THAT WOULD BE RELEVANT FOR A

19   JURY TO DECIDE WHETHER THEY PROPERLY ATTEMPTED TO MITIGATE BY

20   ENGAGING US IN NEGOTIATION.

21       AND SO THAT EVIDENCE WOULD BE RELEVANT FOR THAT PURPOSE.

22   BUT NOT FOR A THEORY OF LIABILITY WHERE YOU WOULD BE GIVING AN

23   ADVISORY OPINION.

24           THE COURT:  OKAY.

25           MR. SIPIORA:  THANK YOU, YOUR HONOR.

```
 1              MR. BAIK:  A FEW POINTS, YOUR HONOR.

 2         THROUGHOUT THIS ENTIRE CASE, COUNSEL FOR LSI HAVE SAID WE

 3    REFUSED TO NEGOTIATE.  THAT IS JUST PLAIN FALSE.

 4         AND IN THIS CASE RIGHT NOW WE'VE EXTENDED THE OLIVE

 5    BRANCH AND SAID LET'S MEDIATE AND THEY REFUSED.

 6         THROUGHOUT THIS CASE AND OTHER ITC CASES THERE HAVE BEEN

 7    MANDATORY SETTLEMENT CONFERENCES WE SAT IN ON THOSE WE'VE

 8    ATTEMPTED TO SETTLE WITH THEM.

 9         ON ONE SETTLEMENT CASE MR. SIPIORA AND I WERE PRESENT.  I

10    ASKED THEM FOR A LIST OF ALL YOUR PATENTS THAT YOU CONSIDER

11    ESSENTIAL TO YOUR STANDARD.  THEY SAID THAT'S ACTUALLY A GOOD

12    QUESTION WE WILL GET BACK TO YOU.  THEY GIVE US NOTHING UNTIL I

13    BELIEVE THE NIGHT BEFORE EXPERT REPORTS WERE DUE THEY GAVE US

14    SOMETHING.

15         SO THEIR CONSTANT REFRAIN THAT WE FAILED TO NEGOTIATE IS

16    COMPLETELY FALSE, YOUR HONOR.  SO I TAKE OFFENSE TO THAT.

17         NOW GOING BACK TO THE OTHER POINTS, BREACH OF CONTRACT,

18    YES, WE STATED TWO POINTS OF LIABILITY.  ONE IS THAT THEY SUED

19    US FROM THE GET GO, RIGHT.  WE WON ON THAT ISSUE.

20         THE SECOND ONE WAS THE RATE THEY GAVE US WAS

21    UNREASONABLE.  WE ARE WILLING TO FOREGO THAT PROVIDING WE CAN

22    RENEW THE THEORY OF LIABILITY IF THE DECISION FOR BREACH OF

23    CONTRACT YOU'VE ALREADY DECIDED IS OVERTURNED.  SO THAT'S EASY.

24    WE DON'T NEED TO HAVE A JURY TRIAL IF WE CAN RENEW THAT UPON

25    SOME APPEAL OVER TURNING YOUR DECISION, YOUR HONOR.
```

