UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| REALTEK SEMICONDUCTOR CORPORATION,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>LSI CORPORATION and AGERE SYSTEMS LLC,<br><br>　　　　　Defendants. | Case No. C-12-03451 RMW<br><br>**ORDER RE: JOINT SUBMISSIONS PURSUANT TO SUPPLEMENTAL CASE MANGAGMENT ORDER**<br><br>**[Re Docket No. 153]** |

On September 9, 2013 the court issued a Supplemental Case Management Order, Dkt. No. 152, requiring the parties to meet and confer and submit their respective positions regarding the issues that remain for trial. On September 11, 2013, the parties jointly submitted their positions. Dkt. No. 153 ("Joint Submission"). Having considered the parties' submissions, the court rules as follows.

**I.　　Issues for Trial**

The issues for trial are:

(1) A determination of a RAND royalty rate for the '958 and '867 Patents; and

ORDER
Case No. C-12-03451 RMW
ALG
　　　　　- 1 -

(2) A determination of the amount of damages that Realtek suffered as a result of defendants' breach of contract, including any reduction of damages under LSI's affirmative defense of mitigation of damages.

## II. Jury Trial Issues

### a. RAND Royalty Rate

The parties dispute whether the RAND royalty rate determination is a jury or a bench issue. Defendants argue that the determination of a RAND royalty rate is a jury issue because it is based on a hypothetical negotiation premised on certain factual predicates subject to the Seventh Amendment right to a jury trial. Realtek argues that the determination of a RAND royalty rate is a bench issue because (1) it is equitable in nature (Realtek says it is "in the nature of specific performance, in that it requests the [c]ourt to order [d]efendants to comply with their RAND obligations," Joint Submission 2); (2) it requires the court to supply a contract term that is essential to the determination of the parties rights, *see ESS Tech. Inc. v. PC-Tel, Inc.*, No. 99-20292 RMW, 1999 WL 33520483, at *4 (N.D. Cal. Nov. 4, 1999); and (3) the reasonable royalty determination in this case is unlike that in other patent infringement actions because LSI is neither asserting patent infringement nor seeking damages in this case.

The court agrees with defendants. The court is not persuaded that Realtek's requested remedy is equitable in nature. In the Complaint, Realtek seeks "declaratory judgment setting forth the RAND terms and conditions for a license to the RAND terms, including the applicable royatly rate," Complaint ¶ 69, Dkt. No. 1, and "declaratory judgment that if [d]efendants refuse to offer a license on RAND terms, the allegedly 'essential' patents shall be unenforceable as to Realtek," *id.* ¶ 70. In the *Microsoft Corp. v. Motorola, Inc.* case, cited by Realtek, the parties *waived* their right to a jury trial on a determination of RAND royalty rates. *See* Order at 4, *Microsoft Corp. v. Motorola, Inc.*, Case No. 10-01823, Dkt. No. 870 (W.D. Wash. Aug. 25, 2013). That case does not stand for the proposition that a RAND royalty rate determination is an equitable issue suitable for a bench trial, absent waiver. Nor is the *ESS Technology* case on point. There, the court declined to dismiss a claim for specific performance of the defendant's RAND obligations on the basis that it could "envision a scenario where a defendant has offered nearly identical licensing agreements to all other

ORDER
Case No. C-12-03451 RMW
ALG
- 2 -

competitors" and "in such a situation, the court could easily determine what a fair and non-discriminatory contract could be." *ESS Tech.*, 1999 WL 33520483, at *4. In that scenario, the court held that it could potentially "rely on defendant's other contracts to determine what is [FRAND]" and try to enforce the contract. *Id.* In *ESS Technology*, the court acknowledged, however, that "determining the customs and practices of the defendant and the modem industry [for the purposes of a FRAND determination] would appear to be *factual matters* outside the scope of the pleadings." *Id.* (emphasis added). Unlike the scenario in *ESS Technology*, here, the court could not simply fill in a missing RAND royalty rate contract term under any "envisioned" scenario; rather, Realtek seeks a fact intensive RAND royalty rate determination based on a hypothetical negotiation between the parties, which entitles the parties to a jury trial on the issue. Nor does the court find any meaningful difference between the patent infringement cases cited by defendants, which hold that the hypothetical negotiation is a fact question for the jury, and the case at hand, where there is no infringement charge. Regardless of whether or not a patent infringment claim is made, the hypothetical negotiation and RAND royalty rate determination will still involve the same factual determinations. Accordingly, the court concludes that the RAND royalty rate determination is a jury issue. Because defendants do not waive a jury trial on this issue, this issue will go to the jury.

### b. Damages for Breach of Contract

The parties do not dispute that the breach of contract damages is a jury issue. Realtek is willing to waive a jury trial on this issue, but defendants are not. Accordingly, this issue will go to the jury.

