Scott D. Baker (SBN 84923)
Email: sbaker@reedsmith.com
William R. Overend (SBN 180209)
Email: woverend@reedsmith.com
Adrian Sue Shin (SBN 256960)
Email: sshin@reedsmith.com
James A. Daire (SBN 239637)
Email: jdaire@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Telephone:  (415) 543-8700
Facsimile:  (415) 391-8269

Steven S. Baik (SBN 184622)
Email: sbaik@reedsmith.com
Carina M. Tan (SBN 185015)
carinatan@reedsmith.com
REED SMITH LLP
1510 Page Mill Road, Suite 110
Palo Alto, CA 94304
Tel:  (650) 352-0500
Fax:  (650) 352-0699

Attorneys for Plaintiff
REALTEK SEMICONDUCTOR
CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| REALTEK SEMICONDUCTOR CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>LSI CORPORATION and AGERE SYSTEMS LLC,<br><br>Defendants. | Case No. 5:12-cv-03451 RMW<br><br>**PLAINTIFF REALTEK SEMICONDUCTOR CORPORATION'S AMENDED *DAUBERT* MOTION AND MOTIONS *IN LIMINE***<br><br>Date: October 17, 2013<br>Time: 9:00 a.m.<br>Place: Courtroom 6, 4th Floor<br><br>Trial Date:  November 4, 2013<br><br>Hon. Ronald M. Whyte |

*REED SMITH LLP*
*A limited liability partnership formed in the State of Delaware*

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## AMENDED NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on October 17, 2013 at 9:00 a.m. in Courtroom 6 of the Northern District of California, 280 South First Street, San Jose, California, 95113, Plaintiff Realtek Semiconductor Corporation ("Realtek") will and hereby does move pursuant to Federal Rule of Evidence 702 to exclude the testimony and opinions of Dr. Anne Layne-Farrar. Specifically, Realtek seeks an order precluding Dr. Layne-Farrar from offering any opinions or testimony that use the Via Licensing Pool as a basis for determining a RAND rate in this case. This Amended Motion is made on the grounds that Dr. Layne-Farrar's testimony should be excluded because her purported expert opinions fail to meet the reliability and relevancy requirements of *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and Federal Rule of Evidence 702. Defendants will further move *in limine* on this date to exclude certain evidence and arguments set forth herein. This Amended Motion is based on the following memorandum of points and authorities in support, the Declaration of William R. Overend and accompanying Exhibits, the entire record in this matter and on such evidence as may be presented at a hearing on this motion.

# **TABLE OF CONTENTS**

**Page**

DAUBERT MOTION...................................................................................................1

I.     INTRODUCTION ...............................................................................................1

II.    STATEMENT OF FACTS ..................................................................................2

       A.     Dr. Layne-Farrar's Expert Rebuttal Report Relies In Part On The Via
              Pool .........................................................................................................2

       B.     The Via Pool Is An Inherently Flawed Benchmark For The RAND Rate
              In This Case ..............................................................................................2

       C.     Dr. Layne-Farrar's Report Uses A Flawed Patent Ranking Analysis To
              Inflate The Purported Value Of Defendants' Patents ....................................3

       D.     Dr. Layne-Farrar Improperly Arrives At Alleged RAND Rates For The
              '958 And '867 Patents Using The Inflated Value Index For Defendants'
              SEP Portfolio ...........................................................................................5

III.   ARGUMENT ....................................................................................................6

       A.     Expert Testimony Must Assist the Trier of Fact to Understand the
              Evidence or Determine a Fact in Issue ........................................................6

       B.     Dr. Layne-Farrar's Methodology Is Inherently Unreliable And Unsound ....7

IV.    CONCLUSION ..................................................................................................9

REALTEK'S MOTIONS IN LIMINE .............................................................................9

       A.     Realtek's Motion In Limine #_1: Exclude Evidence And Argument
              Regarding 2002/2003 Correspondence Between Agere And Realtek .............9

       B.     Motion in Limine # 2:  Exclude Evidence Or Argument Concerning
              Alleged Infringement Of Defendants' Patents By Realtek ............................11

              1.     Defendants Should Be Precluded From Arguing That Realtek
                     Infringes The '958 Or '867 Patents, And From Introducing Any
                     Evidence Of Alleged Infringement ..................................................11

              2.     Defendants Should Be Precluded From Speculating About The
                     Final Outcome Of The ITC Proceeding............................................12

              3.     Defendants Should Be Precluded From Introducing Evidence Or
                     Argument Of Past Royalties Allegedly Due To Defendants ................13

       C.     Motion in Limine # 3:  Exclude Evidence Or Argument That Realtek
              Failed To Mitigate Its Damages..................................................................14

              1.     Defendants Should Be Precluded From Introducing Any Expert
                     Testimony That Realtek Failed To Mitigate Its Damages ...............14

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

2.   Defendants Should Be Precluded From Introducing Any Evidence Or Argument That Realtek Failed To Mitigate Its Damages Based On An Alleged Failure To Respond To Defendants' June 2012 License Proposal ................................................................................16

3.   Defendants Should Be Precluded From Introducing Any Evidence Or Argument Concerning The Parties' Settlement Communications And Negotiation Status........................................20

4.   Defendants Should Be Precluded From Introducing Any Evidence Or Argument Regarding Realtek's Other Lawsuits Against LSI ...................21

D.   Motion in Limine # 4:   Exclude Evidence Or Argument Concerning Alleged RAND Royalty Rate Or Other RAND Terms And Conditions For License To More Than '958 And '867 Patents ......................................................22

E.   Realtek's Motion In Limine # 5: Prohibit Use Of The Administrative Law Judge's Decision That LSI Did Not Breach Its RAND Obligations .........................23

F.   Realtek's Motion In Limine #6:   Exclude ITC Trial Testimony Of Carl Andren And Others ..........................................................................24

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
  2012 U.S. Dist. LEXIS 90877 (N.D. Cal. June 30, 2012) ............................................... 7

*Bloom v. J.P. Morgan Chase & Co.*,
  No. 09-3418, 2010 U.S. Dist. LEXIS 131181 ............................................................... 6

*Brandon & Tibbs v. George Kevorkian Accountancy Corp.*,
  226 Cal. App. 3d 442 (1990) ....................................................................................... 14

*Carlisle Ventures, Inc. v. Banco Espanol De Credito, S.A.*,
  176 F.3d 601 (2d Cir. 1999) ........................................................................................ 18

*Certain Audiovisual Components and Products Containing the Same*, Initial Determination,
  USITC Inv. No. 337-TA-837, 2013 WL 4406820 (Jul. 18, 2013) ................................. 24

*Cuc Dang v. Sutter's Place, Inc.*,
  2012 WL 6203203 (N.D. Cal., Dec. 12, 2012) ........................................................ 20, 21

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ......................................................................................... 6, 7, 8, 9

*DeRosier v. Utility Systems of America, Inc.*,
  780 N.W.2d 1 (Ct. App. Minn. 2010) ........................................................................... 18

*Dupard v. Kringle*,
  76 F.3d 385, 1996 WL 56098 (9th Cir. 1996) ............................................................... 22

*Ed Peters Jewelry Co., Inc. v. C & J Jewelry Co., Inc.*,
  124 F.3d 252 (1st Cir. 1997) .......................................................................................... 9

*Flintkote Co. v. Gen. Acc. Assur. Co. of Canada*,
  C 04-1827 MHP, 2009 WL 3568644 (N.D. Cal. Oct. 27, 2009) ................................ 10, 24

*GEM Acquisition Co, LLC v. Sorenson Group Holdings, LLC*,
  No. C 09-01484 SI, 2010 WL 1996602 (N.D. Cal. May 18, 2010) ............................... 19

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) ...................................................................................................... 7

*Grp. Health Plan, Inc. v. Philip Morris USA, Inc.*,
  344 F.3d 753 (8th Cir. 2003) ......................................................................................... 9

*Heisler v. Maxtor Corp.*,
  No. 06-6634, 2011 U.S. Dist. LEXIS 43380 (N.D. Cal. Apr. 20, 2011) ......................... 6

