1 from relying on the June 2012 proposal because they did not identify fact witnesses on this topic
2 during discovery.  *See* Fed. R. Civ. Proc. 26 & 37(c).

3    Nonetheless, if the Court allows the June 2012 proposal to be admitted in evidence, Realtek
4 should be allowed to proffer Mr. Donaldson's testimony to show why that proposal does not limit
5 Realtek's damages.  Indeed, although the Court declined to make any ruling on the admissibility of
6 the June 2012 proposal until after reviewing the parties' motions in limine, the only basis of
7 relevance the Court expressly considered was premised on determining whether the June 2012
8 proposal "was in fact a RAND licensing offer." [Dkt. No. 167, at 4.]  That is the very issue that Mr.
9 Donaldson opined upon.

10    Here, Mr. Donaldson will testify, among other things, that the June 2012 proposal is
11 commercially *unreasonable* and did not comply with Defendants' RAND obligations.  Such
12 testimony is directly relevant to show that Realtek need not have attempted to negotiate that proposal
13 to conclusion of a license.  *Valle De Oro Bank*, 26 Cal.App.4th at 1691 (unreasonable or
14 disproportionate measures not required to prove reasonable and good faith effort to avoid damages).
15 As set forth in his report, Mr. Donaldson opines that the June 2012 proposal is commercially
16 unreasonable and does not comply with Defendants' RAND obligations because it: ▮
17 ▮
18 ▮
19 ▮
20 ▮
21 ▮
22 ▮
23 ▮
24 ▮
25 ▮
26 ▮
27 ▮ [Dkt. No. 175, Exh.
28 C (Donaldson report), ¶¶ 51-69.]

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  In sum, Defendants are simply wrong that Mr. Donaldson's opinions and testimony are relevant only to liability issues for breach of contract. Mr. Donaldson testified to the reasonableness of Defendants' June 2012 proposal, and Defendants have (improperly) put that very issue in play. Thus, if the Court allows the June 2012 proposal into evidence, then it should also permit Realtek to argue that the proposal was unreasonable and violated Defendants' RAND obligations. Because Mr. Donaldson's testimony is clearly relevant to these issues, Defendants' motion should be denied.

## V. OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 4

Having already been found liable for breach of contract, Defendants now predictably (and improperly) seek to exclude *all* evidence of the damages they caused Realtek to incur. Specifically, Defendants attempt to exclude Realtek's expert testimony and opinions regarding the amount of fees-and-costs-as-damages Realtek incurred in defending against the ITC proceeding that Defendants pursued, as well as the proof of those damages (the invoices showing those fees and costs). The Court should deny Defendants' motion for three reasons.

First, the Court should reject Defendants' request to exclude the testimony of Realtek's economic expert, Dr. Leonard. Although Defendants claim that that testimony is inadmissible on the ground that Dr. Leonard performed only simple mathematical calculations, Judge Robart in the *Microsoft* case rejected the very same argument on highly similar facts.

Second, Defendants incorrectly argue that Dr. Leonard has offered "unsupported opinion testimony" that ignores Realtek's (purported) burden to show that the ITC fees and costs are reasonable. Contrary to Defendants' assertion – and given the absence of any authority they cite for their position – Realtek does *not* bear the burden of showing that those fees are reasonable. Rather, if Defendants claim those fees are unreasonable and Realtek should have mitigated its damages, they bear the burden of showing the fees were *unreasonable*.

Third, although Dr. Leonard relies on invoices from the ITC matter that were redacted based on the attorney-client privilege, Realtek is not using that privilege as a "sword and shield," as Defendants claim. Realtek properly redacted privileged and work product information from the invoices – because that work relates to an *ongoing* legal action. Dr. Leonard relied only on the redacted portions of the invoices showing total fees and costs incurred – the very same materials

provided to Defendants and their expert. Defendants had ample opportunity to request unredacted invoices or pursue discovery as to any alleged unreasonableness of the ITC fees – including when deposing Realtek's 30(b)(6) witness on damages issues relating to the very invoices at issue – but elected not to do so. Despite Defendants' own lack of diligence on this issue, in order to address Defendants' concerns about the redacted invoices – which were raised for the first time in this motion – Realtek has made a supplemental production of the invoices removing most of the redactions. As such, any concerns are moot and have been cured. The Court should not exclude either Dr. Leonard's testimony regarding the invoices or the invoices themselves.

In sum, the Court should deny Defendants' motion in its entirety.

### A.     Factual Background

Realtek served Dr. Leonard's initial expert report on May 29, 2013. [*See* Dkt. No. 175, Exh. A (Leonard report).] Dr. Leonard is an economist with extensive experience in intellectual property and other matters. [*See id.*, Exh. A (Leonard report), at Exh. A.] Among other things, Dr. Leonard's report opined on the damages incurred by Realtek as a result of Defendants' breach of their RAND obligations by filing the ITC action before making an offer to Realtek to license the '958 and '867 patents. [*Id.*, Exh. A (Leonard report), at ¶¶ 184-189.]

In his report, Dr. Leonard opined that the proper framework for evaluating the harm to Realtek is determined by "the difference between: (a) the costs that Realtek incurred due to LSI/Agere's actions and (b) those costs and expenses that Realtek would have incurred but for LSI/Agere's actions." [*Id.*, ¶ 186.] Dr. Leonard further opined that the most directly attributable costs that Realtek incurred due to Defendants' breach was the litigation costs that Realtek incurred defending against the ITC action. [*Id.*, ¶ 187.] He further opined that Realtek would not have incurred those expenses but for Defendants' breach. [*Id.*, ¶ 188.] As Dr. Leonard explained, given the threat Defendants' actions poses to Realtek's business, "which include an injunction, disruption of its customers' supply, harm to its commercial reputation, such expenses were a business necessity." [*Id.*, ¶ 187.]

In connection with his opinion, Dr. Leonard reviewed and analyzed various invoices showing the amounts Realtek incurred in legal fees and costs in the ITC matter. [*See id.*, ¶ 189.] Dr. Leonard

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  then compiled this information into a summary table – tracking the data by invoice and date,
2  organizing costs into separate categories (i.e., fees versus costs) and providing commentary on
3  certain invoices. [*See id.*, Exh. A (Leonard report), at Exh. 7.]
4      On or about August 13, 2013, Dr. Leonard prepared a second supplemental report that
5  analyzed more recent invoices from the ITC action. [Dkt. No. 175, Exh. F (2nd Suppl. Leonard
6  report), ¶¶ 5-8.] In connection with this supplemental report, Dr. Leonard attached an updated
7  Exhibit 7 that summarized all the economic data from the invoices, organized into multiple columns
8  to track invoices, dates and types of costs, to provide totals of sums incurred, and to provide
9  commentary on certain invoices where rebates were provided. [*Id.*, Exh. F (2nd Suppl. Leonard
10 report), at Exh. 7.]
11     Notably, Defendants' own economic expert, Dr. Anne Layne-Farrar, acknowledged in her
12 rebuttal report that ███████████████████████████████████████ Specifically,
13 she concluded that ████████████████████████████████████████████
14 ██████████████████ [Overend Decl., Exh. B (Layne-Farrar report), ¶ 144.]
15     **B.    Legal Analysis**
16         **1.    Legal Standard**
17     Rule 702 of the Federal Rules of Evidence provides that expert testimony is admissible when
18 "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable
19 principles and methods, and (3) the witness has applied the principles and methods reliably to the
20 facts of the case." Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579,
21 592-93 (1993). The expert testimony must constitute "scientific, technical or other specialized
22 knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in
23 issue." Fed. R. Evid. 702.
24     Under both Rule 702 and *Daubert*, a court acts as a "gatekeeper" to ensure the relevance and
25 reliability of the expert testimony admitted into evidence. *Kumho Tire Co., Ltd. v. Carmichael*, 526
26 U.S. 137, 149 (1999). Thus, the court must determine "whether the reasoning or methodology
27 underlying the expert testimony is scientifically valid and whether that reasoning or methodology
28 properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. To aid the trial court in

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

making this determination, *Daubert* provided a list of factors to consider in cases involving scientific testimony. *See Kumho,* 526 U.S. at 147-49, citing *Daubert,* 509 U.S. at 592. Where, as here, a case involves non-scientific testimony, the district court is not limited to the *Daubert* factors in assessing the reliability of the proffered expert testimony. *Id.* at 150-51. Rather, the court has broad discretion to determine how to assess reliability and whether proffered testimony is, in fact, reliable. *Id.*

Importantly, the focus of the trial court's gatekeeping inquiry "must be solely on principles and methodology, not on the conclusions they generate." *Daubert,* 409 U.S. at 595; *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997). Likewise, a district court's gatekeeper role under *Daubert* "is not intended to supplant the adversary system or the role of the jury." *Maiz v. Virani,* 253 F.3d 641, 666 (11th Cir. 2001) (citations omitted); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002). Rather, as the Supreme Court has stated, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" are the traditional and appropriate means of attacking otherwise admissible evidence. *Daubert,* 509 U.S. at 596.

### 2. Dr. Leonard's Opinions Regarding Realtek's Damages Are Properly Within His Specialized Knowledge As An Economist

Defendants first challenge Dr. Leonard's opinions regarding Realtek's damages on the ground that his analysis is "nothing more than adding numbers from highly redacted invoices which allegedly show Realtek's costs incurred in defending the ITC Proceeding." [Dkt. No. 174, at 17.] Defendants cite no authority for this proposition, presumably because the applicable case law undermines their position.

Contrary to Defendants' suggestion, there is not "an implicit requirement in Fed. R. Evid. 702 for the proffered expert to make complicated mathematical calculations." *WWP, Inc. v. Wounded Warriors Family Support, Inc.*, 628 F.3d 1032, 1040 (8th Cir. 2011) (affirming district court's denial of motion in limine to exclude expert testimony regarding amount of damages where moving party argued the expert "made only simple mathematical calculations to arrive at his damages calculations"), citing *In re Prempro Prods. Liab. Litig.*, 514 F.3d 825, 831 (8th Cir. 2008) (district court did not abuse its discretion in failing to exclude expert testimony that represented "an exercise in basic math using simple deductive reasoning"). Forensic accountants routinely rely,

1  "surely to no one's surprise, on the books and records and financial information . . . provided."
2  *Forklifts of St. Louis, Inc. v. Komatsu Forklift, USA, Inc.*, 178 F.3d 1030, 1035 (8th Cir. 1999). As
3  one district court explained:

> [W]hat is a simple mathematical computation to one person may be mind-numbingly complicated to another. [I]f these calculations are as simple as defendants suggest they are . . . , then those jurors who are mathematically knowledgeable will immediately so recognize and wonder why the plaintiffs utilized a CPA to prove the obvious.

7  *Arnold v. Ambulance Serv. of Bristol, Inc.*, No. 2:06-CV-105, 2007 WL 5117409, *1 (E.D. Tenn.
8  Aug. 21, 2007) (responding to party's argument that the expert "merely perform[ed] 'simple math
9  calculations . . . which the average sixth-grader would be able to perform when equipped with a
10 calculator, pencil and paper.'").

11  As Defendants neglect to inform this Court, Judge Robart addressed this *very same issue* in
12 the recent *Microsoft* case. *See Microsoft Corp. v. Motorola, Inc.*, 2013 WL 4008822, at *5-6 (W.D.
13 Wash. Aug. 5, 2013). There, as here, one of Microsoft's experts opined on the amount of attorneys'
14 fees, costs and expenses Microsoft suffered as damages as a result of being forced to defend itself in
15 a lawsuit that Motorola filed in breach of its RAND violations. *See id.*, at *4. Relying on *Daubert*,
16 Motorola argued, among other things, that Microsoft's expert, Mr. Menenberg, merely took the data
17 contained in underlying legal invoices and entered it into a spreadsheet to calculate Microsoft's legal
18 costs and that such testimony did not require specialized knowledge and thus did not constitute
19 admissible expert testimony. *Id.*, at *5-6.

20  Judge Robart rejected Motorola's arguments, citing *Wounded Warriors* and other cases. He
21 ruled that a proffered expert's testimony is admissible even though the expert has not made
22 complicated mathematical calculations. *Id.* (citations omitted). Judge Robart reasoned that while
23 Mr. Menenberg generally stated that his role was to "compile the costs and do the math," he had
24 done more than simply data entry, given that he read and reviewed the invoices for accuracy and
25 prepared summary tables to make his calculations and conclusions more readily understandable to
26 the jury. *See id.* As such, Judge Robart concluded that Mr. Menenberg's testimony met the standard
27 for expert testimony. *Id.*, citing *Quad/Graphics, Inc. v. One2One Commc'ns*, LLC, 09–CV–99–JPS,
28 2011 WL 4478440, at *3 (E.D. Wis. Sept. 23, 2011) (admitting expert testimony where accountant

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

"reviewed underlying documents for mathematical accuracy, traced information to other documents including cost-sharing spreadsheets and invoices, and went over the materials with [client] officials"); *Wounded Warriors*, 628 F. 3d at 1040.

Here, as in *Wounded Warrior* and *Microsoft*, Dr. Leonard's testimony is admissible even though it may not consist of complicated mathematical calculations. As in *Wounded Warrior*, Dr. Leonard "analyz[ed] a substantial amount of financial data," and applied "reliable methods in forming opinions that would help the jury understand the evidence." *Wounded Warrior*, 628 F.3d at 1039. As a threshold matter, Dr. Leonard opined on the proper economic framework for determining damages: namely, "the difference between: (a) the costs that Realtek incurred due to LSI/Agere's actions and (b) those costs and expenses that Realtek would have incurred but for LSI/Agere's actions." [Dkt. No. 175, Exh. A (Leonard report), at 65, ¶ 186.] Indeed, Defendants' own expert has conceded that Dr. Leonard's measure of damages is proper, and Defendants do not challenge that aspect of his testimony.

In addition, Dr. Leonard properly applied this reliable methodology to the facts of this case. Specifically, he reviewed the invoices produced by Realtek for accuracy, performed calculations to arrive at a total amount of damages, and then prepared a helpful summary table to make his calculations and conclusions more readily understandable to the jury. *See, e.g. Wounded Warriors*, 628 F. 3d at 1040; *Microsoft*, 2013 WL 4008822, at *5-6; *Quad/Graphics*, 2011 WL 4478440, at *3. Exhibit 7 to Dr. Leonard's report – which reflects Dr. Leonard's opinions regarding the damages totals – evidences that the work performed required Dr. Leonard's expertise as an economist and was the proper subject of expert testimony. [Dkt. No. 175, Exh. A (Leonard report), at Exh. 7.] For example, Dr. Leonard not only analyzed and organized the information (separating it by date and invoice, distinguishing between payments for legal services and disbursements for expenses, and calculating total amounts), but also provided commentary regarding an invoice that had been reduced to reflect a credit for prompt payment of three other invoices. [*Id.*] Dr. Leonard performed similar economic analysis in his second supplemental report, which provided supplemental testimony on damages based on more recent invoices and provided explanations regarding other instances where the monthly amounts incurred were reduced based on credits from prompt payment

of different invoices. [Dkt. No. 175 Exh. F (2nd Suppl. Leonard report), at Exh. A.] Such analysis was not mere "data entry," but instead drew on Dr. Leonard's expertise and experience as a forensic economist and could readily assist many jurors to understand the information far easier than sifting through numerous legal invoices.5 As in *Wounded Warriors* and *Microsoft*, the fact that the calculations performed by Dr. Leonard were not overly complicated does *not* provide a legitimate basis for excluding his testimony.

### 3. Defendants Are Incorrect In Urging The Court To Place The Burden On Realtek To Prove The Reasonableness Of Its Fees-As-Damages

Defendants also seek to exclude Dr. Leonard's report on the ground that he characterizes the damages as "conservative" without having analyzed the reasonableness of the fees Realtek incurred. [*See* Dkt. No. 174, at 17.] According to Defendants, Realtek bears the burden of proof to show that the ITC fees were reasonable, but instead offers "unsupported opinion testimony" regarding the amount of damages suffered.

Importantly, however, Defendants are incorrect as a matter of law in asserting that Realtek and/or Dr. Leonard must establish the *reasonableness* of Realtek's fees and costs. [*See id.*, at 13-15.] Notably, Defendants offer no authority for the proposition that Realtek has the burden of proving the reasonableness of its claimed fees. Instead, Defendants cite two sources for the general principle that damages must be an amount that reasonably compensates a plaintiff for its injury. [*See id.*, at 15, citing *Wall Data Inc. v. L.A. County Sheriff's Dep't*, 447 F.3d 769, 786 (9th Cir. 2006); Ninth Circuit Model Civil Jury Instructions, 5.1 Damages—Proof.] Neither source, however, supports the notion that Realtek has the burden of proving that its fees were reasonable.6

---

5 As in *Wounded Warrior*, even if Dr. Leonard's testimony were deemed inadmissible under Fed. R. Evid. 702 as being too straightforward – which it should not be -- it would nonetheless be admissible under the purpose and rationale of Fed. R. Evid. 1006 (summaries of voluminous writings). *See Wounded Warrior*, 628 F.3d at 1040 n. 7, *citing SEC v. Amazon Natural Treasures, Inc.*, 132 F. App'x 701, 703 (9th Cir. 2005) (unpub. mem. op.); *cf. United States v. Jennings*, 724 F.2d 436, 441-43 & n.8 (5th Cir. 1984).

6 First, the portion of *Wall Data* that Defendants cite, the court was discussing damages for *copyright infringement*, not breach of contract. *Wall Data*, 447 F.3d at 786. *Wall Data* says nothing about contract damages or the standard that governs in breach of contract cases, and certainly does not stand for the proposition that a plaintiff seeking attorneys' fees-as-damages has the burden to prove the reasonableness of those fees. *See id.* Second, the Ninth Circuit's Model Instruction No. 5.1 is simply a general damages instruction, including general damages principles such as: "Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused

1   Defendants have simply fabricated a rule with no legal support.

2         As Defendants ignore, this case presents the rare situation where Realtek's damages consist
3   of the fees and costs it incurred as a result of Defendants' breach of its obligation to make a RAND
4   offer before initiating the ITC proceeding.  In such a situation—where the plaintiff's damages
5   consist of fees and costs—the plaintiff "bears the burden of proving the amount of attorneys' fees
6   and costs it incurred," whereas the defendant "bears the burden of proving that amount is
7   unreasonable or unnecessary." *Concept Enterprises, Inc. v. Hartford Ins. Co. of the Midwest*, 2001
8   WL 34050685, at *5 (C.D. Cal. May 22, 2001) (discussing plaintiff's and defendant's burden in
9   insurance bad faith action where the plaintiff-insured's damages consist of the fees it incurred in
10  pursuing coverage, pursuant to *Brandt v. Superior Court*, 37 Cal.3d 813, 817 (1985)); *Aerojet–*
11  *General Corp. v. Transport Indem. Co.*, 17 Cal.4th 38, 64 (1997) ("Where[ ] the insurer has
12  breached its duty to defend, it is the insured that must carry the burden of proof on the existence and
13  amount of the ... expenses, *which are then presumed to be reasonable* and necessary defense costs,
14  and it is the insurer that must carry the burden of proof that they are in fact unreasonable or
15  unnecessary.") (emphasis added); *accord California v. Pacific Indemnity Co.*, 63 Cal. App. 4th 1535,
16  1549 (1998) (in claim for breach of duty to defend against insurer, plaintiff had burden of proving
17  the existence of the amount of its legal expenses, while the defendant had the burden of showing that
18  the costs were unreasonable).  As such, Realtek does not bear the burden to prove the reasonableness
19  of fees-as-damages or to introduce expert testimony on that subject.[7] *See id.*; *see also, e.g., Feld v.*
20  *Heeter*,  2008 WL 2982015, at *1 (N.D. Cal. 2008) (denying motion in limine where moving party
21  argued the plaintiff could not recover fees as damages without presenting expert testimony
22  demonstrating the reasonableness of such fees, and noting the absence of any authority requiring
23  proof of reasonableness when seeking fees as damages under tort-of-another doctrine).

---

by the defendant."  Ninth Circuit Model Civil Jury Instructions, 5.1 Damages—Proof.  The instruction says nothing about the burden of a plaintiff to prove the reasonableness of fees as damages.

[7]  Notably, the jury instructions and verdict form in the recent *Microsoft* case are consistent with the rule that a plaintiff seeking fees as damages does not bear the burden to prove the reasonableness of those fees.  Neither the applicable jury instructions nor the verdict form make any reference to a burden on the plaintiff to prove reasonableness of the fees sought as damages in that case.  [*See* Overend Decl., Exhs. D (verdict form) & E (Instruction Nos. 14, 15, 23 & 24).]

The absence of any requirement to prove reasonableness is confirmed by reference to California Civil Code Section 3300, governing damages for breach of contract. Section 3300 provides: "For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." Cal. Civ. Code § 3300. The reasonableness of the damages is not an element of the plaintiff's case.

Because Realtek does not bear the burden to show reasonableness, there is nothing "unsupported" about Dr. Leonard's opinion. Dr. Leonard's opinion that the fees are "conservative" does not imply that he concluded the fees were reasonable without providing any supporting analysis, as Defendants suggest.[8]

Defendants' related argument that Dr. Leonard's methodology "cannot be tested" is also wrong. Fundamentally, there is no "hidden" methodology regarding reasonableness to test, because the actual analysis Dr. Leonard performed is clearly set forth in his report. Defendants' expert, Dr. Anne Layne-Farrar, not only reviewed Dr. Leonard's methodology, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ [Overend Decl., Exh. B (Layne-Farrar report), ¶ 144.] Dr. Layne-Farrar had the ability and opportunity to review the same invoices as Dr. Leonard and to test his opinions, and her failure to do so is not Realtek's fault.

    **4.    Realtek Is Not Using The Attorney-Client Privilege As A "Sword And Shield"**

Defendants' argument that Realtek is using the attorney-client privilege as a "sword and shield" also fails. Realtek properly redacted the legal invoices from the ITC matter because they

---

[8] Dr. Leonard has properly characterized these damages as "conservative," among other reasons, because they use only the legal fees and expenses from the ITC matter as a measure of damages, but do not seek to calculate other losses directly resulting from Defendants' breach (e.g., lost customers, lost sales, or other direct losses suffered by Realtek). Defendants' own expert, Dr. Layne-Farrar, however, admitted that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ [*See* Overend Decl., Exh. F (Layne-Farrar depo), at 128:4-129:17.]

contained attorney-client privileged and work product information relating to an ongoing legal action, such as detailed descriptions of the services provided. *See, e.g., Clarke v. American Commerce National Bank,* 974 F.2d 127, 129 (9th Cir. 1992) (correspondence, bills, ledgers, statements, and time records which reveal litigation strategy, or the specific nature of the services provided fall within the privilege), *citing In re Grand Jury Witness (Salas and Waxman),* 695 F.2d 359, 361-62 (9th Cir. 1982). Because Dr. Leonard was not required to prove reasonableness, he reviewed and relied only on the redacted invoices showing the amount of fees and expenses Realtek incurred – the very same redacted versions Defendants produced. Because both parties and their experts were provided the same materials, there is nothing "unfair" about Dr. Leonard's reliance on the invoices. Realtek is not using the privilege as a "sword and shield" because it is not seeking to rely on the privileged portions to show reasonableness (or anything else).

Moreover, Defendants had ample opportunity to discover (or "test") any aspects of the ITC fees and expenses (including their reasonableness) when they took the deposition of Realtek's 30(b)(6) witness, Yee-Wei Huang, who was designated on topics including Realtek's damages and Realtek's efforts to mitigate its damages. [Overend Decl., ¶ 8 & Exh. G (30(b)(6) depo notice).] But although Defendants questioned Mr. Huang on the very invoices at issue, they asked him only to confirm that the invoices were for fees incurred in the ITC action, and asked *no* questions directed to the reasonableness of the invoices, or the rates charged, or any other lines of questioning that might pertain to the very issues of which they now complain. [*Id.*, Exh. H (Huang depo), at 264:16-265:21.] Whether a tactical choice or an oversight, Defendants cannot blame Realtek for their own failure to develop evidence on a point on which they bear the burden. Likewise, if Defendants believed they needed unredacted versions of the invoices, they could and should have first requested such documents, and if Realtek refused, then moved to compel such documents. Defendants did not even take the first step of requesting them.

Notably, the first time Defendants raised any complaints about the redacted invoices was in the context of this motion in limine. Despite Defendants' own lack of diligence, Realtek has made a supplemental production of the invoices to address Defendants' concerns – removing nearly all of the redactions and retaining redactions only as to specific research or details of litigation strategy.

1  Thus, Defendants will now have sufficient information from the invoices alone to determine the
2  amount Realtek spent on specific motions and other work related to the ITC matter.  This
3  supplemental production cures any alleged prejudice to Defendants resulting from the redactions,
4  and thus moots Defendants' motion on this point.  As such, the Court should deny Defendants'
5  motion to exclude Dr. Leonard from testifying as to the invoices on this basis as well.

### 5. Realtek's Legal Invoices From The ITC Proceeding Were Appropriately Redacted And Are Admissible To Prove Damages

8   Finally, the Court should deny Defendants' improper attempt to preclude Realtek from
9   making *any* use of the ITC invoices to prove its damages.  As noted, the ITC invoices were properly
10  redacted to remove privileged and work product descriptions of the legal services provided to
11  Realtek.  *See, e.g.*, *Clarke*, 974 F.2d at 129.  Such materials are of heightened sensitivity in this case,
12  because the ITC matter is still ongoing and Defendants' outside counsel in this case is also
13  representing LSI in the ITC matter.  Unredacted versions of these invoices would have given
14  Defendants full visibility into Realtek's privileged legal strategy and tactics during Realtek's
15  ongoing defense of Defendants' ITC action.  Moreover, if Defendants believed they needed
16  unredacted invoices to prove any alleged unreasonableness of the ITC fees, they could and should
17  have requested unredacted versions, moved to compel and/or asked questions about reasonableness
18  during the deposition of Mr. Huang.  Instead, Defendants did nothing, first raising the issue in their
19  motion in limine.

20   In their motion, Defendants proposed that Realtek could have negotiated a compromise to
21  allow the invoices to be used for a limited purpose without a waiver of the attorney-client privilege.
22  But such an argument presupposes that Realtek was aware that Defendants wanted unredacted
23  versions – a point that Defendants never raised until filing their motion in limine two weeks ago.
24  Upon first hearing of Defendants' purported concerns, Realtek promptly offered to produce the
25  documents on the very terms Defendants suggested in their motion.  [Overend Decl., ¶ 10 & Exh. I.]
26  Tellingly, Defendants refused to agree to the terms they had suggested just a week before.  [*Id.*, ¶ 1
27  & Exh. J.]  Nonetheless, Realtek has made a supplemental production of invoices, removing most of
28  the redactions, which renders Defendants' concerns moot and cures any alleged harm to Defendants.

[*Id.*, ¶ 12 & Exhs. K & L.]  Accordingly, the Court should deny Defendants' motion to exclude these materials.

DATED:   October 10, 2013.

Respectfully Submitted,

REED SMITH LLP

By   */s/ William R. Overend*
       William R. Overend
       Attorney for Plaintiff
       REALTEK SEMICONDUCTOR CORPORATION