# EXHIBIT C

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 1

1                UNITED STATES DISTRICT COURT

2          FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                    SAN JOSE DIVISION

4                       ---oOo---

5

6    REALTEK SEMICONDUCTOR

     CORPORATION,

7

             Plaintiff,

8

     vs.                        CASE NO.  5:12-cv-03451 RMW

9

     LSI CORPORATION and

10   AGERE SYSTEMS LLC,

11            Defendants.
     _____/

12

13

14

15       HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

16        DEPOSITION OF GREGORY K. LEONARD, Ph.D.

17              SAN FRANCISCO, CALIFORNIA

18              TUESDAY, JULY 23, 2013

19

20

21

22   BY:  ANDREA M. IGNACIO HOWARD, CSR, RPR, CCRR, CLR

23        CSR LICENSE NO. 9830

24        JOB NO. 63706

25

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 3

```
1    A P P E A R A N C E S:

2

3            FOR THE PLAINTIFF:

4            REED SMITH

5            By:  WILLIAM OVEREND, Esq.

6            101 Second Street

7            San Francisco, California 94105

8

9

10

11

12           FOR THE DEFENDANTS:

13           KILPATRICK TOWNSEND & STOCKTON

14           By:  DAVID SIPIORA, Esq.

15           1400 Wewatta Street

16           Denver, Colorado 80202

17

18                   ---oOo---

19

20

21

22

23

24

25
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 65

1    mind as I sit here, for the purposes of this case and

2    those patents, you know, everyone is going to be

3    pretty similarly situated because the royalties should

4    all be -- for each one of them should be governed by

5    the non-infringing alternatives.  And that's going to

6    be the major role or the major factor that ends up

7    setting the rates and, therefore, should lead to the

8    rates for them to be somewhat similar.

9            Now, subject to that, though, you may still

10   have somebody say, "Well, I want a lump sum" and that

11   kind of thing, which could mean that they end up

12   having different terms.

13           But in terms of the rate itself, it should be

14   pretty similar.

15        Q    Did you understand the question?

16        A    I think so.  I thought I just answered it.

17        Q    I don't think you did.  Let me -- let me

18   rephrase it.

19        A    Sure.

20        Q    I'm asking you to identify in this case what

21   factors you would identify that would be used to

22   determine whether someone is similarly situated.

23           And you've identified, number one, using

24   technology in roughly a similar way.  Number two, you

25   said, are they competitors of Realtek?

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 66

1          Are there any other factors that you would

2   use to identify whether an entity is similarly

3   situated within the context of this case?

4       A    I would --

5            MR. OVEREND:   Object.

6            THE WITNESS:   -- I would say those two

7   factors that you just read back -- I was starting down

8   the road of just more in general how you might think

9   about it.

10           Now, though, since you've put it in terms of

11  this case and these patents, then I think the answer

12  is different.

13           The answer is, because the non-infringing

14  alternative would be something that would be the

15  primary factor determining the royalty rate -- or the

16  royalty, I'll say, and because that is the same for

17  everybody, every licensee, because it's, you know,

18  again, part of the standard, it was something that

19  would have been adopted ultimately, the alternative in

20  the standard, and then would have been used by each

21  licensee, that in that kind of case, that that's

22  probably the primary factor.  It would make everybody,

23  in a way, similarly situated.

24           I mean, in that kind of situation, there is

25  just -- there wouldn't be any justification for

Page 67

1    charging one licensee a huge amount of money and a

2    different licensee a small amount of money, because

3    both of them -- the value of the technology of both of

4    them is minimal because there were alternatives.

5           So in the context of this case, it's

6    different than in the general situation for that

7    particular --

8           MR. SIPIORA:  Q.  So other than the two

9    factors that are identified, are there any other

10   factors that you would -- you would identify as

11   relevant to the determination of whether someone is

12   similarly situated in this case?

13          MR. OVEREND:  Object.

14          THE WITNESS:  I mean, for the purposes of

15   this case, that factor is so overwhelming that that's

16   going to be the primary factor.

17          MR. SIPIORA:  Q.  What's going to be the

18   primary factor?

19      A    The fact that there are non-infringing

20   alternatives, and that those are the same for actually

21   everybody.  And so that's going to make -- that's

22   going to make it different than other situations might

23   be.

24          But I'd say everybody is pretty -- should

25   get -- you know, under that scenario, everybody should

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 68

1    get pretty similar rates.  So, in a sense, everybody

2    is similarly situated.

3         Q   So, in this case, your analysis is not only

4    competitors, not only people using technology in a

5    roughly similar way, but anyone who walks in off the

6    street is going to be similarly situated for purposes

7    of your analysis; is that correct?

8              MR. OVEREND:  Object to form.

9              THE WITNESS:  No, I didn't say that.

10             What I said is that for the purposes I've

11   used, you know, the term similarly situated, that that

12   principle would make them largely similarly situated.

13   Because, again, the non-infringing alternative is

14   basically the same for each of them, and it -- that

15   non-infringing alternative is something that makes

16   the -- the -- the rate very low, and it should be low

17   for everybody.

18             So, in that kind of situation, which is not

19   necessarily true in every situation, you know, the

20   parties that we're looking at in this case are going

21   to be, in that sense, pretty similarly situated.

22             Whether it then would apply to anybody in

23   some hypothetical situation is not something I've

24   thought about, or more for that matter, I've not even

25   used that.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 318

1    more appropriate, similarly situated.  And again, for

2    this purpose, you know, again, I -- looking at it,

3    especially the nature of the patents and how they were

4    used, that that was -- it was valid to -- to use it as

5    a data point.

6        Q   I'll ask you again:  Can you point to

7    anywhere in your report where you did an analysis

8    comparing LSI to Motorola to determine whether they

9    are comparable licensors?

10       A   Again, I -- I don't know if it's anywhere in

11   my report specifically.

12           But I certainly don't find that to be a

13   factor that rules out the -- Judge Robart's analysis

14   as being, you know, a valid comparable benchmark for

15   this case.

16       Q   Can you point to anywhere in your report

17   where you did a comparison of Microsoft and Realtek to

18   determine whether they were comparable licensees?

19       A   And I'd say yes, because I was looking,

20   again, at the -- the use of the technology and the

21   relative use of the technology and the relationships,

22   the alternatives, which is something that relates to

23   the licensee.  And as I mentioned, that's the -- you

24   know, the driving factor for the value of -- of the

25   patents in both cases.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 323

1           CERTIFICATE OF REPORTER

2

3        I, ANDREA M. IGNACIO HOWARD, hereby certify

4   that the witness in the foregoing deposition was by me

5   duly sworn to tell the truth, the whole truth, and

6   nothing but the truth in the within-entitled cause;

7        That said deposition was taken in shorthand

8   by me, a disinterested person, at the time and place

9   therein stated, and that the testimony of the said

10  witness was thereafter reduced to typewriting, by

11  computer, under my direction and supervision;

12       That before completion of the deposition,

13  review of the transcript [x] was [ ]was not requested.

14  If requested, any changes made by the deponent (and

15  provided to the reporter) during the period allowed

16  are appended hereto.

17       I further certify that I am not of counsel or

18  attorney for either or any of the parties to the said

19  deposition, nor in any way interested in the event of

20  this cause, and that I am not related to any of the

21  parties thereto.

22  Dated: July 26, 2013

23  _____

24  ANDREA M. IGNACIO HOWARD, RPR, CCRR, CLR, CSR No. 9830

25