UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| REALTEK SEMICONDUCTOR CORPORATION,<br><br>            Plaintiff,<br><br>v.<br><br>LSI CORPORATION and AGERE SYSTEMS LLC,<br><br>            Defendants. | Case No. C-12-03451-RMW<br><br>**TENTATIVE RULINGS ON MOTIONS *IN LIMINE* AND *DAUBERT* MOTIONS**<br><br>[Re: Docket Nos. 174, 179] |

**I.   DEFENDANTS' *IN LIMINE* AND *DAUBERT* MOTIONS**

<u>**Motion *in Limine* No. 1**</u>**: To preclude reference to the Administrative Law Judge's ("ALJ") non-infringement decision in pending International Trade Commission ("ITC") action**

   **GRANTED.** Defendants LSI Corporation and Agere Systems LLC (collectively "LSI") move *in limine* to preclude plaintiff Realtek Semiconductor Corporation ("Realtek") from referencing the ALJ's Initial Determination in an ITC action involving LSI and Realtek. Specifically, the ALJ found that Realtek does not infringe the patents-in-suit. Both parties' experts have based their reasonable and nondiscriminatory ("RAND") royalty rate calculations for the

ORDER
Case No. C-12-03451-RMW
ALG

- 1 -

patents-in-suit on the assumption that the patents-in-suit are valid and infringed by Realtek. Thus, LSI argues that the ALJ's decision is irrelevant and not admissible under Federal Rule of Evidence ("FRE") 402. In the alternative, LSI argues that the court should exclude the ALJ's decision under FRE 403 because any relevance is outweighed by the danger of unfair prejudice. Realtek continues to assert that the ITC's Initial Determination is relevant and admissible because, "[i]n setting the RAND rate, the court must consider the technical contributions (or lack thereof) of a patent to a standard, and the need for the standard implementer to infringe the patents in order to practice the standard." Realtek's Opp'n 1, Dkt. No. 192-2 (citing *Microsoft Corp. v. Motorola, Inc.*, Case No. 10-1823, 2013 WL 2111217, at *18 (W.D. Wash. Apr. 25, 2013). Although the court agrees that a final non-infringement decision with respect to the patents-in-suit could be relevant—for example, with respect the patent's contribution to the technical capabilities of the standard or to the standard implementers' products or the availability of alternatives to the patented technology that could have been written into the standard—the relevance is limited here because of the non-final nature of the ALJ's decision. As discussed in more detail in the court's Order Re: Joint Submission Pursuant to the Supplemental Case Management Order, Dkt. No. 167 at 5 ("September 26, 2013 Order"), the court concludes that any limited relevance is outweighed by the danger of unfair prejudice and misleading the jury.

Accordingly, the court GRANTS LSI's Motion *In Limine* No. 1.

**Motion *in Limine* and *Daubert* Motion No. 2: To preclude plaintiff's economic expert Dr. Leonard's testimony concerning the RAND rate in the *Microsoft* case**

**DENIED.** LSI moves *in limine* and under the *Daubert* standard to preclude Realtek from presenting Dr. Leonard's expert testimony based on Judge Robart's calculations of the RAND rate for twenty-four of Motorola's 802.11 standard essential patents ("SEPs") in *Microsoft v. Motorola*.

ORDER
Case No. C-12-03451-RMW
ALG
- 2 -

LSI contends that using Judge Robart's determination, as apportioned to the patents-in-suit here, is an arbitrary starting place for a RAND determination.

Realtek counters that the *Microsoft* rate is "a relevant comparable to use as a benchmark because in *Microsoft*, Judge Robart similarly determined [as did Dr. Leonard here, that] Motorola's 802.11 [SEPs] were of minimal *ex ante* value." Realtek's Opp'n 3. Moreover, Realtek argues that Dr. Leonard does not rely on Judge Robart's RAND determinations as a starting point, but rather uses a comprehensive analysis of a variety of licenses, including Judge Robart's RAND calculations, modified by the *Georgia Pacific*[1] factors, to determine the appropriate RAND rate for the patents-in-suit.

In his expert report, Dr. Leonard considers two RAND rates determined by Judge Robart for twenty-four of Motorola's 802.11 SEPs. Judge Robart calculated one RAND rate for Microsoft's non-Xbox products and another for the Xbox. Dr. Leonard apportions the *Motorola* court-determined RAND rates (which applied to Motorola's twenty-four SEPs) to the two patents-in-suit here, by dividing the rates by twelve. Dr. Leonard then uses these court-determined values, along with other license agreements, as data points in determining the lower bounds of what LSI would be willing to accept and the upper bounds on what Realtek would be willing to pay in a hypothetical negotiation. *See* Leonard Report ¶ 144, Dkt. No. 175-1 (under seal). Contrary to LSI's assertion, Dr. Leonard did not use Judge Robart's RAND determinations, or his apportionment thereof, as a "starting point" for a reasonable royalty calculation. Rather, Dr. Leonard selects another Realtek license with a third-party as "the best benchmark for the outcome of the hypothetical negotiation between Realtek and LSI/Agere." *Id.* ¶ 174. Dr. Leonard concludes that this benchmark is "*further supported* by Judge Robart's finding of the appropriate RAND royalties for Motorola's 802.11 [SEPs]." *Id.* ¶ 175 (emphasis added). Contrary to LSI's assertion, Dr. Leonard's testimony concerning the court-determined RAND rates in *Microsoft v. Motorola* is not arbitrary but tailored

---

[1] *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).

ORDER
Case No. C-12-03451-RMW
ALG

- 3 -

to patents that were similarly determined to contribute minimal *ex ante* value to the 802.11 standard. Dr. Leonard's reliance on the court-determined RAND rates in *Microsoft* as part of a more comprehensive analysis, in conjunction with other third-party licenses, is not arbitrary. Although the apportionment technique used by Dr. Leonard (to reflect the two patents-in-suit here versus the twenty-four Motorola SEPs) assumes equal contributions by each of the twenty-four patents and does not account for the relative contributions, the court nevertheless considers it a satisfactory way to reflect the RAND royalty rate that might pertain to two, versus twenty-four patents and is a reasonable point of comparison as part of Dr. Leonard's more comprehensive analysis.

Accordingly, the court DENIES LSI's Motion *In Limine* and *Daubert* Motion No. 2.

**Motion *in Limine* and *Daubert* Motion No. 3: To exclude testimony of Richard Donaldson**

**GRANTED.** LSI moves *in limine* and under the *Daubert* standard to exclude the expert testimony of Richard Donaldson ("Donaldson") directed to whether LSI's June 20, 2012 proposal to Realtek complied with LSI's RAND commitments. LSI argues that Mr. Donaldson's report goes only to breach of contract liability, which is no longer at issue in this case, and thus is not relevant. Realtek counters that Mr. Donaldson's testimony is directly relevant to the issue of whether Realtek failed to mitigate its damages. Realtek, however, has also moved *in limine* to exclude LSI from relying on the June 20, 2012 proposal as part of any defense that Realtek failed to mitigate its damages. As discussed *infra* under Realtek's motions, the court concludes that any evidence regarding the June 20, 2012 proposal cannot be considered on the issue of mitigation of damages. LSI did not dismiss Realtek from the ITC action prior to its purported attempt to negotiate. Realtek was under no duty to negotiate in an unfair bargaining position under the threat of an exclusion order. In light of the court's ruling excluding evidence or argument regarding the June 20, 2013 offer, Donaldson's opinion going to whether LSI's June 20, 2012 proposal was a RAND offer is excluded.

Thus, the court GRANTS LSI's Motion *In Limine* and *Daubert* Motion No. 3.

ORDER
Case No. C-12-03451-RMW
ALG

- 4 -

**Motion *in Limine* and *Daubert* Motion No. 4: To preclude Realtek from introducing: (1) Dr. Leonard's purported expert opinion on breach of contract damages; and (2) its ITC proceeding legal invoices to prove breach of contract damages**

**GRANTED-IN-PART AND DENIED-IN-PART.** LSI moves *in limine* and under the *Daubert* standard to preclude Realtek from introducing at trial redacted billing records from its counsel in the ITC action and Dr. Leonard's analysis thereof in his expert reports on breach of contract damages. According to LSI, the billing records are so heavily redacted that it is impossible to tell whether the fees are reasonable. LSI contends that Dr. Leonard failed to opine on the *reasonableness* of attorneys' fees (and is not qualified to do so in any event), but simply added up the total fees and costs incurred from Realtek's redacted invoices.

Realtek represents that, following LSI's motion *in limine*, it made a supplemental production of its invoices from the ITC action, removing most of the redactions, such that LSI may review the billing records for reasonableness. Realtek further argues that Dr. Leonard was qualified to make the damages calculations.

Although Dr. Leonard performed little more than simple addition of the legal invoice totals, the court finds that his *calculations* of Realtek's damages in defending the ITC action are admissible. *See* Exhibit 7 to Leonard's Supplemental Expert Report, Dkt. No. 175-6 (adding Realtek's ITC related litigation expenses); *Microsoft v. Motorola*, 2013 WL 4008822, at *6 (W.D. Wash. Aug. 5, 2013) ("There is not, however, an implicit requirement in Federal Rule of Evidence 702 that the proffered expert make complicated mathematical calculations."). The court, however, limits Dr. Leonard's testimony to explaining only Realtek's expenses actually incurred in defending the ITC action, and *not the reasonableness thereof*, which would likely require some knowledge or expertise in ITC litigation.[2] There is no evidence, however, that Realtek incurred greater than

---

[2] Contrary to LSI's position, LSI's economic expert Dr. Layne-Farrar opined that "breach of contract damages . . . will amount to the reasonable and unavoidable legal expenses that Realtek incurred in the ITC matter. When sufficient documentation becomes available, *I will calculate that figure*." Layne-Farrar Report ¶ 170(a), Dkt. No. 178-6 (emphasis added). Thus, LSI cannot very

normal attorneys' fees in defending the ITC action. In fact, Realtek's invoices show that on multiple occasions Realtek paid its invoices early to receive a fifteen percent discount on its legal fees. Absent any indication that Realtek's attorneys overcharged Realtek for its ITC defense, the court concludes that Realtek's actual invoices from the ITC proceedings satisfy Realtek's initial burden to prove the reasonable amount of damages it incurred in conjunction with its ITC defense. LSI's may still review the newly submitted invoices from Realtek and present any arguments that Realtek's invoices are, in fact, unreasonable.

Because Realtek represents that it has produced invoices that are sufficiently unredacted for LSI to review them for reasonableness, the court GRANTS-IN-PART and DENIES-IN-PART LSI's Motion *In Limine* No. 4.

## II.  PLAINTIFF'S AMENDED *IN LIMINE* AND *DAUBERT* MOTIONS

<u>*Daubert* Motion</u>**: To exclude the opinion and testimony of defendants' economic expert Dr. Layne-Farrar that rely on a flawed comparison of the calculated value of the "Via Pool" with that of the LSI SEPs in arriving at a value for the patents-in-suit.**

**GRANTED.** Plaintiff seeks to exclude the portions of the rebuttal opinion of LSI's economics expert Dr. Layne-Farrar that rely on the "Via Pool" on the grounds that she engages in an unreliable and flawed methodology for determining the value of the patents-in-suit in comparison to the Via Pool.[3]

Dr. Layne-Farrar relies on the Via Pool as one benchmark in her more comprehensive analysis of third-party licenses. *See* Layne-Farrar Report ¶¶ 104-107.[4] She recognizes that the Via Pool is "an imperfect RAND benchmark," *id.* ¶ 113, but nevertheless includes it in her analysis. With respect to the Via Pool analysis, Dr. Layne-Farrar concludes that it would be unreasonable to

---

well argue that Realtek's economic expert is unqualified to calculate legal expenses when its economic expert represents that she will do the same. However, in response to Realtek's motion *in limine* to exclude Dr. Layne-Farrar's expert opinion on damages, LSI represents that Dr. Layne-Farrar will not testify as to Realtek's failure to mitigate damages, and is not qualified to do so.
[3] Dr. Layne-Farrar's expert report indicates that neither patent-in-suit is part of the Via Pool. Layne-Farrar Report ¶ 82, Dkt. No. 170-2 (under seal).
[4] She concludes, however, that a license between LSI and a third party is the most helpful benchmark for her RAND royalty rate calculation. *Id.* ¶¶ 108-112.

ORDER
Case No. C-12-03451-RMW
ALG
- 6 -

simply divide the royalty rate for a license to the pool by the total number of patents in the pool to come up with a RAND royalty-rate per patent. *Id.* ¶ 116. Instead, she applies a "patent citation" analysis to determine the comparative value of LSI's 802.11 SEPs to the patents in the Via Pool. She performs this patent citation analysis by calculating the number of times all nineteen of LSI's 802.11 SEPs are cited in later patents. She then performs the same patent citation analysis with respect to 377 patents she believes are part of the 802.11 standard (and a part of the Via Pool) in order to obtain a ratio of the value of LSI's 802.11 SEPs in comparison to the other 802.11 SEPs in the Via Pool. Based on her citation analyses, calculations, and comparisons, she concludes that LSI's 802.11 SEP portfolio is about three times more valuable than the Via Pool patent portfolio. *Id.* ¶ 128. Thus, she multiples the Via Pool royalty rate by 2.5 to obtain a "conservative" benchmark royalty rate for LSI's 802.11 SEP portfolio. *Id.* From there, for lack of a better way to apportion the value down to the two patents-in-suit, she simply divides the determined royalty rate for LSI's 802.11 SEP portfolio by nineteen (the number of patents therein) to determine the RAND royalty rate for each individual patent. *Id.* ¶¶ 139-141.

Although Dr. Layne-Farrar's patent counting method may be an acceptable methodology to determine the relative value of patent portfolios, *see id.* ¶¶ 117-119, the fact that she applied this methodology to determine the value of LSI's *entire* 802.11 SEP portfolio but then did not use it in calculating the value of the two patents-in-suit results in a skewed and misleading analysis. As Realtek points out, Dr. Layne-Farrar's report indicates that a vast majority (93%) of the citations attributed to LSI's 802.11 SEP portfolio come from another patent, which is not one of the patents-in-suit. If Dr. Layne-Farrar had calculated the value of *only* the patents-in-suit based on the patent citation analysis, the value revealed for those two patents would represent only 0.1% of the value of the LSI's entire portfolio. At her deposition, in response to questions about why she did not perform the patent citation with respect to the two patents-in-suit, she responded:

ORDER
Case No. C-12-03451-RMW ALG
- 7 -

> [A]s I discussed in the report, this apportionment method is good for portfolios. It was designed to analyze groups of patents. And *when you get down to individual patents, it is not as reliable*. It's—it's a large numbers approach and so that's why I didn't use the patent citation apportionment for just the—low numbers of patents, the one and the two.
> …
>
> Again, I'm not using this method for patent valuation. I'm using it to apportion and it's not an appropriate measure for apportioning down to individual patents. There's lots of numbers and lots of statistics that are good for—for groups of things that aren't good for individuals and this is one of them. And so *I didn't view this method as appropriate for singling out the '958 or the '867 patents*.

Bell Decl. Ex. 1 at 96:15-23, Dkt. No. 196-1; 97:12-19 (emphasis added). By her own admission, the patent valuation method is not appropriate for determining the value of individual patents. Because the issue in this case is the value of the two patents-in-suit—not LSI's entire 802.11 SEP portfolio—Dr. Layne-Farrar's utilization of this approach to assess the value of LSI's entire 802.11 SEP portfolio results in an unreliable damages calculation.

Accordingly, the court GRANTS Realtek's *Daubert* motion and excludes any evidence or testimony from Dr. Layne-Farrar based on the Via Pool that goes to the value of LSI's *entire* 802.11 SEP portfolio, particularly since one of the patents in LSI's SEP portfolio accounts for 93% of the pool's citations.

**Motion *In Limine* No. 1: To exclude evidence and argument regarding the 2002/2003 correspondence between Agere and Realtek**

**GRANTED.** Realtek moves *in limine* to exclude the evidence and argument regarding the 2002/2003 correspondence between Realtek and Agere (now wholly owned by LSI). LSI contends that this correspondence is relevant to Realtek's willingness to mitigate its damages by negotiating a RAND license. The court disagrees with LSI that the 2002/2003 correspondence between Realtek and Agere is relevant to mitigation of damages. The court already determined that LSI breached its contract to the IEEE and to Realtek as a third party beneficiary, and thus any mitigation of damages would necessarily occur *after* the breach. The 2002/2003 correspondence is otherwise irrelevant to

the two remaining issues in this case: (1) a determination of a RAND royalty rate for the patents-in-suit; and (2) a determination of Realtek's damages for LSI's breach of contract.

Accordingly, the court GRANTS Realtek's Motion *In Limine* No. 1 and excludes evidence or arguments regarding this correspondence under FRE 402. Further, if the evidence were deemed to have any probative value, that value would be substantially outweighed by a danger of misleading the jury and wasting time. *See* FRE 403.

**Motion *In Limine* No. 2: To exclude evidence or argument concerning alleged infringement of defendants' patents by Realtek**

**GRANTED-IN-PART AND DENIED-IN-PART.**  Realtek seeks to exclude: (1) Dr. Negus's opinion that Realtek practices the patents-in-suit; (2) any speculation about the final outcome of the ITC action; and (3) any testimony from Dr. Layne-Farrar (LSI's economic expert) as to the value of a lump-sum royalty based on Realtek's past "infringement."  LSI does not oppose the second subpart of Realtek's Motion *In Limine* No. 2.  With respect to the first subpart, LSI argues that Dr. Negus's opinion is relevant because it goes to the usefulness of the technology of the patents-in-suit to Realtek and others in the industry, which is directly relevant to the determination of a RAND royalty.  As to the third subpart, LSI argues that a one-time, fully paid up lump sum payment by Realtek is the appropriate royalty calculation to be used in this case.

Except for the presumption that the patents-in-suit are valid and infringed for the purposes of the RAND royalty determination, the issue of whether Realtek actually infringes the patents-in-suit is before the ITC and not at issue before this court. As stated in the court's September 26, 2013 Order, the RAND issue in this case is "[a] determination of a RAND royalty rate for the '958 and '867 Patents." *Id.* at 1.  Thus, Dr. Layne-Farrar's calculation of a lump-sum royalty payment based upon alleged past infringement by Realtek is inappropriate.

Accordingly, LSI may not introduce: (1) evidence or argument that Realtek infringes the patents-in-suit; (2) Dr. Negus's opinion to the extent it concludes or suggests via an *infringement*

*analysis* that Realtek would be *liable* for infringement of the patents-in-suit[5]; (3) any speculation about the final outcome of the ITC action; or (4) Dr. Layne-Farrar's testimony of a lump sum royalty *owed* by Realtek based on *past infringement* of the patents-in-suit. Dr. Layne-Farrar may, however, offer her opinion regarding an appropriate lump sum RAND royalty payment based on industry standards or some other measure.

The court GRANTS IN PART and DENIES IN PART Realtek's Motion *In Limine* No. 2 as set forth above.

**Motion *In Limine* No. 3: To exclude evidence or argument that Realtek failed to mitigate its damages**

**GRANTED IN PART AND DENIED IN PART.** Realtek seeks to exclude: (1) expert testimony on the topic of Realtek's failure to mitigate its damages; (2) evidence or argument of defendants' June 2012 license proposal, or that Realtek failed to respond thereto; (3) evidence or argument concerning the parties' settlement negotiations; and (4) evidence or argument regarding Realtek's other lawsuits against LSI. The court addresses each separately.

**(1) Expert testimony regarding Realtek's failure to mitigate – GRANTED**

LSI represents that it does not intend to offer expert testimony from Dr. Layne-Farrar on the issue of mitigation of damages (and likewise moved *in limine* to exclude Realtek's expert, Dr. Leonard from testifying to damages generally). According to LSI, opinion testimony from either party's economic expert on the issue of *mitigation* of damages is inappropriate. The court agrees, and excludes both parties' expert testimony on the issue of *mitigation* of damages, subject to the analysis *supra* with respect to the admissibility of Dr. Leonard's damages calculations generally.

**(2) LSI's June 20, 2012 license proposal – GRANTED**

---

[5] However, going to the RAND royalty determination, LSI may introduce Dr. Negus's opinion regarding: (1) the value of the technology of the patents-in-suit to Realtek and others in the industry; and (2) Realtek's past lump sum royalty payment(s) to a *third-party* to the extent that testimony is otherwise relevant and admissible under the *Daubert* standard to determining an appropriate RAND royalty rate in this case.

ORDER
Case No. C-12-03451-RMW ALG
- 10 -

Realtek argues that LSI's June 20, 2012 licensing proposal is not relevant to LSI's mitigation defense because the court has already decided that LSI breached the contract to the IEEE and to Realtek as a third party beneficiary by failing to license on RAND terms, and any licensing negotiation thereafter would be inherently unfair based on the threat of an injunction. Thus, Realtek argues that "because [LSI] did not withdraw (and still ha[s] not withdrawn) the ITC action and corresponding threat of an injunction," Realtek's Mot. 17, Dkt. No. 178-5, it was under no obligation to respond to LSI's June 20, 2012 "RAND" offer.

LSI counters that the court has already concluded that the June 20, 2012 proposal is relevant to the question of damages, and thus the issue of whether or not Realtek responded to that argument is also relevant. LSI argues that even if the court considers additional arguments going to relevance, the June 20, 2012 offer is relevant because Realtek's failure to negotiate is a central issue in this case.

In the September 26, 2013 Order, the court stated:

> If the jury finds that LSI's June 2012 proposal was in fact a RAND licensing offer, the question arises as to whether Realtek's refusal to accept that offer would be a basis to cut off Realtek's damages related to defending the ITC action. *Or would LSI's offer only mitigate damages if LSI had first dismissed the ITC action against Realtek before making that offer,* so that Realtek would not have been under the looming threat of an ITC exclusion order, which arguably placed it in an unfair bargaining position.

*Id.* at 4. Contrary to LSI's position, the court did not already decide that the June 20, 2012 offer is relevant to mitigation of damages, but rather explicitly deferred consideration of the admissibility of the June 20, 2012 offer until the motions *in limine*. *Id.* Now the court finds that LSI's June 20, 2012 offer is inadmissible because Realtek had no obligation to mitigate by negotiating a license with LSI after LSI breached its contract to Realtek and where Realtek was still under the threat of an exclusion order from the ITC. *See Carlisle Ventures, Inc. v. Banco Espanol de Credito S.A.*, 176 F.3d 601, 609 (2d Cir. 1999) (quoting *Zanker Development Co. v. Cogito Sys. Corp.*, 215 Cal. App. 3d 1377, 1381 (1989). "As one court has stated, it is appropriate for courts to focus 'not on the

ORDER
Case No. C-12-03451-RMW
ALG

- 11 -

failure of the plaintiff to pursue the . . . alternative courses of action suggested by [the] defendant but upon the reasonableness of the action which [the] plaintiff did in fact take. The fact that in retrospect a reasonable alternative course of action is shown to have been feasible is not proof of the fact that the course actually pursued by the plaintiff was unreasonable.'"). Even if a jury were to find that LSI's June 20, 2012 license was compliant with LSI's RAND obligations, Realtek would not be unreasonable in declining to negotiate with LSI under the circumstances.   Accordingly, the court excludes all evidence and argument to the jury regarding LSI's June 20, 2012 license offer and Realtek's response thereto.

**(3) The parties' settlement negotiations** – **GRANTED**

Realtek argues that LSI should be precluded from introducing any evidence or argument of the parties' settlement communications and negotiation status following LSI's June 20, 2012 license proposal under FRE 408 and based on the parties' nondisclosure agreement ("NDA"), which includes settlement discussions.   LSI counters that its introduction of settlement discussions at trial (1) would not violate the parties' NDA because Realtek has already disclosed settlement discussions subject to the NDA including the fact of the June 20, 2012 proposal and (2) would not violate FRE 408 because it does not seek to introduce any "admissions" from the parties' settlement discussions, but only evidence that it attempted to negotiate with Realtek and never received a counter-proposal to its June 20, 2012 proposal.

Because the court excludes LSI's June 20, 2012 proposal, any evidence of settlement discussions and Realtek's willingness to negotiate is also excluded.

**(4) Realtek's other lawsuits against LSI** – **GRANTED**

Realtek argues that LSI should be precluded from introducing any evidence or argument of Realtek's other litigation[6] against defendants as evidence of Realtek's alleged unwillingness to

---

[6] Realtek has filed its own patent infringement case against LSI and Agere in this district, Case No. 12-3474 (EJD) (stayed pending resolution of an ITC investigation) and has also initiated an ITC investigation against LSI and Seagate

ORDER
Case No. C-12-03451-RMW ALG
- 12 -

negotiate in good faith in response to LSI's June 20, 2012 license proposal. According to Realtek, evidence of these lawsuits would be inadmissible character evidence under FRE 404; is not relevant to the issues in this case; and even if it is relevant, it should be excluded under FRE 403 as overly prejudicial. LSI counters that evidence of Realtek's other lawsuits is not character evidence, but rather directly relevant to Realtek's willingness to mitigate its damages.

The court concludes that Realtek's other lawsuits against LSI, which are based on LSI's alleged infringement of Realtek's patents and are not related to the patents-in-suit here, are irrelevant to the issues in the present case. The fact that Realtek seeks to enforce its patent rights in another forum does not indicate that Realtek is less likely to take a license to another set of patents. Even if such evidence were relevant, the likelihood of unfair prejudice outweighs any relevance. Accordingly the court grants subpart 4 to Realtek's Motion *In Limine* No. 3.

**Motion *In Limine* No. 4: To exclude evidence or argument that the alleged RAND royalty rate or other RAND terms and conditions should cover licenses to more than the patents-in-suit**

**GRANTED IN PART AND DENIED IN PART.** Defendants' economic expert Dr. Layne-Farrar calculated RAND rates based on LSI's entire portfolio of 802.11 SEPs (19 patents in total), and in the alternative based on 8 patents within LSI's portfolio that LSI specifically disclosed to the IEEE as essential to the 802.11 standard. Realtek argues that it is impermissible for LSI to present evidence or argument of a royalty rate for licenses to these patent groups, which are larger than the two patents-in-suit. The court agrees to the extent that the issue for the jury is only the determination of a RAND royalty rate for the '958 and '867 Patents. In fact, LSI represents that it has agreed to limit the royalty rate determination for the jury (with respect to the verdict form) to only the '958 and '867 Patents. However, neither party is precluded from introducing one or more of LSI's *third-party* licenses to larger patent portfolios as a point of comparison in the RAND royalty rate analysis, assuming that the analysis is otherwise reliable. Accordingly, the court

---

Technologies, alleging infringement of the same patents as in the stayed district court case. Realtek has also filed a patent infringement action against LSI in China.

ORDER
Case No. C-12-03451-RMW
ALG

- 13 -

GRANTS IN PART Realtek's Motion *In Limine* No. 4 to the extent that the parties are precluded from offering evidence or argument that the RAND rate to be determined by the jury should cover licenses in addition to those necessary to practice the two patents-at-issue. However, Motion *In Limine* No. 4 is denied to the extent it seeks to preclude LSI from introducing evidence that apportions a royalty rate from a rate for a larger portfolio of patents to arrive at a royalty rate for the two patents-at-issue.

**Motion *In Limine* No. 5: To prohibit use of the ALJ's decision that LSI did not breach its RAND obligations**

**GRANTED.** In the court's September 26, 2013 Order, the court tentatively ruled that the ITC's preliminary noninfringement determinations are inadmissible at trial. The court adopts this tentative ruling and GRANTS Realtek's Motion *In Limine* No. 5.

**Motion *In Limine* No. 6: To exclude ITC trial testimony of Carl Andren and others**

**GRANTED.** In the concurrent ITC proceeding involving LSI and Realtek, third-party Carl Andren ("Andren") testified for Realtek about his involvement in a proposal that led to the inclusion of the '958 Patent in the 802.11 standard. Realtek seeks to exclude Andren's testimony on the grounds that: (1) Andren was never disclosed as a witness in any of LSI's initial disclosures, *see* Fed. R. Civ. P. 37(c); and (2) Andren's ITC trial testimony is inadmissible hearsay that does not fall under the former testimony exception. LSI counters that its failure to "officially" disclose Andren's trial testimony was harmless under Federal Rule of Civil Procedure 37(c) because Realtek was made fully aware of LSI's reliance on Andren's trial testimony as both of LSI's expert reports in this matter rely on Andren's trial testimony. LSI further contends, relying on *Hynix Semiconductor Inc. v. Rambus Inc.*, 250 FRD. 452, 456 n.5 & 458-59 (N.D. Cal. 2008), that the former testimony hearsay exception applies because Realtek had the same opportunity and motive to develop Andren's testimony on this subject in the ITC proceeding.

Although the court agrees that Realtek should have been on notice of Andren's former testimony in the ITC proceeding, Andren's former testimony is nevertheless barred as hearsay. By

ORDER
Case No. C-12-03451-RMW
ALG
- 14 -

its terms, the hearsay exception under FRE 804(b) applies only when the "declarant is unavailable as a witness." LSI has made no representation that Andren is unavailable as a witness in this matter. Nor does *Hynix*, the only former testimony case upon which LSI relies, support LSI's position. In *Hynix*, the parties stipulated that "[a]ll depositions or other sworn testimony in the Rambus Related Actions may be used by any party in the Rambus NDCal Cases as if taken in each of the Rambus NDCal Cases." 250 F.R.D. at 455-56. Thus, the court's decision to admit former testimony at trial was based on the court's interpretation of this stipulation. *See id.* No such stipulation exists here.

Accordingly, the court GRANTS Realtek's Motion *In Limine* No. 6.

**IT IS SO ORDERED.**

Dated: November 13, 2013

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge