Scott D. Baker (SBN 84923)
Email: sbaker@reedsmith.com
William R. Overend (SBN 180209)
Email: woverend@reedsmith.com
James A. Daire (SBN 239637)
Email: jdaire@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Telephone:  (415) 543-8700
Facsimile:  (415) 391-8269

Steven S. Baik (SBN 184622)
Email: sbaik@reedsmith.com
Carina M. Tan (SBN 185015)
carinatan@reedsmith.com
REED SMITH LLP
1510 Page Mill Road, Suite 110
Palo Alto, CA 94304
Tel:  (650) 352-0500
Fax:  (650) 352-0699

Attorneys for Plaintiff
REALTEK SEMICONDUCTOR
CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| REALTEK SEMICONDUCTOR CORPORATION,<br><br>            Plaintiff,<br><br>    vs.<br><br>LSI CORPORATION<br>and AGERE SYSTEMS LLC<br><br>            Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No. 5:12-cv-03451 RMW<br><br>**AMENDED JOINT PROPOSED JURY INSTRUCTIONS AND OBJECTIONS IN LIGHT OF MIL RULINGS**<br><br><br>Trial Date: February 10, 2013<br>Judge:     Honorable Ronald M. Whyte<br>Location:  Courtroom 4, 6th Floor |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## JOINT ADDITIONAL STANDARD PRELIMINARY INSTRUCTIONS

The parties jointly propose that Ninth Circuit Model Jury Instruction Nos. 1.17, 2.7, 2.11, 2.12, 2.13, 3.1, 3.1A, 3.2 and 3.3 (as set forth herein) be added to the Court's standard preliminary opening instructions to the extent they are not already included.  The parties also jointly propose addition of Ninth Circuit Model Jury Instruction No. 2.2 along with the proposed stipulations of fact set forth herein.  Subject to review of the Court's standard preliminary instructions, the parties do not jointly propose any other additions or modifications to the use of Chapters 1-3 of the Model Ninth Circuit Jury Instructions for the Court's standard preliminary instructions, except as set forth above.

The parties have also met and conferred on a jointly prepared proposed preliminary instruction which is included as Joint Proposed Preliminary Instruction No. 6.  During the meet and confer process, the parties were able to limit their disputes to two discrete issues which are presented along with the instruction in this section.

AMENDED JOINT PROPOSED JURY INSTRUCTIONS AND OBJECTIONS
IN LIGHT OF MIL RULINGS

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 1**

**USE OF INTERPRETERS IN COURT**

You must not make any assumptions about a witness or a party based solely upon the use of an interpreter to assist that witness or party.

Source:

Ninth Circuit Model Civil Jury Instruction 1.17

**JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 2**

**EXPERT OPINION**

Some witnesses, because of education, training or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education, training and experience, the reasons given for the opinion, and all the other evidence in the case.

Source:

Ninth Circuit Model Jury Instructions, 2.11 Expert Opinion (modified)

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 3**

**CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE**

Certain charts and summaries not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

Source:

Ninth Circuit Model Jury Instructions, 2.12 Charts and Summaries Not Received in Evidence

AMENDED JOINT PROPOSED JURY INSTRUCTIONS AND OBJECTIONS
IN LIGHT OF MIL RULINGS

**JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 4**

**CHARTS AND SUMMARIES RECEIVED IN EVIDENCE**

Certain charts and summaries may be received into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

Source:

Ninth Circuit Model Jury Instructions, 2.13 Charts and Summaries Received in Evidence

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 5
## STIPULATIONS OF FACT

The parties have agreed to certain facts that will be read to you. You should therefore treat these facts as having been proved. The parties have either stipulated to or the Court has already determined the following facts:

1.　　Plaintiff Realtek Semiconductor Corporation is Taiwanese corporation with its principal place of business in Hsinchu, Taiwan.

2.　　Defendant LSI Corporation is a Delaware corporation with its principal place of business in San Jose, California.

3.　　Defendant Agere Systems is a Delaware corporation with its principal place of business in Allentown, Pennsylvania. Agere is currently a wholly-owned subsidiary of LSI.

4.　　The International Electrical and Electronics Engineers ("IEEE") develops standards through its internal Standards Association ("IEEE-SA").

5.　　The IEEE-SA develops the 802.11 wireless communication standard, also known as "WLAN" or "Wi-Fi," which was first released in 1997 and has been amended and revised numerous times since then (e.g. 802.11a, 802.11b, 802.11g, 802.11n).

6.　　In January 2003, Agere submitted a "Letter of Assurance" to the IEEE-SA in connection with the development the 802.11g standard, stating that it owned patents, including United States Patent Nos. 6,452,958 ("'958 patent") and 6,707,867 ("'867 patent") or applications leading thereto, which may be required to practice the proposed standard and stated it "is prepared to grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to comply with the [Proposed] IEEE Standard."

7.　　In September 2003, Agere submitted a "Letter of Assurance" to the IEEE-SA in connection with the development of the 802.11e standard, stating that it owned patents, including the '867 patent application, which may be required to practice the proposed standard and stated it "is prepared to grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to comply with the [Proposed] IEEE Standard."

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8.    The '958 patent and '867 patent were among the patents which Agere committed to license on reasonable and non-discriminatory terms and conditions.

9.    As the parent company of Agere, LSI agrees to be bound by the commitments that Agere made to the IEEE.

10.    The Court has found that Defendants entered into a binding contract with the IEEE to license their declared standard essential patents, the '958 and '867 patents, on reasonable and non-discriminatory ("RAND") terms.

11.    The Court has found that Realtek is a third-party beneficiary to Defendants' contract with the IEEE, because it makes and sells integrated circuits that are compatible with the 802.11 standards.

12.    On March 12, 2012, Defendants filed a complaint before the International Trade Commission ("ITC") alleging patent infringement of the '958 and '867 patents and seeking injunctive relief against Realtek.

13.    Earlier in this case, I ruled that Defendants "breached their RAND licensing obligations to Realtek by failing to offer a license to the declared standard essential '958 and '867 patents before filing [an] action at the ITC seeking an exclusion order and injunctive relief."

AMENDED JOINT PROPOSED JURY INSTRUCTIONS AND OBJECTIONS
IN LIGHT OF MIL RULINGS

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT PROPOSED PRELIMINARY INSTRUCTION NO. 6**

**SUMMARY OF PARTIES' POSITIONS, CLAIMS AND DEFENSES**

The following is a summary of the litigation to date and the remaining claims of the parties. I am providing this summary to help you understand the issues in this case. However, you are not to take this instruction as proof of any matter or claim. It is for you to decide, based upon the evidence presented, whether a claim has been proved.

The Plaintiff in this matter is Realtek Semiconductor Corporation, which I will refer to as Realtek. Realtek is an integrated circuit designer and supplier. Realtek designs integrated circuits that enable wireless connectivity, such as Wi-Fi, for example in laptops and televisions.

The Defendants in this matter are LSI Corporation, which I will refer to as LSI, and Agere Systems LLC, which I will refer to as Agere. Agere is a wholly-owned subsidiary of LSI. LSI designs semiconductors and software that accelerate storage and networking in datacenters, mobile networks and client computing.

This case involves communications technology and certain industry standards developed by an industry trade organization to promote the adoption and advancement of wireless communication. The Institute of Electrical and Electronics Engineers (the "IEEE") is a neutral organization that develops standards for technological interoperability among products and services offered within the United States and around the world. Interoperability standards are basically a set of agreed specifications that enable different wireless or other products to operate together even though the products are made by different companies.

The standard at issue in this case is the IEEE standard for wireless Internet connectivity known as "WLAN," "Wi-Fi" or "802.11" (the "802.11 standard"). Agere owns two patents, U.S. Patent Nos. 6,452,958 ("'958 patent") and 6,707,867 ("'867 patent"), that were designated by Agere as essential to the 802.11 standard.

Prior to the release of the 802.11 standard at issue, Agere submitted Letters of Assurance, as required by the IEEE, stating that it is prepared to grant a license to its standard essential patents to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to comply with the IEEE 802.11 standard.

AMENDED JOINT PROPOSED JURY INSTRUCTIONS AND OBJECTIONS
IN LIGHT OF MIL RULINGS

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

On March 7, 2012, LSI contacted Realtek and asserted that Realtek products, as incorporated into certain third-party devices, infringe LSI's patents, including the '958 and '867 patents.  LSI's March 7, 2012 letter asked Realtek to immediately cease and desist from the allegedly infringing activities.  Five days later, LSI filed a complaint with the International Trade Commission naming Realtek and others as respondents and alleging that Realtek infringed the '958 and '867 patents.  LSI sought (1) a "limited exclusion order" excluding the accused products from entry into the United States; and (2) "permanent cease and desist orders" barring Realtek from importing the accused products into the United States.

On May 24, 2012, Realtek sent a letter to LSI requesting that it provide RAND terms with regard to the '958 and '867 patents pursuant to LSI's designation of these patents as essential to the IEEE 802.11 standard and its promise in the Letters of Assurance to the IEEE to license on RAND terms.  In response, LSI sent a proposal to Realtek on June 20, 2012.  The parties disagree as to whether the June 20, 2012 proposal complies with the RAND obligations of LSI. On June 29, 2012, Realtek commenced this lawsuit, alleging that LSI and Agere had breached their RAND obligation by (1) failing to offer Realtek a license to the '958 and '867 patents on RAND terms before filing the ITC complaint, and (2) making a proposal on June 20, 2012, which Realtek contends violated LSI's RAND obligations.

On May 20, 2013, I found (1) that LSI entered into a binding contract with the IEEE to offer licenses to its declared standard essential patents, including the '958 and '867 patents, on a RAND basis, (2) that Realtek is a third-party beneficiary to that contract, and (3) LSI breached its contract by failing to offer a license to the declared standard essential '958 and '867 patents before filing [an] action at the ITC seeking an exclusion order and injunctive relief.

Your task, as jurors, is to decide two issues.  The first is to determine, based on the evidence presented, the appropriate royalty rate for the '958 and '867 patents that LSI would need to offer to Realtek to comply with LSI's RAND obligations.  I will provide specific instructions on how to determine that royalty, based on the evidence presented.

[**LSI Proposal**: As part of the determination of the royalty rate, you will also be asked to determine an appropriate lump sum royalty payment, based on industry standards,  that Realtek

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   would need to pay to LSI if Realtek were to enter into a license to use LSI's two patents.]

2   Second, you will be asked to determine if Realtek is entitled to damages for LSI's breach of

3   contract, and, if so, the amount of those damages.  Realtek has the burden of proving that it has been

4   harmed by the breach of contract, and to prove the amount of money that would reasonably

5   compensate it for that harm.  LSI denies that Realtek is entitled to damages, and disputes the amount

6   of damages Realtek seeks in this litigation.

7   With respect to any damages you may award, Realtek has a duty to use reasonable efforts to

8   mitigate these damages.  To mitigate means to avoid or reduce damages.  LSI has the burden of

9   proving by a preponderance of the evidence that Realtek failed to use reasonable efforts to mitigate

10  damages, and the amount by which damages would have been reduced or "mitigated."

11  [**Realtek Proposal:** In your deliberations, it is important for you to understand that the

12  parties dispute whether the '958 and '867 patents are infringed, or valid, or enforceable, or essential

13  to the 802.11 standard.  Those issues are being litigated in a different proceeding in the International

14  Trade Commission, and are not to be decided by you in this case.  It is very important that you do

15  not speculate about those issues when determining an appropriate RAND royalty or Realtek's

16  damages in this case, and these issues are not pertinent to the verdict you will be asked to render.]

17

18  **Realtek's Objection to LSI Proposal:**  The Court granted Realtek's motion in limine #2, which

19  sought to exclude evidence or argument that suggested that Realtek infringed the '958 and '867

20  patents.  [Doc. # 222, at 9-10.]  Among other things, the Court ruled that LSI could not introduce

21  testimony from its economic expert, Dr. Layne-Farrar, "of a lump sum royalty *owed* by Realtek

22  based on *past infringement* of the patents-in-suit," although Dr. Layne-Farrar could offer her opinion

23  "regarding an appropriate lump sum RAND royalty payment based on industry standards or some

24  other measure."  *Id.* (emphasis in original).  Although Dr. Layne-Farrar may thus provide limited

25  testimony about whether she thinks a lump sum royalty may be appropriate based on industry

26  standards, that does *not* mean that the jury is to be instructed that it *shall* determine a lump sum

27  royalty, which is what LSI's proposed language suggests.  LSI's proposed language is thus improper

28  on this basis alone.  It also continues to use language that suggests liability and thus infringement by

Realtek – namely, that there is an amount that "Realtek would need to pay to LSI" – which is improper under the Court's in limine ruling.  [*See id.*]  Finally, to the extent that this issue is addressed at all in the jury instructions, it should be done in the context of disputed instructions over royalty determinations, not the common instruction.

As to Realtek's proposed language, it is critical that the jury be instructed on what it is *not* deciding, as well as what it is deciding.  In this separate ITC proceeding, infringement, validity, enforcement and essentiality are hotly disputed.  The jury needs to understand that it is *not* deciding those issues in this case, and that those issues are disputed and being decided elsewhere.  Otherwise, there is a serious risk that when deciding a RAND rate, the jury will assume or speculate that the patent is valid and/or infringed by Realtek.  Such speculation could taint the jury's deliberations, because it could lead the jury to conclude that a higher royalty should be set than is appropriate.  Such speculation could also cause the jury to conclude that Realtek should be awarded less damages for LSI's established breach than it would otherwise award, based on an (incorrect) assumption or speculation that Realtek was infringing the patents-in-suit.  Such speculation would be unfair and highly prejudicial, particularly where the only finding by the ITC to date is that Realtek does *not* infringe the '958 and '867 patents.

**LSI's Objection to Realtek Proposal**:  LSI Objects to Realtek's Proposal because the language runs counter to the Court's specific determination in the Rulings on Motions *in Limine* and *Daubert* Motions [Dkt. No. 222] (the "Ruling") that a presumption exists in this matter "that the patents-in-suit are valid and infringed for the purposes of the RAND royalty determination…"  (Dkt. No. 222 at 10.)  LSI agrees with the Court that the hypothetical negotiation between LSI and Realtek requires that presumption of both validity and infringement of the patents-in-suit, and the jury should be instructed accordingly.  LSI thus objects to Realtek's inclusion of language that would undermine that instruction, namely language informing the jury that infringement and the validity of the patents is in fact in dispute in another court.  This instruction would mislead the jury, confuse the issues and cause prejudice to LSI.  *See* Fed. R. Evid. 403.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## JOINT SUBSTANTIVE CLOSING INSTRUCTIONS

Pursuant to the Court's Standing Order Re: Pretrial Preparation, the following substantive closing instructions are proposed jointly by the parties.

AMENDED JOINT PROPOSED JURY INSTRUCTIONS AND OBJECTIONS
IN LIGHT OF MIL RULINGS

**JOINT PROPOSED CLOSING INSTRUCTION NO. 1**

**NOMINAL DAMAGES**

The law which applies to this case authorizes an award of nominal damages. If you find for the plaintiff but you find that the plaintiff has failed to prove damages as defined in these instructions, you must award nominal damages. Nominal damages may not exceed one dollar.

Source:

Ninth Circuit Model Jury Instructions, 5.6 Nominal Damages

13

AMENDED JOINT PROPOSED JURY INSTRUCTIONS AND OBJECTIONS
IN LIGHT OF MIL RULINGS

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**DISPUTED ADDITIONAL PRELIMINARY AND CLOSING INSTRUCTIONS**

Pursuant to the Court's Standing Order Re: Pretrial Preparation, the following disputed instructions are proposed, and objected to, by the parties.  While Realtek believes that the only issue triable to a jury is the amount of damages it is entitled subject to any available defenses offered by Defendants, Realtek has also proposed instructions related to a determination of a RAND royalty rate in light of the Court's ruling that the jury shall determine a RAND royalty rate in this case.  LSI further proposes that Ninth Circuit Model Jury Instruction 2.4 and a modified version of 2.4 relating to trial testimony (as set forth herein) be added to the Court's standard opening instructions to the extent they are not already included.  Realtek objects to these instructions.

Per the Standing Order, Realtek's Disputed Instructions are presented first, with LSI's objections.  LSI's Disputed Instructions are presented second, with Realtek's objections.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

**REALTEK DISPUTED CLOSING INSTRUCTION NO. 1**

**BREACH OF CONTRACT – DAMAGES**

It is the duty of the Court to instruct you about the measure of damages.

The Court has determined that LSI breached its contractual commitments to the IEEE and to Realtek as a third-party beneficiary of that contract.  You must determine Realtek's damages, if any. Realtek has the burden of proving damages by a preponderance of the evidence.  Damages means the amount of money that will reasonably and fairly compensate Realtek for any injury you find was caused by LSI.  For damages in this matter, you should consider the following:

- The reasonable attorneys' fees and costs Realtek incurred in defending against a lawsuit filed by LSI in the United States International Trade Commission.

Realtek bears the burden to prove the amount of attorneys' fees and costs it incurred, which are presumed to be reasonable.  It is Defendants' burden to prove, if it so contends, that those amounts were unreasonable.

It is for you to determine what damages, if any, have been proved.  Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

Source:

Ninth Circuit Model Jury Instructions, 5.1 Damages – Proof (modified); *Aerojet–General Corp. v. Transport Indem. Co.*, 17 Cal.4th 38, 64 (1997); *Brandt v. Superior Court*, 37 Cal.3d 813, 817 (1985); *California v. Pacific Indemnity Co.*, 63 Cal. App. 4th 1535, 1549 (1998); *Concept Enterprises, Inc. v. Hartford Ins. Co. of the Midwest*, 2001 WL 34050685, *5 (C.D. Cal. May 22, 2001; *Feld v. Heeter*,  2008 WL 2982015, at *1 (N.D. Cal. 2008); Dkt No,. 222, at 6.


**LSI Objection**:

LSI objects to Realtek's contention that the burden is on LSI to prove that the amount of damages allegedly incurred by Realtek is unreasonable.  Specifically, LSI objects to the language that "It is Defendants' burden to prove, if it so contends, that those amounts were unreasonable." Realtek's language, that it is LSI's "burden to prove, if it so contends, that those amounts were unreasonable," is objectionable for three reasons.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   First, Realtek's additional language improperly shifts the burden of proof on the

2   reasonableness of damages from Realtek and onto LSI.  Damages are "the amount of money that

3   will reasonably and fairly compensate Realtek for any injury you find was caused by LSI."  There is

4   no presumption of damages, and there is no presumption under the law that the amount of money

5   alleged by the plaintiff is reasonable – the burden to prove reasonableness of damages lies solely

6   with the plaintiff.  As stated above, the Court has only indicated its belief that the invoices produced

7   by Realtek *would* satisfy its initial burden on damages – Realtek has yet to present such evidence to

8   the jury who, as the finder of fact, has the responsibility

9   Moreover, the fact that Realtek holds the burden of proof on both the amount and

10   reasonableness of damages is consistent with the Ninth Circuit's Model Jury Instructions,

11   specifically Model Instructions 5.1 and 5.2.  Specifically, Model Instruction 5.1 Damages—Proof

12   requires the parties to "[*Here insert types of damages. See Instruction 5.2 (Measures of Types of*

13   *Damages)*]."  Model Instruction 5.2 offers a number of statements to describe the nature of the

14   damages claim, many of which include a statement of "reasonable value" or "reasonable cost."  *See*

15   Ninth Circuit Model Instruction 5.2 Measures of Types of Damages.  Therefore, the fact that Realtek

16   bears the burden of proof on the reasonableness of its damages  is consistent with the law and the

17   Ninth Circuit's model instruction.

18   Second, Realtek's additional language improperly confuses the burden of proof for LSI's

19   affirmative defense of mitigation of damages.  Mitigation of damages is directed to whether Realtek

20   took "reasonable efforts to mitigate damages," and not whether the amount of damages claimed is

21   reasonable.  LSI acknowledges its burden on mitigation of damages, including showing the amount

22   by which damages should be mitigated, but the initial burden to prove the amount of damages, if

23   any, and the reasonableness of the damages rests solely with Realtek.

24   Finally, Realtek cites no law that establishes that its attorney's fees and costs are presumed

25   reasonable, or shifts the burden onto the defendant.  For example, in *Aerojet–Gen. Corp. v. Transp.*

26   *Indem. Co.*, 17 Cal. 4th 38 (1997), the case revolved around a claim for attorneys' fees incurred in

27   connection with a bad faith denial of insurance claim by the insurance company.  The case is

28   inapplicable here as this is not an insurance case involving a denial of claim benefits.  Moreover,

1   Realtek ignores clear language from the decision that in the normal case – not an exceptional case

2   involving a bad faith denial of an insurance claim – "it is the insured that must carry the burden of

3   proof on the <u>existence, amount, and reasonableness</u> and necessity of the site investigation expenses

4   as defense costs, and it must do so by the preponderance of the evidence." *Id.* (emphasis added).

5   Similarly, in *State v. Pac. Indem. Co.*, 63 Cal. App. 4th 1535, 1548-1549 (Cal. App. 2d Dist. 1998),

6   the "presumption" of reasonable fees and costs arose under the specific case of breach of an

7   insurance contract due to a bad faith denial of benefits – and even then, fees and costs were

8   presumed reasonable only in an "exceptional case":  "By contrast, in the exceptional case, wherein

9   the <u>insurer has breached its duty to defend</u>, it is the insured that must carry the burden of proof on

10  the existence and amount of the . . . expenses, which are then presumed to be reasonable and

11  necessary as defense costs, and it is the insurer that must carry the burden of proof that they are in

12  fact unreasonable or unnecessary."  *Id* (emphasis added); *see also Concept Enters. v. Hartford Ins.*

13  *Co.*, 2001 U.S. Dist. LEXIS 6901, 17, 2001 WL 34050685 (C.D. Cal. May 21, 2001) ("Where the

14  insurer has breached its duty to defend, it is the insured that must carry the burden of proof on the

15  existence and amount of the . . . expenses, which are then presumed to be reasonable and necessary

16  defense costs, and it is the insurer that must carry the burden of proof that they are in fact

17  unreasonable or unnecessary").

18      Moreover, *Brandt v. Superior Court*, 37 Cal. 3d 813, 817 (1985), is another breach of

19  insurance contract decision wherein the court still requires the plaintiff to identify those fees and

20  costs incurred as a result of the breach – with no shifting of burden as Realtek contends and no

21  presumption of reasonableness.   Realtek's final cited case, *Feld v. Heeter*,  2008 WL 2982015 (N.D.

22  Cal. 2008), does not even mention the burden of proving damages or whether fees and costs are

23  presumed reasonable, and is thus inapplicable.  Therefore, there is no legal justification for Realtek's

24  contention that the burden of proof on reasonableness of damages lies with LSI.

25

26

27

28

AMENDED JOINT PROPOSED JURY INSTRUCTIONS AND OBJECTIONS
IN LIGHT OF MIL RULINGS

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**REALTEK DISPUTED CLOSING INSTRUCTION NO. 2**

**CONTRACT – MITIGATION OF DAMAGES**

Realtek has a duty to use reasonable efforts to mitigate damages.  To mitigate means to avoid or reduce damages.

Defendants have the burden of proving by a preponderance of the evidence

1.      that the plaintiff failed to use reasonable efforts to mitigate damages; and

2.      the amount by which damages would have been mitigated.

You should consider the reasonableness of Realtek's efforts in light of the circumstances facing it at the time, including its ability to make the efforts or expenditures without undue risk or hardship.

Source:

Ninth Circuit Model Jury Instructions 5.3; Judicial Council of California Civil Jury Instructions (CACI) 358.

**LSI's Objection:** LSI objects to Realtek's proposed instruction as it includes the language from the Judicial Counsel of California Civil Jury Instructions, namely the statement "You should consider the reasonableness of Realtek's efforts in light of the circumstances facing it at the time, including its ability to make the efforts or expenditures without undue risk or hardship."  Realtek's additional language is inconsistent with the Ninth Circuit's Model Jury Instruction.  The Ninth Circuit's model instruction on mitigation of damages does not specifically state that "undue risk or hardship" may be grounds for a finding that Realtek acted reasonably.  Moreover, Realtek has provided no legal support for the additional language to the Ninth Circuit's Model Instruction.  In particular, Realtek has not identified any specific case citation for the language it has incorporated into the instruction.  A review of the authorities cited in support of Judicial Council of California Civil Jury Instructions (CACI) 358 does not disclose the language that Realtek seeks to incorporate.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**REALTEK DISPUTED CLOSING INSTRUCTION NO. 3**

**RAND DETERMINATION – HYPOTHETICAL NEGOTIATION**

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention. This right is called a "license."

In determining the RAND royalty rate, you should consider all the facts known and available to the parties during a hypothetical negotiation over a reasonable royalty rate to be paid for patents obligated to a RAND commitment.  A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the licensee taking place at the time when the standard was adopted.

Below is a list of the kinds of factors that you may consider in making your determination. During the trial, you may have heard these referred to as the modified *Georgia-Pacific* factors.

1.      The royalties received by the patentee for the licensing of the patents where the parties clearly understood the RAND obligation, proving or tending to prove an established royalty.

2.      The rates paid by the licensee for the use of other patents comparable to the defendants patents.

3.      The nature and scope of the hypothetical license.

4.      The contribution of the patents to the technical capabilities of the standard and the contribution of those relevant technical capabilities to the implementer and the implementer's products.

5.      The duration of the patent and term of the license.

6.      Alternatives to the patented technology that could have been written into the standard instead of the patented technology, focusing on period before the standard was adopted and implemented.

7.      The extent to which the licensee has made use of the invention

8.      The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses licensing RAND-committed patents to allow for the use of the invention or analogous inventions.

9.      The opinion testimony of qualified experts.

AMENDED JOINT PROPOSED JURY INSTRUCTIONS AND OBJECTIONS
IN LIGHT OF MIL RULINGS

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   10.      The amount that a licensor would have agreed upon (at the time of adopting the standard) if

2   both had been reasonably and voluntarily trying to reach agreement and considered the RAND

3   commitment and its purposes in their efforts to reach a license agreement to ensure widespread

4   adoption of the standard while avoiding holdup and stacking.

5           No one factor is dispositive and you can and should consider the evidence that has been

6   presented to you in this case on each of these factors. You may also consider any other factors which

7   in your mind would have increased or decreased the royalty Realtek would have been willing to pay

8   and Defendants would have been willing to accept, acting as normally prudent business people.  The

9   final factor establishes the framework which you should use in determining a reasonable royalty, that

10  is, the payment that would have resulted from a negotiation between Defendants and Realtek taking

11  place at the time of the adoption of the standard.

12          In considering the nature of this negotiation, you must assume that Defendants and Realtek

13  would have acted reasonably and would have entered into a license agreement. Your role is to

14  determine what the result of that negotiation would have been. The test is what royalty would have

15  resulted from the hypothetical negotiation and not simply what either party would have preferred.

16  Source:

17  *Microsoft v. Motorola*, No. 10-1823JLR, 2013 WL 2111217, at *16-20 (W.D. Wash. Apr. 25, 2013);

18  *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970); Model

19  Patent Jury Instructions for the Northern District of California 5.7; Federal Circuit Bar Association

20  Model Patent Jury Instructions 6.7.

21

22  **LSI's Objection:**  Realtek's proposed instruction exceeds the plain language of the Model Patent

23  Jury Instruction for the Northern District of California for a reasonable royalty.  As the Court is

24  aware, the Northern District's Model Patent Instructions are the preferred instructions of the Ninth

25  Circuit Court of Appeals with respect to patent matters.  The Northern District's Model Patent Jury

26  Instruction for the determination of a reasonable royalty does not reference the *Georgia-Pacific*

27  factors cited by Realtek.  Moreover, despite citing the *Georgia-Pacific* factors, Realtek's instructions

28  contradict a fundamental principle of patent law: the hypothetical negotiation is to be conducted at

the time of the first infringement, not at the time of the adoption of the standard.  LSI's competing

proposed instruction is consistent with the Northern District's established instruction for determining

a royalty rate, particularly with respect to its omission of the *Georgia-Pacific* factors.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

AMENDED JOINT PROPOSED JURY INSTRUCTIONS AND OBJECTIONS
IN LIGHT OF MIL RULINGS

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**REALTEK DISPUTED CLOSING INSTRUCTION NO. 4**

**RAND DETERMINATION – ADDITIONAL CONSIDERATIONS**

In applying the modified *Georgia-Pacific* factors to determine the applicable RAND royalty rate, you should also consider the following:

1.     A proper RAND royalty rate should be set at a level consistent with the IEEE's goal of promoting widespread adoption of its standards.

2.     A proper RAND royalty rate should seek to reduce the risk of patent "hold-up," which is the ability of a standard essential patent owner to demand more than the value of its patented technology for that patent.

3.     A proper RAND royalty rate should address the risk of "royalty stacking," which is the payment of excessive royalties to many different standard essential patent owners.

4.     A proper RAND royalty rate should induce the creation of valuable standards by ensuring that owners of valuable patents will receive reasonable royalties for their patents.

5.     A proper RAND royalty rate should be limited to the economic value of the patented technology itself, apart from the value associated with incorporation of the patented technology into the standard.

6.     A proper RAND royalty rate should be demonstrably free of any unfair discrimination towards the party being offered a license.

Source:

*Microsoft v. Motorola*, No. 10-1823JLR, 2013 WL 2111217, at *10-12 (W.D. Wash. Apr. 25, 2013); IEEE-SA Standards Board Bylaws, September 2002 (Decl. of James Daire in support of Plaintiff Realtek Semiconductor Corporation's Motion for Partial Summary Judgment, Ex. B).

**LSI's Objection:**  LSI objects to the totality of this instruction as it seeks to improperly import policy considerations into an instruction to the jury on the relevant law to be applied.  Here, the IEEE-SA Standards Board Bylaws cited by Realtek are mere policy statements that have no force of law.  As noted by Judge Robart in *Microsoft v. Motorola*, "The bylaws further state that '[t]he IEEE is not responsible . . . for determining whether any licensing terms or conditions provided in

AMENDED JOINT PROPOSED JURY INSTRUCTIONS AND OBJECTIONS

IN LIGHT OF MIL RULINGS

1   connection with submission of a Letter of Assurance, if any, or in any licensing agreements are

2   reasonable or non-discriminatory.'" 2013 U.S. Dist. LEXIS 60233, at *35 (W.D. Wash. Apr. 25,

3   2013).  Moreover, the cited bylaws make no reference to terms such as "hold-up" or "royalty

4   stacking" that Realtek included in this instruction.  The cited Bylaws do not set forth these

5   aspirations as requirements for determining a RAND royalty rate.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

AMENDED JOINT PROPOSED JURY INSTRUCTIONS AND OBJECTIONS
IN LIGHT OF MIL RULINGS

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**LSI'S DISPUTED ADDITIONAL PRELIMINARY INSTRUCTION NO. 1**

**DEPOSITION TESTIMONY IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.

The deposition of Carl Andren, who worked for a company called Harris Corporation, was taken in the ITC Proceeding between the parties on October 9, 2012. You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

Source:

Ninth Circuit Model Jury Instructions, 2.4 Deposition in Lieu of Live Testimony (modified)

**Realtek's Objection:**  Realtek contends that Mr. Andren's deposition testimony is excluded under (or for the same reasons set forth in) the Court's ruling on Realtek's motion in limine #6.  [*See* Doc # 222, at 16.]  In that ruling, the Court barred Defendants from using Mr. Andren's former trial testimony on the basis that it was hearsay, and that Defendants had made no showing that Mr. Andren was unavailable as a witness to fall within the hearsay exception under FRE 804(b).  *See also* FRE 801-804.  For the very same reason, the Court should exclude Mr. Andren's deposition testimony (the only reason the motion in limine did not expressly address Mr. Andren's deposition testimony is that Realtek did not yet know at the time of filing that Defendants intended to rely on Mr. Andren's deposition testimony as well as his trial testimony).  Moreover, although the parties agreed that interrogatory responses and deposition transcripts from the ITC investigation that were produced in this case could be used in this case for all purposes, Mr. Andren's deposition transcript from the ITC action was not produced in this case.  Finally, Defendants' proposed instruction is not consistent with the Model Ninth Circuit Instruction, which only contemplates use of non-live testimony *from the same case*.  Here, Defendants are seeking to instruct the jury about live testimony

1  provided in a different action – a case involving different issues and different counsel – and thus

2  Defendants' modification of the Model Instructions is inappropriate.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

AMENDED JOINT PROPOSED JURY INSTRUCTIONS AND OBJECTIONS
IN LIGHT OF MIL RULINGS

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1

2

**LSI DISPUTED CLOSING INSTRUCTION NO. 1**

**BREACH OF CONTRACT – DAMAGES**

3   It is the duty of the Court to instruct you about the measure of damages.

4   The Court has determined that LSI breached its contractual commitments to the IEEE and to

5   Realtek as a third-party beneficiary of that contract.  You must determine Realtek's damages, if any.

6   Realtek has the burden of proving damages by a preponderance of the evidence.  Damages means

7   the amount of money that will reasonably and fairly compensate Realtek for any injury you find was

8   caused by LSI.  For damages in this matter, you should consider the following:

9   The reasonable attorneys' fees and costs Realtek incurred in defending against a lawsuit filed

10   by LSI in the United States International Trade Commission.

11   It is for you to determine what damages, if any, have been proved.  Your award must be

12   based upon evidence and not upon speculation, guesswork or conjecture.

13   Source:

14   Ninth Circuit Model Jury Instructions, 5.1 Damages – Proof (modified)

15

16   **Realtek's Objection:** Defendants' proposed instruction is improper in light of the Court's

17   ruling on Defendants' motion in limine #4.  [*See* Doc # 222, at 6.]  In that ruling, the Court found

18   that, absent any indication that Realtek's attorneys overcharged Realtek for its ITC defense,

19   "Realtek's actual invoices from the ITC proceedings would satisfy Realtek's initial burden to supply

20   the actual amount of damages it suffered in conjunction with its ITC defense," and that Defendants

21   would bear the burden, if they chose to argue, to show that Realtek failed to mitigate damages by

22   incurring unreasonable attorneys' fees.  [*Id.* (further citations omitted).]  In other words, the Court

23   effectively found that Realtek's burden was only to prove the amount of fees it incurred, and that it

24   was then Defendants' burden to prove those fees were unreasonable if they so contended.  The

25   Court's ruling is entirely consistent with analogous law in cases where attorneys' fees are sought as

26   damages.  *See, e.g.*, *Jackson v. Yarbray*, 179 Cal. App. 4th 75, 96-97 (2nd Dist. 2009) (in a malicious

27   prosecution action, the plaintiff bears the burden of proving the attorneys' fees actually incurred, but

28   the defendant bears the burden of proving the plaintiff failed to mitigate damages; properly admitted

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   evidence of the fees incurred constitutes a prima facie case of that element of special damages, and it

2   must be assumed those fees were reasonable absent contrary evidence).

3        Defendants' proposed instruction is contrary to this ruling – and to analogous case law –

4   because it suggests to the jury that it is Realtek's burden to establish that the attorneys' fees and

5   costs it incurred in the ITC action were "reasonable."  Specifically, it does so by referring to the

6   measure of damages as the "reasonable" attorneys' fees and costs Realtek incurred.  Such an

7   instruction is improper, because this case presents the rare situation where attorneys' fees and costs

8   are sought as *damages*.  In such a situation, the plaintiff bears the burden of proving merely *the*

9   *amount* of attorneys' fees and costs it incurred, whereas the defendant "bears the burden of proving

10  that amount is unreasonable or unnecessary." *Jackson v. Yarbray*, 179 Cal. App. 4th at 96-97;

11  *Concept Enterprises, Inc. v. Hartford Ins. Co. of the Midwest*, 2001 WL 34050685, at *5 (C.D. Cal.

12  May 22, 2001) (discussing plaintiff's and defendant's burden in insurance bad faith action where the

13  plaintiff-insured's damages consist of the fees it incurred in pursuing coverage, pursuant to *Brandt v.*

14  *Superior Court*, 37 Cal.3d 813, 817 (1985)); *Aerojet–General Corp. v. Transport Indem. Co.*, 17

15  Cal.4th 38, 64 (1997) ("Where[ ] the insurer has breached its duty to defend, it is the insured that

16  must carry the burden of proof on the existence and amount of the ... expenses, *which are then*

17  *presumed to be reasonable* and necessary defense costs, and it is the insurer that must carry the

18  burden of proof that they are in fact unreasonable or unnecessary.") (emphasis added); *accord*

19  *California v. Pacific Indemnity Co.*, 63 Cal. App. 4th 1535, 1549 (1998) (in claim for breach of duty

20  to defend against insurer, plaintiff had burden of proving the existence of the amount of its legal

21  expenses, while the defendant had the burden of showing that the costs were unreasonable).  As

22  such, Realtek does not bear the burden to prove the reasonableness of fees-as-damages.  *See id.*; *see*

23  *also, e.g.*, *Feld v. Heeter*,  2008 WL 2982015, at *1 (N.D. Cal. 2008) (denying motion in limine

24  where moving party argued the plaintiff could not recover fees as damages without presenting expert

25  testimony demonstrating the reasonableness of such fees, and noting the absence of any authority

26  requiring proof of reasonableness when seeking fees as damages under tort-of-another doctrine);

27  *accord* Cal. Civ. Code § 3300 (governing statute for damages for breach of contract in California

28  contains no language requiring that the reasonableness of the damages is an element of the plaintiff's

1   case).  Realtek does not dispute that damages must be "reasonable," or that, as a matter of causation,

2   they must be "reasonably foreseeable." However, in the context here, where fees are sought as

3   damages, it is critical that the jury be instructed that it is Realtek's burden to prove only the amount

4   of fees and costs incurred, which are presumed to be reasonable, and to place the burden on

5   Defendants, if they so contend, to prove the alleged unreasonableness of those fees and costs.  This

6   language is included in Realtek's proposed instruction.  Without such language, there is a risk that

7   the jury will be confused and apply an improper burden in this case.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

AMENDED JOINT PROPOSED JURY INSTRUCTIONS AND OBJECTIONS
IN LIGHT OF MIL RULINGS

**LSI DISPUTED CLOSING INSTRUCTION NO. 2**

**MITIGATION OF DAMAGES**

The plaintiff who sustains damage as a result of a defendant's breach of contract has a duty to minimize its loss.  As such, Realtek has a duty to use reasonable efforts to mitigate damages.  To mitigate means to avoid or reduce damages.  Realtek is not entitled to recover damages for any part of the loss it could have avoided with reasonable efforts.

LSI has the burden of proving by a preponderance of the evidence:

1. that Realtek failed to use reasonable efforts to mitigate damages; and

2. the amount by which damages would have been mitigated.

Source:

Ninth Circuit Model Jury Instructions, 5.3 Damages—Mitigation (modified)

**Realtek's Objection:**  Defendants' proposed construction deviates from the model in material ways which create a severe risk of confusing the issues, misleading the jury and causing Realtek to suffer prejudice.  *See* Fed. R. Evid. 403. The proposed instruction omits the definition of mitigation provided in the model instruction and therefore does not properly frame the issue for the jury. Specifically, Defendants' proposed introductory clause improperly suggests that Realtek "has a duty to minimize its loss," whereas Realtek's only duty is to use *reasonable efforts* to do so.  *See Valle de Oro Bank v. Gamboa*, 26 Cal. App. 4th 1686, 1691 (1994).   The proposed instruction also improperly imports the concept of Realtek's entitlement to recovery, which is not included in the model instruction and is unnecessarily cumulative of the parties' proposed damages instruction.  The instruction also does not provide an adequate explanation of what reasonable efforts are under the circumstances of this case.  By contrast, Realtek's proposed instruction properly frames the issue of mitigation, is consistent with the Ninth Circuit model, and is supplemented with a useful direction for the jury on how to gauge the reasonableness of Realtek's efforts in light of the circumstances facing it at the time, namely having to defend itself against the threat of an ITC injunction.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1

**LSI DISPUTED CLOSING INSTRUCTION NO. 3**

2

**DETERMINATION OF ROYALTY RATE**

3      A royalty is a payment made to a patent holder in exchange for the right to make, use or sell

4 the claimed invention.  This right is typically written down in a document called a "license."  A

5 reasonable royalty is the payment for a license that would have resulted from a "hypothetical

6 negotiation" between the patent holder and the licensee taking place at the time just before the

7 infringing activity first began.  In considering the nature of this negotiation, you must assume that

8 the patent holder and the licensee would have acted reasonably and would have entered into a license

9 agreement.  You must also assume that the patents were essential to the standard at issue in this

10 litigation and were understood as such by the parties.  You must also assume that the royalty rate

11 agreed to by the parties would be subject to the patent holder's commitment to offer a royalty rate on

12 reasonable and non-discriminatory, or RAND, terms.  Your role is to determine what the result of

13 that negotiation would have been. A RAND royalty is a rate that would have resulted from an arms-

14 length, hypothetical negotiation and not simply what either party would have preferred.

15      The parties in the hypothetical negotiation would set the royalty rate by looking at the

16 importance of the claimed essential patent to the standard, as well as the importance of the standard

17 and the claimed essential patents to the products at issue.  Thus a patent that is extremely important

18 and central to the standard would reasonably command a higher royalty rate than a less important

19 patent.

20      Finally, reasonable parties in search of a reasonable royalty rate under the RAND

21 commitment would consider the fact that to foster and promote the creation of useful and valuable

22 standards, the RAND commitment must guarantee that holders of valuable intellectual property will

23 receive reasonable royalties on that property.

24      It is up to you, based on the evidence, to decide what royalty is appropriate in this case.

25 Source:

26 Model Patent Jury Instructions for the Northern District of California, B.5 Patent Damages, 5.7

27 Reasonable Royalty – Definition (modified); *Microsoft Corp. v. Motorola, Inc.*, C10-1823JLR, 2013

28 U.S. Dist. LEXIS 60233 (W.D.Wash. Apr. 25, 2013); *Golight, Inc., v. Wal-Mart Stores, Inc.*, 355

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996);

2   *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*,

3   56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Georgia-Pacific Corp. v. United States Plywood*

4   *Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

5

6   **Realtek's Objection:**   There are several aspects of Defendants' proposed construction that are

7   improper and contrary to law.  First, the proper measure of the hypothetical negotiation in the

8   context of determining a RAND royalty rate should be framed in the context of the timing for the

9   adoption of the standard.  Infringement is not an issue in this case, yet Defendants' proposed

10  instruction improperly sets the hypothetical negotiation "at the time just before the infringing

11  activity first began" which improperly implies to the jury that Realtek is infringing the patent in

12  violation of the Court's ruling on Realtek's motion in limine #2.  [*See* Doc #222, at 9-10.]  This will

13  mislead the jury, confuse the issues, and cause prejudice to Realtek.  *See* Fed. R. Evid. 403.  Second,

14  Defendants also seek to instruct the jury to "assume the patents were essential to the standard at

15  issue in this litigation" which is inconsistent with the required consideration of the contribution of

16  the patent to the technical capabilities of the standard.  *See Microsoft Corp. v. Motorola, Inc.*, C10-

17  1823JLR, 2013 WL 2111217, at *16-20 (W.D. Wash. Apr. 25, 2013).  Third, Defendants' proposed

18  instruction totally ignores the modified *Georgia-Pacific* factors as set forth in *Microsoft*, despite the

19  fact that these are the proper factors for the jury to consider in weighing the evidence and deciding

20  the proper RAND royalty rate in this case.  Fourth, the proposed instruction cherry-picks the

21  favorable additional considerations from *Microsoft* while leaving out others.  For example,

22  Defendants' proposed instruction asserts that a RAND rate "must guarantee that holders of valuable

23  intellectual property will receive reasonable royalties on [their] property," but fails to note that it

24  should also seek to reduce the risk of patent "hold-up" and "royalty stacking."  *Id.* at *10-12.  By

25  contrast, Realtek's proposed instructions on determination of a RAND royalty rate are consistent

26  with *Microsoft's* modified *Georgia-Pacific* factors as well as the additional overarching

27  considerations for a RAND royalty rate.  As such, Realtek's proposed instruction properly informs

28  the jury on the proper factors to consider when constructing a RAND royalty rate.

DATED:  January 17, 2014.

Respectfully Submitted,

REED SMITH LLP

By____/s/ William R. Overend_____
    William R. Overend
    Attorney for Plaintiff
    REALTEK SEMICONDUCTOR CORPORATION

KILPATRICK TOWNSEND & STOCKTON LLP

By____/s/ David E. Sipiora_____
    David E. Sipiora
    Robert J. Artuz
    Charles A. Pannell
    Attorneys for Defendants
    LSI CORPORATION and
    AGERE SYSTEMS LLC.

*Filer's Attestation: Pursuant to Civil Local Rule 5-1(i) regarding signatures, William R. Overend hereby attests that concurrence in the filing of this document has been obtained.*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Case No. 5:12-CV-03451 RMW

32

AMENDED JOINT PROPOSED JURY INSTRUCTIONS AND OBJECTIONS
IN LIGHT OF MIL RULINGS