United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| REALTEK SEMICONDUCTOR, CORPORATION, | Case No. C-12-3451-RMW |
| Plaintiff, | **JURY INSTRUCTIONS** |
| v. | |
| LSI CORPORATION AND AGERE SYSTEMS LLC, | |
| Defendants. | |

**PRELIMINARY INSTRUCTION NO. 1**

**DUTY OF JURY**

Ladies and gentlemen: You are now the jury in this case. It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it. You will be allowed to keep this set throughout the trial to which to refer. This set of instructions is not to be taken home and must remain in the jury room when you leave in the evenings. At the end of the trial, I will give you a final set of instructions. It is the final set of instructions which will govern your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

**PRELIMINARY INSTRUCTION NO. 2**

**SUMMARY OF PARTIES' POSITIONS, CLAIMS AND DEFENSES**

The following is a summary of the litigation to date and the claims remaining for you to decide.  I am providing this summary to help you understand the issues in this case.  However, you are not to take this instruction as proof of any matter or claim.  It is for you to decide, based upon the evidence presented, whether a claim has been proved.

The Plaintiff in this matter is Realtek Semiconductor Corporation, which I will refer to as Realtek.  Realtek is an integrated circuit designer and supplier.  Realtek designs integrated circuits that enable wireless connectivity, such as Wi-Fi, for example in laptops and televisions.

The Defendants in this matter are LSI Corporation, which I will refer to as LSI, and Agere Systems LLC, which I will refer to as Agere.  Agere is a wholly-owned subsidiary of LSI.  LSI designs semiconductors and software that accelerate storage and networking in datacenters, mobile networks and client computing.

This case involves communications technology and certain industry standards developed by an industry trade organization to promote the adoption and advancement of wireless communication.  The Institute of Electrical and Electronics Engineers (the "IEEE") is a neutral organization that develops standards for technological interoperability among products and services offered within the United States and around the world.  Interoperability standards are basically a set of agreed specifications that enable different wireless or other products to operate together even though the products are made by different companies.

The standard at issue in this case is the IEEE standard for wireless Internet connectivity known as "WLAN," "Wi-Fi" or "802.11" (the "802.11 standard").  Agere owns two patents, U.S. Patent Nos. 6,452,958 ("'958 patent") and 6,707,867 ("'867 patent"), that were designated by Agere as essential to the 802.11 standard.

Prior to the release of the 802.11 standard at issue, Agere submitted Letters of Assurance, as required by the IEEE, stating that it is prepared to grant a license to its standard essential patents to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to comply with the IEEE 802.11 standard.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

On March 7, 2012, LSI contacted Realtek and asserted that Realtek products, as incorporated into certain third-party devices, infringe LSI's patents, including the '958 and '867 patents. LSI's March 7, 2012 letter asked Realtek to immediately cease and desist from the allegedly infringing activities. Five days later, LSI filed a complaint with the International Trade Commission naming Realtek and others as respondents and alleging that Realtek infringed the '958 and '867 patents. LSI sought (1) a "limited exclusion order" excluding the accused products from entry into the United States; and (2) "permanent cease and desist orders" barring Realtek from importing the accused products into the United States.

On May 24, 2012, Realtek sent a letter to LSI requesting that it provide RAND terms with regard to the '958 and '867 patents pursuant to LSI's designation of these patents as essential to the IEEE 802.11 standard and its promise in the Letters of Assurance to the IEEE to license on RAND terms. In response, LSI sent a proposal to Realtek on June 20, 2012. The parties disagree as to whether the June 20, 2012 proposal complies with the RAND obligations of LSI. On June 29, 2012, Realtek commenced this lawsuit, alleging that LSI and Agere had breached their RAND obligation by (1) failing to offer Realtek a license to the '958 and '867 patents on RAND terms before filing the ITC complaint, and (2) making a proposal on June 20, 2012, which Realtek contends violated LSI's RAND obligations.

On May 20, 2013, I found (1) that LSI entered into a binding contract with the IEEE to offer licenses to its declared standard essential patents, including the '958 and '867 patents, on a RAND basis, (2) that Realtek is a third-party beneficiary to that contract, and (3) LSI breached its contract by failing to offer a license to the declared standard essential '958 and '867 patents before filing an action at the ITC seeking an exclusion order and injunctive relief.

Your task, as jurors, is to decide two issues. The first is to determine, based on the evidence presented, the appropriate royalty rate for the '958 and '867 patents that LSI would need to offer to Realtek to comply with LSI's RAND obligations. I will provide specific instructions on how to determine that royalty, based on the evidence presented.

Second, you will be asked to determine if Realtek is entitled to damages for LSI's breach of contract, and, if so, the amount of those damages.

## PRELIMINARY INSTRUCTION NO. 3

## WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

1.  the sworn testimony of any witness;

2.  the exhibits which are received into evidence; and

3.  any facts to which the lawyers have agreed.

**PRELIMINARY INSTRUCTION NO. 4**

**WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, will say in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition sometimes testimony and exhibits are received only for a limited purpose; when I give a limiting instruction, you must follow it.

(4) Anything you may see or hear when the court is not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

## PRELIMINARY INSTRUCTION NO. 5
## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

**PRELIMINARY INSTRUCTION NO. 6**

**RULING ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence. That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

**PRELIMINARY INSTRUCTION NO. 7**

**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

**PRELIMINARY INSTRUCTION NO. 8**

**CONDUCT OF THE JURY**

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case. Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via e-mail, text messaging, or any Internet chat room, blog, Web site or other feature. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter. You must also report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

1

2      The law requires these restrictions to ensure the parties have a fair trial based on the same

3  evidence that each party has had an opportunity to address. A juror who violates these restrictions

4  jeopardizes the fairness of these proceedings, and a mistrial could result that would require the

5  entire trial process to start over. If any juror is exposed to any outside information, please notify the

6  court immediately.

7

8

9

10

**United States District Court**
For the Northern District of California

**PRELIMINARY INSTRUCTION NO. 9**

**NO TRANSCRIPT AVAILABLE TO JURY**

During deliberations, you will have to make your decision based on what you recall of the evidence. You will not have a transcript of the trial. I urge you to pay close attention to the testimony as it is given.

If at any time you cannot hear or see the testimony, evidence, questions or arguments, let me know so that I can correct the problem.

**PRELIMINARY INSTRUCTION NO. 10**

**TAKING NOTES**

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case. Do not let note-taking distract you. When you leave, your notes should be left in the jury room. No one will read your notes. They will be destroyed at the conclusion of the case.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

**PRELIMINARY INSTRUCTION NO. 11**

**JURY TO BE GUIDED BY OFFICIAL ENGLISH INTERPRETATION**

Languages other than English may be used during this trial.

The evidence to be considered by you is only that provided through the official court interpreters. Although some of you may know the foreign language used, it is important that all jurors consider the same evidence. Therefore, you must accept the English interpretation. You must disregard any different meaning.

1

**PRELIMINARY INSTRUCTION NO. 12**

2

**USE OF INTERPRETERS IN COURT**

3

You must not make any assumptions about a witness or a party based solely upon the use of

4

an interpreter to assist that witness or party.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

## PRELIMINARY INSTRUCTION NO. 13

## DEPOSITION TESTIMONY IN LIEU OF LIVE TESTIMONY

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.

The deposition of Carl Andren, who worked for a company called Harris Corporation, was taken in the ITC Proceeding between the parties on October 9, 2012. You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

**PRELIMINARY INSTRUCTION NO. 14**

**EXPERT OPINION**

Some witnesses, because of education, training or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education, training and experience, the reasons given for the opinion, and all the other evidence in the case.

**PRELIMINARY INSTRUCTION NO. 15**

**CHARTS AND SUMMARIES**

Certain charts and summaries may be received into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

Certain other charts and summaries not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

**PRELIMINARY INSTRUCTION NO. 16**

**STIPULATIONS OF FACT**

The parties have agreed to certain facts that will be read to you.  You should therefore treat these facts as having been proved.  The parties have either stipulated to or the Court has already determined the following facts:

1.     Plaintiff Realtek Semiconductor Corporation is Taiwanese corporation with its principal place of business in Hsinchu, Taiwan.

2.     Defendant LSI Corporation is a Delaware corporation with its principal place of business in San Jose, California.

3.     Defendant Agere Systems is a Delaware corporation with its principal place of business in Allentown, Pennsylvania.  Agere is currently a wholly-owned subsidiary of LSI.

4.     The International Electrical and Electronics Engineers ("IEEE") develops standards through its internal Standards Association ("IEEE-SA").

5.     The IEEE-SA develops the 802.11 wireless communication standard, also known as "WLAN" or "Wi-Fi," which was first released in 1997 and has been amended and revised numerous times since then (e.g. 802.11a, 802.11b, 802.11g, 802.11n).

6.     In January 2003, Agere submitted a "Letter of Assurance" to the IEEE-SA in connection with the development the 802.11g standard, stating that it owned patents, including United States Patent Nos. 6,452,958 ("'958 patent") and 6,707,867 ("'867 patent") or applications leading thereto, which may be required to practice the proposed standard and stated it "is prepared to grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to comply with the [Proposed] IEEE Standard."

7.     In September 2003, Agere submitted a "Letter of Assurance" to the IEEE-SA in connection with the development of the 802.11e standard, stating that it owned patents, including the '867 patent application, which may be required to practice the proposed standard and stated it "is prepared to grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to comply with the [Proposed] IEEE Standard."

8.      The '958 patent and '867 patent were among the patents which Agere committed to license on reasonable and non-discriminatory terms and conditions.

9.      As the parent company of Agere, LSI agrees to be bound by the commitments that Agere made to the IEEE.

10.     The Court has found that Defendants entered into a binding contract with the IEEE to license their declared standard essential patents, the '958 and '867 patents, on reasonable and non-discriminatory ("RAND") terms.

11.     The Court has found that Realtek is a third-party beneficiary to Defendants' contract with the IEEE, because it makes and sells integrated circuits that are compatible with the 802.11 standards.

12.     On March 12, 2012, Defendants filed a complaint before the International Trade Commission ("ITC") alleging patent infringement of the '958 and '867 patents and seeking injunctive relief against Realtek.

13.     Earlier in this case, I ruled that Defendants "breached their RAND licensing obligations to Realtek by failing to offer a license to the declared standard essential '958 and '867 patents before filing [an] action at the ITC seeking an exclusion order and injunctive relief."

**PRELIMINARY INSTRUCTION NO. 17**

**RAND DETERMINATION – HYPOTHETICAL NEGOTIATION**

As I previously advised you, one of your tasks is to determine, based upon the evidence presented, the appropriate royalty rate for the '958 and '867 Patents that LSI needs to offer to Realtek to comply with LSI's RAND obligations.

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. This right is called a "license." A "RAND" royalty rate is a reasonable and nondiscriminatory royalty rate.

In determining the RAND royalty rate, you should consider a hypothetical negotiation between Realtek and LSI over a royalty rate for LSI's two patents. In considering the nature of this negotiation, you must assume that the patent holder and the licensee would have acted reasonably and would have entered into a license agreement. Consider all the facts known and available to the parties at the time Realtek first made, used, or sold products using the standard. You should not consider LSI's advantage resulting from the standard's adoption, if any. However, you may consider any advantage resulting from the technology's superiority. Your role is to determine what the result of the hypothetical negotiation between Realtek and LSI would have been. You must determine what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

**PRELIMINARY INSTRUCTION NO. 18**

**RAND DETERMINATION – TYPES OF ROYALTIES**

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard. One type of royalty is a percentage royalty, in which the licensee pays the patent holder a certain percentage of its revenue. Another type of royalty is a per unit royalty, in which the licensee pays the patent holder a predetermined amount of money for each unit the licensee sells.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case.

**PRELIMINARY INSTRUCTION NO. 19**

**RAND DETERMINATION – DETERMINING A RAND ROYALTY RATE**

You should follow the two steps below in determining the RAND royalty rate resulting from the hypothetical negotiation:

(1) Consider the importance of the two LSI patents to the standard as a whole, comparing the technical contribution of the two LSI patents to the technical contributions of other patents essential to the standard.

(2) Consider the contribution of the standard as a whole to the market value of Realtek's products utilizing the standard.

**PRELIMINARY INSTRUCTION NO. 20**

**RAND DETERMINATION – CONSIDERATION OF LICENSES**

You may consider other licenses for patents comparable to the two LSI patents. In determining the comparability of other licenses, you may consider, among others, the following factors:

(1) the patents included in the license agreement,

(2) the date of the license,

(3) any limitations on the use of the licensed technology,

(4) the inclusion of other consideration in the agreement,

(5) whether the license was part of a settlement of litigation or arbitration,

(6) whether the royalty was a lump sum or a running royalty rate,

(7) opinion testimony of qualified experts.

**PRELIMINARY INSTRUCTION NO. 21**

**BREACH OF CONTRACT – DAMAGES**

The Court has determined that LSI breached its contractual commitments to the IEEE and to Realtek as a third-party beneficiary of that contract.  Your second task is to determine Realtek's damages, if any.  Realtek has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate Realtek for any injury you find was caused by LSI.  If you find that Realtek is entitled to damages, you may award:

- The reasonable attorneys' fees and costs Realtek incurred in defending itself against a lawsuit filed by LSI in the United States International Trade Commission.

It is for you to determine what damages, if any, have been proved.  Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

**PRELIMINARY INSTRUCTION NO. 22**

**BREACH OF CONTRACT – NOMINAL DAMAGES**

The law which applies to this case authorizes an award of nominal damages. If you find for the plaintiff but you find that the plaintiff has failed to prove damages as defined in these instructions, you must award nominal damages. Nominal damages may not exceed one dollar.

1

**PRELIMINARY INSTRUCTION NO. 23**

2

**BREACH OF CONTRACT – MITIGATION OF DAMAGES**

3

   Realtek has a duty to use reasonable efforts to mitigate damages.  To mitigate means to

4

avoid or reduce damages.

5

   LSI has the burden of proving by a preponderance of the evidence:

6

   1.  that the plaintiff failed to use reasonable efforts to mitigate damages; and

7

   2.  the amount by which damages would have been mitigated.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California