UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| REALTEK SEMICONDUCTOR, CORPORATION,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>LSI CORPORATION AND AGERE SYSTEMS LLC,<br><br>　　　　　　Defendants. | Case No. C-12-3451-RMW<br><br>**JURY INSTRUCTIONS** |

**INSTRUCTION NO. 1**

**DUTY OF JURY**

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you as to the law of the case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

**INSTRUCTION NO. 2**

**CONDUCT OF THE JURY**

I will now repeat a few words I read to you at the beginning of trial about your conduct as jurors.

First, keep an open mind, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your deliberations. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via e-mail, text messaging, or any Internet chat room, blog, Web site or other feature. This applies to communicating with everyone else besides your fellow jurors during deliberations, including your family members, your employer, the media or press, and the people involved in the trial. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter.  You must also report the contact to the court.

Because you have received all the evidence and are receiving all legal instruction you properly may consider to return a verdict: do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

        The law requires these restrictions to ensure the parties have a fair trial based on the same

evidence that each party has had an opportunity to address. A juror who violates these restrictions

jeopardizes the fairness of these proceedings, and a mistrial could result that would require the

entire trial process to start over. If any juror is exposed to any outside information, please notify the

court immediately.

**INSTRUCTION NO. 3**

**TASK OF THE JURY**

On May 20, 2013, I found (1) that LSI entered into a binding contract with the International Electrical and Electronics Engineers ("IEEE") to offer licenses to its declared standard essential patents, including the '958 and '867 patents, on a reasonable and nondiscriminatory ("RAND") basis, (2) that Realtek is a third-party beneficiary to that contract, and (3) LSI breached its contract by failing to offer a license to the declared standard essential '958 and '867 patents before filing an action at the ITC seeking an exclusion order and injunctive relief.

Your task, as jurors, is to decide two issues. The first is to determine, based on the evidence presented, the appropriate royalty rate for the '958 and '867 patents that LSI would need to offer to Realtek to comply with LSI's RAND obligations. I will provide specific instructions on how to determine that royalty, based on the evidence presented.

Second, you are asked to determine if Realtek is entitled to damages for LSI's breach of contract, and, if so, the amount of those damages.

**INSTRUCTION NO. 4**

**WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1.  the sworn testimony of any witness;

2.  the exhibits which were received into evidence; and

3.  any facts to which the lawyers have agreed.

**INSTRUCTION NO. 5**

**WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, will say in their closing arguments, and have said at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition sometimes testimony and exhibits are received only for a limited purpose; when I gave a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**INSTRUCTION NO. 6**

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

**INSTRUCTION NO. 7**

**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

**INSTRUCTION NO. 8**

**DEPOSITION TESTIMONY IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.

You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

Do not place any significance on the behavior or tone of voice of any person who read the questions or answers.

**INSTRUCTION NO. 9**

**EXPERT OPINION**

Some witnesses, because of education, training or experience, were permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education, training and experience, the reasons given for the opinion, and all the other evidence in the case.

**INSTRUCTION NO. 10**

**CHARTS AND SUMMARIES**

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

Certain other charts and summaries not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

1

**INSTRUCTION NO. 11**

2

**STIPULATIONS OF FACT**

3          The parties have agreed to certain facts that have been read to you.  You should therefore

4    treat these facts as having been proved.  The parties have either stipulated to or the Court has

5    already determined the following facts:

6          1.      Plaintiff Realtek Semiconductor Corporation is Taiwanese corporation with its

7    principal place of business in Hsinchu, Taiwan.

8          2.      Defendant LSI Corporation is a Delaware corporation with its principal place of

9    business in San Jose, California.

10          3.      Defendant Agere Systems is a Delaware corporation with its principal place of

11   business in Allentown, Pennsylvania.  Agere is currently a wholly-owned subsidiary of LSI.

12          4.      The International Electrical and Electronics Engineers ("IEEE") develops standards

13   through its internal Standards Association ("IEEE-SA").

14          5.      The IEEE-SA develops the 802.11 wireless communication standard, also known as

15   "WLAN" or "Wi-Fi," which was first released in 1997 and has been amended and revised numerous

16   times since then (e.g. 802.11a, 802.11b, 802.11g, 802.11n).

17          6.      In January 2003, Agere submitted a "Letter of Assurance" to the IEEE-SA in

18   connection with the development the 802.11g standard, stating that it owned patents, including

19   United States Patent Nos. 6,452,958 ("'958 patent") and 6,707,867 ("'867 patent") or applications

20   leading thereto, which may be required to practice the proposed standard and stated it "is prepared

21   to grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis

22   and on reasonable terms and conditions to comply with the [Proposed] IEEE Standard."

23          7.      In September 2003, Agere submitted a "Letter of Assurance" to the IEEE-SA in

24   connection with the development of the 802.11e standard, stating that it owned patents, including

25   the '867 patent application, which may be required to practice the proposed standard and stated it

26   "is prepared to grant a license to an unrestricted number of applicants on a worldwide, non-

27   discriminatory basis and on reasonable terms and conditions to comply with the [Proposed] IEEE

28   Standard."

8.      The '958 patent and '867 patent were among the patents which Agere committed to license on reasonable and non-discriminatory terms and conditions.

9.      As the parent company of Agere, LSI agrees to be bound by the commitments that Agere made to the IEEE.

10.     The Court has found that Defendants entered into a binding contract with the IEEE to license their declared standard essential patents, the '958 and '867 patents, on reasonable and non-discriminatory ("RAND") terms.

11.     The Court has found that Realtek is a third-party beneficiary to Defendants' contract with the IEEE, because it makes and sells integrated circuits that are compatible with the 802.11 standards.

12.     On March 12, 2012, Defendants filed a complaint before the International Trade Commission ("ITC") alleging patent infringement of the '958 and '867 patents and seeking injunctive relief against Realtek.

13.     Earlier in this case, I ruled that Defendants "breached their RAND licensing obligations to Realtek by failing to offer a license to the declared standard essential '958 and '867 patents before filing [an] action at the ITC seeking an exclusion order and injunctive relief."

**INSTRUCTION NO. 12**

**RAND DETERMINATION – HYPOTHETICAL NEGOTIATION**

As I previously advised you, one of your tasks is to determine, based upon the evidence presented, the appropriate royalty rate for the '958 and '867 Patents that LSI needs to offer to Realtek to comply with LSI's RAND obligations. Whether or not Realtek infringes the two LSI patents is not an issue in this case.

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. This right is called a "license." A "RAND" royalty rate is a reasonable and nondiscriminatory royalty rate.

In determining the RAND royalty rate, you should consider a hypothetical negotiation between Realtek and LSI over a royalty rate for LSI's two patents. In considering the nature of this negotiation, you must assume that the patent holder and the licensee would have acted reasonably and would have entered into a license agreement. The determination of a RAND royalty rate also assumes that the two LSI patents are essential to the 802.11 standard.

For the purposes of the hypothetical negotiation, you should consider all the facts known and available to the parties at the time Realtek first made, used, or sold products using the standard, which was November 2002. You should not consider LSI's advantage resulting from the standard's adoption, if any. However, you may consider any advantage resulting from the technology's superiority. Your role is to determine what the result of the hypothetical negotiation between Realtek and LSI would have been. You must determine what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

**INSTRUCTION NO. 13**

**RAND DETERMINATION – TYPES OF ROYALTIES**

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard. One type of royalty is a percentage royalty, in which the licensee pays the patent holder a certain percentage of its revenue. Another type of royalty is a per unit royalty, in which the licensee pays the patent holder a predetermined amount of money for each unit the licensee sells.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case.

**INSTRUCTION NO. 14**

**RAND DETERMINATION – DETERMINING A RAND ROYALTY RATE**

You should follow the two steps below in determining the RAND royalty rate resulting from the hypothetical negotiation:

(1) Consider the importance of the two LSI patents to the standard as a whole, comparing the technical contribution of the two LSI patents to the technical contributions of other patents essential to the standard.

(2) Consider the contribution of the standard as a whole to the market value of Realtek's products utilizing the standard.

**INSTRUCTION NO. 15**

**RAND DETERMINATION – CONSIDERATION OF LICENSES**

You may consider other licenses for patents comparable to the two LSI patents. In determining the comparability of other licenses, you may consider, among others, the following factors:

(1) the patents included in the license agreement,

(2) the date of the license,

(3) any limitations on the use of the licensed technology,

(4) the inclusion of other consideration in the agreement,

(5) whether the license was part of a settlement of litigation or arbitration,

(6) whether the royalty was a lump sum or a running royalty rate, and

(7) opinion testimony of qualified experts.

**INSTRUCTION NO. 16**

**BREACH OF CONTRACT – DAMAGES**

The Court has determined that LSI breached its contractual commitments to the IEEE and to Realtek as a third-party beneficiary of that contract.  Your second task is to determine Realtek's damages, if any.  Realtek has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate Realtek for any injury you find was caused by LSI.  If you find that Realtek is entitled to damages, you may award:

- The reasonable attorneys' fees and costs Realtek incurred in defending itself against the lawsuit filed by LSI in the United States International Trade Commission.

It is for you to determine what damages, if any, have been proved.  Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

**INSTRUCTION NO. 17**

**BREACH OF CONTRACT – MITIGATION OF DAMAGES**

Realtek has a duty to use reasonable efforts to mitigate damages.  To mitigate means to avoid or reduce damages.

LSI has the burden of proving by a preponderance of the evidence:

1.    that the plaintiff failed to use reasonable efforts to mitigate damages; and

2.    the amount by which damages would have been mitigated.

**United States District Court**
For the Northern District of California

**INSTRUCTION NO. 18**

**DUTY TO DELIBERATE**

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**INSTRUCTION NO. 19**

**COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the marshal, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

**INSTRUCTION NO. 20**

**RETURN OF VERDICT**

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.