Scott D. Baker (SBN 84923)
Email: sbaker@reedsmith.com
William R. Overend (SBN 180209)
Email: woverend@reedsmith.com
James A. Daire (SBN 239637)
Email: jdaire@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Telephone: (415) 543-8700
Facsimile: (415) 391-8269

Steven S. Baik (SBN 184622)
Email: sbaik@reedsmith.com
REED SMITH LLP
1510 Page Mill Road, Suite 110
Palo Alto, CA 94304
Tel: (650) 352-0500
Fax: (650) 352-0699

Attorneys for Plaintiff
REALTEK SEMICONDUCTOR CORPORATION

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| REALTEK SEMICONDUCTOR CORPORATION,<br><br>    Plaintiff,<br><br>    vs.<br><br>LSI CORPORATION<br>and AGERE SYSTEMS LLC,<br><br>    Defendants. | Case No. 5:12-cv-03451 RMW<br><br>**PLAINTIFF REALTEK SEMICONDUCTOR CORPORATION'S MOTION PURSUANT TO FRCP 50(A) FOR JUDGMENT AS A MATTER OF LAW REGARDING DAMAGES** |

Plaintiff Realtek Semiconductor Corporation ("Realtek") hereby moves for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a) that Realtek is entitled to the full amount of damages it seeks. [*See* Trial Tr. at 281:4-282:5; Plaintiff's Dem. Ex. 303-7; Trial. Ex. 168.] The evidence of record establishes that Defendants LSI Corporation and Agere Systems LLC (collectively, "Defendants') have not shown that Realtek failed to use reasonable efforts to mitigate damages. As this Court has ruled, Defendants carry the burden to demonstrate that Realtek failed to use reasonable efforts to mitigate its damages and that Realtek's incurred attorneys' fees were unreasonable. [Dkt. Nos. 279, 281.] It is undisputed, however, that Defendants adduced no evidence that Realtek failed to use reasonable efforts to mitigate the damages (*i.e.*, attorneys' fees) incurred as a direct result of Defendants' breach or that Realtek's incurred fees are unreasonable. Accordingly, Realtek respectfully requests judgment as a matter of law that Realtek is entitled to the full amount of attorneys' fees damages it has incurred as a result of Defendants' breach of its RAND obligations.

## I.  LEGAL STANDARDS

The district court may enter judgment as a matter of law in favor of a moving party before a case goes to the jury when it concludes the evidence is legally insufficient to support the non-moving party's claims. *Volterra Semiconductor Corp. v. Primarion, Inc.*, 799 F. Supp. 2d 1092, 1097-98 (N.D. Cal. 2011); *see also* Fed. R. Civ. Proc. 50(a)(1). "Judgment as a matter of law is proper when the evidence permits a reasonable jury to reach only one conclusion." *Quicksilver, Inc. v. Mymsta Corp.*, 466 F.3d 749, 755 (9th Cir. 2006).

## II.  ARGUMENT

Judgment as a matter of law is warranted because Defendants did not produce legally sufficient evidence at trial from which a reasonable jury could find in favor of Defendants on the issues underlying Realtek's claim for damages. Under the *Jackson* case that this Court has followed as setting forth the relevant standard, "[t]estimony or properly admitted documentary evidence of the attorney fees incurred to defend a[n] . . . action constitutes a prima facie case of that element of special damages." *Jackson v. Yarbray*, 179 Cal. App. 4th 75, 95-96 (Cal. App. 2009). As such,

"absent contrary evidence, it must be assumed those fees were reasonable." *Id.* Here, Realtek has proven the amount of damages through the testimony of its corporate witness, Dr. Yee-Wei Huang, and the invoices which show the amount of attorneys' fees it has incurred defending itself in the investigation initiated by Defendants at the International Trade Commission ("ITC"). [*See* Trial Tr. at 281:4-282:5; Plaintiff's Dem. Ex. 303-7; Trial Ex. 168; *see also* Trial Tr. at 1049:13-1050:1 (the Court stating that "I think that there has been a prima facie case shown" with respect to Realtek's incurred attorneys' fees.").]

Defendants have not shown that damages Realtek incurred as a result of Defendants' breach were unreasonable or "could have been avoided by reasonable effort and expense." *Brandon & Tibbs v. George Kevorkian Accountancy Corp.*, 226 Cal. App. 3d 442, 460 (Cal. App. 1990) (internal quotation and citation omitted); *see also Jackson*, 179 Cal. App. 4th 75, 97 ("[T]he burden of proving the plaintiff failed to act reasonably in limiting his or her consequential damages—that is, failed to mitigate damages—is on the defendant."). More specifically, Defendants have not demonstrated that Realtek failed to take reasonable steps to lessen its incurred fees in defending against the ITC action. To the contrary, the record shows that Realtek took all reasonable steps in undertaking its defense of the ITC action and the fees incurred in defending itself against the ITC action were reasonable.

**A.    The record shows that because Realtek took reasonable steps in undertaking its defense of the ITC action, Realtek's incurred attorneys' fees are reasonable**

The record establishes that each of the steps Realtek took following Defendants' breach of its RAND obligations by initiating the ITC action were reasonable and establish that the fees Realtek incurred were reasonable. Dr. Yee-Wei Huang, Realtek's vice president of marketing and sales, testified that Realtek went to find "[counsel] to defend [it]self in the case." [Trial Tr. at 276:15-21.] To select the appropriate counsel to defend itself, Realtek assembled a panel composed of its senior management to evaluate potentially "good candidates" based on several different criteria. [Trial Tr. at 278:11-279:11.] These criteria included the reputation of the firm, the firm's experience in ITC proceedings, the firm's track record, the firm's cost effectiveness, and the firm's Chinese language capabilities. [*Id.*] Defendants' expert, Marcia Sundeen, agreed that each of Realtek's

aforementioned selection criteria were "reasonable." [Trial Tr. at 816:25-819:25.] Ultimately, as Dr. Huang testified, Realtek's senior management decided to retain Finnegan[1] to represent Realtek in the 837 investigation, because "Finnegan came out on the top with all factors being considered." [Trial Tr. at 278:21-25.]

Ms. Sundeen acknowledged that Finnegan is a "well respected firm" with attorneys who are considered reputable in handling ITC cases, and that she had no issues with Finnegan's qualifications or Realtek's selection of Finnegan to undertake Realtek's defense of the ITC action. [Trial Tr. at 800:25-801:7; 816:25-817:17.] As the record shows, selecting a reputable law firm with experience in ITC proceedings was particularly important given the high stakes of litigation at the ITC. The record shows that Realtek selected Finnegan because:

> Otherwise we fully expose our biggest product line. The livelihood of the company is totally exposed. And we believe we have a case, and we have to defend us and hiring a company with a good success track record and a competent law firm is very important.

[Trial Tr. at 282:17-23.] Ms. Sundeen's testimony bolsters the undisputed fact that Realtek took reasonable steps in selecting Finnegan to represent it in the ITC action.

Further, despite the fact that Realtek would not have incurred any fees at all had Defendants not breached their RAND obligations, Realtek took additional reasonable steps to lessen those fees and thereby mitigate its damages. Defendants do not dispute that Realtek received at least a 5%[2] discount on the fees it incurred. [Trial Tr. at 821:9-14.] The ability of Realtek to negotiate this discount proves that it took reasonable steps to lessen its fees. Ms. Sundeen also acknowledged the existence of a joint defense group among the Respondents in the ITC case, which she admitted saved Realtek money. [Trial Tr. at 808:24-809:21.]

---

[1] Dr. Huang learned of Finnegan in connection with IP seminars he organized for the Taiwanese semiconductor industry. [Trial Tr. at 277:23-278:10.]

[2] Ms. Sundeen's opinion that Realtek should have successfully negotiated an even larger discount of 10-15% is unsupported by the record. Ms. Sundeen did not offer any basis for her claim that Finnegan should have discounted its fees by 10-15%. And Ms. Sundeen's own 7.5% discount from her $800 hourly rate to Defendants demonstrates that Finnegan's 5% discount to Realtek is well within the industry range of negotiated discounts. [Trial Tr. at 820:4-821:1.]

Even with the high stakes involved in defending itself at the ITC, the evidence shows that Realtek employed reasonable criteria in selecting a competent and reputable law firm to defend an ITC action that threatened to cripple Realtek's entire Wi-Fi chip business. Further, Realtek took additional steps to mitigation its damages by securing a discount on the attorneys' fees it incurred and participating in a joint defense group with the other Respondents to save Realtek money. The inquiry should therefore end here, as Realtek's selection of Finnegan—an indisputedly reputable firm with strong ITC litigation experience—to handle the defense of the ITC action was surely a reasonable choice in light of the potential catastrophic damage to the business as a whole it faced with the looming threat of an adverse decision and an exclusion order at the ITC.[3]

### B. Defendants failed to show that Realtek did not take reasonable steps to lessen the fees it incurred as a result of Defendants' breach

Ms. Sundeen's testimony failed to establish that Realtek did not make reasonable efforts to lessen the fees it incurred in defending itself against the ITC action. As explained above, the record shows that Realtek took numerous reasonable steps to mitigate its damages as a result of Defendants' breach. Having agreed that Realtek acted reasonably in hiring Finnegan, Ms. Sundeen focused not on **Realtek's** actions, but instead on **Finnegan's** actions in charging Realtek for certain

---

[3] In fact, through a successful defense strategy to date, Realtek has mitigated any further damage to its business by obtaining a favorable decision of non-infringement from the presiding Administrative Law Judge. Realtek's success to date has thwarted the imminent threat to its business from an exclusion order against its products and those of its customers to whom it supplies such products. A party's success in litigation is often viewed as the most critical factor in assessing the reasonableness of its incurred attorneys' fees. *See Goldberg v. Cameron*, Case No. C-05-03534 RMW, 2011 WL 3515899, at *6 (N.D. Cal. Aug. 11, 2011) ("In determining a fee award, courts should also take into account . . . the results obtained (the degree of success of the prevailing party) and other important considerations.") (internal quotation marks omitted); *see also Batcheld v. Geary*, Case No. C-71-02017 RMW, 2007 WL 2427989, at *7 (N.D. Cal. Aug. 22, 2007) ("[C]entral to the court's inquiry as to whether the requested fees are reasonable or reasonably expended is whether 'the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award[.]'") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley*, 461 U.S. at 436). Put simply, Realtek's unmistakable success reinforces the reasonableness of the attorneys' fees it incurred and the steps it took to mitigate its damages. Having reviewed the ALJ's decision, however, Ms. Sundeen admitted that she did not weigh or much less consider Realtek's success in her assessment of Realtek's incurred fees. [Trial Tr. at 795:17-19.]

items (e.g., clerical fees, annual increases in billing rates).  Ms. Sundeen's testimony concerning *Finnegan's* billing practices is irrelevant to the issue of whether *Realtek* could have taken steps to lessen the attorneys' fees it incurred.  Moreover, to the extent Ms. Sundeen presumed that Realtek's incurred attorneys' fees were the result of some failed efforts on Realtek's part, those presumptions are just that, as Ms. Sundeen repeatedly acknowledged she does not know if Realtek failed to seek additional reductions.  [Trial Tr. at 815:17-19; *id.* at 815:22-816:11.]  In other words, Defendants offered no evidence whatsoever proving that Realtek failed to seek the further reductions Ms. Sundeen claimed Realtek should have sought.  More importantly, Ms. Sundeen admitted that Realtek could not secure additional discounts unless Finnegan agreed to provide them.  [Trial Tr. at 815:10-12. ("Q.  When you negotiated a fee discount, both sides have to come to an agreement about it, right?  A. Yes.").]

Defendants' failure of proof is therefore twofold.  Not only did Defendants improperly try to equate Finnegan's decisions not to further discount its fees with a failure by Realtek to take additional steps to mitigate its incurred fees, but Defendants also failed to prove that Realtek did not seek additional fee reductions.  Moreover, because California law does not require Realtek to succeed in its efforts to mitigate damages, and the record evidence shows Finnegan needed to agree to any further discounts requested by Realtek, there is a failure of proof on whether the hypothetical further discounts identified by Ms. Sundeen are even relevant to the mitigation question.  *See generally CUNA Mutual Life Ins. Co. v. Los Angeles County Metropolitan Transp. Authority*, 108 Cal. App. 4th 382, 393 (noting that California law does not require a party's mitigation efforts to be successful).

Likewise, Defendants' hindsight arguments that Finnegan hypothetically ***could*** or should have agreed to further discount Realtek's fees are legally irrelevant because the mitigation doctrine does not require a party to pursue the least expensive course of action to lessen its damages.  *See Green v. Smith*, 261 Cal. App. 2d 392, 398 (Cal. App. 1968) ("The fact that in retrospect a reasonable alternative course of action is shown to have been feasible is not proof of the fact that the course actually pursued by plaintiff was unreasonable.").  Nevertheless, the record shows that

1  Realtek was successful in obtaining a substantial reduction in the fees it incurred as a result of

2  Defendants' breach.  [Trial Tr. at 821:9-14.]

3        The record is replete with facts showing that Realtek acted reasonably in lessening the

4  damages it incurred as a result of Defendants' breach.  That Defendants have, after the fact,

5  manufactured additional bases upon which Finnegan *could have* reduced its fees does not show that

6  Realtek itself failed to take reasonable steps to mitigate.  Defendants' theory that not receiving these

7  additional reductions is tantamount to Realtek's failure to mitigate does not comport with the law of

8  mitigation:

9/10/11/12
> The fact that reasonable measures other than the one taken would have avoided damage is not, in and of itself, proof of the fact that the one taken, though unsuccessful, was unreasonable.  []  "If a choice of two reasonable courses presents itself, the person whose wrong forced the choice cannot complain that one rather than the other is chosen."  []  The standard by which the reasonableness of the injured party's efforts is to be measured is not as high as the standard required in other areas of law. []  It is sufficient if he acts reasonably and with due diligence, in good faith.

13  *Green*, 261 Cal. App. 2d at 397 (citations omitted).  Both the record and the law compel the Court to

14  reject Defendants' flawed mitigation theories and enter judgment as a matter of law that Realtek is

15  entitled to the entirety of the attorneys' fees it has incurred to defend itself in the ITC action.

16      **C.**    **Defendants failed to show that the fees Realtek incurred were unreasonable.**

17        Having made a prima facie showing of the fees it incurred as damages, the law is clear that

18  "[a]bsent contrary evidence, it must be assumed those fees were reasonable." *Jackson*, 179 Cal.

19  App. 4th at 95.  Here, Defendants have failed to put on evidence that the fees incurred by Realtek

20  were unreasonable.

21      **1.**    *Finnegan's billing practices are consistent with industry practices*

22        Should the Court entertain Ms. Sundeen's opinions regarding the purported unreasonableness

23  of the amount Finnegan invoiced for the work it performed on Realtek's behalf, Ms. Sundeen's own

24  testimony ultimately confirms that Finnegan's practices were reasonable.  For example, Ms.

25  Sundeen confirmed that the number of Finnegan timekeepers with significant billing on the ITC case

26  fell within the industry norm.  [*See, e.g.*, Trial Tr. at 826:25-827:6 (testifying that it is typical to staff

27  ITC case with 13-14 timekeepers; only 13-14 Finnegan 837 timekeepers with significant billing).]

28  Similarly, Ms. Sundeen admitted that Finnegan's billing rates and billing rate increases were

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

consistent with industry practices.  [*See, e.g.*, Trial Tr. at 820:4-17 (testifying that Kenyon's highest partner billing rates in the $800-$1000 range); 823:20-22 (testifying that it is not unusual for firms to increase billing rates every year); 827:7-828:18 (testifying that only Mr. Yoches's rate is higher than her own $800 billing rate and within the $800-1000 range of her own firm; remaining rates are lower than her discounted rate); 828:4-7 & 829:9-831:12 (testifying that the hourly rates of the two Finnegan partners who billed the most on the 837 Investigation and who are located in the Bay Area were less than or equal to the average billing rates for Bay Area partners as reported in the AIPLA survey ].  And Ms. Sundeen never asserted that Finnegan caused undue expense for Realtek by performing unnecessary work.[4] [*See, e.g.*, Trial Tr. at 801:15 (Q. Okay, do you know – what is your opinion as to the amount of discovery in the 837 I.T.C. Investigation? A.  I don't have an opinion on that.")].

### 2. *Ms. Sundeen's opinions based on the the AIPLA Survey failed to establish that Realtek's incurred fees are unreasonable*

Similarly, Ms. Sundeen's faulty comparison of Realtek's incurred fees with estimates of fees based on the AIPLA survey must be rejected.  In assessing Realtek's incurred fees, Ms. Sundeen assumes, based solely on data regarding Realtek direct U.S. sales of its accused chips, that Realtek's "potential exposure" would not exceed $30,000 should the ITC issue an exclusion order against Realtek's products.  [Trial Tr. at 831:21-25; 834:7-10.]  Then, using her $30,000 figure, Ms. Sundeen estimated that Realtek's total fees should not have exceeded $2.5 million, based on the reported median and average fee data from the AIPLA survey for those cases involving less than $1 million in potential exposure for single-patent cases.  [Trial Tr. at 767:7-771:10.]

Ms. Sundeen's analysis, however, is fatally flawed.  She admitted that Realtek's sales of products sold outside the United States to its customer and co-respondent Funai, whose end products are also the subject of the ITC case, would also be affected by an exclusion order.  [Trial Tr. at

---

[4] To the contrary, as Ms. Sundeen explained that the purpose of a joint defense group is to "share the workload" with the other Respondents in an ITC case and not "duplicate work."  [Trial Tr. at 773:17-774:1; 806:5-10.]

834:7-10.] Nevertheless, Ms. Sundeen failed to account for any additional exposure Realtek faced if an injunction issued against Funai products incorporating Realtek's accused chips. [Trial Tr. at 837:4-7.] Ms. Sundeen presumably believed information regarding this additional exposure to Realtek was important to forming her opinions, as she admitted she attempted to obtain the information without success. [Trial Tr. at 837:9-13.] Her failure to consider this information undermines her reliance on the portion of the AIPLA survey involving those cases with less than $1 million in potential damages to assess the reasonableness of Realtek's fees. [Trial Tr. at 771:16-20; 834:24-25 ("Q. Could the exposure there have been more than $10 million? A. It could have been anything, I just don't know.").] Ms. Sundeen's testimony and the AIPLA survey demonstrate that in cases where a respondent is facing a higher potential exposure, Realtek's incurred fees are well-within the range reflected in the AIPLA survey. [Trial Tr. at 833:11-834:6; Trial Ex. 632 at 22-25.] Because Ms. Sundeen admittedly underestimated Realtek's potential exposure, her assessment regarding the reasonableness of Realtek's incurred fees based on her comparison of those fees to the AIPLA-reported data for cases involving less than $1 million must be accorded no weight.

### 3. *There is no basis to conclude that the redactions on Finnegan's invoices reflect unreasonable fees*

Without any factual basis, Ms. Sundeen opined that the redacted time entries reflected on Finnegan's invoices render those fees unreasonable *per se*. But LSI has provided no evidence whatsoever that such fees represent any failed efforts on Realtek's part, or that the fees corresponding to the redacted invoice portions were somehow unreasonable. As Ms. Sundeen testified, such redactions could have been made to protect an unwaivable joint defense privilege relating to the joint defense group work that Ms. Sundeen admitted saved Realtek money. [Trial Tr. at 808:6-11; 808:24-809:21.] Defendants provide no causal relationship between Realtek's efforts and the redacted time entries, and instead rely purely on speculation that the redacted time entries are unreasonable in part or in full.[5] There is simply no basis to conclude that the fees corresponding to

---

[5] Ms. Sundeen's attempted quantification of fees associated with the redacted time entries is flawed and should be rejected. For example, as Ms. Sundeen explained, where there were three tasks associated with a single time entry, and two of those tasks were redacted, Ms. Sundeen assumed that

the redacted time entries were incurred unreasonably or that Realtek is not entitled to recover the entire amount of the incurred fees it is seeking.

### III.   CONCLUSION

For at least the foregoing reasons, Defendants have failed to come forward with legally sufficient evidence for a reasonable jury to determine that (1) Realtek did not take reasonable steps to lessen the attorneys' fees it incurred resulting from Defendants' breach, or that (2) the fees Realtek incurred were unreasonable.  Therefore, Realtek respectfully requests the Court to enter judgment as a matter of law that Realtek is entitled the full amount of the damages it has incurred, as reflected in Plaintiff's Dem. Ex. 303-7.

DATED:  February 24, 2014

Respectfully submitted,

REED SMITH LLP

By: *William R. Overend*
William R. Overend
Attorneys for Plaintiff
*REALTEK SEMICONDUCTOR CORPORATION*

---

2/3 of the fees associated with entire time entry were attributable to the redacted portions of the time entry. [Trial Tr. at 780:16-782:14.]  But Ms. Sundeen has no basis to conclude that the fee impact of a single time entry can be evenly divided among the number of tasks, and she provided no testimony and cited to no evidence to support her apportionment method.  By engaging in her faulty apportionment, Ms. Sundeen likely overestimated the amount of fees attributable to the redacted tasks.