**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

REALTEK SEMICONDUCTOR, CORPORATION,

Plaintiff,

v.

LSI CORPORATION AND AGERE SYSTEMS LLC,

Defendants.

Case No. C-12-3451-RMW

**ORDER DENYING MOTIONS FOR JUDGMENT AS A MATTER OF LAW**

**[Re: Dkt. No. 335, 338]**

Following the jury verdict in an eleven day trial, plaintiff Realtek Semiconductor Corporation ("Realtek") and defendants LSI Corporation ("LSI") and Agere Systems LLC ("Agere") (collectively, "LSI" or "defendants") each move for judgment as a matter of law on various issues. For the reasons explained below, the court DENIES the parties' motions for judgment as a matter of law.

## I. BACKGROUND

Defendant Agere owns two patents, U.S. Patents Nos. 6,452,958 ("'958 Patent") and 6,707,867 ("'867 Patent"), that it designated as essential to the Institute of Electronic Engineers' ("IEEE") standard for wireless internet connectivity known as "WLAN," "Wi-Fi" or "802.11" (the

"802.11 standard").[1] In 2001, Agere became a wholly owned subsidiary of LSI. Realtek is a Taiwanese company which designs and supplies integrated circuits, including integrated circuits for WLAN technology. Prior to the release of the 802.11 protocols at issue, in 2003 and 2004, Agere submitted Letters of Assurance, as required by the IEEE Standards Board Bylaws, stating with respect to the '958 Patent and the pending application which led to the '867 Patent that it "is prepared to grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to comply with the [Proposed] IEEE Standard." Attachment to Complaint Dkt. No. 1-2 ("Letters of Assurance") (alteration in original).

**A. The correspondence and ITC dispute**

On March 7, 2012, several years after the release of the 802.11 protocols, a representative of LSI contacted Realtek and asserted that Realtek products, as incorporated into certain third-party devices, infringe, *inter alia*, the '958 and '867 Patents. LSI's March letter did not offer a license, but demanded Realtek to immediately cease and desist from its allegedly infringing activities. Less than one week later, on March 12, 2012, LSI filed a complaint with the ITC naming Realtek and others as respondents and alleging, *inter alia*, that Realtek infringed the '958 and '867 Patents. LSI sought: (1) a "limited exclusion order" excluding the accused products from entry into the United States, and (2) "permanent cease-and-desist orders" barring Realtek from, *inter alia*, importing the accused products into the United States. On May 24, 2012, Realtek requested that LSI make the '958 and '867 Patents available for a reasonable and non-discriminatory ("RAND") license pursuant to defendant's designation of these patents as essential to the IEEE 802.11 standard and their promise in the Letters of Assurance.

**B. Procedural History**

On June 29, 2012, Realtek filed the instant action asserting that defendants breached their RAND licensing obligations by initiating an ITC Section 337 action naming Realtek as a respondent before approaching Realtek with a RAND licensing offer. Dkt. No. 1, Complaint. In its complaint, Realtek requested an injunction preventing LSI from enforcing its standard essential patents against Realtek without offering a RAND license, a declaration of RAND rates for the '958 and '867

[1] For a more detailed description of the history of the 802.11 standard, see the court's Order Granting in Part and Denying in Part Motion to Dismiss at 2, Dkt. No. 41.

Patents, and a declaration that the ’958 and ’867 Patents are unenforceable as to Realtek if LSI fails to offer Realtek a RAND-complaint license. *See* Complaint at 15.

On May 20, 2013, this court granted partial summary judgment in favor of Realtek on its breach of contract claim and granted a conditional preliminary injunction preventing LSI from enforcing any exclusion order or injunctive relief with respect to the IEEE 802.11 standard-essential patents should the ITC grant said relief in the action before it. Dkt. No. 102, Order Granting Motion for Partial Summary Judgment. LSI appealed the court’s grant of the preliminary injunction. Dkt. No. 108. In its order granting partial summary judgment, this court held that LSI breached its RAND licensing obligations to Realtek by failing to offer a license to the standard essential ’958 and ’867 Patents before filing a Section 337 action at the ITC.

Beginning February 10, 2014, the court held an eleven day jury trial to determine the amount of Realtek’s breach of contract damages and RAND rates for the ’958 and ’867 Patents. The jury awarded $3,825,000 in damages to Realtek for LSI’s breach of contract and found RAND royalty rates of 0.12% for the ’958 Patent and 0.07% for the ’867 Patent. On March 4, 2014, the ITC issued its final determination in the underlying infringement dispute between Realtek and LSI. The ITC dismissed the ’867 Patent because it had expired on February 23, 2014, rendering the ITC investigation moot as to the ’867 Patent, given that the ITC can only issue prospective relief. Dkt. No. 327-1, ITC Final Determination, at 3. As to the ’958 Patent, the ITC determined that the ’958 Patent is invalid, not infringed by Realtek, and that no domestic industry existed as to the ’958 Patent (the existence of a domestic industry is an additional requirement for relief in the ITC). *Id*. Further, on March 20, 2014, the Ninth Circuit dismissed LSI’s appeal of this court’s grant of the preliminary injunction, finding the appeal mooted by the ITC’s refusal to issue an exclusion order, as the preliminary injunction was only operative if the ITC were to issue an exclusion order. Dkt. No. 334.

Realtek and LSI now each move for judgment as a matter of law. Dkt. No. 336-5, Realtek JMOL; Dkt. No. 335, LSI JMOL. Both parties filed oppositions, Dkt. No. 344-4, LSI Opp. to Realtek’s Motion; Dkt. No. 346, Realtek Opp. to LSI’s Motion, and replies, Dkt. No. 353-4, Realtek Reply, Dkt. No. 355, LSI Reply. The court held a hearing on May 9, 2014.

United States District Court
For the Northern District of California

## II. LEGAL STANDARD

"We review a jury's verdict for substantial evidence in ruling on a properly made motion under Rule 50(b)." *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). "The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Barnard v. Theobald*, 721 F.3d 1069, 1075 (9th Cir. 2013) (quoting *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2005)). Judgment as a matter of law should be granted only where "there is no legally sufficient basis for a reasonable jury to find for that party on that issue." *Krechman v. Cnty. of Riverside*, 723 F.3d 1104, 1109-10 (9th Cir. 2013) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 917 (9th Cir. 2003)). "[T]he court 'may not substitute its view of evidence for that of the jury.'" *Id.* at 1110 (quoting *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001)).

## III. ANALYSIS

### A. Breach of Contract Damages

#### 1. Burden of proof

The parties dispute two issues: (1) given LSI's mitigation defense, which party bears the burden of proof on whether Realtek's damages are reasonable, and (2) whether Realtek must prove that it paid its invoices, or whether Realtek need only prove that it incurred and is obligated to pay the legal fees requested as damages. The court addresses each issue in turn.

As the court has previously explained, Realtek bears the initial burden of proving the extent of its injury. Realtek satisfies that burden by offering evidence of the amount of damages it incurred as a result of LSI's breach. Expenses Realtek actually incurred are presumed to be reasonable costs. *See Jackson v. Yarbray*, 179 Cal. App. 4th 75, 96 (2009) ("Testimony or properly admitted documentary evidence of the attorney fees incurred to defend a maliciously prosecuted action constitutes a prima facie case of that element of special damages. Absent contrary evidence, it must be assumed those fees were reasonable."). The burden then shifts to LSI to prove that Realtek failed to act reasonably in limiting its damages. *Id.* at 97 ("However, while the burden of proving the extent of injury, including attorney fees, actually incurred as a result of a defendant's tortious conduct lies with the plaintiff, the burden of proving the plaintiff failed to act reasonably in limiting

his or her consequential damages—that is, failed to mitigate damages—is on the defendant in a malicious prosecution action, as it is in any other tort action.").

LSI protests that the *Jackson* case is limited only to malicious prosecution actions. However, *Jackson* states a more general damages rule in the context of proving attorneys' fees as damages for malicious prosecution. As many California contract cases have stated, "[i]t is axiomatic that the burden of proof is on the party whose breach caused damage, to establish matters relied on to mitigate damage." *Healdsburg Police Officers Assn. v. City of Healdsburg*, 57 Cal. App. 3d 444, 456 (1976) (citing *Steelduct Co. v. Henger-Seltzer Co.*, 26 Cal. 2d 634, 654 (1945)). Moreover, "[p]lacing on the party who breaches the burden of showing that consequential losses could have been avoided is intuitively attractive, since proof that there has been a failure to mitigate adequately will reduce the damages awarded and, therefore, seems more in the nature of a defense than an element of the plaintiff's affirmative case." *Carnation Co. v. Olivet Egg Ranch*, 189 Cal. App. 3d 809, 817-18 (1986). Not only is this the law in standard breach of contract cases, but the *Jackson* rule also applies to breach of contract cases governed by the California Commercial Code. *See id*. at 818 ("while the burden of proving the extent of loss incurred by way of consequential damages rests with the injured party, section 2715(2)(a) imposes upon the allegedly breaching party the burden of proving the inadequacy of efforts to mitigate consequential damages."). In sum, then, the law is clear that although Realtek is only entitled to the reasonable expenses it incurred as a result of LSI's breach, the initial burden of proving the extent of the injury is on Realtek, and the burden of proving that Realtek failed to reasonably limit its damages is on LSI. To be entitled to recovery, Realtek need not offer any affirmative evidence that its damages were reasonable—it need only offer evidence showing the amount of consequential damages it sustained.

In addition, the parties dispute whether Realtek must prove that it paid its invoices, or whether Realtek need only prove that it incurred the legal fees requested as damages. The court has already ruled in Realtek's favor on this issue, and the court declines to reverse its previous holding that Realtek need only prove that it incurred the legal fees requested as damages. *See* Dkt. No. 346-3, Gill Decl., Ex. B at 1049:13-1050:1 ("the only evidence is that the bills were incurred and most of them have been paid to date. I think that's enough to show the damages."). "A basic principle of

contract law is that the purpose of contract damages is to put a plaintiff in the same economic position he or she would have occupied had the contract been fully performed." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1029 (N.D. Cal. 2012). Adopting LSI's position that Realtek must have actually paid the legal fees it incurred before they are recoverable as damages would violate this basic principle because it would mean that a party unable to pay expenses it incurred through no fault of its own would not be able to recover from the breaching party. Tellingly, LSI does not cite a single case in support of its proposition that Realtek must prove that it actually paid its invoices. As such, the court holds, consistent with the verdict form language proposed by LSI, that Realtek need only prove the amount of damages it incurred as a result of LSI's breach. *See* Dkt. No. 346-5, Gill Decl., Ex. D at 11:11-17.

**2. Realtek's initial burden**

As described above, Realtek met its initial burden of proving its breach of contract damages by offering invoices showing the legal fees Realtek incurred in defending itself in the ITC action. However, numerous entries in Realtek's invoices were redacted, allegedly due to a joint defense group privilege that Realtek could not unilaterally waive. Still, Realtek is only entitled to the legal fees it can actually prove that it incurred in connection with defending itself in the ITC case. Realtek had several ways in which it could satisfy its initial burden of proving that the redacted entries were reasonable fees related to the ITC action. As just one example, Realtek could have called a Finnegan attorney to testify that the fees were incurred as a result of the ITC case. Instead, Realtek proffered invoices that redacted the subject matter of many entries, without providing any evidence demonstrating that the fees shown on the redacted entries were incurred as a result of LSI's breach of contract. Consequently, the jury could have relied on Ms. Sundeen's testimony that Realtek is not entitled to breach of contract damages with respect to the $853,582 Realtek claimed based on redacted invoice entries.

**3. LSI's burden on mitigation**

Realtek argues that it is entitled to all of its breach of contract damages as a matter of law because LSI did not offer sufficient evidence to prove that Realtek failed to mitigate its damages. LSI, in turn, contends that it is entitled to judgment as a matter of law that Realtek failed to mitigate

its damages. The court finds that the jury's verdict is supported by sufficient evidence, and therefore denies both parties' motions for judgment as a matter of law.

The mitigation doctrine holds that "[a] plaintiff who suffers damage as a result of either a breach of contract or a tort has a duty to take reasonable steps to mitigate those damages and will not be able to recover for any losses which could have been thus avoided." *Shaffer v. Debbas*, 17 Cal. App. 4th 33, 41 (1993); *accord Seabord Music Co. v. Germano*, 24 Cal. App. 3d 618, 622-623 (1972). A plaintiff may not recover for damages avoidable through ordinary care and reasonable exertion. *Mayes v. Sturdy Northern Sales, Inc.*, 91 Cal. App 3d 69, 85 (1979). The duty to mitigate damages does not require an injured party to do what is unreasonable or impracticable. *Valencia v. Shell Oil Co.*, 23 Cal.2d 840, 846 (1944).

Significantly, as this court has previously held in this case, "[i]t is appropriate for courts to focus not on the failure of the plaintiff to pursue the alternative courses of action suggested by the defendant but upon the reasonableness of the action which the plaintiff did in fact take. The fact that in retrospect a reasonable alternative course of action is shown to have been feasible is not proof of the fact that the course actually pursued by the plaintiff was unreasonable." Dkt. No. 222, Rulings on Motions *in Limine* and *Daubert* Motions, at 12 (citing *Carlisle Ventures, Inc. v. Banco Espanol de Credito S.A.*, 176 F.3d 601, 609 (2d Cir. 1999)) (quoting *Zanker Development Co. v. Cogito Sys. Corp.*, 215 Cal. App. 3d 1377, 1381 (1989)) (ellipses and alterations omitted). Stated another way by a California court, "[i]f a choice of two reasonable courses presents itself, the person whose wrong forced the choice cannot complain that one rather than the other is chosen. The standard by which the reasonableness of the injured party's efforts is to be measured is not as high as the standard required in other areas of law. It is sufficient if he acts reasonably and with due diligence, in good faith." *Green v. Smith*, 261 Cal. App. 2d 392, 397 (1968).

LSI concedes that Realtek received a discount of at least five percent on its attorneys' fees from the law firm of Finnegan, Henderson, Farabow, Garrett & Dunner ("Finnegan"). However, LSI argued at trial that Realtek still failed to mitigate its damages for five main reasons: (1) Realtek did not secure a larger rate discount, (2) Realtek did not secure a rate freeze, (3) Realtek did not prevent Finnegan from billing for clerical work, (4) Realtek did not save enough in fees from the joint

defense group, and (5) Realtek's total fees are unreasonable based on a survey by the American Intellectual Property Law Association ("AIPLA").

The jury was entitled to rely on Ms. Sundeen's testimony concerning joint defense group savings and the AIPLA survey in finding that Realtek failed to mitigate its damages. As to the joint defense group, Ms. Sundeen testified generally that based on her experience with joint defense groups, she "would have expected [Realtek's attorneys' fees] to be lower with the existence of a joint defense group." Dkt. No. 338-7, Daire Decl., Ex. 6 at 775:18-776:19. Realtek used a joint defense group in the ITC litigation, but, according to Ms. Sundeen, Realtek should have saved an additional 20-25% off of its legal fees due to the joint defense group. *Id*. Although Realtek is correct that Ms. Sundeen conceded that Realtek realized some savings from its use of a joint defense group, the jury could have agreed with Ms. Sundeen and found that the amount of Realtek's savings was inconsistent with reasonable use of a joint defense group. In concluding that Realtek acted unreasonably, the jury could have credited Ms. Sundeen's extensive experience with ITC litigation and the use of joint defense groups. *See* Dkt. No. 306 at 749:22-751:4 (detailing Ms. Sundeen's experience, including over 30 years in private practice and over 40 ITC investigations).

As to the AIPLA survey, Ms. Sundeen presented an AIPLA survey on the costs of litigating a case before the ITC. Ms. Sundeen assumed based on Realtek's direct United States sales data that Realtek would have been damaged no more than $30,000 from the issuance of an ITC order excluding Realtek's products from the United States market. *Id*. at 831:21-25; 834:7-10. Taking this potential exposure figure and the 75th percentile cost figure from the AIPLA survey, Ms. Sundeen concluded that Realtek's attorneys' fees should not have exceeded $2.5 million. In its motion for judgment as a matter of law, Realtek focuses on Ms. Sundeen's use of Realtek's direct United States sales data to determine the amount at risk in the ITC litigation. On cross-examination, Realtek attacked Ms. Sundeen's methodology at length, and Ms. Sundeen admitted that it was possible that Realtek's potential exposure was greater than $1 million. *Id*. at 834:24-25. Despite this cross-examination testimony, the jury still could have relied on Ms. Sundeen's use of Realtek's direct sales to determine its amount at risk in the ITC litigation. Moreover, even if the jury found that Realtek's potential exposure was greater than the $30,000 used by Ms. Sundeen, the jury could have

arrived at the conclusion that Realtek failed to mitigate its damages based on the AIPLA survey in any number of other ways. For example, the jury could have used the median litigation costs reported in the AIPLA survey instead of Ms. Sundeen's more conservative use of the 75th percentile. Therefore, the jury's conclusion that Realtek failed to mitigate its damages is supported by sufficient evidence. More broadly, the jury's award of breach of contract damages is supported by substantial evidence because the jury could have determined that Realtek did not meet its initial burden of proof of proving its damages as to the redacted invoices, and the jury could have credited Ms. Sundeen's testimony as to joint defense group savings and the AIPLA survey. Therefore, Realtek is not entitled to judgment as a matter of law.

Nor is LSI entitled to judgment as a matter of law that Realtek's breach of contract damages were $2.5 million. Realtek presented uncontested evidence at trial showing that Realtek received a 5% discount on its attorneys' fees. Moreover, LSI concedes that Realtek used a joint defense group, from which Realtek realized some savings. Realtek also contested Ms. Sundeen's methodology and credibility on cross-examination, including Ms. Sundeen's use of $30,000 as Realtek's total exposure in the ITC case. The jury could have reasonably found that one or all of these factors supported a damages verdict of more than the $2.5 million for which LSI advocated. Therefore, the court also denies LSI's motion for judgment as a matter of law.

**B. RAND Royalty Rates**

Realtek advances two arguments that it is entitled to judgment as a matter of law on the RAND royalty rates. First, Realtek asserts that the court should enter judgment as a matter of law that the '867 Patent has a royalty rate of zero. However, this issue relates to the scope of the court's declaratory judgment jurisdiction, which is addressed in the court's Order Denying Permanent Injunction and Granting Declaratory Relief. Judgment as a matter of law on the '867 Patent is improper because the jury's verdict determining a royalty rate for the '867 Patent is supported by substantial expert testimony and other evidence.

Second, Realtek contends that Dr. Layne-Farrar's estimation of the number of Agere standard essential patents was not supported by substantial evidence, and thus that LSI did not support its proffered royalty rates with sufficient evidence. Dr. Layne-Farrar, LSI's damages expert,

arrived at a damages figure by identifying an allegedly comparable license and dividing the license's royalty rate by the number of Agere patents alleged to be standard essential. To estimate the number of Agere standard essential patents, Dr. Layne-Farrar testified that she consulted with Mr. Warren Waskiewicz, LSI's Vice President of Intellectual Property and its corporate representative in this case. Realtek argued at trial, and again here, that Dr. Layne-Farrar greatly underestimated the number of standard essential Agere patents, artificially inflating the ultimate royalty rate for the '867 and '958 Patents. Specifically, Dr. Layne-Farrar testified that she learned just before trial that she mistakenly omitted five patents from the number of Agere standard essential patents. Then, on cross-examination, Realtek presented Dr. Layne-Farrar with an additional standard essential patent that Dr. Layne-Farrar did not include in her denominator for the purpose of apportioning the allegedly comparable license's royalty rate into a per-patent rate. In that line of questioning, Dr. Layne-Farrar admitted that she could increase her denominator by an additional patent. Dkt. No. 336-6, Daire Decl., Ex. 1 at 1323:24-1324:5. On redirect, Dr. Layne-Farrar testified that her initial estimate of the number of Agere standard essential patents could have been over-inclusive, such that the jury need not increase her denominator by an additional patent based on the patent Realtek presented on cross-examination. *Id.* at 1333:8-16. Relying on this testimony, Realtek argues that Dr. Layne-Farrar's denominator was so arbitrary that the jury could not credit it in determining a RAND royalty rate for the '867 and '958 Patents. Realtek therefore requests that the court grant judgment as a matter of law and enter its proffered royalty rate for the two patents.

LSI presented sufficient evidence to support the jury's verdict finding RAND royalty rates for the '867 and '958 Patents. Even had the jury credited every argument Realtek made that caused Dr. Layne-Farrar to adjust her royalty rate, the jury still could have returned a verdict with royalty rates higher than the rates the jury actually found. Based on that alone, the jury's verdict was supported by substantial evidence.

To the extent Realtek's argument is construed as a *Daubert* challenge that Dr. Layne-Farrar's testimony was so unreliable as to not be admissible under the Federal Rules of Evidence, Realtek's motion is also denied. Expert testimony is admissible pursuant to Federal Rule of

Evidence 702 if it is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Here, the court acts as a gatekeeper to exclude junk science. *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014); *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-48 (1999); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Daubert*, 509 U.S. at 589-90.

Dr. Layne-Farrar's testimony does not approach the level of unreliability necessary for exclusion under *Daubert*. Dr. Layne-Farrar presented a methodology for determining the number of Agere standard essential patents—i.e. consulting with Mr. Waskiewicz to estimate a standard essential patents figure. Dr. Layne-Farrar was subjected to cross-examination on this issue, and Realtek took advantage of this opportunity by presenting evidence (in the form of an additional standard essential patent) intended to make the jury question Dr. Layne-Farrar's credibility. Dr. Layne-Farrar initially adjusted her figure based on Realtek's questioning, and then on redirect testified that the jury would not be wrong to rely on her higher royalty figure because her initial estimate could have been over-inclusive. All of this testimony evidences the type of detailed methodological investigation that *Daubert* envisions. Dr. Layne-Farrar's methodology was reliable because it was testable and subject to critique. *Daubert*, 509 U.S. at 593-94. If anything, courts should encourage experts to honestly adjust their calculations based on criticisms raised by the other party during cross-examination, and not exclude expert testimony under *Daubert* every time an expert admits that a minor error in estimation was possible. Dr. Layne-Farrar's calculations were based on a reliable, testable, quantitative methodology, and are thus not subject to exclusion under *Daubert*. Realtek's motion is denied as to the RAND royalty rates.

**IV. ORDER**

For the foregoing reasons, the court DENIES both LSI and Realtek's motions for judgment as a matter of law.

**IT IS SO ORDERED.**

Dated: June 16, 2014

Ronald M. Whyte
RONALD M. WHYTE
United States District Judge