UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| REALTEK SEMICONDUCTOR, CORPORATION, | Case No. C-12-3451-RMW |
| Plaintiff, | **ORDER DENYING PERMANENT INJUNCTION AND GRANTING DECLARATORY RELIEF** |
| v. | |
| LSI CORPORATION AND AGERE SYSTEMS LLC, | **[Re: Dkt. No. 337]** |
| Defendants. | |

Plaintiff Realtek Semiconductor Corporation ("Realtek") moves for a permanent injunction and declaratory relief against defendants LSI Corporation ("LSI") and Agere Systems LLC ("Agere") (collectively, "LSI" or "defendants"). For the reasons explained below, the court DENIES Realtek's motion for a permanent injunction and GRANTS Realtek's request for declaratory relief.

## I.  BACKGROUND

Defendant Agere owns two patents, U.S. Patents Nos. 6,452,958 ("'958 Patent") and 6,707,867 ("'867 Patent"), that it designated as essential to the Institute of Electronic Engineers' ("IEEE") standard for wireless internet connectivity known as "WLAN," "Wi-Fi" or "802.11" (the

United States District Court
For the Northern District of California

"802.11 standard").[1] In 2001, Agere is a wholly owned subsidiary of LSI. Realtek is a Taiwanese

company which designs and supplies integrated circuits, including integrated circuits for WLAN

technology. Prior to the release of the 802.11 protocols at issue, in 2003 and 2004, Agere submitted

Letters of Assurance, as required by the IEEE Standards Board Bylaws, stating with respect to the

'958 Patent and the pending application for the '867 Patent that it "is prepared to grant a license to

an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable

terms and conditions to comply with the [Proposed] IEEE Standard." Attachment to Complaint,

Dkt. No. 1-2 Dkt. No. 67-6 ("Letters of Assurance") (alteration in original).

### A.  The correspondence and ITC dispute

On March 7, 2012, several years after the release of the 802.11 protocols, a representative of

LSI contacted Realtek and asserted that Realtek products, as incorporated into certain third-party

devices, infringe, *inter alia*, the '958 and '867 Patents. LSI's March letter did not offer a license, but

demanded Realtek to immediately cease and desist from its allegedly infringing activities. Less than

one week later, on March 12, 2012, LSI filed a complaint with the ITC naming Realtek and others

as respondents and alleging, *inter alia*, that Realtek infringed the '958 and '867 Patents. LSI sought:

(1) a "limited exclusion order" excluding the accused products from entry into the United States,

and (2) "permanent cease-and-desist orders" barring Realtek from, *inter alia*, importing the accused

products into the United States. On May 24, 2012, after LSI instigated the ITC proceeding, Realtek

requested that LSI make the '958 and '867 Patents available for a reasonable and non-

discriminatory ("RAND") license pursuant to defendant's designation of these patents as essential to

the IEEE 802.11 standard and their promise in the Letters of Assurance.

### B.  Procedural History

On June 29, 2012, Realtek filed the instant action asserting that defendants breached their

RAND licensing obligations by initiating an ITC Section 337 action naming Realtek as a respondent

before approaching Realtek with a RAND licensing offer. Dkt. No. 1, Complaint. In its complaint,

Realtek requested an injunction preventing LSI from enforcing its standard essential patents against

Realtek without offering a RAND license, a declaration of RAND rates for the '958 and '867

---

[1] For a more detailed description of the history of the 802.11 standard, see the court's Order
Granting in Part and Denying in Part Motion to Dismiss at 2, Dkt. No. 41.

United States District Court
For the Northern District of California

1    Patents, and a declaration that the '958 and '867 Patents are unenforceable as to Realtek if LSI fails

2    to offer Realtek a RAND-complaint license. *See* Complaint at 15.

3         On May 20, 2013, this court granted partial summary judgment in favor of Realtek on its

4    breach of contract claim and granted a conditional preliminary injunction preventing LSI from

5    enforcing any exclusion order or injunctive relief with respect to the IEEE 802.11 standard-essential

6    patents should the ITC grant said relief in the action before it. Dkt. No. 102, Order Granting Motion

7    for Partial Summary Judgment. LSI appealed the court's grant of the preliminary injunction. Dkt.

8    No. 108. In its order granting partial summary judgment, this court held that LSI breached its

9    RAND licensing obligations to Realtek by failing to offer a license to the standard essential '958

10   and '867 Patents before filing a Section 337 action at the ITC.

11        Beginning February 10, 2014, the court held an eleven day jury trial to determine the amount

12   of Realtek's breach of contract damages and RAND rates for the '958 and '867 Patents. The jury

13   awarded $3,825,000 in damages to Realtek for LSI's breach of contract and found RAND royalty

14   rates of 0.12% for the '958 Patent and 0.07% for the '867 Patent. On March 4, 2014, the ITC issued

15   its final determination in the underlying infringement dispute between Realtek and LSI. The ITC

16   dismissed the '867 Patent because it had expired on February 23, 2014, rendering the ITC

17   investigation moot as to the '867 Patent, given that the ITC can only issue prospective relief. Dkt.

18   No. 327-1, ITC Final Determination, at 3. As to the '958 Patent, the ITC determined that the '958

19   Patent is invalid, not infringed by Realtek, and that no domestic industry existed as to the '958

20   Patent (the existence of a domestic industry is an additional requirement for relief in the ITC). *Id.*

21   Further, on March 20, 2014, the Ninth Circuit dismissed LSI's appeal of this court's grant of the

22   preliminary injunction, finding the appeal mooted by the ITC's refusal to issue an exclusion order,

23   as the preliminary injunction was only operative if the ITC were to issue an exclusion order. Dkt.

24   No. 334.

25        Realtek now moves for equitable relief in the form of a permanent injunction and declaratory

26   judgment. Dkt. No. 337. LSI filed an opposition, Dkt. No. 342, and Realtek filed a reply, Dkt. No.

27   356. The court held a hearing on May 9, 2014.

28

United States District Court
For the Northern District of California

## C.  Requested Equitable Relief

Realtek requests broad injunctive and declaratory relief against LSI. Specifically, Realtek moves for a permanent injunction enjoining LSI from:

> (a) further demanding royalties from Realtek as to U.S. Patent Nos. 6,452,958 (the "'958 patent") and 6,707,867 (the "'867 patent") that are not consistent with Defendants' reasonable and non-discriminatory ("RAND") obligations as reflected in the jury's February 26, 2014 verdict [as amended, if at all, by any subsequent judgment entered by the Court]; and

> (b) enforcing, or seeking to enforce, any of Defendants' alleged standard essential patents in the International Trade Commission or any other judicial forum without first offering Realtek a license consistent with Defendants' RAND obligations.

Dkt. No. 337-8, Proposed Order.

Realtek also moves for a declaratory judgment stating:

> if Defendants, including their officers, directors, agents, assignees, employees and attorneys, and all those in active concert or participation with them, fail to offer Realtek an ongoing license on RAND terms and conditions, consistent with the jury's February 26, 2014 verdict [as amended, if at all, by any subsequent judgment entered by the Court], the '958 and '867 patents are unenforceable as to Realtek and its products.

*Id.*

## II.  LEGAL STANDARD

### A.  Permanent Injunction

"To obtain permanent injunctive relief, a plaintiff must show (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. . . . In determining the scope of an injunction, a district court has broad latitude, and it must balance the equities between the parties and give due regard to the public interest." *California ex rel. Lockyer v. U.S. Dep't of Agric.*, 575 F.3d 999, 1019 (9th Cir. 2009).

### B.  Declaratory Relief

"The decision to grant declaratory relief is a matter of discretion." *United States v. State of Wash.*, 759 F.2d 1353, 1356 (9th Cir. 1985). For any actual controversy within its jurisdiction, a

court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. State of Wash.*, 759 F.2d 1353, 1357 (9th Cir. 1985). However, "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57. "Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201.

### III. ANALYSIS

#### A. Permanent Injunction

LSI only contests the irreparable harm prong of the permanent injunction analysis. LSI's first argument on irreparable harm, which the court finds persuasive, is that the ITC's Final Determination of no domestic industry, invalidity, and no infringement extinguishes the likelihood of immediate irreparable harm.

"The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). In exercising its equitable discretion in this particular case, the court also has guidance from the Ninth Circuit. The Ninth Circuit dismissed LSI's appeal of this court's grant of a preliminary injunction as moot after the ITC issued its Final Determination, finding no domestic industry, invalidity, and no infringement. The Ninth Circuit's decision was based on the strict language of this court's preliminary injunction "that the injunction would go into effect only if the ITC granted an exclusion order." Dkt. No. 334, Ninth Circuit Preliminary Injunction Opinion, at 2. The panel explicitly did not consider whether the possibility of LSI winning an appeal of the ITC's decision at the Federal Circuit prevents the injunction issue from becoming moot. *Id.* ("Both parties argue that the appeal is not moot as LSI may still appeal the ITC's decision to the Federal Circuit. We need not consider that question as the preliminary injunction itself is no longer operative by virtue of the initial decision of the ITC that there was no Section 337 violation."). However, Judge Tashima in his concurrence addressed the effect LSI's appeal to the Federal Circuit would have on the availability

United States District Court
For the Northern District of California

1   of a preliminary injunction: "If the Federal Circuit reverses the ITC's Notice of Final Determination

2   and Termination of the Investigation in *In re Certain Audiovisual Components and Products*

3   *Containing the Same*, Inv. No. 337-TA-837 (Mar. 4, 2014), and this case is then still in active

4   litigation or on appeal, either party may then move for injunctive relief *pendente lite* based on those

5   new circumstances." *Id*. at 3 (Tashima, J., concurring).

6        LSI argues that Judge Tashima's concurrence states that "the possibility of an exclusion

7   order is presently extinguished, and if the Federal Circuit were to reverse and remand to the ITC (re-

8   raising the threat of an exclusion order), then and only then could Realtek *seek* injunctive relief."

9   Dkt. No. 342, LSI Opp., at 8. The court interprets Judge Tashima's concurrence more narrowly than

10  LSI suggests. By its own terms, Judge Tashima's concurrence is directed only at "injunctive relief

11  *pendente lite*" if this case is "still in active litigation or on appeal"—in other words, Judge

12  Tashima's concurrence only addresses Realtek's ability to move for another preliminary injunction

13  if the Federal Circuit reverses the ITC's findings while this case is still pending. The opinion says

14  nothing about how the procedural posture of the ITC case affects the irreparable harm analysis

15  under the instant motion for a permanent injunction.

16        Even so, the court finds that the ITC's Final Determination holding that LSI did not prove

17  patent infringement for three independent reasons renders irreparable harm sufficiently speculative

18  to deny Realtek's request for a permanent injunction at this time. According to Ninth Circuit law, if

19  Realtek has not yet suffered irreparable harm, there must be a likelihood that substantial irreparable

20  harm will be "immediate" in the absence of injunctive relief. *See G.C. & K.B. Invs., Inc. v. Wilson*,

21  326 F.3d 1096, 1107 (9th Cir. 2003). Realtek cannot meet this standard. Any possible exclusion

22  order would not issue for some time. Further, several events must align in LSI's favor for the entry

23  of an exclusion order to occur: (1) the Federal Circuit must reverse the ITC on three separate issues,

24  (2) the ITC must make the further findings necessary for entry of an exclusion order, and (3) any

25  exclusion order must survive a possible presidential veto. At this time, the possibility of an

26  exclusion order is so speculative that the court cannot find that irreparable harm is "likely" or

27  "immediate," as required under Ninth Circuit law. *Id*. Therefore, because "[i]rreparable harm is an

28  essential prerequisite for a grant of injunctive relief," *Ross-Simons of Warwick, Inc. v. Baccarat,*

*Inc.*, 217 F.3d 8, 13 (1st Cir. 2000) (affirming the issuance of a permanent injunction); *Midwest Growers Coop. Corp. v. Kirkemo*, 533 F.2d 455, 465-66 (9th Cir. 1976) (concluding that a permanent injunction was improperly issued because the plaintiff had "failed to show either irreparable harm or lack of any adequate remedy at law-both prerequisites to injunctive relief"), the court denies Realtek's motion for a permanent injunction.

The court concludes by recognizing that the ITC could still potentially issue an exclusion order in the future. As such, the court's denial of Realtek's motion is without prejudice to Realtek later bringing a motion for a permanent injunction should the threat of an exclusion order become more immediate.

**B. Declaratory Relief**

Realtek proposes declaratory relief that would prohibit LSI from enforcing the '958 and '867 Patents prior to offering Realtek a license consistent with LSI's RAND obligations. Dkt. No. 337-8. However, the court finds that such a request is better handled under Realtek's motion for a permanent injunction. "Actions for declaratory judgments are neither legal nor equitable, and courts have therefore had to look to the kind of action that would have been brought had Congress not provided the declaratory judgment remedy." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 284 (1988). Here, for two reasons, the declaratory judgment remedy Realtek seeks is essentially a permanent injunction for which the standard four elements necessary for a permanent injunction must be shown. First, a declaration of unenforceability as to only Realtek would be largely duplicative of a permanent injunction prohibiting LSI from seeking an exclusion order before offering Realtek a RAND license. Second, like a typical injunction, the declaration Realtek proposes would functionally require LSI to forbear from a specific action: enforcing its patent rights as to Realtek. This declaration would attach primarily to the party rather than the patents. In this way, the declaratory remedy Realtek seeks is distinct from, for example, a declaration of a patent's unenforceability due to inequitable conduct, which attaches to the patent rather than the party. Consequently, the court analyzes Realtek's specific request for declaratory relief as a part of its motion for a permanent injunction and, as the court has already determined above, denies the specific relief Realtek seeks.

Still, the grant of declaratory relief is a matter firmly within the court's discretion. *See Green v. Mansour*, 474 U.S. 64, 72, 106 S. Ct. 423, 428, 88 L. Ed. 2d 371 (1985) ("the declaratory judgment statute 'is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'") (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 241 (1952)); *Pub. Serv. Comm'n of Utah*, 344 U.S. at 241 ("It is a matter of discretion with federal courts."). The court, while rejecting Realtek's proposed declaratory relief, is free to craft its own appropriate declaratory judgment. Therefore, the court now turns to determining the proper scope of Realtek's declaratory relief.

The court can only enter declaratory judgment to the extent of its jurisdiction. 28 U.S.C. § 2201. Courts have jurisdiction under the Declaratory Judgment Act to determine the rights and legal relations of parties to a contract, so long as the case-or-controversy requirement is satisfied. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126, 137 (2007). Realtek's claim for declaratory relief flows from the RAND contract. The court has found that LSI breached its RAND obligations to Realtek when it sought an exclusion order at the ITC before offering Realtek a license on RAND terms. Dkt. No. 102. At that time, because an actual controversy existed between the parties over the royalty rate for a RAND-compliant license, the court had declaratory judgment jurisdiction over the determination of a RAND rate. As the court held in an order on LSI's motion to dismiss, "once the patentee interposes the threat of an injunction, the standard implementer is placed at a bargaining disadvantage in private negotiations such that the determination of a true RAND rate almost necessarily must be conducted by a court." Dkt. No. 41, at 7-8. Therefore, the court has jurisdiction to declare the parties' respective rights under the RAND contract, a foundational basis for declaratory judgment jurisdiction under the Declaratory Judgment Act. *See, e.g.*, *MedImmune*, 549 U.S. at 126-27.

This court has previously discussed the *Microsoft v. Motorola* case, a similar case which dismissed the declaratory judgment claims as duplicative of the breach of contract claim. Dkt. No. 41, at 8-9; *see Microsoft Corp. v. Motorola, Inc.*, No. 10-1823 JLR, 2011 WL 11480223, at *5-6 (W.D. Wash. June 1, 2011). In *Microsoft v. Motorola*, the court held that a determination of RAND royalty rates was necessary to establish whether Motorola had breached its RAND commitments.

United States District Court
For the Northern District of California

*Microsoft v. Motorola*, 2011 WL 11480223, at *5-6. By contrast, in this case LSI had not offered Realtek a license before instituting the ITC suit, so a determination of RAND royalty rates was not necessary to establish whether LSI had breached its RAND commitments. Dkt. No. 102, Order Granting Partial Summary Judgment, at 11. This means that the declaratory judgment claims are not duplicative of the breach of contract claim. Therefore, an actual controversy remains between the parties as to their rights under the RAND contracts—the parties dispute what royalty rates are consistent RAND-compliant. Consequently, entering final judgment on only Realtek's breach of contract claim would not resolve the parties' controversy over the RAND royalty rates.

A further complication exists as to the '867 Patent because the '867 Patent expired on February 23, 2014. The parties dispute whether the court continues to have jurisdiction to determine a RAND royalty rate for the '867 Patent now that the '867 Patent has expired. The court holds that its jurisdiction to determine a RAND royalty rate for the '867 Patent continues so long as an actual case or controversy is present over the RAND royalty rate for the '867 Patent. Here, there is such a case or controversy because Realtek has reasonable apprehension of LSI bringing suit for past infringement of the '867 Patent, thereby implicating LSI's RAND obligations. *See Arkema Inc. v. Honeywell Int'l, Inc.*, 706 F.3d 1351, 1360 n.5 (Fed. Cir. 2013) ("While a declaratory judgment plaintiff is no longer required to demonstrate a reasonable apprehension of suit, such a showing remains sufficient to establish jurisdiction.") (citing *MedImmune*, 549 U.S. at 132 n. 11; *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380 (Fed. Cir. 2007); *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1282 (Fed. Cir. 2012)).

"An 'actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Alvarez v. Smith*, 558 U.S. 87, 92 (2009) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975); *Steffel v. Thompson*, 415 U.S. 452, 459, n. 10 (1974)). As outlined above, the actual controversy for the purposes of declaratory judgment jurisdiction has always centered on declaring the parties' rights under the RAND contract. The RAND commitment requires LSI to offer Realtek a RAND royalty rate for declared standard essential patents if Realtek wants a license. Now that the '867 Patent has expired, the court only has declaratory judgment jurisdiction if (1) the court would have declaratory judgment jurisdiction over an infringement suit based on the '867

1   Patent, and (2) that infringement suit requires interpreting the parties' rights under the RAND

2   contract. The court takes each condition in turn.

3          To qualify as an actual case or controversy within the court's Article III jurisdiction, a

4   dispute must be "definite and concrete, touching the legal relations of parties having adverse legal

5   interests; and that it be real and substantial and admit of specific relief through a decree of a

6   conclusive character, as distinguished from an opinion advising what the law would be upon a

7   hypothetical state of facts." *MedImmune*, 549 U.S. at 127. "In patent cases, declaratory judgment

8   jurisdiction exists where a patentee asserts rights under a patent based on certain identified ongoing

9   or planned activity of another party, and where that party contends that it has the right to engage in

10  the accused activity without license." *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1361

11  (Fed. Cir. 2009). In this case, it is clear that both parties contemplate an infringement suit based on

12  the '867 Patent, and that, at least at one time or another, each party has viewed this case as resolving

13  important issues for a following infringement suit. Realtek's current position is that the court should

14  enter declaratory judgment of the RAND royalty rate for the '867 Patent so that the parties can

15  calculate damages in a possible infringement suit. Although LSI's position has since changed, LSI

16  originally proposed that the jury be asked to award a lump sum of damages for past alleged

17  infringement of the '867 Patent. *See, e.g.*, Dkt. No. 171, LSI Proposed Verdict Form, at 1.

18  Furthermore, LSI has sued Realtek for infringement of the '867 Patent in the ITC, and the parties

19  represented at the hearing on the instant motion that LSI maintains another case for infringement of

20  the '867 Patent against Funai, one of Realtek's customers, in the Central District of California. In

21  light of all these facts indicating that an infringement suit continues to loom over this case, LSI's

22  arguments that no case or controversy exists because LSI has not named Realtek in the Central

23  District of California Funai case or because LSI did not counterclaim for infringement here ring

24  hollow. The likelihood that LSI might sue Realtek for past infringement of the '867 Patent has been

25  an aspect of this case all along, and the parties' dispute over the RAND royalty rate for the '867

26  Patent here directly implicates the issues in that patent infringement controversy.

27          In a suit for patent infringement, damages are those "adequate to compensate for the

28  infringement, but in no event less than a reasonable royalty." 35 U.S.C. § 284. As the RAND

commitment obligates the patent holder to licensing the patent on RAND terms, the two previous cases involving patents subject to RAND commitments calculated damages based on a reasonable royalty. *See Microsoft Corp. v. Motorola, Inc.*, No. 10-1823 JLR, 2013 WL 2111217 (W.D. Wash. Apr. 25, 2013); *In re Innovatio IP Ventures, LLC Patent Litig.*, MDL 2303, 2013 WL 5593609 (N.D. Ill. Oct. 3, 2013). Courts, including the *Microsoft* and *Innovatio* courts, commonly employ a hypothetical negotiation framework to establish the amount of a reasonable royalty. The hypothetical negotiation framework "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).

In the RAND context, determining damages for patent infringement is equivalent to declaring the parties' rights under the RAND contract. The court here was tasked with declaring the parties' rights under the RAND contract, but it drew from case law on patent infringement damages for its methodology. In its instructions to the jury, the court applied the hypothetical negotiation framework to instruct the jury on arriving at an appropriate RAND royalty rate. While this court altered some of the details of the *Microsoft* and *Innovatio* framework, it followed the same general approach. The reasonable royalty methodology in a patent infringement suit between Realtek and LSI would be identical to the methodology given to the jury to declare the parties' rights under the RAND contract. Therefore, even though the patent has expired, the RAND commitment would still inform the hypothetical negotiation over a reasonable royalty, so the court retains jurisdiction to declare the parties' rights under that commitment.

Accordingly, the court will therefore enter the following declaratory judgment relief in its final judgment: "The court hereby enters declaratory judgment that, upon Realtek's request for a license, to be in compliance with its RAND commitment, LSI must offer Realtek a license to the '958 Patent on RAND terms, including a royalty rate of 0.12% on the total sales of Realtek's products. The court hereby enters declaratory judgment that, upon Realtek's request for a license, to be in compliance with its RAND commitment, LSI must offer Realtek a license to the '867 Patent

United States District Court
For the Northern District of California

1  on RAND terms, including a royalty rate of 0.07% on the total United States sales of Realtek's

2  accused products."[2]

3                                    **IV.  ORDER**

4       For the foregoing reasons, the court DENIES Realtek's motion for a permanent injunction

5  without prejudice and GRANTS Realtek's motion for declaratory relief. Final judgment will be

6  entered consistent with this order.

7

8  **IT IS SO ORDERED.**

9

10  Dated: June 16, 2014



RONALD M. WHYTE
United States District Judge

_____

[2] Note the minor correction of the initial order here. *See* Dkt. No. 363.

ORDER RE EQUITABLE RELIEF
Case No. C-12-3451-RMW
RDS

- 12 -