1    WITH REGARD TO WHAT THEY SAY IS REQUIRED IN TERMS OF

2  JUDGE OR JURY TRIAL.  THEY SAY THEY NEED A JURY TRIAL ON THE

3  RAND ISSUES.  THE RAND ISSUE AND THE WAY JUDGE ROBART DID IT IS

4  IT'S FIGURING OUT WHAT A CONTRACT MEANS, RIGHT.  THAT IS A

5  LEGAL ISSUE.  THAT IS SOMETHING THAT IS PROPERLY BEFORE THE

6  COURT.

7    WITH REGARD TO DAMAGES AS I STATED EARLIER, THEY ARE

8  GOING TO SEEK A JURY TRIAL ON DAMAGES.  MITIGATION OF DAMAGES.

9  WE ARE WILLING TO GO FORWARD WITH THE COURT BUT THEY ARE GOING

10  TO DEMAND A JURY TRIAL.

11    SO THAT'S GOING TO MEAN, WHAT, A JURY TRIAL NOW IN

12  NOVEMBER, THINGS WILL GO IN ORDER, IT'S ASSUME WE PREVAIL AT

13  THE FULL COMMISSION AND THE FEDERAL CIRCUIT APPEALS THAT THEY

14  SAID THEY ARE GOING TO FILE, WE WILL HAVE TO HAVE ANOTHER JURY

15  TRIAL SOLELY ON DAMAGES BECAUSE THIS IS WHAT THEY ARE

16  REQUESTING.

17    JUST ANOTHER REASON WHY WE ARE GOING TO COME BACK.

18    THAT'S ANOTHER REASON WHY WE SHOULD CONTINUE AT THIS

19  POINT.

20    WITH REGARD TO THE SECOND POINT OF VIABILITY AS WELL

21  ABOUT WHETHER -- SORRY, JUNE 2012 OFFER WAS REASONABLE OR NOT,

22  KIND OF GOES TO ONE OF YOUR QUESTIONS AS TO WHETHER DID THAT

23  CUT OFF DIAGRAMS THEY MIGHT SAY IT DOES.

24    BUT THAT ISSUE IS AFFECTED BY, DO WE INFRINGE, RIGHT.  IF

25  WE INFRINGE, MAYBE THERE'S A POTENTIAL FOR CUTTING OFF THE

1      DAMAGES.  IF WE DON'T THEN NO, AND THERE'S STILL THE VIOLATION

2      OF THEIR RAND OBLIGATION.

3          SO THAT'S ANOTHER REASON WHY WE CAN'T REALLY FULLY

4      DETERMINE WHETHER WE SHOULD PURSUE OUR SECOND THEORY OF

5      LIABILITY UNTIL WE'VE ACTUALLY FIGURED OUT, IS THERE

6      INFRINGEMENT.

7          THEN GOING BACK TO KIND OF WHAT YOU ASKED BEFORE

8      YOUR HONOR ABOUT WHETHER THE RAND RATE AND INFRINGEMENT IS

9      INTERTWINED AND MY COLLEAGUE POINTED OUT TO ME THAT YES, THEY

10     ARE, BECAUSE THE RAND RATE AND I DON'T THINK THEY WILL DISPUTE

11     THIS, SHOULD BE DETERMINED BY A HYPOTHETICAL NEGOTIATION.

12         OBVIOUSLY THE HYPOTHETICAL NEGOTIATION IS AFFECTED BY

13     WHETHER WE ACTUALLY PRACTICE THE PATENT OR NOT, THE PATENTS,

14     RIGHT.

15             THE COURT:  HYPOTHETICAL NEGOTIATION NORMALLY ASSUMES

16     THE PATENT IS VALID AND INFRINGED.

17             MR. BAIK:  THAT MAY BE THE CASE, BUT IN THIS CASE

18     WHAT WE'VE SAID, WHAT HAS BEEN DETERMINED BY THE ITC IS THAT WE

19     DON'T INFRINGE, RIGHT.  THAT'S KIND OF THE --

20             THE COURT:  IT SEEMS TO ME THAT'S A SEPARATE ISSUE

21     THAN A RAND RATE.

22             MR. BAIK:  SO IF YOU MAKE THE ASSUMPTION THAT IT'S

23     VALID AND INFRINGED THAT WOULD BE THE CASE, YOUR HONOR.

24         BUT THEIR HYPOTHETICAL NEGOTIATION IS WE SAY WE DON'T

25     BELIEVE WE INFRINGED SO THERE MAY BE OTHER REASONS TO ENTER

1 INTO A LICENSE AGREEMENT, BUT WE PUT A LESSER VALUE ON THE

2 LICENSE.

3   AND LET'S GO BACK TO KIND OF MR. SIPIORA'S FIRST POINT

4 WHEN HE CAME BACK UP HERE IS THEIR PATENT EXPIRING SOME TIME IN

5 FEBRUARY.  AS I POINTED TO THE COURT BEFORE THAT'S DISINGENUOUS

6 BECAUSE BACK IN NOVEMBER WHEN THEY HAD AN OPPORTUNITY TO SET A

7 TRIAL DATE THEY SET IT FOR AFTER THEIR PATENT EXPIRED.

8   SO WE ARE NOT TRYING TO GAIN THE SYSTEM, WE ARE BEING

9 VERY CONSISTENT HERE WITH YOUR HONOR.  AND THEY ARE THE ONES

10 NOW TRYING TO GAME THE SYSTEM AND SAY OH, NO, NO, NO REALTEK IS

11 TRYING TO DO SOMETHING BAD WHEN THEY, THEMSELVES, SET A TRIAL

12 DATE AFTER THE EXCISION OF THEIR PATENT, YOUR HONOR.

13   BUT ANY WAY, THE WHOLE CONVERSATION WE ARE HAVING,

14 YOUR HONOR, SHOWS THERE'S A LOT OF COMPLEXITY GOING ON RIGHT

15 NOW, A LOT OF BALLS IN THE AIR, ANY ONE OF WHICH WILL CHANGE A

16 LOT OF DIFFERENT THINGS THAT WILL GO ON AT TRIAL.

17   IF WE GO FORWARD IN NOVEMBER, AND REMEMBER WE WILL LIKELY

18 HAVE A SECONDARY TRIAL ON ONE OR MORE ISSUES BECAUSE THEY SAY

19 THEY ARE GOING TO PREVAIL ON THIS OR THAT, THE NINTH CIRCUIT OR

20 THE ITC OR WE WILL HAVE TO COME BACK HERE AND ARE DO A SECOND

21 TRIAL.

22   SO I AGREE WITH YOUR HONOR THAT WE SHOULD MEET AND CONFER

23 ABOUT THE JURY AND TRIAL ISSUES AND MAYBE HAVE SOME TIME TO

24 BRIEF THOSE ISSUES AND AT THE VERY LEAST IF YOU ARE NOT GOING

25 TO CONTINUE TO MARCH TRIAL DATE AT LEAST GIVE US A MONTH TO

1    KIND OF FIGURE OUT THOSE ISSUES BECAUSE I THINK THEY ARE

2    IMPORTANT TO FIGURE OUT WHETHER WE NEED TO HAVE A JURY OR A

3    TRIAL AT THE VERY LEAST.

4         THE COURT:  OKAY.  IT SEEMS TO ME THAT THERE ARE A

5    NUMBER OF SOMEWHAT COMPLEX ISSUES IN THIS CASE, BUT I DON'T

6    THINK CONTINUING THE CASE IS GOING TO MAKE THOSE ANY EASIER OR

7    BRING THIS CASE TO A RESOLUTION QUICKER.

8         SO IT SEEMS TO ME THAT MY TENTATIVE RULINGS ON BOTH ISSUES,

9    BOTH THE SUMMARY JUDGEMENT WITH THE DISMISSAL OF THE PROMISSORY

10   ESTOPPEL CLAIM IS CORRECT.  I DON'T THINK THAT CLAIM IS VIABLE.

11        AND I ALSO DON'T THINK THAT ON BALANCE THAT A CONTINUANCE

12   IS IN THE BEST INTEREST OF THE PARTIES.

13        I GENERALLY TENTATIVELY AGREE WITH LSI AS TO A RIGHT TO

14   THE JURY TRIAL ON THE ISSUES BUT I'M NOT ENTIRELY COMFORTABLE

15   WITH THAT AND I THINK THAT REALTEK IS JUSTIFIED IN ASKING FOR A

16   MEET AND CONFER THEN AN OPPORTUNITY TO BRIEF THE ISSUE.  THAT

17   NEEDS TO BE DONE QUICKLY.

18        SO WHY DON'T I GIVE YOU TEN DAYS IN WHICH TO MEET AND

19   CONFER AND DISCUSS THE ISSUE AND IF YOU CAN'T REACH AGREEMENT,

20   TO HAVE REALTEK FILE A MOTION TO STRIKE THE JURY DEMAND AS TO

21   WHATEVER ISSUES IT FEELS THERE'S NOT A RIGHT TO A JURY.

22        AND LSI COULD RESPOND -- SO IF WE GAVE REALTEK, SAY, HAVE

23   ITS BRIEF DUE -- MAYBE HAVE REALTEK'S BRIEF DUE THE 16TH AND

24   LSI'S RESPONSE THE 23RD.  DOES THAT WORK?

25        MR. SIPIORA:  WE WOULD BE HAPPY -- WE ARE ALL HERE

1    NOW AND WE'VE GOT -- I'VE GOT TIME.  I'M PREPARED TO HAVE THE

2    MEET AND CONFER TODAY AND HAVE THEM FILE THE BRIEF A WEEK FROM

3    TODAY.

4        MY CONCERN IS THE PRETRIAL DOCUMENTS WE WILL BE SPINNING

5    OUR WHEELS ON JURY INSTRUCTIONS AND THE THINGS OF THAT TYPE IN

6    THE MONTHS OF SEPTEMBER.

7        SO IF WE COULD AGREE TO MEET AND CONFER TODAY RIGHT NOW, I

8    WOULD BE PREPARED TO DO THAT.  AND IF WE HAVE A DISAGREEMENT,

9    THEY FILE THEIR BRIEF A WEEK FROM TODAY AND WE WILL RESPOND THE

10   FOLLOWING WEEK.

11            THE COURT:  THAT SEEMS REASONABLE.

12            MR. BAIK:  WE WOULD PREFER TO GO WITH YOUR HONOR'S

13   SCHEDULE THAT YOU JUST PROPOSED, YOUR HONOR.

14       WE ARE NOT AT THIS POINT PREPARED TO FULLY MEET AND CONFER

15   ON THE DIFFERENT ISSUES ON THE JURY ISSUES.

16            THE COURT:  WELL, HOW ABOUT IF WE HAD YOUR BRIEF DUE

17   THEN THE 11TH AND LSI'S RESPONSE DUE, BE SUBMITTED AS SOON AS

18   THEY SUBMITTED THEIR BRIEF.

19            MR. SIPIORA:  THAT'S FINE, YOUR HONOR.

20            MR. BAIK:  YOUR HONOR, WE WOULD REQUEST THAT IT BE A

21   JOINT SUBMISSION BECAUSE I DON'T KNOW -- THERE'S GOING TO BE A

22   LOT OF THINGS TO DO IN SEPTEMBER TO GET READY FOR TRIAL.

23       SO WE THINK IT MIGHT BE EASIER TO HAVE A JOINT SUBMISSION

24   THAT WE CAN FULLY JOIN THE ISSUES IN ONE PLEADING, YOUR HONOR.

25            THE COURT:  DO YOU WANT TO DO THAT?

```
 1                 MR. SIPIORA:  SURE.  9-11 FOR BOTH?

 2                 THE COURT:  SURE.

 3                 MR. SIPIORA:  THANK YOU, YOUR HONOR.

 4            ON THE SECOND ISSUE, THAT IS THE ALTERNATIVE THEORY THAT

 5      THEY ARE TALKING ABOUT, WOULD IT BE APPROPRIATE, COULD WE LINE

 6      THAT UP IN THE SAME PLEADING TO GET THAT IN FRONT OF YOU THAT

 7      IS WHETHER THEY ARE GOING TO BE ABLE TO PRESENT A LIABILITY

 8      THEORY OF -- IN COURT.

 9                 THE COURT:  OKAY.

10                 MR. SIPIORA:  ALL RIGHT.

11          THANK YOU, YOUR HONOR.

12                 THE COURT:  ALL RIGHT.  ALL SET?

13                 MR. BAIK:  ONE FINAL ISSUE.

14            I JUST WANT TO NOTE FOR THE RECORD, YOUR HONOR, THAT

15      COUNSEL WANTED TO PROVIDE EVIDENCE THAT, TO THE JURY OF A RAND

16      RATE AND TO SET A PAST DAMAGES QUESTION IN FRONT OF THE JURY.

17            WE THINK THAT'S WHOLLY IMPROPER.  WE WILL OBVIOUSLY HAVE

18      TO FILE A MOTION IN LIMINE BECAUSE THAT ASSUMES INFRINGEMENT.

19      AND AGAIN THE ONLY FINDING TO THIS DATE BY ANY COURT IS THAT

20      THERE'S NO INFRINGEMENT THAT WOULD BE HIGHLY PREJUDICIAL, BUT I

21      JUST WANTED TO NOTE THAT FOR THE RECORD, YOUR HONOR.

22                 THE COURT:  OKAY.

23            AT LEAST MY REACTION AT THIS POINT IS I DON'T THINK

24      THAT -- I THINK THE INFRINGEMENT AND THE WHAT'S IN A RAND RATE

25      ARE SEPARATE ISSUES.
```

1          IT MIGHT BE THAT WHETHER OR NOT WHAT REALTEK EARNED ON

2     ITS TECHNOLOGY COULD BE RELEVANT OR NOT RELEVANT TO THE

3     DETERMINATION OF A RAND RATE DEPENDING ON WHETHER THEY

4     INFRINGE.  BUT IT SEEMS TO ME THAT THE TWO ISSUES ARE DIFFERENT

5          MR. BAIK:  LET ME REVISIT THAT, YOUR HONOR.

6          THE TWO ISSUES ARE KIND OF INTERTWINED AND GETTING TO THE

7     POINT, I DIDN'T UNDERSTAND MY COLLEAGUE EARLIER.  WHAT THEY

8     SUED REALTEK ON AND A NUMBER OF OTHER PARTIES ON IS NOT JUST

9     THAT WE INFRINGE BUT THAT THE STANDARD, THE 80211 STANDARD

10    REQUIRES THE PRACTICE OF THEIR PATENT, RIGHT.

11         SO OBVIOUSLY IF THE STANDARD DOESN'T REQUIRE THE PRACTICE

12    OF THEIR PATENT, THE VALUE OF THEIR PATENT IS A LOT LOWER.  SO

13    THEY ARE INTERTWINED.

14         AND WHAT THE ITC HAS FOUND IS THE STANDARD DOES NOT

15    REQUIRE THE PRACTICE OF THEIR PATENTS.  SO IN THAT SENSE THEY

16    ARE INTERTWINED, YOUR HONOR.

17         MAYBE NOT WHETHER THE PARTY INFRINGES OR NOT, BUT THEIR

18    POSITION IS THE STANDARD REQUIRES THE PATENT, WE'VE PROVEN THAT

19    THE STANDARD DOES NOT REQUIRE THE PATENT, THEREFORE THE VALUE

20    OF THAT PATENT IS VERY LOW.

21          THE COURT:  I THINK THAT'S MORE OR LESS WHAT I SAID,

22    BUT I MAY BE WRONG.

23          MR. SIPIORA:  JUST TO BE CLEAR, THAT'S ABSOLUTELY

24    WRONG.

25         I TRIED THE CASE IN THE ITC AND WE DID NOT TRY A STANDARD

1    CASE.  IN OTHER WORDS, WE DID NOT TRY A CASE THAT SAID THE

2    STANDARD INFRINGES, YOU PRACTICE THE STANDARD, ERGO YOU

3    INFRINGE.

4         THAT WAS NOT THE EVIDENCE, THAT'S NOT WHAT OUR EXPERT SAID

5    AND THAT'S NOT WHAT THE ALJ SAID IN THIS INITIAL DETERMINATION.

6         WE PRESENTED EVIDENCE THAT THEIR PRODUCTS THEIR SOURCE

7    CODE, THEIR DOCUMENTATION, THEIR IMPLEMENTATION INFRINGED THE

8    TERMS OF THE PATENT.

9         THAT WAS WHAT WAS PRESENTED AND THE ALJ MADE A

10   DETERMINATION BASED ON THAT.  THIS WAS NOT A CASE THAT WAS

11   DRIVEN BY THE STANDARD, THAT'S JUST FACTUALLY WRONG.

12        SO THAT'S NOT BEEN DECIDED AND IT WAS NOT PRESENTED IN

13   THE ITC.

14             MR. BAIK:  THAT BEGS THE QUESTION WHETHER THIS IS A

15   STANDARD THAT'S CENTRAL TO THE PATENT OR NOT, YOUR HONOR.

16        ACCORDING TO THEM THEIR NOVEMBER 2002 LETTER WHICH DIDN'T

17   SAY ANYTHING ABOUT INFRINGEMENT, BUT THEY SAID THEY HAD PATENTS

18   THAT ARE ESSENTIAL TO THE STANDARD.  SO NOW THEY ARE AGAIN

19   SAYING TWO DIFFERENT THINGS.

20        WHEN IT BENEFITS THEM THEY ARE SAYING NO NO NO, WE ARE

21   NOT TALKING ABOUT STANDARD.  BUT WHEN THEY SEND LETTERS AND

22   SORT OF GO AFTER IT, THEY SAY IT'S REQUIRED BY THE STANDARD.

23             THE COURT:  IT SEEMS TO ME WHAT YOU ARE BOTH TALKING

24   ABOUT IS WHAT EVIDENCE IS RELEVANT AND NOT THE QUESTION OF

25   WHETHER OR NOT THE PROMISE TO LICENSE AT A RAND RATE WAS MET

1    AND WHETHER OR NOT THERE'S A RAND RATE.

2         IT SEEMS TO ME TO TURN ON THE VALUE OF THE PATENT IN THE

3    MARKETPLACE, DOESN'T IT.

4              MR. BAIK:  BUT THE PROMISE OF THE RAND RATE,

5    YOUR HONOR, IS PREDICATED ON THEIR STATEMENT TO THE IEEE THAT

6    THOSE PATENTS ARE ESSENTIAL TO THE STANDARD.

7              MR. SIPIORA:  YOU ARE RIGHT IN YOUR ASSESSMENT,

8    YOUR HONOR.

9         THEY ARE SEPARATE QUESTIONS AND THEY HAVE BEEN PRESENTED

10   SEPARATELY IN THIS CASE.  WE HAVE NOT PRESENTED ANY EVIDENCE OF

11   LIABILITY IN THIS CASE NOR IS IT REQUIRED.

12        THE ONLY ISSUE IS WHETHER OR NOT, AS THEY'VE CHARACTERIZED

13   IT, WHETHER THERE WAS A VIOLATION OF A RAND OBLIGATION.  AND IN

14   ADDITION, THEY HAVE A SEPARATE CLAIM FOR DECLARATORY JUDGMENT

15   ASKING FOR A DETERMINATION OF A RAND RATE.

16         BOTH EXPERTS HAVE ADOPTED THE FRAMEWORK THAT EXACTLY AS

17   YOU HAVE JUST DESCRIBED, IT'S THE GEORGIA PACIFIC CONCEPT OF

18   ASSUMED PATENTS VALID AND INFRINGED THEN MAKE A DETERMINATION

19   OF WHAT THE ROYALTY RATE WOULD BE WHICH THEY BOTH DID, AND BOTH

20   OF THEM ALSO SAID BASED ON THAT ROYALTY RATE, WHAT WOULD THE

21   PAST DAMAGES BE.  WHAT WOULD BE THE AMOUNT DUE.

22         THERE IS NO DISPUTE ABOUT THE AMOUNT OF PAST SALES, WE

23   HAVE ACCEPTED THEIR EXPERT'S STATEMENT ON THAT ISSUE.  SO BOTH

24   EXPERTS HAVE OPINED ON A DIFFERENT ROYALTY RATE.

25         SO WHAT YOU SEE IN THE REPORTS LITERALLY WHAT'S PRESENTED

1     IN THE CASE AND AT TRIAL, MULTIPLE EXPERTS ON THE DAMAGES

2     ISSUE, EXPERTS SAYING -- THEIR EXPERT SAYS THIS IS THE RATE,

3     YOU MULTIPLE IT TIMES THIS BASE, X, AND YOU GET, THIS IS THE

4     AMOUNT DUE.  THEY SAY IT'S A COUPLE HUNDRED THOUSAND DOLLARS.

5         OUR EXPERT SAYS NO, WE SAY THE RATE IS IN THIS RANGE, THE

6     JURY SHOULD HEAR THIS RANGE, AND WE APPLIED THE EXACT SAME X

7     THE SAME BASE AND WE GET THIS MUCH DAMAGES.

8         IT'S LIKE ANY OTHER PATENT INFRINGEMENT CASE EXCEPT THE

9     LIABILITY ISN'T IN THE CASE.  WE HAVE NEVER TAKEN DISCOVERY

10    NEVER LITIGATED NEVER FOUGHT ABOUT INFRINGEMENT.  AND IT IS

11    IRRELEVANT AND IMMATERIAL TO THIS CASE.

12        WHAT'S RELEVANT IS WHAT THE RAND RATE WOULD BE AND WHAT

13    THE DAMAGES WOULD BE TYPICAL DAMAGES CALCULATION RECEIVE.

14        SO YOUR STATEMENT YOU SAID REPEATEDLY YOU THINK THEY ARE

15    SEPARATE YOU ARE EXACTLY RIGHT.  IF THEY ARE INTERTWINED WE

16    WOULD BE HAVING LIABILITY ISSUES IN THIS CASE.  WE WOULD BE

17    ARGUING ABOUT PATENT INFRINGEMENT.  THERE'S NOT.  IT'S NEVER

18    BEEN IN THE CASE THERE'S NO DISCOVERY ON THERE IS NO EXPERT

19    THERE'S NO ANALYSIS ON IT.

20        IT'S JUST LIKE TAKING THE PATENT INFRINGEMENT CASE

21    SEVERING THE LIABILITY PUSHING IT OVER AND SAYING WE WANT A

22    DETERMINATION OF WHAT A ROYALTY RATE WOULD AND BE OUR EXPERT

23    SAYS THIS IS THE PAST SALES AND THE AMOUNT OWED IF WE TOOK A

24    LICENSE FROM YOU.  THAT'S WHAT THIS IS ALL ABOUT.

25        EVERYTHING ELSE HE'S SAYING DOESN'T MAKE ANY SENSE WHAT

```
 1    YOU ARE SAYING IS EXACTLY RIGHT.  SEPARATE ISSUES THEREFORE AS
 2    I'M SAYING IT'S A JURY TRIAL.  THE JURY DECIDES WHAT THE
 3    ROYALTY RATE IS, THEY LOOK AT A BASE AND GET AN AWARD AND
 4    THAT'S WHAT IS GOING TO HAPPEN IN THIS CASE.
 5              THE COURT:  OKAY.  WE ARE GOING TO GO ON FOREVER.
 6        IF YOU WANT TO SUBMIT WHAT YOU THINK THE ISSUES ARE, IN
 7    FACT YOU SHOULD SUBMIT IN YOUR BRIEF TO THE COURT WHAT YOU
 8    THINK THE ISSUES ARE, WHETHER THERE'S A RIGHT TO A JURY TRIAL
 9    ON THEM I THINK THAT WOULD BE VERY HELPFUL.
10         WITH THAT, YOU MAKE YOUR FINAL COMMENT.
11              MR. BAIK:  FINAL COMMENT, YOUR HONOR.
12         GOING BACK TO THE INTERTWINING OF THE ESSENTIAL PATENT
13    ISSUE, JUDGE ROBART ALREADY DECIDED THAT IN THE MICROSOFT CASE
14    AND HE SAYS THEY ARE INTERTWINED.
15         I'M GOING TO TAKE MR. SIPIORA'S STATEMENT TODAY TO MEAN
16    HE DOES NOT INTEND TO OFFER ANY EVIDENCE THAT THESE APPELLANTS
17    ARE SOMEHOW ESSENTIAL TO THE STANDARD BECAUSE IF HE DOES MAKE
18    THAT STATEMENT THEN THEY ARE DEFINITELY INTERTWINED AS TO
19    WHETHER WE PRACTICE THE STANDARD OR NOT AND WHETHER OR NOT THE
20    STANDARD REQUIRING THE PATENTS OR NOT BECAUSE THAT IS CRUCIAL
21    AND THE EXPERTS HAVE ALREADY STATED IT'S PART OF THEIR DAMAGES
22    THEORY THAT IS REQUIRED BY THE STANDARD.
23         SO FOR THEM TO SAY THEY ARE NOT INTERTWINED IS VERY
24    DISINGENUOUS, YOUR HONOR.  THEY ARE COMPLETELY INTERTWINED
25    JUDGE ROBART HAS ALREADY FOUND THAT IN THE MICROSOFT CASE AND
```

1    THAT'S WHY WE SHOULD RIGHTFULLY WAIT UNTIL AS THEY SAY THEY ARE

2    GOING TO APPEAL THE INFRINGEMENT STUFF ON THE ITC CASE.

3              THE COURT:  OKAY.  I HAVE LISTENED TO THAT.

4              MR. BAIK:  OKAY.  THANK YOU, YOUR HONOR.

5              THE COURT:  THANK YOU.

6         (WHEREUPON, THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                    **<u>CERTIFICATE OF REPORTER</u>**

5

6

7

8             I, THE UNDERSIGNED OFFICIAL COURT

9     REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10    THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11    FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12    CERTIFY:

13             THAT THE FOREGOING TRANSCRIPT,

14    CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15    CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16    SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17    HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18    TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24    _____

25    SUMMER A. FISHER, CSR, CRR
      CERTIFICATE NUMBER 13185          DATED: 9/13/13