Realtek's also takes the position that it will be entitled to post-trial damages based on the continuing International Trade Commission ("ITC") litigation, which should be decided *by the court* post-trial. Defendants' position is that "[i]f the record at the conclusion of trial reflects a colorable claim by Realtek for additional damages, then the parties can meet and confer with the [c]ourt regarding the procedure for determining such damages." Joint Submission 14. The court does not yet decide whether another jury will be necessary to decide any post-trial damages incurred by Realtek, as the issue is premature. Any post-trial damages that Realtek may be entitled to, which are not resolved in the first trial, will be addressed by the court or a jury as necessary.

ORDER
Case No. C-12-03451 RMW
ALG
- 3 -

### III. Admissibility of Defendants' June 2012 Proposal

The parties agree that the June 2012 proposal does not create any independent basis for liability for breach of contract and that no alternate theories of liability will be pursued at trial. However, the parties dispute the admissibility and relevance of defendants' June 2012 license proposal for the purpose of mitigating Realtek's breach of contract damages. The parties represent an intent to resolve this issue through motions in *limine*.

Realtek argues that the defendants should be precluded from relying on the June 2012 proposal as a basis for their mitigation defense. According to Realtek, the only way defendants could have mitigated damages would have been to withdraw the ITC action entirely. Realtek intends to move *in limine* to "preclude [d]efendants from arguing or presenting evidence to the jury that the June 2012 proposal constituted a cure of defendants' breach or a failure to mitigate by Realtek to limit its damages." Defendants counter that the June 2012 proposal is relevant and admissible with respect to their mitigation defense.

The court has never ruled on whether Realtek is entitled to damages based on LSI's breach that would include the *entire* cost of defending the ITC action. The court's breach of contract ruling was based on defendants' filing of the ITC action without first making *any* licensing proposal. If the jury finds that LSI's June 2012 proposal was in fact a RAND licensing offer, the question arises as to whether Realtek's refusal to accept that offer would be a basis to cut off Realtek's damages related to defending the ITC action. Or would LSI's offer only mitigate damages if LSI had first dismissed the ITC action against Realtek before making that offer, so that Realtek would not have been under the looming threat of an ITC exclusion order, which arguably placed it in an unfair bargaining position. The parties' have indicated that they intend to address the admissibility of the June 12, 2012 offer as mitigation evidence in motions in *limine*. The court will defer any ruling until it has reviewed the in *limine* submissions.

### IV. Defendants' Counterclaims

Both parties agree that defendants' will not pursue any counterclaims at trial, subject to their right to appeal.

### V. Admissibility and Relevance of the ITC's Preliminary Noninfringement Determinations

Relying on *Microsoft Corp. v. Motorola, Inc.*, No. 10-1823, 2013 WL 211217, at *18 (W.D. Wash. Apr. 25, 2013), Realtek argues that the ITC's preliminary noninfringement determinations are relevant to setting the RAND rate because, in setting the RAND rate, the court must consider the contribution of the patent to the standard and "the need for the standard implementer to infringe the patents in order to practice the standard." Joint Submission 7. Defendants argue that the ITC's initial determination is inadmissible as evidence relevant to the determination of a RAND rate, which must be based on an assumption that the patents are valid and infringed.

Both parties recognize, and the court agrees, that the RAND determination must be based on an assumption that the patents are valid and infringed. While the court tentatively agrees with Realtek that a noninfringement determination *could* be relevant to show that the particular patent provides less overall value to the standard, i.e., it could be designed around, *see Microsoft*, 2013 WL 211217, at *18, the court concludes that the potential prejudice to LSI from letting in the ITC's preliminary findings, which are not final and could be overturned, far outweighs their probative value. Accordingly, the court tentatively rules that the ITC's preliminary noninfringement determinations are inadmissible at trial.

Defendants further argue that if the Federal Circuit were to enter a final determination of noninfringement, "it would be legally impossible for LSI to have breached its RAND obligation." Joint Submission 16 n.10. Realtek counters that a final determination of noninfringement could not obviate this court's breach of contract ruling. The court agrees with Realtek that a final determination of noninfringement by the Federal Circuit would not obviate this court's breach of contract determination. Regardless of whether Realtek infringes the patents-in-suit, defendants declared the patents-in-suit essential to the 802.11 standard, accuses Realtek of implementing that standard, and thus, defendants were obligated (by their commitment to the standard setting body) to offer RAND licenses to those patents to all standard implementers, including Realtek. Bringing the ITC action against Realtek without first making any license offer was therefore a breach of that promise, regardless of a court of law's ultimate infringement determination. The chance that a standard implementer may not infringe a declared "standard essential patent" is not a green light for

the declared standard essential patent holder to breach its commitments to the standard setting body; rather, if a question of noninfringement exists with respect to a standard implementer (and especially if a final noninfringement determination exists), the declared standard essential patent holder would be wise to reassess whether the patents are, in fact, essential to the standard before asserting them against other standard implementers.

**IT IS SO ORDERED.**

Dated: September 26, 2013



RONALD M. WHYTE
United States District Judge