*Henderson v. Peterson*,
  C 07-2838 SBA PR, 2011 WL 2838169 (N.D. Cal. July 15, 2011) ............................... 22

*Hudspeth* v. *C.I.R.*,
  914 F.2d 1207 (9th Cir. 1990) ...................................................................................... 20

*Hynix Semiconductor Inc. v. Rambus Inc.*,
  250 F.R.D. 452 (N.D. Cal. 2008) .................................................................................. 25

*In re Certain Integrated Circuit Chips and Prods. Containing Same*,
  Inv. No. 337-TA-859 (September 19, 2012) .................................................................. 21

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  491 F. Supp. 2d 20 (D. Mass. 2007) ............................................................................... 8

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

*Jackson v. U.S.*,
  Nos. 05-3006 & 06-6490, 2007 U.S. Dist. LEXIS 93124  (N.D. Cal. Dec. 19, 2007) .................... 6

*Lust v. Merrell Dow Pharms., Inc.*,
  89 F.3d 594 (9th Cir. 1996) ................................................................................................... 7

*Microsoft Corporation v. Motorola, Inc.*,
   2013 WL 2111217 (W.D. Wash. April 25, 2013) ............................................................. 2, 3

*Pierce v. F .R. Tripler & Co.*,
  955 F.2d 820 (2d Cir. 1992) ............................................................................................. 20, 21

*Plush Lounge Las Vegas LLC v. Hotspur Resorts Nev. Inc.*,
  371 Fed. Appx. 719 (9th Cir. 2010) ..................................................................................... 7, 8

*Realtek Semiconductor Corp. v. LSI Corp.*,
   Case No. 12-cv-3437 (N.D. Cal. June 29, 2012) .................................................................. 21

*Richardson v. U.S.*,
  841 F.2d 993 (9th Cir. 1988) ........................................................................................... 10, 24

*Samuels v. Holland Am. Line-USA Inc.*,
  656 F.3d 948 (9th Cir. 2011) ............................................................................................... 6, 7

*Seals v. Mitchell*,
  CV 04-3764 NJV, 2011 WL 1399245 (N.D. Cal. Apr. 13, 2011) ......................................... 22

*Silicon Knights, Inc. v. Epic Games, Inc.*,
  2011 WL 6748518 (E.D. N.C. Dec. 22, 2011) ...................................................................... 8

*Stanley Manly Boys' Clothes, Inc. v. Hickey*,
  113 Tex. 482, 259 S.W. 160 (Tex. Com. App. 1924) ............................................................. 17

*Stoebner Holdings, Inc. v. Automobili Lamborghini S.P.A* ,
  2007 WL 4230878 (D. Hawaii Nov. 30, 2007) ...................................................................... 8

*U.S.  v. Quality Built Const.*,
  358 F. Supp. 2d 487 (E.D. N.C. 2005) ............................................................................ 10, 24

*U.S. v. Phillips*,
  367 F.3d 846 (9th Cir. 2004) ........................................................................................... 10, 24

*Valle de Oro Bank v. Gamboa*,
  26 Cal. App. 4th 1686 (1994) .......................................................................................... 14, 17

*Wieberg v. Resthaven Gardens of Memory, Inc.*,
  No. 89-1509-C, 1991 WL 241815 (D. Kan. Oct. 29, 1991) .................................................. 18

*W-V Enterprises, Inc. v. Federal Savings & Loan Ins. Corp.*,
  234 Kan. 354, 673 P.2d 1112 (1983) .................................................................................... 18

*Zanker Development Co. v. Cogito Systems Corp.*,
  215 Cal.App.3d 1377 (1989) .......................................................................................... 17, 18

**Rules**

Civ. L.R. 7-9 ....................................................................................................................... 10, 24

Fed. R. Civ. P. 26 ................................................................................................................ 15, 18

Fed. R. Civ. P. 26(a) ..................................................................................................... 15, 19, 25

Fed. R. Civ. P. 26(e) ..................................................................................................... 15, 19, 25

Fed. R. Civ. P. 37 ................................................................................................................ 15, 18

Fed. R. Civ. P. 37(c) ..................................................................................................... 15, 19, 25

Fed. R. Evid. 401 ................................................................................................ 10, 18

Fed. R. Evid. 402 ................................................................................................ 18

Fed. R. Evid. 403 ................................................................................................ passim

Fed. R. Evid. 404 ................................................................................................ 22

Fed. R. Evid. 408 ................................................................................................ 20, 21

Fed. R. Evid. 408(a)(2) ....................................................................................... 20

Fed. R. Evid. 602 ................................................................................................ 13

Fed. R. Evid. 702 ................................................................................................ 6, 7, 8, 9

Fed. R. Evid. 804(b) ........................................................................................... 25

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

**MEMORANDUM OF POINTS AND AUTHORITIES – *DAUBERT* MOTION**

## I.     INTRODUCTION

The report of Defendants' economic expert, Dr. Anne Layne-Farrar, suffers from fatal flaws that render her opinions unsound and unreliable.  Specifically, Dr. Layne-Farrar improperly relies on an industry licensing pool for patents allegedly essential to the 802.11 standard – called the "Via Licensing Pool" ("Via Pool") – as a benchmark for a RAND royalty rate in this case.  Dr. Layne-Farrar seeks to determine a RAND royalty rate for the '958 and '867 patents based on the rates used in the Via Pool, but does so in a manner that is internally inconsistent and unreliable.  The Court should exercise its gatekeeper function and exclude this improper evidence.

In effect, Dr. Layne-Farrar engages in a three-part analysis to rely on the Via Pool.  Each step of the analysis is flawed, and the overall methodology is unsound and unreliable. ██████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████  Her method thus yields unreliable results.

Second, Dr. Layne-Farrar then compares ████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████

Third, ██████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

████████████████████████████████████████████

███████████

In sum, Dr. Layne-Farrar mixes and matches inconsistent methodologies, and thereby accomplishes unreliable results. ████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████ As set forth more fully below, Dr. Layne-Farrar's methodology is unsound and should be excluded.

## II.    STATEMENT OF FACTS

### A.    Dr. Layne-Farrar's Expert Rebuttal Report Relies In Part On The Via Pool

On or about May 29, 2013, Realtek's economic expert, Dr. Gregory K. Leonard, served his expert report in this case.  On or about June 24, 2013, Dr. Layne-Farrar served her rebuttal report. [*See* Declaration of William R. Overend ("Overend Decl."), Exh. A (LF report).]

Specifically, Dr. Layne-Farrar opines on a purported RAND rate for the '958 and '867 patents, as well as larger group of ████████ of Defendants' patents that are allegedly essential to the 802.11 standard ("SEPs").  [*Id.*, ¶¶ 125-129, 137-143.]  To arrive at these purported RAND rates, Dr. Layne Farrar relies primarily on two sources:  (1) the Via Pool; and (2) a license between LSI and ████████ [*See id.*]  Although Dr. Layne-Farrar employs a defective methodology and analysis throughout her entire report, only her reliance on and application of the Via Pool is the subject of this *Daubert* motion.

### B.    The Via Pool Is An Inherently Flawed Benchmark For The RAND Rate In This Case

In the *Microsoft* case, Judge Robart's opinion setting a RAND rate discussed numerous flaws inherent in the Via Pool.  Via Licensing formed its 802.11-essential patent pool between 2003 and 2005.  *See  Microsoft Corporation v. Motorola, Inc.*, 2013 WL 2111217, at *87 (W.D. Wash. April 25, 2013).  Participation in the pool is substantially lower than other patent pools, as it includes only five licensors and 35 worldwide patents allegedly essential to the 802.11 standard.  *Id.*  The Via Pool has rates that vary from $0.05 to $0.55 per unit, depending on volume.  *Id.* at *88.

Among other things, Judge Robart emphasized that the Via Pool had not been very successful in attracting licensors or licensees. *Microsoft*, 2013 WL 2111217, at *89. The vast majority of companies that own SEPs for the 802.11 standard, such as Motorola and Microsoft, have not joined the Via Pool as licensors. *Id.* Given the poor participation in the pool, it has not achieved a primary purpose of RAND commitments – to encourage widespread adoption of the 802.11 standard – and thus has lower relevance as an indicator of a RAND rate. *Id.* Thus, as Dr. Layne-Farrar acknowledged in her report, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [*See* Overend Decl., Exh. A (LF report), ¶ 82.]

**C.    Dr. Layne-Farrar's Report Uses A Flawed Patent Ranking Analysis To Inflate The Purported Value Of Defendants' Patents**

Based on the Via Pool rates, Dr. Layne-Farrar opines that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [*Id.*, ¶ 114.] Because she is opining on a RAND rate for Defendants' patents (not the Via Pool), Layne-Farrar then considers how to translate the Via Pool rates such that they could apply to Defendants' patents. [*Id.* ¶ 115.] Dr. Layne-Farrar specifically rejects the notion that the rates could be translated by "patent counting" – i.e., a straight apportionment that would divide the total Via Pool rate by the number of patents in that pool to determine a "per patent" rate, and then multiply that by the number of Defendants' patents at issue. [*Id.*, ¶ 116.]

Instead, Dr. Layne-Farrar ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [*Id.*, ¶ 117.] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[*Id.*]

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    Importantly, there are fundamental flaws with the method Dr. Layne-Farrar uses ███

2    ████████████████████████████████████████████████████████████

3    ████████████████████████████████████ [*Id.*, ¶ 120 n. 147.]

4    ████████████████████████████████████████████

5    ████████████████████████████████████████████████████████████

6    █████████████████████ [*Id.*, ¶ 120 n. 147.] The inaccuracies of this method are

7    immediately apparent by the fact that ███████████████████████████████████████

8    ████████████████████████████████████████ [*See*

9    *id.*] Dr. Layne-Farrar admitted at her deposition ██████████████████████████

10   ████████████████████████████████████ [*See*

11   *id.*, Exh. B (LF depo), at 49:1-11.]

12   Notably, there are numerous flaws with Dr. Layne-Farrar's ████████████████ as

13   even she concedes. For example, Dr. Layne-Farrar acknowledges that █████████████

14   ████████████████████████████████████████████████████████ [*Id.*,

15   ¶ 123.] Thus, she admitted that ████████████████████████████████████

16   ██████████████████████████ [*Id.*, Exh. B (LF depo), at

17   71:17-72:3.] Despite this, Dr. Layne-Farrar did not ████████████████████████

18   [*Id.*, Exh. B (LF depo), at 73:7-22.] Moreover, as she admits, ████████████████

19   ██████████████████████████████ [*Id.*, Exh. B (LF

20   depo), at 85:14-86:3.] Such an approach also does not account for the fact that older patents,

21   █████████████████████████████ may be about to expire.

22   ████████████████████████████████████████

23   ██████████████████████████████ [*Id.*, Exh. A, ¶ 121-124.] ███

24   ████████████████████████████████████████████

25   ████████████████████████████ [*Id.*, ¶ 124.] Again, however,

26   Dr. Layne-Farrar did not ███████████████████████ [*Id.*, Exh. B, at 74:4-19.] ███

27   ████████████████████████████████████████████████████████████

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1 ███████████████████████████████████████████████

2 ███████████████████████ [*Id.*, ¶ 129.]

3 ████████████████████████████████████████████

4 ███████████████████████████████████████████

5 ██████████████████████████████████████

6 █████████████████████████████████████████████

7 ████████████████ [*See id.*, Exh. A, at Exhs. 5 & 6 to report.]  Dr. Layne-Farrar admitted at

8 deposition that ██████████████████████████████████████

9 ███████████████████████ [*Id.*, Exh. B (LF depo), at 88:11-89:6.]  By contrast, as Dr. Layne-

10 Farrar also admits, ████████████████████████████████████

11 ████████████████████████████████████████████████

12 ██████ [*See id.*, at Exh. A (LF report), Exhs. 5 & 6; Exh. B (LF depo), at 96:11-15, 100:13-17.] ██

13 ████████████████████████████████████████████████

14 █████████████████████████████████████ [*See id.*, Exh. B (LF depo), at 96:7-

15 10.]

16 ██████████████████████████████████████████

17 ████████████████████████████████████████████████

18 █████████████████████

D.     **Dr. Layne-Farrar Improperly Arrives At Alleged RAND Rates For The '958 And '867 Patents Using The Inflated Value Index For Defendants' SEP Portfolio**

20 ████████████████████████████████████████████

21 ████████████████████████████████████████████████

22 ███████████████████████████████████████████████

23 ████████████████████████████████████████████████

24 ████████████████████████████████████████████████

25 ████████████████████████████████████ [*Id.*, Exh. A (LF report), ¶ 140-

26 141.]███████████████████████████████████████████

27 ████████████

REED SMITH LLP

A limited liability partnership formed in the State of Delaware



As discussed more fully below, Dr. Layne-Farrar's methodology is unsound and unreliable, and should be excluded.

## III.   ARGUMENT

### A.   Expert Testimony Must Assist the Trier of Fact to Understand the Evidence or Determine a Fact in Issue

Because of the difficulty in evaluating their testimony, alleged expert witnesses have the potential to "be both powerful and quite misleading." *Daubert*, 509 U.S. at 595.  As such, the court has a "duty to act as [a] gatekeeper" and "must ensure that any scientific, technical, or specialized expert testimony is not only relevant but also reliable." *Samuels v. Holland Am. Line-USA Inc.*, 656 F.3d 948, 952 (9th Cir. 2011);  *Jackson v. U.S.*, Nos. 05-3006 & 06-6490, 2007 U.S. Dist. LEXIS 93124, at *10-11 (N.D. Cal. Dec. 19, 2007).  To fulfill its role as "gatekeeper," the court must make a preliminary assessment of whether the expert's reasoning or methodology is valid and can be applied to the facts in issue.  *Samuels*, 656 F.3d at 952.  In making this determination, "a court should focus on whether '(1) the [expert] testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.'"  *Bloom v. J.P. Morgan Chase & Co.*, No. 09-3418, 2010 U.S. Dist. LEXIS 131181, at *3 (quoting  Fed. R. Evid. 702); *see also  Heisler v. Maxtor Corp.*, No. 06-6634, 2011 U.S. Dist. LEXIS 43380, at *18 (N.D. Cal. Apr. 20, 2011).

It is well established that "unsupported speculation" does not meet the reliability and relevancy requirements of *Daubert* and Federal Rule of Evidence 702.  *See, e.g., Daubert*, 509 U.S.

at 590; *Samuels*, 656 F.3d at 952.  Courts, therefore, routinely exclude purported expert testimony that is "without underlying factual support" or based on "unsupported assumptions and unsound extrapolation."  *Plush Lounge Las Vegas LLC v. Hotspur Resorts Nev. Inc.*, 371 Fed. Appx. 719, 720 (9th Cir. 2010).  A court may properly exclude expert testimony where "there is simply too great an analytical gap between the data and the opinion proffered."  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also  Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 2012 U.S. Dist. LEXIS 90877, *27-*31 (N.D. Cal. June 30, 2012) (excluding aspects of expert report on damages as unreliable under FRE 702 and *Daubert*).

Here, Dr. Layne-Farrar's opinions fail to meet the reliability and relevancy requirements of Federal Rule of Evidence 702 and *Daubert*.  *See  Lust v. Merrell Dow Pharms., Inc*., 89 F.3d 594, 598 (9th Cir. 1996).  The subject testimony should therefore be excluded.

**B.     Dr. Layne-Farrar's Methodology Is Inherently Unreliable And Unsound**

As set forth in detail above, Dr. Layne-Farrar's reliance on the Via Pool is based on an unsound and unreliable methodology.  As a threshold matter, Dr. Layne-Farrar's methodology is premised upon using the Via Pool as a benchmark for a RAND rate for Defendants' patents.  But as Dr. Layne-Farrar herself acknowledges, the



Dr. Layne-Farrar compounds the flaws inherent in using the Via Pool as a benchmark by

Even worse,

*See Plush Lounge*, 371 Fed. Appx. at 720 (proper to exclude purported expert testimony that is based on "unsupported assumptions and unsound extrapolation").

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1

2

3

4                                                                  This alone renders Dr. Layne-

5   Farrar's opinions regarding the Via Pool unreliable.  *See id.*

6           Dr. Layne-Farrar's testimony is also unreliable and should be excluded because she

7                                    In *Daubert*, the Supreme Court identified "error rates" as

8   one of the specific factors that could be considered to determine reliability.  *See Daubert,* 509 U.S. at

9   593-94.  Thus, a court may exclude expert testimony where,           the expert fails to provide

10  evidence of a rate of error that would show the expert's methodology was reliable.  *See, e.g.*, *Silicon*

11  *Knights, Inc. v. Epic Games, Inc.*, 2011 WL 6748518, at *10 (E.D. N.C. Dec. 22, 2011) (excluding

12  testimony on the ground that expert did not reliably apply methodology where, among other things,

13  there was no evidence of a known error rate for the expert's damages methodology); *Stoebner*

14  *Holdings, Inc. v.. Automobili Lamborghini S.P.A* , 2007 WL 4230878, at *9 (D. Hawaii Nov. 30,

15  2007) (excluding testimony on loss of use as unreliable under Rule 702 where, among other things,

16  the expert provided no evidence that the formula he used had a low error rate).  Here,

17

18

19

20

21

22

23

24          In addition to applying a                              to a speculative purported benchmark, Dr.

25  Layne-Farrar's methodology is fundamentally flawed because she uses inconsistent methodologies,

26  and thereby yields unreliable results.  Notably, other courts have rejected testimony "for which the

27  data relied upon is flawed or the methodology used is 'internally inconsistent or unreliable.'"  *See,*

28  *e.g.*,  *In re Pharm. Indus. Average Wholesale Price Litig.*, 491 F. Supp. 2d 20, 85-86 (D. Mass.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

2007) *aff'd*, 582 F.3d 156 (1st Cir. 2009) (quoting *Ed Peters Jewelry Co., Inc. v. C & J Jewelry Co., Inc.*, 124 F.3d 252, 260 (1st Cir. 1997)); *see also Grp. Health Plan, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 753, 759 (8th Cir. 2003) (affirming district court's exclusion of expert opinion based on "internally inconsistent" methodology).

Here, Dr. Layne-Farrar ███████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████ Dr. Layne-Farrar's methodology is internally inconsistent, yields unreliable results, and thus fails to meet the threshold requirements of *Daubert* and Rule 702.

## IV. CONCLUSION

Dr. Layne-Farrar should not be allowed to mix and match methodologies in a manner that is inconsistent and unreliable. Because her methods are unreliable and unsound, Dr. Layne-Farrar's opinions and testimony that rely on the Via Pool should be excluded.

## REALTEK'S MOTIONS *IN LIMINE*

### A. Realtek's Motion In Limine #_1: Exclude Evidence And Argument Regarding 2002/2003 Correspondence Between Agere And Realtek

Defendants have argued that they "clearly made a license available to Realtek in 2002 and 2003 and did with specific regard to the patents [at issue]." [Dkt. No. 77, at 16.] Further, Defendants' economic expert, Dr. Anne Layne-Farrar, relies on the 2002/2003 correspondence between Agere and Realtek in her expert report for the formulation of the RAND royalty rate applicable in this case. Any such evidence or argument pertaining to the correspondence is improper and should be excluded.

First, the threshold test of the relevance of the 2002/2003 correspondence has not been met in relation to the remaining issues in this case. The Court has already ruled on summary judgment that

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Defendants breached their RAND obligations by seeking injunctive relief against Realtek in the ITC without first making an offer to Realtek.  [*See* Dkt. 102, at 11.]  The parties agree that liability is not an issue at trial.  [*See* Dkt. 153.]  As such, the letters are not relevant to any issues remaining in the case.  *See* Fed. R. Evid. 401.

Second, the Court has already ruled on and rejected Defendants' argument that they did not breach their RAND obligations in light of the 2002/2003 correspondence.  Specifically, the Court ruled that the 2002/2003 correspondence did not amount to a RAND offer for reasons including that: (1) the correspondence concerned the 802.11b standard, which was "neither the standard at issue in the ITC litigation nor is it the subject of the RAND commitment in Agere's Letters of Assurance to the IEEE in the record before the court"; (2) the parties ceased communication before any specific offer was actually made; and (3) Realtek continued to sell its Wi-Fi/802.11 component parts for almost nine years thereafter without hearing from Defendants, implying that Defendants were no longer seeking to license their declared standard-essential patents to Realtek.  [Dkt. 102.]

Importantly, the law of the case doctrine precludes a court from reconsidering an issue that has already been resolved, including via pretrial motions.  *Flintkote Co. v. Gen. Acc. Assur. Co. of Canada*, C 04-1827 MHP, 2009 WL 3568644, at *4 (N.D. Cal. Oct. 27, 2009), *quoting  U.S. v. Phillips*, 367 F.3d 846, 856 (9th Cir. 2004); *accord  Richardson v. U.S.*, 841 F.2d 993, 996, *amended*, 860 F.2d 357 (9th Cir. 1988) ("Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case.").  Here, this Court's ruling that the 2002/2003 correspondence did not constitute an offer is already law of the case, and Defendants cannot seek a contrary ruling (or to mislead the jury that one is possible).  *See id.*; *see also  U.S.  v. Quality Built Const.*, 358 F. Supp. 2d 487, 490 (E.D. N.C. 2005) (granting motion *in limine* based on the law of the case doctrine and excluding evidence only relevant to issues previously decided by the court); Civ. L.R. 7-9.

Finally, the 2002/2003 correspondence is also not relevant to any of the remaining issues at trial – namely, (1) Defendants' damages to Realtek, and (2) a determination of the RAND rate for the '958 and '867 patents.  The correspondence is simply not germane to the RAND royalty analysis.  Any argument or analysis concerning the correspondence will confuse and mislead the jury to

1    believe that liability is somehow an open issue, whereas Defendants' breach has already been

2    decided in Realtek's favor.  To the extent the correspondence has any probative value at all, it is

3    substantially outweighed by the severe risk of unfair prejudice to Realtek, confusion of the issues

4    remaining to be decided, and the potential for misleading the jury.  *See*  Fed. R. Evid. 403.

5         Accordingly, Realtek respectfully requests that the Court exclude all evidence and/or

6    argument related to the 2002/2003 correspondence between Realtek and Agere.

7    **B.       Motion in Limine # 2:  Exclude Evidence Or Argument Concerning Alleged
             Infringement Of Defendants' Patents By Realtek**

8

9         Realtek also moves to exclude evidence or argument that Realtek has infringed the '958 or

10   '867 patents.  Defendants have not asserted any claim for patent infringement in this case, nor is

11   infringement otherwise at issue in this action.  Defendants made a deliberate tactical decision to

12   assert their claims for infringement only in the ITC action (where the exclusive remedy sought was

13   injunctive in nature).  Despite this, Defendants now seek to turn this case into an infringement case

14   by arguing infringement issues to the jury, which will be highly prejudicial, confusing and

15   misleading.  Realtek anticipates that such issues will be raised – and should be excluded – in at least

16   the following areas.  Defendants should solely be permitted to reference that they initiated a

17   proceeding in the ITC alleging infringement of the '958 and '867 patents.

18   **1.       Defendants Should Be Precluded From Arguing That Realtek Infringes The '958
             Or '867 Patents, And From Introducing Any Evidence Of Alleged Infringement**

19

20        Defendants have asserted that the question of infringement is relevant to a determination of

21   the RAND royalty rate.  [*See* Dkt. No. 153, at 16.]  It is clear from Defendants' recent filings and

22   their earlier expert reports that Defendants effectively intend to try the issue of infringement before

23   the jury, even though there is no claim for infringement in this case.  For example, in the expert

24   rebuttal report of Defendants' technical expert, Kevin Negus, Ph.D., Dr. Negus opined that █████

25   ████████████████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████████████████

27   ████████████████████████████████████████████████████████████████████

28   █████   At deposition, Dr. Negus confirmed Defendants' position that Dr. Negus' report █████████

29   ████████████████████████████████████████████████████████████████

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

██████████████████████████ [Overend Decl., Exh. C (Negus report), ¶¶ 105-109.]

[Overend Decl., Exh. D (Negus depo), at 187:23-190:5.]

The Court should exclude Defendants from introducing any evidence or argument that Realtek infringes the '958 or '867 patents.  Defendants elected not to assert their infringement claims in this forum, but instead to do so only in the ITC.  Because infringement is not a legal issue to be determined in this case, Realtek has done no lay discovery in this action regarding non-infringement (or invalidity) and its experts have not opined on the issue.  Rather, Realtek is seeking a determination of the RAND terms for a license to the '958 and '867 patents, and to enjoin Defendants from further seeking excessive royalties that are inconsistent with their RAND obligations.  [*See* Dkt. 1, at Prayer.]  These determinations involve no analysis of infringement.

If allowed to introduce evidence and argument regarding alleged infringement – such as a detailed technical description by Dr. Negus of his analysis of allegedly infringing Realtek products – Defendants would severely mislead the jury to believe that infringement was an issue in this case and that Realtek was somehow liable or potentially liable for patent infringement, even though that is not a claim in this case.  Such an argument would be highly prejudicial to Realtek, particularly given that its experts rightly did not opine on such matters because they are not at issue here.  Any probative value of such evidence and argument is strongly outweighed by the risk it would confuse the issues, mislead the jury and cause severe prejudice to Realtek.  *See* Fed. R. Evid. 403.

## 2.  Defendants Should Be Precluded From Speculating About The Final Outcome Of The ITC Proceeding

Defendants have also indicated that they may argue that "the ITC proceeding is ongoing and the ITC may, as LSI contends it should, overturn the Initial Determination of non-infringement of the '958 and '867 Patents on December 9, 2013, a full month after trial."  [Dkt. No. 153, at 17.]  Defendants may make these and other arguments directed toward analyzing or predicting what the ITC might do, to suggest that Realtek is liable for patent infringement – despite the ITC's Initial Determination to the contrary.

The Court should exclude any argument about the Final Determination (or any appeals therefrom).  Any argument by Defendants about what the ITC may or may not do is sheer

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  speculation, and should be excluded on that basis alone.  *See* Fed. R. Evid. 602.  Moreover, as

2  discussed earlier, infringement is not an issue in this case.  Any probative value of such issues is

3  strongly outweighed by the risk of confusing the issues, misleading the jury and causing undue

4  prejudice to Realtek.  *See* Fed. R. Evid. 403.  Finally, Defendants opposed Realtek's motion to

5  continue the trial in this action until *after* the outcome of the ITC matter was final, which would

6  have provided clarity on these very issues.  Having done so, Defendants cannot now try to take

7  advantage of that lack of clarity by speculating about what might happen.  *See id.*

8      **3.**    **Defendants Should Be Precluded From Introducing Evidence Or Argument Of Past Royalties Allegedly Due To Defendants**

9

10  In the parties' recent Joint Submission, Defendants asserted that an issue for trial was not

11  only the determination of a RAND royalty rate, but also "the amount of past royalties due from

12  Realtek to LSI if it enters into a license with LSI."  [*See* Dkt. No. 153, at 9 n.7.]  This "back door"

13  attempt to inject infringement issues into the case is improper and should be excluded for at least

14  two fundamental reasons.

15  First, calculating an "amount of past royalties" is the same thing as calculating damages for

16  patent infringement.  Through such evidence, Defendants seek to argue or imply that Realtek is

17  liable for patent infringement and owes damages to Defendants.  This is improper, because patent

18  infringement is not an issue in this action.  As such, the Complaint seeks a declaratory judgment

19  setting forth the terms and conditions for a RAND license, "including the applicable royalty rate,"

20  but nowhere seeks a determination of any amounts allegedly due by Realtek.  [Dkt. No. 1, ¶ 69.]

21  Moreover, the argument or implication that Realtek is liable for patent infringement is simply not

22  true.  To the contrary, the ITC has made an Initial Determination that Realtek does *not* infringe the

23  '958 and '867 patents.  Indeed, the only damages issue to be decided by this jury is the amount of

24  damages *Defendants owe to Realtek* for their breach of their RAND obligations.  Thus, Defendants'

25  plans to introduce evidence and argument on alleged infringement damages by Realtek would

26  mislead the jury, confuse the issues, and cause severe prejudice to Realtek.  *See* Fed. R. Evid. 403.

27  Second, the fact that Realtek's expert opined on a lump sum calculation as an alternate

28  royalty measure does not mean that Realtek somehow conceded that past royalties were an issue in

this case. Notably, Realtek's economic expert, Dr. Leonard, calculated a lump sum royalty based on Realtek's license with a third party by dividing the amount paid in that license by the number of patents at issue – and *not*, as Defendants contend, by using "past royalties due" by Realtek [*See* Overend Decl, Exh. E (Leonard report), ¶ 183; Dkt. No. 153 n.7.] Regardless, it has never been Realtek's contention that a determination should be made in this case for any past royalties due to Defendants by Realtek. Rather, Realtek has always sought a determination of the proper RAND royalty. Regardless of whether this royalty takes the form of royalty rate or a lump sum, Defendants should not be permitted to introduce evidence or argument suggesting that Realtek "owes" past royalties for alleged infringement.

## C.   Motion in Limine # 3:  Exclude Evidence Or Argument That Realtek Failed To Mitigate Its Damages

### 1.   Defendants Should Be Precluded From Introducing Any Expert Testimony That Realtek Failed To Mitigate Its Damages

As a threshold matter, the Court should exclude any expert testimony that Realtek failed to mitigate its damages under any theory. Under the doctrine of mitigation of damages, a plaintiff who suffers damage as a result of a breach of contract has a duty to take reasonable steps to mitigate those damages and will not be able to recover for any losses which could have been thus avoided. *Valle de Oro Bank v. Gamboa*, 26 Cal. App. 4th 1686, 1691 (1994). Notably, the duty to mitigate damages does not require an injured party to do what is unreasonable or impracticable, and the rule has no application "where its effect would be to require the innocent party to sacrifice and surrender important and valuable rights." *Id.* The party asserting the defense bears the burden of proving that losses could have been avoided by reasonable effort. *Brandon & Tibbs v. George Kevorkian Accountancy Corp.*, 226 Cal. App. 3d 442, 460-461 (1990)

Here, the Court has already determined that Defendants breached their contractual obligation to the IEEE and to Realtek as a third-party beneficiary of that contract by seeking injunctive relief against Realtek in the ITC before offering Realtek a license. [*See* Dkt. No. 102, at 11.] Realtek is claiming its attorneys' fees and costs incurred in the ITC action as its damages proximately caused by this breach. Realtek produced portions of invoices through May 31, 2013 that showed the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

amount of Realtek's legal fees and costs incurred through that time in the ITC action, and Realtek's damages expert, Dr. Greg Leonard, opined that Realtek suffered such amounts as damages.

Notably, Defendants' damages expert, Dr. Anne Layne-Farrar, did not dispute the damages sought by Realtek. To the contrary, Dr. Layne-Farrar acknowledged ███████████████████

███████████████████████████ [Overend Declaration, Exh. A (LF report), ¶ 144.]

Moreover, Dr. Layne-Farrar failed to offer *any* opinion that Realtek failed to mitigate its damages. Instead, Dr. Layne-Farrar merely stated that it was "████████████████

██████████████████████████████████

█████████████████████████ [*Id.*, ¶ 146.] At deposition, Dr. Layne-Farrar confirmed that █████████████████████████

███████████████ [Overend Decl., Exh. B (LF depo), at 127:21-130:17.] Having failed to opine on any basis for mitigation in her expert report, despite ample opportunity to do so, Dr. Layne-Farrar should be precluded from offering any opinions at trial as to any alleged failure by Realtek to mitigate its damages, because any such testimony would be beyond the scope of her expert report. *See* Fed. R. Civ. P. 26 & 37. Pursuant to Rule 37(c), Dr. Layne-Farrar should be precluded from testifying beyond the scope of her report: "If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or was harmless." Fed. R. Civ. P. 37(c).

Moreover, Dr. Layne-Farrar candidly admitted ████████████████████████

████████████████████████████████

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

PLAINTIFF'S AMENDED *DAUBERT* MOTION AND MOTIONS *IN LIMINE*

[Overend Decl., Exh. B (LF depo), at 129:19-25 (emphasis added).]  Thus, Dr. Layne-Farrar

admitted ███████████████████████████████████████████████████████████████

███████████████████████████████████████  Importantly, Defendants did not

disclose any expert on legal fees or offer any expert testimony in that regard.  As such, Defendants

should be precluded from using Dr. Layne-Farrar to opine on mitigation, given that she is not

qualified to testify as an expert on the reasonableness of the fees incurred by Realtek.

Finally, Defendants cannot legitimately claim that Dr. Layne-Farrar was entitled to postpone

her calculation of any amounts that Realtek allegedly failed to mitigate.  Fundamentally, Dr. Layne-

Farrar could not do so because, as discussed above, she admitted she is not qualified to determine the

reasonableness of fees incurred, but would need a legal expert to opine on that issue.  Moreover,

there would be no justification for any such postponement.  Realtek produced portions of invoices

showing the total amounts it incurred in attorneys' fees and costs in the ITC matter.  Defendants took

the deposition of Yee-Wei Huang on April 16, 2013 and had a full opportunity to question him about

the "reasonableness" of Realtek's fees incurred in the ITC matter, but failed to do so.  Indeed,

although Defendants questioned Mr. Huang on the very invoices at issue, they asked him only to

confirm that the invoices were for fees incurred in the ITC action, but asked *no* questions directed to

whether the reasonableness of the invoices, or the rates charged, or any other lines of questioning

that might pertain to Defendants' mitigation defense.  [Overend Decl., Exh. F (Huang depo), at

264:16-265:21.]  Having failed to develop this record during discovery, Defendants cannot belatedly

seek to introduce expert testimony on this subject at trial.

In sum, Defendants failed to introduce expert testimony on mitigation, despite ample

opportunity to do so, and Defendants' damages expert admits she is not qualified to opine on the

reasonableness of the fees and costs incurred by Realtek in the ITC matter.  Accordingly, the Court

should exclude any expert testimony regarding mitigation of damages at trial.

**2.** **Defendants Should Be Precluded From Introducing Any Evidence Or Argument That Realtek Failed To Mitigate Its Damages Based On An Alleged Failure To Respond To Defendants' June 2012 License Proposal**

Regardless of whether Defendants are permitted to introduce expert testimony regarding

mitigation generally – which should be excluded – they should not be permitted to introduce *any*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   evidence (from lay or expert witnesses) or argument regarding the June 2012 proposal in support of

2   their mitigation defense.  Until recently, Defendants never even mentioned their theory that

3   Defendants' June 2012 proposal created a duty on Realtek to respond in some undefined manner or

4   else be found to have failed to mitigate its damages.  Only on the eve of pretrial preparations did

5   Defendants advance this theory, well after the close of all discovery.  There are at least four

6   fundamental reasons Defendants should be precluded from pursuing this theory at trial.

7          First, and fundamentally, the June 2012 proposal is not relevant to Defendants' purported

8   mitigation defense, because Realtek's response to the proposal (or alleged lack thereof) could not

9   evidence a failure to mitigate as a matter of law and common sense.  The Court has already decided

10  that Defendants breached their agreement to license on RAND terms by filing the ITC action before

11  making any licensing offer to Realtek.  [Dkt. No. 102, at 11.]  The Court also found that by filing the

12  ITC action, Defendants created undue leverage and placed Realtek at a bargaining disadvantage,

13  because Realtek would have been forced to negotiate with the threat of an injunction hanging over

14  its head.  [*Id.*, at 10-11, 13.]  As a result, a fair negotiation could not have taken place unless and

15  until Defendants withdrew their ITC investigation against Realtek.

16         Because Defendants did not withdraw (and still have not withdrawn) the ITC action and

17  corresponding threat of an injunction, Defendants' breach was a continuing breach that continued to

18  create an *inherently unfair* negotiating environment.  Realtek cannot be said to have "failed to

19  mitigate" by refusing to negotiate an inherently unfair proposal from the breaching party under the

20  duress of an injunctive threat.  Put simply, refusing to do something unfair or unreasonable does *not*

21  constitute a failure to mitigate.  *See Valle de Oro Bank*, 26 Cal. App. 4th at 1691 (duty to mitigate

22  does not require an injured party to do "what is unreasonable or impracticable," or to "sacrifice and

23  surrender important and valuable rights").  Indeed, a non-breaching party seeking to mitigate

24  damages arising from the defendant's breach is not required as a matter of law "'to contract a second

25  time with the one who has without cause breached a prior contract with him,'" even if doing so may

26  assist in avoiding damages.  *Zanker Development Co. v. Cogito Systems Corp.*, 215 Cal.App.3d

27  1377, 1382 (1989), *quoting Stanley Manly Boys' Clothes, Inc. v. Hickey*, 113 Tex. 482, 259 S.W.

28  160, 162 (Tex. Com. App. 1924);  *Carlisle Ventures, Inc. v. Banco Espanol De Credito, S.A.*, 176

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

F.3d 601, 609 (2d Cir. 1999) (citing *Zanker*); *see also DeRosier v. Utility Systems of America, Inc.*, 780 N.W.2d 1, 7 (Ct. App. Minn. 2010) (citing *Zanker* for proposition that "[o]ther states have faced the issue and have held that the nonbreaching party can recover its full damages despite refusing the breacher's new offer that would have minimized the loss."); *Wieberg v. Resthaven Gardens of Memory, Inc.*, No. 89-1509-C, 1991 WL 241815, (D. Kan. Oct. 29, 1991) ("Kansas law is clear that there is no duty to mitigate if the mitigation requires dealing with the breaching party"), citing *W-V Enterprises, Inc. v. Federal Savings & Loan Ins. Corp.*, 234 Kan. 354, Syl. ¶7, 673 P.2d 1112 (1983).  Likewise, no duty to mitigate would require Realtek to relinquish its right to defend itself in the ITC – particularly against an action that was wrongfully brought in the first instance.  *See id.*  In short, Realtek's response to June 2012 proposal is not relevant to the issue of mitigation.  *See* Fed. R. Evid. 401-402.  Even if relevant, the probative value is substantially outweighed by the risk of unfair prejudice, misleading the jury, and confusing the issues.  Fed. R. Evid. 403.

Second, none of Defendants' experts opined that Realtek's response to the June 2012 proposal constituted a failure to mitigate damages.  In fact, although Defendants' economics expert, Dr. Layne-Farrar, reviewed Defendants' June 2012 proposal in connection with preparation of her report [*see, e.g.*, Overend Decl., Exh. A (LF report), ¶ 43.], she did not rely on the proposal (or Realtek's response thereto) for any opinion that Realtek failed to mitigate, or even mention the proposal at all in connection with damages issues.  Thus, Dr. Layne-Farrar cannot testify regarding the June 2012 proposal as a basis for Defendants' alleged mitigation defense, because such testimony would be beyond the scope of her expert report.  *See* Fed. R. Civ. Proc. 26 & 37.  Indeed, at deposition, Dr. Layne-Farrar testified ██████████████████████████████████████████████████████████████████████████████████████████████████████████  To allow inconsistent testimony at trial would be unfair and highly prejudicial to Realtek.  *See* Fed. R. Evid. 403.

Third, Defendants' mitigation theory would merely invite the jury to speculate as to what "would have" or "could have" happened between Realtek and Defendants had they engaged in extensive negotiations over the June 2012 proposal.  ████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████████

– 18 –

1    ███████████████████████████████ [Overend Decl., Exh. I (Waskiewicz depo.), at

2    108:17-109:17 ██████████████████████████████████████████ 110:8-

3    15 ████████████████████████, & 150:16-151:15 ██████████████████

4    ████████████████████] Thus, and despite the inherently unreasonable nature of

5    Defendants' June 2012 proposal, it is rank speculation to say if or when the parties might have

6    completed a license agreement.  Defendants should not be allowed to present such a speculative

7    mitigation theory to the jury.  *See, e.g., GEM Acquisition Co, LLC v. Sorenson Group Holdings,*

8    *LLC*, No. C 09-01484 SI, 2010 WL 1996602 at *3 (N.D. Cal. May 18, 2010) (denying motion to

9    compel where "it is entirely speculative whether GEM could, or indeed should, have attempted to

10   mitigate by engaging in other investment activities.").

11          Finally, Defendants' own discovery conduct should preclude them from relying on the June

12   2012 proposal for their mitigation defense.  During discovery, Defendants did not identify any fact

13   witnesses in their Initial Disclosures with knowledge of this new theory that the June 2012 proposal

14   somehow mitigated the damages resulting from their breach of contract, nor did they make any such

15   fact witnesses known to Realtek during the discovery process or in writing, such that Realtek could

16   have pursued these issues during discovery.  See Fed. R. Civ. Proc. 26(e).  To the contrary,

17   Defendants steadfastly denied breaching their RAND obligations in the first instance, and thus never

18   proffered (until now) their alternate theory that the June 2012 proposal somehow mitigated (or

19   cured) that breach.  Having failed to provide discovery on these issues, Defendants should be

20   precluded from pursuing the issues at trial.  Fed. R. Civ. Proc. 37(c) ("If a party fails to provide

21   information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . .

22   at a trial, unless the failure was substantially justified or was harmless.")

23          In sum, Defendants should be precluded from introducing any evidence or argument at trial

24   that the June 2012 proposal somehow cured their breach of contract, or gave rise to a duty to

25   mitigate, or that Realtek's refusal to provide a counter-offer to the proposal amounted to a failure to

26   mitigate.

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

### 3.    Defendants Should Be Precluded From Introducing Any Evidence Or Argument Concerning The Parties' Settlement Communications And Negotiation Status

As part of its alleged mitigation defense, LSI wants to tell the jury that Realtek never responded to the June 2012 proposal.  As a matter of fact, this is simply not true, because Realtek responded in September 2012 to inquire regarding the status of the offer, so that it could investigate whether additional settlement discussions would be fruitful.  In addition, the parties were having regular settlement conferences as part of the ITC proceeding.  The Court should exclude all these communications (including the alleged failure to respond thereto) because they are settlement communications that go to the amount of a disputed claim.

Under Rule 408, evidence of "conduct or statements made in compromise negotiations regarding the claim is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or conclusion." Fed. R. Evid. 408(a)(2). Admitting settlement communications into evidence would strongly discourage parties from participating in settlement negotiations. *See, e.g.,  Hudspeth* v. *C.I.R.,* 914 F.2d 1207, 1213 (9th Cir. 1990) (discussing the Rule 408 public policy interest in encouraging settlement).  Other courts have specifically excluded such communications when used in support of an alleged mitigation defense.  *See  Pierce v. F .R. Tripler & Co.*, 955 F.2d 820, 826-27 (2d Cir. 1992) ("Evidence that demonstrates a failure to mitigate damages goes to the 'amount' of the claim and thus, if the offer was made in the course of compromise negotiations, it is barred under the plain language of Rule 408.").  A recent decision from this Court involving a motion *in limine* motion is in accord.  *Cuc Dang v. Sutter's Place, Inc.*, 2012 WL 6203203 (N.D. Cal., Dec. 12, 2012) ("The court also questions whether proving mitigation of damages is an improper purpose under Fed.R.Evid. 408 because it goes to the "amount of a claim that was disputed.")

In addition, the parties are contractually barred under their nondisclosure agreement (the "NDA") from offering such communications into evidence.  On or about June 14, 2012, in connection with the June 2012 proposal, the parties signed the NDA to enable Realtek and Defendants to conduct these discussions.  Among other things, the NDA broadly defines

1 ██████████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████████

3 ████████████████████████████   [Overend Decl., Exh. G (NDA), ¶ 6.]

Here, pursuant to Rule 408 and the NDA, the Court should exclude any settlement proposals or offers to compromise a claim made by either party.  Specifically, the parties and their witnesses should be directed not to refer to any such settlement communications (or lack thereof) made in response to the June 2012 proposal, or any communications made at any settlement conferences in this action, the ITC proceeding, or any other proceedings involving Realtek and Defendants.  This includes Realtek's alleged failure to respond to the June 2012 proposal, as such evidence of alleged failure to mitigate damages should be barred.  *See Pierce*, 955 F.2d at 826-27; *Cuc Dang*, 2012 WL 6203203.  Likewise, Rule 408 and the NDA bar introduction of either party's statements made commenting on the litigation – including the merits, strengths, or weaknesses of claims and defenses – during the course of settlement communications. *See* Fed. R. Evid. 408 (evidence of a "statement made during compromise negotiations *about the claim*" is inadmissible to disprove validity of a claim) (emphasis added).

### 4.    Defendants Should Be Precluded From Introducing Any Evidence Or Argument Regarding Realtek's Other Lawsuits Against LSI

Defendants may also try to argue that Realtek's other litigation against Defendants evidences an unwillingness to negotiate in good faith in response to the June 2012 proposal – and thus a failure to mitigate damages.  Realtek has filed its own patent infringement case against LSI and Agere.  *See Realtek Semiconductor Corp. v. LSI Corp.*, Case No. 12-cv-3437 (N.D. Cal. June 29, 2012).  Realtek has also initiated an Investigation in the ITC against LSI and Seagate Technologies, alleging infringement of the same patents as in the Northern District of California case.  *See In re Certain Integrated Circuit Chips and Prods. Containing Same*, Inv. No. 337-TA-859 (September 19, 2012).  Realtek has also filed a patent infringement action against LSI in China.  In Defendants' earlier motion to stay, they argued that these various lawsuits showed that Realtek "refused to willingly license the patents" and were evidence of "gamesmanship."  Such evidence and argument is improper and should be excluded.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

Importantly, "unless the [other] lawsuits have been shown to be fraudulent, the probative value of evidence pertaining to a plaintiff's litigation history is substantially outweighed by the danger of jury bias." *Henderson v. Peterson*, C 07-2838 SBA PR, 2011 WL 2838169, at *5 (N.D. Cal. July 15, 2011). Furthermore, evidence which may be offered in an attempt to show Plaintiff's litigiousness is inadmissible character evidence. *See* Fed. R. Evid. 404; *Seals v. Mitchell*, CV 04-3764 NJV, 2011 WL 1399245 (N.D. Cal. Apr. 13, 2011) (citations omitted); *see also Dupard v. Kringle*, 76 F.3d 385, 1996 WL 56098, *4–5 (9th Cir. 1996) (unpublished) ("Evidence regarding [the plaintiff's] general aggressiveness and litigiousness is precisely the type of character evidence admitted to prove propensity that is prohibited by Rule 404 .").

Here, although Realtek's other lawsuits involve some or all of the same parties, there is no overlap with the issues involved in this case. As opposed to the '837 ITC matter (which involves the '958 and '867 patents at issue in this case), the other three actions between Realtek and Defendants do not involve claims of *Defendants´ patents* at all. Rather, they involve claims of infringement of *Realtek's patents* by Defendants. Moreover, the patents-in-suit in Realtek's lawsuits against Defendants are not tied to any RAND obligations and thus no correlation can be drawn between the other Realtek lawsuits and Defendants' action in this case. As such, any probative value of such evidence is substantially outweighed by the risk of confusing the issues, misleading the jury and causing prejudice to Realtek. *See id.*; *see also* Fed. R. Evid. 403. According, the Court should exclude such evidence and argument

**D.   Motion in Limine # 4:  Exclude Evidence Or Argument Concerning Alleged RAND Royalty Rate Or Other RAND Terms And Conditions For License To More Than '958 And '867 Patents**

Defendants' recent Joint Submission (as well as expert deposition testimony) make clear that Defendants intend to introduce evidence and argument that any RAND royalty rate should cover not only the '958 and '867 patents, but additional LSI patents as well. For example, Defendants' rebuttal economics expert opined on purported RAND rates for a set of eight LSI patents, as well as a broader license to LSI's purported portfolio of alleged essential patents regarding the 802.11 standard. The Court should exclude such evidence and argument for several reasons.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

First, Realtek is seeking a determination at trial of the RAND rates for *only* the '958 and '867 patents. [*See* Dkt. 153, at 1.] Given the relief actually sought by Realtek, the determination of a RAND rate at trial – whether made by the Court or a jury – is properly limited to the '958 and '867 patents. Among other things, presenting evidence or argument that a larger royalty rate applies to Defendants' patents could create a false impression that a larger rate is somehow appropriate for the '958 and '867 patents. Introducing such evidence and argument is thus highly likely to mislead the jury, confuse the issues and cause severe prejudice to Realtek.[1] *See* Fed. R. Evid. 403. A determination of royalty rates for any other patents would be advisory in nature and inappropriate.

Second, the fact that the parties' experts opined on RAND rates for larger sets of patents does not mean that it is a proper issue for trial. Although Realtek's economics expert, Dr. Leonard, opined on alternate rates for 8 and 12 patents, he did so only out of an abundance of caution and in response to an eleventh-hour identification of additional alleged essential patents by Defendants, given that it was unclear whether Defendants' expert might opine on a purported RAND rate for a larger set of patents. Importantly, both parties' experts opined on royalty rates limited to the '958 and '867 patents, and thus there is no prejudice to Defendants from excluding argument regarding a purported RAND rate for a larger portfolio that is outside the relief sought in this action.

## E.    Realtek's Motion In Limine # 5: Prohibit Use Of The Administrative Law Judge's Decision That LSI Did Not Breach Its RAND Obligations

Defendants argue in the Joint Submission that they should be entitled to invoke the Administrative Law Judge's denial of Realtek's RAND defense from the ITC Investigation. [Dkt. 153 at 17.] The ALJ's decision is contrary to the law of the case, irrelevant, and highly prejudicial to Realtek. As such, any argument or evidence related to this aspect of the Initial Determination should be excluded from trial in this action.

---

[1]   To be clear, Realtek realizes that some of the licenses which both parties' experts rely upon to determine a RAND rate are for larger portfolios of patents. To arrive at a RAND rate for the '958 and '867 patents, both parties' experts necessarily perform some sort of apportionment from a portfolio or larger set of patents to arrive at a rate for the '958 and '867 patents. Realtek is not seeking to exclude such evidence or argument. However, this is different from arguing that the RAND royalty rate that should be determined in *this case* should be for 8 or 19 patents, as opposed to being limited to the '958 and '867 patents at issue in the ITC proceeding.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The ITC's findings on the RAND issues are contrary to this Court's rulings, which are the law of the case.  The law of the case doctrine precludes a court from reconsidering an issue that has already been resolved, including via pretrial motions.  *Flintkote*, 2009 WL 3568644, at *4, *quoting U.S. v. Phillips*, 367 F.3d at 856 (9th Cir. 2004); *accord Richardson*, 841 F.2d at 996.  This Court has already determined on summary judgment that there were no genuine disputes of material fact and that Realtek was entitled to judgment as a matter of law that Defendants breached their RAND obligations.  Under the law of the case doctrine, Defendants cannot now attempt to re-try that issue or suggest a different result than the Court already decided.  *See id.*; *see also U.S.  v. Quality Built Const.*, 358 F. Supp. 2d at 490 (granting motion *in limine* based on law of the case doctrine and excluding evidence relevant only to issues previously decided by court); Civ. L.R. 7-9.

In light of the fact that it would be *directly contrary* to the Court's summary judgment ruling, any effort to introduce evidence or argument regarding the ITC's Initiation Determination regarding the RAND defense in the ITC proceeding should also be excluded because it would be grossly misleading, confusing and highly prejudicial.  *See* Fed. R. Evid. 403.  This is particularly so given that the ITC itself explained that it made its rulings on a *different record* than was before this Court.  *Certain Audiovisual Components and Products Containing the Same*, Initial Determination, USITC Inv. No. 337-TA-837, 2013 WL 4406820, at *185 (Jul. 18, 2013).

## F.     Realtek's Motion In Limine #6:  Exclude ITC Trial Testimony Of Carl Andren And Others

Despite never having disclosed him as a witness during discovery, just two days ago, Defendants indicated they "may" proffer trial testimony of third party witness Carl Andren (and possibly other witnesses) from the ITC proceeding between LSI and Realtek.  Mr. Andren apparently testified for Realtek in the ITC proceeding regarding issues related to that case.  Although Defendants have not identified the specific testimony from Mr. Andren that they seek to proffer, any trial testimony from Mr. Andren in the ITC case should be excluded for several reasons.

First, as noted, Defendants never disclosed Mr. Andren as a witness in any of their initial disclosures in this action.  [Overend Decl., Exh. H (Defs.' 4/19/13 Supplemental Disclosures]  This fact, alone, requires an order prohibiting Defendants from now offering his ITC trial testimony.  Fed.

1   R. Civ. Proc. 37(c) ("If a party fails to provide information . . . as required by Rule 26(a) or (e), the

2   party is not allowed to use that information . . . at a trial, unless the failure was substantially justified

3   or was harmless.")[2]

4            Second, Mr. Andren's ITC trial testimony is inadmissible hearsay and does not fall under any

5   recognized hearsay exception.  The former testimony exception under Federal Rule of Evidence

6   804(b) does not apply because the issues in the ITC case and this action are different.  Indeed, the

7   ITC action involves a claim of patent infringement by LSI against Realtek, whereas this is a breach

8   of contract case.   In addition, Realtek is represented by different counsel in the ITC case.  Realtek's

9   counsel in this action had no involvement in the presentation of Mr. Andren's testimony, or the

10  testimony of any other witness, in that case.  Given the different issues and counsel in the two cases,

11  Mr. Andren's testimony is not admissible under FRE 804(b).  *Compare  Hynix Semiconductor Inc. v.*

12  *Rambus Inc.*, 250 F.R.D. 452, 458 (N.D. Cal. 2008) (admitting prior deposition testimony from

13  separate action where issues in two actions were "identical.").  It is also not admissible under Federal

14  Rule of Civil Procedure 32(a), which, by its terms, applies only to depositions in lieu of live

15  testimony, and not to trial testimony from a different action.  For these reasons, Defendants' should

16  not be allowed to admit ITC trial testimony of Mr. Andren or any other witness.

17

18            DATED:   October 3, 2013.              Respectfully Submitted,

19

20                                                  REED SMITH LLP

21

22                                                  By____/s/ William R. Overend_____
                                                         William R. Overend
23                                                       Attorney for Plaintiff
                                                         REALTEK SEMICONDUCTOR CORPORATION

24

25  [2] Although the parties agreed that interrogatory responses and deposition transcripts from the ITC investigation that
    were produced in this case could be used in this case for all purposes, that agreement did not extend to trial testimony.
26  Further the parties' agreement that such materials (but not trial testimony) could be used in this case for all purposes is
    expressly subject to the Federal Rules of Civil Procedure and Federal Rules of Evidence, among other rules and orders.
27  As noted, Defendants' intended use of the trial testimony violates both Federal Rule of Civil Procedure 37(c) and Federal
    Rule 802 (hearsay rule).

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware